# EXHIBIT 4

October 20, 2005

Barbara Van Gelder
202.719.7032
bvangelder@wrf.com

**VIA FASCIMILE AND HAND DELIVERY**

Peter Zeidenberg
Nathaniel B. Edmonds
Public Integrity Section
United States Department of Justice
1400 New York St. NW
Suite 12100
Washington, DC 20005

Re:   *United States v. David H. Safavian*, Crim. No. 05-370

Dear Mr. Zeidenberg and Mr. Edmonds:

      I have received your letter dated October 19, 2005 and acknowledge our telephone conference the evening before. I request that you reconsider your decision not to produce items responsive to the September 26 and October 14, 2005 requests that are material to §§ 1001, 1505 defenses and otherwise discoverable as a matter of law.

      This letter outlines the current list of outstanding discovery issues in order that we may resolve them and avoid a Motion to Compel. If the Government agrees to produce these materials, we request that it commit to do so by Monday, October 24, 2005, in order that we can take appropriate action. If the Government decides to withhold any of these materials, we would appreciate written notification of that fact so we can seek appropriate relief from the Court by October 28, 2005. We also would be happy to meet with you before that time to discuss any of these issues, and to clarify our positions if necessary.

      By this letter, I acknowledge receipt of page 2 of the "hotline" fax to the GSA-OIG. However, as indicated in my e-mail correspondence, I am also requesting page 1, which you have since represented is not currently in the GSA's nor the DOJ's possession. We would ask due diligence in confirming this fact. For instance, page 2 contains some distinctive markings which may also appear on other hotline complaints brought to the GSA.

October 20, 2005
Page 2

You have stated that you do not know who the "informant" is, but I believe the fax cover sheet will help answer this important question. This information goes to the heart of what the GSA-OIG investigation encompassed, and the question of what constitutes a valid proceeding, or the scope of the inquiry thereof, is one for the Court, not the Jury. In addition, whether or not this informant is a "frequent faxer" will be material to Mr. Safavian's defense.

For clarification, the first section below lists those documents the Government has agreed to produce on October 21, 2005. The second section of the letter discusses those categories of documents the Government has stated it will withhold from production. The third section of the letter discusses those categories of documents that the Government has not yet decided on.

I.  **Documents the Government Has Stated It Will Produce**

Your October 19, 2005 letter states that it will produce the following documents:

- A. The attachments to Agent Rowe's ROI.
- B. All documents provided to Mr. Safavian to review during his interview with Agent Reising on May 26, 2005.
- C. All e-mails in the Government's possession communicated between Mr. Safavian and Mr. Abramoff, regardless of subject matter and timeframe.
- D. The FBI 302 Report of Interview of Mr. Safavian conducted on or about November 5, 2003.
- E. Documents you have identified as potential trial exhibits, such as phone records, credit card/bank records.
- F. The Arrest 302 of Mr. Safavian.
- G. Voice-Mail message from Mr. Safavian to Agent Reising.
- H. If available, surveillance logs of Mr. Safavian.
- I. Potential 404 (b) evidence.
- J. The identity of the Senate Investigator.

October 20, 2005
Page 3

II. **Documents the Government Has Stated It Will Withhold From Production**

    A. The interview notes that were the basis of Agent Rowe's ROI.
    B. The identity of the author of the Hotline complaint.
    C. 302s, or notes or ROIs of potential government witnesses; and the 302 or ROI of the Senate Investigator.
    D. Task Force Documents, videotapes, reports or other records of what you have categorized as "non-*Brady* witness statements from individuals other than" Mr. Safavian.
    E. GSA procedures or agreements concerning the privilege guidelines for communications between GSA officials (not currently in possession).
    F. E-Mails between certain named acquaintances of Lobbyist A and E-Mails sent to/from relevant GSA officials, all of whom were identified in correspondence the Government has represented will be used at trial.
    G. 302s, ROIs, or other materials relating to GSA General Counsel officials, the very government agents in receipt of Mr. Safavian's allegedly actionable statements.
    H. 302s, ROIs, or other materials actually identifying the substance of the conversation with the Senate Investigator, one of the two statements that form the bases of Counts Four and Five.
    I. Rough Notes of Agent Reising for the May 26, 2005 interview.
    J. Notes, Memoranda or documents, tapes, etc from any other Agent present at the May 26, 2005 interview.
    K. Documents concerning communications about Mr. Safavian's arrest and/or cooperation in this matter.
    L. Reports, documents, and correspondence sent to, or emanating from, GSA Commissioner Joseph Moravec.
    M. Documents relating to GSA ethics opinions.

Our first disagreement broadly relates to the question of whether interview notes and other "rough notes" prepared by Agents Rowe and Reising are discoverable pursuant to Rule 16, *Brady*, or any other discovery obligation.

October 20, 2005
Page 4

Courts in this circuit and elsewhere have repeatedly acknowledged that Rule 16(a)(1)(A) includes not only official Government agent reports but also the notes taken during interrogations, particularly in the context of §§ 1001 and 1505 prosecutions. Defendants do not have to review such reports *in camera* and the Government may not contend that they are *Jencks* material. *See United States v. Poindexter*, 727 F. Supp. 1470, 1483 (D.D.C.1989) (directing the government to produce "[a]ll notes and memoranda, whether or not verbatim, made at any time of interviews with North/Poindexter by lawyers or investigators . . . .").

The 1991 Advisory Committee Notes to Rule 16(a)(1)(A) themselves explain that the rule requires the government to "disclose any written record which contains reference to a relevant oral statement by the defendant which was in response to interrogation, without regard for whether the prosecution intends to use such statement at trial." *United States v. Lilly*, 2003 WL 168443 *2 (W.D.Va. 2003) (citing 1991 Rule 16 Advisory Notes). Notably, the Advisory specifies that the requested items "need not be a transcription or summary of the defendant's statement but must only be some written reference which would provide some means for the prosecution and the defense to identify the statement." *United States v. Vallee*, 380 F. Supp.2d 11, 12-13 (D. Mass. 2005). The handwritten notes of a government agent containing the substance of defendant's statements thus fall directly within the scope of the rule's disclosure requirements. *See id.* Indeed, "[a]lthough the rule does not specify the means for disclosing the defendant's statements, if they are in written or recorded form, the defendant is entitled to inspect, copy, and photograph them." *Lilly*, 2003 WL 168443 *2 (noting that the rule of production exists because "in some cases the information contained in thorough notes taken from the witness himself might be more credible and more favorable to the defendant's position than the final version."); *see also United States v. Egan,* 501 F.Supp. 1252, 1264 (S.D. N.Y.1980) (granting requests for statements made by government agents in interview, including copies of "any rough notes made by a Government agent concerning such statements").

Interview notes are also discoverable under Rule 16(a)(1)(B)(ii), since they constitute a "portion of any written record containing the substance of any relevant oral statement" made by the defendant, even if they are not only written record of interview. Fed. R. Crim. P. 16(a)(1)(B)(ii); *United States v. Almohandis*, 307 F.Supp.2d 253, 255 (D. Mass. 2004) ("The [handwritten] notes . . . may not be the only written record, but they certainly are 'a' written record."); *United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir.1996).

October 20, 2005
Page 5

With regard to a second general area of disagreement, we are simply requesting all notes, memoranda, ROIs of anyone the Government has interviewed concerning the very substance of the statements that will be attributed to Mr. Safavian as being false, obstructive, or otherwise in violation of §§ 1001, 1505. Thus, for example, if the GSA ethics officer who wrote the ethics opinion has notes of his/her conversation with Mr. Safavian – and these conversations will be used as statements of a party opponent – those statements should be provided. If the GSA ethics officer has made no record or representation concerning any such conversation, we should know that. If the FBI or GSA IG interviewed the ethics officer and that interview incorporates statements attributed to Mr. Safavian, we should have those materials.

As Judge Friedman recognized at the October 17th status conference, the Federal Rules mandate not simply production of what items the Government intends to use at trial, but rather all items "which are within the possession, custody or control of the [G]overnment, and which are material to the preparation of the defendant's defense . . . ." Fed. R. Crim. P. 16(a)(1)(C). We are confident that the Government would agree that the aforementioned requests bear some "abstract logical relationship to the issues in the case." *United States v. George,* 786 F.Supp. 56, 58 (D.D.C.1992) (holding that for the defendant to obtain discovery of documents in the hands of prosecution, the documents need not directly relate to defendant's guilt or innocence; rather, they simply must play important role in uncovering admissible evidence, aiding witness in preparation, corroborate testimony or assist in impeachment or rebuttal).

Similarly, items pertaining to the scope and lines of inquiry of the respective "proceedings" and the substance of Mr. Safavian's responses would clearly be material to the defense of §§ 1001, 1505 violations. And in this context, the activities and correspondence of Lobbyist A and his affiliates during May-August 2002; as well as those of GSA officials during that period, are also relevant.

In addition, if the Defendant has made a relevant oral statement to a person then known to be a government agent, the Government must produce any written record identifying the substance if the statement *whether or not* the prosecution intends to use at trial. If there is no written record, the government must disclose the substance of the statement if it intends to use that statement at trial. 2 Wright & Miller Cr. Pro. § 253 at 89, Rule 16 Advisory Notes (1991 Amendments).

October 20, 2005
Page 6

We request that the Government keep in mind that "[t]he language and the spirit of [Rule 16] are designed to provide to a criminal defendant, in the interest of fairness, the *widest possible opportunity* to . . . receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States v. Poindexter,* 727 F. Supp. 1470, 1473 (D.D.C. 1989) (emphasis added). In fact, in addition to exculpatory information, information which is inculpatory has also been be deemed material since such information may also allow a defendant to "'alter the quantum or proof in his favor' in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence." *United States v. Marshall,* 132 F.3d 63, 68 (D.C. Cir. 1998).

### III.     Documents the Government Has Not Yet Decided Whether To Produce

- A. "At this time" you have no documents to memorialize any conversations between Mr. Safavian, Mr. McKenna and/or Ms. Ellison.
- B. With respect to GSA procedures regarding privileged conversations, you state that they are not discoverable, but "we do not have such copies in our possession."
- C. Additional emails stated with particularity
- D. With respect to the Senate Investigator's notes, you state "they are not in the government's possession."
- E. We asked for Statements made by any Senate Staffer or Member to the Taskforce, not for publicly available exhibits.
- F. Same with Senate Confirmation materials, which you say are not in the "government's possession."

In addition to its obligations under Rule 16, the Government is also obligated under *Brady v. Maryland,* 373 U.S. 83 (1963) to disclose all information in its possession that is favorable to the accused and material either to a defendant's guilt or punishment. A number of courts have recognized that the Government's obligations under *Brady* extend both to evidence that is exculpatory, *as well as* evidence that could be used to impeach a Government witness. *See, e.g., United States v. Bagley,* 473 U.S. 667, 676-77 (1985).

Under Rule 16 and *Brady,* relevant materials must be produced because they are in the possession of the Government. As the court explained in *United States v.*

October 20, 2005
Page 7

*Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989): "the scope of the government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case. The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."

Accordingly, we are not requesting information that is in the possession of the United States Senate. We are requesting notes, memoranda, confirmation materials, policies, procedures in the possession of the Department of Justice, FBI, GSA, Department of the Interior or any other federal agency (a.k.a. "Task Force") that were *provided by the Senate*.

In determining the production schedule, please observe that in light of the Government's Speedy Trial obligations, the defendant must receive *Brady* information "in sufficient time for the defendant to 'use the favorable material effectively in the preparation and presentation of its case.'" *United States v. Ramirez*, 54 F. Supp. 2d 25, 32 (D.D.C. 1999) (quoting *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976)). Especially given the nature of these accusations and applicable defenses, *Brady* time is sooner rather than later.

Furthermore, the Government's obligations under *Brady*, like its obligations under Rule 16, are to be construed broadly:

> [I]t is important to note that courts in this jurisdiction look with disfavor on narrow readings of the [G]overnment's Brady obligations; it simply is insufficient for the [G]overnment to offer "niggling excuses" for its failure to provide potentially exculpatory evidence to the defendant.

*Ramirez*, 54 F. Supp. at 33 (quoting *United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988)).

In sum, both Rule 16 and *Brady* impose broad obligations on the Government in responding to a criminal Defendants' requests for discovery:

> [T]he [G]overnment must bear in mind that it has the "affirmative duty to resolve doubtful questions in favor of disclosure," and that "if the sword of

October 20, 2005
Page 8

> Damocles is hanging over the head of one of the two parties, it is hanging over the head of the [G]overnment.". . . [T]he [G]overnment must remember that "the prosecutor's role transcends that of an adversary; he [or she] is the representative not of an ordinary party to a controversy, but a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done."

*Ramirez*, 54 F. Supp. 2d at 33 (quoting *United States v. Blackley*, 986 F. Supp. 600, 607 (D.D.C. 1997)); *United States v. Bagley*, 473 U.S. at 675 n.6.

Therefore, we reiterate our request that the Government meet its Rule 16 and *Brady* discovery obligations and provide full disclosure in a timely manner. Please continue to call me if you have any questions.

Sincerely,

Barbara Van Gelder
Counsel for David Safavian