# EXHIBIT 6

October 25, 2005

Barbara Van Gelder
202.719.7032
bvangelder@wrf.com

**VIA ELECTRONIC MAIL AND HAND DELIVERY**

Peter Zeidenberg
Nathaniel B. Edmonds
Public Integrity Section
United States Department of Justice
1400 New York St. NW
Suite 12100
Washington, DC 20005

Re:   *United States v. David H. Safavian*, Crim. No. 05-370

Dear Mr. Zeidenberg and Mr. Edmonds:

     I have received your letter dated October 24, 2005 and the additional production pursuant to our Rule 16 and *Brady* requests. This production advances several steps towards compliance with the government's discovery obligations. It has narrowed the scope of our remaining disputes, as you indicated. In order to make one last attempt to avoid the Court's intervention, this letter explains the basis for the outstanding requests and adds particularity where you have so requested.

***302s, ROIs, or other Materials relating to GSA General Counsel officials, the very government agents in receipt of Mr. Safavian's allegedly actionable statements.***

     You have stated that you do not have "additional notes or memoranda concerning" the communications of Mr. McKenna, Ms. Ellison, and Mr. Safavian or memorializing the communications of Mr. Safavian at the heart of this indictment. *See* 10/19/05 Ltr. 2(a). Because there are no such notes or memoranda, we are asking for their representations made to Government officials relating to Mr. Safavian's purported statements. I believe there are in fact several grounds for this production in this context.

     302s, ROIs, or other materials relating to GSA General Counsel and ethics officials are discoverable pursuant to Rule 16(a)(1)(B)(i)-(ii), which require the Government to produce "any relevant written or recorded statement by the defendant" and "the portion of any written record containing the substance of any relevant oral statement." Rule 16(a)(1)(E) would also mandate disclosure, since the

October 25, 2005
Page 2

substance of Mr. Safavian's statements as by these GSA officials are by definition "material to preparing the defense" to the counts based on these statements. *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (holding that under Rule 16(a)(1)(E), the Government must produce all items that "bear[] some abstract logical relationship to the issues in the case"). Indeed, this information would be material to Mr. Safavian's defense and discoverable under Rule 16 or *Brady* whether the government deemed it inculpatory or exculpatory. *See United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) ("Inculpatory evidence, after all, is just as likely to assist in the 'preparation of the defendant's defense' as exculpatory evidence.").

Count Two charges that Mr. Safavian on July 25, 2002 "falsely stated to the GSA ethics officer that Lobbyist A did not have any business and was not seeking to do business with GSA. . . ." On July 26, 2002, Mr. McKenna represented that "[Mr. Safavian] stated that neither Mr. Abramhoff nor his firm does business with or is seeking to do business with GSA."

If Mr. McKenna or Ms. Ellison discussed the context and content of this conversation with Mr. Safavian, that is what we need. We are simply looking to identify the substance of the defendant's alleged statements, since you claim no other memorializing and that Mr. Safavian made no additional written statements that could serve as the basis for this Count.

***E-Mails between certain named acquaintances of Lobbyist A and E-Mails sent to/from relevant GSA officials, all of whom were identified in correspondence the Government has represented will be used at trial.***

You have indicated that if properly tailored, you will consider producing these items. Here is what we are looking for and why. First, it is clear that Mr. Abramoff sent several directives to his associates regarding his interests in the Old Post Office and NSWC-White Oak property. These associate e-mails address whether or not Mr. Abramoff had business before the GSA, and thus are material to the defense.

Second, the initial set of discovery papers included emails from Mr. Safavian's home, office, as well as emails from Mr. McKenna, Ms. Ellison, Mr. Abramoff, Mrs. Abramoff, Mr. Rudy, Mr. Van Horne, Mr. Volz, Ms. Bowers, Mr. McBurney, Mr. Moravec, Mr. Chrisolini, Ms. Uhre, Mr. Costa, Ms. Jenkins, Mr. Stevens, Ms. Everett, and Rabbi Lapin. These e-mails also discuss, *inter alia*, the

October 25, 2005
Page 3

Old Post Office, White Oak, and the Scotland trip. As indicated by the Government's reliance in the indictment and intention to use them at trial, the correspondence materially relates to the activities of Lobbyist A and pertinent GSA officials during the May-August 2002 time-frame, and thus whether Mr. Safavian violated §§ 1001 or 1505 in his representations about them. These e-mails would also serve to assist the defense's preparation of a time-line of events, and help determine, for example, whether Mr. Abramoff made truthful representations.

In effort to provide the additional particularity you asked for, we request additional communications sent to/from these individuals *related to*: a) David Safavian, b) GSA procedures and policies relating to disposal of Government property, c) the Old Post Office building, d) the NSWC-White Oak property in Silver Spring, and/or e) the Scotland trip. This production would provide additional information about the nature of Lobbyist A's expressions of interest in GSA controlled property and GSA's posture with respect to these properties and therefore bear at least some abstract logical relationship to the issues in the case under Rule 16, *see Lloyd*, 992 F.2d at 350-51, or include relevant inculpatory or exculpatory information under *Brady*. See *Marshall*, 132 F.3d at 67.

The most relevant time-frame would be the May-August 2002 period. However, with respect to e-mails and communications concerning the Post Office and White Oak properties and Mr. Safavian's participation in the Scotland trip only, any and all correspondence before and after this period would also be material to Mr. Safavian's defense, since they would reflect the availability of these properties for "business" in the first instance, the GSA's ultimate decision concerning these matters, and Mr. Safavian's participation in these matters.[1]

In making your production decision we ask that you keep in mind that the "scope of the government's obligation under [Rule 16(a)(1)(E)] should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). And given that "[a]t least one of the rationales behind the materiality requirement (and limiting discovery by criminal Defendants generally)

---

[1] Notably, the same principles would apply and render discoverable *reports, documents, and correspondence set to, or emanating from GSA Commissioner Joseph Moravec.* He has made statements to the effect that the White Oaks property was unavailable for business in August 2002, and therefore his statements would address the defenses of impossibility and accurate representation.

October 25, 2005
Page 4

is to insure that the government not expend excessive time and effort securing documents for the defendant," and that "it is likely that the [government] will be relieved of work" if it honors this request, discovery is all the more appropriate. *United States v. George,* 786 F. Supp. 11, 14 (D.D.C. 1991).

### Rough Notes of Agents Reising and Brook Minnick for the May 26, 2005 Interview.

We have already established that courts have uniformly held that the Government must disclose the interview notes of Government investigators under Rule 16. *See also United States v. Clark,* 385 F.3d 609, 619-20 (6th Cir. 2004) (holding that the government "violated Rule 16 by failing to turn over [the investigating agent's] rough notes upon Defendant's request" under Rule 16(a)(1)(A) and (B)). This is not a recent development. An agent's rough notes were discoverable even *before* the 1975 and 1991 Amendments to Rule 16. *See, e.g., United States v. Lewis,* 511 F.2d 798 (D.C. Cir. 1975); *United States v. Harris,* 543 F.2d 1247, 1252-53 (9th Cir. 1976) (citing cases). Agents' notes constitute a "portion of any written record containing the substance of any relevant oral statement" made by the defendant, even if they are not only written record of interview. Fed. R. Crim. P. 16(a)(1)(B)(ii); *United States v. Almohandis, 307 F.Supp.2d 253, 255 (D. Mass. 2004)* ("The [handwritten] notes . . . may not be the only written record, but they certainly are 'a' written record."). This rule of production exists because "in some cases the information contained in thorough notes taken from the witness himself might be more credible and more favorable to the defendant's position than the final version." *United States v. Lilly,* 2003 WL 168443 *2 (citing the 1991 Advisory Notes to Rule 16).

It appears from your most recent correspondence that the only basis for withholding notes production lies in the fact that you are not contending that Mr. Safavian committed a §§ 1001 or 1505 violation during the May 26, 2005 interview. However, that is not the standard under any Rule 16 provision or *Brady* progeny. The only question(s) is whether the notes are either: (a) related to a "relevant" statement by the defendant and "in response to interrogation," Rule 16(a)(1)(A)-(B); (b) "material to preparing the defense; (c) intended for use at trial; or (d) otherwise exculpatory under *Brady*. The requested notes actually satisfy each provision. The May 2005 interview not only discussed Mr. Safavian's written and oral statements before the GSA, GSA-OIG, and Senate, but by production you have established that you will use the May 26, 2005 interview, and the interviewing agents' testimony, against Mr. Safavian at trial. The May 2005 interview is not only material to the

October 25, 2005
Page 5

traditional defenses of §§ 1001 and 1505, but also would speak to the viability of a motion concerning possible violations of Mr. Safavian's due process rights.

***Documents and any other Reports Concerning Communications about Mr. Safavian's Arrest and/or Cooperation in this Matter.***

Rule 16 is clear:"if the defendant has made a relevant oral statement, either before or after arrest, to any person then known to him to be a government agent, the rule requires the government to disclose to defendant that portion of any written record containing the substance of the statement. This requirement applies without regard to whether the prosecution intends to use the statement at trial." 2 Wright & Miller, Federal Practice & Procedure 3d § 253.

Moreover, the items we have requested, which would encompass any wiretaps for example, are material to Mr. Safavian's due process defense. It is our position that the Government used coercive tactics on or about the occasion of the defendant's arrest that implicate Fifth and Sixth Amendment concerns in the attempt to force Mr. Safavian to cooperate in its investigation into Lobbyist A. Therefore, these items are not only discoverable under Rule 16(a)(1)(A) and (B) but Rule 16(a)(1)(E) and *Brady* as well.

***Material Documents "Not Currently in Possession"***

You have represented that several requested items are "not currently" in your "possession" and otherwise not discoverable. These include:

  a. *GSA Procedures or Agreements Concerning the Privilege Guidelines for Communications between GSA officials*

  b. *Reports, Documents, and Correspondence Sent to, or Emanating From GSA Commissioner Joseph Moravec*

  c. *Documents Related to Ethics Opinions*

  d. *Senate Investigators Notes*

  e. *Statements made by Senate Officials to other Government Agents*

  f. *Senate Confirmation Materials*

October 25, 2005
Page 6

      Notably, Rule 16 and *Brady* requirements extend to "the government," not simply the Department of Justice, and reach all items within "possession, custody, or control." Fed. R. Crim. P. 16. Therefore, if these items are believed to be in the possession, custody, or control of the GSA or Senate, they are in said possession of the government and are discoverable. Surely, counsel cannot simultaneously maintain that it can bring a case predicated on the fact that statements were made to *government* agents (GSA and Senate) but that documents held by those respective agencies are not in the "government's" possession. And indeed, we refer you once again to *United States v. Poindexter*: "[A] prosecutor who has had access to documents in other agencies in the course of his investigation cannot avoid his discovery obligations by selectively leaving the materials with the agency once he has reviewed them." 727 F. Supp. 1470, 1477-78 (D.D.C. 1989). Once Government counsel "has benefited from the cooperation of [the Government agency] in this area, . . . he cannot now, in fairness, be permitted to disclaim all responsibility for obtaining [agency] documents that are material to the preparation of the defense." *Id.*

      Assuming that these materials are in the possession of the GSA and Senate, they must be produced. The extent of the attorney-client privilege between GSA General Counsel and GSA officials and other Documents related to GSA Ethics opinions bear logical relationship to Mr. Safavian's July 2002 communications with Mr. McKenna and Ms. Ellison. The Hon. Joseph Moravec's communications bear logical relationship to the nature of Lobbyist A's expressions of interest in GSA related property. The Senate Investigators notes are discoverable for the same reasons that Agents Reising and Minnick's notes are. Senate Staffer statements concerning Mr. Safavian's representations that form the basis of Counts Four and Five are discoverable under several Rule 16 and *Brady* provisions, as are the Senate Confirmation materials.

      In addition, your October 24, 2005 correspondence claims that the Government does not have "anything which is not publicly available related to" the request for documents related to GSA ethics opinions. Please clarify this distinction and identify, if possible, the public sources you are referring to.

      Our dialogue has born some fruit. And it is our hope that we have demonstrated sufficient grounds and/or specificity where requested to avoid having to file a Motion to Compel on Friday, October 28, 2005. Please inform upon receipt and review as to whether a motion shall be necessary to satisfy any of these requests.

October 25, 2005
Page 7

Sincerely,

Barbara Van Gelder
Counsel for David Safavian