**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES of AMERICA,** | |
| **v.** | |
| **DAVID HOSSEIN SAFAVIAN,** | **Criminal No. 05-370 (PLF)** |
| **Defendant** | |

**DEFENDANT DAVID H. SAFAVIAN'S REPLY TO THE GOVERNMENT'S**
**OPPOSITION TO THE MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

At one point in their opposition to our Motion to Compel Discovery, the prosecutors churlishly claim that our discovery requests were made with the "hope of disrupting on-going investigations and to force the government to choose between this prosecution and other investigations." Opp at 15.

Notwithstanding the fact that Mr. Safavian has nothing to do with the Government's allocation of its investigative resources, the statement is telling for two reasons. First, because it admits there is a linkage between the instant case and the ongoing investigation into Jack Abramoff. While the Government tries to downplay the connection, it has certainly colored their actions with respect to Mr. Safavian. He did not pick the timing of his arrest or his indictment. He did not ask for his house to be put under surveillance or to be pulled over by unmarked FBI cars and told that if he did not contact the Department of Justice by noon that day and agree to cooperate with their investigations, he would be arrested. What is deemed a disruption to the prosecution is viewed as a constitutional deprivation of due process protections by the defense.

Second, the prosecutor's statement underscores the difference between the two parties' views regarding the Government's discovery obligations in this matter. The difference in approach is drastic. The prosecution contends that their Rule 16(a)(1)(E) discovery obligation extends only as far as a *post-trial* Brady exculpatory standard and the prosecution's view of the "factual backdrop" of the case and "what it . . . must prove at trial." Opp. at 7-8, 14. The defense maintains that the rules and case law deem otherwise.

It is well-established that "the disclosure required by Rule 16 is much broader than that required by the due process standards of Brady." United States v. Conder, 423 F.2d 904, 911 (6th Cir. 1970); accord Fed. R. Crim. P. 16(a)(1)(c), 1974 advisory committee note. The government is obligated to produce not only all items within its possession, custody, or control that it "intends to use . . . in its case-in-chief at trial," Fed. R. Crim. P. 16(a)(1)(E)(ii), but also those that are "material to preparing the defense." 16(a)(1)(E)(i).

The prosecution mostly ignores the pertinent defenses set forth in the Defendant's Memorandum of Law and complains that Mr. Safavian is seeking "tens of thousands of pages" of irrelevant documents, Gov't Opp. at 7, and yet the prosecution itself does not even know how many documents Mr. Safavian has a right to review because it has not searched its own records.

The prosecution's reluctance to produce documents is also founded upon the false premise that the Government can bring a case where the alleged criminality of the defendant's statements hinges on the fact they were made to government counsel and "investigators" under 18 U.S.C. §§ 1001 and 1505, and yet assert that those same counsel and investigators are not "government agents" for the purposes of discovery pursuant to Federal Rule 16(a)(1)(A).

This Circuit has provided a lucid definition of this Rule 16 materiality requirement that the prosecution has attempted to shirk without legal authority: "evidence is material under Rule

16 as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (citing United States v. Lloyd 992 F.2d 348, 351 (D.C. Cir. 1993)) (internal quotation marks omitted). While the prosecution insists that, under Brady it "is not required to disclose neutral or inculpatory evidence," Opp. at 7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)), the Court rejected this very argument in Marshall, holding that there was "no reason why inculpatory evidence could not serve the [Rule 16] functions mentioned in Lloyd as well as exculpatory evidence." 132 F.3d at 68.

As the Court explained, discovery obligations mandated by Rule 16 "contribute[ ] to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea." Id. (citing 1974 Rule 16 advisory committee note). If the government was excused from its obligation to disclose non-exculpatory evidence that it does not intend to introduce in its case-in-chief, the defense would be forced to "make any pre-trial plea decisions without knowing the true strength of the government's evidence," and could be left "flying blind" into a trial "minefield." Id. at 67 –68.

Like the prosecution here, the government in Marshall had also attempted to avoid discovery of items material to the preparation of defense, relying heavily on "isolated language" from older cases observing that the government must disclose Rule 16 evidence where it "enable[s] the defendant significantly to alter the quantum of proof in his favor." 132 F.3d at 68 (citations omitted); see, e.g., Opp. at 8, 15 (citing United States v. George, 786 F. Supp. 11, 13 (D.D.C. 1991)). The Court in Marshall dismissed this contention as well:

> [T]his language does not mean that inculpatory evidence may never be material.
> To the contrary, a defendant in possession of such evidence may "alter the

quantum of proof in his favor" in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

Marshall, 132 F.3d at 67 –68.   Accordingly, the items requested in Attachment A to the Defendant's Motion to Compel relate to the issues in this case, bear upon the Defendant's belief in the legality of the activities, and "could reasonably lead to the discovery of such information." United States v. Secord, 726 F. Supp. 845, 849 (D.D.C. 1989).

The prosecution's attempt to utilize a post-trial Brady lens to restrict its Rule 16 and pre-trial Brady obligations has been rejected by courts.  The Brady standard for materiality, evidence "favorable to an accused" that would have changed the result of the trial, United States v. Bagley, 473 U.S. 667, 674 (1985), "obviously cannot be applied by a trial court facing a pretrial discovery request."  United States v. Acosta, 357 F.Supp. 2d 1228, 1233 (D. Nev. 2005) (citing United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-99 (C.D. Cal. 1999).  As courts have reasoned:

> [A] finding of a *Brady* violation requires the appellate court to conclude that disclosure might have affected the outcome of the trial, [therefore] it is understandable that such a violation would only occur if the withheld evidence was admissible or would have led to admissible evidence. . . . Thus, from the post-trial perspective, the suppression of evidence that would not have changed the outcome, either because it was inadmissible or because it lacked sufficient probity, would not create a due process violation.  This standard is only appropriate, and thus applicable, in the context of appellate review.

Sudikoff, 36 F. Supp. 2d at 1198-99 (internal citations omitted).

Therefore, in the pre-trial context, Brady does not function as a limitation on discovery, but rather as an *additional* obligation to disclose "all exculpatory or impeachment evidence" at this time.  United States v. Carter, 313 F.Supp.2d 921, 925 (E.D. Wis. 2004) (holding that the court should require "disclosure of favorable evidence under Brady and Giglio without

attempting to analyze its 'materiality' at trial") (citing <u>United States v. Peitz</u>, No. 01-CR-852, 2002 WL 226865, at * 3 (N.D. Ill. Feb. 13, 2002)).  Given the difficulty of discerning before trial what combination of evidence will be deemed favorable to the accused and "material either to guilt or punishment," <u>United States v. Nagra</u>, 147 F.3d 875, 881 (9th Cir. 1998) (citations omitted), where doubt exists as to the usefulness of evidence, the prosecution must resolve such doubts in favor of full disclosure.  <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976); <u>United States v. Van Brandy</u>, 726 F.2d 548, 552 (9th Cir. 1984) (citations omitted).

## <u>SUMMARY OF REQUESTS</u>

A.    <u>Material Items in the Possession, Custody, or Control of the Prosecution that the Prosecution Refuses to Produce</u>

1.    <u>Investigative Reports of GSA Counsel and the Rough Notes from the Interviews of Senate Investigators Concerning the Substance of Mr. Safavian's Statements</u>

The prosecution refuses to produce available written records, namely the rough notes, 302s and ROIs of GSA General Counsel officials Ray McKenna and Eugenia Ellison, concerning the substance of the questions and answers at issue in Count Two, which alleges that Mr. Safavian concealed, or otherwise made false statements in his July 25, 2002 solicitation of an ethics opinion.  Indictment at ¶¶ 28-29.  The prosecution also withholds the rough interview notes of the September 2005 FBI interviews with the Senate "investigator[s]" concerning Mr. Safavian's actionable conversations in Counts Four and Five.  Indictment at ¶¶ 36-40.

The prosecution does not address the defendant's argument that the interview reports and notes materially relate to the substance of the very statements at issue in this case, nor does it counter the contention that they also speak to whether the government questions were "fundamentally ambiguous" and therefore immune from § 1001 and § 1505 prosecution.  Def. Memo at 10-11.  Without providing any justification, the prosecution simply declares that the

government interview reports (rough notes, 302s or ROIs) of GSA counsel McKenna and Ellison and the rough notes of the September 2005 interviews of the Senate investigators are covered by the Jencks Act and are only discoverable if those individuals testify on direct examination at trial. Opp. at 10. This contention is without merit.

As the prosecution recognizes, the interview reports of GSA General Counsel officials Ray McKenna and Eugenia Ellison are the only resources available to memorialize any of Mr. Safavian's oral statements to these government officials. Opp. at 9. The prosecution has acknowledged that there are contemporaneous memoranda of any conversations between defendant Safavian and the General Counsel's office. Id. However, Rule 16(a)(1)(A) directs that the prosecution "disclose to the defendant *the substance* of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). Rule 16(a)(1)(B) provides that the prosecution produce "the portion of any written record containing the substance of any relevant oral statement" made "in response to interrogation by a person the defendant knew was a government agent."

The prosecution does not deal with the implications of the gap between Mr. Safavian's statements in the July 25, 2002 e-mail and those attributed to him in the July 26, 2002 ethics opinion pointed out in the Defendant's Memorandum of Law. This discrepancy suggests that there may have been either additional questions from the General Counsel, a potential party opponent, that prompted actionable oral answers from Mr. Safavian, or that the July 26, 2002 ethics opinion misrepresented Mr. Safavian's July 25, 2002 written statements. Def. Memo at 8 and Ex. 9. Given that there are no other notes available, the 302s and/or ROIs are the only written records that would answer this question that is critical to the charges and the defense.

If the 302s or ROIs of McKenna and Ellison contain references to any "interrogation" into the issues related to the ethics opinion or any relevant oral statements by Mr. Safavian, they would be discoverable to that extent under Rule 16(a)(1)(A) and (B). See 1991 Rule 16(a)(1)(A) advisory committee note. If the 302s or ROIs do not reference any additional oral statements that compliment the July 25, 2002 request, they would still be discoverable under Rule 16(a)(1)(E), since they would be material to the preparation of the defense that Mr. Safavian's representation that Mr. Abramoff "ha[d] no business before GSA (he does all of his work on Capitol Hill)" was accurate and sufficient, see, e.g., United States v. Gatewood, 173 F.3d 983, 988 (6th Cir. 1999) (holding evidence to be insufficient to support conviction because government failed to negate "any reasonable interpretation that would make the defendant's statement factually correct") (citation omitted). They would also "'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal [of McKenna or Ellison.]'" Marshall, 132 F.3d at 68 (citing Lloyd).

The prosecution cannot circumvent its obligation to produce the rough notes, 302s and ROIs of McKenna and Ellison under the first scenario on the grounds that these individuals are private, third-party witnesses. See Opp. at 9 n. 1 ("In this case, neither Mr. McKenna or Ms. Ellison were acting as government agents when they sought to provide Defendant Safavian with an appropriate ethics opinion."). The prosecution cites nothing for this bald assertion, and Rule 16(a)(1)(A) "requires the Government to disclose the substance of a defendant's statement made to an *employee* of the Government." United States v. Brighton Bldg. & Maint., 435 F. Supp. 222, 232 (N.D. Ill. 1977) (emphasis added). In addition, these are the very officials whose

oversight and interrogation have allegedly bound Mr. Safavian.[1]  Indeed, if they were not executive branch officials, there would be no grounds for an 18 U.S.C. § 1001 charge. Furthermore, the failure to disclose even the 302s of GSA Counsel McKenna and Ellison is fundamentally inconsistent with the prosecution's disclosure of the 302s of the Senate "investigators."  Opp. at 11.

The prosecution also cannot avoid discoverability of the rough notes, 302s or ROIs of GSA General Counsel and the rough notes of interviews with Senate investigators pursuant to Rule 16(a)(1)(E).  Not only would they "'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal,'"  Marshall, 132 F.3d at 68 (quoting Lloyd), but they would address the issue of whether Mr. Safavian had a "duty to disclose" the alleged concealed information.  It is incontrovertible that the content and parameters of the actionable government inquiry under §§ 1001 and 1505 determine whether an individual had such a duty.  Def. Memo at 10-11 (citing, inter alia, United States v. Curran, 20 F.3d 560, 566 (3d Cir. 1994) (stating that a defendant cannot be guilty of concealment as a matter of law where the context does not create a duty to disclose information).

In addition, this request would speak to the defense that the prosecution has impermissibly hinged its allegations of false statements on "fundamentally ambiguous" questions and contexts.  Def. Memo at 12 (citing, inter alia, United States v. Manapat, 928 F.2d 1097, 1099-1102 (11th Cir. 1991).  Thus, the prosecution cannot demonstrate its allegations of concealment and false representation, Indictment ¶¶ 29, 38, 40, without identifying the legally binding questions or issues presented.

_____

[1]    Indeed, review of the interview notes would be material to the determination of whether either of these individuals (as well as the Senate staffers) should be called as defense witnesses.

Not surprisingly, the prosecution does not address these viable defenses and their relationship to the requested items in its opposition. Moreover, the failure to produce the rough notes of the FBI interviews does not square with the prosecution's acquiescence in the production of the interview notes of the May 2005 Safavian interviews with FBI agent Jeffrey Reising and Department of Interior Inspector General Agent Brook Minnock. See Opp. at 12-13; infra at 9.

Spurning the dictates of Rule 16, the prosecution instead seeks refuge in the Jencks Act. Opp. at 10. The government's Jencks Act argument, in particular its reliance on United States v. Tarantino, 846 F.2d 1384, 1414-15 (D.C. Cir. 1988), is inapposite. As an initial matter, Tarantino is another example of the prosecution's reliance on *post-trial* assessments of whether omitted discovery would have affected the ultimate outcome. Nevertheless, the Court in that case was not addressing a § 1001 or § 1505 context where the defendant's statements allegedly constituted the crime. Rather, Tarantino involved a typical drug conspiracy prosecution that was not remotely similar to the charges in this Indictment. Moreover, in that matter the defense argued that the government had failed to produce the reports of private, third-party witnesses, and not, as here, statements of government officials and potential party opponents who had allegedly interrogated the defendant and elicited actionable, oral statements.

Finally, even if the McKenna and Ellison interview reports were actually mere witness statements, the prosecution has failed to acknowledge that the Court in Tarantino recognized that the Jencks Act has no impact on the government's Brady and Giglio obligations. 846 F.2d 1384, 1414 n. 11 (citations omitted). Furthermore, in §§ 1001, 1505 cases involving multiple witnesses, courts have been "mindful of the fact that the late production requirements of the Jencks statute were adopted primarily to protect witnesses from intimidation or worse." United

States v. Poindexter, 727 F.Supp. 1470, 1484–85 (D.D.C. 1989)  Where such interference is not

an issue, and it is not here, this Court has ordered the prosecution to produce the Jencks material

well-before trial, since the "delay of production of these materials until the time of the witness'

testimony would be likely to cause extensive trial delays."  Id.

> 2.    Rough Interview Notes and Tapes of May 26, 2005 Interview

The prosecution has asked the Court to deny Mr. Safavian's request for the rough notes

of Agents Reising and Minnick from the May 26, 2005 Interview given that it has agreed to

produce a redacted copy of their notes to the defendant.  Opp. at 12.  While this advance toward

meeting its obligation is welcome, the prosecution must be held to the actual Rule 16 standards.

That is, any redacted production must include notes: "*which contain[] reference to a relevant*

*oral statement by the defendant* which was in response to interrogation, without regard for

whether the prosecution intends to use such statement at trial."  1991 Rule 16(a)(1)(A) advisory

committee notes (emphasis added).  Thus, the Rule requires that the prosecution not simply

produce agents' notes memorializing Mr. Safavian's statements but those portions that discuss or

"refer" to those "relevant oral statements."

Notably, the prosecution must also produce any sections of the agents' notes that are

material to Mr. Safavian's defenses, Fed. R. Crim. P. 16(a)(1)(E)(i), or constitute Brady material.

Hence, the prosecution must produce notes providing insight into the scope and parameters of

questions and answers during the: (a) solicitation of the GSA Counsel ethics opinion (Count

Two); (b) GSA-OIG investigation; and (c) conversations with the Senate "investigator" in

paragraph 36 of the Indictment.  See supra at 5-6.[2]

---

[2]    In correspondence on November 9, 2005, the prosecution indicated it will be producing
its redacted notes at the status hearing on November 14, 2005.  The defense reserves the right to
challenge the redacted production on the grounds stated above.  The defense notes that the
prosecution's inability to produce even information that it agrees is discoverable in a timely

3.     E-Mail Correspondence between Abramoff and his Associates Concerning Mr.
Safavian, the OPO Building, the NSWC-White Oak Property, and the 2002
Scotland Trip

The prosecution simply misstates law and fact regarding Mr. Safavian's request for e-mails concerning Mr. Safavian's trip to Scotland, the Old Post Office Building ("OPO") and the NSWC-White Oak Property.  The prosecution initially only produced a select number of e-mails that that they obtained from Mr. Abramoff's former law firm, Greenberg Traurig.  These were documents that they stated they intended to use at trial.  The e-mails include communications between Mr. Abramoff and Mr. Safavian regarding Mr. Safavian's participation in the Scotland trip and Mr. Abramoff's expressions of interest in the Old Post Office and NSWC-White Oak Properties.  Embedded in the e-mails were communications between Mr. Abramoff and his associates regarding observations, inquiries or action items concerning the trip or properties. See, e.g., June 19, 2002 e-mail between Van Horne and Abramoff (Ex. 11 attached hereto).

We believe that the requested contemporaneous e-mails between these associates aid in our defense that Mr. Safavian accurately represented that Mr. Abramoff was not actually "doing business" with the GSA.[3]  For example, the Greenberg Traurig e-mails include statements by GSA officials noting that the NSWC-White Oak property was not open for private bidding.  See

_____

fashion indicates that the government hastened with an indictment before it could spend adequate time reviewing and building the evidence to support its allegations.  Continued production problems due to the lack of preparation may impede Mr. Safavian's speedy trial rights.

[3]     Indeed, the burden will be on the government to "negate any reasonable interpretations that would make the defendant's statements factually correct."  United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994); see also United States v. Gatewood, 173 F.3d 983, 988 (6th Cir. 1999) (holding evidence to be insufficient to support conviction because government failed to negate "any reasonable interpretation that would make the defendant's statement factually correct") (citation omitted); United States v. Moses, 94 F.3d 182, 188 (5th Cir. 1996) (holding evidence to be insufficient to sustain a § 1001 conviction for making false statement on INS form because the statement in question, although misleading, was literally true).  The prosecution itself concedes that items "bearing on whether defendant Safavian was or was not truthful to the GSA ethics officer, the GSA-OIG, and the Senate" would be material to the defense in its explanation for denying production of the informant's identity.  Opp. at 18.

July 25, 2002 e-mail from Sharon Jenkins to Shawn McBurney (Ex. 12). If the property was not available for commercial bidding, it would have been impossible for an individual to have been "doing business" with the GSA on this matter.

The e-mails the prosecution intends to use at trial also include discussions of Mr. Safavian and his participation in the Scotland trip.[4]  See, e.g., June 15, 2002 e-mail between Abramoff and Tony Rudy, GTG E000019884 (Ex. 13).  Contemporaneous e-mails would therefore also assist with the issue of whether Mr. Safavian's representations were "materially false," 18 U.S.C. § 1001, that is whether or not Mr. Safavian's statements to the GSA-OIG's investigation into "Safavian's participation in an international golfing trip provided by lobbyists" could have influenced the result of that investigation given that his trip was not in fact provided by lobbyists.  Indictment ¶ 24; United States v. Barrett, 111 F.3d 947, 953 (D.C.Cir. 1997), cert. denied, 522 U.S. 867 (1997) (holding that it is uncontested that § 1001 requires that the facts at issue be "material" to the Government inquiry, and that "materiality" is an element of the offense that the Government must prove).  At the very least, they would "bear some abstract logical relationship to the issues in the case," Lloyd, 992 F.2d at 351.

Instead of searching for e-mails from the individuals specified in our request,[5] the prosecution -- stating "the defense can make of this material what it likes," Opp. at 13 -- gratuitously dumped several hundred un-requested (and irrelevant) e-mails reflecting communications between Mr. Safavian and Mr. Abramoff going back to 1995. Such "smoke and

---

[4]    While the most relevant time-frame would be the time leading up to the Scotland trip, May – August 2002, discoverable e-mails that concern OPB and White Oak properties and Mr. Safavian would transcend this period.

[5]    Those individuals are: (1) the Lobbyist's wife, Pam Abramoff; (2) Mr. Abramoff's law firm colleagues, Anthony Rudy, John Van Horne, Neil Volz, Holly Bowers; and (3) "entity A" associates Colin Stevens and Rabbi David Lapin from Eshkol Academy.  See Def. Memo at 17.

mirror" tactics do not alter the fact that the prosecution is withholding relevant and material items that are properly discoverable under Rule 16.

On the law, instead of responding to the materiality of the anticipated defenses discussed above as well as in our original Memorandum, Def. Memo at 17-18, the prosecution withholds production on the unfounded premise that it is obligated to produce only the items related to what it believes will be relevant at trial according to *its* theory of the case, Opp. at 14, as opposed to those items "material to preparing the defense," as that provision has been interpreted in this Circuit. Fed. R. Crim. P. 16(a)(1)(E)(i).

Without support or explanation, the prosecution simply pronounces that Mr. Abramoff's correspondence with his business associates that discuss Mr. Safavian, the Scotland trip, and the Old Post Office and NSWC-White Oak facilities could not have any logical relationship to the issues in this case. Somehow, the prosecution has introduced a new burden on the defense, i.e. that Mr. Safavian has to have previously seen the documents for them to be discoverable. Opp. at 14-15. The prosecution refuses to recognize that the materiality standard "is not a heavy burden" and the requested items would "'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" Marshall, 132 F.3d at 68 (citation omitted).

The requested e-mails are not only narrowly tailored to these recognized Rule 16 functions and the issues of the Indictment, but they are also key to several defenses. Because the prosecution has deprived the defendant of access to these documents, the failure to produce will have a material affect on the preparation of his defense and dispositive motions.

**B.**     **Discoverable Items in the Possession, Custody or Control of any Federal Branch or Agency for which the Prosecution has had Knowledge of and Access to**

1.     Reports, documents and correspondence sent to, or emanating from, GSA Commissioner Joseph Moravec and Related GSA officials concerning the Old Post Office Building, NSWC-White Oak Properties, and GSA Procedures and Policies for Disposal

The prosecution represents that it "has produced all of the e-mails from GSA officials regarding OPO and NSWC-White Oak that it has in its possession . . . [and that] those e-mails were obtained because defendant Safavian forwarded that information to Abramoff." Opp. at 15. There are several reasons to doubt whether the prosecution has in fact met its burden.

First, the prosecution's proclamation that it has produced "all e-mails from the GSA" regarding these facilities must be called into question when it has otherwise admitted that it only has reviewed e-mails forwarded from the defendant through Greenberg Traurig.

Second, the prosecution is playing coy with Rule 16. It purports to "understand[] its obligations to provide discovery," Opp. at 16, yet at the same time interprets the word "government" in that Rule to mean only the "investigative agencies" of the GSA-<u>OIG</u> and the FBI. <u>Id</u>. As the defense has already pointed out and as the prosecution has not refuted, it is treatise law that "the broad language of Federal Rule 16" requires that "material which is possessed by any agency of the 'government,' *whether or not investigatory*, should be discoverable if it is identified to its likely location in the defense request (and thereby made 'known' to the 'attorney for the government')." Def. Memo at 19-20 (citation omitted). Accordingly, the prosecution cannot make such a representation that it has honored this request until it has searched for the requested material evidence wherever it may be found at the GSA. <u>United States v. Brooks</u>, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (holding that the prosecution is required to search the files of all branches of government aligned with the prosecution); <u>United States v. Jennings</u>, 960 F.2d 1488, 1490 (9th Cir. 1992) (holding that the government's discovery

obligations cannot be evaded by claiming lack of control over the files of other agencies); United States v. Ahmad, 53 F.R.D. 186, 193 (M.D. Pa. 1971) ("It is also the prosecutor's duty to use due diligence in obtaining from other government agencies such exculpatory evidence, for negligent non-disclosure violates due process.").

Third, the prosecution on the one hand claims to have produced all of the e-mails from GSA officials regarding OPO and NSWC-White Oak that it has in its possession, Opp. at 15, yet four pages later says that it is withholding production of the "reports, documents and correspondence sent to, or emanating from, GSA Commissioner Joseph Moravec, and related GSA officials concerning the OPO, NSWC-White Oak, and GSA procedures and policies for disposal of government property" because the defendant cannot demonstrate the materiality of his request. Opp. at 19 (citing nothing). Given that the defense has not received this production of material evidence, it is assumed that the latter is the prosecution's actual position.

Instead of engaging the actual arguments in the October 25, 2005 correspondence and the Defendant's Memorandum of Law explaining why these e-mails are materially relevant for the defense, Def. Memo at 16-19, 24-25 & Ex. 6, the prosecution summarily states that the Defendant "cannot demonstrate any logic" how these e-mails "could have any bearing on what his state of mind was when he sought an ethics opinion in 2002, was interviewed by the GSA-OIG in 2003, or sent a letter to the Senate committee in 2005." Opp. at 19. The prosecution continues to fail to grasp the Rule 16(a)(1)(E) obligations and the nature of the §§ 1001 and 1505 charges at issue in this case. Rule 16 obligations are not limited to documents supporting or relating to the theories that the prosecution will advance in support of its case-in-chief, Fed. R. Crim. P. 16(a)(1)(E)(ii), but also include all items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); see supra at 3, 13 (citing Marshall, 132 F.3d at 67-68).

As mentioned above, one of the most fundamental defenses to §§ 1001 and 1505 charges is that the defendant's statements are not false as presented. See, e.g., United States v. Johnson, 937 F.2d 392, 399 (8th Cir. 1991) (deciding request to submit price quote based upon quantity stated in Air Force letter created ambiguity as to whether Air Force was requesting contractor to certify stated quantity as accurate). The prosecution has only produced GSA e-mails that it has identified as supportive of its position, but even those e-mails support the notion that Mr. Safavian's representations concerning Mr. Abramoff's "business" with the GSA were not false or misleading, assuming *arguendo* that he had a legal duty to disclose this information and that it was not otherwise immaterial.

The prosecution's e-mails include correspondence from pertinent GSA officials, including GSA commissioner Joseph Moravec himself, indicating that GSA did not consider the subject properties open for "doing business." Accordingly, Mr. Abramoff could not have been "doing business" with these properties at this time. The defense reasonably infers that there would be additional e-mail traffic at the GSA discussing whether and which parties were conducting business, that is, actually contracting with the agency at that time. Far from a "fishing expedition," Opp. at 19, the requests speak to one of the most fundamental issues in the case.

Notably, the defense does not have to prove the sufficiency of the defense to succeed on its motion to compel, as the prosecution implies. Opp. at 19. The prosecution cannot cite any authority for this proposition and with good reason: the whole point of discovery is to equip the defendant to articulate a recognized defense. Marshall, 132 F.3d at 67 (holding that Rule 16(a)(1)(E) is designed to assist with the "*preparation of* the defendant's defense," whether or not the evidence is ultimately favorable) (emphasis in original); Poindexter, 727 F. Supp. at

1477-78 (awarding discovery of documents that *might* have provided support for three of defendant's defenses that he did not attempt to conceal the National Security Council's activities, that he had no motive to conceal these activities since they were already widely known, and/or that since they were widely known, he reasonably believed them to be legal).

As with the business associate e-mails, it is inappropriate to limit the request for GSA e-mails discussing these properties to May-August 2002 because of the context. An e-mail to or from GSA Commissioner Joseph Moravec or other pertinent officials regarding these properties discussing if and when the properties were open for private bidding, or were otherwise disposed of would speak to the question of whether Mr. Abramoff was, or could have been, "doing business" with the agency irrespective of time. Such e-mails would be material to Mr. Safavian's representations in his request for an ethics opinion from GSA counsel in July 2002. See supra at 12-13.

2.    Notes and Rough Notes of Senate Investigators Regarding Mr. Safavian's Statements

As noted above, see § A.1., the prosecution has failed to produce the FBI agents' rough notes of their interviews with the Senate "investigators." The prosecution is also withholding of the notes of Mr. Safavian's actionable conversations with the Senate "investigator" identified in paragraph 36 of the Indictment. Their reasons for withholding this information are also groundless.

The Chief Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on Indian Affairs respectively, are incontrovertibly "government agents" as contemplated Rule 16(a)(1)(A) and (B). Therefore, the prosecution must produce the requested notes containing "reference to a relevant oral statement by the defendant which was in response to interrogation, without regard for whether the prosecution intends to use such statement at

trial." 1991 Rule 16(a)(1)(A) advisory committee notes (emphasis added); Def. Memo. at 13-14 (citing, inter alia, United States v. Clark, 385 F.3d 609, 619-20 (6th Cir. 2004) (holding that the prosecution "violated Rule 16 by failing to turn over [the investigating agent's] rough notes upon Defendant's request" under Rule 16(a)(1)(A) and (B)). To fail to produce these notes would be utterly inconsistent with the prosecution's obligation and agreement to produce the notes of the FBI agents who conducted the May 2005 interview of Mr. Safavian. See supra at 9-10. It is not clear whether the prosecution also objects to the Rule 16 production obligations on the grounds that the notes relate to officials from the Senate as a separate branch of government. Opp. at 21. To the extent that it does, the prosecution is also mistaken on this issue.

As noted in the Defendant's discovery correspondence and Memorandum of Law, most Courts, including this one, have maintained that the Rule 16 burdens extend to the "government," meaning all "files maintained by *branches* of government 'closely aligned with the prosecution.'" Brooks, 966 F.2d at 1503 (citing United States ex rel. Fairman, 769 F.2d 386, 391 (7th Cir. 1985)) (emphasis added). The same principle holds for the prosecution's Brady obligations. United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) ("Information possessed by other *branches* of the federal government, including investigating officers, is typically imputed to the prosecutors of the case.") (emphasis added) (citation omitted); United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973) ("[T]here is no suggestion in *Brady* that different "arms" of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities."), overruled on other grounds, United States v. Henry, 749 F.2d 203 (5th Cir. 1984).

The prosecution has admitted that the Senate has been "by no means uncooperative with this investigation." Opp. at 16. In such instances, the production obligation is clear: once the

prosecution has "benefited from the cooperation of the [Senate] in this area . . . [it] cannot now, in fairness, be permitted to disclaim all *responsibility for obtaining* [Senate] documents that are material to the preparation of the defense."  Poindexter, 727 F. Supp. at 1478 (emphasis added). The prosecution appears to suggest that this obligation in general is limited by the fact that the Senate "has not permitted us to inspect their files or records."  Opp. at 16.

However, not being able to conduct a wholesale inspection of the Senate Committee's records is different from the standard articulated in Poindexter, which is merely that the prosecution has "benefited from."  It is even further removed from the subsequent standard recognized in Brooks, which requires discovery of "files maintained by branches of government 'closely aligned with the prosecution.'"  966 F.2d at 1503 (citation omitted).  The prosecution does not maintain that the Senate investigation into misuse of tribal funds by Lobbyists, the very investigation Mr. Safavian is alleged to have obstructed, is not aligned with the prosecution. Indeed, recently produced documents reveal that the Senate investigator planned to bring Mr. Safavian in to take his deposition in an attempt to build a record for a criminal referral to the Department of Justice.  See DS-DOJ-001613.  Moreover, it is difficult to see how the prosecution can simultaneously argue that it has not viewed or otherwise benefited from the investigation of that branch of government, yet promise to "disclose to defendant Safavian all of the documents of which we are aware and which constitute either Brady, Rule 16, or Jencks." Opp. at 17.

3.    The Identity of the Author of the Hotline Complainant [6]

The prosecution's first attempt to deflect this request was to state that they do not know who the hotline complainant was.  After we requested information regarding a specific individual whom we have reason to believe is the author of the complaint, the prosecution now contends that the issue of the cause for the GSA-OIG investigation "has no bearing on whether defendant Safavian was or was not truthful,"  Opp. at 18.  We disagree.  It is the *cause* of the proceeding that defines the parameters of the "pending proceeding" that Mr. Safavian is alleged to have "corruptly" impeded.  18 U.S.C. 1505.  Therefore, the issue of the cause of the GSA-OIG investigation is material to our proposed dispositive motions and ultimate defense in this matter.

Once again, the standard for disclosing the identity of the informant is not whether it would relate to the prosecution's selective recognition of valid defenses, but rather whether the identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  Roviaro v. United States, 353 U.S. 53, 60-61 (1957).  As we have explained previously, Def. Memo at 22-23, we believe that the hotline complainant has made a number of allegations against a number of GSA officials. Consequently, the motivations of the informant in this instance would address whether there were even legitimate grounds to open the GSA-OIG investigation given that it was clear that Mr. Safavian had paid for the trip and taken a leave of absence.

4.    GSA Procedures or Agreements Related to Ethics Opinions

The prosecution claims that it is not sure what the defense is seeking in this request, but it is sure that it would not be discoverable.  Opp. at 18-19.  This illogical statement is indicative of

---

[6]    We also note that we have requested additional information regarding the submission of the complaint.  The complaint was faxed but we have only received the second page of the fax. The prosecution contends that the first page was lost.

the prosecution's overall apathetic approach towards Mr. Safavian's rights and privileges in preparing a timely and adequate defense.

Mr. Safavian requests GSA documents that describe the extent of the attorney-client privilege between GSA counsel and GSA officials and any GSA documentation pertaining to the procedures for soliciting ethics opinions.  Def. Memo Att A.  Most, if not all government agencies possess such agreements to explain privilege and ethics policies to their personnel.  As the defense has explained to the prosecution several times, one of several defenses to Count Two, the alleged false and concealing statements made to GSA General Counsel officials, is that Mr. Safavian's solicitation of an ethics opinion from GSA attorneys is not cognizable under 18 U.S.C. § 1001 as a matter of law.  Section 1001 was not even "intended to reach all false statements made to governmental agencies and departments but only those false statements that might support fraudulent claims against government or that might pervert or corrupt authorized functions of those agencies to whom statements are made," United States v. Bedore, 455 F.2d 1109 (9th Cir. 1972), let alone requests for advice from counsel.

If Mr. Safavian's July 25-26, 2002 communications with GSA General Counsel Ray McKenna were attorney-client privileged, reliance upon such advice would constitute a defense against the criminal sanctions imposed by 18 U.S.C. § 1001.  See United States v. Hansen, 772 F.2d 940, 947 (D.C. Cir. 1985).  Furthermore, a defendant who legitimately believes that a statement is not a binding or legally enforceable obligation cannot be convicted since any requisite intent to mislead would be negated.  United States v. Whittington, 783 F.2d 1210, 1217 (5th Cir. 1986).  Hence, the solicitation of this advice cannot constitute an actionable statement under § 1001 and GSA internal policies and agreements concerning the nature and extent of the attorney-client privilege and the guidelines would relate to this line of defense.

As an illustration of the significance of this privilege to the defense, we explained that GSA officials have suggested that their ability to speak with the defense would be constrained by this attorney-client privilege.  Def. Memo at 23-24.  The prosecution denies that this hindrance would justify production of the requested materials, because aiding the ability to secure interviews with key witnesses is not "evidence that is 'material to the defense,' as that term is described in the case law.  Nor is it <u>Brady</u> evidence."  Opp. at 19 (citing <u>nothing</u>).  This Court has drawn a different conclusion: "evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'"  <u>Marshall</u>, 132 F.3d at 68 (quoting <u>Lloyd</u>, 992 F.2d at 351)

     5.     <u>Documents, Videotapes, Reports, or Other Records Concerning Communications About Mr. Safavian's Arrest</u>

The prosecution insists that documents concerning the use of Mr. Safavian as a cooperating witness in other matters or about Mr. Safavian's arrest "is simply irrelevant to the allegations that the government will seek to prove at trial."  Opp. at 20-21.  While this may be a true statement from the prosecution's standpoint, our discovery request does not have to be consistent with the prosecution's projected theory of the case.  It merely must be material to our theory of defense.

Interestingly, while refusing to produce them, the prosecution does not refute such documents exist.  As stated in the Defendant's Memorandum of Law, and not denied by the prosecution, this request would uncover admissible evidence or otherwise aid in the inquiry into possible due process violations by the government, including but not limited to, the well-established defenses of selective prosecution or enforcement.  Def. Memo at 25-26; <u>Branch Ministries v. Rossotti</u>, 211 F.3d 137, 144 (D.C. Cir. 2000) (holding that to establish selective

prosecution, the defense must only prove that "(1) [it] was singled out for prosecution from among others similarly situated and (2) that [the] prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification."); <u>Sanjour v. EPA</u>, 56 F.3d 85, 92 (D.C. Cir. 1995) (holding that a plaintiff may prevail on a "selective enforcement" claim by showing that the government's motive in selectively prosecuting him was to "prevent or paralyze [the] ... exercise of [his] constitutional rights").

Rule 16(a)(2) would not preclude this discovery since the thrust of the contention is that the government impermissibly pursued Mr. Safavian's cooperation in a distinctive investigation into the actions of lobbyists and congressional members, including Mr. Abramoff.

## CONCLUSION

For the aforementioned reasons and those outlined in the October 28, 2005 Memorandum of Law, Mr. Safavian respectfully requests that this Court issue the proposed Order compelling the prosecution to produce the requested materials pursuant to Rule 16, <u>Brady v. Maryland</u>, and the interests of justice.

Respectfully submitted,

WILEY REIN & FIELDING LLP


By: /s/ Barbara Van Gelder

     Barbara Van Gelder, Esq.
     Bar No. 265603
     Roderick L. Thomas, Esq.
     Bar No. 433433
     Albert Lambert, Esq.
     Bar No. 489562
     Wiley Rein & Fielding LLP
     1776 K Street NW
     Washington, DC  20006
     TEL: 202.719.7032
     FASCIMILE: 202.719.7049

     Attorneys for David H. Safavian

Dated: November 10, 2005