UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA, | |
| v. | |
| DAVID HOSSEIN SAFAVIAN, | Criminal No. 05-370 (PLF) |
| Defendant | |

DEFENDANT DAVID H. SAFAVIAN'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THE MOTION TO COMPEL DISCOVERY

During oral argument on November 14, 2005, the Government stated, for the first time, that there are no e-mails from the General Service Administration ("GSA") servers available to search. Subsequent to the hearing, the prosecutors informed counsel for Mr. Safavian that they have requested information from the GSA but declined to specify who or what was requested. Pursuant to the Court's direction, Mr. Safavian, through counsel, submits the following supplemental memorandum in support of his Motion to Compel Discovery. The following requests are still at issue:

**A.    Discovery Relating to the Request for an Ethics Opinion**

**1.    302s, Tapes, Rough Notes and Any Other Documents Reflecting Interviews of Mr. McKenna and Ms. Ellison Regarding Mr. Safavian's Request for an Ethics Opinion**

The reports, notes, and documents of GSA General Counsel officials Ray McKenna and Eugenia Ellison address the very questions and answers at issue in Count Two, Indictment at ¶¶ 28-29, and constitute the only written records identifying the substance of Mr. Safavian's oral statements to these officials. Def. Rep. at 6-7. These documents also address the discrepancy between the ethics opinion's account of Mr. Safavian's statements and his actual written statements in the July 25, 2002 request for the opinion. Id.; Def. Memo at 7-8 & Ex. 9. The incongruity suggests that there may have been a conversation between Mr. McKenna or Ms.

Ellison and Mr. Safavian, or that the ethics opinion misrepresented the defendant's written statements. Id. Either way, these documents would "'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (citation omitted).

These documents would also be material to the preparation of key defenses, including: the "fundamental ambiguity" of the Counsel's questions; the extent of the defendant's "duty to disclose" the information allegedly concealed; and the sufficiency of the defendant's answers to the respective government inquiries. See Rule 16(a)(1)(E); Def. Memo at 10-12, Def. Rep. at 8.

**2.     Internal GSA Procedures and Guidelines Relating to Ethics Opinions and Disciplinary Actions for Violations of Such Policies**

This request seeks GSA internal guidelines for soliciting an advisory ethics opinion. Documents outlining the scope and mechanics of these guidelines and discipline for violations thereof would address whether making these requests actionable under § 1001 would jeopardize the established agency scheme for soliciting ethics advice. See, e.g., United States v. DeFries, 129 F.3d 1293, 1308 (D.C. Cir. 1997) (acknowledging that "good faith reliance upon advice of counsel" is a defense to § 1001) (citation omitted); Def. Memo at 20-22.

**B.     Requests Relating to the Availability of GSA Properties and the Scotland Trip**

**1.     E-mail, Correspondence and Any Other Documents from May 2002 through August 2002 between Named Abramoff Business Associates Concerning Mr. Safavian, White Oak, the Old Post Office Building, or the 2002 Scotland Trip**

This request is limited to correspondence and documentation from seven individuals for the period May through August 2002 with respect to four topics: Mr. Safavian, the 2002 Scotland trip, the Old Post Office Building ("OPO"), and the NSWC-White Oak property.

The prosecution's selection of case-in-chief e-mails include communications between Abramoff and these individuals about their observations and inquiries on these four issues. See Def. Rep. at 11-12 and Exs. 11-13. The requested items are material to the preparation of the defense that Mr. Safavian accurately represented that Mr. Abramoff was not "doing business" with the GSA in late July and early August 2002. See id. & n. 3 (citing cases). These items would also assist with the issue of whether Mr. Safavian's representations were "materially false." 18 U.S.C. § 1001; Indictment ¶ 24; Def. Rep. at 12 (citing cases).

**2.    E-mail, Correspondence and Other Documents in the Custody of the GSA Regarding the OPO and White Oak**

The prosecution's case-in-chief e-mails also incorporate correspondence from pertinent GSA officials, including GSA commissioner Joseph Moravec, that suggest the agency did not consider the subject properties open for "doing business" at the time of Mr. Safavian's participation in the Scotland trip. The defense reasonably infers that additional documents exist at the GSA discussing whether and which parties were contracting with the agency. We believe that GSA documents will reveal that Mr. Abramoff's "ideas" never materialized. There was no application for a lease at White Oak and he did not assist any tribes in bidding for the OPO.

The prosecution must produce this requested evidence whether it is located in the possession, custody, or control of the GSA or the Department of Justice. LAFAVE, CRIMINAL PROCEDURE, § 20.3(a) & n. 11 (2005); Def. Memo at 19-21; Def. Rep. at 17-19 (citing cases).

**C.    Requests Relating to the Senate Investigation**

**1.    Notes, Documents, and Tapes of 302s and Interviews of the Chief and Deputy Chief Investigative Counsel to the Senate Committee**

The prosecution has provided the 302s of the Senate "investigator(s)" described in Counts Four and Five. Opp. at 11. The prosecution must also produce the rough interview notes for these reports concerning Mr. Safavian's actionable conversations. Indictment at ¶¶ 36-40.

- 3 -

An agent's rough notes have long been discoverable under Rule 16. See Def. Memo at 13-16 (citing cases).[1] Production is essential because "the information contained in thorough notes taken from the witness himself might be more credible and more favorable to the defendant's position than the final version." United States v. Lilly, No. 1:02CR00085, 2003 WL 168443 *2 (citing Poindexter and the 1991 Rule 16 Advisory Notes). The importance of obtaining these notes was demonstrated during the November 14, 2005 hearing, where the government provided the rough notes of the May 26, 2005 interview of Mr. Safavian. These notes show a significant discrepancy between the statements made by Mr. Safavian and those in the investigative report.[2]

**D.      Requests Relating to Mr. Safavian's Coercion Defense**

**1.      All Documents or Evidence Concerning Other Complaints Made to the GSA by the Individual Named on Page 2 of the Unredacted Version of Exhibit 7**

The defense has identified an individual who may have been the hotline complainant that prompted the GSA-OIG investigation into Mr. Safavian's participation in the Scotland trip. This person may have made a number of allegations against several GSA officials. The motivations of the informant in this instance would address whether the GSA-OIG investigation was opened legitimately, given that it was clear that Mr. Safavian had paid for the trip and taken a leave of absence for its duration. Since the *cause* of the proceeding most typically defines the parameters

---

[1] The Defense had also requested notes and documents in the possession or control of the Senate Counsel regarding the actionable statements in Counts Four & Five. Def. Rep. 17-19. The prosecution stated in its opposition papers that it did not possess any relevant documents, but acknowledged that it had asked the Senate Investigators to retain their notes. Opp. at 11. Accordingly, we withdraw this request and will seek the information directly from the Senate.

[2] For example, the May 27, 2005 interview report claims that Mr. Safavian represented to the agents that (discussing the ethics opinion request): "Jack Abramoff did not have any business with GSA." DOJ-DS-001367. However, the agent's notes say that Mr. Safavian stated that Mr. Abramoff had "no business that I know of." DOJ-DS-001632. The agents' notes also do not include any reference to the introductory portion of the interview record, where FBI Agent Reising told Mr. Safavian, *inter alia*, that "he did not want to put him in a 'trick bag.'" DOJ-DS-001362.

of the "pending proceeding" that Mr. Safavian is alleged to have "corruptly" impeded, 18 U.S.C. § 1505, the informant's identity and related activities would be "relevant and helpful to the defense of an accused, [and/or] essential to a fair determination of a cause." Roviaro v. United States, 353 U.S. 53, 60-61 (1957).

**2.  Documents, Tapes, Reports, or Other Records Concerning Mr. Safavian's Arrest and/or Cooperation in Other Matters**

This request would uncover admissible evidence or otherwise aid in the inquiry into possible due process violations by the government. The prosecution has admitted that there are legitimate defenses of agent bias and/or motive that can be discussed at trial. However, the prosecution questions whether the defense needs additional materials to prepare for those defenses. Such doubts "should be resolve[d] . . . in favor of full disclosure." United States v. Van Brandy, 726 F.2d 548, 552 (9th Cir. 1984) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).

    Respectfully submitted,

    WILEY REIN & FIELDING LLP

    By: /s/ Barbara Van Gelder

    Barbara Van Gelder, Esq.
    Roderick L. Thomas, Esq.
    Albert Lambert, Esq.
    Wiley Rein & Fielding LLP
    1776 K Street NW
    Washington, DC  20006
    TEL: 202.719.7032
    FASCIMILE: 202.719.7049

    Attorneys for David H. Safavian

Dated: November 18, 2005