UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA, | |
| v. | |
| DAVID HOSSEIN SAFAVIAN, | Criminal No. 05-370 (PLF) |
| Defendant | |

DEFENDANT DAVID H. SAFAVIAN'S REPLY TO THE GOVERNMENT'S
RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THE MOTION TO COMPEL DISCOVERY

The prosecution contends that it is not obligated to produce responsive documents because the requested information is not material to the Government's presentation of *its* case-in-chief. In denying these requests, the prosecution, without support, also attempts to erect a new Rule 16(a)(1)(E) standard: the Defendant can only obtain documents that he has seen before. Resp. at 2-3. However, the prosecution does not and indeed cannot contend that the requested materials do not bear logical relationship to the issues in this case or that they are incapable of playing an important role in uncovering admissible evidence, aiding in witness preparation, corroborating testimony, or assisting with impeachment or rebuttal. United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998).

**A.     Discovery Relating to the Request for an Ethics Opinion**

1.    **302s and Rough Notes from Interviews of Mr. McKenna and Ms. Ellison Regarding Mr. Safavian's Request for an Ethics Opinion**

The prosecution does not contest the fact that the 302s and rough notes of the 302s would identify the substance of relevant oral statements by Mr. Safavian and/or address the critical questions raised by the gap between the ethics opinion's accounts of Mr. Safavian's statements

and his actual alleged written statements. In other words, the prosecution does not contend that the materials fall outside the rubric of Rule 16(a)(1)(A), (B)(ii), (E), or <u>Brady</u>.

Instead, the prosecution attempts to use Rule 16(a)(2) as a shield to prevent the defendant from ascertaining the substance of the very statements for which he is being charged. However, Rule 16(a)(2) itself states that it cannot be used to obviate discovery if "Rule 16(a)(1) provides otherwise." Fed. Crim. P. 16(a)(2). If the prosecution is genuinely concerned with the release of true work product information, it can redact the mental impressions from the documents or, pursuant to a protective order, make them available to defendant's counsel.

2. **Internal GSA Procedures and Guidelines Relating to Ethics Opinions and Disciplinary Actions**

As we stated during oral argument, the Ethics in Government Act was established to facilitate communication between the employee and agency regarding ethical issues. The Act envisions the potential for inaccurate or incomplete information being proffered in a request. The sanction for incorrect information in a request for advice, however, is not criminal prosecution under 18 U.S.C. §1001. Rather, the opinion cannot be used to shield against criminal prosecution for the underlying conduct. As a result of the Act, every agency has a designated agency ethics officer (DAEO). The DAEO is typically trained in responding to ethical inquiries and related procedures, including advisory opinions, and this training should be set forth in internal guidelines. We are requesting those guidelines. In addition, we are requesting documents reflecting any disciplinary actions the GSA General Counsel's Office may have taken with respect to violations of such advisory opinions.

While the prosecution acknowledges the legitimacy of defenses relating to advice of counsel, and inferentially therefore the relevance of the items requested, Resp. at 2 & n.1, it impermissibly argues the merits of the defenses before providing the relevant documentation.

B.  **Requests Relating to the Availability of GSA Properties and the Scotland Trip**

1.  **E-Mail, Correspondence and Other Documents from May-August 2002 Between Abramoff Business Associates**

The prosecution believes that it does not have to provide a complete record of the communications between Mr. Abramoff and seven associates concerning the GSA properties and Mr. Safavian's participation in the Scotland trip. However, the prosecution does not actually challenge the legitimacy of the request. Instead, it again denies discovery on the unsupported premise that it only has to produce documents that Mr. Safavian has seen, as opposed to all documents material to the preparation of his legal defense. Not so. See supra at 1.

In any event, the prosecution's argument is inconsistent with its initial charging document. In its criminal complaint, the prosecution made multiple references to e-mails between Mr. Abramoff and his business associates regarding the GSA properties and the trip to Scotland that Mr. Safavian did not see and was not a party to. Complaint ¶¶ 19, 25, 36 (Ex. 15). Clearly, the prosecution included these emails in an attempt to show that Mr. Abramoff was using Mr. Safavian to gain information regarding the availability of GSA properties. Moreover, the prosecutors have already quoted and turned over selected documents between Mr. Abramoff and his associates that Mr. Safavian has never seen. , including GTG –E-019884, which became the basis for a Washington Post editorial.[1] As explained several times to no direct response, see, e.g., Supp. at 3, the requested e-mails would speak to, *inter alia*, the defense that Mr. Safavian was making an accurate representation as to the business of Mr. Abramoff with the GSA.

---

[1] See, e.g., GTG-E00110447, GTG-E000110417 (Ex. 16). There are also additional emails from Mr. Safavian that Mr. Abramoff forwarded to his associates.

  2.  **E-Mail, Correspondence and Other Documents at the GSA Regarding the OPO and White Oak**

  The prosecution no longer challenges the materiality of these GSA documents.  However, it is not straightforward with the Court regarding its effort to secure them.  Deciphering its obscure language, it appears that the prosecution has not requested GSA to conduct a search for archived emails on hard drives or hard copies of emails and other correspondence.  Instead, the Government is "continuing to make inquires of any GSA employees it interviews for correspondence (whether paper or electronic) that were sent to or from defendant Safavian regarding OPO and White Oak."  Resp. at 4.

  The burden to produce relevant discovery is not an *ad hoc* process.  Nor is it an individual effort.  It is incumbent upon the Government to produce all relevant documents throughout the agency.

  C.  <u>Requests Relating to the Senate Investigation</u>

  The prosecution states that it has provided the interview reports of the Senate Investigators but will not provide the rough notes.  The defense has previously demonstrated to the Court that there is a variance between the rough notes and the final 302s.  <u>See</u> Supp. at 4 & n.2.  Indictment ¶ 36 alleges that the Senate investigator spoke to Mr. Safavian and that Safavian said "he had fully disclosed all relevant facts to the GSA ethics officer who prepared the opinion."  Yet, the investigator's 302 states that "he disclosed his friendship with Abramoff to them and that the ethics counsel had cleared him to go on the trip."  (Sealed Ex. 14 at 3).

  The prosecution contends that, to the extent the rough notes can be construed as witness statements, they are shielded by Rule 16(a)(2).  However, we are not asking for witness statements about Mr. Safavian.  We are asking for *Mr. Safavian's* allegedly incriminating statements to Senate investigators in Counts Four & Five via the only available sources.

**D.    Requests Relating to Mr. Safavian's Coercion Defense**

1. **All Documents or Evidence Concerning Other Complaints Made to the GSA by the Individual Believed to be the Informant for the GSA-OIG Investigation**

The prosecution mischaracterizes this request as speculative and claims that the defense has not explained how the information bears on the issues in this case. However, the defense has outlined the basis for its belief in the identity of the informant in an *ex parte* communication with the Court and described to the prosecutors the relationship between the identity and actions of this informant and 18 U.S.C. § 1505 four times in letters and pleadings.

2. **Documents and Other Items Concerning Mr. Safavian's Arrest and/or Cooperation**

This request is not limited to demonstrating selective prosecution or enforcement by the government's "task force" against Mr. Abramoff. The defense contends that agents were directed by the task force to "find" something on Mr. Safavian to secure his cooperation in other investigations. The Justice Department has recently issued a press release lauding the successes of the very roving "task force" that it denied the existence of in its correspondence with Mr. Safavian. *Compare* Ex. 5 at note 1 *with* Nov. 21, 2005 Release (Ex. 17). Thus, the requested information is also material to the cross examination of government witnesses for bias.

                                                  Respectfully submitted,

                                                  By: /s/ Barbara Van Gelder

                                                        Barbara Van Gelder, Esq.
                                                        Roderick L. Thomas, Esq.
                                                        Albert Lambert, Esq.
                                                        Wiley Rein & Fielding LLP
                                                        1776 K Street NW
                                                        Washington, DC  20006
                                                        TEL: 202.719.7032
                                                        FASCIMILE: 202.719.7049

Dated: November 30, 2005                        Attorneys for David H. Safavian