UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 05-0370 (PLF) |
| DAVID HOSSEIN SAFAVIAN, | ) ) ) | |
| Defendant. | ) ) | |

OPINION

This matter is before the Court on the defendant David Safavian's motion to compel discovery under Rule 16 of the Federal Rules of Criminal Procedure and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. After the matter was briefed, the Court heard oral argument on November 14, 2005, and then accepted supplemental briefs from the parties during the ensuing two weeks. A summary of the defendant's outstanding discovery requests as of the time of the initial filing, and the defendant's characterization of the government's stated reasons for withholding production, is set forth in Attachment A to the motion to compel.

I. BACKGROUND

The defendant is charged in a five-count indictment with three counts of making false statements under 18 U.S.C. § 1001, and two counts of obstruction of justice under 18 U.S.C. § 1505. The indictment charges that the defendant served as Chief of Staff for the Administrator of the General Services Administration ("GSA") from May 16, 2002 to January 2004, and then, from November 2004 to September 2005, as the Administrator of the Office of Federal Procurement Policy, Office of Management and Budget, Executive Office of the

President. Indictment at ¶ 1. The centerpiece of the indictment is the allegation that in July of 2002 the defendant sought an opinion from a GSA ethics officer about whether he could attend a golf trip with lobbyist Jack Abramoff in Scotland and travel on a private jet chartered by Mr. Abramoff that would take the golfing party to Scotland. In the e-mail by which Mr. Safavian sought the ethics opinion, he stated that the lobbyist in question "is a lawyer and lobbyist, but one that has no business before GSA (he does all of his work on Capitol Hill)." Indictment at ¶ 18. The GSA ethics officer responded by e-mail, permitting Mr. Safavian to go on the trip and to accept the gift of free transportation on the ground that "[y]ou stated that neither [Mr. Abramoff] nor his firm does business with or is seeking to do business with GSA." See id. ¶ 19.

Count One of the indictment charges Mr. Safavian with obstruction of justice with regard to an investigation conducted by the Office of the Inspector General ("OIG") of GSA, and specifically alleges that the defendant falsely stated in connection with the investigation that Mr. Abramoff had no business with GSA and that he had paid Abramoff for the total cost of the trip to Scotland. Indictment at ¶ 25. Count Two charges the defendant with making the same false statements in connection with obtaining the GSA ethics opinion. Count Three charges the making of the same false statements in the course of the GSA-OIG investigation. Count Four charges obstruction of justice in connection with an investigation into allegations of misconduct by Mr. Abramoff by the Senate Committee on Indian Affairs. It relates in part to statements made to the Committee investigator and to the Committee Chairman, Senator John McCain, with respect to Mr. Safavian's statements to the GSA ethics officer. Id. at ¶¶ 36-37. Count Five alleges that Mr. Safavian made false statements to the Committee to the effect that Mr. Abramoff did not have any business with GSA at the time of the trip to Scotland, that Mr. Safavian

2

provided documentation to the Committee containing false statements (his e-mail to the GSA ethics officer), and that he concealed Mr. Abramoff's business relationships with GSA.  Id. at ¶ 40.

The defendant seeks documents and information that he contends are necessary and material to the preparation of his defense and/or constitute exculpatory material under Brady.

## II.  DISCUSSION

### A.  Relevant Standards under Rule 16 and Brady

At the outset, it is apparent that the Justice Department and the defendant have very different views as to the scope of both Rule 16 and the government's Brady obligations. The Court will attempt first to clarify what the government's obligations are and then to apply the appropriate standards to the facts of this case and the requests made by the defendant.

#### 1.  Rule 16

Under Rule 16 of the Federal Rules of Criminal Procedure, the government is required to disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person that the defendant knew was a government agent "if the government intends to use the statement at trial."  FED. R. CRIM. P. 16(a)(1)(A).  This provision of Rule 16 is not limited to questions asked only by Justice Department prosecutors or law enforcement agents.  At a minimum, it includes statements made, in response to interrogation, to any officers of the federal government "with criminal law enforcement responsibilities or their agents" – that is, "law enforcement agents or persons acting on their behalf."  United States v. Burns, 15 F.3d 211, 214-15 (1st Cir. 1994); see also United

States v. Griggs, 111 F.Supp.2d 551, 554 (M.D. Pa. 2000) (extends to any person "allied with the prosecution once a federal investigation or prosecution commences, such as a state officer working on a joint task force or with the U.S. Attorney's office," so long as that person "interrogates" the defendant).[1]  In this case, therefore, Rule 16(a)(1)(A) includes questions put to Mr. Safavian by the GSA Office of the Inspector General ("OIG") as well as questions put to him by the FBI and other law enforcement agencies.  It does not, however, include statements in response to questions asked by the GSA ethics officer or the GSA General Counsel's Office unless those questions were asked in conjunction with or as an adjunct to the OIG or FBI investigations.

        Under another provision of Rule 16(a), the government also must provide the defendant with "any relevant written or recorded statement [made] by the defendant if . . . the statement is within the government's possession, custody or control," and the attorney for the government knows "or through due diligence could know" that the statement exists, regardless of whether the government intends to use the statement at trial.  FED. R. CRIM. P. 16(a)(1)(B)(i).  Interrogation by a "government agent" is not required, only knowledge and possession, custody, or control by "the government."  In the Court's view, "the government" includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies.  See United States v. Santiago, 46 F.3d 885, 893-94 (9th Cir. 1995); United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989); cf. United States v. Brooks, 966 F.2d at 1503.  It does not, however,

---

[1] In the District of Columbia, it would also apply, for example, to the Metropolitan Police Department for obvious reasons.  Cf. United States v. Brooks, 966 F.2d 1500, 1504 (D.C. Cir. 1992).

include a committee of the United States Senate (or the House of Representatives) because the Congress is a separate branch of the government and was not intended by the Rules writers to be included within Rule 16. Cf. United States v. Trie, 21 F. Supp. 2d 7, 25 n. 17 (D.D.C.) ("The Congress is not an 'agency,' and the DOJ has no obligation under Brady to disclose information in the possession of Congress that is not also in the possession of the DOJ or [another Executive Branch agency]."

Because Rule 16 talks of "possession, custody or control," FED. R. CRIM. P. 16(a)(1)(B)(i), however, the Justice Department must turn over any written or recorded statements in its possession or custody or control regardless of the origin of the statements, so long as the government knows or through due diligence could know of their existence. Thus, the prosecution must disclose any statement of Mr. Safavian in the possession, custody or control of any Executive Branch agency or department, regardless of whether the statement originated from a local law enforcement agency, a non-law enforcement agency of the federal government, or a coordinate branch of the government such as the United States House of Representatives or the United States Senate. As with their Brady obligations, "[t]his personal responsibility [of the Justice Department] cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies." United States v. Jennings, 960 F.2d 1488, 1490 (9th Cir. 1992). In the course of their investigation, and in collecting and reviewing evidence, the prosecutors must ensure that any information relevant to this case that comes into the possession, control, or custody of the Justice Department remains available for disclosure. See United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998) (cautioning against government "gamesmanship in discovery matters."). Statements of the defendant are particularly important in this case, and the

precise statements made by him to any government agency or official at each and every stage may be extremely relevant to his defense.

Rule 16 next requires the disclosure of all books, papers, documents, data, tangible objects, etc., that are "within the government's possession, custody or control" and are "material to preparing the defense" or "[that] the government intends to use . . . in its case in chief at trial [or that] was obtained from or belongs to the defendant." FED. R. CRIM. P. 16(a)(1)(E). This portion of the Rule also uses the terms "possession, custody or control." So, again, the prosecution must turn over everything in its possession <u>or</u> custody <u>or</u> control, regardless of the original source of the document or other object, so long as it is "material" under the Rule. The defendant argues -- and there is some support for his contention in both the oral and written submissions made by the government to this Court -- that the government reads this part of the Rule in much too limited a way. While it is true that the government must produce items it intends to use at trial and items that it obtained from the defendant, its obligations are not limited to those categories only; it also must disclose items that are "material to preparing the defense." And the government cannot take a narrow reading of the term "material" in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation.

As Judge Sentelle said for the D.C. Circuit in <u>United States v. Marshall</u>, 132 F.2d at 67, Rule 16(a)(1)(E) (formally Rule 16(a)(1)(C)) covers evidence that is "material 'to <u>the preparation of</u> the defendant's defense'" (emphasis in original). It is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from

6

disclosure. See id. "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence. . . . [I]t is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." Id. (footnote omitted). Rule 16 is intended to provide a criminal defendant "the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case." United States v. Poindexter, 727 F.Supp. 1470, 1473 (D.D.C. 1989). See also United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden"; evidence is material if there is indication that it may play "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."); United States v. George, 786 F. Supp. 1, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one"). Despite the government's arguments, United States v. Lloyd, 992 F.2d 348 (D.C. Cir. 1993), is not to the contrary. See United States v. Marshall, 132 F.3d at 68.

As the government points out, however, Rule 16 of the Federal Rules of Criminal Procedure does not authorize the discovery or inspection of statements made by prospective government witnesses except as provided for by the Jencks Act, 18 U.S.C. § 3500. FED. R. CRIM. P. 16(a)(2). This is true even if the statements are "material to preparing the defense" unless (1) portions of those statements contain the substance of any relevant written or oral statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B); or (2) they are exculpatory or favorable, so-called Brady material. See Brady v. Maryland, 373 U.S. 83 (1963). Brady always trumps both Jencks and Rule 16. See United States v. Tarantino, 846 F.2d 1384, 1414 n. 11 (D.C. Cir. 1988) (limitations on discovery in Jencks Act do not lessen Brady

obligations); see also United States v. Haldeman, 559 F.2d 31, 77-78 & n. 112 (D.C. Cir. 1976); United States v. Ramirez, 54 F. Supp. 2d 25, 32-33 (D.D.C. 1999); United States v. Trie, 21 F. Supp. 2d at 23; United States v. Poindexter, 727 F. Supp. at 1485 ("The Brady obligations are not modified merely because they happen to arise in the context of witness statements.").

2.  Brady

The government and the defendant also have very different views concerning the government's Brady obligations. The government acknowledges that under Brady it has the affirmative duty to produce exculpatory evidence when such evidence is material to either guilt or punishment. But it contends that evidence is "material" only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)). The problem with this iteration of Brady and the government's view of its obligations at this stage of the proceedings, however, is that it permits prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial. Most prosecutors are neither neutral (nor should they be) nor prescient, and any such judgment necessarily is speculative on so many matters that simply are unknown and unknowable before trial begins: which government witnesses will be available for trial, how they will testify and be evaluated by the jury, which objections to testimony and evidence the trial judge will sustain and which he will overrule, what the nature of the defense will be, what witnesses and evidence will support that defense, what instructions the Court

ultimately will give, what questions the jury may pose during deliberations (and how they may be answered), and whether the jury finds guilt on all counts or only on some (and which ones).

The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed -- with the benefit of hindsight -- as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. Because the definition of "materiality" discussed in Strickler and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial. United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-1199 (C.D.Cal. 1999); see also United States v. Acosta, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005), and appended magistrate judge's decision, 357 F. Supp. 2d at 1237; United States v. Carter, 313 F. Supp. 2d 921, 924-25 (E. D. Wisc. 2004).

The meaning of the term "favorable" under Brady is not difficult to discern. It is any information in the possession of the government -- broadly defined to include all Executive Branch agencies -- that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. It covers both

exculpatory and impeachment evidence. See United States v. Bagley, 473 U.S. 667, 676-77 (1985) (both exculpatory and impeachment evidence "fall[] within the Brady rule"); United States v. Smith, 77 F.3d 511, 514 (D.C. Cir. 1996); United States v. Hsia, 24 F. Supp. 2d 14 (D.D.C. 1998). "The government is obligated to disclose all evidence relating to guilt or punishment which might be reasonably considered favorable to the defendant's case," that is, all favorable evidence that is itself admissible or "that is likely to lead to favorable evidence that would be admissible," United States v. Sudikoff, 36 F. Supp. 2d at 1199-1200, or that could be used to impeach a prosecution witness. See United States v. Trie, 21 F. Supp. 2d at 23 ("favorable evidence" encompasses "both evidence that is exculpatory and evidence that could be used to impeach a government witness"). Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure. See United States v. Paxson, 861 F.2d 730, 737 (D.C. Cir. 1988) (insufficient for government to provide "niggling excuses" for its failure to provide potentially exculpatory evidence).

Under Brady, the prosecutors have an affirmative duty to search possible sources of exculpatory information, including a duty to learn of favorable evidence known to others acting on the prosecution's behalf, including the police, Kyles v. Whitley, 514 U.S. 419, 437 (1995), and to cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of government "closely aligned with the prosecution." United States v. Brooks, 966 F.2d at 1503 ("affirmative duty of inquiry"). See United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) ("[i]nformation possessed by other branches of the federal government, including investigating officers, is typically imputed to the

10

prosecutors of the case" for Brady purposes); United States v. Jennings, 960 F.2d at 1490 ("[t]his personal responsibility cannot be evaded by claiming lack of control over the files . . . of other executive branch agencies").

### B.  Defendant's Specific Requests

The defendant first requests the FBI 302s of interviews with the GSA Ethics Officer, Raymond McKenna, and with Eugenia Ellison of the GSA General Counsel's Office, who had drafted the ethics opinion, as well as the rough notes (if any) taken by the FBI agents regarding those interviews.[2]  The defendant argues that the 302s and the rough notes would identify the substance of relevant oral statements made by Mr. Safavian and/or address the critical questions raised by the gap between the ethics opinion's characterizations of Mr. Safavian's statements to the Ethics Officer and his actual statements to Mr. McKenna and Ms. Ellison.  It is clear to the Court that this request meets the standards for disclosure under Rule 16(a)(1)(A) if the government intends to use the statements at trial (as surely it does intend) and/or Rule 16(a)(1)(B), without regard to whether the government intends to use these statements at trial.  Depending upon what is contained in the statements, there also may be evidence favorable to the defendant that must be disclosed under the Brady standards announced herein.

Mr. Safavian stated in his e-mail that Mr. Abramoff "has no business before GSA," while Ms. Ellison's response states that Mr. Safavian told Mr. McKenna (or perhaps someone else) that neither Mr. Abramoff or his firm "does business with or is seeking to do

---

[2]    The government has represented that there are no rough notes or tape recordings of these interviews.

11

business with GSA." Indictment at ¶ 19. This distinction could be crucial to the government's ability to prove its case and/or to Mr. Safavian's defense. Any other statements by Mr. Safavian that either further inculpate or potentially exculpate him therefore must be disclosed. And any information that would elucidate this discrepancy necessarily is "material" to the preparation of a defense. Its prompt disclosure is required by either Rule 16(a)(1)(A) or (B) or by Rule 16 (a)(1)(E). Such disclosure is not precluded either by Rule 16(a)(2) or by the Jencks Act.

The defendant's second request is for internal GSA procedures and guidelines relating to the consideration and issuance of ethics opinions and disciplinary actions. The request for guidelines and procedures also is material to the preparation of the defense in this case under Rule 16, regardless of whether the GSA procedures and guidelines could be evidence at trial. They therefore must be disclosed. On the other hand, the request for disciplinary actions relating to other government employees does not seem to be material and in fact strikes the Court as nothing more than a fishing expedition unlikely to lead to admissible evidence.

Third, the defendant requests e-mails and correspondence from May through August of 2002 between certain named associates of Mr. Abramoff concerning the Old Post Office and White Oak projects or properties, or concerning Mr. Safavian's participation in the Scotland trip. The government opposes Mr. Safavian's requests largely on the ground that since Mr. Safavian never saw these e-mails and other correspondence they could have no bearing on his state of mind when he communicated with the GSA Ethics Officer, the GSA-OIG or the Senate investigators, or be otherwise material to any conceivable defense. The government also represents that it has disclosed e-mails between Mr. Safavian, Mr. Abramoff and other individuals pertaining to the Old Post Office project, the White Oak project, and the Scotland trip

that are in the possession of the Justice Department, as they comprise "the vast majority of the e-mail evidence [the government] intends to introduce at trial." Government's Memorandum in Opposition to Defendant's Motion to Compel Discovery at 13.

       The Court does not agree with the government that these documents are only relevant if they relate to the defendant's state of mind when he communicated with various government officials. Rather, they could be "material" to the preparation of other defenses, a number of which are suggested in the defendant's filings in connection with this motion and have been alluded to in the hearings before the Court. For instance, the defense has stated its belief that the Old Post Office and White Oak projects were not available for any business dealings at the time Mr. Safavian requested the ethics opinion, and that Mr. Safavian's statements that Mr. Abramoff was not conducting business with GSA therefore were truthful. Simply because the e-mails themselves were not sent to or received by Mr. Safavian and therefore do not directly reflect his state of mind, and may or may not be admissible in evidence at trial, does not mean that they are not material to the preparation of a defense or that they will be unlikely to lead to admissible evidence. To the contrary, e-mails between certain named associates of Mr. Abramoff with knowledge of the status of these projects or the Scotland trip may very well include information helpful to the defendant in finding witnesses or documents that could support his contention.

       Fourth, the defendant requests reports, documents, e-mails and correspondence sent to or from various GSA officials, including GSA Commissioner Joseph Marovec, concerning the Old Post Office and White Oak properties and projects and/or relating to GSA procedures and of policies for disposal of such properties. Unlike the third request, respecting

13

e-mails between Mr. Abramoff's associates, the defendant has not placed a time restriction upon this request. For that reason alone, this is not a reasonable request. While the documents themselves may be material to the preparation of a defense and therefore discoverable, the request does not have the required particularity. The defense is directed to narrow the requested documents to a time frame relevant to the matter and reasonable for discovery.[3]

With respect to both the third and fourth categories of documents requested, as the Court has already held, the term "government" in Rule 16(a)(1)(B) and (E) encompasses more than just the Justice Department, the FBI, the GSA-OIG and other investigative agencies; it includes all agencies and departments of the Executive Branch of the government and all subdivisions thereof. The fact that the documents requested may not presently be in the "possession" of the Justice Department prosecutors or the FBI is irrelevant. The documents must be produced if they are in the "possession, custody or control" of <u>any</u> <u>agency</u> of the Executive Branch of the government and are either material to the preparation of a defense or are exculpatory under <u>Brady</u>. It is insufficient for the Justice Department merely to state that while documents are not currently in its (or the FBI's) possession it is continuing to make inquires of GSA employees about e-mails, correspondence and other documents regarding the Old Post Office and White Oak projects during the course of witness interviews . While this certainly is a helpful step to obtain some relevant documents, it is not the systematic response that is required of the government under Rule 16 and <u>Brady</u>. Individual persons may or may not have kept

---

[3] The sooner the defendant narrows and refines this request and presents it in writing to the prosecutors, the sooner the Department of Justice will be able to comply with the directives in the next paragraph of this Opinion and in the Court's Order.

copies of these e-mails, correspondence and other documents.[4] The GSA itself obviously has other more comprehensive means of searching for the e-mails, correspondence, and other documents that are more likely to uncover all of the documents requested.

The Department of Justice therefore is required immediately -- by formal request, in writing -- to demand that the GSA conduct a thorough search for and produce to the Justice Department all e-mails -- including archived e-mails on hard drives -- and correspondence sent to or from GSA officials relating to the status of the Old Post Office and White Oak projects, as well as any other documents relating to the same.[5] The prosecutors will be able to determine whether they are required to disclose these documents under Rule 16 or Brady, as explicated in this Opinion, or to continue to assert their withholding only after they have actually seen them.

---

[4]     Indeed at the last status conference on this matter, on December 13, 2005, the government advised the Court that at least some of the GSA employees it has interviewed have kept extensive personal records of e-mails and correspondence that may exceed even those of the agency itself.  Clearly, investigating records kept by these individuals personally will remain an important part of the government's fulfillment of its Brady obligations.

[5]     At the December 13, 2005 status conference, the government informed the Court that it had communicated with GSA concerning its e-mail retention policies and had been told that all e-mails are deleted after 60 days (presumably from the GSA mail server).  The government went on to advise the Court that some persons subject to the defense's discovery requests had personally archived some or many of the requested e-mails.

This representation is not adequate.  It is not clear how and where the government got its information about the GSA's information technology practices and retention capabilities, and through what channels, formal or informal, this information was obtained.  The government also did not clarify whether the 60 day retention policy applies to the GSA's mail server or whether the e-mails in question may exist in back-up storage devices or media.  While the Court certainly accepts that the Justice Department prosecutors have represented the GSA's practices to the best of their knowledge and ability, it nevertheless orders the prosecution to make a formal, written request of GSA for the e-mails that this Court finds subject to disclosure as well as a more specific, detailed explanation of the e-mail retention and storage policies and capabilities.

Fifth, the defendant requests the rough notes of the FBI agents relating to their 302s or interview reports and/or tape recordings of interviews with Senate Committee investigators in connection with Mr. Safavian's interviews by and correspondence with the investigators or the Committee. The government argues that these rough notes are witness statements and therefore need not be produced pretrial under Rule 16 but must only be produced at or about the time of trial under the Jencks Act, 18 U.S.C. § 3500.[6] The defendant responds that he is not asking for the witness statements of the investigators qua witness statements but rather for "Mr. Safavian's allegedly incriminating statements to Senate investigators in Counts Four and Five via the only available sources." Defendant David H. Safavian's Reply to the Government's Response to Defendant's Supplemental Memorandum in Support of the Motion to Compel Discovery at 4 (emphasis in original). While these statements may constitute incriminating statements by the defendant to Senate investigators, the Senate investigators cannot be considered "government agents" under Rules 16(a)(1)(A) or (B)(ii). The government therefore does not have to turn the notes over under Rule 16(a)(1)(A) or (B)(ii). They must, however, turn them over under Brady if they are favorable or exculpatory or under Rule 16(a)(1)(B)(i) if they are in fact statements of the defendant to anyone.

Finally, the defendant makes two requests with respect to his "coercion defense." He seeks (1) all documents or evidence concerning other complaints made to the GSA by the individual believed to be the informant for the GSA-OIG investigation, and (2) documents and other items concerning Mr. Safavian's arrest and/or cooperation. The "coercion defense" as

---

[6] The government acknowledges that such rough notes exist and will be produced at trial under the Jencks Act. It represents that no tape recordings of the interviews were made.

described seems attenuated at best, and the Court cannot conceive of how the reasons for the initiation of the GSA-OIG investigation of Mr. Safavian, the possibility that the anonymous complainant is a serial complainant who had less than honorable motivations in making the complaint, or the circumstances regarding Mr. Safavian's arrest and/or cooperation can be material to any defense to the false statements of obstruction charges.  Furthermore, the internal deliberative processes of the Department of Justice, the FBI, and the GSA-OIG are irrelevant to the preparation of a defense.  Unless the defendant first can make out a selective or discriminatory prosecution claim, see United States v. Armstrong, 517 U.S. 456, 464 (1996); Branch Ministries v. Rossotti, 40 F. Supp. 2d 5, 21-24 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir. 2000); Branch Ministries v. Richardson, 970 F. Supp. 11, 15-17 (D.D.C. 1997), requests for these categories of document must be denied – unless, of course, any information within these categories constitutes Brady material as defined by this Opinion.

      An Order consistent with this Opinion shall issue this same day.

      SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   December 23, 2005