# EXHIBIT 1

 Wiley Rein & Fielding LLP

1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX    202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
McLEAN, VA 22102
PHONE  703.905.2800
FAX    703.905.2820

www.wrf.com

January 4, 2006

Barbara Van Gelder
202.719.7032
bvangelder@wrf.com

**VIA ELECTRONIC MAIL AND FACSIMILE**

Peter Zeidenberg
Nathaniel B. Edmonds
Public Integrity Section
United States Department of Justice
1400 New York St. NW
Suite 12100
Washington, DC 20005

Re:    *United States v. David H. Safavian*, Crim. No. 05-370

Dear Peter and Nat:

Thank you for your prompt response to yesterday's letter regarding discovery matters.  There are a few follow-up items.

First, regarding notes taken at the interviews contemplated in Order paragraphs 1 and 5, while we would agree that the government does not have to turn over attorney work product, that is assessments of how the interview impacts its theory of the case, we do believe that the December 23rd Order and Opinion obligates the production of factual accounts of the conversation by all government agents present. In other words, we believe that we should receive a redacted set of your notes detailing what was said, excluding what you thought about what was said and/or how it affects your case.

As indicated in yesterday's letter, your respective notes may be the only vehicle to reconcile factual discrepancies between the rough FBI notes and the subsequent 302s.  For instance, according to Agent Saler's rough notes, Senate Counsel Parker stated that Mr. Safavian's "letter not impact fraud element, but would have come back to flush out." DOJ-DS007026.  Yet, the 302 does not mention this Parker representation.  Nat's notes, again redacted to exclude work product analysis of any statement, can potentially rectify this gap.  Indeed, in our view, the core of the judge's opinion was obtaining as precise of a delineation of the interviews as possible and eliminating such incongruity.  Moreover, it is reasonable to conclude that notes containing such statements would constitute *Brady* material.

Wiley Rein & Fielding LLP

Peter Zeidenberg
Nathaniel B. Edmonds
January 4, 2006
Page 2

Second, the Opinion and Order direct the production of materials in the possession, custody or control of the government. We assume that yesterday's plea agreement in the Jack Abramoff matter will yield additional documents (e.g. emails) that would fall under Judge Friedman's Order, particularly paragraph 3. Mr. Abramoff may have also provided alleged statements by Mr. Safavian in 302 interviews or the like, the portion of which would be discoverable under Rule 16(a)(1)(A) or (B). *See* December 23, 2005 slip op. at 11-16. If so, we expect that any such Abramoff materials will be produced as soon as practicable.

Finally, at the December 13, 2005 status hearing, we set a tentative deadline of January 17, 2006 for motions. We established this target date with the understanding that the Order would issue at the end of that week (Dec. 16th), and that production would be completed shortly thereafter upon a meet and confer. Given that the timing of the Order and the difficulty of obtaining documents over the holiday period has pushed back events more than a week, and that there is still an indefinite timetable for production of a significant portion of material in the Order, we would like to move to reset the motions deadline for January 23, 2006. This change would not impact the scheduled argument (February 27, 2006) or certainly the April trial date, and we ask for your consent.

Please feel free to call to discuss these matters.

Sincerely,

Barbara Van Gelder
Counsel for David Safavian

# EXHIBIT 2

 Wiley Rein & Fielding LLP

1776 K STREET NW
WASHINGTON, DC 20006
PHONE   202.719.7000
FAX     202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
McLEAN, VA 22102
PHONE   703.905.2800
FAX     703.905.2820

www.wrf.com

January 5, 2006

Barbara Van Gelder
202.719.7032
bvangelder@wrf.com

**VIA ELECTRONIC MAIL AND FACSIMILE**

Peter Zeidenberg
Nathaniel B. Edmonds
Public Integrity Section
United States Department of Justice
1400 New York St. NW
Suite 12100
Washington, DC 20005

Re:    *United States v. David H. Safavian*, Crim. No. 05-370

Dear Peter and Nat:

I have spoken with Al Lambert about your conversation yesterday and have received your e-mails concerning the anticipated production of Tony Costa's emails this afternoon and the expected delays in obtaining the majority of remaining materials.

But first, regarding Nat's notes from the interviews contemplated in Order paragraphs 1 and 5, I would reiterate that we are not seeking attorney work product and would anticipate that the production of his notes would be heavily redacted to include only the substance of the conversation.

Concerning the Abramoff materials, it is my understanding that you believe most of the relevant documents you have from Abramoff have already been provided. As I recall however, most of the documents (mainly e-mails) sent to or from Abramoff came from Greenberg Traurig, LLP, and I do not believe the two were always one and the same. But I trust you will flesh this out as per our request. We of course would appreciate the relevant portions of Abramoff's 302 materials as soon as practicable.

With respect to the briefing schedule, as you have recognized, the sheer volume of emails we will be receiving today renders the January 17, 2006 deadline impractical. And as you noted in last night's e-mail communication, it is still not clear when GSA production can be completed. Indeed, it appears that the necessary computer examinations and/or interviews have not even been conducted yet.

Peter Zeidenberg
Nathaniel B. Edmonds
January 5, 2006
Page 2


In light of this pace of development, it is not unreasonable to seek to reset the motions target to January 23, 2006. I think you would agree that even that date is based on an optimistic take on GSA production unless you are given information later today to suggest otherwise.

Regarding your speedy trial concerns, you will recall, as mentioned in yesterday's letter, the briefing schedule was set out on December 13, 2005 under the assumption that the Order would issue by the end of that week, or December 16, 2005. Under that formula, the speedy trial clock would have run for over 30 days until January 17, 2006. The order in fact issued December 23, 2005. Hence, a reset of the deadline to January 23, 2006 would still be *forfeiting* over one day on the speedy trial clock to the government relative to our December 13th understanding. Furthermore, as you have noted several times in your correspondence, contacting pertinent GSA officials over the holiday period to begin the production process proved difficult. I am always cautious to speculate, but I don't believe Judge Friedman would be pleased with us litigating under these circumstances , especially since such flexibility was contemplated at the hearing.

I look forward to your response and please feel free to call if you have any questions.


Sincerely,

Barbara Van Gelder
Counsel for David Safavian

# EXHIBIT 3

 Wiley Rein & Fielding LLP

1776 K STREET NW
WASHINGTON, DC 20006
PHONE   202.719.7000
FAX     202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
McLEAN, VA 22102
PHONE   703.905.2800
FAX     703.905.2820

www.wrf.com

Barbara Van Gelder
202.719.7032
bvangelder@wrf.com

January 6, 2006

**VIA ELECTRONIC MAIL**

Peter Zeidenberg
Nathaniel B. Edmonds
Public Integrity Section
United States Department of Justice
1400 New York St. NW
Suite 12100
Washington, DC 20005

Re:    *United States v. David H. Safavian*, Crim. No. 05-370

Dear Peter and Nat:

I just wanted to follow up on our conversation earlier this afternoon with a summary of developments.

You indicated that you will not be turning over a redacted set of Nat's notes for the 302s covered by paragraphs 1 and 5 of the December 23rd Order. We will review the discrepancies we have uncovered between the notes and the subsequent 302 summaries and make a determination as to whether we need to litigate this issue. Our understanding is that the D.C. Circuit has held more than once that a party can discover fact work product upon showing a substantial need for the materials, particularly when the attorney has not conducted the interview. *See, e.g., In re Sealed Case*, 124 F.3d 230, 236-37 (D.C. Cir. 1997), *rev'd on other grounds by, Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998). In light of the possibility of litigation on this question, you agreed to preserve these notes.

Concerning the materials relating to the December 23rd Order paragraph 2, you represented that you have some internal documents to produce, but that GSA has more or less adopted the Standards of Ethical Conduct for Employees of the Executive Branch in 5 C.F.R. § 2635. You implied that the GSA has not added independent rules and regulations pursuant to 5 C.F.R. § 2638 or otherwise. You also indicated that you would provide cites to certain regulations, including pertinent CPO opinions.

Peter Zeidenberg
Nathaniel B. Edmonds
January 6, 2006
Page 2

Regarding the business associate e-mails covered in Order paragraph 3, you
represented that a number of responsive documents will be turned over as soon as a
protective order is entered. We stated that we will consent to this protective order
upon receipt.

In addition, you have indicated that you will examine whether there are additional
discoverable e-mails generated from Jack Abramoff's personal accounts and
production independent of Greenberg Traurig, LLP. However, you have indicated
that, upon reconsideration, you will not be providing the selective portion of Mr.
Abramoff's 302 that relates to Mr. Safavian's statements. We stated that we believe
a redacted production of 302s and related materials would fall within the ambit of
the December 23rd Order, and that we will litigate this issue with a motion to
compel early next week.

You represented that the GSA has not completed its examination and/or interviews
of relevant officials to complete the obligations in paragraph 4. However, while
Tony Costa's account provided approximately 30,000 responsive email
communications, GSA officials have apparently indicated to you that they do not
anticipate the remaining officials to have similar reserves given the 60-day retention
policy that the GSA has apparently had in place since 1998. You represented that
you will be providing documentation, pursuant to Order paragraph 6, outlining the
specific efforts that were made to search and secure responsive documents from the
GSA, GSA-OIG, and the Department of Justice.

You represented that you would consent to our request for an extension of the
pretrial motions deadline until January 23, 2006. We will file a joint motion to
amend the briefing schedule along with the motion to compel early next week.

Please do not hesitate to contact me if you have any questions or concerns regarding
these issues.

Sincerely,

Barbara Van Gelder
Counsel for David Safavian

EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| )　 | |
| v.　　　　　　　　　　　 ) | Criminal No. 05-0370 (PLF) |
| )　 | |
| DAVID HOSSEIN SAFAVIAN,    ) | |
| )　 | |
| Defendant.　　　　 ) | |

## OPINION

This matter is before the Court on the defendant David Safavian's motion to compel discovery under Rule 16 of the Federal Rules of Criminal Procedure and Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. After the matter was briefed, the Court heard oral argument on November 14, 2005, and then accepted supplemental briefs from the parties during the ensuing two weeks. A summary of the defendant's outstanding discovery requests as of the time of the initial filing, and the defendant's characterization of the government's stated reasons for withholding production, is set forth in Attachment A to the motion to compel.

## I. BACKGROUND

The defendant is charged in a five-count indictment with three counts of making false statements under 18 U.S.C. § 1001, and two counts of obstruction of justice under 18 U.S.C. § 1505. The indictment charges that the defendant served as Chief of Staff for the Administrator of the General Services Administration ("GSA") from May 16, 2002 to January 2004, and then, from November 2004 to September 2005, as the Administrator of the Office of Federal Procurement Policy, Office of Management and Budget, Executive Office of the

President. Indictment at ¶ 1. The centerpiece of the indictment is the allegation that in July of

2002 the defendant sought an opinion from a GSA ethics officer about whether he could attend a

golf trip with lobbyist Jack Abramoff in Scotland and travel on a private jet chartered by Mr.

Abramoff that would take the golfing party to Scotland. In the e-mail by which Mr. Safavian

sought the ethics opinion, he stated that the lobbyist in question "is a lawyer and lobbyist, but one

that has no business before GSA (he does all of his work on Capitol Hill)." Indictment at ¶ 18.

The GSA ethics officer responded by e-mail, permitting Mr. Safavian to go on the trip and to

accept the gift of free transportation on the ground that "[y]ou stated that neither [Mr. Abramoff]

nor his firm does business with or is seeking to do business with GSA." See id. ¶ 19.

Count One of the indictment charges Mr. Safavian with obstruction of justice with

regard to an investigation conducted by the Office of the Inspector General ("OIG") of GSA, and

specifically alleges that the defendant falsely stated in connection with the investigation that Mr.

Abramoff had no business with GSA and that he had paid Abramoff for the total cost of the trip

to Scotland. Indictment at ¶ 25. Count Two charges the defendant with making the same false

statements in connection with obtaining the GSA ethics opinion. Count Three charges the

making of the same false statements in the course of the GSA-OIG investigation. Count Four

charges obstruction of justice in connection with an investigation into allegations of misconduct

by Mr. Abramoff by the Senate Committee on Indian Affairs. It relates in part to statements

made to the Committee investigator and to the Committee Chairman, Senator John McCain, with

respect to Mr. Safavian's statements to the GSA ethics officer. Id. at ¶¶ 36-37. Count Five

alleges that Mr. Safavian made false statements to the Committee to the effect that Mr. Abramoff

did not have any business with GSA at the time of the trip to Scotland, that Mr. Safavian

2

provided documentation to the Committee containing false statements (his e-mail to the GSA

ethics officer), and that he concealed Mr. Abramoff's business relationships with GSA. Id. at

¶ 40.

   The defendant seeks documents and information that he contends are necessary

and material to the preparation of his defense and/or constitute exculpatory material under Brady.

II. DISCUSSION

<em>A. Relevant Standards under Rule 16 and <u>Brady</u></em>

   At the outset, it is apparent that the Justice Department and the defendant have

very different views as to the scope of both Rule 16 and the government's Brady obligations.

The Court will attempt first to clarify what the government's obligations are and then to apply the

appropriate standards to the facts of this case and the requests made by the defendant.

1. Rule 16

   Under Rule 16 of the Federal Rules of Criminal Procedure, the government is

required to disclose to the defendant the substance of any relevant oral statement made by the

defendant, before or after arrest, in response to interrogation by a person that the defendant knew

was a government agent "if the government intends to use the statement at trial." FED. R. CRIM.

P. 16(a)(1)(A). This provision of Rule 16 is not limited to questions asked only by Justice

Department prosecutors or law enforcement agents. At a minimum, it includes statements made,

in response to interrogation, to any officers of the federal government "with criminal law

enforcement responsibilities or their agents" – that is, "law enforcement agents or persons acting

on their behalf." United States v. Burns, 15 F.3d 211, 214-15 (1st Cir. 1994); see also United

3

States v. Griggs, 111 F.Supp.2d 551, 554 (M.D. Pa. 2000) (extends to any person "allied with the

prosecution once a federal investigation or prosecution commences, such as a state officer

working on a joint task force or with the U.S. Attorney's office," so long as that person

"interrogates" the defendant).[1]  In this case, therefore, Rule 16(a)(1)(A) includes questions put to

Mr. Safavian by the GSA Office of the Inspector General ("OIG") as well as questions put to him

by the FBI and other law enforcement agencies.  It does not, however, include statements in

response to questions asked by the GSA ethics officer or the GSA General Counsel's Office

unless those questions were asked in conjunction with or as an adjunct to the OIG or FBI

investigations.

       Under another provision of Rule 16(a), the government also must provide the

defendant with "any relevant written or recorded statement [made] by the defendant if . . . the

statement is within the government's possession, custody or control," and the attorney for the

government knows "or through due diligence could know" that the statement exists, regardless

of whether the government intends to use the statement at trial.  FED. R. CRIM. P. 16(a)(1)(B)(i).

Interrogation by a "government agent" is not required, only knowledge and possession, custody,

or control by "the government."  In the Court's view, "the government" includes any and all

agencies and departments of the Executive Branch of the government and their subdivisions, not

just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies.  See

United States v. Santiago, 46 F.3d 885, 893-94 (9th Cir. 1995); United States v. Bryan, 868 F.2d

1032, 1036 (9th Cir. 1989); cf. United States v. Brooks, 966 F.2d at 1503.  It does not, however,

---

     [1]     In the District of Columbia, it would also apply, for example, to the Metropolitan
Police Department for obvious reasons.  Cf. United States v. Brooks, 966 F.2d 1500, 1504 (D.C.
Cir. 1992).

include a committee of the United States Senate (or the House of Representatives) because the

Congress is a separate branch of the government and was not intended by the Rules writers to be

included within Rule 16.  Cf.  United States v. Trie, 21 F. Supp. 2d 7, 25 n. 17 (D.D.C.) ("The

Congress is not an 'agency,' and the DOJ has no obligation under Brady to disclose information

in the possession of Congress that is not also in the possession of the DOJ or [another Executive

Branch agency]."

       Because Rule 16 talks of "possession, custody or control," FED. R. CRIM. P.

16(a)(1)(B)(i), however, the Justice Department must turn over any written or recorded

statements in its possession or custody or control regardless of the origin of the statements, so

long as the government knows or through due diligence could know of their existence.  Thus, the

prosecution must disclose any statement of Mr. Safavian in the possession, custody or control of

any Executive Branch agency or department, regardless of whether the statement originated from

a local law enforcement agency, a non-law enforcement agency of the federal government, or a

coordinate branch of the government such as the United States House of Representatives or the

United States Senate.  As with their Brady obligations, "[t]his personal responsibility [of the

Justice Department] cannot be evaded by claiming lack of control over the files or procedures of

other executive branch agencies."  United States v. Jennings, 960 F.2d 1488, 1490 (9th Cir.

1992).  In the course of their investigation, and in collecting and reviewing evidence, the

prosecutors must ensure that any information relevant to this case that comes into the possession,

control, or custody of the Justice Department remains available for disclosure.  See United States

v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998) (cautioning against government "gamesmanship in

discovery matters."). Statements of the defendant are particularly important in this case, and the

precise statements made by him to any government agency or official at each and every stage

may be extremely relevant to his defense.

Rule 16 next requires the disclosure of all books, papers, documents, data,

tangible objects, etc., that are "within the government's possession, custody or control" and are

"material to preparing the defense" or "[that] the government intends to use . . . in its case in

chief at trial [or that] was obtained from or belongs to the defendant." FED. R. CRIM. P.

16(a)(1)(E).  This portion of the Rule also uses the terms "possession, custody or control."  So,

again, the prosecution must turn over everything in its possession <u>or</u> custody <u>or</u> control,

regardless of the original source of the document or other object, so long as it is "material" under

the Rule.  The defendant argues -- and there is some support for his contention in both the oral

and written submissions made by the government to this Court -- that the government reads this

part of the Rule in much too limited a way.  While it is true that the government must produce

items it intends to use at trial and items that it obtained from the defendant, its obligations are not

limited to those categories only; it also must disclose items that are "material to preparing the

defense."  And the government cannot take a narrow reading of the term "material" in making its

decisions on what to disclose under Rule 16.  Nor may it put itself in the shoes of defense

counsel in attempting to predict the nature of what the defense may be or what may be material to

its preparation.

As Judge Sentelle said for the D.C. Circuit in <u>United States v. Marshall</u>, 132 F.2d

at 67, Rule 16(a)(1)(E) (formally Rule 16(a)(1)(C)) covers evidence that is "material 'to <u>the</u>

<u>preparation of</u> the defendant's defense'" (emphasis in original).  It is not limited to evidence that

is favorable or helpful to the defense and does not immunize inculpatory evidence from

6

disclosure. See id. "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of

the defendant's defense' as exculpatory evidence. . . . [I]t is just as important to the preparation

of a defense to know its potential pitfalls as to know its strengths." Id. (footnote omitted).  Rule

16 is intended to provide a criminal defendant "the widest possible opportunity to inspect and

receive such materials in the possession of the Government as may aid him in presenting his side

of the case." United States v. Poindexter, 727 F.Supp. 1470, 1473 (D.D.C. 1989).  See also

United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy

burden"; evidence is material if there is indication that it may play "important role in uncovering

admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal.");  United States v. George, 786 F. Supp. 1, 13 (D.D.C. 1991) (the

materiality hurdle "is not a high one"). Despite the government's arguments, United States v.

Lloyd, 992 F.2d 348 (D.C. Cir. 1993), is not to the contrary.  See United States v. Marshall, 132

F.3d at 68.

   As the government points out, however, Rule 16 of the Federal Rules of Criminal

Procedure does not authorize the discovery or inspection of statements made by prospective

government witnesses except as provided for by the Jencks Act, 18 U.S.C. § 3500.  FED. R.

CRIM. P. 16(a)(2).  This is true even if the statements are "material to preparing the defense"

unless (1) portions of those statements contain the substance of any relevant written or oral

statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B); or (2) they

are exculpatory or favorable, so-called Brady material.  See Brady v. Maryland, 373 U.S. 83

(1963).  Brady always trumps both Jencks and Rule 16.  See United States v. Tarantino, 846 F.2d

1384, 1414 n. 11 (D.C. Cir. 1988) (limitations on discovery in Jencks Act do not lessen Brady

obligations); see also United States v. Haldeman, 559 F.2d 31, 77-78 & n. 112 (D.C. Cir. 1976);

United States v. Ramirez, 54 F. Supp. 2d 25, 32-33 (D.D.C. 1999); United States v. Trie, 21 F.

Supp. 2d at 23;  United States v. Poindexter, 727 F. Supp. at 1485 ("The Brady obligations are

not modified merely because they happen to arise in the context of witness statements.").

### 2.  Brady

The government and the defendant also have very different views concerning the

government's Brady obligations.  The government acknowledges that under Brady it has the

affirmative duty to produce exculpatory evidence when such evidence is material to either guilt

or punishment.  But it contends that evidence is "material" only "if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different" (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)).  The

problem with this iteration of Brady and the government's view of its obligations at this stage of

the proceedings, however, is that it permits prosecutors to withhold admittedly favorable

evidence whenever the prosecutors, in their wisdom, conclude that it would not make a

difference to the outcome of the trial.  Most prosecutors are neither neutral (nor should they be)

nor prescient, and any such judgment necessarily is speculative on so many matters that simply

are unknown and unknowable before trial begins:  which government witnesses will be available

for trial, how they will testify and be evaluated by the jury, which objections to testimony and

evidence the trial judge will sustain and which he will overrule, what the nature of the defense

will be, what witnesses and evidence will support that defense, what instructions the Court

8

ultimately will give, what questions the jury may pose during deliberations (and how they may be

answered), and whether the jury finds guilt on all counts or only on some (and which ones).

The prosecutor cannot be permitted to look at the case pretrial through the end of

the telescope an appellate court would use post-trial. Thus, the government must always produce

any potentially exculpatory or otherwise favorable evidence without regard to how the

withholding of such evidence might be viewed -- with the benefit of hindsight -- as affecting the

outcome of the trial. The question before trial is not whether the government thinks that

disclosure of the information or evidence it is considering withholding might change the outcome

of the trial going forward, but whether the evidence is favorable and therefore must be disclosed.

Because the definition of "materiality" discussed in Strickler and other appellate cases is a

standard articulated in the post-conviction context for appellate review, it is not the appropriate

one for prosecutors to apply during the pretrial discovery phase. The only question before (and

even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it

must be disclosed without regard to whether the failure to disclose it likely would affect the

outcome of the upcoming trial. United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-1199

(C.D.Cal. 1999); see also United States v. Acosta, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005),

and appended magistrate judge's decision, 357 F. Supp. 2d at 1237; United States v. Carter, 313

F. Supp. 2d 921, 924-25 (E. D. Wisc. 2004).

The meaning of the term "favorable" under Brady is not difficult to discern. It is

any information in the possession of the government -- broadly defined to include all Executive

Branch agencies -- that relates to guilt or punishment and that tends to help the defense by either

bolstering the defense case or impeaching potential prosecution witnesses. It covers both

exculpatory and impeachment evidence. See United States v. Bagley, 473 U.S. 667, 676-77

(1985) (both exculpatory and impeachment evidence "fall[] within the Brady rule"); United

States v. Smith, 77 F.3d 511, 514 (D.C. Cir. 1996); United States v. Hsia, 24 F. Supp. 2d 14

(D.D.C. 1998). "The government is obligated to disclose all evidence relating to guilt or

punishment which might be reasonably considered favorable to the defendant's case," that is, all

favorable evidence that is itself admissible or "that is likely to lead to favorable evidence that

would be admissible," United States v. Sudikoff, 36 F. Supp. 2d at 1199-1200, or that could be

used to impeach a prosecution witness. See United States v. Trie, 21 F. Supp. 2d at 23

("favorable evidence" encompasses "both evidence that is exculpatory and evidence that could be

used to impeach a government witness"). Where doubt exists as to the usefulness of the

evidence to the defendant, the government must resolve all such doubts in favor of full

disclosure. See United States v. Paxson, 861 F.2d 730, 737 (D.C. Cir. 1988) (insufficient for

government to provide "niggling excuses" for its failure to provide potentially exculpatory

evidence).

Under Brady, the prosecutors have an affirmative duty to search possible sources

of exculpatory information, including a duty to learn of favorable evidence known to others

acting on the prosecution's behalf, including the police, Kyles v. Whitley, 514 U.S. 419, 437

(1995), and to cause files to be searched that are not only maintained by the prosecutor's or

investigative agency's office, but also by other branches of government "closely aligned with the

prosecution." United States v. Brooks, 966 F.2d at 1503 ("affirmative duty of inquiry"). See

United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) ("[i]nformation possessed by other

branches of the federal government, including investigating officers, is typically imputed to the

prosecutors of the case" for <u>Brady</u> purposes); <u>United States v. Jennings</u>, 960 F.2d at 1490 ("[t]his personal responsibility cannot be evaded by claiming lack of control over the files . . . of other executive branch agencies").

### B. Defendant's Specific Requests

The defendant first requests the FBI 302s of interviews with the GSA Ethics Officer, Raymond McKenna, and with Eugenia Ellison of the GSA General Counsel's Office, who had drafted the ethics opinion, as well as the rough notes (if any) taken by the FBI agents regarding those interviews.[2]  The defendant argues that the 302s and the rough notes would identify the substance of relevant oral statements made by Mr. Safavian and/or address the critical questions raised by the gap between the ethics opinion's characterizations of Mr. Safavian's statements to the Ethics Officer and his actual statements to Mr. McKenna and Ms. Ellison.  It is clear to the Court that this request meets the standards for disclosure under Rule 16(a)(1)(A) if the government intends to use the statements at trial (as surely it does intend) and/or Rule 16(a)(1)(B), without regard to whether the government intends to use these statements at trial.  Depending upon what is contained in the statements, there also may be evidence favorable to the defendant that must be disclosed under the <u>Brady</u> standards announced herein.

Mr. Safavian stated in his e-mail that Mr. Abramoff "has no business before GSA," while Ms. Ellison's response states that Mr. Safavian told Mr. McKenna (or perhaps someone else) that neither Mr. Abramoff or his firm "does business with or is seeking to do

---

[2]    The government has represented that there are no rough notes or tape recordings of these interviews.

business with GSA." Indictment at ¶ 19. This distinction could be crucial to the government's

ability to prove its case and/or to Mr. Safavian's defense. Any other statements by Mr. Safavian

that either further inculpate or potentially exculpate him therefore must be disclosed. And any

information that would elucidate this discrepancy necessarily is "material" to the preparation of a

defense. Its prompt disclosure is required by either Rule 16(a)(1)(A) or (B) or by Rule 16

(a)(1)(E). Such disclosure is not precluded either by Rule 16(a)(2) or by the Jencks Act.

      The defendant's second request is for internal GSA procedures and guidelines

relating to the consideration and issuance of ethics opinions and disciplinary actions. The request

for guidelines and procedures also is material to the preparation of the defense in this case under

Rule 16, regardless of whether the GSA procedures and guidelines could be evidence at trial.

They therefore must be disclosed. On the other hand, the request for disciplinary actions relating

to other government employees does not seem to be material and in fact strikes the Court as

nothing more than a fishing expedition unlikely to lead to admissible evidence.

      Third, the defendant requests e-mails and correspondence from May through

August of 2002 between certain named associates of Mr. Abramoff concerning the Old Post

Office and White Oak projects or properties, or concerning Mr. Safavian's participation in the

Scotland trip. The government opposes Mr. Safavian's requests largely on the ground that since

Mr. Safavian never saw these e-mails and other correspondence they could have no bearing on

his state of mind when he communicated with the GSA Ethics Officer, the GSA-OIG or the

Senate investigators, or be otherwise material to any conceivable defense. The government also

represents that it has disclosed e-mails between Mr. Safavian, Mr. Abramoff and other

individuals pertaining to the Old Post Office project, the White Oak project, and the Scotland trip

that are in the possession of the Justice Department, as they comprise "the vast majority of the e-mail evidence [the government] intends to introduce at trial." Government's Memorandum in Opposition to Defendant's Motion to Compel Discovery at 13.

The Court does not agree with the government that these documents are only relevant if they relate to the defendant's state of mind when he communicated with various government officials. Rather, they could be "material" to the preparation of other defenses, a number of which are suggested in the defendant's filings in connection with this motion and have been alluded to in the hearings before the Court. For instance, the defense has stated its belief that the Old Post Office and White Oak projects were not available for any business dealings at the time Mr. Safavian requested the ethics opinion, and that Mr. Safavian's statements that Mr. Abramoff was not conducting business with GSA therefore were truthful. Simply because the e-mails themselves were not sent to or received by Mr. Safavian and therefore do not directly reflect his state of mind, and may or may not be admissible in evidence at trial, does not mean that they are not material to the preparation of a defense or that they will be unlikely to lead to admissible evidence. To the contrary, e-mails between certain named associates of Mr. Abramoff with knowledge of the status of these projects or the Scotland trip may very well include information helpful to the defendant in finding witnesses or documents that could support his contention.

Fourth, the defendant requests reports, documents, e-mails and correspondence sent to or from various GSA officials, including GSA Commissioner Joseph Marovec, concerning the Old Post Office and White Oak properties and projects and/or relating to GSA procedures and of policies for disposal of such properties. Unlike the third request, respecting

e-mails between Mr. Abramoff's associates, the defendant has not placed a time restriction upon

this request. For that reason alone, this is not a reasonable request. While the documents

themselves may be material to the preparation of a defense and therefore discoverable, the

request does not have the required particularity. The defense is directed to narrow the requested

documents to a time frame relevant to the matter and reasonable for discovery.[3]

        With respect to both the third and fourth categories of documents requested, as the

Court has already held, the term "government" in Rule 16(a)(1)(B) and (E) encompasses more

than just the Justice Department, the FBI, the GSA-OIG and other investigative agencies; it

includes all agencies and departments of the Executive Branch of the government and all

subdivisions thereof. The fact that the documents requested may not presently be in the

"possession" of the Justice Department prosecutors or the FBI is irrelevant. The documents must

be produced if they are in the "possession, custody or control" of any agency of the Executive

Branch of the government and are either material to the preparation of a defense or are

exculpatory under Brady. It is insufficient for the Justice Department merely to state that while

documents are not currently in its (or the FBI's) possession it is continuing to make inquires of

GSA employees about e-mails, correspondence and other documents regarding the Old Post

Office and White Oak projects during the course of witness interviews . While this certainly is a

helpful step to obtain some relevant documents, it is not the systematic response that is required

of the government under Rule 16 and Brady. Individual persons may or may not have kept

---

[3]     The sooner the defendant narrows and refines this request and presents it in
writing to the prosecutors, the sooner the Department of Justice will be able to comply with the
directives in the next paragraph of this Opinion and in the Court's Order.

copies of these e-mails, correspondence and other documents.[4] The GSA itself obviously has

other more comprehensive means of searching for the e-mails, correspondence, and other

documents that are more likely to uncover all of the documents requested.

The Department of Justice therefore is required immediately -- by formal request,

in writing -- to demand that the GSA conduct a thorough search for and produce to the Justice

Department all e-mails -- including archived e-mails on hard drives -- and correspondence sent to

or from GSA officials relating to the status of the Old Post Office and White Oak projects, as

well as any other documents relating to the same.[5] The prosecutors will be able to determine

whether they are required to disclose these documents under Rule 16 or Brady, as explicated in

this Opinion, or to continue to assert their withholding only after they have actually seen them.

---

[4]    Indeed at the last status conference on this matter, on December 13, 2005, the
government advised the Court that at least some of the GSA employees it has interviewed have
kept extensive personal records of e-mails and correspondence that may exceed even those of the
agency itself. Clearly, investigating records kept by these individuals personally will remain an
important part of the government's fulfillment of its Brady obligations.

[5]    At the December 13, 2005 status conference, the government informed the Court
that it had communicated with GSA concerning its e-mail retention policies and had been told
that all e-mails are deleted after 60 days (presumably from the GSA mail server). The
government went on to advise the Court that some persons subject to the defense's discovery
requests had personally archived some or many of the requested e-mails.

This representation is not adequate. It is not clear how and where the government
got its information about the GSA's information technology practices and retention capabilities,
and through what channels, formal or informal, this information was obtained. The government
also did not clarify whether the 60 day retention policy applies to the GSA's mail server or
whether the e-mails in question may exist in back-up storage devices or media. While the Court
certainly accepts that the Justice Department prosecutors have represented the GSA's practices to
the best of their knowledge and ability, it nevertheless orders the prosecution to make a formal,
written request of GSA for the e-mails that this Court finds subject to disclosure as well as a
more specific, detailed explanation of the e-mail retention and storage policies and capabilities.

Fifth, the defendant requests the rough notes of the FBI agents relating to their 302s or interview reports and/or tape recordings of interviews with Senate Committee investigators in connection with Mr. Safavian's interviews by and correspondence with the investigators or the Committee. The government argues that these rough notes are witness statements and therefore need not be produced pretrial under Rule 16 but must only be produced at or about the time of trial under the Jencks Act, 18 U.S.C. § 3500.[6] The defendant responds that he is not asking for the witness statements of the investigators qua witness statements but rather for "Mr. Safavian's allegedly incriminating statements to Senate investigators in Counts Four and Five via the only available sources." Defendant David H. Safavian's Reply to the Government's Response to Defendant's Supplemental Memorandum in Support of the Motion to Compel Discovery at 4 (emphasis in original). While these statements may constitute incriminating statements by the defendant to Senate investigators, the Senate investigators cannot be considered "government agents" under Rules 16(a)(1)(A) or (B)(ii). The government therefore does not have to turn the notes over under Rule 16(a)(1)(A) or (B)(ii). They must, however, turn them over under Brady if they are favorable or exculpatory or under Rule 16(a)(1)(B)(i) if they are in fact statements of the defendant to anyone.

Finally, the defendant makes two requests with respect to his "coercion defense." He seeks (1) all documents or evidence concerning other complaints made to the GSA by the individual believed to be the informant for the GSA-OIG investigation, and (2) documents and other items concerning Mr. Safavian's arrest and/or cooperation. The "coercion defense" as

---

[6]    The government acknowledges that such rough notes exist and will be produced at trial under the Jencks Act. It represents that no tape recordings of the interviews were made.

16

described seems attenuated at best, and the Court cannot conceive of how the reasons for the

initiation of the GSA-OIG investigation of Mr. Safavian, the possibility that the anonymous

complainant is a serial complainant who had less than honorable motivations in making the

complaint, or the circumstances regarding Mr. Safavian's arrest and/or cooperation can be

material to any defense to the false statements of obstruction charges. Furthermore, the internal

deliberative processes of the Department of Justice, the FBI, and the GSA-OIG are irrelevant to

the preparation of a defense. Unless the defendant first can make out a selective or

discriminatory prosecution claim, see United States v. Armstrong, 517 U.S. 456, 464 (1996);

Branch Ministries v. Rossotti, 40 F. Supp. 2d 5, 21-24 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C.

Cir. 2000); Branch Ministries v. Richardson, 970 F. Supp. 11, 15-17 (D.D.C. 1997), requests for

these categories of document must be denied – unless, of course, any information within these

categories constitutes Brady material as defined by this Opinion.

      An Order consistent with this Opinion shall issue this same day.

      SO ORDERED.

                        /s/_____
                        PAUL L. FRIEDMAN
                        United States District Judge

DATE:   December 23, 2005

Case 1:05-cr-00370-PLF    Document 20    Filed 12/23/2005    Page 1 of 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  )
           )
           )
   v.        )   Criminal No. 05-0370 (PLF)
           )
DAVID HOSSEIN SAFAVIAN,  )
           )
    Defendant.    )
           )

ORDER

    For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion to compel discovery [9] is GRANTED in part and DENIED

in part.   Accordingly, it is hereby ORDERED that the government shall produce to the

Defendant the following material:

    1.  All 302s, investigative reports, notes, documents, and tapes of General

Services Administration ("GSA") Ethics Officer Ray McKenna and  Eugenia Ellison of the GSA

General Counsel's office pertaining to Mr. Safavian's request for an advisory ethics opinion.

    2.  All internal GSA procedures and guidelines relating to ethics opinions and

disciplinary actions for violations of such policies, but not information about specific disciplinary

actions related to other employees.

    3.  All e-mails and correspondence and any other documents from May 2002

through August 2002 sent or received by Pam Abramoff, Anthony Rudy, John Van Horne, Neil

Volz, Holly Bowers, Colin Stevens, and Rabbi David Lapin concerning Mr. Safavian, the Old

Post Office Building in Washington D.C. ("OPO"), the Naval Surface Warfare Center White Oak

Property in Silver Spring, Maryland ("White Oak") or the 2002 Scotland trip.

      4.     All e-mails and correspondence and any other documents within a

specified, reasonable and appropriate time frame sent from or received by GSA Commissioner

Joseph Moravec, as well as GSA officials Paul Chrisolini, Leah Uhre, Tony Costa, Sharon

Jenkins, Ann Everett, Ray McKenna, and Eugenia Ellison concerning the OPO or White Oak

properties or projects, or Mr. Safavian's request for an advisory ethics opinion.[1]

      5.     All notes, documents and tapes of 302s and interviews of the Chief

Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on

Indian Affairs within the possession, custody or control of the government.

      6.     Upon producing the above materials, the government shall also provide

the defendant information as to what specific efforts were made to search for responsive

documents, including the extent of the search for responsive documents within the possession,

custody or control of the GSA, GSA Office of the Inspector General, and the Department of

Justice.

      SO ORDERED.


                      /s/_____
                      PAUL L. FRIEDMAN
DATE:  December 23, 2005        United States District Judge

---

[1]     As discussed in the Opinion accompanying this Order, the defendant is ordered to particularize his request with a time frame reasonable for discovery and relevant to the materials requested. If the parties cannot reach an agreement on what that time frame is, they may file an additional motion to resolve that issue. The parties are, however, expected to negotiate this matter to the best of their ability before bringing it to the Court's attention.