UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :     Cr. No 05-370 (PLF)
                                :
          v.                       :
                                :
DAVID HOSSEIN SAFAVIAN     :
                                :
      Defendant              :

### GOVERNMENT'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF GOVERNMENT'S MOTION FOR CLARIFICATION

The United States of America, by and through its undersigned attorneys, hereby

respectfully submits its Combined Memorandum in Opposition to Defendant's Motion to

Compel Discovery and In Support of Its Motion for Clarification. For the reasons set forth

herein, the government requests that the Court deny defendant's motion for "a redacted portion

of all notes, documents and tapes of the 302 interviews of Jack Abramoff, insofar as such notes,

documents and tapes concern or reference statements of Mr. Safavian." The government further

requests that the Court clarify the discovery obligations of the government as set forth in the

Court's Opinion of December 23, 2005. As grounds for these requests, the government states as

follows:

### I. Defendant's Pending Motion To Compel Discovery Should Be Denied

#### A. Non-defendant Witness Statements Are Not Subject to Rule 16 Pre-Trial Disclosure

Defendant's motion for notes and 302s pertaining to Jack Abramoff that "concern or

reference statements of [defendant]" should be denied because none of the provisions of Rule 16

permit the pre-trial discovery of any potential witness statements other than those of the defendant

himself which are 1) made to law enforcement and/or 2) written or recorded statements. Because the FBI reports requested are not statements of the defendant as defined by Rule 16 and the applicable case law, their pre-trial disclosure is expressly prohibited by the Jencks Act.

Rule 16(a)(1)(A) states:

> **(A)** **Defendant's Oral Statement.** Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statements made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

Rule 16(a)(1)B) states:

> **(B)** **Defendant's Written or Recorded Statement.** Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> > **(i)** any relevant written or recorded statement by the defendant if:
> >
> > > the statement is within the government's possession, custody, or control; and the attorney for the government knows – or through due diligence could know – that the statement exists;
> >
> > **(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent;
> >
> > **(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

Put simply, the statement of Jack Abramoff to the FBI or other federal agents is not the defendant's statement.[1] To hold otherwise would effectively create an entirely new category of

---

[1] Indeed, the FBI 302 being sought should not be considered a statement of Abramoff's, much less the defendant; it is a statement of the *FBI agent.* United States v. Donato, 99 F.3d 426, 433 (D.C. Cir. 1997) (because agent did not record the entire interview in his FBI 302 report, but only those portions that he considered pertinent, the report was not a "statement" of the interviewee for purposes of the Jencks Act); see also United States v. Foley, 871 F.2d 235, 238-39 (1st Cir. 1989);

discoverable material: statements of law enforcement agents regarding what any government witness said about statements of or conversations with the defendant. Such an expansive reading of what constitutes a defendant's statement under Rule 16 would run counter to the law of this Circuit as well as other Circuits.

In United States v. Pollack, 534 F.2d 964 (D.C. Cir.), cert. denied, 499 U.S. 924 (1976), this Circuit rejected the expanded definition of a statement "by the defendant" that defendant avers herein. Def. Motion, p. 2. In denying defendant's appeal of the district's court's refusal to permit pre-trial discovery of writings made by third persons that attributed inculpatory statements to the defendant, the Pollack Court held that a statement "'by the defendant' ... requires not that the statement at issue be attributed to the defendant although, as here, related by a government witness, but that the statement be obtained by the government *directly* from the defendant *without the intervention of any third party*. A contrary interpretation of the Rule would present a conflict with 18 U.S.C. Sec. 3500." United States v. Pollack, 534 F.2d at 976 (emphasis supplied). See also, United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir.), cert. denied, 488 U.S. 867 (1988) ("phrase 'statements made by the defendant' [for Rule 16(a)(1)(A) purposes] does not include statements made by co-conspirators of the defendant, even if those statements can be attributed to

_____

(FBI 302 did not fall within Jencks Act even though witness testified that throughout his interview the agent would ask the witness to slow down, at times repeat what the witness had said, and took very careful notes to ensure that agent "got it right"); United States v. Roseboro, 87 F.3d 642, 646 (4th Cir. 1996) (302 not a Jencks Act statement of witness even though agent took contemporaneous notes and tried to ensure 302 was accurate); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) (302s not Jencks for interviewee because not adopted by witness or substantially verbatim); United States v. Willis, 997 F.2d 407, 413-14 (8th Cir. 1993) (same); United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003) (FBI 302s of witness interviews are Jencks Act statement of agent, not of witness).

the defendant for purposes of the rule against hearsay"; pre-trial discovery of such statements barred

by the Jencks Act).

The Pollack Court's definition of "statements of a defendant" as the defendant's own words

– and not those attributed to the defendant by third-parties – has been similarly interpreted by other

Circuits.  See In re United States of America, 834 F.2d 283, 286 (2d Cir. 1987) ("[r]ecognizing that

the district judge was in effect ordering the discovery of 'statements-within-statements,' this Court

held that the statements ordered disclosed were in fact made by 'someone other than the defendant'

and were not permitted by the Jencks Act") citing United States v. Percevault, 490 F.2d 126, 130 (2d

Cir. 1974); United States v. Kenny, 462 F.2d 1205, 1212 (3rd Cir.), cert. denied, 409 U.S. 914 (1972)

(district court properly denied defendant's pre-trial discovery request for "statements of government

witnesses setting forth conversations with him"; such disclosure barred by the Jencks Act); United

States v. Cole, 857 F.2d 971, 975 (4th Cir. 1988) cert. denied, 489 U.S. 1070 (1989) (defendant

appealed government's failure to disclose pre-trial statement of a government witness, recorded by

government agent, which memorialized defendant's damaging admissions; held, Rule 16(a)(1)(A)

does not apply to "statements of government witnesses that happen to contain statements made by

a defendant" and such discovery barred by the Jencks Act); United States v. Carter, 621 F.2d 238,

240 (6th Cir.), cert. denied, 449 U.S. 858 (1980) (no duty to disclose to defendant prior to witness

testifying that defendant told witness that he was late for work because he had robbed a bank, despite

fact that this statement had been previously provided to the FBI; Jencks Act prohibits disclosure until

witness testifies); United States v. Wilkerson, 456 F.2d 57, 60-61 (6th Cir.) cert. denied, 408 U.S. 926

(1972)(confession of a defendant to a prospective government witness, memorialized by FBI agent,

not discoverable pre-trial as a statement of defendant; "[s]uch statements are producible, if at all,

4

under the provisions of the Jencks Act"); United States v. Feinberg, 502 F.2d 1180, 1181-83 (7th Cir. 1974) cert. denied, 420 U.S. 926 (1975) (district court reversed for ordering the government, pursuant to Rule 16, disclose to the defense pre-trial the substance of oral statements made by the defendant to a non-government witness; disclosure barred by Jencks Act even where statements are memorialized in writing); United States v. Walk, 533 F.2d 417, 417-18 (9th Cir. 1975) ("Jencks Act prohibits the pre-trial disclosure of the witness' statements [to the FBI], even when such statements contain quotations allegedly attributable to the defendant[;] such statements may only be produced in accordance with the provisions of the Jencks Act"); United States v. Hoffman, 794 F.2d 1429, 1433 (9th Cir. 1986) (same).

As this case law makes abundantly clear, the statements of prospective government witnesses are not discoverable pre-trial under Rule 16. The fact that defendant may have made damaging statements to Mr. Abramoff and Mr. Abramoff's statement – which incorporated defendant's damaging admissions – was later memorialized by the FBI, does not convert the *agent's* statement of what Abramoff told him into a statement of the defendant.

At one point in the Opinion, the Court suggested that witness statements might be discoverable pursuant to Rule 16(a)(1)(E). If the Court's suggestion were to be adopted so that an FBI 302 was deemed to be a "document," then the purpose of the Jencks Act would be defeated, and the government would be required, in every case, to turn over all 302s and, for that matter, grand jury materials, which, under this reading, would likewise be deemed to be a document "material to preparing the defense." We have found no legal support for this reading of Rule 16(a)(1)(E). [2]

---

[2] In United States v. Rudolph, 224 F.R.D. 503 (2004), the Court considered whether the disclosure of an agent's notes – which the government conceded was material to the defense – was allowed under R. 16(a)(1)(E) and determined that such disclosure was otherwise barred by Rule

We also note that if it is true that a defendant's statement to a non-law enforcement witness, later memorialized, constitutes a "statement of the defendant," then Rule 16(a)(B)(ii) would be meaningless surplusage, as it would be redundant to require the government to also disclose "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent."  In other words, if the expanded view of what constitutes a "defendant's statement" were adopted, the Rule would simply require the government to provide "the portion of any written record containing the substance of any relevant oral statement [of the defendant] made *to anyone* before or after arrest, regardless of whether the government intends to use the statement at trial, and regardless as to whom the statement was made.

Finally, an expansive interpretation of the term "statements of the defendant" would require the premature disclosure of the statements of cooperating government witnesses in sensitive investigations, such as this one, contrary to the clear and careful balancing of interests established by Rule 16 and the Jencks Act.

### B.    FBI Notes and Reports Regarding Interviews with Jack Abramoff Are Not Discoverable under a "Material to the Defense" Theory

Defendant claims he needs copies of FBI 302s and agents' notes of the interviews with Jack Abramoff because these items are "material to the preparation of the defendant's defense" and because "Mr. Abramoff's representations as to Mr. Safavian's statements concerning the August

---

16(a)(2); in other words, Rule 16, as well as the Jencks Act, effectively barred such disclosure. Rudolph, 224 F.R.D. at 510-11.

2002 Scotland trip are crucial in determining the nature of his personal relationship with Mr. Safavian . . .". Def. Motion, p. 2-3.

This request should be denied. The Court's December 23, 2005 Opinion was premised on the precise facts before it when it ruled: that the "distinction" between defendant's e-mail stating that Mr. Abramoff "has no business before GSA" and Eugenia Ellison's response that defendant had represented "that neither Mr. Abramoff or his firm 'does business with or is seeking to do business with GSA'" was "crucial to the government's ability to prove its case and/or to Mr. Safavian's defense." Opinion, pp. 11 - 12. The Court, after pointing out the significance of this distinction, ruled that "any information that would elucidate this discrepancy is 'material' to the preparation of a defense" and therefore must be disclosed. Opinion, p. 12.

The notes and memoranda of interviews of Mr. Abramoff would not help elucidate any discrepancy between what defendant wrote in his e-mail to Mr. McKenna and what Ms. Ellison put in her response. As defendant puts it in his motion, he is seeking this information to help determine the "nature of [Mr. Abramoff's] personal relationship with" defendant. Def. Motion, p. 2. The Court's Opinion, however, focused on the communications between defendant and the GSA ethics officers. Mr. Abramoff was not privy to the communications between GSA ethics officials and defendant. While Mr. Abramoff may have spoken to the government about his relationship and various contacts he has had with Mr. Safavian, any e-mails to or from Mr. Abramoff and defendant have already been provided to defendant. Any other statements of Mr. Abramoff regarding the defendant – none of which constitute <u>Brady</u> materials even under the Court's definition of "potentially exculpatory" or "may be 'favorable,'" as set forth in the Opinion at p. 9 – would only

7

be discoverable as Jencks, at or about the time Mr. Abramoff testifies (if he does testify)[3], and if it is determined that the notes and or 302s constitute a "substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement[.]" 18 U.S.C. Sec. 3500(e)(2).

Because Mr. Abramoff's interviews can shed no light on any discrepancy between Mr. Safavian's e-mail and the response from GSA legal counsel, defendant's reliance on the <u>Brady</u> rationale stated by the Court in its Opinion for disclosing the 302s and notes of Eugenia Ellison, Ray McKenna and the Senate staffers is misplaced when applied to the notes and 302s of Mr. Abramoff's interviews. Requiring disclosure of a witness statement simply because to do so might aid the defense in the preparation of their case would run afoul of the Jencks Act and R. 16(a)(2), which expressly prohibits the pre-trial disclosure of prospective witness statements. Because no part of Rule 16 permits the pre-trial disclosure of prospective witness statements of the type sought here, the request should be denied.

Therefore, we respectfully request the Court to deny defendant's request for any 302s or notes of interviews with Jack Abramoff.

## II.    The Government's Seeks Clarification Regarding Its Discovery Obligations Pursuant to the December 23 Opinion

Prior to the December 23, 2005 Opinion of this Court, the government, acting pursuant to Rule 16, produced the following documents to defendant:

---

[3]The government is not representing that Mr. Abramoff will or will not be a witness at trial.

1)      all e-mails that were sent to or from the defendant and Jack Abramoff from 1995
        to 2004[4];

2)      FBI 302s and GSA-OIG Memoranda of Interview pertaining to all interviews of
        the defendant;

3)      the rough notes of the agents' pertaining to the interviews of the defendant on
        March 27 and April 25, 2003 and May 26, 2005;

4)      e-mails to or from a particular GSA official and defendant, totaling approximately
        5,000;

5)      302s concerning the agents' interviews of the Senate Staffers.

Subsequent to the issuance of the Court's Opinion, the government and obtained nearly

50,000 additional e-mails from GSA that were sent to or from the various individuals identified

in the Court's Order of December 23, 2005.[5]  We have also provided the FBI 302s of the

interviews of Eugenia Ellison and Raymond McKenna, as well as the rough notes pertaining to

the interviews of Ellison, McKenna and the Senate Staffers.  We have also provided all e-mails

from Abramoff associates as ordered by the Court.

_____

[4]There were approximately 1500 e-mails in this particular production.  We note that at argument on discovery motions on November 14, 2005, defense counsel complained that this production included many extraneous and irrelevant e-mails.  We also note that we previously produced and identified for the defense the five to six dozen e-mails the government anticipated introducing at trial.

[5]Although the Court's Order required the government to disclose only the subset of these e-mails that pertained to the Old Post Office or White Oak, in perusing the e-mails in question it quickly became clear to the government that both the Old Post Office and White Oak were often referred to in these e-mails by a variety of terms, expressions and abbreviations.  Rather than attempt to derive our own list of search terms, we have provided to the defense a searchable DVD of all of these e-mails, so that they can use whatever search terms and date ranges they deem most appropriate or likely to produce meaningful "hits."

The government has no other evidence in its possession, custody or control that is relevant or material to the preparation of the defense or any exculpatory or impeaching evidence that is not otherwise protected by the Jencks Act.[6] While we recognize that our discovery obligations are ongoing and we will, of course, disclose any relevant information or evidence if and when it comes to light, we can represent to the Court that we know of no other repository, in the government or elsewhere, where relevant materials pertinent to this case would be likely to exist. Nevertheless, one potential reading of the Court's Opinion is that the prosecution will undertake searches of "any and all agencies and departments of the Executive Branch of the government and their subdivisions." Opinion, p. 4.[7] We have, pursuant to the Court's December 23 Order, gone back to GSA and obtained additional e-mails that the Court determined were material. By this Motion, the government seeks clarification from the Court as to the precise scope of the government's additional discovery obligations, if any, as contemplated by the Court, and what, precisely, it expects the government to do to fulfill these obligations. We believe the prosecution's obligation to search for additional relevant materials is limited to those agencies that are "closely aligned" with this prosecution. We therefore seek specific clarification regarding the Executive Branch agencies that the Court believes fall within the reach of this investigation so as to establish that the government's compliance with the Court's Opinion and Order is complete.

---

[6]The government will be able to complete its discovery obligations pursuant to the Order of December 23, 2005 and will file a Notice of Compliance with the Order upon the entry of a Joint Protective Order by this Court.

[7]We note that the Court's Order did not require that the government take any particular actions in regards to any specific agencies or departments that it was to contact or search.

For instance, the government notes that the actual name of the White Oak facility is the "Naval Systems Warfare Center at White Oak." Based solely on this name, one might fairly surmise that the Department of Defense may well possess literally millions of documents that reference this facility. We have no reason to believe these documents would refer to the defendant or anyone else even remotely connected to this case. The Defense Department has had no connection whatsoever with this prosecution and the government has not been given access to Defense Department files or records, many of which are, presumably, classified. There is simply no reason to believe any relevant or material documents are located at the Defense Department, and certainly the production of truck-loads of DOD documents would grind these proceedings to a halt. Nevertheless, under one reading of the Court's ruling of what constitutes "the government" the prosecution in this case is concerned that the Court has required it to review, for example, all DOD files, lest it may be deemed to have committed a Brady violation for failing to inspect these files, despite the fact that the prosecutors have neither access to these files nor any reason to believe they contain exculpatory evidence.[8]

To the extent that the Court's ruling can be read to require the government to search all Executive Branch agencies and subdivisions, we believe such a reading is contrary to established precedent. A prosecutor has no duty to discover and disclose information possessed by other federal agencies that have no involvement in the investigation or prosecution at issue.

---

[8]Another example: it may well be the case that the Environmental Protection Agency or the Department of Energy has done soil testing at the White Oak facility. If so, the government is unclear whether these documents, if they exist, come within the scope of the Court's Opinion. We believe they should not, as they are not relevant, material to the preparation of the defense or exculpatory in any way. There is no good reason to burden either the Government or the defense with the expense and time required to produce and review these materials.

11

Strickler v. Greene, 527 U.S. 263, 281 (1999) (prosecutor's duty to disclose extends to "others

acting on the government's behalf in the case") quoting Kyles v. Whitley, 514 U.S. 419, 437

(1995). See also United States v. Casas, 356 F.3d 104, 116 (1st Cir.) cert. denied, 541 U.S. 1069

(2004) (no Brady violation despite prosecution's failure to disclose citizenship application

evidencing witness's perjury because application was not in prosecution's control; prosecution

had to obtain it from another federal agency not under its control); United States v. Locasio,

6 F.3d 924, 949 (2d Cir. 1993) cert. denied, 511 U.S. 1070 (1994) (no Brady violation where

prosecution failed to disclose impeachment evidence against key government witness where

impeachment evidence in the possession of other government agents; Court "will not infer the

prosecutors' knowledge simply because some other government agents knew about the report");

United States v. Morris, 80 F.3d 1151, 1169 (7th Cir.) cert. denied, 519 U.S. 868 (1996) (no

Brady violation despite failure to disclose information possessed by Office of Thrift Supervision,

SEC, and IRS because prosecutor was unaware agencies held any exculpatory evidence and

agencies not part of investigative or prosecution team); United States v. Velte, 331 F.3d 673, 680

(9th Cir. 2003) cert. denied, 541 U.S. 912 (2004) (no Brady violation despite failure to disclose

government weather station's humidity report in forest fire case because weather station was not

"acting on the government's behalf"); United States v. Bryan,  868 F.2d 1032, 1036 (9th Cir.),

cert. denied, 493 U.S. 858 (1989) ("federal prosecutor need not comb the files of every federal

agency which might have documents regarding the defendant in order to fulfill his or her

obligations under Rule16(a)(1)(c).  [G]iving 'government' its broadest reading by expanding it to

include all federal agencies (such as the IRS) would not only wreak havoc, but would give the

defense access to information not readily available to the prosecution; proper scope of

government's obligation turns on prosecutor's "knowledge of and access to the documents sought by the defendant") (internal quotations omitted)[9]; United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) cert. denied, 529 U.S. 1077 (2000) (no Brady violation despite federal government's failure to disclose alleged impeachment evidence obtained by Albuquerque police because there was no evidence of federal participation in state investigation and "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis") (internal quotations and citations omitted in original)[10]; United States v. Jordan, 316 F.3d 1215, 1249 (11th Cir. 2003) (possession, custody, or control of the government for Rule 16 purposes includes government agencies "closely connected to the prosecutor"); Moon v. Head, 285 F.3d 1301, 1309-10 (11th Cir. 2002) cert. denied, 537 U.S. 1124 (2003) (no Brady violation despite failure to disclose information held by Tennessee investigator because no evidence that Tennessee law enforcement and Georgia prosecutors had worked together in prosecuting the case; 'prosecution team' means "'the prosecutor or anyone over whom he has authority'")

---

[9]We note that the Bryan case is one of the cases cited by this Court in support of the proposition that "the government" includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies." Opinion, p. 4. We respectfully submit that it does not provide such support.

[10]Beers was also cited by this Court in support of the proposition that the government's Brady obligation reached throughout the federal government. Like Bryan, we respectfully submit it does not support such a holding.

(internal citations and quotations omitted); <u>United States v. Liquid Sugars, Inc.</u>, 158 F.R.D. 466, 474 (E.D. Ca. 1994) ("for obvious practical reasons, not every governmental agency can be considered as part of the 'government' for discovery purposes").

Likewise, two additional cases cited as authority for the broad definition of "the government" – <u>United States v. Santiago</u>, 46 F.3d 885 (9th Cir.) <u>cert. denied</u>, 515 U.S. 1162 (1995) and <u>United States v. Brooks</u>, 966 F.2d 1500, 1504 (D.C. Cir. 1992) – do not support the reading that the government in this case is obligated to search all agencies and departments for potentially discoverable material.

In <u>Santiago</u>, the Court reviewed a district court's holding that "'the Bureau of Prisons is a separate governmental division with no responsibility for the investigation or prosecution of this crime.'" <u>Santiago</u>, 46 F.3d at 893. The Court held that this definition of government was too narrow, and that the proper question to have asked was whether "the prosecutor has 'knowledge of and access to the documents sought by the defendant.'" <u>Id</u>. In coming to this conclusion, the Court first noted with approval the holding in <u>United States v. Bryan</u>, 868 F.2d 1032, which "decline[d] to impute to the government possession of files of all federal agencies," but held that under the facts of <u>Santiago</u> – facts which were "unlike cases in which the government lacked any inkling that the documents at issue existed" – the government should have been deemed to have both knowledge of and access to Bureau of Prison records. <u>Santiago</u>, 46 F.3d at 894.

Thus, in the instant case, the government submits that a proper reading of the Court's Opinion would deem the government to have both "knowledge of and access to" materials in the possession of GSA, GSA-OIG and the FBI. The same certainly cannot be said for any and all

14

other Executive Branch agencies, i.e., the White House[11], the Department of Defense or the IRS.[12]

In United States v. Brooks, 966 F.2d 1500, also cited by the Court in discussing the scope of "the government," the defense, prior to defendant's retrial in a drug case, sought access to a Metropolitan Police Internal Affairs Division file to see if there was impeaching information on a police officer, now deceased, who was a key government witness against defendant in the first trial.[13]   The Court framed the question on appeal as being whether the government's Brady obligations required it to search "files in the possession of agencies other than the prosecutor's office." Brooks, 966 F.2d at 1502. The Court first noted that "[t]he cases finding a duty to search have involved files maintained by branches of government 'closely aligned with the prosecution.'" Id. at 1503. The Court then held that such a duty existed in this case "[g]iven the close working relationship between the Washington metropolitan police and the U.S. Attorney for the District of Columbia (who prosecutes both federal and District crimes, in both the federal and Superior courts), a relationship obviously at work in this prosecution." Id.  In coming to the

_____

[11]As defendant was a former White House appointee, it may be reasonably presumed that there are files pertaining, at the very least, to defendant's appointment to both GSA and OMB. There may well be notes that were taken in the course of defendant's interview process. We submit that these materials should not be construed as being in the possession of "the government" for the purposes of this prosecution.

[12]The government assumes – without knowing – that defendant has made appropriate filings with the IRS. These filings are, quite appropriately, closely held by the IRS and cannot be obtained by prosecutors absent a Court order. Again, the government does not see it as its responsibility to search these files for "statements of the defendant" as these files should not be deemed to be in the possession of "the government" for the purposes of this prosecution.

[13]The government sought to introduce the deceased officer's trial testimony from the first trial against defendant in the retrial.

15

conclusion that it was fair to deem the U.S. Attorney's Office for the District of Columbia to

have had effective possession of Internal Affair files of the Metropolitan Police Department, the

Court noted that it was "highly relevant that defense counsel pinpointed" the file he sought and

that the file could be obtained without difficulty. Id. "The defendant was not asking the U.S.

Attorney's office to examine some sprawling mass of records". Id. The Court concluded that

"[w]here, as here, [] there is an explicit request for an apparently very easy examination, and a

non-trivial prospect that the examination might yield material exculpatory information, we think

the prosecution should make the inquiry." Id. at 1504. Thus, the Brooks Court's determination

that the government was obligated to conduct a search for files outside of their actual, physical

control was premised on 1) the unusually close working relationship between the U.S. Attorney's

Office and the Metropolitan Police Department; 2) the fact that the defense attorney was able to

pinpoint the exact document that he was seeking, and 3) the search was relatively easy to

accomplish.

　　This Court's December 23 Opinion did not discuss any  –  much less all three – of these

three distinct factors described in Brooks. Thus, to the extent that the Court's Opinion of

December 23 can be read as requiring the government to produce documents pursuant to

defendant's Rule 16 requests or Brady possessed by "any agency of the Executive Branch,"

(Opinion at 14, emphasis in original), regardless of the relationship of the agency to the

prosecution team and regardless of whether the government has been notified of the existence of

the evidence in question, and irrespective of whether the government has access to the documents

in question, we would seek clarification under the Brooks framework. The government

respectfully requests that this Court clarify its December 23 Opinion and, henceforth, limit the

16

government's discovery obligations to producing documents, materials and information in the possession of the "the prosecution and others working on their behalf." See Kyles, 514 U.S. at 437.

**III.    The Government's Ongoing Brady Obligations Should be Read To Comport with Relevant Supreme Court Rulings**

The government also seeks from this Court clarification as to what the Court sees as the government's discovery obligations under Brady.  The Court's Opinion can be read as eliminating any requirement of materiality in the context of Brady disclosures.  ("[T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard ... to the outcome of the trial....The only question before [] trial is whether the evidence at issue may be 'favorable to the accused'; if so it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.") Opinion, p. 9.

At the outset, it must be said that the government has fully complied with its obligation to disclose to the defense any exculpatory information, and to do so in a timely manner.  Should we uncover additional evidence, we will continue to make all "close calls" in favor of disclosure and, if in doubt as to whether evidence or information must be disclosed, it will make the disclosure ex parte, so that the Court can make the appropriate decision.  We have no intention of attempting to avoid our Brady obligations by parsing the definition of what is actually "material" to the defense.  Nevertheless, the government is compelled to note that by eliminating the materiality element of Brady, the Court places the prosecutors in what the Supreme Court in Bagley, (473 U.S. 667, 675 n. 7 (1985)), has identified as an impossible position of having to

17

assess whether evidence is "*potentially* exculpatory" or "*may be* 'favorable to the accused.'" Opinion, p. 9 (emphasis supplied). The Supreme Court has considered and rejected the expansion of <u>Brady</u> to reach nonmaterial, inadmissible[14] information because to do so "would entirely alter the character and balance of our present system of criminal justice." <u>United States v. Bagley</u>, <u>Id</u>.

A reading of the Court's Opinion to require a materiality-free definition of <u>Brady</u>, when coupled with an overly broad definition of "the government," would effectively require the prosecution to search the entire federal government for information that is not even material or admissible. Even if the obligation were limited to an obligation to search existing files maintained by federal law enforcement agencies, the task would, in all likelihood, be impossible. There is no database in existence to check, no central file where everything "known to the government" about individual Americans is kept. Under a literal reading of the Court's Opinion, the prosecution would be obliged to search every government file and database – driving records, employment records, tax records, and much more – for every witness. This is precisely the "impossible burden" the Supreme Court in <u>Bagley</u> said would arise if materiality were read out of the <u>Brady</u> definition: "a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor." <u>Bagley</u>, 473 U.S. at 675, n. 7.

---

[14]The Supreme Court has held that information that would not be admissible at trial is not covered by the requirements of <u>Brady</u> and need not be disclosed (unless, of course, it would lead to the discovery of admissible evidence). <u>Wood v. Bartholomew</u>, 516 U.S. 1, 5 - 6 (1995) (<u>per curiam</u>). The Court's Opinion could be read to eliminate this distinction and require the government to disclose not only evidence but all hearsay, innuendo and rumor.

The government also seeks clarification as to the meaning of "*potentially* exculpatory" evidence or evidence that "*may be* 'favorable to the accused.'" Opinion, p. 9 (emphasis added). There is no parallel language elsewhere in Rule 16[15] or other Rules. Together with the elimination of the materiality requirement, this language would seem to require, for example, that the government turn over information pertaining to potential government witnesses such as old speeding tickets or the fact that the witness may have smoked marijuana when in college. While such information would not, under current Supreme Court doctrine, be deemed to be material evidence, under the "*may* be favorable" or "*potentially* exculpatory" language, the decision to withhold this type of information could well be deemed a <u>Brady</u> violation in that such information might *potentially* demonstrate, for instance, a lack of respect for the law.

Indeed, without knowing the defense strategy,[16] the prosecution would arguably have to

---

[15]In contrast to the language used in the Opinion, Rule 16 provides for discovery of that which actually *is* relevant or *is* material. <u>See</u> R.16(a)(1)(B)(I) (any **relevant** written or recorded statement by the defendant) (emphasis added); 16(a)(1)(B)(ii) ("any **relevant** oral statement made before or after arrest") (emphasis added); 16(a)(1)(E)(I) ("books, papers, documents . . . **if . . . the** item **is material** to preparing the defense") (emphasis added); 16(a)(1)(F) reports of examinations and scientific tests and experiments "**if . . . the item is material** to preparing the defense") (emphasis added). No subsection of the rule imposes an obligation on the government to ponder whether a document is "potentially" relevant or whether it "may" be material. Likewise, the <u>Brady</u> and <u>Giglio</u> case law requires the government to disclose exculpatory or impeachment evidence that actually *is* material.

Moreover, the Court's concern that the materiality requirement of <u>Brady</u> and <u>Giglio</u> is only appropriate in the context of appellate review (Opinion, p. 9) is belied by the fact that, as noted above, existing Rule 16 policy and practice requires the government to assess the materiality of evidence in a variety of contexts when determining what must be disclosed to the defense. This materiality analysis is no different in the <u>Brady</u> context than it is in determining what documents are "material to the preparation of the defense."

[16]<u>See</u> Opinion, p. 6 ("Nor may [the government] put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation.")

disclose everything in our files because we will be unable to state with confidence that a court reviewing a conviction may not later conclude that something *might* have been favorable to the defense.  It was precisely this potential dilemma that was addressed by the Supreme Court in Agurs, where the Supreme Court held that the Court of Appeals had erred in assuming "that the prosecutor has a constitutional obligation to disclose any information that might affect the jury's verdict." Id. at 108.  "If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice. ... Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much.... The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." Id. at 109 - 110.  Accord Kyles v. Whitley, 514  U.S. 419, 437 (1995) (the materiality standard "must accordingly be seen as leaving the government with a degree of discretion," and the prosecutor, who "alone can know what is undisclosed[,] must be assigned the consequent responsibility to gauge the likely effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached").[17]

---

[17]As noted above, we recognize that the "inevitably imprecise standard" of materiality and the fact that "the significance of an item of evidence can seldom be predicted accurately until the entire record is complete." Agurs, 427 U.S. at 108. Due to these practical considerations, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." Id. Thus, none of the foregoing is meant to suggest the prosecution in this case will fail to make any "close calls" on potentially exculpatory evidence in favor of the defense, for that has been and will continue to be our practice. Nonetheless, the "critical point" for purposes of the Brady inquiry is that "the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." Id.

Although <u>Brady</u> claims most typically arise post-trial, the Supreme Court has found that these same standards of materiality govern a prosecutor's pre-trial decision whether to disclose information pursuant to <u>Brady</u> and its progeny. <u>Agurs</u>, 427 U.S. at 107-108 (although <u>Brady</u> issues may arise in advance of trial and after conviction, "[l]ogically the same standard [of materiality] must apply at both times. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.")

In its Opinion, the Court cites <u>United States v. Sudikoff</u>, 36 F. Supp. 2d 1196, 1199 (C.D. Cal. 1999), in finding that there exists a broad pre-trial duty of disclosure of exculpatory information irrespective of the prosecutor's view of the ultimate materiality of the evidence. Opinion, p. 9. We believe <u>Sudikoff</u> to have been wrongly decided. <u>Sudikoff</u> fails to discuss, let alone acknowledge, clear language in <u>United States v. Agurs</u>, 427 U.S. 97, 107-109 (1976), and <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995), that forecloses <u>Sudikoff</u>'s holding. Moreover, courts have rejected <u>Sudikoff</u>'s conclusion that a different standard of materiality applies in the pre-trial context. <u>See, e.g.</u>, <u>United States v. Coppa</u>, 267 F.3d 132, 136-144 (2d Cir. 2001) (granting pre-trial writ of mandamus where government challenged district court's order requiring immediate pretrial disclosure of all exculpatory evidence without regard to materiality); <u>United States v. Causey</u>, 356 F. Supp. 2d 681, 696 (S.D. Tex. 2005) (declining to follow <u>Sudikoff</u>). We could not find any appellate Court that has adopted <u>Sudikoff</u>'s formulation of pre-trial materiality.[18] Consequently, we seek clarification of the Court's Order regarding the

---

[18]The Court also cited <u>United States v. Acosta</u>, 357 F.Supp 2d 1196, 1198-1199 (C.D.Cal. 1999) and <u>United States v. Carter</u>, 313 F.Supp.2d 921, 924-25 (E.D. Wisc. 2004) in support of its definition of <u>Brady</u>. <u>Carter</u> relies almost exclusively on <u>Sudikoff</u> for its holding (313 F. Supp. at

materiality threshold of <u>Brady</u>, so that the prosecution's ongoing obligations are consistent with Supreme Court precedent.

## IV.     **Conclusion**

For the foregoing reasons, the government respectfully requests the Court to 1) deny defendant's Renewed Motion to Compel Discovery of Jack Abramoff's notes and 302s; 2) clarify its December 23 Opinion so that the prosecution's discovery obligations extend no further than the prosecution team and others working on its behalf; and 3) clarify the standard by which it will determine potential <u>Brady</u> violations as one that requires a showing of "materiality."

Respectfully submitted,

_Nathaniel Edmonds/PZ_                           _Peter Zeidenberg_

NATHANIEL B. EDMONDS                    PETER R. ZEIDENBERG
Trial Attorney, Fraud Section                  Trial Attorney, Public Integrity Section
Criminal Division                               Criminal Division
United States Department of Justice        United States Department of Justice

---

924-25) and, like <u>Sudikoff</u>, also fails to discuss or even cite the relevant Supreme Court holdings, i.e., <u>United States v. Agurs</u>, 427 U.S. 97, <u>Kyles v. Whitley</u>, 514 U.S. 419, <u>Strickler v. Greene</u> 527 U.S. 263, or <u>United States v. Bagley</u>, 473 U.S. 667.

Moreover, <u>Acosta</u> relies not on <u>Brady</u> or other Supreme Court precedent to arrive at its holding, but on a local rule which does not apply in this District. The <u>Acosta</u> Court, after recognizing that <u>Bagley</u> "makes clear" that "only suppression of evidence that cumulatively rises to the level of 'material' violates defendant's due process rights" and that [citing <u>Strickler v. Greene</u>, 527 U.S. at 281] "there is never a real 'Brady violation' unless the non-disclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict," decided that the ABA Standards for Criminal Justice, which Nevada had adopted, applied to this particular case. <u>Acosta</u>, 357 F.Supp. 2d at 1232. These ABA standards, which had been adopted as a local rule, "remove[d] the secondary analysis whether favorable evidence is cumulatively 'material.'" <u>Id.</u> at 1234. Because the <u>Acosta</u> decision was based upon the ABA standard not locally adopted in the District of Colombia, it offers no support for the holding that there is no materiality requirement in <u>Brady</u>. <u>See Kyles v. Whitley</u>, 514 U.S. at 437 ("the rule in <u>Bagley</u> (and, hence, in <u>Brady</u>) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.")

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of January, 2006, a copy of the foregoing was served on the following counsel by facsimile, electronic service and first class mail to:

Barbara Van Gelder, Esq.
Wiley Rein & Fielding
1776 K Street NW
Washington, DC 20006
Tel: 202-719-7032
Facsimile: 202-719-7049

PETER R. ZEIDENBERG
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice