# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 05-0370 (PLF) |
| ) | |
| DAVID HOSSEIN SAFAVIAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

For the reasons set forth in the Opinion issued this same day, it is hereby ORDERED that defendant's motion to compel discovery [9] is GRANTED in part and DENIED in part. Accordingly, it is hereby ORDERED that the government shall produce to the Defendant the following material:

1.  All 302s, investigative reports, notes, documents, and tapes of General Services Administration ("GSA") Ethics Officer Ray McKenna and Eugenia Ellison of the GSA General Counsel's office pertaining to Mr. Safavian's request for an advisory ethics opinion.

2.  All internal GSA procedures and guidelines relating to ethics opinions and disciplinary actions for violations of such policies, but not information about specific disciplinary actions related to other employees.

3.  All e-mails and correspondence and any other documents from May 2002 through August 2002 sent or received by Pam Abramoff, Anthony Rudy, John Van Horne, Neil Volz, Holly Bowers, Colin Stevens, and Rabbi David Lapin concerning Mr. Safavian, the Old

Post Office Building in Washington D.C. ("OPO"), the Naval Surface Warfare Center White Oak Property in Silver Spring, Maryland ("White Oak") or the 2002 Scotland trip.

4. All e-mails and correspondence and any other documents within a specified, reasonable and appropriate time frame sent from or received by GSA Commissioner Joseph Moravec, as well as GSA officials Paul Chrisolini, Leah Uhre, Tony Costa, Sharon Jenkins, Ann Everett, Ray McKenna, and Eugenia Ellison concerning the OPO or White Oak properties or projects, or Mr. Safavian's request for an advisory ethics opinion.[1]

5. All notes, documents and tapes of 302s and interviews of the Chief Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on Indian Affairs within the possession, custody or control of the government.

6. Upon producing the above materials, the government shall also provide the defendant information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control of the GSA, GSA Office of the Inspector General, and the Department of Justice.

SO ORDERED.

DATE: December 23, 2005

/s/_____
PAUL L. FRIEDMAN
United States District Judge

---

[1] As discussed in the Opinion accompanying this Order, the defendant is ordered to particularize his request with a time frame reasonable for discovery and relevant to the materials requested. If the parties cannot reach an agreement on what that time frame is, they may file an additional motion to resolve that issue. The parties are, however, expected to negotiate this matter to the best of their ability before bringing it to the Court's attention.

2

# EXHIBIT 2



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

December 30, 2005

**BY EMAIL AND FACSIMILE**

Laura M. Leussing, Esq.
Deputy Associate General Counsel
General Law Division
General Services Administration
laura.leussing@gsa.gov
(202) 501-1460 (phone)
(202) 208-0085 (fax)

    RE: *United States v. David H. Safavian*, **Crim. No. 05-370**

Dear Ms. Leussing:

  This letter is a formal request for materials from the General Services Administration ("GSA") in connection with the prosecution of United States v. David H. Safavian, Crim. No. 05-370. The Department of Justice is officially requesting GSA to search for and produce any responsive materials, as outlined Judge Friedman's Opinion and Order of December 23, 2005 (Attachment 1). Specifically, we are requesting that GSA produce all e-mails, including archived e-mails on individual hard drives, and all correspondence sent to or from certain GSA officials relating to the Old Post Office ("OPO") and Naval Surface Warfare Center White Oak ("White Oak") projects and/or Mr. Safavian's request for an ethics opinion on June 25, 2002, as well as any guidelines related to the provision or violation of ethics opinions.

E-mails

  It is our understanding that e-mail is not an official record of the GSA, and that all e-mails are deleted off of the GSA server and all personal e-mail directories after 60 days according to GSA CIO 2160.2 and GSA CIO 2160.2A. If this understanding is in any way incorrect, please advise us.

  We also understand that many of the named GSA officials are no longer employees of GSA, and that their computers may no longer be retained. We have, however, learned that some individuals have retained e-mails in their personal files. Consequently, we are requesting that GSA conduct a search of the hard drives of all computers to produce any e-mails identified in Judge Friedman's December 23, 2005 order related to OPO, White Oak or Mr. Safavian's ethics opinion that may have been retained.

Correspondence

Additionally, this letter serves as a formal request for all documents sent to or received by the same GSA officials related to the OPO, White Oak or Mr. Safavian's ethics opinion for the period of Mr. Safavian's employment with GSA, which began in May 2002 and ended in December 2003.

GSA Guidelines Regarding Ethics Policies

In addition, the Department of Justice is requesting that GSA produce any and all internal GSA procedures and guidelines relating to ethics opinions and disciplinary actions for violations of such policies. The Department of Justice is not requesting specific disciplinary actions related to other employees, but simply the GSA guidelines related to the imposition of disciplinary actions for violations.

Written Summary of Discovery Procedures

In addition, pursuant to Judge Friedman's order, we are requesting that GSA produce in writing a summary of what specific efforts were made to search for the responsive documents outlined above. This summary should specifically describe the extent of the search for responsive documents within the possession, custody or control of the GSA or GSA-OIG.

E-Mail Retention Policy

In addition, please provide, as requested in the Judge's Opinion on Page 15, Footnote 5, a specific detailed explanation of GSA's email storage and retention policies and capabilities, including whether the 60 day retention policy applies to the GSA server or whether the emails in question may exist in back-up storage devices and media.

Timing of Search

As this litigation is ongoing and a trial date of April 3, 2005, has been set by the Court, time is of the essence and this request must be expedited to the greatest extent possible.

2

Your cooperation with this matter is greatly appreciated. If you have any questions regarding this request, please do not hesitate to contact either Nathaniel Edmonds or Peter Zeidenberg at the numbers below, or the case agents, FBI Special Agent Jeffrey Reising or GSA-OIG Regional Inspector General for Investigations Gregory Rowe.

Sincerely,

*[signature]*

Peter R. Zeidenberg
Trial Attorney, Public Integrity Section
Phone: 202-514-2042

*[signature]*

Nathaniel B. Edmonds
Trial Attorney, Fraud Section
Phone: 202-307-0629

3

# EXHIBIT 3



GSA Office of General Counsel

January 26, 2006

<u>Via Facsimile, email and Federal Express</u>

Peter R. Zeidenberg, Esq.
Nathaniel B. Edmonds, Esq.
Criminal Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Dear Messrs. Zeidenberg and Edmonds,

This responds to your letter of December 30, 2005 regarding *United States v. David H. Safavian,* Crim. No. 05-370. We have reviewed your letter and the Order of the Court dated December 23, 2005 in this matter. Our responses follow the items set out by the court below.

**1. All 302s, investigative reports, notes, documents, and tapes of General Services Administration ("GSA") Ethics Officer Ray McKenna and Eugenia Ellison of the GSA General Counsel's office pertaining to Mr. Safavian's request for an advisory ethics opinion.**

GSA has no materials responsive to this item.

**2. All internal GSA procedures and guidelines relating to ethics opinions and disciplinary actions for violations of such policies, but not information about specific disciplinary actions related to other employees.**

GSA applies the governmentwide guidance set forth in the Standards of Ethical Conduct for Employees of the Executive Branch (the Standards), 5 CFR Part 2635, which provides that violations of the Standards may result in disciplinary action. 5 CFR §§ 2635.107, 2635.108. We provided GSA Order CPO 9571.1, Maintaining Discipline (May 20, 2003) to your office on January 6, 2006.

**3. All emails and correspondence and any other documents from May 2002 through August 2002 sent or received by Pam Abramoff, Anthony Rudy, John Van Horne, Neil Volz, Holly Bowers, Colin Stevens, and Rabbi David Lapin concerning Mr. Safavian, the Old Post Office Building in Washington D.C. ("OPO"), the Naval Surface Warfare Center White Oak Property in Silver Spring, Maryland ("White Oak") or the 2002 Scotland trip.**

U.S. General Services Administration
1800 F Street, NW
Washington, DC 20405-0002
www.gsa.gov

We searched offices within the Public Buildings Service (PBS) at GSA's Central Office and our National Capital Region (NCR) and the Office of General Counsel for responsive materials. Responsive materials were provided to the GSA Office of Inspector General (OIG) prior to receipt of your December 30, 2005 letter. These did not include materials related solely to the FDA Headquarters Building on the White Oak property or documents reflecting administerial, building maintenance functions (such as painting, laying carpet, HVAC adjustments and the like).

**4. All emails and correspondence and any other documents within a specified, reasonable and appropriate time frame sent from or received by GSA Commissioner Joseph Moravec, as well as GSA officials Paul Chrisolini [sic], Leah Uhre, Tony Costa, Sharon Jenkins, Ann Everett, Ray McKenna, and Eugenia Ellison concerning the OPO or White Oak properties or projects or Mr. Safavian's request for an advisory ethics opinion.**

We understand that the applicable timeframe is May 1, 2002 through December 31, 2003. We did not search for materials specific to Mr. Costa because all such materials were already in the possession of the GSA OIG. We conducted searches of our PBS Commissioner's office, our National Capital Region and the Office of General Counsel for responsive materials and provided all responsive materials to the GSA OIG by January 11, 2006. Our search methods are described in our response to item 6, below.

**5. All notes, documents and tapes of 302s and interviews of the Chief Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on Indian Affairs within the possession, custody or control of the government.**

GSA has no materials responsive to this item.

**6. Upon producing the above materials, the government shall also provide the defendant information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control of the GSA, GSA Office of the Inspector General, and the Department of Justice.**

Upon receipt of the Court Order and your letter of December 30, 2005, our office notified Ms. Everett and Ms. Ellison, who are currently employed at the agency; the Commissioner of the Public Buildings Service, as several named officials -- Joseph Moravec, Paul Chistolini, and Leah Uhre -- were formerly members of the PBS; GSA's National Capital Region, as Sharon Jenkins and Leah Uhre were formerly employed there; and the GSA Chief Information Officer of the Order and the need to search for responsive information. Mr. Costa, who is now the Deputy Commissioner of PBS, was notified of the discovery request, but not required to conduct a search as he had previously provided all responsive information within his control to the GSA OIG. Mr. Moravec, Mr. Chistolini, Ms. Uhre, Ms. Jenkins and Mr. McKenna are

2

no longer employed by GSA. They were contacted by phone, advised of the Court Order and requested to provide any responsive information in their possession.

In general, the search was conducted by searching paper files in the named individual's possession or office. Those individuals currently employed by GSA, Ms. Everett and Ms. Ellison, searched their hard drives for email messages. Systems administrators also searched Ms. Everett's and Ms. Ellison's hard drives. The hard drives for the individuals who were no longer employed by GSA had been cleaned and provided to new users. Systems administrators also searched GSA servers for any backed up archives for the named individuals and for Mr. Safavian. For each named individual, the search for responsive documents was conducted as follows:

> Ms. Everett searched her personal files and email archives for relevant information and directed certain members of her staff to do the same. Systems administrators also searched Ms. Everett's hard drive to determine whether there were any emails for the time period in question. Some emails from the relevant time were found and printed. These were reviewed by an attorney from GSA's Office of General Counsel, and those that were relevant to the OPO, White Oak or Mr. Safavian's ethics request were provided to the GSA OIG in paper form on January 11, 2006. Systems Administrators also searched for backed up archives of Ms. Everett's emails. They found an archive containing email messages and downloaded those onto a DVD which was provided to the GSA OIG on January 11, 2006. The GSA OIG was responsible for determining whether the email messages were relevant to the time period or subject matter of the Court Order.
>
> Ms. Ellison searched her personal files and email archives and directed a member of her staff to do the same. GSA systems administrators also searched her hard drive and searched for backed up archives. No relevant materials other than those already provided were found.
>
> Mr. Moravec was contacted by phone on January 9, 2006. He stated that he did not retain any relevant documents and that all relevant materials would be in the PBS Commissioner's Office. A search of that office found no responsive documents. All data from Mr. Moravec's hard drive had been expunged. A systems administrator found a backed up archive of Mr. Moravec's emails and downloaded them to a DVD which was provided to the GSA OIG on January 10, 2006. The GSA OIG was responsible for determining whether the email messages were relevant to the time period or subject matter of the Court Order.
>
> Mr. Chistolini was contacted by phone on January 9, 2006. He did not retain any relevant documents. He stated that all relevant materials would be in the PBS Commissioner's Office. A search of that office revealed no responsive documents. All data from Mr. Chistolini's hard drive has been expunged. A

systems administrator searched for backed up archives for Mr. Chistolini and found none.

Ms. Uhre was contacted by phone on January 9, 2006. She did not retain any relevant documents. She stated that all relevant materials would be in the PBS Commissioner's Office or NCR. No responsive documents were found in the PBS Commissioner's office. A separate search of NCR offices was not conducted as all responsive documents from NCR had previously been provided to the GSA OIG. All data from Ms. Uhre's hard drives had been expunged. A systems administrator found backed up archived emails and copied them to a DVD which was provided to the GSA OIG on January 10, 2006. The GSA OIG was responsible for determining whether the email messages were relevant to the time period or subject matter of the Court Order.

Ms. Jenkins was contacted by phone. She identified some files that she had left at GSA but did not know if they contained any relevant information. An OGC attorney reviewed these paper files and found no responsive materials. All data on Ms. Jenkins' hard drive had been expunged. A systems administrator found backed up archived emails and copied them to a DVD which was provided to the GSA OIG on January 11, 2006. The GSA OIG was responsible for determining whether the email messages were relevant to the time period or subject matter of the Court Order.

Mr. McKenna was contacted by phone on Jan. 5, 2006. Mr. McKenna stated that he had not retained any relevant information. All data from Mr. McKenna's hard drive had been expunged. A systems administrator found no archived emails for Mr. McKenna. OGC office files had previously been searched and all relevant information provided.

Mr. Safavian's hard drive has been cleaned. GSA's office of Chief Information Officer (CIO) searched GSA servers for any backed up archives that contained any of Mr. Safavian's emails. They found an archive, but it contained no data.

In your letter you also asked for GSA's E-mail retention policy. It is as follows:

**GSA Email Retention Policy**. Email messages on GSA servers are retained for a period of 60 days. After 60 days they are automatically deleted from the user's active mail file. Backups of active mail files are retained for a maximum of 3 weeks, which allows for up to an 81 day availability of email messages. Archiving of email messages so they are available in a separate archive file after the 60 day period is at the discretion of each user.

**Capabilities**. If a current GSA user has elected to create and use an email archive, and the archive resides on a GSA server, it will be recoverable for a period of one

4

year. This archive may contain email messages sent or received over an unknown period of time because the user has the ability to manage which messages are saved and which messages are deleted from an archive file. If a former GSA user had elected to use an email archive and it resided on a GSA server it will be recoverable for a period of up to one year with the same rules applied as a current user.

Please feel free to contact me at (202) 501-0636 if you have questions or need additional information.

Sincerely,

*[signature]*

Laura M. Leussing
Deputy Associate General Counsel
General Law Division

5

# EXHIBIT 4

## REPORT INSERT - OFFICE OF INSPECTOR GENERAL
## MEMORANDUM OF ACTIVITY

In January 2006, Randal A. Stewart, Assistant Special Agent in Charge (ASAC), Washington D.C. Office of Investigations, Office of Inspector General, General Services Administration, received several original CD's and DVD's containing archived Lotus Notes files. The disks were received from the Chief Information Office or through the Office of General Counsel, GSA, pursuant to a request to provide email data within a timeframe of 5-1-2002 through 1-31-2004, on specifically identified current and former employees of the GSA.

The data was copied from the original disks to a computer hard drive and reviewed to insure compliance with the requested dates. In many instances, the data contained email communications outside the required production dates. In those instances, only the data within the requested dates was written to CD or DVD.

The following is a summary of the number of documents in the originally produced file received by writer, along with the number of emails extrapolated to meet the production requirements:

| Lotus Notes File Name | Documents in Original File | Discovery Production Files (dated 5-1-02 thru 1-31-04) |
|---|---|---|
| **COSTA DISK, Production date 12-0-4-2005 (typo was 2006)** | | |
| A_costa052404 | 81,978 documents | 26,769 |
| TC-Newarchive-5-02 thru 1-04 | 8,051 | 2,949 |
| **SAFAVIAN DISK, Production date 1-11-2006** | | |
| A_dsafav | 0 | 0 |
| **MORAVAC DISK, Production date 1-11-2006** | | |
| A_fjmoravec | 6,173 | 3,525 |
| **UHRE DISK, Production date 1-11-2006** | | |
| A_leauhre | 2,089 | 2,079 |
| A_luhreo4 | 1,930 | 235 |
| A_luhre-2 | 13,924 | 8,608 |
| **EVERETT** | | |
| No files were within the required date range | | |
| **JENKINS DISK, Production date 1-11-2006** | | |
| A_sjenki | 22,341 | 5,657 |

| ASSIGNMENT NUMBER | REPORTING AGENT | DATE PREPARED | SUPERVISOR |
|---|---|---|---|
| I05-0075 | *Randal A. C____* ASAC Randal A. Stewart | 01/25/2006 | *Randal A. C____* ASAC Randal A. Stewart |

OTHER ADMINSTRATIVE INFORMATION (Use continuation sheet, GSA Form 9506-C)

General Services Administration    FOR OFFICIAL USE ONLY    GSA FORM 9506-B (Rev 5-98)

# EXHIBIT 5

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription  01/06/2006

On 12/23/2005, United States District Court Judge Paul L. Friedman issued an Order granting defendant David Hossein Safavian's motion to compel discovery in part. Judge Friedman ordered that the government produce the following material:

1. All 302s, investigative reports, notes, documents, and tapes of General Services Administration (GSA) Ethics Officer Ray McKenna and Eugenia Ellison of the GSA General Counsel's office pertaining to Safavian's request for an advisory ethics opinion.

2. All e-mails and correspondence and any other documents from May 2002 through August 2002 sent or received by Pam Abramoff, Anthony Rudy, Jon van Horne, Neil Volz, Holly Bowers, Colin Stevens, and Rabbi David Lapin concerning Safavian, the Old Post Office Building in Washington, DC (OPO), the Naval Surface Warfare Center White Oak Property in Silver Spring, Maryland (White Oak) or the 2002 Scotland trip.

3. All notes, documents and tapes of 302s and interviews of the Chief Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on Indian Affairs within the possession, custody or control of the government.

4. Upon producing the above materials, the government shall also provide the Defendant information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control of the GSA, GSA Office of the Inspector General, and the Department of Justice.

On 12/29/2005, Special Agent (SA) Jeffrey A. Reising searched the Federal Bureau of Investigation (FBI) database known as the Automated Case System (ACS) for the investigative reports, FD-302s, of McKenna, Ellison, and the Chief Investigative Counsel and Deputy Chief Investigative Counsel to the Senate Committee on Indian Affairs.

The ACS database provided the serial numbers for these reports. SA Reising then pulled the original FD-302 reports from the investigative file. SA Reising then pulled the investigative notes for each of these interviews that are maintained in the "1A"

---

Investigation on  12/29/2005  at  Falls Church, Virginia

File #  58E-WF-228974                           Date dictated  01/06/2006

by  SA Jeffrey A. Reising /JAR/

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

58E-WF-228974

Continuation of FD-302 of __Discovery Production__ , On __12/29/2005__ , Page __2__

subfile of the investigative file. These notes were maintained in FD-340 envelopes, which are referred to as "1As." The original FD-302s and notes were copied per the Order. There were no tapes of any of these interviews and none of these reports were dictated.

From 12/29/2005 to 01/05/2006, SA Reising searched the FBI's "IntelPlus" database for all e-mails and correspondence and any other documents from May 2002 through August 2002 sent or received by Pam Abramoff, Anthony Rudy, Jon van Horne, Neil Volz, Holly Bowers, Colin Stevens, and Rabbi David Lapin concerning Safavian, OPO, White Oak, and the 2002 Scotland trip. IntelPlus searches documents that have been scanned and electronically stored. The following "key word" searches were performed using the IntelPlus database:

Pam Abramoff (Search performed on 12/29/2005)

Pam Abramoff
Pam Abramoff + May 2002
Pam Abramoff + June 2002
Pam Abramoff + July 2002
Pam Abramoff + August 2002
Pam Abramoff + White Oak
Pam Abramoff + GSA
Pam Abramoff + Safavian
Pam Abramoff + Old Post Office
Pam Abramoff + OPO
Pam Abramoff + Scotland
Pam Abramoff + Naval Surface

Anthony Rudy (Search performed on 01/03/2006)

Tony Rudy + White Oak
Tony Rudy + GSA
Tony Rudy + Safavian
Tony Rudy + Old Post Office
Tony Rudy + OPO
Tony Rudy + Scotland
Tony Rudy + Naval Surface
Anthony Rudy + White Oak
Anthony Rudy + GSA
Anthony Rudy + Safavian
Anthony Rudy + Old Post Office
Anthony Rudy + OPO
Anthony Rudy + Scotland

FD-302a (Rev. 10-6-95)

58E-WF-228974

Continuation of FD-302 of __Discovery Production__ , On __12/29/2005__ , Page __3__

Anthony Rudy + Naval Surface

Jon van Horne (Search performed on 01/03/2006)

It should be noted that the order refers to "John" van Horne, but the correct name is "Jon."

Horne + White Oak
van Horne + White Oak
Jon + White Oak
Jon + GSA
Jon + Safavian
Jon + Old Post Office
Jon + OPO
Jon + Scotland
Jon + Naval Surface

Neil Volz (Search performed on 01/04/2006)

Volz + White Oak
Volz + GSA
Volz + Oak
Volz + Eshkol
Volz + Naval Surface
Volz + Naval
Volz + OPO
Volz + Old Post Office
Volz + Safavian
Volz + Scotland

Colin Stevens (Search performed on 01/04/2006)

Colin Stevens + White Oak
Colin Stevens + GSA
Colin Stevens + Safavian
Colin Stevens + Old Post Office
Colin Stevens + OPO
Colin Stevens + Scotland
Colin Stevens + Naval Surface

David Lapin (Search performed on 01/04/2006)

David Lapin + White Oak
David Lapin + GSA
David Lapin + Safavian

FD-302a (Rev. 10-6-95)

58E-WF-228974

Continuation of FD-302 of ___Discovery Production___ , On _12/29/2005_ , Page _4_

    David Lapin + Old Post Office
    David Lapin + OPO
    David Lapin + Scotland
    David Lapin + Naval Surface

<u>Holly Bowers (Search performed on 01/05/2006)</u>

    Holly Bowers + White Oak
    Holly Bowers + GSA
    Holly Bowers + Safavian
    Holly Bowers + Old Post Office
    Holly Bowers + OPO
    Holly Bowers + Scotland
    Holly Bowers + Naval Surface

    The results of the search terms were reviewed by SA Reising for documents from May 2002 through August 2002 and concerning Safavian, OPO, White Oak, and the 2002 Scotland trip. Positive results were printed from the IntelPlus database and placed in date order. The results were organized per individual (i.e, Pam Abramoff, Rudy, van Horne, etc.).

    This FD-302, provided as part of the discovery Order of 12/23/2005, shall provide the Defendant information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control or of the Department of Justice, specifically the FBI.