## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES of AMERICA,**

**v.**

**DAVID HOSSEIN SAFAVIAN,**                    **Criminal No. 05-370 (PLF)**

**Defendant**

---

## DEFENDANT SAFAVIAN'S REPLY IN SUPPORT OF HIS RENEWED MOTION TO COMPEL DISCOVERY AND OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION

The government initially indicated that it would produce a redacted portion of Jack Abramoff's 302, to the extent that Mr. Abramoff addressed statements by Mr. Safavian. It has since rethought its position and taken the simple request for "a few paragraphs" and used it as an opportunity to re-litigate legal questions that have already been decided by this Court. Their arguments and request for "clarification" should be summarily rejected. The Court has already afforded the parties four opportunities to brief, and two opportunities to argue, the scope of Rule 16 and <u>Brady</u> obligations *in this 18 U.S.C. § 1001, 1505 context*, before plainly directing the government to disclose materials "under Rule 16(a)(1)(B)(i) if they are in fact statements of the defendant to *anyone*." Opinion at 16 (emphasis added). This discovery rule is the law of the case and consistent with the plain terms of the rule.

The parties raised the prospect of a Jack Abramoff plea, and the implications thereof, at the December 13, 2005 hearing and status conference. Mr. Abramoff did indeed reach an agreement on January 3, 2006. His decision resulted in, among other things, a new avenue for the government to accumulate discoverable information regarding this case. The January 9,

2006 Motion to Compel is simply a recognition of this new reality and an application of this Court's prior ruling to that reality.

The government's decision to oppose this request for "a few paragraphs" of information is troubling because it wants the Court to backtrack from its previously stated position. As defendant stated repeatedly in the November and December 2005 filings in support of the Motion to Compel discovery, this Indictment, after all, is about the precise statements of three actors, Mr. Safavian, the government, and Mr. Abramoff. Rule 16 and <u>Brady</u> contemplate that where the Government prosecutes a person for making alleged misstatements concerning one's relationship to another party, the defendant should know what evidence the government possesses to memorialize what he said to the government and that other party. Accordingly, this Court acknowledged that "[s]tatements of the defendant are particularly important in this case." Opinion at 5. Not surprisingly, in all of the government's briefing, *not one* citation addresses Rule 16(a)(1)(B)(i) squarely, let alone a §§ 1001, 1505, or even perjury context.

The Court's order of production for 302s and notes in this matter have already borne significant fruit and confirmed the defense's suspicions about the government's depiction of the defendant's actual statements, not to mention the legal foundation for a § 1001 or § 1505 Indictment. Multiple filings currently before this Court have utilized discovery made available by the Court's December 23, 2005 decision to detail key discrepancies between representations of the defendant's actionable statements in the Indictment and the government officials' recollections of those statements in their 302s interviews and notes of interviews. The filings have also outlined crucial disparities between the subsequent 302 summaries and the contemporaneous notes. <u>See</u>, <u>e.g.</u>, Jan. 27, 2005 Motion to Inspect Grand Jury at 5-8, Jan. 27, 2005 Motion to Dismiss at 40, 53-54 & n. 32, 42. These findings reinforce the logic and fairness

of the law dictating production of such items at the onset of a § 1001, or § 1505 indictment. They also lend credence to the defendant's contentions in this renewed motion to compel that Abramoff's recollection of Mr. Safavian's statements are both "material to the *preparation* of the defense" and potentially exculpatory.

Furthermore, the government's fifteen-page motion for clarification—in actuality a motion for reconsideration and new advisory opinion—is not properly before this Court. There is no case or controversy over whether, for example, any of the "potential government witnesses" have incurred "speeding tickets" or "smoked marijuana in college," and such behavior's effect on the charges of the Indictment, that the defense is aware of. Gov't Opp. at 19. The Court Order simply applied precedent to hold the government responsible for producing inculpatory and or exculpatory information material to the preparation of the defense located in executive agencies that the prosecution had knowledge of and access to.

Finally, this Court should not allow Mr. Safavian to be whipsawed by the government. Mr. Safavian had originally requested all information regarding the Old Post Office and White Oaks facilities. Consistent with the Court's direction, see Order at n.1; Opinion at n. 3, the defendant sufficiently narrowed its request for the timeframe and subject matter for its request for documents and emails from the GSA and GSA-OIG. See Dec. 27, 2005 Letter, Renewed Ex. 5. Mr. Safavian also agreed to abide by a Protective Order, which mandates government approval prior to public filing of documents produced in discovery. Yet, on Friday, January 27, 2006, the government publicly filed a notice to introduce extrinsic evidence pursuant to Fed. R. Evid. § 404 (b). This notice alleges that Mr. Safavian called Mr. Abramoff to give him a "heads-up" about a GSA suspension action that occurred more than a year and a half after the events in

this Court. The Court should not allow the government on the one hand to argue that the Court's Order needs to be limited while expanding the issues that need discovery.

Furthermore, the government's one-page notice under Fed. R. Evid. §404(b) fully demonstrates the injustice that the government's arguments would work if they were accepted. The government asserts that it is not required to turn over statements by Mr. Safavian to Abramoff based upon the claim that he is not a government agent, even though he is now a cooperator and those statements are in the government's possession and contained in a 302 and/or notes. The government's 404(b) notice clearly is based upon statements that Mr. Abramoff has told the government, and yet the government does not believe it should be required to turn those statements over. The government, in effect, believes that it can simply file its one-page 404(b) notice—which amounts to no notice at all—and then deprive the defendant of the evidence and statements that allegedly support that notice. Accordingly, not only are the statements material to the preparation of other aspects of defendant's case as described below, but they are critical to understanding the skeletal notice the government filed, and preparing a motion to exclude such evidence.

Notwithstanding the government's opposition -- essentially a much belated motion for a reconsideration of the December 23rd ruling -- the defendant's requests for his statements to Mr. Abramoff should be granted for the following reasons.

## I.    DEFENDANT'S PENDING MOTION TO COMPEL DISCOVERY SHOULD BE GRANTED

### A.    The Redacted 302s and Notes of Interviews with Jack Abramoff are Discoverable to the Extent They Contain or Reference any Statement Made by Mr. Safavian.

This Court's December 23, 2005 Order and Opinion directed the government to disclose materials "under Rule 16(a)(1)(B)(i) if they are in fact statements of the defendant to *anyone*."

Opinion at 16 (emphasis added).  This holding is supported by the plain text of Rule 16 which requires that "[u]pon a defendant's request, the government *must* disclose to the defendant . . . *all of the following*: (i) *any* relevant written or recorded statement by the defendant if:  the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists. . . ."  Fed. R. Crim. P. 16(a)(1)(B) (emphasis added).  This holding constitutes the law of the case.  United States v. Alaw, 327 F.3d 1217, 1220 (D.C. Cir. 2003) (holding that decisions rendered should not be revisited); United States v. Poindexter, 725 F. Supp. 13, 18 (D.D.C. 1989) (rejecting attempts to relitigate issues decided by trial court because "rulings made in earlier phases of particular litigation are binding in later phases of the same lawsuit") (citing cases).

 The government does not and cannot establish extraordinary or compelling circumstances that would warrant the alteration of this Court's prior ruling.  The law of the case is consistent with the plain text of Rule 16, which broadly requires the disclosure of *any* written record containing statements made by the defendant, regardless of when or to whom those statements were made, so long as they are within the government's possession, custody, or control and the prosecutor knows or should know that the statement exists.  Thus, "discovery or inspection of statements made by prospective government witnesses" are discoverable if "portions of those statements contain the substance of any relevant written or oral statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B)."  Opinion at 7.

 Quite simply, the defendant's statements are discoverable under Rule 16(a)(1)(B)(i) because they are statements made by Mr. Safavian.  Notably, Rule 16(a)(1)(B)(i) *does not* require statements to have been made to a government agent.  Opinion at 16.  The Court's reading is supported by the overall context of Rule 16.  Part (a)(1)(B) makes a completely

separate provision for statements made to law enforcement in subsection (ii), which requires disclosure of statements made "in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. Rule 16(a)(1)(B)(ii). Thus, it is *the government's* proposed interpretation of (B)(i) – that this provision only permits discovery of statements made to a government agent – that would render the following provision, Rule (B)(ii) mere surplusage. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'")  (citing cases establishing that the court will not "treat statutory terms as surplusage in any setting")

Accordingly, courts have held that the text of (B)(i) (formerly Rule 16(a)(1)(A)), which required production of "any relevant written or recorded statements made by the defendant," is not limited to statements made in response to interrogation and gives the defendant "virtually an absolute right" to his own statements.  See United States v. Thomas, 239 F.3d 163, 166-67 (2nd Cir. 2001); United States v. Thevis, 84 F.R.D. 47, 55-56 (D. Ga. 1979) (holding that Rule 16 encompasses statements of the defendant whether made directly to a government agent or to a third party who then makes a statement to the government in which the defendant's remarks are included, and the Jencks Act does not limit the discovery of the portion of the statement to the government that sets forth the statement by the defendant); United States v. Brighton Bldg. & Maintenance Co., 435 F. Supp. 222, 232 (D. Ill. 1977) (same).[1]

---

[1]    The cases above interpreted similar text of Rule 16 prior to the 2002 amendment which added Rule 16(a)(1)(B)(i), which reads, "Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (i) any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody , or control; and the attorney for the government knows—or through due diligence could know—that the statement exists; . . ." Fed. R. Crim. P. 16(a)(1)(B) (2005).

The government further alleges that these materials are not discoverable because the defendant himself did not record them; rather, these statements were made to a third party, Jack Abramoff, before being recorded by the government. Gov't Opp. at 2-3.  However, this Court has long acknowledged that Rule 16(a)(1) discovery encompasses all oral statements of a defendant recorded by others, even government witnesses.  United States v. Lewis, 511 F.2d 798, 802 & n. 6 (D.C. Cir. 1975) (acknowledging that Rule 16 supports disclosure of pre-arrest conversations between the defendant and a third party); United States v. Crisona, 416 F.2d 107, 115 (2d Cir. 1969) (holding that defendant should "receive before trial all of his statements 'regardless of to whom they were made-whether a prosecuting attorney, an investigator, a grand jury, or anyone else'"); United States v. Addonizio, 313 F. Supp. 486, 500 (D.N.J. 1970), aff'd 451 F.2d 49 (3d Cir. 1971).

The government's list of citations purportedly to the contrary are inapposite.  Gov't Opp. at 3-5.  Not one case addresses a request for the defendant's statements where the statements themselves constitute the alleged crime.  Id. (citing United States v. Pollack, 534 F.2d 964, 976 (D.C. Cir. 1976) (mail fraud), United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir. 1988) (drug conspiracy), United States v. Carter, 621 F.2d 238, 240 (6th Cir. 1980 (armed robbery).

In addition, unlike in Pollack and Tarantino, the defendant could be prejudiced by the late disclosure of statements in this case.  Without prompt disclosure, defendant is not able to adequately prepare defenses to the Indictment charges concerning: (i) the nature of Mr. Abramoff's personal relationship with Mr. Safavian; Indictment ¶¶ 29, 31, 40; (ii) the context of the Scotland trip; Indictment ¶¶ 17, 18, 20, 21; (iii) that Mr. Safavian never accepted a gift from Mr. Abramoff; Id. ¶¶ 22-31 and, (iv) that the offer to travel to Scotland arose out of a personal relationship.  Id. ¶¶ 28-29.  Consequently, the Court has already determined that Mr. Safavian's

statements are "crucial" to the outcome of this case—indeed the allegedly undisclosed relationship between Messrs. Safavian and Abramoff is the central allegation of the Indictment. Thus, further delay of disclosing those statements will emasculate the effect of the government's obligations under Brady and prejudice Mr. Safavian's ability to prepare his defense.

Defendant also would also be significantly prejudiced if he does not obtain this material in light of the government's skeletal notice to introduce 404(b) evidence of Mr. Safavian's alleged statements to Mr. Abramoff. Mr. Safavian needs this discovery to respond effectively to that notice, which is completely devoid of any content. Without immediate disclosure of Mr. Abramoff's statements, the defendant will be deprived of the ability to analyze the evidence and statements that allegedly support that notice, and of the ability to file an effective motion to prohibit its admission. In short, the government apparently believes that it may sandbag the defendant with this evidence and, at the same time, deprive the Court of full information about the evidence so that it may exercise its discretion to either admit or exclude this 404(b) evidence.

Moreover, no other provision of Rule 16 prevents the discovery of these materials. Rule 16(a)(2) prevents the disclosure of statements of government witnesses "[e]xcept as Rule 16(a)(1) provides otherwise." Fed. R. Crim. P. Rule 16(a)(2). Therefore, any materials discoverable under Rule 16(a)(1)(B)(i) are not barred from discovery by (a)(2).[2]

Also, the statements made by Mr. Safavian to Abramoff are particularly relevant because of Abramoff's role in this investigation as the organizer of the August 2002 Scotland trip. For all of the above reasons, the redacted portions of the notes and 302s of interviews of Jack Abramoff

---

[2]    That the government opposition is meritless is evidenced by their simultaneous contention that the 302 is not Jencks Act material, see Gov't' Opp. at 2 & n.1, but that it is and that the production of the redacted portions of the Abramoff 302 would undermine the purpose of the Act. Id. at 5.

are discoverable under Rule 16(a)(1)(B)(i) to the extent they contain or reference any statement made by Mr. Safavian.

**B.     The Redacted 302s and Notes of Interviews with Jack Abramoff are Discoverable Because They are "Material to Preparing the Defense."**

Mr. Safavian also requests the redacted portions of the 302s and notes of the interviews of Mr. Abramoff, because these documents are material to the preparation of the defense. Fed. R. Crim. P. Rule 16(a)(1)(E) requires disclosure of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control" if the items are "material to preparing the defense."

Contrary to the Court's instructions in the Order, the government attempts to limit its discovery obligations by arguing that these materials are not discoverable because they will not "elucidate any discrepancy between what defendant wrote in his email to Mr. McKenna and what Ms. Ellison put in her response." Opp. at 7. However, this interpretation is contrary to the specific instructions of the Court that "the government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16. Nor can the government put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." Opinion at 6.

Here, the defense has specifically stated how these documents would be material to the preparation of the defense in the Motion to Compel filed with the Court. On page 3, it states that these materials would aid in determining: (i) the nature of Mr. Abramoff's personal relationship with Mr. Safavian; (ii) the context of the Scotland trip; (iii) that Mr. Safavian never accepted a gift from Mr. Abramoff; and (iv) that the offer to travel to Scotland arose out of a personal relationship, all of which are material to the preparation of the defense because all of these issues

are crucial to the prosecution's case. Def. Motion at 3. For example, if these materials demonstrated that the offer to travel to Scotland arose out of a personal relationship, or that Mr. Safavian never accepted a gift from Mr. Abramoff, that information would undermine requisite elements of each and every 18 U.S.C. §§ 1001, 1505 count in the indictment. See Jan. 27, 2005 Def. Motion to Dismiss.  Additionally, as described above, these statements are also critical to understanding the government's skeletal notice under Fed. R. Evid. §404(b), preparing a motion to exclude the evidence, and preparing a defense to the evidence if the Court permits its admission.

In addition, as the Court noted in its Opinion, "material to *the preparation of* the defense" is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure. Opinion at 6-7 (citing United States v. Marshall, 132 F.2d 63, 67 (1998)) (emphasis in original). Therefore, even if the 302s and interview notes provide evidence that is *unfavorable* to the defense with respect to any of the four issues listed above, or any other issue, the government still has the obligation to provide these documents because they would be material. Id.

The government further attempts to evade its obligations under this rule by attempting to relitigate contentions addressed by several rounds of briefing in November and December filings.  It now contends for the first time that notes and 302s are not "documents" as defined by (a)(1)(E). Govt' Opp. at 5. However, Rule 16(a)(1)(E) explicitly covers these materials, which would expressly fall under a number of the categories specifically enumerated in the rule, such as "papers," "documents," "data," or "tangible objects."   Fed. R. Crim. P. 16(a)(1)(E). Furthermore, the Court expressly held that similar 302s and notes were discoverable as documents under Rule 16(a)(1)(E).  Opinion at 12.

Discovery of these materials is not barred by Rule 16(a)(2), which specifically states that "*Except as Rule 16(a)(1) provides otherwise*, this rule does not authorize the discovery or inspection of . . . statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  Accordingly, the plain text meaning of (a)(2) creates an express exception for (a)(1), including (a)(1)(E); therefore, despite the fact that these statements are made by a prospective government witness, (a)(2) does not preclude their discovery under (a)(1)(E).  See Carlisle v. United States, 517 U.S. 416, 424 (1996) (holding that the Federal Rules shall not "be construed to mean something other than what they plainly say"); United States v. John Doe, Inc. I, 481 U.S. 102, 109 (1987) (holding that when a Rule is not susceptible of more than one interpretation, the "plain language" of the Rule supercedes policy arguments); Lamie v. United States Trustee, 540 U.S. 526, 530 (2004) (holding that, despite an "apparent drafting error" in an amendment to the Bankruptcy Code, the statute's text was plain and must be enforced according to its terms).[3]

Even if this Court had been persuaded to apply the Jencks Act to (a)(1)(E) through (a)(2) by the government's initial briefing on the defendant's first motion to compel discovery, production of the redacted 302 would still be warranted.  This Court has recognized that in §§ 1001 and 1505 cases, courts should be "mindful of the fact that the late production requirements

---

[3]      The government appears to suggest that this result is precluded by United States v. Rudolph, 224 F.R.D. 503 (2004).  Gov't Opp. at 5 & n.2.  That case acknowledged that a plain text reading of Rule 16 would allow discovery of 302s and notes of prospective government witnesses when "material to the preparation of the defense," but nevertheless found a "scrivener's error exception" to the plain meaning rule applied to bar discovery.  See Rudolph, 224 F.R.D. at 506, 510-11.  The non-binding Rudolph decision is untenable under recent Supreme Court and D.C. Circuit rules of statutory interpretation.  Lamie v. U.S. Trustee, 540 U.S. 526, 542 (2004); United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 494 (D.C. Cir. 2004) (following Lamie and holding in the False Claims Act context that an "asserted variance with the legislative history [does not] empower[] us to ignore the plain language" because "such extraordinary power is limited to the situation in which adherence to the plain text leads to an 'absurd' result").  Hence, the plain reading of Rule 16(a)(1)(E) compels production in this instance for the reasons stated above.

of the Jencks statute were adopted primarily to protect witnesses from intimidation or worse."

United States v. Poindexter, 727 F. Supp. at 1484-85 (D.D.C. 1989). Where such interference is

not an issue (as it is not in this case), courts in this District have ordered the prosecution to

produce the Jencks material well before trial, since the "delay of production of these materials

until the time of the witness' testimony would be likely to cause extensive trial delays." Id.

### C.    The Redacted 302s and Notes of Interviews with Jack Abramoff are Discoverable Under the *Brady* Doctrine.

This Court properly recognized that "Brady always trumps both Jencks and Rule 16."

Opinion at 7 (citing United States v. Tarantino, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988)); see

also Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, this Court found that Brady imposes

a *pre-trial* obligation on the government to disclose all evidence "favorable to the accused . . .

without regard to whether the failure to disclose it likely would affect the outcome of the

upcoming trial."[4] Opinion at 9; see also United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-99

(C.D. Cal. 1999); United States v. Acosta, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005); United

States v. Carter, 313 F. Supp. 2d 921, 924-25 (E.D. Wisc. 2004). The Court further defined the

term "favorable to the accused" to mean "any information in the possession of the government –

broadly defined to include all Executive Branch agencies—that relates to guilt or punishment

and that tends to help the defense by either bolstering the defense case or impeaching potential

prosecution witnesses. It covers both exculpatory and impeachment evidence." Opinion at 9-10;

see also United States v. Bagley, 473 U.S. 667, 676-77 (1985).

The government now seeks to relitigate the significance of the three primary cases relied

on by the Court in its analysis of the proper Brady standard, Sudikoff, Acosta, and Carter. This

contention is untimely and without merit. The Sudikoff line of cases relied on by this Court were

---

[4]    This Court also held that this obligation continues during trial. Opinion at 9.

simply applying the Supreme Court's recent, express recognition that "the broad *obligation to disclose exculpatory evidence*—that is, to any suppression of so-called 'Brady material'— although, strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281 (1999) (emphasis added). Consequently, the Court stated that the post-trial materiality requirement of Brady is narrower than the prosecutor's pre-trial "obligation to disclose exculpatory evidence." Id.; see also Acosta, 357 F. Supp. 2d at 1232.

This Circuit has also recognized that the government's Brady obligations are to be construed broadly:

> [I]t is important to note that courts in this jurisdiction look with disfavor on narrow readings of the government's Brady obligations; it simply is insufficient for the government to offer "niggling excuses" for its failure to provide *potentially exculpatory* evidence to the defendant.

United States v. Ramirez, 54 F. Supp. 2d 25, 33 (D.D.C. 1999) (quoting United States v. Paxson, 861 F.2d 730, 737 (D.C. Cir. 1988)) (emphasis added).

Accordingly, the redacted portion of Abramoff's 302s and notes thereof are discoverable because they meet the definition of "favorable to the accused." As discussed above, these materials are potentially exculpatory to the extent they aid in determining: (i) the nature of Mr. Abramoff's personal relationship with Mr. Safavian; (ii) the context of the Scotland trip; (iii) that Mr. Safavian never accepted a gift from Mr. Abramoff; and (iv) that the offer to travel to Scotland arose out of a personal relationship. These materials may also reveal inconsistencies in Mr. Abramoff's story that would be relevant to his credibility as a witness, and impeachment evidence is discoverable as evidence "favorable to the accused." Opinion at 9-10; United States v. Bagley, 473 U.S. 667, 676-77 (1985); Sudikoff, 36 F. Supp. 2d at 1201-02. Notably, the

defendant's contentions that the 302s and notes may contain <u>Brady</u> material are not speculative, as demonstrated by the multiple filings before this Court detailing the significance of important discrepancies in the 302s and notes already produced.  <u>See</u>, <u>e.g.</u>, Jan. 27, 2005 Motion to Inspect Grand Jury at 5-8, Jan. 27, 2005 Motion to Dismiss at 40, 53-54 & n. 32, 42.

## II.    GOVERNMENT'S REQUEST FOR CLARIFICATION REGARDING DISCOVERY OBLIGATIONS PURSUANT TO DECEMBER 23 OPINION IS NOT PROPERLY BEFORE THIS COURT

The government's request for "clarification" is both a continuation of its attempt to have this Court overrule its prior opinion and an impermissible request for an advisory opinion.  The law is clear that "[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy, and a federal court [lacks] the power to render advisory opinions." <u>U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.</u>, 508 U.S. 439, 446 (1993) (internal quotes omitted).  Therefore, "[the court's] judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975).

In making its request, the government is not asking for specific relief, but rather is asking for a ruling on discovery matters based on a "hypothetical state of facts."[5]  The advisory nature

---

[5]    In addition to its concern that the defendant may someday ask whether any of the "potential government witnesses" have incurred "speeding tickets" or "smoked marijuana in college," the government also offers less imaginative hypotheticals for the Court to decide as well.  Gov't Opp. at 19.  For example, with respect to the White Oak facility, the government says that "one might fairly *surmise* that the Department of Defense may well possess literally millions of documents that reference this facility."  Opp. at 11 (emphasis added).  The government goes further and says "it *may well be the case* that the Environmental Protection Agency or the Department of Energy has done soil testing at the White Oak facility.  If so, the government is unclear whether these documents, *if they exist*, come within the scope of the Court's Opinion."  Gov't Opp. at 11 n.8 (emphasis added).  There is nothing in the record related to whether any relevant or material documents exist at any of these agencies, nor has Mr. Safavian requested documents from any of these agencies.

of the relief sought by the government is further highlighted by its eight page argument attacking this Court's definition of "the government" as including documents outside of the actual physical possession of the prosecutor. Nowhere, however, does the government claim that the Abramoff 302s and notes – the primary documents at issue – are outside of the "government's possession, custody, or control." Govt' Opp. at 1-8. Hence, the government is asking this Court to issue an opinion on an issue not in dispute, precisely what has been held to be outside the jurisdiction of Article III authority. For these reasons, courts have specifically refused to respond to motions for clarification of prior orders, as opposed to requests for specific relief, because such motions lack the "case or controversy" requirement for proper judicial determination. See, e.g., Houston v. Mile High Adventist Academy, 872 F. Supp. 829, 832 (D. Colo. 1994) (denying motion to clarify whether amended complaint complied with the court's prior order because request was for "guidance in the form of an advisory opinion, rather than specific relief").

The government is attempting to create uncertainty and impracticability where none exists. The December 23, 2005 Order addressed the government's concerns about the breadth of the ruling by directing the defense to narrow its request for executive agency information in writing. Id. n.3. Complying with this Order, the defense specifically narrowed its request to "reports, documents, e-mails, and correspondence sent to or from the eight GSA officials, including GSA Commissioner Moravec . . . . from May 2002 to December 2003." Renewed Ex. 5. Therefore, it is simply not the case that the government must undertake searches of "millions" of documents possessed by "any and all agencies and departments of the Executive Branch" as the government suggests. As discussed below, the government must produce any discoverable document that it has knowledge of and access to, regardless of which agency has actual possession of the document.

Essentially, the government is trying to reargue materiality and the circumstances under which it has an affirmative obligation to search. Govt' Opp. at 11 ("[T]he prosecution in this case is concerned that the Court has required it to review, for example, all DOD files, lest it may be deemed to have committed a Brady violation for failing to inspect these files."). However, as this Court's opinion and the relevant case law makes clear, the scope of the prosecution's affirmative *duty to search* the files of other agencies for exculpatory material is narrower than its *duty to disclose* material when the defendant makes a written, particularized request. Compare United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (finding that the affirmative "duty to search" under Brady usually involves agencies "closely aligned with the prosecution" and is triggered by the nature of the files and the prospect of finding exculpatory materials), with Opinion at 14 ("[T]he [defense's] request does not have the required particularity."), and Fed. R. Crim. P. Rule 16(a)(1)(E) (requiring disclosure of items "material to preparing the defense" only "Upon a defendant's request").

The defense is not suggesting -- nor has it ever requested -- that the prosecution has an affirmative obligation to search every file in the possession of the Executive Branch of the U.S. Government. However, the prosecution does have a duty to disclose any evidence (i) upon a written, particularized request by the defense, (ii) which is in the possession of "any and all agencies and departments of the Executive Branch of the government and their subdivisions" (iii) if "the attorney for the government" knows or should know of the evidence's existence, and (iv) the evidence is either "favorable to the accused" under Brady or otherwise discoverable under Rule 16. See Opinion at 14; Sudikoff, 36 F. Supp. 2d at 1199; Fed. R. Crim. P. Rule 16.

The government further tries to limit its obligation by asking the Court to overrule itself and restrict its definition of "the government" to only the GSA, GSA-OIG, and FBI. Govt' Opp.

at 10, 14.  In so doing, the government presents no less than four completely different standards

for what it thinks "the government" should mean.[6]  Despite the government's citation of one and

one-half pages of case law, the law is clear that "the government" is not restricted to only the

prosecution and agencies that have assisted in the investigation.  See United States v. Santiago,

46 F.3d 885, 893-94 (9th Cir. 1995) (finding no requirement that an agency have actually

participated in the investigation to qualify as "the government" under Rule 16); see also LaFave,

Criminal Procedure § 20.03(a) (2005) ("Under the broad language of Federal Rule 16, material

which is possessed by *any agency* of the 'government,' whether or not investigatory, should be

discoverable if it is identified by reference to its likely location in the defense request (and

thereby made 'known' to the 'attorney for the government').") (emphasis added).

       The government cannot limit its disclosure obligation to only the GSA, GSA-OIG, and

the FBI.  To the extent that the prosecution has knowledge of and access to any discoverable

material located in "any and all agencies and departments of the Executive Branch," not just the

GSA, GSA-OIG, and FBI, this Court's Order requires disclosure of material.  Opinion at 4.  This

is supported by the text of Rule 16, which distinguishes the requirement of "the government's

possession, custody or control" from the requirement of the knowledge of "the attorney for the

government."  Fed. R. Crim. P. Rule 16(a)(1)(B)(i);   see also Santiago, 46 F.3d at 893-94

(requiring prosecutorial "knowledge of and access to" the documents in question, and

specifically rejecting a requirement that the agency have participated in the particular

investigation); United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989) (finding prosecutor's

---

[6]       On page 10 of the government's motion, it suggests the government should only be those
agencies "closely aligned" with the prosecution.  On page 14, it submits a "knowledge of and
access to" standard.  On page 16, it submits a "close working relationship" standard.  Lastly, on
page 17 it suggests a "working on their behalf" standard.

knowledge of and access to documents allows production of documents outside of prosecutor's physical control).

Furthermore, the page and a half string cite of cases the government relies on acknowledges this standard.[7]  For example, in Bryan, 868 F.2d at 1036, the court explicitly rejected a "a mechanical definition of 'government' that would deny to the defendant documents accessible to the prosecution," and the court went on to hold, as the government notes in its citation,  "the government's obligation under Rule 16(a)(1)(C) [now (a)(1)(E)] should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case."[8]  In United States v. Jordan, the Eleventh Circuit was not creating a *ceiling* for discovery, but rather was simply recognizing a *floor*, when it noted in dicta "courts

---

[7]     The cases cited by the government requiring more than knowledge of and access to the documents are cases involving an affirmative duty to search under Brady, rather than—as is the case here—a duty to produce upon a particularized written request.  See, e.g., Strickler v. Greene, 527 U.S. 263, 281 (1999) ("In order to comply with Brady, therefore, 'the individual prosecutor has a *duty to learn* of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'") (emphasis added); United States v. Casas, 356 F.3d 104, 116 (1st Cir. 2004) ("The obligation under Brady to disclose evidence *that the defense has not requested* applies only when the prosecution or others acting on its behalf knew or should have known of its materiality.") (emphasis added).  For these reasons, the government's discussion of the Brooks decision, which noted the close working relationship between the prosecution in that case and the Metropolitan Police Department, is also misplaced.  Opp. at 15-16.  As the government notes, Brooks held that there was a duty to *search* the Metropolitan Police Department files for Brady material because of various factors including the close working relationship between the two agencies on the case.  Brooks, 966 F.2d at 1503.

[8]     Consequently, in contradiction to the claim made by the government, Bryan does support this Court's holding.  Furthermore, the government suggests that Beers also does not support this Court's holding.  However, Beers was not cited by this Court in the context of a particularized request by the Defense, but rather in the context of the prosecutor's affirmative duty to search under Brady, where this Court found that the prosecutor must "*cause files to be searched* that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of government 'closely aligned with the prosecution.'" Opinion at 10 (citing Brooks, 966 F.2d at 1503; Beers, 189 F.3d at 1304) (emphasis added).  Therefore, Beers does support the Court's holding with respect to Brady and is not inconsistent with the Court's definition of "the government" in instances of a particularized written request for discovery.  See Beers, 189 F.3d at 1304 (finding that "[i]nformation possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case" for Brady purposes).

have found that the 'possession, custody, or control of the government' requirement *includes* materials in the hands of a governmental investigatory agency closely connected to the prosecutor."  316 F.3d 1215, 1249 (11th Cir. 2003) (emphasis added).[9]  That the court was not limiting discovery to agencies "closely connected to the prosecutor" is clear by simply following the chain of authority.  Jordan cites United States v. Scruggs, 583 F.2d 238, 242 (5th Cir. 1978), as authority for its "closely connected to the prosecution" language.  However, in Scruggs, the Fifth Circuit simply held that documents in the possession of the FBI were in the possession of "the government" for Rule 16, citing United States v. James, 495 F.2d 434, 436 (5th Cir. 1974).[10] The true definition of "the government" becomes much clearer in James, where the court noted that "the spirit of the criminal discovery rules" is to reduce "the opportunity for trial by ambush. This salutary function cannot be aborted by allowing a United States Attorney to avoid discovery by pleading ignorance of discoverable material which is in the possession of another governmental agency; especially is this true when both are supposedly working together." James, 495 F.2d at 436.

Thus, there is no support for the proposition that a prosecutor can avoid production of discoverable material, of which he has both knowledge and access, simply because the material is in the hands of another agency.  Obviously, the closer the working relationship is between the prosecution and the agency, the more likely there is to be "access," but a lack of a close working

---

[9]    In other words, the government is citing Jordan in direct opposition to authorities such as Santiago and Bryan that hold that knowledge and access is sufficient for production of material documents.  However, the court in Jordan was not saying that "the government" means *only* agencies "closely allied with the prosecution," but rather it was noting that *at a bare minimum*, the material that must be produced "*includes* materials in the hands of a governmental investigatory agency closely connected to the prosecutor."  Jordan, 316 F.3d at 1249 (emphasis added).

[10]   Scruggs also cited United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973), which is a Brady decision and in any event is consistent with the holding of James.  Deutsch was overruled on other grounds in United States v. Henry, 749 F.2d 203 (5th Cir. 1984).

relationship does not foreclose a finding of "access."   For these reasons, the government's disclosure obligation can not be limited to just the GSA, GSA-OIG, FBI or those agencies that are "closely aligned" or have a "close working relationship" with the prosecution.   So long as documents are discoverable under Rule 16 or Brady and the prosecutor has knowledge of and access to the documents, then the prosecutor has the obligation to produce in response to a written request by the defense.   And as this Court properly held, "Brady *always* trumps both Jencks and Rule 16."  Opinion at 7 (citations omitted).

## III.   THIS COURT'S HOLDING REGARDING THE GOVERNMENT'S BRADY OBLIGATIONS WAS PROPER AND SHOULD NOT BE CLARIFIED OR MODIFIED IN ANY WAY

The government further requests clarification of its Brady obligations.  To the extent that the government seeks clarification of this Court's prior order in the abstract, the request is for an advisory opinion, which would fall outside the bounds of a justiciable "case or controversy" required by Article III.  See supra Part II.  Essentially, the government is requesting that the Court overrule its prior order, which clearly rejected the *post-trial* Brady standard of "materiality" as applied to *pre-trial* discovery motions.  Opinion at 9.  However, all of the cases cited by the government in support of its argument are post-trial interpretations of Brady. Furthermore, the government suggests that the "favorable to the accused" standard enunciated by this Court is an impossible standard and cites United States v. Bagley, 473 U.S. 667 (1985), in support.

This argument, however, fails for several reasons.  First, the "favorable to the accused" standard is certainly narrower than the Rule 16 "material to the preparation of the defense" standard, which includes inculpatory evidence, and Rule 16 has not presented the list of horribles proposed by the government.  Compare Sudikoff, 36 F. Supp. 2d at 1200 (noting that Brady does not provide for the disclosure of inculpatory evidence) with United States v. George, 786 F.

Supp. 11, 13 (D.D.C. 1991) (finding that documents requested under Rule 16(a)(1)(E) "need not directly relate to the defendant's guilt or innocence") and United States v. Lloyd, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (noting that the materiality standard of Rule 16 is "not a heavy burden"). Second, the language in Bagley quoted by the government, Govt' Opp. at 18, was concerned with preserving the finality of judgments, another post-trial concern. Bagley, 473 U.S. at 675 n.7. There, the Court didn't want to open up every conviction, *post-trial*, to the potential of being overturned due to the prosecutor's failure to disclose "evidence favorable to the accused, *no matter how insignificant*." Bagley, 473 U.S. at 675 n.7 (emphasis added). This concern is obviously not relevant to the pre-trial context. Opinion at 9. Moreover, in the pre-trial context, this Court does not have the benefit of hindsight to determine what evidence is "insignificant" or "would affect the outcome of the upcoming trial." Opinion at 9; Sudikoff, 36 F. Supp. 2d at 1198. Moreover, as noted above, the Supreme Court has recognized that there is a pre-trial obligation to disclose exculpatory evidence that is broader than the post-trial materiality test. See supra Part I.C; Strickler, 527 U.S. at 281.

## CONCLUSION

For the foregoing reasons, and those outlined in the January 9, 2006 Renewed Motion to Compel Discovery, Mr. Safavian respectfully requests that this Court issue the proposed Order compelling the prosecution to produce the requested materials pursuant to Rule 16, Brady v. Maryland, and the interests of justice, and deny the government's Motion for Clarification.

Respectfully submitted,

WILEY REIN & FIELDING LLP


By: /s/ Barbara Van Gelder

    Barbara Van Gelder (D.C. Bar # 265603)
    Roderick L. Thomas (D.C. Bar # 433433)
    Albert Lambert (D.C. Bar # 489562)
    Wiley Rein & Fielding LLP
    1776 K Street NW
    Washington, DC  20006
    TEL: 202.719.7032
    FAX: 202.719.7049

Dated: January 30, 2006        *Attorneys for David H. Safavian*