UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Cr. No 05-370 (PLF) |
| | : | |
| v. | : | |
| | : | |
| **DAVID HOSSEIN SAFAVIAN** | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S REPLY IN SUPPORT OF ITS
MOTION FOR CLARIFICATION

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its Reply in Support of its Motion for Clarification.

**The Need for Clarification**

Defendant argues that the government's motion for clarification should be denied because there is no "case or controversy" before the Court and that, therefore, the government is impermissibly seeking what is, essentially, an advisory opinion from the Court. Def. Brief, p. 14 - 15.

This view ignores the legal and ethical responsibilities that are incumbent upon a federal prosecutor. To the extent that this Court's Opinion created new obligations upon the prosecution, we are well-aware that we contravene these obligations at our peril – both professionally as individuals, and in terms of jeopardizing a potential conviction. Thus, this motion is not an academic exercise. The government's discovery obligations in this case did not cease as of the date of the Court's Opinion. They are ongoing, and will continue throughout trial and even sentencing. While it is true that we do not know if our witnesses have issues pertaining to marijuana use (Def. Brief, p. 14), there is no question that, as the trial approaches, these types

of decisions and judgement calls will have to made, as they are in all criminal prosecutions, pertaining to Giglio and Brady, as well as Rule 16, and the government is merely seeking clarification so that it can properly accord its conduct.

Moreover, this most assuredly is not a motion for reconsideration, as defendant also argues. Def. Brief, p. 3. The government has fully complied with the Court's December 23, 2005 Order requiring it turn over, inter alia, various FBI 302s and rough notes pertaining to its prospective witnesses. See Government's Notice of Discovery Compliance, filed 2/27/06. Had the government been seeking a motion for reconsideration, it would have done so prior to disclosing to the defense these particular items, rather than now, after the cows have effectively escaped the barn.

**The Definition of "the Government"**

Although defendant argues that the Court's ruling only requires the government to "produce any discoverable document that it has *knowledge of and access to*," (Def. Brief, p. 15, 17, 19) (emphasis supplied), this appears to be a more restrictive interpretation than some of the other possible interpretations of the Court's Opinion. See Opinion, p. 4. ("In the Court's view, 'the government' includes *any and all agencies and department of the Executive Branch of the government and their subdivisions*, not just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies.") (emphasis supplied). See also Opinion, p. 14 ("the term 'government' in Rule 16(a)(1)(B) and (E) encompasses more than just the Justice Department, the FBI, the GSA-OIG and other investigative agencies; it includes all agencies and departments of the Executive Branch of the government and all subdivisions thereof. ... The documents must be produced if they are in the 'possession, custody or control' of any agency of the Executive

2

Branch of the government and are either material to the preparation of a defense or are exculpatory under Brady." (Emphasis in original.)  The government is less confident than the defense that this language effectively limits the government's obligation to only those documents to which the government has both "knowledge and access."[1]

As the government understands the Court's ruling, the Opinion could be read to greatly enlarge the government's discovery obligations in this case from what the case law has previously required.  One reading of the Opinion suggests that the Court considers the prosecution to have constructive knowledge of all the information in entire Executive Branch.  It is our concern that the Court will hold the prosecution responsible if it fails to provide to the defense Rule 16 material and Brady from *anywhere* in the Executive Branch of government, without any limitation or requirement that we have *actual* knowledge of its existence.  Such a holding would be in contravention of a large body of case law, and would put any conviction in jeopardy, as well as potentially subject the prosecutors in this case to professional sanctions in the event potentially exculpatory evidence surfaced post-conviction from the bowels of a government agency uninvolved in any way with this prosecution.  As the government's discovery obligations are ongoing, the government respectfully requests that the Court clarify its Opinion so that the government will know precisely what the Court will expect and require of it in this case.

In his opposition the government's Motion for Clarification, defendant fails to acknowledge that the Supreme Court has defined "the government" as the prosecution and others

---

[1] The fact that the defendant and government read the Court's Opinion so differently on such a key point provides strong support for the government's argument that clarification of the Court's Opinion is needed.

working on its behalf. Kyles v. Whitley, 514 U.S. 419, 437 (1995). In addition to the case law cited by the government in its Motion for Clarification on this issue, the government also now cites United States v. Pelullo, 399 F.3d 197, 218 (3rd Cir. 2005), a recent case which dealt with the precise issue of what is the proper definition of "the government" for purposes of Brady. In Pelullo, the Court reversed a district court's decision vacating defendant's conviction because of alleged Brady violations. Defendant had been convicted of fraud in connection with a complex set of financial transactions involving defendant's improper manipulation of employee benefit plans he controlled. Id. at 203. Agents from the Labor Racketeering Office ("LRO")of the Department of Labor ("DOL") participated in defendant's prosecution in New Jersey. Id. at 209. It was later learned that while the criminal investigation of defendant was ongoing in New Jersey, officials of the Pension and Welfare Benefits Administration ("PWBA"), a civil arm of DOL, were monitoring a civil lawsuit against defendant in New Jersey. Id. This civil law suit also involved defendant's misappropriation of the assets of benefit plans he controlled. Id. The PWBA obtained documents pursuant to discovery in connection with defendant's civil case. Id.

After his conviction, defendant sought and, through a court order, subsequently obtained PBWA files the government held at DOL. Id. Believing them to be exculpatory, defendant claimed that the prosecution effectively suppressed Brady information by failing to provide to him these relevant documents that were in the possession of the PWBA at the time of his criminal trial. The district court granted defendant's motion for a new trial, ruling that the government had suppressed the PBWA files because "the government's Brady obligations extended to the content of those files [since] 'this material was in the files of the same agency, the DOL, that prepared the present case for trial.'" Id. at 216.

On appeal, defendant argued because it was not disputed "certain DOL agents were integral members of the prosecution team," this fact compelled a "conclusion that the PWBA (as part of the DOL) was part of the prosecution team as well, thus extending the government's Brady obligations to information possessed by the PWBA." Id. The government, on the other hand, argued "that the prosecution team should not be defined to include the entire DOL, a massive federal agency." Id. The Court identified the issue thusly: "whether the PWBA officials who possessed the documents at issue were members of the 'prosecution team' in this case" (Id.) or, put another way, "whether the prosecution should be charged with 'constructive knowledge' of the evidence held by the PWBA." Id. at n. 20.

In reversing the district court, the Third Circuit in Pellulo first observed that while "Brady places an affirmative obligation on prosecutors to learn of any favorable evidence known to the others acting on the government's behalf in the case" (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995), "' Kyles cannot 'be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.'" Id. at 216, quoting United States v. Merlino, 349 F.3d 144, 154 (3rd Cir. 2003).

After analyzing the applicable case law from other circuits, the Court held that "the prosecution is only obligated to disclose information known to others *acting on the government's behalf* in a particular case." Id. at 218 (emphasis supplied). While PWBA and LRO were both parts of DOL, because the "PWBA was not a member of the prosecution team [and there was] no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources [and neither] is there any indication that the prosecution has any sort of

control over the PWBA officials who were collecting documents," the PWBA should not be deemed a member of the prosecution team. Id. The mere fact "that other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team." Id. "Because the PWBA was not a part of the prosecution team, the prosecution never had 'constructive possession' of the Brady materials." Id. at 218, n. 23. See also, United States v. Stewart, 433 F.3d 273 (2d Cir. 2006) (rejecting categorical conclusion the prosecution automatically deemed to have constructive knowledge of facts possessed by a 'government official' working "in conjunction with the prosecution"; rather, "the propriety of imputing knowledge to the prosecution is determined *by examining the specific circumstances* of the person alleged to be an 'arm of the prosecutor.'") (emphasis supplied).

This case law, as well as that previously cited, makes clear that the appropriate test of what constitutes "the government" is what is stated in Kyles, 514 U.S. at 437: the prosecution "has a duty to learn of any favorable evidence *known to the others acting on the government's behalf in the case.*" (Emphasis supplied.)[2]

---

[2] To be clear, the government is not attempting to limit its obligations to provide to the defense evidence about which it becomes *actually* aware, regardless of its source. The government's concern is that the Court not deem it to have constructive knowledge of all materials within the Executive Branch of government. The defendant appears to agree with this general proposition. Def. Brief, p. 16,("[R]elevant case law makes clear [that] the scope of the prosecution's affirmative *duty to search* the files of other agencies for exculpatory material is narrower than its *duty to disclose* material when the defendant makes a written, particularized request.") (Emphasis in original.) and p.18, n. 7 See also United States v. Joseph, 966 F.2d 36, 40 - 41 (3rd Cir. 1993) (by failing to make a specific request for information, defendant did not alert prosecution to type of information he sought, so "it would have been unreasonable to expect the prosecutor to search all of the unrelated files in his office to look for exculpatory material ... [the] true measure of a prosecutor's Brady obligation is whether he knew or should have known of the exculpatory material. ... where a prosecutor has no actual knowledge or cause to know of the existence of Brady material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request for that information – specific in the sense that it

**The Court's Opinion Regarding Brady Requires Clarification**

In its initial pleading, the government attempted to articulate the government's untenable position if the Opinion were read to mean that the government was precluded from analyzing the materiality of any evidence prior to determining whether it must be disclosed to the defense. This position was well-described by the Supreme Court in United States v. Bagley, 473 U.S. 667, 675, n. 7 (1985): "a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor."

Defendant argues that the government's case authority relied exclusively on "post-trial interpretations of Brady." Def. Brief, p. 20. This claim ignores the government's citation to United States v. Coppa, 267 F.3d 132 (2d Cir. 2001), a case directly on point which defendant entirely fails to address. In Coppa, the district court required the government to disclose all Brady and Giglio evidence in its possession far in advance of trial, regardless of its materiality. Id. at 136. ("[A]ccording to the District Court, the 'materiality' of the exculpatory or impeachment mater – that is, whether its suppression would deprive defendants of a fair trial – need not be considered when defining the scope of a defendant's constitutional right to

---

explicitly identifies the desired material and is objectively limited in scope.") In this regard, we note once again that defendant – though under no obligation to do so – has yet to articulate what his defense in this case might be. This tactical decision has the invariable drawback of keeping the prosecution in the dark as to whether other evidence might be material or exculpatory. See United States v. Orena, 956 F. Supp. 1071, 1105 (E.D. NY 1997) (defendant's post-trial claim that exculpatory evidence had been suppressed rejected because theory of the defense was not foreseeable to the government at trial; "defendants' argument [on appeal] would require of the government clairvoyant powers not at its disposal, and certainly not required by Brady"). Nevertheless, should defendant identify specific evidence which qualifies as Brady, the government will endeavor to obtain it, regardless of the Executive Branch agency that may possess it.

disclosure.") The government sought mandamus on the pre-trial order. Id. at 137. The Circuit Court reversed the trial judge, finding that the district court had erred in ruling that the government must disclose favorable evidence without regard to its materiality. Id. at 142, 143-44. The reasoning of the Coppa Court – made *pre-trial* – is particularly apt in considering the instant case:

> Although the government obligations under Brady may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial. "[S]trictly speaking, there is never a real 'Brady violation' unless the [Government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."... The government has a so-called "Brady obligation" only where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial...."
>
> * * *
>
> Bagley made explicit what Agurs foreshadowed: that 'material' in the Brady context does not mean material in the evidentiary sense, as Brady seemed to suggest. Rather, evidence is material in the Brady context only if 'its suppression undermines confidence in the outcome of the trial.' ... More recently, in Kyles v. Whitley, the Court explicitly stated that what it called 'the current Brady law,' imposes a disclosure obligation narrower in scope than the obligation to disclose *all* evidence favorable to the defendant: [T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.
>
> * * *
>
> The result of the progression from Brady to Agurs and Bagley is that the nature of the prosecutor's constitutional duty to disclose has shifted from (a) an evidentiary test of materiality that can be

applied rather easily to any item of evidence (would this evidence have some tendency to undermine proof of guilt?) To (b) a result-affecting test that obliges a prosecutor to make a prediction as to whether a reasonable probability will exist that the outcome would have been different if disclosure had been made. To put it another way, Bagley makes the *extent* of the disclosure required by Brady dependent on the anticipated *remedy* for violation of the obligation to disclose: the prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different.

* * *

An assessment of whether an outcome would have been different if undisclosed evidence had been disclosed is best made after a trial is concluded. At that point the significance of the undisclosed is best made after a trial is concluded. At that point the significance of the undisclosed evidence can be considered in light of the strength of all the evidence indicating guilt. The prosecutor, however, cannot await the outcome and must therefore make a prediction before the trial as to how the nondisclosure of favorable evidence will be viewed after the trial. The Supreme Court explicitly recognized this difficulty in Kyles: "[T]he prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." ...Of course, as the Supreme Court has pointed out, a prosecutor 'anxious about tacking too close to the wind will disclose a favorable piece of evidence."

Prosecutors with a clear understanding of Brady / Giglio requirements and of their professional responsibilities will readily be able to observe the applicable standards. In rare cases of a constitutional violation, judicial relief can be expected.

United States v. Coppa, 267 F.3d at 139 - 144 (citations omitted, emphasis in original).

The Coppa Court also held that the district judge's ruling ran afoul of the Jencks Act:

[T]he District Court ordered the production of all impeachment evidence without regard for its materiality in the Agurs/Bagley sense. Such an order mandates disclosure of not only those witness statements that fall within the ambit of Brady/Giglio, and thus may be

9

>required to be produced in advance of trial despite the Jencks Act, but also those witness statements that, although they might indeed contain impeachment evidence, do not rise to the level of materiality prescribed by Agurs and Bagley for mandated production. As to the latter, the District Court's power to order pretrial disclosure is constrained by the Jencks Act and, therefore, we hold that the District Court exceeded its authority in issuing the February 2, 2001, scheduling order.

Id. at 145 - 146.

Another pre-trial case, United States v. Burger, 773 F.Supp. 1419, 1426 (D. Kansas, 1991) came to the same conclusion as the Coppa Court.  "If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense.  To hold otherwise would impose an insuperable burden on the government to determine what facially non-exculpatory evidence might possibly be favorable to the accused by inferential reasoning.  We are confident that the Supreme Court did not intend the Brady holding to sweep so broadly. ... [T]he government 'need only disclose information favorable to the defense that meets the appropriate standard of materiality. ... Nor does the 'mere possibility' that an item of undisclosed information might help the defense, or might affect the outcome of the trial, establish 'materiality' in the constitutional sense.") (Citations omitted.)  See also United States v. Dweck, 913 F.2d 365, 372 (7th Cir. 1990) (defendant's claim that he was entitled to "'everything in the world' that the government had regarding [witness's]" drug use "incorrect as a matter of law").

Bagley, Agurs and Whitley, and the cases interpreting them, make clear that "materiality" is an essential component to any Brady analysis, either pre-trial (as in this case) or post-trial. Therefore, the government respectfully requests the Court to clarify its December 23 Order to make clear that the government's obligations under Brady are no more and no less than that required by the Supreme Court.

**III. Conclusion**

For the foregoing reasons, the Government submits that Defendant Safavian's motion to compel is without legal or factual merit, and respectfully requests the Court deny the Defendant's Motion to Compel Discovery.

Respectfully submitted,

_____          _____
NATHANIEL B. EDMONDS                    PETER R. ZEIDENBERG
Trial Attorney, Fraud Section           Trial Attorney, Public Integrity Section
Criminal Division                       Criminal Division
United States Department of Justice     United States Department of Justice

CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of February, 2006, a copy of the foregoing was served on the following counsel by facsimile, electronic service and first class mail to:

> Barbara Van Gelder, Esq.
> Wiley Rein & Fielding
> 1776 K Street NW
> Washington, DC 20006
> Tel: 202-719-7032
> Facsimile: 202-719-7049

 

_____
NATHANIEL B. EDMONDS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice