UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA              :        Cr. No 05-370 (PLF)

              v.                       :

DAVID HOSSEIN SAFAVIAN           :

      Defendant                :

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO INSPECT GRAND JURY RECORD

The United States of America, by and through its undersigned attorneys, respectfully

submits its Opposition to Defendant's Motion to Inspect the Grand Jury Record, and asks the

Court, for the reasons set forth below, to deny the instant motion.

At the outset, it should be pointed out that, in its essence, Defendant's Motion to Inspect

Grand Jury Materials differs little from his Motion to Dismiss Indictment. In both Motions,

Defendant contrasts his belief of what the "true" evidence in the case is with what the Indictment

alleges[1] and then concludes that the grand jury must have been misled or misinformed in some

fashion. In so doing, Defendant ignores a long line of cases which teach that an indictment valid

---

[1]See Def. Motion, pp. 4 - 9 ("The Indictment Makes Allegations Inconsistent with the Evidence,") wherein Defendant points out what he perceives as "discrepancies" between the indictment and the snippets of notes, e-mails and 302s that he, for these purposes, contends are the "evidence" in the case. Defendant never states why he apparently assumes that the snippets of notes he refers to are the "truth" of what really transpired, and why they should be deemed more accurate than the reports of interviews which were written from the notes. Given that note-taking practices often vary widely, this assumption is hardly a safe one. It has been observed that "an agent's handwritten notes are rarely accurate transcriptions, and instead often consist in substantial part of sentence fragments, abbreviations, and disconnected words. They are likely to be confusing, ambiguous, or misleading in the absence of an explanation as to their content." United v. Vallee, 380 F.Supp.2d 11, 14 (D. Ma. 2005). Moreover, and more to the point, this entire portion of Defendant's Motion is nothing more than idle speculation as to what the grand jury heard and relied upon in returning the Indictment.

on its face must be tested at trial, and that a defendant is not entitled to a preliminary trial to determine if the grand jury indicted on competent evidence.  See United States v. Costello, 350 U.S. 359 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the chargers on the merits."); United States v. Calandra, 414 U.S. 338, 345 (1974) (indictment valid on its face is not subject to an evidentiary challenge); United States v. Trie, 23 F. Supp.2d 55, 62 (D.D.C. 1998) ("[t]he sufficiency of the evidence presented to the grand jury may not be challenged if the indictment is facially valid.") (citations omitted).  Defendant wants this Court to effectively second-guess the decision of the grand jury to indict him.  This the Court cannot do.

**Defendant Fails to Meet His Burden of Showing Particularized Need for These Materials**

Defendant seeks access to the grand jury transcripts in this case, citing Fed.R.Crim.P. 6(e)(3)(E)(ii).  Because Defendant cannot meet his burden of establishing a particularized need for these materials, his request should be denied.

"[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979).  Even after the grand jury's investigation has concluded, the party seeking disclosure of matters occurring before a grand jury must make a "strong showing of particularized need" to justify the disclosure. United States v. Sells Eng'g, Inc., 463 U.S. 418, 443 (1983).  A defendant seeking disclosure must show a "particularized need" for the materials sought sufficient to overcome the interests in continued confidentiality, United States v. Proctor & Gamble Company, 356 U.S. 677, 683 (1958), and this showing must establish that 1) the materials sought are needed to avoid

a possible miscarriage of justice; 2) the need for disclosure is greater than the need for secrecy; and 3) the request is structured to cover only those materials that are absolutely necessary to avoid an injustice. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979); see also id. at 221, (holding that the requesting party must demonstrate that without the requested materials "a defense would be greatly prejudiced or ... an injustice would be done") (quotation omitted). The burden is on the party seeking disclosure to show that "a particularized need" exists for the materials that outweighs the policy of secrecy. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). "[In considering the effects of disclosure on grand jury proceedings, the courts must consider *not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.* Persons called upon to testify *will consider the likelihood that their testimony may one day be disclosed to outside parties.* Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties....Thus *the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities."* Douglas Oil Co., 441 U.S. at 222 (footnote omitted, emphasis added). "The "[i]ndiscriminate lifting of the veil of secrecy from the grand jury will forever destroy the effectiveness of the grand jury as an investigative body by not allowing it to 'ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution.'" Lucas v. Turner, 725 F.2d 1095, 1109 (7th Cir. 1984) quoting United States v. Sells Engineering, Inc., 463 U.S. at 424.

It is with these legal standards in mind that the Court must consider Defendant's Motion for grand jury materials and whether he has met the "strong" burden of showing "particularized

need" for these materials. A review of the reasons Defendant gives for why he needs these materials, and the relevant case law, makes clear that Defendant does not come close to meeting his burden.

In his motion, Defendant stacks conjecture on top of speculation, sprinkles liberally with supposition and then argues that something amiss must have transpired in the grand jury. His speculation begins on page 2[2]: "Mr. Safavian *believes* that the primary, and *perhaps* the sole witness was FBI Agent Jeffrey Reising"; "the government *appears* to have inserted key terms of art ... that embellish ... These discrepancies *suggest* that misrepresentation of Mr. Safavian's statements occurred during the grand jury proceedings ..." (p. 3); "the government *seems* to have embellished its evidence of Mr. Safavian's statements to GSA General Counsel Ray Mckenna ..." (p. 5); "the edits to the marked up 302 strike at the heart of the indictment, *suggesting* the government *may* have misunderstood Ellison ..." (P. 6); "the government has used conclusory, pejorative terms in its summaries that *may* have inflated the grand jury's findings." (P. 7); "testimony presented to the grand jury that was based upon these reports, rather than the rough notes, *likely* was misrepresentative ..." (P. 7); "summary testimony *may have* enhanced the degree, if any, to which Mr. Safavian impeded the investigation..." (P 7-8); "[t]he effect of these multiple layers of recitation and interpretation are that material evidence was *likely* altered or omitted." (P. 8); "it is *substantially likely*" that these mischaracterizations of Mr. Safavian's statements misled the grand jury into believing probable cause existed to indict Mr. Safavian." (P. 9).

These examples are by no means complete. Defendant's argument in favor of disclosing

---

[2] All emphasis is supplied.

the legal instructions provided to the grand jury is pure speculation. Because Defendant contends

there is no legal basis to indict (much less convict) him, this "fact" "suggests the government

*may* have incorrectly instructed the jury as to the requirements of the charged offenses."

(Motion, p. 9) (emphasis supplied). Defendant continues in this vein: "More than a *reasonable*

*probability*[3] exists that the government" misinstructed the grand jury (p. 10); "Since there is no

evidence in the indictment to base an inference that Mr. Safavian knew his conduct was illegal,

there is no basis to conclude that the grand jury was properly instructed and properly found

probable cause that Mr. Safavian violated Sec. 1001." Motion, p. 8-9. In other words, Defendant

essentially argues that since there is no affirmative evidence that things were done properly, he

(and the Court) should assume the opposite – that there was misconduct before the grand jury –

and provide him the transcripts so that he can prove his supposition. In fact, the presumption

runs the opposite way: "[t]here is a 'presumption of regularity in grand jury proceedings.'"

Hamling v. United States, 418 U.S. 87, 139 n. 23; United States v. Trie, 23 F.Supp.2d 55, 61

(D.D.C. 1998) quoting United States v. Recognition Equip., Inc., 711 F.Supp. 1, 11 (D.D.C.

1989).

      In United States v. Rostenkowski, 59 F.3d 1291, 1313 (D.C. Cir. 1995), the D.C. Circuit

addressed a defendant's motion for an *in camera* inspection of grand jury materials.

Rostenkowski wanted to be able to determine whether or not materials protected by the Speech

and Debate clause were presented to the grand jury. Id. at 1313. In upholding the district's

denial of this motion, the Rostenkowski Court held that "regardless of the precise showing that a

defendant must make in order to compel *in camera* review of grand jury material, we are

---

[3] How Defendant arrived at this particular quantum of probability he does not say.

confident that Rostenkowski has not made it.... [T]here is no reason *on the face of the indictment* to suggest that any Speech or Debate material was presented to the grand jury. Moreover, Rostenkowski offers virtually no specific reason to believe that such material was presented to the grand jury. ... Although Rostenkowski obviously cannot be expected to know exactly what transpired before the grand jury or what was presented to that body, he must be able to provide, either from the *allegations of the indictment* or from some other source, at least reason to believe that protected information was used to procure his indictment." (Emphasis supplied.)[4] In the instant case, Defendant likewise fails to demonstrate any impropriety before the grand jury *from the face of the Indictment*, his unfounded suspicions notwithstanding. For instance, Defendant states that it "appears" that reports were "prejudicially altered or embellished." Def. Brief, p. 5. As "evidence" of this charge, Defendant cites selected, cryptic segments of interview notes of Mr. McKenna as somehow establishing as a "fact" that Defendant never claimed that Jack Abramoff "was not seeking to do business with GSA." In latching on to these snippets of notes, Defendant completely ignores an e-mail which Mr. McKenna wrote to Defendant:

> This is in response to your inquiry on whether you can accept a gift of free air transportation from a friend to attend a[] golf trip. You stated that a friend and former colleague, Jack Abramoff, invited you, along with several members of Congress and a few Congressional staff, to Scotland to play golf for four days.... You stated that your friend, who is a lawyer and lobbyist with Greenberg and Traurig, is chartering a private jet to take you and the other participants from BWI to Scotland and back. **You stated that neither Mr. Abramoff nor his firm does business with or is seeking to do business with GSA.** Based upon the information you have provided, you may accept the gift of free transportation

---

[4] The only two D.C. Circuit cases by Defendant, United States v. Allen, 390 F.2d 476 (D.C. Cir. 1968) and United States v. Bradley, 420 F.2d 181 (D.C. Cir. 1969), are of no help to Defendant's motion. Both of these cases stand for the decidedly non-controversial proposition that *after* a police officer testifies *at a defendant's trial*, the government should turn over his grand jury transcript to the defense for use in cross-examination.

from your friend.

See Govt. Ex. 1, (emphasis supplied).

While the government is not hereby representing one way or the other[5] that this e-mail

was provided to the grand jury, it is telling that Defendant completely ignores this significant

piece of evidence in his attempt to show that the fact the grand jury returned an indictment on

this count is somehow evidence that misconduct must have occurred in the grand jury. The fact

is that the grand jury is required to find probable cause; Defendant will have his day in court to

test the deficiencies he perceives in the proof of his guilt. These alleged deficiencies, however,

come nowhere close to the precise and specific **factual** allegations that need be shown before a

court can break the presumption of grand jury secrecy. Rather, a defendant seeking disclosure of

grand jury materials must make specific allegations that improprieties occurred, supported by

independent evidence, before "heavy presumption" of grand jury regularity can be overcome and

disclosure considered. United States v. Rastelli, 653 F. Supp. 1034, 1056-7 (E.D.N.Y. 1986).

See also United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990) ("review of grand jury

minutes is rarely permitted without specific factual allegations of government misconduct");

United States v. Azad, 809 F.2d 291, 295 (6th Cir. 1987) ("[l]acking any demonstration of

prosecutorial misconduct, [defendants] have failed to meet the requisite standards for disclosure

of otherwise secret grand jury proceedings. A presumption of regularity attaches to grand jury

proceedings, and appellants have failed to carry the 'difficult burden' of proving any

irregularity.") (citations omitted); Lucas v. Turner, 725 F.2d 1095, 1102 (7th Cir. 1984) (movant's

---

[5]Because of the rules of grand jury secrecy, the government is not permitted to represent what transpired before the grand jury.

"mere unsubstantiated allegation that a cover-up occurred and that the grand jury materials could

help prove this is nothing but pure conjecture and speculation" insufficient to demonstrate

particularized need); United States v. Edelson, 581 F.2d 1290, 1291 (7th Cir. 1978) (defendant's

request to inspect grand jury materials properly denied; "unsupported speculation [] is not

enough to constitute a particularized need.") (citations omitted); United States v. Rockwell, 173

F.3d 757, 759 10th Cir. 1999) ("Particularized need is most often established when there is a need

'to impeach a witness, refresh his recollection, [or] test his credibility'") (quotations omitted); In

re Grand Jury 95-1, 118 F.3d 1433, 1437 (10th Cir. 1997) (speculation that grand jury materials

will be helpful not enough to show "particularized need" for the materials); United States v.

Wilson, 565 F.Supp. 1416, 1436 (S.D.N.Y. 1983) ("Speculation and surmise as to what occurred

before the grand jury is not a substitute for fact" and is inadequate to demonstrate particularized

need necessary for overcoming presumption of grand jury secrecy); United States v. Abrams, 539

F.Supp. 378, 389 (S.D.N.Y.1982) ("suggestion that [] improper remarks may have prejudiced the

grand jury is, of course, pure speculation ... not sufficient to lift the veil of secrecy that surrounds

grand jury proceedings.") (citations omitted).

     In United States v. Nguyen, 314 F.Supp.2d 612, 616 (E.D. Va. 2004), the Court rejected a

defendant's request to inspect grand jury materials with an analysis that could apply with equal

force to the instant motion:

> By its plain terms, the [] exception is intended to allow disclosure of grand jury
> matters only where a defendant "shows that a ground may exist to dismiss the
> indictment because of a matter that occurred before the grand jury. Rule
> 6(e)(3)(E)(ii), Fed.R.Crim.P.  This provision *is not an invitation to engage in a*
> *fishing expedition to search for grand jury wrong doing and abuse when there are*
> *no grounds to believe than any wrongdoing or abuse has occurred.*  Because
> grand jury proceedings are entitled to a strong presumption of regularity, a
> defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii)

> bears the *heavy* burden of establishing that "particularized and factually based
> grounds exist to support the proposition that irregularities in the grand jury
> proceedings may create a basis for dismissal of the indictment." Nor can this
> burden be satisfied with "conclusory or speculative allegations of misconduct."
> Indeed, some courts have held that a defendant must support allegations of grand
> jury misconduct or abuse "with affidavits or other proffered evidence" and that
> "[s]uch affidavits or other evidence should be of a particularity sufficient to
> support a finding that 'inherently suspect' procedures were used before the grand
> jury." ... [Defendant's] pleadings make clear that what he seeks is simply an
> opportunity to engage in a fishing expedition to see if any evidence exists to
> support a potential motion to dismiss the indictment. ... Put differently, the desire
> to investigate whether any grand jury impropriety has occurred is insufficient to
> rebut the strong presumption of regularity in grand jury proceedings. A contrary
> rule would eviscerate the shield of secrecy protecting grand juries; the result
> would be that every defendant would seek the data sought here in the hope of
> discovering some ground to seek dismissal of the indictment.

Nguyen, 314 F. Supp.2d at 616-17 (footnote and citations omitted) (emphasis supplied). Rather

than affidavits from witnesses rebutting the Indictment's allegations, Defendant offers snippets

of rough notes which he claims are inconsistent with the Indictment. Were this to be deemed

sufficient, defendants would routinely be granted access to their grand jury materials based on no

more than a defendant's argument that other evidence, which he believes more compelling, *might*

*not* have been presented to the grand jury, and therefore he would like to inspect the transcripts

just to see if everything is on the up and up.

Defendant's request for transcripts of the colloquy between the prosecutors and the grand

jury pertaining to legal instructions is equally meritless. Defendant posits absolutely no evidence

that there were any infirmities in the instructions. Rather, Defendant speculates that there is a

"[m]ore than reasonable probability" that the government misinstructed the grand jury on the

law. Def. Brief, p. 10. This "more than reasonable probability" is based entirely on Defendant's

conjecture: "Since there is no evidence in the indictment to base an inference that Mr. Safavian

knew his conduct was illegal, there is no basis to conclude that the grand jury was properly

9

instructed ... ." Def. Brief, 12-13. In making this argument, Defendant is once again substituting his opinion of the strength of the evidence against him for the opinion of the grand jury and, finding the grand jury's opinion inconsistent with his own, concludes the only explanation must be prosecutorial misconduct. Instead of evidence, Defendant offers guesswork. As such, it comes nowhere close the "heavy burden" of showing particularized need for the grand jury transcripts.

Indeed, although the government submits that the grand jury was properly instructed on the law, courts generally have refused to review an indictment based on alleged errors in the legal instructions provided to the grand jury. See, United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions"); United States v. Buchanan, 787 F.2d 477, 487 (10th Cir. 1986), cert. denied, 494 U.S. 1088 (1990) ("Challenges going only to the instruction given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face"); United States v. Trie, 23 F.Supp.2d at 62 (although "conceivable that the grand jury was not instructed [properly about FECA violations] ... the mere suspicion that the grand jury may not have been properly instructed with respect to the legal definition of contribution is insufficient to establish that [defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials."); United States v. Hart, 513 F.Supp. 657, 658 (E.D. Pa. 1981) ("The general rule that an indictment will not be the subject of independent scrutiny and is given a presumption of regularity is just as applicable to a challenge of inadequate instructions as inadequate evidence. Thus, mere speculation of irregularity is not enough to entitle the defendant to disclosure of grand jury material").

In short, Defendant has utterly failed to meet his burden of establishing with particularity his need for the transcripts. This is nothing more nor less than an attempt to intrude on the grand jury function so that he can, with luck, find other grounds to file other motions. This, to be sure, is not enough to warrant the intrusion on grand jury secrecy.

## III. Conclusion

For the foregoing reasons, the Government submits that Defendant Safavian's Motion to Inspect Grand Jury materials should be denied.

Respectfully submitted,


NATHANIEL B. EDMONDS
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice

PETER R. ZEIDENBERG
Trial Attorney, Public Integrity Section
Criminal Division
United States Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2006, a copy of the foregoing was served on the following counsel by electronic service and first class mail to:

Barbara Van Gelder, Esq.
Wiley Rein & Fielding
1776 K Street NW
Washington, DC 20006
Tel: 202-719-7032
Facsimile: 202-719-7049

NATHANIEL B. EDMONDS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice