UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES of AMERICA,**

**v.**

**DAVID HOSSEIN SAFAVIAN,**

**Defendant**

**Criminal No. 05-370 (PLF)**

**DEFENDANT'S OPPOSITION TO**
**GOVERNMENT'S MOTION TO QUASH SUBPOENA**

Defendant David H. Safavian requests that the Court deny the Department of Justice's motion to quash the subpoena duces tecum issued on Senate Investigative Counsel Bryan D. Parker.

**ARGUMENT**

At the outset, the Department of Justice lacks standing to move to quash a subpoena served on the Senate, an issue that the government has completely ignored in its motion. The Department of Justice provides no basis for the Executive Branch to assert that the Judicial Branch has improperly authorized the issuance of a subpoena to the Legislative Branch under the circumstances of this case. The proper party to contest the subpoena is the Senate, which has no intention of moving to quash this subpoena. As demonstrated by the attached letter from the United States Senate, Office of Legal Counsel, the Senate has "no intention of moving to quash the subpoena." See Letter from Morgan J. Frankel (February 10, 2006) (Ex. 1). Indeed, counsel for the Senate has indicated that he will "expeditiously" seek the formal resolution from the Senate so that the records may be released if the Court denies the motion to quash by the

Government.  Id.  Lacking any substantive basis or standing for its motion, the Department of Justice's motion to quash should be summarily denied.[1]

This subpoena was expressly authorized by the Court pursuant to Fed. R. Crim. P. 17(c). The defendant requested the subpoena based upon the Court's opinion, which recognized that the Department of Justice was not required to turn over information from the Senate that was not within its possession, custody or control because it is a separate branch of government.[2]  The defendant also requested the subpoena for defendant's statements to Senate Investigator Bryan Parker precisely because, as the Court recognized, the "[s]tatements of the defendant are particularly important in this case" and "the precise statements . . . may be extremely relevant to the defense."  Dec. 23, 2005 Op. at 5-6.

Despite the fact that Counts Four and Five of the indictment are based upon defendant's statements to Senate investigators, and in defiance of the Court's recognition that defendant's statements are critical, the Department of Justice has now moved to quash the subpoena to obtain defendant's statements from a separate branch of government.  Our Circuit long ago has rejected "the notion of a trial as a combat game by surprise"[3] – which is precisely what the government is seeking to do here.  Indeed, the Department of Justice's motion to quash is inexplicable here, particularly where the Senate itself has indicated that it is ready to comply.

---

[1] Counsel for the Senate has indicated that the Senate Committee on Indian Affairs "has taken no position" on the Government's motion, and stated that the "Government moved to quash the subpoena on its own grounds."  Id.  Accordingly, it is plain that the Department of Justice's motion to quash is not made on behalf of the Senate, nor could it be.

[2] See United States v. Safavian, No. 05-0370, slip op. at 4-5 (D.D.C. Dec. 23, 2005) (hereinafter, "Dec. 23, 2005 Op.") ("'[T]he government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions . . . .  It does not, however, include a committee of the United States Senate . . . because the Congress is a separate branch of the government.").

[3] See Fryer v. United States, 207 F.2d 134, 136 (D.C. Cir. 1953) (district court erred by quashing Rule 17(c) subpoena and denying defendant a pre-trial opportunity to inspect written record of the defendant's statement, which was introduced in evidence), cert. denied, 346 U.S. 928 (1954).

Quashing this subpoena would be manifestly unjust to Mr. Safavian. The documents and notes kept by Mr. Parker are the only available contemporaneous records of the alleged statements that form the basis of Counts Four and Five of the Indictment.[4] Quashing this subpoena also would frustrate the intent of Fed. R. Crim. P. 16 and Brady v. Maryland, 373 U.S. 83 (1963), and encourage prosecutors not to ask third parties for defendant's statements that they have contemporaneously memorialized.

If these notes or documents were in the hands of the prosecutors, it is plain they would be discoverable under Rule 16(a)(1)(B)(i) as relevant written and recorded statements of the defendant. The government has resisted discovery on the basis that the Senate – a non-party to this case – retains possession of these materials. This tactic leaves a subpoena as the only way for Mr. Safavian to acquire these vital documents, but the government now moves to quash on the baseless grounds that the documents are somehow not material to the defense and the subpoena is somehow improper. Remarkably, the government perfunctorily asserts that the materials could only constitute impeachment, a prescient argument indeed if the government has never seen them or been advised of their contents.[5]

As shown below, even if the Department of Justice had standing to raise its claims, its motion should be denied because the records of Mr. Safavian's statements – which underlie the

[4] The indictment vaguely asserts that: "In or about March 2005, defendant SAFAVIAN spoke with an investigator from the Committee and represented in substance and in part that he had received approval for the Scotland golf trip in a GSA ethics opinion and that he had fully disclosed all relevant facts to the GSA ethics officer who prepared the opinion." Count Four, Indictment ¶ 36 (emphasis supplied); see also Count Five, Indictment ¶ 39 (incorporating ¶ 36).

[5] The FBI's 302 for Mr. Parker reveals that his interview included, among others, one of the Department of Justice attorneys here, FBI Agent Leanna L. Saler, and Regional Inspector General for Investigations, General Services Administration, Gregory Rowe. See January 27, 2006 Motion to Inspect Grand Jury Records, Exhibit 11. We submit that the government, in its reply, should represent to the Court what they know about the contents of these documents – e.g., whether they have seen them, whether they have ever asked for them, or whether they have had their contents described or identified in any way. If the government professes to know nothing about the contents of these documents, then the government certainly cannot profess to know anything that would question this Court's sound discretion in issuing the subpoena.

indictment – are material to the preparation of his defense at trial, and material to motions and the motions hearing. Nor has the government presented anything to suggest that the Court has improperly exercised its "sound discretion"[6] to authorize this subpoena under Fed. R. Crim. P. 17(c). Denying the defendant access to his statements in advance of trial and the motions hearing would seriously hinder his ability to prepare his defense, support his motions and respond to the allegations in the indictment. Furthermore, since the Senate itself has indicated that it has "no intention of moving to quash the subpoena," see Ex. 1, the Department of Justice's motion to quash defendant's attempt to obtain his statements should be summarily denied.

## I. THE DEPARTMENT OF JUSTICE HAS NO STANDING TO MOVE TO QUASH A SUBPOENA SERVED ON A THIRD PARTY UNDER THE FACTS OF THIS CASE.

A party – including the government – only has standing to move to quash a subpoena issued to another when the subpoena infringes upon the movant's privilege, proprietary interest, or other extraordinary interests. See United States v. Nachamie, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000) (ruling that the government lacked standing because the recipients of the subpoenas were not subject to any threat of violence, the documents had not been produced to the government, and the government did not claim any privilege over the documents); United States v. Daniels, 95 F. Supp. 2d 1160, 1164 (D. Kan. 2000) (ruling that the government lacked standing on its motion to quash a third party subpoena because the government did not show that the subpoena was unreasonable or oppressive or would result in the delay of trial); United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Cal. 1997) (ruling that the government lacked standing to challenge a third party subpoena because it "lacks the sine qua non of standing, an injury in fact" related to the difficulty of compliance, which is the only basis for quashing a subpoena); United States v. Reyes, 162 F.R.D. 468, 471 (S.D.N.Y. 1995) (only subpoenaed party or one

[6] United States v. Nixon, 418 U.S. 683, 702 (1974).

whose legitimate interests are affected by a subpoena may move to quash the subpoena after it issues); see also Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter. A motion to quash . . . should generally be made by the person with whom the documents or things are requested.") (internal citations omitted), recon. granted on other grounds, 232 F.R.D. 6 (2005); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed. 1995) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.").[7]

This Court has already recognized that the Senate is not a party to this case. See Dec. 23, 2005 Op., at 4-5. In the past, the government also has strenuously argued that it has no possession, custody or control over the Senate documents at issue. Now, the government has brought a motion to quash where it has not asserted any basis for standing to challenge the subpoena expressly authorized by the Court. For example, the government has not – and can not – assert that it has standing based upon witness intimidation or its privilege.[8] Because the government has failed to identify any basis for its standing to contest a subpoena to a third party – and another branch of government – the government's motion to quash should be denied. Indeed, this argument is even more compelling when that separate branch of government has explicitly stated that it "has no intention of moving to quash the subpoena." See Ex. 1.

[7] Washington and section 2459 of Wright & Miller interpret Fed. R. Civ. P. 45(b), which is "substantially the same as" Fed. R. Crim. P. 17(c). See Fed. R. Crim. P. 17 advisory comm. notes (1944 Adoption).

[8] Nor can the government assert here that it is acting on behalf of Bryan Parker, a possible witness. "[T]he government cannot undertake to act as counsel to its witnesses. . . . [T]he government's interests and that of witnesses are not identical and it would therefore be inappropriate for the government's attorney to act as counsel to its witnesses." Nachamie, 91 F. Supp. 2d at 560-61. Indeed, here, the Senate has expressed no interest in quashing the subpoena. See Exhibit 1.

## II. THE SUBPOENA REQUESTS NOTES AND DOCUMENTS THAT ARE MATERIAL TO PREPARATION OF MR. SAFAVIAN'S DEFENSE AND PRE-TRIAL MOTIONS.

Even if the government could challenge this subpoena, its motion to quash fails to provide any justification for doing so. Federal Rule of Criminal Procedure 17(c)(2) allows only two grounds for quashing a subpoena: "compliance would be unreasonable or oppressive." See also United States v. Nixon, 418 U.S. 683, 698 (1974) ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."). As detailed below, there is no basis for quashing this subpoena under Rule 17(c), or the case law.

### A. The Parker Subpoena Meets the Requirements of *Nixon*.

In Nixon, the Supreme Court stated that a subpoena applicant must show that: (1) the documents are "evidentiary and relevant;" (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence;" (3) the applicant "cannot properly prepare for trial without such production and inspection in advance of trial" and the trial "may tend unreasonably" to be delayed without inspection; and (4) the application is made "in good faith." Id. at 699-700.[9]

#### 1. The Requested Documents Are Evidentiary and Relevant.

"Rule 17(c) is designed as an aid for obtaining relevant evidentiary material from a third party that the moving party may use at trial." United States v. Holihan, 248 F. Supp. 2d 179, 183 (W.D.N.Y. 2003). Mr. Safavian is charged with two counts of obstruction of justice and three counts of making false statements. This subpoena seeks notes and documents that record

[9] As detailed below, the government's sole argument under Nixon is that the defendant cannot show that Mr. Parker's notes are "admissible," a term that was used in summary fashion in Nixon to reflect the "evidentiary" requirement. See Nixon, 418 U.S. at 700 (summarizing requirements as "relevancy," "admissibility," and "specificity"). Apparently conceding "relevancy" and "specificity," which it must, the government's reliance upon a crabbed interpretation of "admissibility" ignores the "evidentiary" underpinnings of the Nixon language. Moreover, while defendant submits that the subpoena easily passes the Nixon test, defendant also submits that the Nixon test is inapplicable here in any event. See infra, Part II.A (discussing Nachamie, 91 F. Supp. 2d at 562-63).

statements made by Mr. Safavian during three telephone conversations with Senate investigator Mr. Parker during the course of the investigation by the Senate Committee on Indian Affairs of the United States Senate Committee. See DOJ-DS-001612 (Ex. 11 to Def. Mot. to Inspect Grand Jury R.). Mr. Safavian's statements form the sum and substance of the indictment, and Counts Four and Five are based, in part, on the statements Mr. Safavian made to Mr. Parker during these telephone calls.

The government does not challenge the subpoenaed materials as irrelevant, nor could it, as this Court has already ruled that Mr. Safavian's statements "may be extremely relevant to his defense." Dec. 23, 2005 Op. at 6. Instead, the government argues that the subpoenaed materials are not evidentiary in nature, because the government can only fathom using the requested documents for impeachment purposes.[10] The government provides no basis for its unilateral assertion that there is no evidentiary basis for documents that it claims it has no possession, custody, or control over – and reportedly has not seen.

This Court has already cautioned the government about "put[ting] itself in the shoes of the defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." Dec. 23, 2005 Op. at 6. This motion to quash is another example of that problem. Here, the government assumes that Mr. Parker's notes could only be used as

---

[10] The government cites a string of cases in which the circumstances were so different that the holdings are inapposite. See, e.g., United States v. Merlino, 349 F.3d 144 (3d Cir. 2003) (statements were not of defendants, but rather were recorded jail telephone calls of cooperating witnesses; in any event, court declined to reach the Rule 17(c) issue because defendants failed to timely raise it in trial court), cert. denied, 541 U.S. 965 (2004); United States v. Hughes, 895 F.2d 1135, 1145-46 & n.17 (6th Cir. 1990) ("The subpoena called for thousands of invoices from fifty-three different pharmacies." The defendant also admitted that the subpoena was for the purpose of impeaching a government witness.); United States v. Fields, 663 F.2d 880 (9th Cir. 1981) (in a four paragraph opinion, the court simply stated that defendant failed to identify any use for the material other than impeachment); United States v. Cuthbertson, 630 F.2d 139, 145 (3d Cir. 1980) (subpoena issued to CBS for videotapes and "out-takes" related to a 60 Minutes episode), cert. denied, 420 U.S. 920 (1975); United States v. Polesti, 489 F.2d 822, 824 (7th Cir. 1973) (subpoenaed report was in possession of government). In other cases cited by the government, the court held that significant portions of the subpoena met the requirements of Rule 17(c). See United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988); United States v. Holihan, 248 F. Supp.2d 179, 183 (W.D.N.Y. 2003); United States v. Edwards, 191 F. Supp. 2d 88, 89 (D.D.C. 2002).

impeachment evidence if Mr. Parker testifies. Yet again, the government does not provide a basis for that conjecture. In any event, the government's argument completely ignores the basis for the request – to obtain Mr. Safavian's statements – the very statements that form the basis of the indictment.

Laid bare, the government apparently believes that it may admit defendant's statements at trial (as admissions by a party-opponent, see Fed. R. Evid. 801(d)(2)),[11] and yet defendant is not entitled to discover those statements from the Senate because the statements are somehow inadmissible. This Court should reject such a crabbed reading of Nixon, which fails to support such an argument. See Nixon, 418 U.S. at 702 (refusing to quash subpoena for tapes that recorded defendant's statements, because the tapes, which could be used to impeach, also had "other valid potential evidentiary uses" and were admissible under Fed. R. Evid. 801(d)(2)). Indeed, the government's argument is further jettisoned where, as here, the statements themselves are the alleged crime.

Moreover, there are further problems with the government's attempt to hang its hat on whether Mr. Parker's notes themselves are admissible. As an initial matter, the government focuses upon the alleged inadmissibility of the tangible notes themselves, thus skirting the issue of their contents which the government does not – or cannot – elucidate for the Court. Additionally, mere admissibility cannot be the talisman of a motion to quash, especially in a case in which such statements are "particularly important," Dec. 23, 2005 Op. at 5, and "the precise statements . . . may be extremely relevant to the defense." Id. at 6; see United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988) (ruling that "observation of this general rule [prohibiting pre-trial subpoenas of impeachment evidence] . . . is left to the sound

[11] If the government contends that statements of Mr. Safavian as heard by investigators were not admissible, then the government would have no evidence for its case.

discretion of the district court" and upholding pre-trial production of a substantial interview of a key witness); Holihan, 248 F. Supp. 2d at 183 ("Materials subpoenaed pursuant to Rule 17(c) need not actually be used in evidence provided they are subpoenaed in good faith.").[12]

Furthermore, the government's reading leaves no room for the well-established principle that "[e]xculpatory evidence in the possession of third parties is subject to a subpoena duces tecum." United States v. King, 194 F.R.D. 569, 573 (E.D. Va. 2000) (citing, inter alia, Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972)).[13] Here, in addition to the other reasons why the defendant's statements should be discoverable by the defendant, there are serious questions raised already by the discrepancies between investigators' notes, the FD-302s written by the FBI, and the indictment. See Def.'s Mot. to Inspect Grand Jury R. and Mot. to Dismiss.

**2. The Documents Are Not Otherwise Available in Advance of Trial and the Motions Hearing.**

The only available contemporaneous records of these telephone conversations are the documents and notes kept by Mr. Parker. Mr. Safavian first sought these documents through discovery. Oct. 28, 2005 Def. Mot. to Compel at 3-5. If they were in the hands of the prosecutors, the documents clearly would be discoverable under Rule 16(a)(1)(B)(i) as relevant written and recorded statements of the defendant. See, e.g., Dec. 23, 2005 Op. at 5 ("Thus, the prosecution must disclose any statement of Mr. Safavian in the possession, custody or control of any Executive Branch agency or department, regardless of whether the statement originated from

[12] This Court has even ruled that statements may be subpoenaed even where they are to be used for impeachment purposes. See United States v. Carter, 15 F.R.D. 367, 371 (D.D.C. 1954).

[13] While the government cites United States v. Beckford, 964 F. Supp. 1010, 1031 (E.D. Va. 1997), for the proposition that Rule 17(c) may not be used for Brady or Giglio material, Gov't Mot. to Quash Subpoena at 4, the case is easily distinguishable. The court recognized in Beckford that, unlike here, the government argued that "all files of the law enforcement agencies comprising the Task Force are in the hands, or under the control, of the Government." 964 F. Supp. at 1013.

a local law enforcement agency, a non-law enforcement agency of the federal government, or a coordinate branch of the government such as the United States House of Representatives or the United States Senate."). The government, however, responded that they were not in possession of these documents, and this Court concluded that the documents were not subject to Rule 16 because "Congress is a separate branch of the government and was not intended by the Rules writers to be included within Rule 16." Id. at 5. Therefore, the only way for Mr. Safavian to acquire these vital documents is from Mr. Parker through a subpoena.

Additionally, during a conference call with the parties on the subpoena, the Court recognized that there may well be litigation over the subpoena. That, of course, has now occurred. Accordingly, the Department of Justice cannot be heard to complain about the issuance of this subpoena before trial, particularly in light of the motion it has filed. Indeed, because the Senate has not, and will not, file a motion to quash, it is only the Department of Justice that is causing the delay here.

**3. Mr. Safavian Needs These Documents to Prepare for Trial and the Motions Hearing.**

In this case, the statements of the defendant are particularly important because they form the basis for the alleged crime. In order to properly prepare for the trial, it is essential that Mr. Safavian be able to inspect documents that record these statements. The indictment specifically refers to conversations between Mr. Safavian and an investigator from the Committee (Mr. Parker) as a basis for the obstruction charge in Count Four. See Indictment ¶ 36. Furthermore, these conversations are also incorporated by reference into the False Statement charge in Count Five. See Indictment ¶ 39 (incorporating ¶ 36, among others).

Because the indictment relies upon conversations between Mr. Safavian and Mr. Parker, notes and documents Mr. Parker has containing statements made by Mr. Safavian during these conversations are highly material to Mr. Safavian's defense. Indeed, obtaining these statements

is critically important to defending the case in light of the scant allegations about these statements in the indictment. See supra, note 3; see also Fryer v. United States, 207 F.2d 134, 137 (D.C. Cir. 1953); Nachamie, 91 F. Supp. 2d at 558.

More immediately, the notes and records of Mr. Parker are material to the preparation of Mr. Safavian's pre-trial motions, which are set for hearing on February 28, 2006. Mr. Safavian has already filed two motions highlighting discrepancies between investigators' notes, the FD-302s written by the FBI, and the indictment. See Def.'s Mot. to Inspect Grand Jury R. and Mot. to Dismiss. As with other records of Mr. Safavian's alleged statements, the notes of Mr. Parker are essential to evaluating, among other things, the context of the statements, whether the statements or questions were infected by fundamental ambiguity, whether Mr. Safavian's statements were materially false, and a host of other arguments that we have either raised, see, e.g., Def. Memorandum of Law in Support of Motion to Dismiss at 21-30, 45-59, or cannot yet raise because defendant has been deprived of access to the documents. Given the significance of contemporaneous notes of Mr. Safavian's statements to the pending motions, Mr. Safavian needs pre-trial access to the notes and records of Mr. Parker to supplement or renew his motions and prepare for the motions hearing.[14]

**4. Mr. Safavian Subpoenaed Specific Evidence in Good Faith.**

Mr. Safavian has specifically identified three conversations during which he made alleged statements that Mr. Parker would have recorded. Mr. Safavian served the subpoena in good faith so that he may obtain the information from the investigator who questioned him. These statements are alleged in Counts Four and Five of the indictment, and access to the statements should not turn upon whether the government has asked Mr. Parker for these

---

[14] Even if no discrepancies existed, Mr. Safavian is entitled to obtain Mr. Parker's contemporaneous notes of Mr. Safavian's alleged statements from March 2005, rather than rely upon an FBI interview that was conducted nearly seven months later (on September 30, 2005). See Ex. 10 to Def.'s Mot. To Inspect Grand Jury R..

documents and obtained them. Indeed, while the government has included references to these statements in the indictment, the government asserts that it does not have the underlying documents or notes memorializing those statements. Whether the government's failure to obtain these documents results from trial strategy or otherwise, Mr. Safavian should not be unfairly surprised by his alleged statements – particularly when the Senate has not filed a motion to quash and where the indictment simply makes vague allegations about what Mr. Safavian said "in substance and in part" to the investigator. Indictment ¶ 36. Accordingly, the government's motion should be denied because the subpoena complies with the strictures of Rule 17(c), and the strictures of Nixon.

**B. The Subpoena Is Reasonable and Not Oppressive.**

Even though the subpoena here meets the standards of Nixon, at least one Federal court has questioned whether Rule 17(c) requires a defendant seeking documents from a third party to adhere to the standard outlined in Nixon. See Nachamie, 91 F. Supp. 2d at 562-63. In Nixon, the Supreme Court considered what showing was required for a subpoena from the prosecutor, who already had the luxury of grand jury subpoenas, to the President of the United States, a recipient that merited "particularly meticulous" application of Rule 17(c). Nixon, 418 U.S. at 702. The prosecutor in Nixon argued that a higher standard should only apply when one party to the case serves a subpoena on the other, not when a party to the case serves a subpoena on a third party. See Nixon, 418 U.S. at 699 n.12. Satisfied that the subpoena in that case met the higher standard, the Supreme Court reserved the question of whether a lower standard should exist for third party subpoenas. Id.

In Nachamie, the court recognized the distinction reserved by Nixon, and considered the application of a Rule 17(c) subpoena from a defendant to a third party:

> Unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena. Because the Rule states only that a court

> may quash a subpoena "if compliance would be unreasonable or oppressive," the judicial gloss that the material sought must be evidentiary – defined as relevant, admissible and specific – may be inappropriate in the context of a defense subpoena of documents from third parties.

Nachamie accordingly recognized a less restrictive standard, concluding that Rule 17(c) only required a defendant's third party subpoena duces tecum to be: "(1) reasonable, construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond." Nachamie, 91 F. Supp. 2d at 563.

Under this alternative standard, the government's motion to quash easily falls away. As explained in earlier sections, the written records of Mr. Safavian's statements are material to preparation of his defense at trial and in the motions hearing. Moreover, the government does not claim the request is unduly oppressive or lacks specificity, nor could it, given that the subpoena requests notes or documents related to three telephone conversations – a specific and quite limited request. Accordingly, regardless of the standard used, the government's motions should be denied.

## III. MR. SAFAVIAN COMPLIED WITH RULE 17 AND THE ORDERS OF THIS COURT IN ISSUING AND SERVING THE SUBPOENA.

Under Rule 17(c) of the Federal Rules of Criminal Procedure, "the trial court in its discretion [may] require[] pre-trial production" of subpoenaed documents and other materials. Monroe v. United States, 234 F.2d 49, 55 (D.C. Cir.) (citing Bowman Dairy Co. v. United States, 341 U.S. 214 (1951)), cert. denied, 352 U.S. 873 (1956). A court should exercise its discretion and authorize or enforce a subpoena when the subpoena is not overly broad and seeks documents well within the bounds of the Federal Rules of Criminal Procedure or Brady. United States v. Edwards, 191 F. Supp. 2d 88, 89 (D.D.C. 2002) (Friedman, J.) (defining the boundaries of subpoenas duces tecum under Rule 17(c)).

As a number of courts have held, this discretion includes the ability to authorize subpoenas ex parte and under seal. See, e.g., Tomison, 969 F. Supp. at 594-95; Daniels, 95 F. Supp. 2d at 1163 (ruling that Rule 17(c) allows for and public policy favors ex parte applications for pre-trial subpoenas duces tecum on third parties); Reyes, 162 F.R.D. at 470 (ruling that "strong policy reasons" favor an ex parte procedure under Rule 17(c)); United States v. Jenkins, 895 F. Supp. 1389, 1397 (D. Haw. 1995) ("The secrecy of the pre-issuance process is not a burden on free access to the courts, and it does not contravene the scheme of Rule 17(c). Indeed, it supports the rule's provision for the issuance of subpoenas and pretrial production of documents at the court's discretion."). Accordingly, while the government criticizes the initial request for the subpoena ex parte, the government can provide no legal support for questioning the original request. Nor has the government explained how this gratuitous criticism has any relevance to the enforceability of this subpoena.[15]

The government also complains that "[w]ithout knowledge of [ex parte and under seal] subpoenas, the government cannot review them to determine if they meet the Nixon criteria or should be quashed." Gov't Mot. to Quash Subpoena at 6. As an initial matter, the defendant has not, and will not, issue document subpoenas without express authority of the Court. Furthermore, the government's demand that it be notified of any potential ex parte matter not only is unsupported by any case law, but it seeks to usurp the Court's judicial role and competence in determining the propriety of ex parte matters. Federal courts have easily rejected

[15] The government also cites United States v. Jenkins, supra, and United States v. Santiago-Lugo as examples of the misuses of Rule 17(c). The facts are not remotely similar to this case. Jenkins involved a subpoena for a rape victim's medical records. United States v. Jenkins, 895 F. Supp. 1389, 1391 (D. Haw. 1995). In Santiago-Lugo, the defendant obtained a blank subpoena from the clerk of the court, failed to request the recipient to appear before the court, gave no information about the time, place, or date of appearance, failed to disclose the attorney's contact information, and stated that the person to whom the production should be made was "court-appointed," when in fact he was a private investigator hired by the defense. United States v. Santiago-Lugo, 904 F. Supp. 43, 44-45 (D.P.R. 1995). In our case, Mr. Safavian submitted for the Court's review and authorization a subpoena, which also specifically identified the source of the request.

such attempts by the government to interfere with that solemn role. As the court stated in Daniels, 95 F. Supp. 2d at 1163, "the court is responsible for and fully capable of determining whether the subpoena is being used as a discovery device without the assistance of opposing counsel." Similarly, the court in Tomison stated that, "[a]s the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." Tomison, 969 F. Supp. at 594 (citing Bowman Dairy Corp. v. United States, 341 U.S. 214, 221 (1951)).[16]

In this case, the Court, consistent with its discretion, approved the subpoena but had reservations about issuing it under seal and ex parte. In a conference call with both parties, the Court notified the government of the subpoena. In the call, the Court also recognized that the ex parte nature of the subpoena would likely have been futile, since the Senate understandably would confer with the government upon receipt. The Court also expressly advised the parties that he was authorizing the subpoena. Under these circumstances, the government's apparent surprise that the defendant then provided the subpoena to the Senate is inexplicable.[17]

The government also notes that Senate counsel asked defense counsel whether he could produce the documents directly to defendant's counsel rather than to the Court. As a conciliatory gesture for the non-party, and to avoid the potential public filing of documents by a non-party that may be inconsistent with the intent of the protective order, defense counsel agreed. In any event, none of this came to pass. Furthermore, defense counsel has advised Senate counsel that the materials should be produced to the Court. Indeed, counsel for the Senate has indicated that

---

16 Additionally, while the government demands access to any documents that it has apparently has not sought to obtain, it is a question for the Court whether the government should have access to documents obtained under Rule 17(c). See, e.g., Reyes, 162 F.R.D. at 471.

17 The government's motion criticizes defense counsel for having no further communications with it regarding the subpoena. Aware that the subpoena had been authorized, nothing prevented the government from calling Mr. Safavian's counsel, but the government chose not to do so.

"we will expeditiously seek authority from the Senate to produce to the Court the documents in our files pending resolution of the matter by the Court." See Exhibit 1. Because the Department of Justice provides no valid basis for prohibiting a separate branch of government from complying with this subpoena for statements that are critical to Mr. Safavian's defense, the motion to quash should be denied.

## CONCLUSION

If Mr. Safavian cannot obtain the contemporaneous notes and documents reflecting his alleged statements to Mr. Parker, the defense will be significantly hindered in its ability to argue motions and prepare for the trial. Accordingly, Mr. Safavian requests that the Court deny the government's motion to quash the subpoena duces tecum issued on Senate Investigative Counsel Bryan D. Parker.

          Respectfully submitted,

          By:  /s/ Barbara Van Gelder
              Barbara Van Gelder (D.C. Bar # 265603)
              Roderick L. Thomas (D.C. Bar # 433433)
              Albert C. Lambert (D.C. Bar # 489562)
              WILEY REIN & FIELDING LLP
              1776 K Street NW
              Washington, DC  20006
              TEL: 202.719.7032

Dated: February 10, 2006          *Attorneys for David H. Safavian*