UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA, <br><br> v. <br><br> DAVID HOSSEIN SAFAVIAN, <br><br> Defendant | Criminal No. 05-370 (PLF) |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO INSPECT THE GRAND JURY RECORD**

Mr. Safavian's motion to inspect should be granted because he has demonstrated a particularized need for access to the grand jury materials that far outweighs the diminished need for secrecy at this stage of the case. The government relies on the secret nature of grand jury proceedings as a shield to prevent *any* scrutiny of the grand jury process whatsoever. Under the standard proposed by the government, no defendant could ever obtain access to these records because of the catch-22 they attempt to impose. The government essentially submits that in order to know what transpired one must have access, but in order to have access one must know what transpired. Accordingly, the government mischaracterizes the standard for production of grand jury materials as essentially an "absolute certainty" standard, which no court has ever required. All that is required for access to these materials is a "particularized need" that outweighs the policy reasons for grand jury secrecy. Douglas Oil Co. of Calif. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979); In re: Grand Jury Subpoena, Judith Miller, No. 04-3138, 2006 WL 250224, *2 (D.C. Cir. Feb. 3, 2006) (releasing grand jury material in opinion, while recognizing that "[g]rand jury secrecy is not unyielding").

Significantly, the government never addresses the five factors for grand jury secrecy articulated by the Supreme Court, virtually all of which favor disclosure at this stage of the case and the rest are significantly diminished.  See Def. Motion to Inspect at 11-12.  Consequently, the government ignores half of the balancing test established by the Supreme Court in Douglas Oil and fails to address the critical fact that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."  Douglas Oil, 441 U.S. at 223.

I.     **MR. SAFAVIAN HAS DEMONSTRATED A PARTICULARIZED NEED**

    A.     **The Government Cannot Use Secrecy As a Shield to Prevent Scrutiny of the Grand Jury Process**

In Defendant Safavian's Motion to Inspect, over nine pages are devoted to laying out the complete legal and factual bases establishing a particularized need for Mr. Safavian to have access to the grand jury record.  See Def. Motion to Inspect at 2-11.  The government's opposition attempts to dismiss these extensive and troubling discrepancies involving critical statements at issue in this case by devoting two paragraphs to the undisputed and obvious fact that neither Mr. Safavian nor his counsel actually know what specific testimony or instructions the grand jury heard.  See Government's Opposition at 4-5 ("Gov't Opp.").  However, even the primary authority that the government relies on recognizes that the demonstration of a particularized need does not require the defendant to *know* what actually occurred.  See United States v. Rostenkowski, 59 F.3d 1291, 1313 (D.C. Cir. 1995) ("Although Rostenkowski obviously cannot be expected to know exactly what transpired before the grand jury or what was presented to that body, he must be able to provide, either from the allegations of the indictment or from some other source, at least *some reason to believe* that protected information was used to procure his indictment.") (emphasis added).

In a line of cases going back more than half a century, the Supreme Court has firmly established that the interests supporting grand jury secrecy are not absolute. See Butterworth v. Smith, 494 U.S. 624, 630 (1990) ("[T]he invocation of grand jury [secrecy] is not some talisman that dissolves all constitutional protections."); Douglas Oil, 441 U.S. at 223 ("[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940) ("[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."). Moreover, the text of Fed. R. Crim. P. 6(e)(3)(E) itself demonstrates that the government's contention is wholly without merit: "The court may authorize disclosure . . . of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground *may exist* to dismiss the indictment because of a matter that occurred before the grand jury." (emphasis added).

### B.     The Evidence Is Sufficient to Establish a Particularized Need

The Supreme Court has made it absolutely clear that a party is entitled to access to grand jury materials where, as Mr. Safavian has done in this case, they can demonstrate a particularized need that outweighs the policy reasons for grand jury secrecy. Douglas Oil, 441 U.S. at 221-22. Mr. Safavian has demonstrated a particularized need for disclosure of the grand jury materials in this case because of numerous material discrepancies between the indictment, the interview notes, and the interview reports, which suggest that the grand jury relied on erroneous and misleading evidence, and improper instructions. See Def. Motion to Inspect at 3-11.

The Motion to Inspect also specifically argued that the testimony heard by the grand jury was likely summary testimony by FBI Agent Jeffrey Reising, and courts have recognized that such testimony is "inherently suspect" and that a motion for disclosure based on a claim that summaries were used states a "particularized need" justifying disclosure. See Def. Motion to

3

Inspect at 2-3 (<u>citing</u> <u>United States v. Mahoney</u>, 495 F. Supp. 1270, 1276 (D. Pa. 1980)). The government *does not deny this charge*—its only response to this important issue is to dismiss it as mere speculation, despite the fact that it could easily advise this Court of whether summary testimony was used and what type of information was presented without identifying specific individuals or otherwise violating Fed. R. Crim. P. 6(e).

Since the government has declined to address this assertion, the government accordingly is depriving this Court of the ability to determine whether the important principles articulated in <u>Mahoney</u> are applicable—that the form of testimony heard by the grand jury is inherently suspect. Furthermore, the use of summary testimony creates an even greater risk that the indictment was not properly issued here where there are numerous discrepancies between the interview notes *made contemporaneously with the alleged underlying statements*, and interview reports made days or weeks after the fact. <u>See</u> Def. Motion to Inspect at 5-9, Attachment A. This increased risk is due to the fact that if the government misunderstood or mischaracterized the statements of witnesses in its reports, then it can be presumed that these same errors would carry through to the testimony heard by the grand jury.[1]

---

[1] The government also cites <u>Costello v. United States</u>, 350 U.S. 359 (1956), and <u>United States v. Calandra</u>, 414 U.S. 338 (1974), for the proposition that this Court lacks authority to consider the evidence presented to the grand jury. These cases simply held that indictments are not necessarily invalid because they are based on hearsay, or otherwise inadmissible evidence. The Constitution, of course, requires the grand jury to have considered and found all elements of an offense. <u>See</u> <u>Hooker v. United States</u>, 841 F.2d 1225, 1230 (4th Cir. 1988); <u>Russell v. United States</u>, 369 U.S. 749, 760 (1962). As the Honorable Learned Hand explained in the lower court decision affirmed by the Supreme Court in <u>Costello</u>, "if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed; because then the grand jury would have in substance abdicated." <u>United States v. Costello</u>, 221 F.2d 668, 677 (2nd Cir. 1955), <u>aff'd</u>, <u>Costello v. United States</u>, 350 U.S. 359 (1956); <u>see also</u> <u>Costello</u>, 350 U.S. at 365 (Burton, J., concurring). Accordingly, not only is the government incorrect in asserting that the Court has no role here, but it is incorrect in asserting that this issue is simply a matter of the strength of the evidence before the grand jury. Rather, the government has failed to provide any basis for denying access to a grand jury record where the defendant has made a strong, particularized showing that the record may rest entirely on mischaracterizations and errors that go to the heart of the basis for the indictment.

The government questions the inherent reliability of interview notes, see Gov't Opp. at 1 n.1, but this Circuit has long recognized that contemporaneous interview notes "safeguard against . . . errors and distortions, and thereby [] foster the search for truth in a criminal trial" and that even "[i]n the best of good faith, the statement as recorded in the 302 report may, to some degree at least, reflect the input of the agent. In such a situation, the information contained in the rough notes taken from the witness himself might be more credible." United States v. Harrison, 524 F.2d 421, 430 (D.C. Cir. 1975); see also United States v. Poindexter, 727 F. Supp. 1470, 1483 (D.D.C. 1989). Furthermore, the government's concerns about the reliability of the interview notes are even less credible given the black-and-white nature of the discrepancies at issue.

For example, there is no way to misconstrue the notes for the interviews of Messrs. Parker and Carrillo when they say "Impact of Safavian Letter on investigation? no impact. No deter from wanting to interview," see Parker Interview Notes, Def. Motion to Inspect, Ex. 10 (DOJ-DS007034), or "letter not impact fraud element." See Carrillo Interview Notes, Def. Motion to Inspect, Ex. 8 (DOJ-DS007025). Similarly, the interview report for Mr. McKenna, transcribed on November 7, 2005—a full *forty-seven days* after his interview and after key filings by Mr. Safavian—inserts the crucial term "seeking to do business" whereas the corresponding interview notes only attribute Mr. McKenna as saying "DS – say J.A. has no business with GSA → not prohibited source." See McKenna Interview Notes, Def. Motion to Inspect, Ex. 2 (DOJ-DS006992); McKenna 302, Def. Motion to Inspect, Ex. 4 (DOJ-DS006969). Furthermore, Ms. Ellison clearly demonstrated her belief that the government had misrepresented what she had said when she edited the 302 for her interview: "Safavian's statement that 'the host is a lawyer and lobbyist, but one that has no business before GSA (he

5

does all his work on Capitol Hill)' was ~~not true~~." Ellison Marked Up 302, Def. Motion to Inspect, Ex. 5 (DOJ-DS007021).

The government is incorrect when it argues that the "particularized need" must arise from the face of the indictment, a proposition that is disproven by the very case it cites in support. See Rostenkowski, 59 F.3d at 1313 ("[Rostenkowski] must be able to provide either from the allegations of the indictment *or from some other source*, at least some reason to believe that [irregularities occurred].") (emphasis supplied). Nevertheless, Mr. Safavian has presented specific evidence that appears on the face of the indictment that demonstrates a substantial likelihood of irregularity.

The Motion to Inspect illustrates how Counts One and Three attribute statements to Mr. Safavian that are not reflected in the underlying interview reports. See Def. Motion to Inspect at 4. In addition, the allegation in Count Two that Mr. Safavian falsely stated that Abramoff was not "seeking to do business" when the government has not produced a record of such a statement suggests improper instructions relating to the "knowing or willful" elements of section 1001. See Indictment ¶ 29; Def. Motion to Inspect at 9-10. Moreover, Counts One and Four fail to allege which provision of 18 U.S.C. § 2 Mr. Safavian is alleged to have violated, and the entire indictment fails to allege any factual basis for an aiding and abetting offense. See Indictment ¶¶ 22-27, 32-38; Def. Motion to Inspect at 9; see also Def. Motion to Dismiss at 60-62. It is difficult to fathom how a grand jury could have found probable cause for such glaring deficiencies in the indictment if they had been properly instructed.[2]

---

[2] The government cites a host of cases that are inapposite here. See also infra note 4 (discussing the irrelevance of the government's cases cited to support its argument that Mr. Safavian has not demonstrated a "particularized need"). The government relies on four cases for the bald assertion that the court may not look at jury instruction issues. The government cites United States v. Zangger, 848 F.2d 923 (8th Cir. 1988), apparently for the proposition that a prosecutor need not instruct a grand jury. See Gov't Opp. 10. While the court noted that the government is not required to instruct the grand jury, the court had no occasion to decide the issue of mis-instruction or the issue

Consequently, the government is mischaracterizing the nature of Mr. Safavian's claim when it suggests that the Motion to Inspect does not contain "specific factual allegations." Mr. Safavian's claim could not be more specific or factual given the veil of secrecy currently protecting the grand jury proceedings.

The government further argues that the evidence does not establish a particularized need sufficient to warrant disclosure by citing a string of cases that are completely irrelevant to the issue at hand. Mr. Safavian has presented the Court with numerous material discrepancies that demonstrate a pattern of misquoting, mischaracterizing, and embellishing statements allegedly made by Mr. Safavian and other key witnesses that strike at the very heart of the government's case against him. As noted above, these discrepancies pervade not only the interview reports, but are also tied to the face of the indictment itself.

The government has not sought to explain the issues raised by the defendant, nor has it seriously contested the specificity of defendant's assertions. Thus, this case stands in stark contrast to the cases cited by the government, where the parties moving for disclosure were on nothing more than fishing expeditions with absolutely *nothing* to support any claim of irregularity other than the mere hope that they might find some impropriety once they obtained

---

before this court—access to the instructions. Furthermore, the court's comments were certainly dicta since the court in Zangger actually dismissed the count at issue because the indictment allegations were insufficient. In short, the case fully *supports* Mr. Safavian's request to dismiss, for example, the allegations under 18 U.S.C. § 2 because there is no factual or legal basis in the indictment for that charge. Additionally, United States v. Buchanan, 787 F.2d 477 (10th Cir. 1986), also does not help the government because it appears that the defendant was actually given access to the grand jury instructions, and the grand jury record, since the defendant made a very specific argument that the prosecutor misspoke in response to a question from a grand juror. Id. at 487. In any event, the court rejected a limited challenge to the instructions related to one count. In this case, the indictment itself suggests irregularities in the grand jury procedures, and the discrepancies at issue undermine the very core of *the entire case* against Mr. Safavian, particularly since it is premised upon alleged statements of Mr. Safavian. Accordingly, these issues and defendant's specific contentions here distinguish United States v. Trie, 23 F. Supp. 2d 55 (D.D.C. 1998), where the alleged deficiencies related to legal nuances pertaining to one count out of a fourteen-count indictment, and United States v. Hart, 513 F. Supp. 657, 658 (E.D. Pa. 1981), where the request was based upon the attorney's "speculative allegations" premised upon his understanding of the "general practice of the district."

7

access to the materials. For example, the government relies on Rostenkowski, 59 F.3d 1291, but Rostenkowski offered *no evidence* of irregularities in the grand jury process other than a "general warning that courts should be wary of accepting prosecutorial assurances that constitutional violations have not occurred before the grand jury." Rostenkowski, 59 F.3d at 1313. Far from simply a "general warning," Mr. Safavian has offered this Court extensive evidence that indicates a significant probability of irregularities before the grand jury in this case. This evidence likely would have satisfied the D.C. Circuit in Rostenkowski, which noted that "Rostenkowski obviously cannot be expected to know exactly what transpired before the grand jury or what was presented to that body, [and] he must be able to provide . . . *some reason to believe* that protected information was used to procure his indictment." Rostenkowski, 59 F.3d at 1313.[3]

The government's extensive quotes from United States v. Nguyen, 314 F. Supp. 2d 612 (E.D. Va. 2004), are similarly misplaced. In Nguyen, the defendant sought access to a "breathtakingly broad range of grand jury information" yet offered not "one shred of evidence to support an allegation of grand jury irregularity or misconduct." Nguyen, 314 F. Supp. 2d at 617. Like Rostenkowski, the defendant in Nguyen could offer no more than a general warning that "[i]f all is well, then there is no problem, but if not, it should be known so that it can be addressed." Nguyen, 314 F. Supp. 2d at 617.[4] Unlike those "general warnings," Mr. Safavian

---

[3] Rostenkowski involved a former member of Congress who sought review of grand jury materials in order to determine whether the indictment was improperly based on Speech or Debate materials in violation of Article I, Section 6 of the Constitution. See Rostenkowski, 59 F.3d at 1313.

[4] These same problems pervade the page-long string of cases the government cites in support. Compare Def. Motion to Inspect at 2-11 (outlining a significant list of material discrepancies that suggest misrepresentations occurred during the grand jury proceeding that strike at the heart of the government's case) with Gov't Opp. at 5-9 (citing a string of "fishing expedition" cases). For example, United States v. Rastelli, 653 F. Supp. 1034 (E.D.N.Y. 1986), involved a 64-count RICO indictment of seventeen defendants. Id. at 1037. A few of the defendants claimed that the prosecutor failed to present certain evidence, but only made bald assertions that the evidence presented was unreliable without any factual support. Id. at 1056-57. Consequently, Rastelli stands in stark contrast to this case

has presented ample evidence that raises significant concerns that there were irregularities in the testimony and instructions presented to the grand jury. Furthermore, Mr. Safavian is not arguing that the government might have simply failed to present the grand jury with *more compelling* evidence that would be favorable to the defense. Rather, the issue is that the evidence raises significant concerns that the testimony presented misled the grand jury into believing probable cause existed because the testimony was based on interview reports that misstate, mischaracterize, and embellish statements of the witnesses and defendant's alleged statements.

Finally, as demonstrated by the Government's Opposition to Defendant's Motion to Dismiss Indictment, at page 26, footnote 12, the government now is arguing that defendant should be held responsible for <u>inferred</u> statements or omissions to some unnamed ethics official

---

involving a five-count indictment where the extensive misrepresentations and embellishments at issue comprise the very core of the government's case against Mr. Safavian for all five counts. Likewise, the other cases cited by the government suffer the same problem—they all involve defendants on "fishing expeditions" or offering facts and speculations far removed from the central issues involved in the case against them. See, e.g., United States v. Torres, 901 F.2d 205 (2d Cir. 1990) (noting defendant had already been found guilty and the only alleged irregularity was the use of hearsay testimony), cert. denied, Cruz v. United States, 498 U.S. 906 (1990); United States v. Azad, 809 F.2d 291 (6th Cir. 1987) (defendants sought access to grand jury proceedings because of alleged prosecutorial misconduct, but they had no evidence of misconduct because the court found all of the incidents proffered by the defendants to not be improper), cert. denied, Bigley v. United States, 481 U.S. 1004 (1987); Lucas v. Turner, 725 F.2d 1095, 1102 (7th Cir. 1984) (involving a *civil* case where plaintiffs offered only "unsubstantiated allegations" and "pure conjecture and speculation" in an attempt to "engage in a fishing expedition" to find evidence that a cover-up occurred); United States v. Edelson, 581 F.2d 1290, 1291 (7th Cir. 1978) (noting that defendant's only ground for disclosure was the insistence that "additional materials *might have disclosed* evidence of [irregularities]") (emphasis added), cert. denied, Edelson v. United States, 440 U.S. 908 (1979); United States ex rel. Stone v. Rockwell Int'l Corp., 173 F.3d 757 (10th Cir. 1999) (not involving any grand jury irregularities, but rather when disclosure of grand jury testimony was appropriate for witnesses testifying at trial); In re Grand Jury 95-1, 118 F.3d 1433, 1437 (10th Cir. 1997) ("Doe's counsel candidly acknowledged he did not know whether the [grand jury] materials would help or hurt the motion for disqualification. This acknowledgment clearly indicates the speculative nature of Doe's [claim] and suggests Doe was simply interested in engaging in a fishing expedition."); United States v. Wilson, 565 F. Supp. 1416, 1436-37 (S.D.N.Y. 1983) (involving seventeen-count indictment for aiding and abetting in the murder of witnesses and prospective witnesses in various prosecutions against defendant and noting that defendant's request "if granted, in effect would permit a ransacking of the files of the United States Attorney. The sweep of these interrogatories is so broad that it suggests what is sought is a general investigation of both the prosecution and the grand jurors and their functionings with respect to the instant indictment. This case may not be used to conduct studies on theories held by counsel as to the alleged shortcomings of the grand jury system."); United States v. Abrams, 539 F. Supp. 378, 389 (S.D.N.Y. 1982) (involving sixteen-counts of wire fraud and obstruction charges against multiple defendants, who sought access to grand jury materials only on the grounds that the prosecutor refused to provide grand jury transcripts solely on the defendants' request and that the withdrawal of a RICO count prior to the grand jury vote suggested that irregularities may have occurred).

in some unknown inferred conversation or conversations. While the defendant will file a reply to the opposition that demonstrates why this argument must lead to a dismissal as a matter of law, this contention by the government further demonstrates the need for access to the grand jury material.

II. **THE PARTICULARIZED NEED OUTWEIGHS THE DIMINISHED NEED FOR SECRECY**

As discussed in the Motion to Inspect, the Supreme Court has articulated the five policy reasons that support the need for grand jury secrecy. See Douglas Oil, 441 U.S. at 219 & n.10. It is important to point out that the government simply notes that grand jury secrecy is intended to protect witnesses from social stigma or retribution without even mentioning, much less providing any analysis of, the other factors or how they relate to the need shown. Consequently, the government's opposition ignores half of the balancing test for production of grand jury materials under Rule 6(e). Douglas Oil, 441 U.S. at 219-23. This omission is critical to the court's analysis of this issue because "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." Id. at 223.

As Mr. Safavian has already addressed, three of the five factors are inapplicable because the grand jury has completed its deliberations. See Def. Motion to Inspect at 11. Furthermore, the remaining policy reasons intended to protect witnesses are significantly diminished in this case. First, because the testimony sought likely came from a public official, the concerns of social stigma and retribution are significantly reduced. See United States v. Allen, 390 F.2d 476 (D.C. Cir. 1968); United States v. Bradley, 420 F.2d 181 (D.C. Cir. 1969); see also Def. Motion to Inspect at 12. Second, these concerns are further diminished in light of the fact that the

Interview Reports and Interview Notes have been disclosed and much of the information contained therein has become public through various filings in this case.

Finally, the indictment and the allegations in this case have been highly publicized. Therefore, this case is comparable to a very recent D.C. Circuit Court opinion, In re: Grand Jury Subpoena, Judith Miller, No. 04-3138, 2006 WL 250224 (D.C. Cir. Feb. 3, 2006), where the Court of Appeals ordered the release of certain grand jury material in the opinion, recognizing that the indictment had already been returned and had been highly publicized. Id. at *3. While the Court of Appeals did not release everything, the court emphasized that "the special counsel's investigation is ongoing [which] heightens the need for maintaining grand jury secrecy." Id. In this case, the government has not made such an argument, and therefore fails to show any heightened need for secrecy.

For these reasons, it is not clear exactly what harm the government is specifically concerned about regarding the release of these materials under these circumstances. The only reasons the government appears able to present are generalized concerns that are simply not applicable in this case. Given the strong evidence of a particularized need that Mr. Safavian has demonstrated, the government's generalized assertions of secrecy simply are not sufficient to warrant withholding this information.

**III.   CONCLUSION**

For the reasons stated above, and in the Motion to Inspect, Mr. Safavian has demonstrated a particularized need more than sufficient to overcome the significantly diminished need for secrecy at this stage of the case. Consequently, Mr. Safavian respectfully requests that counsel should be permitted to inspect the grand jury record in the manner requested.

Respectfully submitted,

By:   /s/ Barbara Van Gelder
   Barbara Van Gelder (D.C. Bar # 265603)
   Roderick L. Thomas (D.C. Bar # 433433)
   Albert C. Lambert (D.C. Bar # 489562)
   WILEY REIN & FIELDING LLP
   1776 K Street NW
   Washington, DC  20006
   TEL: 202.719.7032

Dated: February 16, 2006     *Attorneys for David H. Safavian*