UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No 05-370 (PLF) |
| | : | |
| v. | : | |
| | : | |
| DAVID HOSSEIN SAFAVIAN | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S REPLY IN SUPPORT OF ITS
MOTION TO QUASH SUBPOENA

The United States of America, by and through its undersigned attorneys, respectfully submits its Reply in Support of its Motion to Quash Subpoena.

I.   The Court Should Quash the Subpoena to the Bryan Parker

It is correct that, as Defendant notes in his Opposition, that some courts have held that the government lacks standing to move to quash a third-party 17(c) subpoena.  See, e.g. United States v. Daniels, 95 F. Supp. 2d 1160 (D. Kan. 2000); United States v. Tomison, 969 F.Supp 587 (E.D. Ca. 1997); United States v. Reyes, 162 F.R.D. 468 (S.D.N.Y. 1995).  It also true that this view is not universal.  Other courts considering the issuing of standing, have found either that the Government does have standing in these circumstances or, at the very least, the Court must apply the United States v. Nixon, 418 U.S. 683 (1974) and Bowman Dairy Co. v. United States, 341 U.S. 214 (1951) tests to determine the propriety of the Rule 17(c) subpoena regardless of the issue of standing.

For instance, in United States v. Leaver, 358 F.Supp.2d 273 (S.D.N.Y. 2005) the government sought to obtain a defendant's credit card records by use of a 17(c) subpoena.  Id. at

275. When the defendant moved to quash the subpoena, the government claimed he lacked the standing to do so, while the defendant claimed that he had an interest in his credit card records. Id. The Leaver Court found the defendant had standing to object: "the Court will nonetheless address [Leaver's] objections because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)."

The Leaver Court cited to United States v. Weissman, 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) and United States v. Nachamie, 91 F.Supp.2d 552 (S.D.N.Y. 2000) in support of its decision. In Weissman, the government moved to a quash a 17(c) subpoena, which had been approved by the Court, and served by defendant on a private law firm which sought statements by and interviews of various potential witnesses. Id. at * 1. The government moved to quash the subpoena, claiming it was improper because 1) it sought Jencks material; 2) the material was for impeachment purposes and therefore not needed prior to trial; 3) the material was inadmissible hearsay. Id. The Court found that the government had standing to object to the subpoena "because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)"and granted the motion to quash. Id. at *1 - *2.

Another case, United States v. Nachamie, 91 F. Supp. 2d 552 (S.D.N.Y. 2000), which is cited by Defendant in support of his Opposition to Government's Motion to Quash, illustrates the struggle courts have had in balancing conventional notions of standing in this particular context, where courts have a unique and indispensable role in making sure that the discovery process is not abused. In Nachamie, a medicare fraud prosecution, the government objected to multiple 17(c) subpoenas defendant served on non-parties in the case. Id. at 554. When the government moved to quash the subpoenas, defendant objected, claiming that the government lacked standing

to be heard on the issue. Id. at 558. Although the Court found that the government lacked standing to move to quash the subpoenas (Id. at 558-60), the Court went on to note that "before a court issues a Rule 17(c) subpoena, it must be satisfied that the subpoena complies with the requirements of the Rule. ('As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose.')" Id. at 561 (Citations and quotations omitted). After concluding three of the subpoenas were properly issued, the Court then went on to do an analysis of the propriety of the issuance of the remaining subpoena. The Court concluded that this particular subpoena should be quashed because the "materials, if they exist may contain privileged work product and may constitute impeachment material rather than evidence ... Such material should not be produced in advance of the witness' testimony unless it includes Brady material ... Thus, *the Government's motion to quash is granted* [as to this particular request.]" Id. at 564 (emphasis supplied).

Thus, after first seeming to hold that the government lacked standing to object to the issuance of the third-party subpoenas, the Nachamie Court went on to do a full analysis of the whether the subpoenas complied with the criteria set forth in United States v. Nixon, 418 U.S. 683, and then upheld the government's motion to quash. See also, United States v. Raineri, 670 F.2d 702 (7th Cir. 1981) (finding government had standing to object to 17(c) subpoena because of government "interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [witness's] credibility").

This case law, although far from crystalline on the issue of standing, is abundantly clear that even in the event the Court does not find that the government has standing to object to the issuance of third-party 17(c) subpoenas, the Court's supervisory role does not end. It remains the

Court's responsibility to analyze the propriety of the issuance of the subpoena under the factors set forth in Nixon and its progeny.[1]  See United States v. Noriega, 764 F.Supp 1480, 1493 n. 13 (S.D. Fla. 1991) (government claimed defendant lacked standing to object to wide-ranging 17(c) subpoenas issued by the government to third-parties; Court held that lack of standing challenge "is off point.  The court need not look to any litigant in order to quash a subpoena which seeks to usurp the court's exclusive authority to permit production of materials prior to trial.")

It is because of the likelihood that this issue of lack of standing might otherwise preclude a district court from exercising its proper supervision over rule 17(c) subpoenas duces tecum that courts have found that such subpoenas should only be issued after the filing of a motion with the district court, so that the opposing party can object at that point.  This is precisely the approach advocated in United States v. Beckford, 964 F. Supp. 1010 (E.D. Va. 1997), which found that Rule 17(c) subpoenas duces tecum should be noticed by way of motion, as often times this will be the only opportunity for the Court to properly assure itself "that pre-trial subpoenas duces tecum are not abused."  Id. at 1023.  The Court continued

> [While] in some cases reliance upon the filing of a motion to quash or modify ... may provide adequate assurance that the pre-trial subpoena satisfies the Nixon standard, there is no certainty that any such motion will be filed.  In many instances, the opposing party in a criminal case may lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents.  Where that is the case, the court's ability to review the use of Rule 17(c) subpoenas duces tecum would hinge solely upon the potential filing of a motion to quash by a *third party* to the case, who often may lack the incentive or the wherewithal to make such a filing....Where no

---

[1] Indeed, during the January 25, 2005 telephonic conference in which the Court denied Defendant's request to issue the subpoena ex parte and under seal, the Court indicated that the Government could move to quash the subpoena.  The government at that time stated that we wished to consider the merits of the position before filing.

> motion to quash or to modify a subpoena duces tecum is raised to an overbroad or otherwise impermissible Rule 17(c) subpoena, it is possible, if not likely, that improper pre-trial production and inspection will occur without the knowledge or intervention of the court. This is contrary to the explicit requirement in Rule 17(c) that only the court may 'direct' or 'permit' such pre-trial production and inspection.

Beckford, 964 F.Supp. at 1023-24.

Thus, regardless of how the Court determines the issue of standing, the Court should still analyze the propriety of the subpoena under the framework of Nixon, Bowman Dairy and their progeny.

## II. The Materials Sought are Not Evidentiary in Nature, and Therefore Not Subject to a 17(c) Subpoena

Defendant claims in his motion header that "The Subpoena Requests Notes and Documents That Are Material to Preparation of Mr. Safavian's Defense and Pre-trial Motions." Def. Opp. p. 6. This is not the test to be applied in analyzing the propriety of the subpoena. As the Government pointed out in its Motion to Quash, evidence sought by a Rule 17(c) subpoena must be admissible as evidence at trial. See Nixon, 418 U.S. at 700; Bowman Dairy Co. v. United States, 341 U.S. 214, 221. The Government premised its Motion to Quash on the basis of the fact that the notes sought could only be used as impeachment evidence, and that courts have consistently found that impeachment material cannot be properly subject to a 17(c) subpoena. In his response, Defendant fails to suggest a single theory as to how the notes could be admissible at trial. Despite three and one-half pages of text ostensibly explaining why the notes meet the Nixon criteria, Defendant fails to offer a single evidentiary basis for why the notes would be admissible at trial. This lack of response is telling and should preclude this Court from

5

permitting Defendant's subpoena. Because if the evidence is not admissible at trial, it may not be subpoenaed. Bowman Dairy, 341 U.S. at 221 (materials subject to Rule 17(c) subpoena must be "admissible as evidence"). There must be a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged." Nixon, 418 U.S. at 700. Defendant has not met – nor, indeed, has he even attempted to meet – this burden.

The fact that the information sought may be "material to preparation of Mr. Safavian's defense and pre-trial motions" is completely besides the point, as Rule 17(c) subpoenas are not meant as a discovery device. Bowman Dairy Co., 341 U.S. at 219-20. Finally, Defendant's claim that the notes are exculpatory is baseless. Defendant's conclusory claim that the sought-after evidence is exculpatory does not, without more, make the evidence properly subject to a 17(c) subpoena. See, United States v. Ruedlinger, 172 F.R.D. 453 (D. Kan. 1997). ("Conjecture and speculation will not provide the lift to carry a movant over the three hurdles.")

**III.  The Documents Are Otherwise Available in Advance of Trial and Thus Not Properly Subject to a 17(c) Subpoena**

Before a party can seek materials by a 17(c) subpoena, it must be shown that the materials sought cannot be otherwise procurable reasonably in advance of trial by exercise of due diligence. Nixon, 418 U.S. at 699. This the Defendant cannot show because the materials sought **will** be produced by the Government prior to trial, at the same time it produces all of its Jencks and Giglio materials. Because these materials will be produced to Defendant prior to trial, they are not properly subject to a 17(c) subpoena. See United States v. Beckford, 964 F. Supp. at 1032 ("Rule 17(c) subpoena duces tecum is improper where it call for the production of

Brady, Jencks, or Giglio material. That is because those materials are subject only to limited discovery pursuant to Fed.R.Crim.P. 16, and the Jencks Act, 18 U.S.C. Sec. 3500. Thus, none of that material can be said to be 'not otherwise procurable reasonably in advance of trial.'")

IV.  **Defendant's Claim That Notes Sought Would Help Him Prepare for Trial and Motions Hearing Is Irrelevant When Considering Propriety of Rule 17(c) Subpoena**

As pointed out supra, the fact that the materials sought would be helpful in Defendant's preparation at trial is not an appropriate question to address when determining whether materials may be sought by a Rule 17(c) subpoena. As a legion of cases make clear, the evidence sought must be **admissible** at trial. See Government's Motion to Quash, pp. 2 - 6. If it were otherwise, impeachment evidence would be deemed a proper subject of a Rule 17(c) subpoena, since the early receipt of this information might well prove helpful to a defendant's trial preparation.[2]

Moreover, Defendant fails to demonstrate how or why the notes he seeks are material to the preparation of Defendant's pre-trial motions. Defendant claims the notes are "essential to evaluating ... the context of the [defendant's] statements, whether the statements were infected by fundamental ambiguity ... [or whether the statements were] materially false." Def. Opposition, p. 11. As the Government made clear in its Opposition to Defendant's Motion to Dismiss, the

---

[2] Fryer v. United States, 207 F.2d 134, 137 (D.C. Cir. 1953) is not to the contrary. Fryer, it should be pointed out, is a pre-Nixon case, so it obviously lacks the clear four-part test set forth in Nixon. Fryer involved a 17(c) subpoena served upon the government for the **defendant's** own statement, which was later introduced into evidence. As we have argued previously in the Government's Motion for Clarification, the notes of the Senate investigator do not constitute **Mr. Safavian's** statement. It is the investigator's statement. Were the notes to be deemed the Defendant's statement, then the Government should be permitted to introduce it into evidence as a statement of the Defendant. Obviously, such an attempt would draw a well-placed objection, based on hearsay grounds. On the other hand, the letter Defendant wrote to the Senate investigators clearly is a statement of the Defendant, and could (and will be) admitted into evidence in the Government's case-in-chief.

questions of context, ambiguity and materiality are for the jury to decide. Regardless of what the notes do or do not say, Defendant cannot show how they would be *admissible* evidence at the motions hearing, much less the trial.

Defendant suggests in his Opposition that the failure to provide the notes weeks prior to trial would, in effect, reduce his trial to "a combat game by surprise." Def. Opposition, p. 2. The Jencks Act precludes the disclosure of witness statements *until after the witness has testified*. 18 U.S.C. Sec. 3500 (b). Often times witness statements subject to the Jencks Act will include extremely damaging testimony against a particular defendant, including oral admissions the defendant may have made to the witness. The government is not legally required to provide these witness statements to a defendant until after the witness has concluded his direct testimony.[3] To argue, as he does in his Opposition, that Defendant will be effectively tried by ambush if the Government turns over the Senate Staffer's notes as part of Jencks and Giglio disclosures prior to trial is specious.[4]

---

[3] While not legally required to do so, the Government plans in this case to provide all Jencks and Giglio material far enough in advance of trial to avoid any unnecessary delays.

[4] Defendant also claims that the government "should represent to the Court what [it] know[s] about the contents of [the notes] – e.g., whether [we have] seen them ... whether [we] have had their contents described or identified in any way. If the government professes to know nothing about the contents of these documents, then the government certainly cannot profess to know anything that would question this Court's sound discretion in issuing the subpoena." Def. Opposition, p. 3, n. 5. This argument misconstrues completely on whose shoulders the burden rests in showing the material is producible pursuant to a Rule 17(c) subpoena. It is not the Government's burden to demonstrate these materials are **not** properly subject to a subpoena; it is Defendant's burden to show that they **are** properly subject to subpoena. If the party seeking the 17(c) materials "cannot reasonably specify the information contained or believed to be contained in the documents sought merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." United States v. Noriega, 764 F.Supp. at 1493. In this case, the fact that Defendant is asking the Government for a description of the materials he is seeking is a clear indication that Defendant is merely fishing and hoping that he obtains some useful information. This is not a proper use for a Rule 17(c) subpoena.

**IV.     Procedures for Rule 17(c) Subpoenas**

The Government has a number of concerns regarding the issuance of the instant subpoena. First, there is significant case authority for the proposition that 17(c) subpoenas duces tecum with pre-trial return dates cannot be made ex parte. See United States v. Ferguson, 37 F.R.D. 6, 8 (D.D.C. 1965) (holding that application for 17(c) subpoena duces tecum must be made upon motion to the Court so that the opposing party can have the opportunity to contest the issuance); United States v. Urlacher, 136 F.R.D. 550, 556 (W.D. N. Y. 1991) (scheme of Rule 17 "clearly suggests, if not compels, a conclusion that litigation concerning issuance of and compliance with subpoenas duces tecum be conducted upon notice, and not in secret....There can be no 'right' to ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties inspection prior to trial."); United States v. Hart, 826 F. Supp. 380, 381 (D. Co. 1993) ("the mechanism for obtaining documents [pursuant to rule 17(c)] negates any assumption that production should be on an ex parte basis." See also United States v. Beckford, 964 F. Supp. at 1026, 1027 (E.D. Va. 1997)(Rule 17(c) subpoenas duces tecum with pre-trial return dates may not be made ex parte except under "limited," "rare" and "exceptional" circumstances.).[5] The Government relies upon the foregoing authority in requesting that the Court require parties seeking Rule 17(c) subpoenas to do so only

---

See, e.g. United States v. Najarian, 164 F.R.D. 484, 487 (D. Minn. 1995) ("In the absence of a persuasive showing, we conclude that these specific requests are more in the nature of a 'treasure hunt' than they are a legitimate effort to review any evidentiary submissions that are reasonably expected to be admitted at trial.")

[5]The Beckford Court also noted that even on the rare occasions where it was appropriate to seek an ex parte Rule 17(c) subpoena, "the requesting party must still demonstrate to the court that the subpoena meets the Nixon standards." Beckford, 964 F. Supp. at 1028.

upon motion to the court, absent some truly exceptional circumstance which would warrant an ex parte application.  "Courts and commentators which have addressed the issue nearly unanimously have recognized that, although the rule 'does not clearly require it,' the use of a *motion* as the procedural means for invoking the court's discretion in advance of issuance of a pre-trial subpoena duces tecum 'is an orderly and desirable procedure and one frequently followed.'" Beckford, 964 F. Supp. at 1021 (quotations omitted, emphasis in original).

Secondly, defense counsel indicated to Senate counsel that the documents could be delivered directly to her, rather than to the Court.  Def. Opp. p. 15.  Rule 17(c) does not provide for returns directly to counsel for either side, convenience or courtesies notwithstanding. "Unquestionably, Rule 17(c) reveals an express intent that the Court supervise the production of evidentiary materials in advance of trial. ...Of course, the production of documents, outside of the Court's presence, would entirely defeat any attempt on our part to manage and facilitate the orderly screening of documentary evidence."  Najarian, 164 F.R.D. at 487.  Thus, the Government hereby requests that the Court direct that the parties to not accept return of service of any 17(c) subpoenas outside of court.[6]

Finally, despite the fact that the Government's Motion to Quash was then pending, defense counsel advised Senate counsel that the Government's filing did not toll the return date for the subpoena and that the Senate should comply with the subpoena prior to the Court having an opportunity to rule on the Government's Motion to Quash.  (Def. Opp., Ex. 1).  Had the Senate been able to comply with defense counsel's direction, the subpoena would have been

---

[6] The Defendant's use of a subpoena marked "Ex Parte and Under Seal" when the Court has expressly ruled that the subpoena is not "ex parte and under seal" also raises concerns.

complied with – and the pending motion mooted – without this Court having had the opportunity to rule on the propriety of the Rule 17(c) subpoena. Therefore, the Government requests that the Court direct that, in the event any further motions to quash subpoenas are brought by either side, that such motion will be deemed to toll the return of the subpoena so that the parties may await a ruling by the Court prior to the subpoena being returned.

**V.     Conclusion**

For the foregoing reasons, the Government respectfully requests that 1) the Government's Motion to Quash be granted; 2) that forthwith all 17(c) subpoenas filed in connection with this matter shall be noticed by motion to opposing counsel absent truly exceptional circumstance; 3) that all pre-trial subpoena returns shall be made to the Court, and not to the parties; and 4) that a timely filed Motion to Quash will act to toll the return on any 17(c) subpoena until the Court resolves the pending motion; and 5) that Defendant's counsel shall disclose to the Court and the Government all other subpoenas that have been issued with pretrial return dates and return any materials obtained via Rule 17(c) subpoenas to the Court.

Respectfully submitted,

  /s/ Nathaniel Edmonds             /s/ Peter R. Zeidenberg
NATHANIEL B. EDMONDS              PETER R. ZEIDENBERG
Trial Attorney, Fraud Section     Trial Attorney, Public Integrity Section
Criminal Division                 Criminal Division
United States Department of Justice   United States Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2006, a copy of the foregoing was served on the following counsel by electronic service and first class mail to:

>Barbara Van Gelder, Esq.
>Wiley Rein & Fielding
>1776 K Street NW
>Washington, DC 20006
>Tel: 202-719-7032
>Facsimile: 202-719-7049

>    /s/ Nathaniel B. Edmonds
>Trial Attorney
>Fraud Section, Criminal Division
>United States Department of Justice