

# General Services Administration
## Annual Ethics Briefing for
## Public Financial Disclosure Report Filers

### Sign-In Sheet

Trainer: _Dan Ross_

Date: _September 3 2003_

| Name (Print) | Telephone Number | Organization Code |
|---|---|---|
| ▮▮▮▮▮▮ | ▮▮▮▮ | GJ |
| ▮▮▮▮▮▮▮ | ▮▮▮▮ | JFMIP |
| ▮▮▮▮▮ | ▮▮▮▮ | AC |
| ▮▮▮▮▮ | ▮▮▮▮ | IA |
| ▮▮▮▮▮ | ▮▮▮▮ | XC |
| David Safavian | ▮▮▮▮ | AC |
| ▮▮▮▮▮ | ▮▮▮▮ | C |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DOJ-DS 0013602



GSA Office of General Counsel

July 11, 2003

MEMORANDUM FOR REGIONAL COUNSELS
(1, 2, 3, 5, 6, 8, 9 and 10)

FROM:          RAYMOND J. McKENNA
               GENERAL COUNSEL/
               DESIGNATED AGENCY ETHICS OFFICIAL (L)

SUBJECT:       Annual Agency Ethics Briefing for CY 2003
               (Oral Ethics Briefings for Public Financial Disclosure Filers
               SF 278))

The Office of Government Ethics (OGE) training regulation (subpart G of 5 C.F.R. part 2638) requires agencies to provide a minimum of one hour of oral ethics training annually to all employees required to file the Public Financial Disclosure Report (SF 278). SF 278 filers include Senior Executive Service (SES) employees, Schedule C employees, Board Judges and experts and consultants. Under the interim rule, a trainer must be present during and immediately following the briefing. The briefings for these SF 278 filers should be completed by November 30, 2003.

We note that there may be new SF 278 filers coming on board in the next few months. Please make every effort to provide an oral briefing to these employees as soon as they come on board. This briefing would also serve as their annual briefing for CY 2003.

The oral briefing for CY 2003 will include a brief discussion of:

- President Bush's January 20, 2001, Presidential Memorandum on Ethical Conduct, restating the 14 Principles of Ethical Conduct;
- Gifts from Outside Sources found at Subpart B of the Standards of Ethical Conduct;
- Gifts Between Employees found at Subpart C of the Standards of Ethical Conduct;
- Acceptance of Travel from a Non-Federal Source;
- The Hatch Act; and
- Post-Employment Restrictions.

U.S. General Services Administration
1800 F Street, NW
Washington, DC  20405-0002
www.gsa.gov

DOJ-DS 0013603

-2-

The oral presentation briefing package includes suggested briefing guidelines which can be used to prepare for the presentation, an acknowledgement of receipt training form and an employee sign-in sheet to be reproduced as needed (Attachment 1). The guidelines follow the same format used in previous years. Also, the briefing package includes handouts that must be provided to all employees attending the annual ethics briefing (Attachment 2) and the Ethics Quiz Answer sheet (Attachment 3)

If you have any questions, please call Eugenia Ellison or Dan Ross on (202) 501-0765.

Attachments

DOJ-DS 0013604

# PUBLIC FILERS GUIDE
## SUGGESTED TRAINING GUIDELINES

[BEFORE STARTING THE TRAINING, MAKE SURE YOU HAVE:

- Enough copies of all handout materials for each participant;
- Sign-in sheets;
- GSA Form 2160s; and
- Any other relevant handout materials (including extra copies of the standards of ethical conduct. These copies shall only be made available for use during the training. Associates who would like extra copies should let you know.)

[Each participant should sign the sign-in roster, receive a GSA Form 2160 and any additional handout material.]

## I. Introduction, Purpose and Background

You are here today to receive your annual ethics training on the Standards of Ethical Conduct and the conflict of interest laws.

Today, each of you have been given a packet of handout materials consisting of copies of:

The Presidential Memorandum on Ethical Conduct, restating the 14 Principles of Ethical Conduct (Attachment 1);

- Ethics Quiz (Attachment 2);

- A Summary of Subpart B, Gifts From Outside Sources (Attachment 3);

- A Summary of Subpart C, Gifts Between Employees (Attachment 4)

- The GSA Acceptance of Travel/Non-Federal Source Travel Policy and Procedures (Attachment 5);

- A Summary of the Hatch Act (Attachment 6);

- A Summary of the Post-Employment Restrictions (Attachment 7); and

- A listing of the Deputy Standards of Conduct Counselors (Attachment 8).

DOJ-DS 0013605

At the end of your training packet you have a GSA Form 2160. Please complete this form and return it to me at the end of the presentation. The GSA Form 2160, which acknowledges your receipt of the annual standards of conduct training for this calendar year, will be placed in your official personnel file (OPF).

The training today will include a brief discussion of:

- President Bush's January 20, 2001, Memorandum on Ethical Conduct, restating the 14 Principles of Ethical Conduct;
- Gifts from Outside Sources found at Subpart B of the Standards of Ethical Conduct;
- Gifts Between Employees found at Subpart C of the Standards of Ethical Conduct;
- Acceptance of Travel from a Non-Federal Source;
- The Hatch Act; and
- Post-Employment Restrictions.

When considering whether a specific action would violate the Government-wide Standards of Ethical Conduct or other applicable ethics related statutes or regulations, you must continue to ask yourself three questions:

1. Would it actually violate the law or applicable regulation?

2. Would my action create the appearance of impropriety as judged by a reasonable person with knowledge of the relevant facts?

3. Would my action violate any of the 14 "Principles of Ethical Conduct" set forth in Part I of Executive Order 12674, as amended?

## II.    Review of the 14 Principles of Ethical Conduct

On January 20, 2001, President George W. Bush, as one of his first official acts, issued a Presidential Memorandum on Ethical Conduct asking agency heads to ensure that all personnel within their agencies are familiar with, and faithfully observe, applicable ethics laws and regulations, including the 14 Principles of Ethical Conduct. He stated that "everyone who enters into public service of the United States has a duty to the American people to maintain the highest standards of integrity in Government". We encourage you to continue your commitment to maintaining the highest standards of integrity in Government as we serve the American people.

A copy of President Bush's memorandum can be found at Attachment 1 of the handouts. Let's pause for a few minutes to review the 14 Principles listed in the memorandum.

DOJ-DS 0013606

[Once associates have completed review of the 14 principles – identify a few of them and ask employees to explain what they mean.]

### III. Ethics Quiz

Let's take the next 10 minutes and complete the Ethics Quiz at Attachment 2. As we go through a discussion of Subpart B, "Gifts From Outside Sources" we will address the answers to the Ethics Quiz.

### IV. Subpart B - Gifts from Outside Sources

#### A. Basic Prohibition

As you are aware, there is a basic prohibition on soliciting or accepting gifts, either directly or indirectly, from outside sources, which are given because of an employee's official position or given from a prohibited source. A prohibited source is defined as any person who:

1. Is seeking official action by the employee's agency;

2. Does or seeks to do business with the employee's agency (i.e., GSA contractor);

3. Conducts activities regulated by the employee's agency; or

4. Has interests that may be substantially affected by the performance or nonperformance of the employee's duties.'

A gift may be accepted "indirectly" if:

1. Given with the employee's knowledge and acquiescence to his parent, sibling, spouse, child, or dependent relative because of that person's relationship to the employee, or

2. Given to any other person, including any charitable organization, on the basis of designation, recommendation, or other specification by the employee, except

3. As permitted for the disposition of perishable items by 5 C.F.R. § 2635.205(a)(2) or for payments made to charitable organizations in lieu of honoraria under 5 C.F.R.§ 2636.204.

#### B. Exclusions

The term "gift" generally includes almost anything of monetary value. However, it does not include:

3

1. Coffee, donuts and similar modest items of food and refreshment other than as part of a meal;

2. Greeting cards and most plaques, certificates and trophies;

3. Prizes in contests open to the public;

4. Commercial discounts available to the general public or to all Government or military personnel;

5. Commercial loans, pensions and similar benefits;

6. Anything paid for by the Government, secured by or under Government contract or accepted by the Government in accordance with a statute; and

7. Anything for which the employee pays market value.

## C.  Exceptions

Briefly, let's reexamine some of the 12 exceptions to the general prohibition on the acceptance of gifts.

1. The main exception and the one that has raised the most questions is the $20 or less exception. You may accept an unsolicited gift with a market value (i.e, the retail cost an employee could buy the item for) of $20 or less per occasion, not to exceed a maximum of $50 in a calendar year, from any one <u>source</u>. This exception does not permit gifts of cash or investment interests.

   <u>**Remember, the burden is on the employee to verify independently the market value of the gift, and not rely on the prohibited source's statement of gift value. You are encouraged to maintain accurate records of the cost of the gift(s) and when they were received.**</u>

   On occasions where the aggregate market value of a gift exceeds $20, you may not pay the excess value over $20 in order to accept that portion of the gift worth $20. You must either decline the gift or pay the market value for the entire gift.

2. A second exception permits acceptance of gifts based on a personal relationship when it is given because of a family relationship or a personal friendship rather than the position of the employee. Key factors in determining whether to accept the gift include the history of the relationship and whether the family member or friend personally paid for the gift. (Note: Trainer should provide an example.)

3. Discounts and similar benefits available to a class of persons (such as all Government employees) is another exception to the gift prohibition. A good

4

DOJ-DS 0013608

example is while planning your vacation you take advantage of a United Airlines discount available to all Federal employees.

4. Unsolicited gift of free attendance at all or appropriate parts of a widely-attended gathering of mutual interest can be accepted from the sponsor of the event where a determination has been made by the employee's supervisor that the employee's attendance is in the interest of the agency because it will further agency programs and operations. If, however, more than 100 persons are expected to attend the event and the gift of free attendance has a market value of $285 or less, the gift may be accepted from a person other than the sponsor of the event.

A gathering is widely attended if it is expected that a large number of persons will attend and that persons with a diversity of views or interest will be present. For example, a gathering is considered widely attended if it is open to members throughout the interested industry or profession or those in attendance represent a range of persons interested in a given matter.

5. Gifts based on outside business or employment relationships. For instance an employee may accept meals, lodgings, transportation and other benefits:

   a. resulting from the business or employment activities of an employee's spouse when it is clear that such benefits have not been offered or enhanced because of the employee's official position;
   b. resulting from the employee's outside business or employment activities when it is clear that such benefits have not been offered or enhanced because of his official status; or
   c. customarily provided by a prospective employer in connection with bona fide employment discussions, i.e., a job interview. (If prohibited source, must have a disqualification)

When you are faced with a gift issue, it is a good idea to seek advice from your Deputy Standards of Conduct Counsellor.

## D. Limitations and Caution

<u>You are cautioned that even though acceptance of a gift may be permitted by one of the 12 exceptions, it is never inappropriate for an employee to decline a gift offered by a prohibited source or because of the employee's official position. It is wise to decline a gift when it is being offered by a person or organization whose interests could be affected by your action.</u>

An employee may not use any of the 12 exceptions to accept gifts:

1. In return for being influenced in the performance of official duties;

5

DOJ-DS 0013609

2. From same or different sources, so frequently as to appear to be using public office for private gain;

3. That are solicited or coerced; or

4. In violation of any statute, such as:

    a. Solicitation or receipt of bribes (18 U.S.C. § 201(b));

    b. Receipt of salary as contribution for services as a Government employee from a source other than the United States (18 U.S.C. § 209); and

## E. Disposition

If a gift cannot be accepted under one of the 12 exceptions, you may pay the donor its **full market value (not portions thereof)** or return the gift. In addition, subject to approval of your supervisor, perishable items may be donated to a charity, destroyed or shared within the office.

## V. Subpart C - Gifts Between Employees

Subpart C provides guidance on gifts to superiors and **gifts from employees receiving less money.** The prohibition states an employee may not:

1. Directly or indirectly, give a gift to or make a donation toward a gift for an official superior; or

2. Solicit a contribution from another employee for a gift to either his own or the other employees' official superior.

The term "official superior" includes but is not limited to an immediate supervisor, whose official responsibilities include directing or evaluating the performance of the employee's official duties or those of any other official superior of the employee.

Secondly, an employee may not, directly or indirectly, accept a gift from an employee receiving less pay than himself unless:

1. The employee is not in a subordinate-official superior relationship; and

2. There is a personal relationship between the two employees that justify the gift.

An official superior shall not coerce the offering of a gift from a subordinate. However, there are several exceptions to the prohibition on giving or receiving gifts. They include:

DOJ-DS 0013610

1. On an occasional basis, including any occasion on which gifts are traditionally given or exchanged. The following may be given to an official superior or accepted from a subordinate or other employee receiving less pay:

   a. Items, other than cash, with an aggregate market value of $10 or less per occasion;

   b. Items such as food and refreshments to shared in the office among several employees;

   c. Personal hospitality provided at a residence, which is of a type and value customarily provided by the employee to personal friends;

   d. Items given in connection with receipt of personal hospitality if of a type and value customarily given on such occasions; and

   e. Leave transferred to an employee who is not an immediate supervisor under applicable law or regulation.

2. On **special, infrequent occasions** of personal significance, such as a marriage, or on occasion that terminate the superior-subordinate relationship, such as retirement.

3. **Voluntary contribution** given freely, without pressure or coercion, such as food and refreshments to be shared in the office among several employees.

## VI.    Acceptance of Non-Federal Source Travel

The next topic is the acceptance of travel, subsistence and related expenses from a non-Federal source to attend a meeting or similar function. The authority for agencies to accept payments from non-Federal sources in connection with the funding of certain official travel can be found at 31 U.S.C. § 1353 and chapters 300-304 of the Federal Travel Regulation. Section 1353 supersedes all of the agency gift acceptance statutes to the extent that payments may be accepted under authority of the new law.

Section 1353 is authority **for an agency** to accept payments from a non-Federal source with respect to the travel of an "employee" and does not disturb authorities that authorize an <u>employee</u> to accept payments from non-Federal sources. Thus, for example, the Foreign Gifts and Decorations Act (5 U.S.C. § 7342) will continue to provide authority for an employee to accept travel-related benefits when the donor of the gift is a foreign government. Similarly, 5 U.S.C. § 4111 will continue to authorize the acceptance by employees of payments for attendance at certain meetings.

**Please note that solicitation of gift of travel is prohibited. An employee shall not solicit payment for travel, subsistence, and related expenses from a non-Federal**

7

DOJ-DS 0013611

**source. However, after receipt of an invitation from a non-Federal source to attend a meeting or similar function or in the course of discussions of an event to be sponsored jointly by the agency and the non-Federal source, the agency or employee may inform the non-Federal source of this authority.**

A "meeting or similar function" means a conference, seminar, speaking engagement, symposium, training course, or similar event that takes place away from the employee's official station, and is sponsored or cosponsored by a non-Federal source. **This term does not include a meeting or other event required to carry out an agency's statutory or regulatory functions (i.e., a function that is essential to an agency's mission), such as investigations, inspections, audits, site visits, negotiations, or litigation. The term also does not include promotional vendor training or other meetings held for the primary purpose of marketing the non-Federal source's products or services.** A meeting or similar function need not be widely attended for purposes of this definition, and includes but is not limited to the following:

1. An event at which the employee will participate as a speaker or panel participant, including an event, at which the employee will give, an oral presentation focusing on his/her official duties or on the policies, programs, or operations of the agency; or

2. A conference, convention, seminar, symposium or similar event the primary purpose of which is to receive training other than promotional vendor training.

## A.  Conditions for Acceptance of Payments for Employee Travel

All travel of this nature must be reviewed in advance by the General Counsel, who will make a determination as to whether or not GSA will accept the offer from the non-Federal source. The following conditions must be met before a determination can be made to accept or reject the non-Federal source travel payment:

1. Payment is for attendance at a meeting or similar function. The General Counsel must determine that the employee will attend a "meeting or similar function". Thus, an agency could not use §1353 to accept payments from an adverse party to fund a Government attorney's travel to the location of a deposition incident to a bid protest. While the definition of meeting or similar function does encompass a "training course," it excludes promotional vendor training or other meetings held for the primary purpose of marketing the non—Federal source's products.

2. Payment is for travel related to an employee's official duties. The General Counsel must determine that the travel relates to an employee's official duties. Section 1353 has no application with regard to travel for personal or partisan purposes since such travel is not undertaken in an official capacity. The General Counsel's determination requires an examination of both the nature of the meeting or similar function and the official duties of the employee.

DOJ-DS 0013612

3. <u>Payment is from a non-Federal source that is not disqualified on conflict of interest grounds.</u> A determination must be made that the payment is from a non-Federal source that is not disqualified on conflict of interest grounds. A non-Federal source can be "any person or entity other than the Government of the United States." The definition includes any individual, private or commercial entity, or nonprofit organization or association, and extends to any state, local, or foreign government. Normally, it is expected that it will be the non-Federal sponsor of the meeting or similar function that will be the source of the payments, or at least a non-Federal source with an interest in the subject matter of the event.

4. Payment may only be accepted in the form of "payment in kind" which is defined as: "goods or services provided in lieu of funds paid to an agency by check or similar instrument for travel, subsistence, and related expenses." This limitation is needed to eliminate the problems associated with collection and/or nonpayment.

5. Acceptance of payment from a non-Federal source for an accompanying spouse is prohibited in all cases.

6. Acceptance of payment in excess of the maximum rates prescribes for actual subsistence reimbursement is prohibited in all cases.

7. Heads of Services and Staff Offices and Regional Administrators are required to approve travel authorizations. The authority to approve travel authorization of Heads of Services and Staff Offices and Regional Administrators is limited to the Administrator or Deputy Administrator.

## B.  Documentation

The following documentation must be forwarded to the General Counsel with the request for review:

1. A written memorandum from the supervisor indicating that the travel is related to the official duties of the employee. The memorandum should set forth the nature of the meeting or similar function and how it relates to the official duties of the employee.

2. The original "Letter of Commitment" from the non-Federal source includes:

    a. The name and address of the non-Federal source.

    b. The exact nature of the meeting, conference or similar function.

    c. An explanation as to why the non-Federal source wishes to pay for the travel.

9

DOJ-DS 0013613

  d. Date and place of the meeting, conference or similar function;

  e. The names and positions of those persons for which payment in kind is offered.

  f. The precise number of days for which payment in kind is offered.

  g. For each day, a detailed listing of the expenses (e.g., meals, lodging, airfare, registration fees, etc.) for which the non-Federal source has offered payment in kind and the associated dollar value.

## C. Vouchering

The employee must submit a voucher to Finance, regardless of whether there was no cost to the agency. The employee shall only voucher for those travel expenses that are being funded by the agency as authorized on the GSA Travel Authorization. If all expenses are paid by the non-Federal source, the traveler shall submit a no-cost voucher.

## VII. Hatch Act

The next topic is the Hatch Act. The Hatch Act amendment governs the political activity of government employees in the Executive Branch. Under the Hatch Act, as amended (5 U.S.C. § 7321, et seq.), most Federal employees, with the exception of career Senior Executive Service (SES) employees and members of the GSA Board of Contract Appeals, may take an active part in partisan political management and campaigns. Those employees who are not covered by the Hatch Act amendments are still covered by the old Hatch Act provisions. A list of examples of the permissible and prohibited activities for both categories of Government employees is included in the handouts at Attachment 6.

 A. Some of the permissible activities for most GSA associates, include, but are not limited to:

  1. Taking an active part in political management or in political campaigns, such as signing nominating petitions, distributing campaign literature or participating in phone banks.

  2. Assisting in voter registration drives.

  3. Campaigning for or against candidates in partisan elections.

  4. Contributing money to political organizations.

  5. Attending political fundraising functions and political rallies and meetings;

DOJ-DS 0013614

    6.  Holding office in political clubs or parties.

B.  Federal employees are still barred from:

    1.  Running for public office in partisan elections.

    2.  Soliciting for public office in partisan elections.

    3.  Soliciting or discouraging the political activity of any person who has business before GSA.

    4.  Using their official position to influence colleagues and election outcomes.

    5.  Engaging in political activity while in any Government office, on duty, in an official uniform or using a Government vehicle.

    6.  Wearing a uniform or insignia that identifies them as a Government or postal
worker while engaged in political activity.

C.  All Hatch Act questions should be directed to your Deputy Standards of Conduct Counselors or you may contact the U.S. Office of Special Counsel at 1-800-854-2824.

## VIII.  Post-Employment Restrictions

The last area we will discuss today is the post-Government employment restrictions under the 18 U.S.C. § 207 and the 41 U.S.C. § 423(d) (Procurement Integrity).

## A.  18 U.S.C. 207

The principal statute dealing with post-employment is 18 U.S.C. §207, which contains several restrictions on the representation by a former Government employee on behalf of another person on particular matters that the former employee worked on while a Government employee.   This statute places six restrictions on the post-Government activities of former Government employees.

Of the six prohibitions, only three of the six may apply to GSA associates.  They are:

1.  18 U.S.C. § 207(a)(1) which precludes a former Government employee from knowingly making, with the intent to influence, any communications to or appearances before an employee of the United States on behalf of another person (except the United States) in connection with a particular matter involving a specific party or parties, in which he/she participated personally and

11

substantially as an employee, and in which the United States is party or has a direct and substantial interest. This lifetime restriction does not apply unless the former Government employee makes a communication to or appearance before the United States on behalf of another person. This restriction does not prohibit a former Government employee from representing himself/herself before the United States or acting on behalf of the United States. Also, it does not bar "behind the scenes" assistance.

2. In addition to the lifetime restriction, a former Government employee may be subject to the two-year restriction at 18 U.S.C. § 207(a)(2). This restriction precludes a former Government employee from knowingly making, with the intent to influence, any communication to or appearance before an employee of the United States on behalf of any other person (except the United States) in connection with a particular matter involving a specific party or parties in which the United States is a party or has a direct and substantial interest and which the former Government employee knows or reasonably should know was actually pending under his/her official responsibility during his/her last year of Government service.

   Official responsibility is defined as "the direct administrative or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct Government action."

   The two year restriction is similar to the lifetime restriction discussed earlier except for the shorter duration and it only requires that the former Government employee have had official responsibility for a particular matter while employed by the Government during his/her last year of Government service. In addition, the restriction applies only to particular matters involving a specific party or parties that was actually pending under the former Government employee's official responsibility during his/her last year of Government service then the restriction does not apply. This prohibition also does not bar "behind the scenes" assistance and does not preclude self-representation.

3. SES Level 5 or 6 employee are subject to the "one-year" cooling off ban under 18 U.S.C.§ 207(c). This ban precludes former senior employees (ES 5 and 6) from knowingly making, with the intent to influence, any communication to or appearance before an employee of GSA, if that communication or appearance is made on behalf of another person (except the United States), in connection with any matter in which he seeks official action by that employee.

These restrictions, however, do not prevent a former employee from representing himself/herself before the United States. Again, a former Government employee is permitted to provide assistance "behind the scenes" to any organization on any particular matters regardless of the employee's prior involvement.

12

DOJ-DS 0013616

### B.  Procurement Integrity Act

In addition to the post Government employment restrictions under 18 U.S.C. § 207, a former Government employee may be subject to the restrictions under the Procurement Integrity Act under 41 U.S.C. 423 (d).   The Procurement Integrity Act provides that a former agency official may not accept compensation as an employee, officer, director or consultant from a contractor that has been awarded a contract within a period of one year after such official:

1.  Served, at the time of the selection of the contractor or the award of a contract to that contractor, as the procuring contracting officer, the source selection authority, a member of the source selection evaluation board, or the chief of a financial or technical evaluation team in a procurement in which that contractor was selected for an award of a contract in excess of $10,000,000;

2.  Served as the program manager, deputy program manager, or administrative contracting officer for a contract in excess of $10,000,000 awarded to that contractor;

3.  Personally made for the Federal agency a decision to-

    a.  Award a contract, subcontract, modification of a contract or subcontract, or a task order or delivery order in excess of $10,000,000 to that contractor;

    b.  Establish overhead or other rates applicable to a contract or contracts for that contractor that are valued in excess of $10,000,000;

    c.  Approve issuance of a contract payment or payments in excess of $10,000,000 to that contractor; or

    d.  Pay or settle a claim in excess of $10,000,000 with that contractor.

Finally, the Procurement Integrity Act provides that an official serving in any of the designated positions **may work immediately for a "division or affiliate" of the contractor, if that division or affiliate does not produce the same or similar products or services as those involved in the contract in excess of 10 million dollars.**

The one-year restriction varies depending upon the role that the agency official played in the selection and actual dates of selection or award.

Compensation includes wages, honoraria, fees, and any other forms of compensation provided directly or indirectly for services rendered.

13

DOJ-DS 0013617

## IX.   Penalties and Disciplinary Actions

A.  A violation of the Standards of Ethical Conduct, Procurement Integrity Act or conflict of interest laws may lead to disciplinary action against an employee.

B.  If administrative disciplinary action is taken against you for violation of the Standards of Ethical Conduct, conflict of interest laws, or procurement integrity law, you may appeal such action in accordance with either the negotiated grievance procedure, the Merit System Protection Board (MSPB) procedures, or the agency administrative grievance procedure.

C.  Remember, a violation of the conflict of interest laws or Procurement Integrity Act could also lead to civil and/or criminal penalties, including fines and/or imprisonment.

## X.   Summary

In conclusion, as we noted throughout this training session, if you have any questions, concerning the standards of conduct, conflict of interest laws or Procurement Integrity Act, you may consult with your Deputy Standards of Conduct Counselor (Attachment 8). Disciplinary action for violating the Standards or any supplemental regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of a Deputy Standards of Conduct Counselor, provided that the employee, in seeking such advice, has made full disclosure of all relevant circumstances. Where the employee's conduct violates a criminal statute, reliance on the advice of a Deputy Standards of Conduct Counselor cannot ensure that the employee will not be prosecuted under that statute. However, good faith reliance on the advice of a Deputy Standards of Conduct Counselor is a factor that may be taken into account by the Department of Justice in the selection of cases for prosecution.

## IX. Questions and Answers

14



**General Services Administration
Annual Ethics Briefing for
Public Financial Disclosure Report Filers**

## Sign-In Sheet

Trainer: _____

Date: _____

| Name (Print) | Telephone Number | Organization Code |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DOJ-DS 0013619

## ACKNOWLEDGMENT OF RECEIPT OF STANDARDS OF CONDUCT
### (Will be filed in official personnel file)

1. I acknowledge that I have received (Check appropriate box):

☐ A copy of the Standards of Ethical Conduct regulations, including Part I of Executive Order 12674; a list of the Deputy Standard of Conduct Counsellors for your area; and a minimum of one hour of official time to review them.

☐ Annual standards of conduct briefing.

☐ Other (Please specify):

2. I acknowledge that it is my duty to comply with the standards of conduct regulations.

| TYPED OR PRINTED NAME OF EMPLOYEE | | |
|---|---|---|
| SIGNATURE OF EMPLOYEE | CORRESP. SYMBOL | |
| | DATE | |
| NAME AND SIGNATURE OF ETHICS TRAINER OR SUPERVISOR CERTIFYING RECEIPT OF ABOVE CHECKED ITEM(S) | | |
| | DATE | |

GENERAL SERVICES ADMINISTRATION

GSA FORM 2160 (REV. 12-82)

DOJ-DS 0013620



GSA Office of General Counsel

## PUBLIC FINANCIAL DISCLOSURE REPORT FILERS ANNUAL ETHICS AND STANDARDS OF CONDUCT TRAINING

I.      Introduction and Purpose

II.     Presidential Memorandum on Standards of Conduct, "14 Principles of Ethical Conduct"

III.    Ethics Team Quiz and Discussion

IV.     Gifts From Outside Sources

V.      Gifts Between Employees

VI.     Acceptance of Non-Federal Source Travel

VII.    Hatch Act Provisions

VIII.   Post-Employment Laws

IX.     Deputy Standards of Conduct Counselor Listing

X.      Questions and Answers

U.S. General Services Administration
1800 F Street, NW
Washington, DC 20405-0002
www.gsa.gov

DOJ-DS 0013621

**ATTACHMENT 1**

## NEW PRESIDENTIAL MEMORANDUM ON ETHICAL CONDUCT

DOJ-DS 0013622

MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

SUBJECT:          Standards of Official Conduct

Everyone who enters into public service for the United States has a duty to the American people to maintain the highest standards of integrity in Government. I ask you to ensure that all personnel within your departments and agencies are familiar with, and faithfully observe, applicable ethics laws and regulations, including the following general principles from the Standards of Ethical Conduct for Employees of the Executive Branch:

(1) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain.

(2) Employees shall not hold financial interests that conflict with the conscientious performance of duty.

(3) Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

(4) An employee shall not, except as permitted by applicable law or regulation, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties.

(5) Employees shall put forth honest effort in the performance of their duties.

(6) Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

(7) Employees shall not use public office for private gain.

(8) Employees shall act impartially and not give preferential treatment to any private organization or individual.

(9) Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.

(10) Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

(12) Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those -- such as Federal, State, or local taxes -- that are imposed by law.

DOJ-DS 0013623

(13) Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age, or handicap.

(14) Employees shall endeavor to avoid any actions creating the appearance that they are violating applicable law or the ethical standards in applicable regulations.

Executive branch employees should also be fully aware that their post-employment activities with respect to lobbying and other forms of representation will be bound by the restrictions of 18 U.S.C. 207.

Please thank the personnel of your departments and agencies for their commitment to maintain the highest standards of integrity in Government as we serve the American people.

**ATTACHMENT 2**

# ETHICS QUIZ

DOJ-DS 0013625

# GIFTS FROM OUTSIDE SOURCES
## Ethics Quiz

Most executive branch employees know there are rules about whether or when they may receive gifts from outside sources. The following questions will test your knowledge of the gifts from outside sources rules.

**Q:** Can Federal employees accept gifts given because of their official position or from contractors?

_____

_____

**Q:** Can I accept any gift as long as it is not worth more than $20?

_____

_____

_____

**Q:** Is there a more generous exception for holiday celebrations? Every year, some prohibited sources host holiday parties and invite employees from our office and throughout our agency to attend.

_____

**Q:** I work in a Federal facility alongside employees of a company that is an agency contractor. I recently got married and the contractor employees want to contribute money to purchase a microwave oven for me as a wedding gift. Could I accept that gift?

_____

**Q:** My brother-in-law works for a firm that does business with my agency. May I accept a gift from him?

_____

**Q:** Let's say that one of my long-time close friends performs contract work for my agency and is therefore a prohibited source. May I accept gifts from her?

_____

_____

**Q:** Are discounts available to the public or offered to all Government employees prohibited?

_____

**Q:** I sometimes receive invitations of free attendance for events hosted by private sector companies and other sponsors that do business with my agency. These events are very useful for both me and the agency because I learn about industry trends and make professional contacts. If my supervisor approves of me attending these kinds of events, is it okay for me to accept the offer of free attendance?

_____

**Q:** What do I do with a gift that I cannot accept?

_____

**ATTACHMENT 3**

**SUMMARY OF**

**GIFTS FROM OUTSIDE SOURCES (SUBPART B)**

DOJ-DS 0013627

### SYNOPSIS OF SUBPART B - GIFTS FROM OUTSIDE SOURCES

BASIC PROHIBITION ON GIFTS FROM OUTSIDE SOURCES. An employee shall not solicit or accept a gift given because of his official position or from a prohibited source. A prohibited source is defined as any person, including any organization more than half of whose members are persons:

Seeking official action by his agency;

Doing or seeking to do business with his agency;

Regulated by his agency; or

Substantially affected by the performance of his duties.

DEFINITION OF A GIFT. The term "gift" includes almost anything of monetary value. However, it does not include:

Coffee, donuts and similar modest items of food and refreshments when offered other than as part of a meal;

Greeting cards and most plaques, certificates and trophies;

Prizes in contests open to the public;

Commercial discounts available to the general public or to all Government or military personnel;

Commercial loans, and pensions and similar benefits.

Anything paid for by the Government, secured by the Government under Government contract or accepted by the Government in accordance with a statute;

Anything for which the employee pays market value;

EXCEPTIONS. Subject to the limitations noted below, there are exceptions which will permit an employee to accept:

Unsolicited gifts with a market value of $20 or less per occasion, aggregating no more than $50 in a calendar year from any one source (this exception does not permit gifts of cash or investment interests);

Gifts when clearly motivated by a family relationship or personal friendship;

Commercial discounts and similar benefits offered to groups in which membership is not related to Government employment or, if membership is related to Government employment, where the same offer is broadly available to the public through similar groups, and certain benefits offered by professional associations or by persons who are not prohibited sources.

DOJ-DS 0013628

Certain awards and honorary degrees;

Gifts resulting from the outside business activities of employees and their spouses;

Travel and entertainment in connection with employment discussions;

Certain gifts from political organizations;

Free attendance provided by the sponsor of an event for the day on which an employee is speaking or presenting information at the event;

Free attendance provided by the sponsor of a widely-attended gathering of mutual interest to a number of parties where the necessary determination of agency interest has been made;

Invitations to certain social events extended by persons who are not prohibited sources, provided no one is charged a fee to attend the event;

Certain gifts of food and entertainment in foreign areas;

Gifts accepted by the employee under a specific statute, such as 5 U.S.C. 4111 and 7342, or pursuant to a supplemental agency regulation.

LIMITATIONS ON USE EXCEPTIONS. An employee may not use any of the exceptions noted above to solicit or coerce the offering of a gift or to accept gifts:

For being influenced in the performance of official duties;

In violation of any statute;

So frequently as to appear to be using public office for private gain; or

In violation of applicable procurement policies regarding participation in vendor promotional training.

DISPOSITION OF GIFTS. When an employee cannot accept a gift, the employee should pay the donor its market value. If the gift is a tangible item, the employee may instead return the gift. Subject to approval, however, perishable items may be donated to a charity, destroyed or shared within the office.

**ATTACHMENT 4**

## SUMMARY OF

## GIFTS BETWEEN EMPLOYEES (SUBPART C)

DOJ-DS 0013630

## SYNOPSIS OF SUBPART C - GIFTS BETWEEN EMPLOYEES

BASIC PROHIBITION ON GIFTS BETWEEN EMPLOYEES. An employee shall not:

> Give or solicit for a gift to an official superior; or

> Accept a gift from a lower-paid employee, unless the donor and recipient are personal friends who are not in a superior-subordinate relationship.

DEFINITION OF A GIFT. The term "gift" has the same meaning as in subpart B. However, carpooling and similar arrangements are excluded where there is a proportionate sharing of the cost and effort involved.

DEFINITION OF AN OFFICIAL SUPERIOR. The term "official superior" includes anyone whose official responsibilities involve directing or evaluating the performance of the employee's official duties or those of any other official superior of the employee. The term is not limited to immediate supervisors but applies to officials up the supervisory chain.

EXCEPTIONS. Subject to a limitation on using any exception to coerce a gift from a subordinate, there are exceptions that:

> On an occasional basis, including birthdays and other occasions when gifts are traditionally exchanged, permit giving and accepting:

>> Items other than cash aggregating $10 or less per occasion;

>> Food and refreshments shared in the office;

>> Personal hospitality at a residence;

>> Appropriate hostess gifts; and

>> Leave sharing under OPM regulations;

> On infrequent occasions of personal significance, such as marriage, and on occasions that terminate the superior-subordinate relationship, such as retirement, permit giving and accepting gifts appropriate to the occasion; and

> Permit voluntary contributions of nominal amounts to be made or solicited for gifts of food and refreshments to be shared in the office or for group gifts on occasions such as marriage or retirement described in the preceding paragraph.

DOJ-DS 0013631

**ATTACHMENT 5**

SUMMARY OF

GSA NON-FEDERAL SOURCE TRAVEL POLICY

DOJ-DS 0013632

GSA Implementation of Federal Travel Regulation on Acceptance of Travel
From a Non-Federal Source

1.    Restrictions.

    a.  As General Services Administration (GSA) policy has always precluded the
      acceptance of payment for travel from conflicting sources (generally
      speaking, GSA contractors).  GSA's internal implementation of the chapters
      300-304 of the Federal Travel Regulation (FTR) prohibits acceptance of
      payment from conflicting non-Federal sources.

    b.  Payment from a non-Federal source may only be accepted in the form of
      "payment in kind" which includes "goods or services provided in lieu of funds
      paid to an agency by check or similar instrument for travel, subsistence,
      agency related expenses." This limitation is needed to eliminate the problems
      associated with collection and/or nonpayment.

    c.  Acceptance of payments from a non-Federal source for an accompanying
      spouse is prohibited in all cases.

    d.  Acceptance of payments in access of the maximum rates prescribed for
      actual subsistence reimbursement (300 per cent of maximum per diem rate)
      by chapter 3-21 of the GSA HB, GSA Internal Travel Regulations and Control
      of Official Travel, PFM P 4290.1, is prohibited in all cases.

    e.  The General Counsel (L) must review all such travel, in advance, and will
      make a determination as to whether GSA will accept the offer of payment in
      kind from the non-Federal source (see Section 4, below).

2.    Letter of Commitment. A written letter of commitment is required from the
    non-Federal source before travel orders can be prepared.

    a.  The commitment letter must include the following items:

        (1)  The name and address of the non-Federal source.

        (2)  The exact nature of the meeting, conference or similar function.

        (3)  An explanation as to why the non-Federal source wishes to pay for
            this travel.

DOJ-DS 0013633

-2-

    (4)    Date and place of the meeting, conference or similar function.

    *(5)*    The names and positions of those persons for whom payment in kind is offered.

    (6)    The precise number of days for which payment in kind is offered.

    (7)    For each day, a detailed listing of the expenses (e.g., meals, lodging, airfare, registration fees, etc.) for which the non-Federal source has offered payment in kind and the associated dollar value.

b.  A copy of the letter of commitment showing the written concurrence of the General Counsel shall be attached to the GSA Form 87, Official TDY Travel Authorization, when submitted to the servicing regional Finance Division.

3.    <u>Preparation of Travel Orders</u>. A GSA Form 87 must be prepared for each traveler.

a.  For each day, clearly indicate in Block 22, Remarks, the allowances or expenses which are being paid for (payment in kind) by the non-Federal source.

b.  For each day, clearly indicate in Block 22, which allowances (meals and incidental expenses, lodging, transportation) that GSA is funding and the maximum daily rates authorized.

c.  Only those costs being funded by GSA shall be reflected in Block 23, Estimated Cost to Government.

d.  The advance amount authorized in Block *25,* Advance Authorized, is to be computed in accordance with chapter 11-4 of PFM P 4920.1, but based only on those out of pocket expenses being funded by GSA.

e.  All GSA internal travel regulations regarding justification for and authorization of premium-class air accommodations shall be adhered to, even when the ticket is provided by the non-Federal source.

f.  Authority to sign in Block 27 (except for officials listed in g., below) is delegated to Heads of Services and Staff Offices and Regional Administrators and may not be redelegated.

DOJ-DS 0013634

-3-

     g.  Authority to sign in Block 27 for travel of Heads of Services and Staff Offices and Regional Administrators is limited to the Administrator or Deputy Administrator.

4.    Advance Review of Travel by General Counsel.

     a.  All travel of this nature must be reviewed in advance by the General Counsel (L), who will make a determination as to whether or not GSA will accept the offer from the non-Federal source.

     b.  The following documentation must be forwarded to the General Counsel with the request for review:

        (1)  A written memorandum from the supervisor indicating that the travel is related to the official duties of the employee. The memorandum should set forth the nature of the meeting or similar function and how it relates to the official duties of the employee.

        (2)  The original "Letter of Commitment" from the non-Federal source as described in Section 2, above.

        (3)  The GSA Form 87, Official TDY Travel Authorization.

5.    Vouchering.

     a.  The traveler shall only voucher for those travel expenses which are being funded by GSA as authorized on the GSA Form 87.

     b.  Travelers may voucher for any allowable miscellaneous expenses (see chapter 5 of PFM P 4290.1) and allowable local transportation expenses which, normally, are not specifically authorized on the GSA Form 87 and which are not paid by the non-Federal source.

     c.  If all expenses are paid by the non-Federal source, the traveler shall submit a no-cost voucher to close out the Accounting Control Transaction number and generate appropriate entries to account for the gift.

     d.  If additional payments in-kind are made by the non-Federal source which were not in the original commitment letter, an annotated commitment letter shall be attached to the voucher and a copy forwarded (by the applicable Executive Office) to the General Counsel.

-4-

6.    Processing by Finance.

    a.    The number 2 copy of GSA Form 87 will be obligated for the amounts in Block 23 in the usual manner.

    b.    The SF 1012, Travel Voucher, will be processed and the travel reimbursed in the usual manner.

    c.    Upon completion of travel and based on the cost figures in the letter of commitment, an entry will be made in Pegasys to record the amount of the gift for which the account benefited. This entry will not only show the income to the account but will show a corresponding expense with zero net impact on the account. Recording an expense will ensure that the accounts reflect the true cost of that activity's official travel.

    d.    The regional Finance Divisions shall forward copies applicable travel vouchers to the Office of General Counsel to facilitate the preparation of the semiannual reports as require by section 7 below.

7.    Reporting.

The General Counsel (L), in coordination with the Office of Finance, shall be responsible for submitting the semi-annual reports to the Director of the Office of Government Ethics.

**ATTACHMENT 6**

# SUMMARY OF

# HATCH ACT (POLITICAL ACTIVITIES)

DOJ-DS 0013637

# POLITICAL ACTIVITIES OF MOST FEDERAL EMPLOYEES
## The Hatch Act Reform Amendments and its implementing regulations

The following list contains some examples of both permissible and prohibited activities for most GSA employees, with the exception of career SES employees and GSBCA administrative judges. Employees may take an active part in political activities, including political management and political campaigns, to the extent not expressly prohibited by law or the regulation at 5 CFR Part 734.

## Permissible Activities

- May register and vote
- May run as a candidate for public office in nonpartisan elections
- May run as an independent candidate in a partisan election for local office of a municipality or political subdivision designated by OPM (See 5 CFR Part 733)
- May serve as an officer of a political party or other political group, a member of a national, state, or local committee, or a political party
- May express opinions about candidates and issues
- May assist in voter registration drives
- May attend political fundraising functions
- May be politically active in connection with a question which is not specifically identified with a political party, such as a referendum, constitutional amendments, and municipal ordinances
- May participate in a political convention, rally or other political gathering
- May organize or reorganize a political party or political group
- May initiate, circulate or sign nominating petitions
- May campaign for or against candidates
- May distribute campaign literature
- May drive voters to the polls
- May serve as recorder, watcher, challenger, or similar officer at polling places
- May serve as election judge, clerk, or in a similar position
- May be a member of a political party or other political group and participate in its activities
- May participate in nonpartisan activities of a civic, community, social, labor or professional organization, or of a similar organization
- May attend and participate in the business of nominating caucuses of political parties
- May make a political contribution to a political party, political group, campaign committee of a candidate for political office in a partisan election and multicandidate political committee of a Federal labor or employee organization
- May make campaign speeches for candidates in partisan elections

## Prohibited Activities

- May not use official authority or influence to interfere with or affect an election
- May not solicit, accept or receive political contributions unless the person who is solicited for a political contribution belongs to the same Federal labor organization, or Federal employee organization, as the employee who solicits, accepts, or receives the contribution; the person who is solicited for a political contribution is not a subordinate employee; and the request is for a contribution to the multicandidate political committee of a Federal labor organization or to the multicandidate political committee of a Federal employee organization in existence on October 6, 1993
- May not knowingly solicit or discourage the political activity of any person who has business before the agency
- May not engage in political activity while on duty
- May not engage in political activity while in any government office space
- May not engage in political activity while wearing a uniform, badge, insignia, or other similar item that identifies the agency or the position of the employee
- May not engage in political activity while using a Government owned or leased vehicle or while using a privately-owned vehicle in the discharge of official duty
- May not solicit, accept, or receive political contributions from the general public
- May not solicit, accept, or receive uncompensated volunteer services from an individual who is a subordinate
- May not be a candidate for partisan political office
- May not use or allow the use of official title in connection with political fundraising
- May not personally solicit political contributions in a speech or keynote address given at a fundraiser
- May not personally solicit, accept or receive political contributions for spouse or family member who is running for partisan political office

DOJ-DS 0013638

## POLITICAL ACTIVITIES OF A LIMITED GROUP OF FEDERAL EMPLOYEES

The Hatch Act Reform Amendments and its implementing regulations continue to ban partisan political activities by employees in certain positions, including career Senior Executive Service (SES) employees and members of the GSA Board of Contract Appeals (GSBCA). The following list contains some examples of both permissible and prohibited activities for this specific group of employees.

### Permissible Activities

Each covered employee retains the right to participate in any of the following political activities, as long as the activity is not performed in concert with a political party, partisan political group, or a candidate for partisan political office:

- May express opinion about candidates or issues
- May register and vote in any election
- May take an active part, as a candidate, or in support of a candidate in nonpartisan election
- May serve as an election judge or clerk, or in a similar position, to perform nonpartisan duties as prescribed by state and local law
- May sign nominating petitions
- May be politically active in connection with a question which is not specifically identified with a political party, such as a constitutional amendment, approval of a municipal ordinance, or issue of a similar character
- May participate in the nonpartisan activities of a civic, community, social, labor, or professional organization, or of a similar organization
- May be a member of a political party or other partisan political group and participate in its activities to the extent consistent with other Federal law
- May attend a political convention, rally, fundraising function, or other political gathering
- May make a financial contribution to a political party, partisan political group, or to the campaign committee of a candidate for partisan political office

### Prohibited Activities

- May not be a candidate for partisan political office
- May not take an active part in managing the political campaign of a candidate for partisan political office or a candidate for political party office
- May not campaign for or against a candidate for partisan political office
- May not use official authority or influence to interfere with or affect the result of an election
- May not solicit, accept, or receive political contributions
- May not organize, sell tickets to, promote, or actively participate in a fundraising activity of a candidate for partisan political office, a political party, or partisan political group
- May not participate in political activity while on duty
- May not participate in political activity while wearing a uniform, badge, or insignia that identifies the agency or the position of the employee
- May not participate in political activity while in any government office space
- May not participate in political activity while in a government owned or leased vehicle or while using a privately owned vehicle in the discharge of official duties
- May not serve as an officer of a political party, a member of a national, state or local committee of a political party, an officer or member of a committee of a partisan political group, or be a candidate for any of these positions
- May not organize or reorganize a political party organization or partisan political group
- May not serve as a delegate, alternate, or proxy to a political party convention
- May not address a convention, caucus, rally, or similar gathering of a political party or partisan political group in support of or in opposition to a candidate for partisan political office or political party office, if such address is done in concert with such a candidate, political party, or partisan political group
- May not canvass for votes in support of or in opposition to a candidate for partisan political office
- May not endorse or oppose a candidate for partisan political office or a candidate for political party office in a political advertisement, broadcast, campaign literature, or similar material
- May not initiate or circulate a partisan nominating petition
- May not drive voters to polling places in concert with a political party, partisan political group or a candidate for partisan political office

DOJ-DS 0013639

## Employees Who Are Prohibited From Engaging in Political Activity:

Federal employees in the following agencies, divisions or positions are prohibited from engaging in partisan political campaigns or partisan political management:

| | | |
|---|---|---|
| Administrative Law Judges | Federal Bureau of Investigations | Office of Criminal Investigations of the IRS |
| Career members of the Senior Executive Service | Federal Election Commission | Office of Investigative Program of the U.S. Customs Service |
| Central Intelligence Agency | Merit Systems Protection Board | Office of Law Enforcement of the Bureau of Alcohol, Tobacco, and Firearms |
| Contract Appeals Board Members | National Imagery and Mapping Agency | Office of Special Counsel |
| Criminal Division of the Department of Justice | National Security Counsel | Secret Service |
| Defense Intelligence Agency | National Security Agency | |

## The U.S. Office of Special Counsel and the Hatch Act

The U.S. Office of Special Counsel (OSC) is authorized by law to provide Hatch Act advisory opinions. These opinions respond to questions from government employees and others about whether or not they may engage in specific political activities under the Act.

The OSC also enforces Hatch Act provisions on permissible and impermissible political activity by government employees. It is the only agency authorized to prosecute violations of the Act, which are adjudicated by the Merit Systems Protection Board (MSPB).

## Penalties:

The MSPB may impose any penalty ranging from a 30-day suspension without pay to removal from federal service.

## How to File a Hatch Act Complaint:

Individuals may report suspected Hatch Act violations to the OSC. Complaints of such activities should be submitted to the OSC in writing. A complaint form can be found at www.osc.gov.

## How to Obtain a Hatch Act Advisory Opinion:

Individuals may request oral and written opinions advice about activities which are permitted or prohibited by the Hatch Act, and receive an oral or written opinion, as appropriate, from the OSC. Requests may be submitted to:



**HATCH ACT UNIT**
**U.S. Office of Special Counsel**
1730 M Street, NW (Suite 300)
Washington, DC 20036-4505
Tel:    (800) 85-HATCH
         (202) 653-7143
Fax:   (202) 653-5151

E-mail:  hatchact@osc.gov

DOJ-DS 0013640

# POLITICAL ACTIVITY AND THE FEDERAL EMPLOYEE

### BY

## THE U.S. OFFICE OF SPECIAL COUNSEL

**The Hatch Act governs the political activity of government employees in the executive branch. Under the Hatch Act, as amended (5 U.S.C. Section 7321, et seq.), most federal and D.C. government employees may take an active part in partisan political management and campaigns. These federal employees:**

| | |
|---|---|
| may be candidates for public office in nonpartisan elections; *EXAMPLE: An employee may run for school board in the District of Columbia because school board elections in the District are nonpartisan.* | may join and be an active member of a political party or club; *EXAMPLE: An employee may serve as a delegate, alternate or proxy to a state or national party convention.* |
| may register and vote as they choose; *EXAMPLE: An employee may register to vote Republican and vote for a Republican candidate even though his boss is a Democratic political appointee.* | may sign and circulate nominating petitions; *EXAMPLE: An employee may collect signatures for the nominating petitions of individuals who are running for public office.* |
| may assist in voter registration drives; *EXAMPLE: An employee may assist in a voter registration drive sponsored by the League of Women Voters.* | may campaign for or against referendum questions, constitutional amendments, and municipal ordinances; *EXAMPLE: An employee may be politically active in connection with a referendum question that seeks to ban smoking in eating establishments.* |
| may express opinions about candidates and issues; *EXAMPLE: An employee may write a letter to the editor at the Washington Post which expresses her personal opinion on a candidate or political issue.* | may campaign for or against candidates in partisan elections; *EXAMPLE: An employee may walk around his neighborhood and introduce a candidate, who is running in a partisan election, to his neighbors.* |
| may contribute money to political organizations; *EXAMPLE: An employee may make a monetary contribution to any candidate, political party, club or organization of her choosing.* | may distribute campaign literature in partisan elections; *EXAMPLE: An employee may stand outside of a polling place on election day and hand out brochures on behalf of a partisan political candidate or political party.* |
| may attend and give a speech at a political fundraiser, rally or meeting; *EXAMPLE: When an employee is off duty she may attend and give a speech or keynote address at a political fundraiser.* | may hold office in political clubs or parties; *EXAMPLE: An employee may serve as a vice-president of a political action committee, as long as the position does not involve personal solicitation, acceptance, or receipt of political contribution.* |

**There continue to be important restrictions on employees' political activity. Whether on or off duty, federal employees:**

| | |
|---|---|
| may not use official authority or influence to interfere with an election; *EXAMPLE: An employee who signs a letter seeking volunteer services from individuals may not identify himself by using his official title.* | may not engage in political activity while on duty, in a government office, while wearing an official uniform or while using a government vehicle; *EXAMPLE: An employee may not display a political poster, bumper sticker or campaign button in his or her office or in the common areas of a federal building.* |
| may not solicit or discourage political activity of anyone with business before her agency; *EXAMPLE: An employee with agency wide responsibility may address a large, diverse group to seek support for a partisan political candidate as long as the group has not been specifically targeted as having matters before the employing agency.* | may not become a candidate in a partisan election; *EXAMPLE: An employee may not become a candidate in an election where any of the candidates are running as representatives of political parties, usually the Democratic or Republican parties.* |
| may not solicit, accept or receive political contributions (may be done in certain limited situations by federal labor or other employee organizations); *EXAMPLE: An employee may not host a fundraiser at his home or solicit funds at any other fundraiser for a partisan candidate.* | |

DOJ-DS 0013641

**ATTACHMENT 7**

# POST-EMPLOYMENT LAWS

DOJ-DS 0013642

February 17, 2000

## SUMMARY OF POST-EMPLOYMENT RESTRICTIONS OF 18 U.S.C. § 207

### I.    INTRODUCTION

Since its enactment in 1962, 18 U.S.C. § 207 has remained the primary source of post-employment restrictions applicable to officers and employees of the executive branch.    Unlike certain other post-employment laws, the provisions of section 207 apply to individuals regardless of the executive department or agency in which they served while employed by the Government and regardless of the particular duties they performed.

Section 207 has been amended several times over the years. For example, section 207 was substantially revised by the Ethics Reform Act of 1989.   As a consequence of these amendments, former employees are subject to varying post-employment restrictions depending upon the date of their termination from Government service or from certain high-level positions.

Individuals who terminated service prior to January 1, 1991, should continue to consult the regulations published at Part 2637 of title 5, _Code of Federal Regulations_, for guidance concerning applicable provisions of section 207.    Individuals terminating service on or after January 1, 1991, should consult this summary pending completion of revised regulatory guidance at 5 C.F.R. Part 2641.   As of this date, Part 2641 contains guidance concerning 18 U.S.C. § 207(c) only.   (Except where the underlying statutory provision has changed, Part 2637 remains persuasive concerning the interpretation of the newer version of 18 U.S.C. § 207.)

This summary was prepared by the U.S. Office of Government Ethics (OGE) in 1990, was redistributed in November 1992, and is being updated and reissued herewith.  While it has been coordinated with the Department of Justice, employees are cautioned that it reflects only a preliminary interpretation of the amendments to 18 U.S.C. § 207 enacted by the Ethics Reform Act of 1989 and thereafter.

### II.    SUMMARY OF RESTRICTIONS

Effective January 1, 1991, section 207 of title 18 sets forth six substantive prohibitions restricting the activities of individuals who leave Government service or who leave certain high-level positions in the executive branch.    Each of these restrictions is discussed separately below, followed by a discussion of several statutory exceptions.

None of the provisions bar any individual, regardless of rank or position, from accepting employment with any private or public

DOJ-DS 00136

employer after Government service.  Section 207 only prohibits individuals from engaging in certain activities on behalf of persons or entities other than the United States, whether or not done for compensation.  None of the restrictions bar self-representation.

A.  **APPLICABILITY**

The first three restrictions [§§ 207(a)(1), (a)(2), and (b)] are applicable to former officers or employees of the executive branch.  They also apply to former senior or very senior employees as those terms are described below, and to former special Government employees.  According to 18 U.S.C. § 202, a "special Government employee" includes an individual who is "retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis...." [Enlisted personnel of the uniformed services are not "officers" or "employees" for purposes of section 207.]

The fourth restriction [§ 207(c)] is applicable only to former "senior personnel" (hereinafter referred to as "senior employees").  A senior employee is any employee (other than an individual covered by the fifth restriction) who was employed in a position for which the rate of pay is specified in or fixed according to the Executive Schedule, in a position for which the rate of basic pay is equal to or greater than the rate of basic pay payable for level 5 of the Senior Executive Service, or in a position which is held by an active duty commissioned officer of the uniformed services who is serving in a grade or rank for which the pay grade is O-7 or above.  The term includes those individuals appointed by the President to a position under 3 U.S.C. § 105(a)(2)(B) or by the Vice President to a position under 3 U.S.C. § 106(a)(1)(B).  An individual is subject to section 207(c) as a result of service as a special Government employee only if the individual served 60 or more days as a special Government employee during the one-year period before terminating service as a senior employee.

The fifth restriction [§ 207(d)] applies only to former "very senior personnel" (hereinafter referred to as "very senior employees").  A very senior employee is any employee who was employed in a position at the rate of pay payable for level I of the Executive Schedule, or in a position in the Executive Office of the President at a rate of pay equal to or greater than the rate of pay payable for level II of the Executive Schedule.  The term includes the Vice President and those appointed by the President to a position under 3 U.S.C. § 105(a)(2)(A) or by the Vice President to a position under 3 U.S.C. § 106(a)(1)(A).

DOJ-DS 0013644

2

The sixth restriction [§ 207(f)] applies to individuals who formerly served in either a senior or very senior position.

## B. SUBSTANTIVE RESTRICTIONS

1. **Basic Prohibition of 18 U.S.C. § 207(a)(1).** No former employee may knowingly make, with the intent to influence, any communication to or appearance before an employee of the United States on behalf of any other person (except the United States) in connection with a particular matter involving a specific party or parties, in which he participated personally and substantially as an employee, and in which the United States is a party or has a direct and substantial interest.

_Discussion._ This is a lifetime restriction that commences upon an employee's termination from Government service. The target of this provision is the former employee who participates in a matter while employed by the Government and who later "switches sides" by representing another person on the same matter before the United States. The restriction is measured by the duration of the matter in which the former employee participated.

The restriction does not apply unless a former employee communicates to or makes an appearance before the United States on behalf of some other person. For these purposes, the "United States" refers to any employee of any department, agency, court, or court-martial of the United States (but not of the District of Columbia). The term does not include the Congress, and therefore communications to or appearances before Members of Congress and legislative staff are not prohibited by this provision.

A former employee is not prohibited by this restriction from providing "behind-the-scenes" assistance in connection with the representation of another person. Moreover, the restriction prohibits only those communications and appearances that are made "with the intent to influence." A "communication" can be made orally, in writing, or through electronic transmission. An "appearance" extends to a former employee's mere physical presence at a proceeding when the circumstances make it clear that his attendance is intended to influence the United States. An "intent to influence" the United States may be found if the communication or appearance is made for the purpose of seeking a discretionary Government ruling, benefit, approval, or other action, or is made for the purpose of influencing Government action in connection with a matter which the former employee knows involves an appreciable element of dispute concerning the particular Government action to be taken. Accordingly, the prohibition does not apply to an appearance or communication involving purely social contacts, a request for publicly available documents, or a request for purely factual information or the supplying of such information.

3

DOJ-DS 0013645

A communication to or appearance before the United States is not prohibited unless it concerns the same particular matter involving a specific party or parties in which the former employee participated personally and substantially while employed by the Government. An employee can participate "personally" in a matter even though he merely directs a subordinate's participation. He participates "substantially" if his involvement is of significance to the matter. Thus, while a series of peripheral involvements may be insubstantial, participation in a single critical step may be substantial. The term "particular matter" includes any investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding. In determining whether two situations are part of the same particular matter, one should consider all relevant factors, including the amount of time elapsed and the extent to which the matters involve the same basic facts or issues and the same or related parties. Even if a post-employment communication or appearance would concern the same particular matter, however, the representational bar will not apply unless the United States is a party or has a direct and substantial interest in that matter at the time of the post-employment representation.

The provision requires that an employee's official participation in a particular matter have taken place at a time when the matter involved a specific party (or parties). It also requires that the matter involve some specific party or parties at the time of the post-employment communication or appearance (although these can be different parties than were involved with the matter at the time of the employee's participation). General rulemakings do not usually involve specific parties. Consequently, it is quite possible that an employee who participated in a rulemaking while employed by the Government will, after leaving Government service, be able to appear before his former agency concerning the application of that rule to his new private sector employer without violating the lifetime restriction. Contracts, on the other hand, are always particular matters involving specific parties. A Government procurement has specific parties identified to it when a bid or proposal is received in response to a solicitation, if not before.

The provision does not prohibit a former employee from representing himself before the United States (as distinguished from a corporation or consulting firm). Moreover, a former employee is not prohibited from acting on behalf of the United States (or the Congress). Thus, even though an individual may once have worked on a matter while employed by the Government, he will not, while subsequently reemployed by the Government, be barred from communicating with any employee of the United States concerning that matter if he does so as part of his official duties. A former employee does not act on behalf of the United States, however, merely because the United States may share the

4

DOJ-DS 0013646

same objective as the person whom the former employee is representing.

2. __Basic Prohibition of 18 U.S.C. § 207(a)(2).__ For two years after his Government service terminates, no former employee may knowingly make, with the intent to influence, any communication to or appearance before an employee of the United States on behalf of any other person (except the United States) in connection with a particular matter involving a specific party or parties, in which the United States is a party or has a direct and substantial interest, and which such person knows or reasonably should know was actually pending under his official responsibility within the one-year period prior to the termination of his employment with the United States.

__Discussion.__  This is a two-year restriction that commences upon an employee's termination from Government service.

This provision is identical to the lifetime restriction discussed above except that it is of shorter duration and requires only that an individual have had official responsibility for a matter while employed by the Government, not that he have participated personally and substantially in that matter. Like the lifetime restriction, it prohibits certain communications and appearances made on behalf of any other person or entity except the United States (or the Congress). The communications and appearances prohibited are those made, with the intent to influence, to or before any employee of a department, agency, court, or court-martial of the United States. The representational bar applies with respect to any particular matter involving a specific party or parties that was actually pending under the former employee's official responsibility at some time during his last year of Government service.

"Official responsibility" is defined in 18 U.S.C. § 202 as "the direct administrative or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct Government action." The scope of an employee's official responsibility is usually determined by those areas assigned by statute, regulation, executive order, or job description. All particular matters under consideration in an agency are under the official responsibility of the agency head, and each is under that of any intermediate supervisor having responsibility for the activities of a subordinate employee who actually participates in the matter. An employee's recusal from or other non-participation in a matter does not remove it from his official responsibility.

A matter was "actually pending" under a former employee's official responsibility if the matter was in fact referred to or

DOJ-DS 0013647

under consideration by persons within the employee's area of responsibility. A former employee is not subject to the restriction, however, unless at the time of the proposed representation of another he knows or reasonably should know that the matter had been under his official responsibility during his last year of Government service.

3. **Basic Prohibition of 18 U.S.C. § 207(b).** For one year after his Government service terminates, no former employee may knowingly represent, aid, or advise on the basis of covered information, any other person (except the United States) concerning any ongoing trade or treaty negotiation in which, during his last year of Government service, he participated personally and substantially as an employee.

Discussion. This is a one-year restriction that commences upon an employee's termination from Government service. Extending to certain "behind-the-scenes" assistance, this provision can serve to augment the representational bar provided for in the lifetime restriction discussed above.

The restriction set forth in section 207(b) does not apply unless, during the one-year period before he left Government, an employee participated personally and substantially in an "ongoing" trade or treaty negotiation that is covered by the statute. It is not necessary that a former employee have had actual contact with foreign parties in order to have participated personally and substantially in a trade or treaty negotiation.

Trade negotiations covered by the statute are those that the President determines to undertake pursuant to section 1102 of the Omnibus Trade and Competitiveness Act of 1988 (19 U.S.C. § 2902). Unless there is an earlier public announcement of a determination by the President, a trade negotiation commences to be "ongoing" when, at least 90 days before entering into a trade agreement, the President notifies both the House of Representatives and the Senate of his intention to enter into an agreement (19 U.S.C. § 2903(a)(1)(A)). Whether an employee participated personally and substantially in an "ongoing" trade negotiation is determined by reviewing an employee's participation after trade negotiations commenced. A treaty is an international agreement made by the President that requires the advice and consent of the Senate. A negotiation on a treaty commences to be "ongoing" at the point when both (1) the determination has been made by a competent authority that the outcome of a negotiation will be a treaty, and (2) discussions with a foreign government have begun on a text. Trade and treaty negotiations both cease to be ongoing when an agreement or treaty enters into force or when all parties to the negotiation cease discussion based on a mutual understanding that the agreement or treaty will not be consummated.

DOJ-DS 0013648

Once he has participated in an ongoing negotiation, section 207(b) prohibits a former employee from representing, aiding, or advising any other person concerning a trade or treaty negotiation (that is still ongoing) on the basis of certain "covered" information. "Covered" information refers to agency records which were accessible to the employee, which he knew or should have known were designated as exempt from disclosure under the Freedom of Information Act (e.g., documents that were marked as subject to a national security classification or those otherwise designated in a manner that made it clear they were exempt from release under FOIA), and which concern a negotiation in which the employee participated personally and substantially during his last year of Government service. A former employee is not prohibited from utilizing information from an agency record which, at the time of his post-employment activity, is no longer exempt from disclosure under the Freedom of Information Act.

Only activities that are undertaken on behalf of "any other person" are prohibited by this restriction. Action taken on behalf of the United States (or the Congress) or on behalf of the former employee himself are not prohibited. A former employee "represents" another person when he acts as an agent or attorney for or otherwise communicates or makes an appearance on behalf of that person to or before any third party. For this purpose, a third party includes any employee of the executive, legislative, or judicial branch of the Federal Government, including a Member of Congress. A former employee "aids and advises" another person when he assists that person other than by communicating to or appearing before a third party. A former employee represents, aids, or advises another person "on the basis of" covered information if the former employee's representation, aid, or advice either involves a disclosure of covered information to any person, or could not have been made or rendered had the former employee not had actual knowledge of covered information.

It is important to note that although a post-employment activity may not be prohibited by section 207(b), a former employee must still be careful to comply with other statutory restrictions. For example, even though a trade or treaty negotiation may not yet have become "ongoing" at the time of an employee's official participation, the negotiation may nevertheless have had specific parties identified to it, thus triggering the lifetime restriction set forth in section 207(a)(1).

4. **Basic Prohibition of 18 U.S.C. § 207(c).** For one year after service in a "senior" position terminates, no former "senior" employee may knowingly make, with the intent to influence, any communication to or appearance before an employee of a department or agency in which he served in any capacity during the one-year period prior to termination from "senior" service, if that communication or appearance is made on behalf of any other person

7

(except the United States), in connection with any matter concerning which he seeks official action by that employee.

Discussion. This is a one-year restriction. The one-year period is measured from the date when an employee ceases to be a senior employee, not from the termination of Government service, unless the two occur simultaneously. The purpose of this one-year "cooling off" period is to allow for a period of adjustment to new roles for the former senior employee and the agency he served, and to diminish any appearance that Government decisions might be affected by the improper use by an individual of his former senior position. As already noted, this provision is applicable to "senior" employees, but not to "very senior" employees.

Like the lifetime restriction discussed above, this provision prohibits communications to and appearances before the Government and does not prohibit "behind-the-scenes" assistance. Unlike the lifetime restriction, however, this one-year restriction applies only to a "senior" employee, does not require that the former employee have ever been in any way involved in the matter that is the subject of the communication or appearance, and only prohibits communications to or appearances before employees of any department or agency in which he formerly served in any capacity during the one-year period prior to his termination from senior service. The representational bar applies with respect to any matter, whether or not involving a specific party, concerning which the former senior employee is seeking official action by a current employee of such department or agency on behalf of any other person except the United States (or the Congress).

As described below, section 207 provides for two methods by which the restrictions of section 207(c) can be narrowed or eliminated. The first is through the designation of separate departmental or agency components and the second is through the exemption of a position or category of positions from coverage. Not all senior employees are eligible to benefit from either or both of these procedures. A former senior employee is ineligible to benefit from these procedures if he is subject to section 207(c) by virtue of having served in a position for which the rate of pay is specified in or fixed according to the Executive Schedule or by virtue of having been appointed by the President to a position under 3 U.S.C. § 105(a)(2)(B) or by the Vice President to a position under 3 U.S.C. § 106(a)(1)(B).

As has been noted, the representational bar usually extends to any department or agency in which the former senior employee served in any capacity during the year prior to his termination from senior service. However, certain senior employees may be permitted to communicate to or appear before components of their former department or agency if those components have been designated as separate agencies or bureaus by OGE. For example, although it may

8

not by statute be a separate component, OGE has designated the Defense Logistics Agency as an agency that exercises functions which are separate and distinct from its "parent" department, the Department of Defense. For a list of other designations of separate agencies, see appendix B to 5 C.F.R. part 2641. An individual formerly serving in a parent department or agency would be barred by section 207(c) from making communications to or appearances before any employee of that parent, but would not be barred as to employees of any designated component of that parent. An individual formerly serving in a designated component of a parent department or agency would be barred from communicating to or appearing before any employee of that component, but would not be barred as to any employee of the parent or of any other component. The statute now provides that no agency within the Executive Office of the President may be designated as a separate component.

The restrictions of section 207(c) can be waived altogether as to certain senior employee positions or categories of positions. As a consequence of such exemption, the one-year restriction of section 207(c) will not begin to run upon an employee's termination from such a position. In order to grant an exemption, OGE must receive a request to do so from a department or agency. After review of the request, OGE can grant an exemption or exemptions based upon its determination that as to a particular position or category of positions, the imposition of section 207(c) would create an undue hardship on the department or agency in obtaining qualified personnel and that the granting of the exemption would not create the potential for use of undue influence or advantage.

5.   **Basic Prohibition of 18 U.S.C. § 207(d).**   For one year after service in a "very senior" position terminates, no former "very senior" employee may knowingly make, with the intent to influence, any communication to or appearance before any individual appointed to an Executive Schedule position or before any employee of a department or agency in which he served as a "very senior" employee during the one-year period prior to termination from Government service, if that communication or appearance is made on behalf of any other person (except the United States), in connection with any matter concerning which he seeks official action by that individual or employee.

Discussion.   This is a one-year restriction. The one-year period is measured from the date when an employee ceases to be a very senior employee, not from the termination of Government service, unless the two occur simultaneously.

This provision, applicable only to "very" senior employees, is very similar to the one-year restriction of section 207(c) discussed above. It too prohibits communications to or appearances before employees of certain governmental departments and agencies,

DOJ-DS 0013651

unless on behalf of the United States (or the Congress). A former very senior employee is prohibited by section 207(d) from representing another before any current employee of any department or agency in which he served as a very senior employee during the one-year period prior to his termination from Government service. (Compare section 207(c) which prohibits communications and appearances to current employees of any department or agency in which a former "senior" employee served in any capacity during the one-year period prior to termination from senior service.) A former very senior employee is also prohibited by section 207(d), however, from representing another person before any individual currently appointed to an Executive Schedule position listed in 5 U.S.C. §§ 5312-5316, whether or not that individual is serving in the very senior employee's former department or agency. The representational bar applies to any matter, whether or not involving a specific party, concerning which the former very senior employee is seeking official action by any current officer or employee of the executive branch.

Section 207 does not authorize OGE to designate separate and distinct components within a department or agency as a means of narrowing the scope of section 207(d). Moreover, no very senior employee's position is eligible for exemption from the application of section 207(d).

6. **Basic Prohibition of 18 U.S.C. § 207(f)**. For one year after his service in a "senior" or "very senior" position terminates, no former "senior" employee or former "very senior" employee may knowingly, with the intent to influence a decision of an employee of a department or agency of the United States in carrying out his official duties, represent a foreign entity before any department or agency of the United States or aid or advise a foreign entity.

<u>Discussion</u>. This is a one-year restriction, except that it is permanent as applied to any individual who serves as the United States Trade Representative or Deputy United States Trade Representative. The restriction is measured from the date when an employee ceases to be a senior employee or a very senior employee, not from the termination of Government service, unless the two occur simultaneously.

This restriction prohibits a former senior or very senior employee from representing, aiding, or advising a foreign entity with the intent to influence certain governmental officials. A "foreign entity" means the "government of a foreign country" as defined in section 1(e) of the Foreign Agents Registration Act of 1938 (22 U.S.C. § 611), as amended, or a "foreign political party" as defined in section 1(f) of that Act. The government of a foreign country includes--

DOJ-DS 0013652

10

any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated.    Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States.

A foreign political party includes--

any organization or any other combination of individuals in a country other than the United States, or any unit or branch thereof, having for an aim or purpose, or which is engaged in any activity devoted in whole or in part to, the establishment, administration, control, or acquisition of administration or control, of a government of a foreign country or a subdivision thereof, or the furtherance or influencing of the political or public interests, policies, or relations of a government of a foreign country or a subdivision thereof.

A foreign commercial corporation will not generally be considered a "foreign entity" for purposes of section 207(f) unless it exercises the functions of a sovereign.

A former senior or very senior employee "represents" a foreign entity when he acts as an agent or attorney for or otherwise communicates or makes an appearance on behalf of that entity to or before any employee of a department or agency.    He "aids or advises" a foreign entity when he assists the entity other than by making such a communication or appearance.    Such "behind the scenes" assistance to a foreign entity could, for example, include drafting a proposed communication to an agency, advising on an appearance before a department, or consulting on other strategies designed to persuade departmental or agency decisionmakers to take certain action.    A former senior or very senior employee's representation, aid, or advice is only prohibited if made or rendered with the intent to influence an official discretionary decision of a current departmental or agency employee.

C.    **EXCEPTIONS**

Sections 207(j) and (k) set forth several exceptions to the statute's substantive prohibitions.    As noted below, some exceptions do not avoid application of all of the six substantive restrictions of 18 U.S.C. § 207.

DOJ-DS 0013653

**Performing Official Government Duties**.  A former employee is not restricted by any of the substantive provisions of section 207 from engaging in post-employment activities performed in carrying out official duties on behalf of the United States.  This exception also extends to activities undertaken in carrying out official duties as an elected official of a state or local Government.

**Representing Certain Entities**  A former senior or very senior employee will not violate section 207(c) or (d) if his communication or appearance is made in carrying out official duties as an employee of and is made on behalf of (1) an agency or instrumentality of a State or local Government, (2) an accredited degree-granting institution of higher education as defined in section 101 of the Higher Education Act of 1965, as amended (20 U.S.C. § 1001), or (3) a hospital or medical research organization exempted and defined under section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. § 501(c)(3)).

**Representing or Assisting International Organizations**.  A former employee is not restricted by any of the substantive provisions of section 207 from representing, aiding, or advising an international organization in which the United States participates, if the Secretary of State certifies in advance that such activity is in the interest of the United States.

**Imparting Special Knowledge**.  A former senior or very senior employee will not violate section 207(c) or (d) if he makes a statement that is based on his own special knowledge in the particular area that is the subject of the statement, provided that he receives no compensation for making the statement.

**Scientific or Technological Information or Expertise**.  A former employee will not violate section 207(a)(1), (a)(2), (c), or (d), if he makes a communication solely for the purpose of furnishing scientific or technological information in accordance with procedures acceptable to the agency involved.  Alternatively, a former employee may make a communication if the head of the agency concerned publishes a certification in the <u>Federal Register</u> stating that the former employee has outstanding qualifications in a scientific, technological, or other technical discipline, that he is acting with respect to a particular matter which requires such qualifications, and that the national interest would be served by the former employee's participation.

**Testimony**.  A former employee is not restricted by any of the substantive restrictions of section 207 from giving testimony under oath or from making statements required to be made under penalty of perjury, subject to a special rule with respect to expert opinion testimony.  Unless expert opinion testimony is given pursuant to court order, a former employee may not provide such testimony on a matter on behalf of any other person except the United States (or

DOJ-DS 0013654

the Congress) if he is subject to the lifetime prohibition contained in section 207(a)(1) relating to that matter.

### Representing Candidates or Certain Political Organizations.

A former senior or very senior employee will not violate section 207(c) or (d) if his communication or appearance is on behalf of a candidate for Federal or State office or an authorized committee, a national committee, a national Federal campaign committee, a State committee, or a political party.

### Employment with Certain Prior Employers.

A former employee is not restricted by any of the substantive restrictions of section 207 if granted one of 25 Presidential waivers in connection with his reemployment at a Government-owned, contractor operated entity.

DOJ-DS 0013655

# PROCUREMENT INTEGRITY REQUIREMENTS

## Application –

Applies to acquisitions using competitive procedures of goods or services including construction from non-Federal sources by a Federal agency using appropriated funds.

## Prohibited Disclosure Information –

A person must not, other than as provided by law, knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates.

Present or former officials or advisors shall not knowingly disclose contractor bid or proposal information before award, other than as provided by law.

## Discussions of Future Employment –

An agency official, participating personally and substantially in a Federal agency procurement for a contract in excess of the simplified acquisition threshold, contacts or is contacted by a person who is an offeror in that Federal agency procurement regarding possible non-Federal employment for that official, the official must –
(i) Promptly report the contact **in writing to the official's supervisor and to the appropriate Deputy Standards of Conduct Counselor (ethics official); and**
(ii) Either reject the possibility of non-Federal employment or disqualify himself or herself from further personal and substantial participation in that Federal agency procurement until such time as the agency authorizes the official to resume participation in that procurement, in accordance with the requirements of 18 U.S.C. 208 and applicable agency regulations.

## Employment Restrictions –

For contracts over $10,000,000, former officials **cannot** accept compensation from a contractor that has been awarded a competitive or sole source contract, as an employee, officer, director, or consultant of the contractor **within a period of 1 year after** such former official –
(i) Served, at the time of selection of the contractor or the award of a contract to that contractor, as the procuring contracting officer (CO), the source selection authority, a member of a source selection evaluation board, or the chief of a financial or technical evaluation team in a procurement in which that contractor was selected for award of a contract in excess of $10,000,000;
(ii) Served as the program manager, deputy pro-gram manager, or administrative contracting officer for a contract in excess of $10,000,000 awarded to that contractor; or
(iii) Personally made for the Federal agency a decision to—

DOJ-DS 0013656

(A) Award a contract, subcontract, modification of a contract or subcontract, or a task order or delivery order in excess of $10,000,000 to that contractor;
(B) Establish overhead or other rates applicable to a contract or contracts for that contractor that are valued in excess of $10,000,000;
(C) Approve issuance of a contract payment or payments in excess of $10,000,000 to that contractor; or
(D) Pay or settle a claim in excess of $10,000,000 with that contractor.

*Exception* – Employee could work for other divisions or affiliates that do not produce similar products or services. Officials and contractors cannot knowingly violate.

### *Protests* –

Protesters must report information evidencing a violation to the agency no late than 14 days after discovering the violation.

### *Agency Action if Violations* –

Similar – Plus, if criminal conduct, agency may rescind contract and recover all amounts expended under the contract.

### *Civil Penalty* –

Applies to knowing violations of information disclosure, employment discussions and post employment. Fines changed to $50,000 ($500,000 for organizations) per violation plus twice the amount of compensation received or offered.

### *Criminal Penalty* –

Willful disclosure not required.

**ATTACHMENT 8**

# DEPUTY STANDARDS OF CONDUCT COUNSELLORS

DOJ-DS 0013658

# ACKNOWLEDGMENT OF RECEIPT OF STANDARDS OF CONDUCT
### (Will be filed in official personnel file)

**1.** I acknowledge that I have received (Check appropriate box):

☐ A copy of the Standards of Ethical Conduct regulations, including Part I of Executive Order 12674; a list of the Deputy Standard of Conduct Counsellors for your area; and a minimum of one hour of official time to review them.

☐ Annual standards of conduct briefing.

☐ Other (Please specify):

**2.** I acknowledge that it is my duty to comply with the standards of conduct regulations.

TYPED OR PRINTED NAME OF EMPLOYEE

| SIGNATURE OF EMPLOYEE | CORRESP. SYMBOL |
| --- | --- |
| | DATE |
| NAME AND SIGNATURE OF ETHICS TRAINER OR SUPERVISOR CERTIFYING RECEIPT OF ABOVE CHECKED ITEM(S) | DATE |

**GENERAL SERVICES ADMINISTRATION**

GSA FORM 2160 (REV. 12-82)

DOJ-DS 0013659

A: First, you are correct in noting that discounts offered to the public or to all Government employees are not considered to be gifts for purposes of the gift rule. You are also correct to question whether Government employees may accept discounts that discriminate among Government employees on the basis of type of official responsibility, or rank, or rate of pay. These types of discounts, because they are limited or targeted, would be gifts for purposes of the gift rule and could only be accepted if an exception applied. There are several rather specific exceptions that would allow Government employees to accept discounts (e.g., reduced membership fees or similar benefits) offered to limited groups or classes of Government employees (e.g., employee associations or agency credit unions) under certain circumstances. However, before applying any of these exceptions to your situation, you should probably seek an ethics official's advice.

### Gifts of Free Attendance

Q: I sometimes receive invitations of free attendance for events hosted by private sector companies and other sponsors that do business with my agency. These events are very useful for both me and the agency because I learn about industry trends and make professional contacts. If my supervisor approves of me attending these kinds of events, is it okay for me to accept the offer of free attendance?

A: You may be able to accept the offer of free attendance based on the exception for certain widely attended gatherings. An ethics official or other authorized individual must make a determination that your attendance is in the agency's interest because it will benefit agency programs and operations. Other factors to be considered are: the source of the invitation and whether that person has interests that may be substantially affected by the performance (or nonperformance) of your official duties; the number and identity of other participants expected to attend; and the market value of the gift of free attendance. Note that this exception does not permit you to accept travel and lodging expenses, although these items may be accepted under other authorities.

### Limitations on the Use of the Exceptions

Q: If there's an exception that allows me to accept a gift, is it always appropriate to use the exception?

A: Not always. You may never accept a gift for being influenced in the performance of an official act; you may never solicit or coerce the offering of a gift; and you may not accept gifts from the same or different sources so frequently that it appears you are using your public office for private gain.

### Disposing of a Gift

Q: What do I do with a gift that I cannot accept?

A: You may pay the donor market value for the gift if you want to keep it. If not, you may return it. If the gift is perishable, such as food or flowers, it may be shared within your office, donated to charity or destroyed, as long as an ethics official or your supervisor grants approval.

### Seeking Advice

Q: Anything else I need to be aware of?

A: If you have any questions regarding gifts, always seek your ethics official's advice. Even if a gift falls under one of the exceptions to the gift rule, it is never inappropriate and frequently prudent for you to decline a gift offered by a prohibited source or given because of your official position, especially when the gift is offered by a person or organization whose interests could be affected by your official actions.

Note: The gifts from outside sources rule is found in 5 C.F.R. part 2635, subpart B.

DOJ-DS 0013660

# Gifts From Outside Sources

Most executive branch employees know there are rules about whether or when they may receive gifts from outside sources. This pamphlet provides a brief overview of those gift rules by answering some of the frequently asked questions concerning gifts from outside sources.

## The Basic Rule

**Q:** What is the basic gift rule that applies to me as a Federal employee?

**A:** As an employee of the executive branch, you may not solicit or accept a gift that is given because of your official position or that is given to you by a **prohibited source**, unless the item is either not considered to be a gift or falls within one of the exceptions to the basic rule.

## Some Exceptions to the Basic Rule

### The $20/$50 Exception

**Q:** Can I accept any gift as long as it is not worth more than $20?

**A:** Almost. The exception allows you to accept gifts of $20 or less on a single occasion, but remember, not more than $50 per year per source. (The source is the entire organization, so you may not accept gifts exceeding the $50 per year per source limit just because different employees in the same organization pay for them each time.) If several gifts are given to you at the same time, you may keep those items whose total value when added together does not exceed $20. You may never accept gifts of cash, and you may not pay the difference for gifts exceeding the $20 limit. Finally, you may not accept gifts so frequently that you appear to be using your public office for personal gain.

**Q:** Why a $20 limit?

**A:** The $20 limit was designed to be reasonable and simple. Reasonable, because it allows employees to accept gifts that most people would agree are inconsequential. Simple, because it's an easy standard to apply.

**Q:** Is there a more generous exception for holiday celebrations? Every year, some prohibited sources host holiday parties and invite employees from our office and throughout our agency to attend. Normally, the cost is $25 or $30 per person.

**A:** There is no special exception for holiday celebrations. If the cost of attendance exceeds $20, then obviously you may not accept an invitation to attend using the $20 exception. Your ethics official can advise you whether any of the other gift exceptions or exclusions apply.

**Q:** I work in a Federal facility alongside employees of a company that is an agency contractor. I recently got married and the contractor employees want to contribute money to purchase a microwave oven for me as a wedding gift. Could I accept that gift?

**A:** No. The $20 exception to the gift rule states that an employee may accept gifts having an aggregate market value of $20 or less "per occasion." Accordingly, an employee may not use this exception to accept a gift worth more than $20 regardless of how many people contributed toward it.

### Gifts from Family and Friends

**Q:** My brother-in-law works for a firm that does business with my agency. May I accept a gift from him?

**A:** Sure, as long as the gift is clearly motivated by a personal relationship and your brother-in-law, and not his firm, pays for the gift. We sometimes call this personal relationship exception the "family and friends" exception.

**Q:** Let's say that one of my long-time close friends performs contract work for my agency and is therefore a prohibited source. May I use the "family and friends" exception to accept gifts from her, or should I apply the $20/$50 limit?

**A:** Again, as long as the circumstances make it clear that the gift is motivated by a personal friendship rather than your position with the Government, you may accept any gift from your friend using the "family and friend" exception. Relevant factors to consider include the history of the relationship and whether the friend personally pays for the gift. If you have any reason to suspect either the motivation or the source of payment for the gift, you can always decline the gift, pay the market value for it, or abide by the $20/$50 limit.

### Discounts

**Q:** I doubt that discounts available to the public or offered to all Government employees would be prohibited. But what about discounts that are offered only to certain groups of Government employees, like all of the computer specialists at my agency?

DOJ-DS 0013661