## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES of AMERICA,**

   **v.**

**DAVID HOSSEIN SAFAVIAN,**       **Criminal No. 05-370 (PLF)**

   **Defendant**

### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
### GOVERNMENT'S PROPOSED RULE 404(b) EVIDENCE

In its Rule 404(b) Notice (Document #31), filed January 27, 2006, the Government seeks

to introduce evidence relating to the General Services Administration's ("GSA") November 10,

2003 decision to suspend four TYCO subsidiaries from doing business with the GSA.  The

Government contends that this evidence regarding the suspension, including a series of

November 2003 e-mails between Jack Abramoff and Tim Flanigan, Tyco's General Counsel, and

others, is indicative of Mr. Safavian's "motive and intent" in making allegedly false statements

on other topics in July and August 2002, to the GSA ethics officer, the GSA-OIG in March and

April 2003, and the Senate Committee on Indian Affairs ("SCIA") document request for the

August 2002 Scotland trip.  The Government's skeletal notice, which provides nothing to inform

the defendant or the Court's discretion, summarily contends that the evidence would demonstrate

that Mr. Safavian's alleged misconduct was not by "mistake or accident."  Gov't 01/27/06 Rule

404(b) Notice.

The Government's proposed Rule 404(b) evidence, whether testimony, the November

2003 e-mails on the GSA suspension decision, or other such evidence, has no relationship to the

July/August 2002 matters at issue and is not probative of any element of either false statement or

obstruction charges.[1]  Indeed, the only apparent significance is that it shows Mr. Safavian was acquainted with, and communicated with, Jack Abramoff.  Because that is not in question, it appears that the Government's actual purpose is to admit character evidence by virtue of  his friendship with Mr. Abramoff, an objective that Rule 404(b) expressly prohibits.

Not only is the proposed November 2003 evidence irrelevant, the unfair prejudice that it would cause to Mr. Safavian would substantially outweigh any probative value.  Furthermore, this irrelevant issue plainly would create a trial within a trial that would cause significant jury confusion.

**I.  THE GOVERNMENT'S PROPOSED EVIDENCE IS NOT ADMISSIBLE BECAUSE IT FAILS TO SATISFY EITHER PRONG OF THE RULE 404(b) TWO-STEP INQUIRY**

In considering whether Rule 404(b) evidence should be admitted, courts apply a two-step analysis.  United States v. Manner,  887 F.2d 317, 323 (D.C. Cir. 1989).  The first step requires that the evidence be probative of some material issue *other than* character.  See Fed. R. Evid. 404(b).[2]  Evidence is deemed relevant only if it has "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  If the court finds the testimony relevant, it must then

---

[1]    Mr. Safavian has been charged with making false statements in, and concerning events during, July and August of 2002 in violation of 18 U.S.C. § 1001(a)(1).  Indictment ¶¶ 29, 31, 40.  Mr. Safavian is also charged, pursuant to 18 U.S.C. § 1505, with obstructing the investigations of the GSA-OIG and the SCIA concerning those July/August 2002 events.  Id. ¶¶ 27, 38.

[2]    Rule 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

determine "whether the prejudicial impact of the testimony substantially outweighs its probative value."  Fed. R. Evid. 403.

    **A.**    **The Proffered Evidence is Not Relevant to Any Count in the Indictment**

        1.    There is No Temporal Nexus Between the TYCO Evidence and the Charged Conduct

The temporal disconnect between the TYCO emails and Mr. Safavian's representations to the GSA ethics officer and GSA-OIG is fatal to the Government's position.  Mr. Safavian sought the GSA ethics opinion in July 2002.  The GSA-OIG opened its investigation in March 2003 and subsequently closed its review in May 2003.  The TYCO e-mails and communications would have accumulated over the course of a week in November 2003, approximately 16 months *after* Mr. Safavian sought the ethics opinion from the GSA and over 6 months *after* the GSA-OIG closed its investigation.  Thus, there is no basis to conclude that the TYCO information is relevant to Mr. Safavian's "motive and intent in lying to the GSA ethics adviser [and] GSA-OIG" in July 2002 and early 2003 "about the true nature of his relationship with Jack Abramoff." 01/27/06 Gov't Rule 404(b) Notice.

Though Rule 404(b) is usually used to introduce prior bad acts, it does not automatically preclude the introduction of subsequent bad acts.  Though, "[t]he temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof."  United States v. Watson, 894 F.2d 1345, 1349 (D.C. Cir. 1990) (alteration in original); United States v. Betts, 16 F.3d 748, 749 (7th Cir. 1994) (finding distribution quantity of marijuana found over eighteen months after charged drug conspiracy could not be admitted to show defendants more likely engaged in prior charged conspiracy), abrogated on other grounds by United States v. Mills, 122 F.3d 346 (7th Cir. 1997); United States v. Zelinka, 862 F.2d 92, 99 (6th Cir. 1988) (discovery of cocaine on defendant's person at time of his arrest not admissible to prove his participation in conspiracy that had ended seventeen

months earlier). Thus, for the Government to introduce activities that occurred after the events comprising the underlying charged conduct, the evidence must be "*fairly recent* and in some significant way connected with prior material events." Watson, 894 F.2d at 1349 (emphasis added) (noting that where evidence is relevant, three months is a reasonably close placement in time). The lapse of time between the events comprising both the § 1001 and § 1505 charges and the subsequent TYCO evidence is substantial and certainly not "fairly recent."

The Government purports to introduce the TYCO evidence under the supposition that it shows Mr. Safavian's intent and demonstrates that Mr. Safavian's representations to the GSA ethics officer, GSA-OIG, and SCIA were made without mistake. However, it cannot maintain that the TYCO communications in 2003 have any probative value into Mr. Safavian's mindset during his alleged communications with the GSA in 2002. Jankins v. TDC Mgmt. Corp., 21 F.3d 436, 441 (D.C. Cir. 1994) (reversing conviction where Rule 404(b) evidence "followed the one in dispute, a sequence that further weakens the link" and thus could not be used to show plan or intent). Nor has the Government indicated what "mistake" or "accident" somehow warrants the admissibility of this evidence.

2.   There is No Clear or Logical Connection Between the TYCO Evidence and the Charged Conduct

The TYCO evidence has no substantive relevance to Mr. Safavian's alleged false statements to the GSA ethics officer, the GSA-OIG, or the SCIA, and further, has no bearing on the § 1505 obstruction charges. There is simply no "clear and logical connection" between the TYCO suspension and "the case being tried." United States v. Watt, 911 F. Supp. 538, 558 (D.D.C. 1995) (quoting United States v. Biswell, 700 F.2d 1310, 1317-18 (10th Cir. 1983) (reversing conviction where no such connection existed and where any probative value of the government's proof was "substantially outweighed by the danger of unfair prejudice")). Contrary to the Government's assertion, the most that can be gleaned from this series of events is

that Mr. Safavian knew Abramoff – a fact that Mr. Safavian has never denied, but rather readily admitted on numerous occasions.

"A fundamental tenet in our criminal jurisprudence is that a jury should not premise its verdict upon a general evaluation of the defendant's character but rather upon an assessment of the evidence *relevant to the particular crime with which the defendant is presently charged*." United States v. Nicely, 922 F.2d 850, 856 (D.C. Cir. 1991) (emphasis added).  Mr. Safavian's alleged provision of information regarding TYCO entities is too divorced from the evidence necessary to establish the elements of § 1001.[3]

Similar reasoning undermines the Government's contention that the TYCO evidence is relevant to the obstruction charges in Counts One and Four.  Any assistance the Government presumes Mr. Safavian provided Abramoff through the TYCO emails cannot be deemed to be obstructive.  The Government fails to explain how any information Mr. Safavian may have provided to Mr. Abramoff regarding TYCO obstructed any functions of the GSA, much less (and more importantly) how these communications obstructed: (1) the GSA-OIG investigation in early 2003; or (2) the Senate investigation – the scope of which was limited to possible fraud on Indian tribes.  The lack of a "clear and logical connection" between the TYCO evidence and the obstruction charges in this case renders the potential Rule 404(b) evidence irrelevant and thus inadmissible.

---

[3]    In this Court's ruling in United States v. Hsia, No. Crim. 98-0057, 2000 WL 195028 (D.D.C. Feb. 2, 2000) (unpublished opinion), certain extrinsic evidence was allowed where the Rule 404(b) conduct was "nearly identical to the conduct alleged in . . . the indictment." Id. at *3 (determining that where Rule 404(b) evidence "demonstrates conduct that is so similar to the charged conduct, its admission is 'routinely upheld'" (citation omitted)).  Such is not the case here, where the evidence the Government seeks to introduce reveals no false statements or obstructive activity on the part of Mr. Safavian.

In sum, because the TYCO evidence is not probative of a "material issue other than character," and because it is not offered for a proper purpose under Rule 404(b), this Court must deny the Government's attempt to introduce this evidence at trial.

**B.**     **Rule 403 Precludes the Government from Introducing the TYCO Evidence Because the Unfair Prejudicial Effect Outweighs Any Probative Value**

Even if this Court were to conclude the TYCO evidence had any probative value to the counts alleged in the Indictment, any such value would be substantially outweighed by the danger of unfair prejudice.  Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  When comparing the probative value against unfair prejudice, this Court has held that such balancing "should generally be struck in favor of admission *when the evidence indicates a close relationship to the events charged*." Watt, 911 F. Supp. at 558 (emphasis added) (quoting United States v. Moore, 732 F.2d 983, 989 (D.C. Cir. 1984)).

The Rule 403 balancing is influenced not by relevance, but by the evidentiary value of the 404(b) evidence.  United States v. Mathews, 62 F. Supp. 2d 59, 62-63 (D.D.C. 1999) (declining to admit proffered Rule 404(b) evidence where "the prior charge is so highly prejudicial, no limiting instruction is likely to adequately mitigate the prejudice").  Here, the considerable "danger of prejudice stems from the possibility that the evidence will be used by the jury primarily for the impermissible purpose of inferring guilt from a general defect in character, and the danger that the evidence will inflame the jury into reaching an impassioned and irrational verdict." United States v. Duran, 884 F. Supp. 534, 536-37 (D.D.C. 1995) (internal quotation omitted) (rejecting otherwise relevant evidence after balancing prejudicial effect under Rule

403).  Further, the TYCO evidence would substantially prejudice Mr. Safavian, "particularly in light of their tenuous relevance to the material issues in this case."  Id. at 537.

As explained above, there is no "close relationship" between the TYCO evidence and the Counts as alleged in the Indictment, either temporally or substantively.  Watt, 911 F. Supp. at 558.  Furthermore, allowing the jury to consider evidence, whether testimonial or documentary, would be highly prejudicial because of the undue weight that a jury is likely to attach to the fact that Mr. Safavian had communications with Abramoff – an individual who currently holds a negative public profile and TYCO – a company that also had a negative public profile due to an unrelated high profile prosecution of its corporate officers.  If the Government is permitted to present this irrelevant evidence, it is likely that the jury would be misled, or significantly confused enough, to conclude that Mr. Safavian made false representations to the GSA in 2002 based simply on alleged communications Mr. Safavian had with Abramoff in the fall of 2003.

In addition, any testimony elicited at trial relating to TYCO will be highly disruptive.  First of all, TYCO disputes that Mr. Abramoff was even hired to represent them on the suspension matter.[4]  In addition, the Government will have to interrupt the proceedings as they relate to the actual charges and introduce numerous exhibits and fact witnesses to support its contention that this evidence somehow relates to charges under § 1001 and § 1505, a presentation that would only confuse the jury with propensity evidence and generate a trial within a trial.  United States v. Linares, 367 F.3d 941, 945-46 (D.C. Cir. 2004) (rejecting government's evidence where reliance by trier of fact would offend "the long standing tradition that protects a criminal defendant from guilt by reputation and from unnecessary prejudice").  There can be no doubt that such testimony would be "likely to lead to multifariousness and a

---

[4]  See Susan Schmidt and James V. Grimaldi, *USA Says Abramoff Tipped TYCO to GSA Move*, Wash. Post Jan. 28, 2006, at A04, http://www.washingtonpost.com/wp-dyn/content/article/2006/01/27/AR2006012701685_pf.html.

confusion of issues.  As such, . . . it is an area of examination better left closed."  <u>Outley v. City</u> <u>of New York</u>, 837 F.2d 587, 595 (2d Cir. 1988) (declining to admit evidence of plaintiff's previous lawsuits because such evidence "would undoubtedly cause the jury to question the validity" of the pending suit).

In sum, evidence regarding TYCO is more likely to arouse an emotional response than a rational decision by the jury, and cause the jury to base its decision on something other than the established propositions of the case – the focus of which would be compromised were the e-mails to be admitted.  Accordingly, the unfair prejudice Mr. Safavian would suffer substantially outweighs any marginal probative value the evidence may have, rendering it inadmissible under Rule 403.

<b>CONCLUSION</b>

For the aforementioned reasons, Defendant Safavian requests that the Court preclude the Government from introducing any TYCO evidence under Rule 404(b).

Respectfully submitted,


By: <u>/s/ Barbara Van Gelder</u>
    Barbara Van Gelder (D.C. Bar # 265603)
    Roderick L. Thomas (D.C. Bar # 433433)
    Albert C. Lambert (D.C. Bar # 489562)
    WILEY REIN & FIELDING LLP
    1776 K Street NW
    Washington, DC  20006
    TEL: 202.719.7032

Dated: April 14, 2006          *Attorneys for David H. Safavian*