## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES of AMERICA,** | |
| **v.** | |
| **DAVID HOSSEIN SAFAVIAN,** | **Criminal No. 05-370 (PLF)** |
| **Defendant** | |

### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE HEARSAY
### IN THE JULY 26, 2002 GSA ETHICS RESPONSE
### AND DOCUMENTS CONTAINING PORTIONS THEREOF

Defendant David H. Safavian requests that this Court enter an order precluding the Government from introducing the alleged July 26, 2002 ethics response from the GSA General Counsel's office under the Hearsay Rule. Fed. R. Evid. 802. The GSA did not preserve the original document, characterized as an "ethics opinion" in the Indictment. See Indictment ¶ 19. However, the Government has referenced the contents via: (i) an alleged July 27, 2002 e-mail from Jack Abramoff that quotes an earlier e-mail from Mr. Safavian in which Mr. Safavian forwarded a July 26, 2002 e-mail from McKenna that included the ethics advice from GSA Designated Ethics Official Eugenia Ellison, see Gov't Opp. to MTD (Ex. 19); and (ii) a March 2005 fax copy of Ellison's draft from her personal file that was not maintained in any official GSA file. See Def. MTD (Ex. 12). The July 26, 2002 ethics response contains several out-of-court statements that the Government will offer for their truth and attribute to the Defendant under Count Two of the Indictment (18 U.S.C. § 1001(a)(1)). See 02/10/06 Gov't Opp. to MTD Ex. 19;[1] Indictment ¶ 29.

---

[1]    The July 27, 2002 e-mail, Gov't Opp. to MTD Ex. 19, is attached as Ex. A to this Motion in Limine.

For instance, the July 26, 2002 ethics response contains a line that reads: "You stated that neither Mr. Abramhoff [*sic*] nor his firm does business with or is seeking to do business with GSA." Ex. A. As the Government conceded during the motions hearing on March 24, 2006, neither McKenna nor Ellison have personal knowledge of the source of the statements at issue. Both officials have told the Government that they do not recall having any conversations with Mr. Safavian prior to drafting the July 26, 2002 e-mail and that they do not know how the statement got into the e-mail. See Ellison 302 (Def. Motion to Inspect Grand Jury Rec. Ex. 5 - DOJ-DS007019); McKenna 302 (Def. Motion to Inspect Grand Jury Rec. Ex. 4 - DOJ-DS006968). Even if the GSA had actually kept the July 26, 2002 e-mail in the course of ordinary business—it did not—such hearsay within hearsay cannot be admitted as a business record under Fed. R. Evid. 803(6), or as a recorded recollection under Rule 803(5) without personal knowledge. United States v. Warren, 42 F.3d 647, 656-57 (D.C. Cir. 1995) (holding statements in police report inadmissible under Rule 803(6) because there was no evidence the statements were based on the officer's personal knowledge, or information communicated by someone with personal knowledge acting in the regular course of business); Ricciardi v. Children's Hosp. Med. Ctr., 811 F.2d 18, 23 (1st Cir. 1987) (holding note inadmissible under both Rules 803(6) and 803(5) when the author did not have personal knowledge of the event recorded and it was unknown who transmitted the information to the author).

The Court can only avoid prejudice to the Defendant in this instance by excluding this document *prior* to the commencement of trial. The Government charges Mr. Safavian for allegedly representing that Mr. Abramoff was not "seeking to do business" with the GSA. However, the only imaginable reference in the record is this multiple hearsay, which does not even specify when, why, or to whom the statement was allegedly made. If the Government is

permitted to present such unreliable references at any point, particularly in the opening stages, the potential confusion of the issues and misleading of the jury could not be undone.

## I.    THE JULY 26, 2002 ETHICS RESPONSE CONTAINS INADMISSIBLE HEARSAY

Hearsay evidence is inadmissible in court, unless it fits under a recognized exception. Fed. R. Evid. 802.  In addition, "when an utterance is used for the truth it asserts, its reliability is generally considered suspect unless the declarant is testifying in court and available for cross-examination."  United States v. Reynolds, 715 F.2d 99, 101 (3d Cir. 1983) (citing Fed. R. Evid. 801(c)).

The July 26, 2002 ethics response from the GSA General Counsel contains several statements that could only be introduced into evidence for the truth of the matter asserted.  For example, the first paragraph of the document states:

> You stated that a friend and former colleague, Jack Abramhoff [sic], invited you, along with several members of Congress and a few Congressional staff, to Scotland to play golf for four days.  You stated that you will be paying for all of your hotel expenses, meals and greens fees.  You noted, however, that your friend would be providing the air transportation at no cost to you and the other guests attending the event.  You stated that your friend, who is a lawyer and lobbyist with Greenberg and Traurig, is chartering a private jet to take you and the other participants from BWI to Scotland and back.  You stated that neither Mr. Abramhoff [sic] nor his firm does business with or is seeking to do business with GSA.

Ex. A.  This written material would be hearsay if admitted into evidence to demonstrate that Mr. Safavian made these statements.[2]  See Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997) (excluding an article offered to prove that defendants made implicating statements).

---

[2]    Furthermore, as discussed at length in a separate motion, see Def. Motion in Limine on Authenticity and to Exclude Evidence that is Hearsay or Irrelevant (filed April 14, 2006), the Government will have to establish the authenticity of each portion of each e-mail chain, including the author and recipient, in order to introduce any portion of the document at trial.  New York v. Microsoft Corp., No. Civ A. 98-1233, 2002 WL 649951, at *5 (D.D.C. 2002) (holding that the requisite foundation must be established for each portion of a forwarded e-mail chain for the purposes of the business records exception).

The Government intends to introduce the last quoted sentence as a statement in violation of 18 U.S.C. § 1001(a)(1).  Indictment ¶ 29 (emphasis added) (alleging that Mr. Safavian "falsely stated to the GSA ethics officer that Lobbyist A *did not have any business with and was not seeking to do business with GSA*").  It cannot do so.

A.    **The Out of Court Statements Contain Ambiguities and Implied Assertions That Cannot Be Used to Support Concealment Charges**

1.    Fundamental Ambiguities

There are several principles undergirding the Hearsay rule, including the potential for prejudicial ambiguity since a declarant "may have intended the statement to assert a fact other than that for which the statement is offered."  Reynolds, 715 F.2d at 102.  Consequently, the declarant's presence for cross-examination is "essential to eliminate such ambiguity."  Reynolds, 715 F.2d at 102.  In this instance, the hearsay statements at issue are vague as to both content and foundation.

As to content, the Government would offer the statements for the proposition that Mr. Safavian made them (e.g., that Mr. Safavian actually said "Abramoff is not seeking to do business with GSA").  However, it is not clear from the text of the July 26, 2002 McKenna e-mail that the author of the opinion intended the letter to be a precise transcript of what Mr. Safavian actually said.  In a § 1001 prosecution, "what is actually said by a defendant becomes [] critically important."  United States v. Poutre, 646 F.2d 685, 688 (1st Cir. 1980).

Here, it is certainly plausible, indeed perhaps likely given the absence of any other indication in the record, that Mr. Safavian did *not* utter the words "seeking to do business" to McKenna or Ms. Ellison, and that the author did not intend to recount Mr. Safavian's actual words but rather intended to track the CFR definition of a "prohibited source."  See 25 C.F.R. § 2635.203(d)(2).  In the absence of any cross-examination of the declarant, the jury would be

forced to speculate as to the actual words Mr. Safavian used.  Such speculative discourse cannot provide the basis for a § 1001(a)(1) concealment charge, which requires that the Government demonstrate that any concealment was: (1) knowingly and willfully executed; (2) by trick, scheme, or device; (3) as to a material fact; (4) of which the defendant had a legal duty to disclose at the time; (5) in any matter within the jurisdiction of a department or agency of the United States.  United States v. Crop Growers Corp., 954 F. Supp. 335, 348 (D.D.C. 1997) (citations omitted); see also Poutre, 646 F.2d at 688.[3]

The statements in the ethics response are also ambiguous as to their foundation.  The Government would like to *infer* that the statements attributed to Mr. Safavian were actually made to the person who wrote the opinion.  See Ex. A hereto; Gov't Opp. to MTD at 26 n. 12. However, the document does not support this implied assumption.  These alleged statements by Mr. Safavian could just as easily have been made to, or by, a third-party who relayed them to the author.  Were this the case, *each* level of hearsay would have to conform to a recognized exception for the statement to be admissible.  See Fed. R. Evid. 805.  These added uncertainties highlight the rationale behind the rule.

---

[3]    See also, United States v. Gatewood, 173 F.3d 983, 988 (6th Cir. 1999) (reversing § 1001 conviction because it is "incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct" and where the indictment presented a false dichotomy, because certifying that one has made payments to subcontractors was not inconsistent with having yet to pay the subcontractors in full) (citation omitted); United States v. Clifford, 426 F. Supp. 696, 703 (E.D.N.Y. 1976) (holding that a false statement prosecution cannot occur where there is "no basis, other than pure speculation upon which a reasonable juror could determine what question was asked and what response was given"); United States v. Ehrlichman, 379 F. Supp. 291, 292 (D.D.C. 1974) (setting aside conviction for false statements in which defendant was forced to defend the truth of his statements on the basis of an FBI agent's "sketchy notes, which do not purport to be a verbatim record of either the questions or the answers at issue"); cf. Bronston v. United States, 409 U.S. 352, 359 (1973) (finding in the context of a perjury charge under 18 U.S.C. § 1621 that "[a] jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner").

In addition, McKenna and Ellison have already informed the Government that they do not recall a conversation with Mr. Safavian prior to the issuance of the July 26, 2002 ethics response.  See McKenna 302 at 2 (Def. Motion to Insp. Ex. 4 - DOJ-DS006969) ("McKenna could not recall how he learned that Abramoff was Safavian's friend."); Ellison Marked 302 at 1 (Def. Motion to Insp. Ex. 6 - DOJ-DS006998) ("Ellison could not recall if she spoke with Safavian about the golf trip."); see also Ellison Marked 302 at 1 (DOJ-DS007019) (same). Consequently, the parties do not know: the time and place of the statements (if made by anyone at all); to whom they were made; or when they were recorded.  This uncertainty alone is reason enough to exclude the document.

### 2.    Implied Assertions

Statements must also be excluded as inadmissible hearsay if they are admitted for the truth of assertions that they imply.  See Reynolds, 715 F.2d at 103.  For example, in Reynolds, the statement at issue was "I didn't tell them anything about you."  The government was offering the statement to prove the existence of a conspiracy, rather than the fact that Reynolds didn't actually say anything about the other person.  The court held the statement inadmissible because

> statements containing express assertions may also contain implied assertions qualifying as hearsay and susceptible to hearsay objections. This situation arises when "the matter which the declarant intends to assert is different from the matter to be proved, but the matter asserted, if true, is circumstantial evidence of the matter to be proved. In this situation too, the statement is subject to a hearsay objection."

Reynolds, 715 F.2d at 103 (quoting D. Louisell & C. Mueller, Federal Evidence 94 n.84 (1980)).

In this case, because the Government is alleging concealment of material facts under 18 U.S.C. § 1001(a)(1), Indictment ¶ 29, not the more common false statement provision under § 1001(a)(2), and neither McKenna nor Ellison remember whether or not they had additional conversations with Mr. Safavian, the Government must necessarily argue that the e-mail is to be

considered an exhaustive list of all information provided by Mr. Safavian (i.e., that anything not listed in the "catalog" of statements was never said (e.g., that Mr. Safavian never mentioned his relationship with Abramoff)). This implied assertion is also hearsay because an out of court statement offered as circumstantial evidence of the matter to be proved (in this case, circumstantial evidence of statements *not* made), is still inadmissible. Reynolds, 715 F.2d at 103.

    **B.**     **The Business Record Exception Does Not Apply**

        1.    The July 26, 2002 Ethics Response Was Not "Kept" in the Ordinary Course of Business

At the March 24, 2006 hearing, the Government opined that the July 26, 2002 ethics response would qualify as a business record under Fed. R. Evid. 803(6). Not so. The e-mail in which it was contained, see Ex. A, was not obtained from GSA records, but rather was presented to the Government by Greenberg Traurig. Greenberg Traurig's custodian cannot verify the authenticity as a business record of a document created internally by GSA for one of its employees. See 04/14/06 Def. Motion in Limine on Authenticity and To Exclude Evidence That is Hearsay or Irrelevant. It is undisputed that the government does not have the *original* July 26, 2002 e-mail from McKenna to Mr. Safavian, presumably because that record was destroyed pursuant to GSA's electronic records policy of destroying transient documents.[4]  Cf. United

---

[4]     GSA official policy directs that "[a]ny official records created in the GSA electronic mail system **must be** moved to a file that is maintained according to the GSA Records Schedules (OAD P 1820.2A) by the originator and the recipient." See GSA Order, CIO 2160.2 (Sept. 24, 1998) (DOJ-DS007398) (emphasis in original) ("Order 2160.2"). Furthermore, Order 2160.2 incorporates a GSA Instructional Letter, OAD IL-95-6, Recordkeeping Policy for E-Mail Messages. See id. (DOJ-DS007399). The Instructional Letter distinguishes between "Record" and "Nonrecord" material, and requires that "Records may not be retained in an e-mail directory. Any document that may be classified as a record should be transferred to a file that is maintained according to the GSA Records Schedules (OAD P 1820.2A)." See GSA Instructional Letter, OAD IL-95-6, Recordkeeping Policy for E-Mail Messages (Dec. 5, 1995) (DOJ-DS0013307) ("Instructional Letter"). Included amongst "Nonrecord material" are transitory material, which are defined as "Documents of short-term interest which have no documentary or evidential value and normally need not be kept more than 90 days are not defined as records." The

States v. Wells, 262 F.3d 455, 460 n.3 (5th Cir. 2001) (noting that a business practice of regularly destroying weekly ledgers might not satisfy the "kept in the regular course" requirement of Rule 803(6)).  Consequently, the GSA's course of conduct regarding this e-mail suggests that it viewed this record as transitory, non-evidentiary, and unrelated to official GSA administrative action.

Furthermore, at the March 24, 2006 hearing, the Government claimed that it possessed a hard copy of the e-mail from GSA files.  The defense assumes the Government is referring to the record listed as Exhibit 12 to the Defendant's Motion to Dismiss, as this exhibit constitutes the only copy in Defendant's possession and the Government was to have disclosed all such material evidence several months ago pursuant to the December 23, 2005 Order.  On its face, however, this is not a record of the e-mail sent to Mr. Safavian.  The document is a personal copy kept by Ellison in her personal files and is not a copy of the July 26, 2002 e-mail.  This is evident from Ellison's statement on the fax cover sheet that "attached is a copy of a response that I gave to Ray.  I don't know if he ever sent it to you or just telephoned you the response."  See Def. MTD (Ex. 12).  Accordingly, on its face this document is not an official record—it is simply a memorandum memorializing the draft that Ellison sent to her boss.  A copy of a draft response saved in a personal file, that on its face does not purport to be a final response, cannot comply with the requirements of Rule 803(6) that the record be kept in the regular course of business, particularly when the GSA itself destroyed the final response pursuant to its business practice of destroying transient material.  Therefore, because this record was not kept in the ordinary course of business by the GSA, it does not qualify as a business record under Rule 803(6).

---

Instructional letter provides as an example of a transitory document, "[r]outine requests for information or publications and copies of replies which require no administrative action, no policy decision, and no special compilation or research for reply."  See Instructional Letter (DOJ-DS0013306).

2.    The Ethics Response Is not Made By or Derived from Information
Transmitted by Someone Possessing Personal Knowledge

Even if the July 26, 2002 ethics response had been kept in the ordinary course of business activity, it also lacks the foundational requirement that the record be made by, or derived from information transmitted by a person with personal knowledge of the statements at issue. See Warren, 42 F.3d at 656-57 (holding that for the business record exception to apply there must be some evidence that the source of the document possessed personal knowledge of the event and was under a business duty to report the information communicated in the regular course of business).

The Government does not dispute that the two officials, McKenna and Ellison, do not recall having any additional conversations with Mr. Safavian prior to the issuance of the July 26, 2002 e-mail.[5]  Hence, the Government can only speculate as to whether and with whom Mr. Safavian may have had the conversation with, as well as the circumstances under which the information was communicated to the author of the opinion.  Accordingly, Rule 803(6) cannot apply.[6]

In Ricciardi, the First Circuit rejected the Government's attempt to meet the business record exception under similar circumstances, explaining that:

---

[5]    Government counsel corroborated this at the March 24, 2006 hearing.

[6]    Fed. R. Evid. 803(6) is an exception to the hearsay rule only for documents that were: (1) made at or near the time of the event; (2) by, or from information transmitted by, a person with personal knowledge of the event; (3) kept in the course of a regularly conducted business activity, and where (4) it is the regular practice of that business activity to make the document.  See Fed. R. Evid. 803(6).  The burden is on the proponent of the evidence to lay a proper foundation for all of the above elements in order to admit evidence as a business record.  See, e.g., Aguilera v. Baca, 394 F. Supp. 2d 1203, 1207 n.2 (C.D. Cal. 2005).  In addition, a document will be held inadmissible if the "method or circumstances of preparation indicate lack of trustworthiness."  See, e.g., United States v. Houser, 746 F.2d 55, 61 (D.C. Cir. 1984).

> Although Dr. Nirmel's entry did not concern an event occurring before the alleged malpractice, and there is no indication that the patient himself provided the information, the note suffers from the same critical deficiency as the entries in <u>Petrocelli</u>: the source of the information [was] unknown.
>
> Furthermore, a record is not admissible under the federal rule if 'the source of information or the method or circumstances of preparation indicate lack of trustworthiness.' Fed. R. Evid. 803(6). *An unknown source is hardly trustworthy*.

811 F.2d at 23 (emphasis added).[7]  The court there ultimately held that the note did not have sufficient foundation because of a break in the chain linking the event—the surgery—to the author of the record—the doctor.  The chain is also broken here.  The event, Mr. Safavian's alleged statement, can not be connected to the author of the ethics opinion, Ellison, because no one knows who actually heard Mr. Safavian make these alleged comments—*or that they were ever even made*.

Consequently, where there is: *no evidence* of an additional conversation or of anyone having personal knowledge of the inferred conversation, and where it is not clear how this information was transmitted to the author of the opinion and whether this process of transmission was in accordance with the "ordinary course of business," the personal knowledge requirement of Rule 803(6) is not met and the evidence must be excluded.

        3.    <u>The Circumstances of Preparation and Preservation Indicate Untrustworthiness</u>

Even if the document met all of the foundational requirements  (i.e., personal knowledge, kept in ordinary course, etc.), it still could not be admitted as a business record because the surrounding circumstances indicate a lack of trustworthiness.  <u>See United States v. Petrie</u>, 302 F.3d 1280, 1288 (11th Cir. 2002); Fed. R. Evid. 803(6).

---

[7]    The court also found the record was inadmissible as a recorded recollection under Rule 803(5) for the same reason.  <u>Ricciardi</u>, 811 F.2d at 23; <u>see</u> infra Part. II.

First, the representation in the July 26, 2002 e-mail that Mr. Safavian said "Mr. Abramhoff [*sic*] nor his firm does business with or is seeking to do business with GSA" does not comport with more reliable records of the Defendant's statements to the GSA General Counsel's office. See United States v. Kim, 595 F.2d 755, 762-63 (D.C. Cir. 1979) (finding a telex inadmissible under business records exception due to lack of trustworthiness in part because telex was inconsistent with other evidence). Specifically, the representation is contradicted by: (i) the July 25, 2002 e-mail request for the ethics opinion—the only direct evidence of Mr. Safavian's actual statements to the GSA ethics officers—where the e-mail merely states "the host . . . has *no business* before GSA," see Def. Mot. to Dismiss, Ex. 12 (emphasis added), (ii) the McKenna 302, which states "McKenna stated that Safavian told them that his friend Jack Abramoff had *no business* with GSA," see McKenna 302 (Def. Motion to Insp. Ex. 5 - DOJ-DS006969) (emphasis added), and (iii) the McKenna interview notes, which state "DS – say JA has *no business* w/ GSA → Not Prohibited Source," see McKenna Notes (Def. Motion to Insp. Ex. 2 DOJ-DS006992) (emphasis added).

Second, because neither McKenna nor Ellison, the only two officials who could conceivably have knowledge regarding this issue, have told the Government that they do not remember having any additional conversations with Mr. Safavian until *after* the ethics response was issued, there is no evidence to corroborate that any additional conversations took place. When the source of information for a record is unknown, courts will reject the record as lacking sufficient indicia of reliability under Rule 803(6). See Ricciardi, 811 F.2d at 23 ("An unknown source is hardly trustworthy.").[8]

---

[8]     The analysis is more rigorous in a § 1001(a)(1) context, see Poutre, 646 F.2d at 688, and the heightened analysis is particularly important in this case. The language in the ethics opinion closely tracks the definition of "prohibited source." See 25 C.F.R. § 2635.203(d)(2). Thus, it is reasonable to

Third, the July 26, 2002 e-mail was not a formal ethics opinion, and neither the OGE nor GSA have any written guidelines or policies outlining procedures for developing informal ethics advice. See 5 C.F.R. § 2638.301(a)-(b).[9] Without governing policies or custom, a fundamental rationale for the business record exception disappears. See 30B Wright & Graham, Federal Practice and Procedure § 7047 (Interim ed.) ("More specifically, the reliability of business records is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, and/or by a duty to make an accurate record as part of a continuing job or occupation.").

Finally, even assuming an additional conversation did occur, these uncertainties make it likely that this information was relayed through multiple parties (e.g., Safavian → McKenna → Ellison → McKenna) creating an increased risk of error in transmission. See Houser, 746 F.2d at 61 ("In addition to the usual chance of error in recording a business record, there were clear chances of error in passing the weapon's serial number from the Special Agent to the BATF clerk and then on to the manufacturer's employee."). Indeed, as Ellison herself told Mr. Safavian in her March 1, 2005 facsimile, the circumstances surrounding the July 26, 2002 ethics

conclude that the author may have intended the opinion to track the language in the regulation, rather than the actual words used by Mr. Safavian.

[9]    The Office of Government Ethics regulations explain that formal advisory opinions from the Director of the Office of Government Ethics are not:

> issued to individuals who wish to obtain general advice concerning their own specific present or proposed activities or financial transactions. Such questions should be directed to the designated ethics official of the agency in which the individual will serve, serves or served. If a designated agency ethics official receives a request which he or she believes should be answered by the Office of Government Ethics, a referral procedure is available.

5 C.F.R. 2638.301(b). Moreover, even mere written informal opinions from the designated agency ethics official (i.e. Eugenia Ellison) are supposed to be transmitted to the OGE. 5 C.F.R. § 2638.313. There is no indication that the GSA conducted even this modicum of formality in July 2002.

response were so informal that she "wasn't sure if he [presumably McKenna] ever sent it to you or just telephoned you the response."  Ellison Mar. 1, 2005 Fax (DOJ-DS005795) (Ex. B).

As the court explained in <u>Houser</u>, in criminal cases where Sixth Amendment values are implicated under the Confrontation Clause, as they are here in a § 1001(a)(1) context, and where there are questions as to the trustworthiness of a business record, courts must be more reluctant to depart from the "general rule excluding hearsay."  <u>See id.</u> at 62 ("Inasmuch as constitutional values are implicated, the 'circumstantial guarantees of trustworthiness' justifying departure from the general rule excluding hearsay should therefore be closely examined.") (internal quotation omitted).

**C.    The Recorded Recollection Exception Does Not Apply**

At our last hearing, the Government indicated that they believed the July 26, 2002 e-mail could be read into the record as a recorded recollection under Fed. R. Evid. 803(5).  However, this exception also requires that the witness have personal knowledge of the matter when the record was made.  <u>See Parker v. Reda</u>, 327 F.3d 211, 213-14 (2d Cir. 2003).  Accordingly, since neither McKenna nor Ellison remember having a conversation with Mr. Safavian, the Government cannot lay sufficient foundation to qualify the July 26, 2002 response for this exception.  <u>See Ricciardi</u>, 811 F.2d at 23 (holding note inadmissible under Rule 803(5) when the author did not have personal knowledge of the event recorded and it was unknown who transmitted the information to the author).

To be sure, the witness does not have to testify that they remember the actual statement being made.  Such a requirement would eviscerate the reason for the exception, which assumes that the witness does not remember the events described.  However, in order to qualify for the exception, the witness must be able to testify that they spoke with Mr. Safavian and therefore had

personal knowledge of the statement attributed to him *at that time*. Here, because neither Ellison nor McKenna can say which of them actually spoke to Mr. Safavian, or even whether an additional conversation ever took place, the required personal knowledge prong of 803(5) fails and the record cannot be admitted. In other words, if Ellison does not remember whether she spoke with Mr. Safavian, she cannot possibly testify that at the time she wrote the draft that she had personal knowledge of his statements.

II.    **THE JULY 26, 2002 ETHICS E-MAIL AND DOCUMENTS CONTAINING THE PORTIONS OF THAT E-MAIL ARE INADMISSIBLE UNDER RULE 403**

Fed. R. Evid. 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In addition to all of the reasons discussed above in Part I, the July 26, 2002 ethics response must be excluded because its probative value is minimal, and its admission into evidence would lead to unfair prejudice, confusion of the issues, and misleading the jury.

As discussed previously, the document would require the jury to speculate as to what statements were actually made, who the statements were allegedly made to, when they were made, how long after they were made were they recorded, and who recorded them. Furthermore, because this is a concealment charge under § 1001(a)(1), the jury would be required to speculate that Mr. Safavian communicated nothing else. Evidence that requires speculation on the part of the jury is excludable under Rule 403. See United States v. Wright, 799 F.2d 423, 425 (8th Cir. 1986) (excluding under Rule 403 out-of-court statement that was ambiguous and required the jury to speculate as to its meaning); Stull v. Fuqua Indus., 906 F.2d 1271, 1274 (8th Cir. 1990) (excluding ambiguous written statement under Rule 403 because of the potential for confusing the jury and the statement's limited value for corroborating defendant's case). Accordingly, because the Government has the obligation to prove the defendant's statements with precision in

a § 1001 case, the Government cannot simply rely on an out-of-court statement that requires speculation.

Furthermore, as was the case in <u>Wright</u> and <u>Stull</u>, the ambiguous, uncertain circumstances surrounding the statements contained in the ethics opinion substantially minimize the ethics e-mail's probative value, and significantly heighten the potential for prejudice on an issue that is crucial to the case.

## CONCLUSION

For the aforementioned reasons, and those deemed prudent under the Court's equitable powers, Defendant Safavian respectfully seeks an order excluding the introduction of the July 26, 2002 response, and documents containing portions thereof, into evidence at trial.

Respectfully submitted,

By: <u>/s/ Barbara Van Gelder</u>
Barbara Van Gelder (D.C. Bar # 265603)
Roderick L. Thomas (D.C. Bar # 433433)
Albert C. Lambert (D.C. Bar # 489562)
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
TEL: 202.719.7032

Dated: April 14, 2006                    *Attorneys for David H. Safavian*

15