UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>v.<br><br>DAVID HOSSEIN SAFAVIAN,<br><br>Defendant | Criminal No. 05-370 (PLF) |

**DEFENDANT SAFAVIAN'S MOTION TO EXCLUDE EVIDENCE OF UNALLEGED FALSE STATEMENTS, GRATUITIES, BRIBERY, OR GIFTS FROM PROHIBITED SOURCES**

Pursuant to Federal Rule of Evidence 104(a), Defendant David H. Safavian respectfully requests this Court to exclude all evidence relating to the actual cost of the 2002 trip to Scotland, as well as exclude any other arguments or evidence implicating gratuities, bribery, or gifts from prohibited sources. With little bearing on the actual charges in the Indictment, introduction of this evidence is merely a vehicle for the government to suggest that Mr. Safavian accepted a gratuity, bribe, or gift from a prohibited source by going to Scotland. In this way, evidence of the cost of the trip will be unfairly prejudicial to Mr. Safavian and confusing for the jury, while offering no probative value. For these reasons, the Court should exclude any documentary or testimonial evidence of the cost of the Scotland trip for reasons of Due Process and according to Federal Rule of Evidence 403.

**I.     THE INDICTMENT AND THE GOVERNMENT'S NEW ARGUMENT**

Mr. Safavian is charged with three counts of false statements, 18 U.S.C. § 1001, and two counts of obstruction of justice, 18 U.S.C. § 1505. The Indictment alleges Mr. Safavian traveled to Scotland and England with Jack Abramoff and seven other people, and the "total cost of the trip for nine people exceeded $130,000." Indictment ¶ 5. Count One alleges Mr. Safavian stated

"in substance" to the GSA Regional Inspector General ("GSA-OIG") that he had paid Mr. Abramoff $3,100 "for the total cost of the trip including airfare, hotels and golf green fees." Indictment ¶ 25. In addition, Count One alleges that the GSA-OIG closed his investigation in part because Mr. Safavian stated that he "had fully paid for his cost of the trip." Indictment ¶ 26. Nowhere does the Indictment allege that these statements are false.

Furthermore, while the Indictment is merely a charging document, there is no actual evidence to support even the conclusory allegations in the Indictment. The GSA-OIG report never mentions any statement by Mr. Safavian as to whether he paid for the "total" or "full" cost of his Scotland trip, or that he knew how much the trip actually cost. See Ex. 1 to Def.'s Mot. to Inspect Grand Jury R. Nor does the report suggest that such a statement influenced the decision to close the investigation. Rather, the report merely states that Mr. Safavian paid Mr. Abramoff what Mr. Abramoff calculated the cost of the trip to be: "Jack Abramoff calculated the cost of the trip to be $3,100, which included airfare, hotels and golf green fees. Safavian presented Jack Abramoff a personal check for the specified amount prior to their departure. A copy of the [$3,100] cancelled check was provided during the interview." Id. Indeed, Mr. Safavian's request for ethics guidance suggests he never intended to pay—much less said he had paid—a proportional cost:

> I will be paying for all of my hotels, meals, and greens fees. The issue is airfare. [Mr. Abramoff] is chartering a private jet to take the eight of us from BWI to Scotland and back. [Mr. Abramoff] is paying the cost for the aircraft regardless of whether I go or not. In fact none of the other guest [sic] will be paying a proportional share of the aircraft costs.

See Ex. 1 to Def.'s Mot. to Dismiss.

Only after the defense moved to dismiss the Indictment did the government assert, for the first time, that Mr. Safavian's representation of the amount he paid Mr. Abramoff for the

-2-

Scotland trip was false.  See Gov't Opp'n to Mot. to Dismiss at 37-38.  Specifically, the government claimed that $3,100 was less than the per person cost of the trip.  Id.  The obvious implication is that Mr. Safavian not only lied to the GSA-OIG, but that the statement covered up an illegal gratuity, bribe, or gift from a prohibited source.  This new argument, however, is not alleged in the Indictment.

## II. THE GOVERNMENT SHOULD NOT BE ABLE TO PRESENT EVIDENCE OF OFFENSES NOT CHARGED IN THE INDICTMENT.

The Supreme Court has emphasized that an indictment is intended to guarantee that a defendant is sufficiently apprised "of what he must be prepared to meet."  Russell v. United States, 369 U.S. 749, 763-764 (1962); Cole v. Arkansas, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding . . . .").  Accordingly, indictments cannot leave the prosecution "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."  Russell, 369 U.S. at 768.

As Counts Two, Three, and Five make clear, when the grand jury wants to accuse a defendant of a false statement, it knows how to do so.  Here, the Indictment, and especially the charging language of ¶ 27, does not allege that Mr. Safavian lied to the GSA-OIG about making a full payment for the trip, or that Mr. Safavian's payment was in any way insufficient.  Nor does it allege that Mr. Safavian knew how much the trip cost.  The Indictment also does not charge Mr. Safavian with any of the logical implications of such a false statement, such as accepting a gratuity or bribe from Mr. Abramoff in violation of 18 U.S.C. § 201 or, as the Court acknowledged in the March 24, 2006 hearing, accepting a gift from a prohibited source in

-3-

violation of 5 U.S.C. § 7353.  At most, Count One—an obstruction charge—alleges the GSA-OIG closed its investigation partially because of Mr. Safavian's "*further*" statement that he "had paid for the total cost of the trip . . . ." Indictment ¶ 25 (emphasis added).[1]

Thus, because the Indictment fails to charge the defendant with a false statement or any of the logical implications regarding an insufficient payment, the government should not be able to shift its theory of criminality and introduce testimonial or documentary evidence of unalleged offenses—*i.e.*, that Mr. Safavian made a false statement about his payment for the trip and accepted a portion of the trip free of charge.

### III. EVIDENCE OF UNALLEGED FALSE STATEMENTS, BRIBES, AND GRATUITIES, WILL UNFAIRLY PREJUDICE THE DEFENDANT AND CONFUSE THE JURY.

The Court should exclude all documentary and testimonial evidence of the cost of the Scotland trip under Rule 403.  "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  Here, the evidence of the trip cost has little probative value, but it will tempt the jury to decide the case on an improper basis—evidence of crimes not charged in

---

[1] Not only should the government have alleged this in the Indictment, but all relevant and available documents should have been produced as soon as they were ready.  Mr. Safavian requested these documents in September 2005.  It is clear from the original bates numbers that the government possessed at least some of these as early as October 7, 2005, when the government made its first production.  The government slowly began producing trip-related documents in January and February 2006, but withheld the bulk of the documents until March, claiming it was waiting for a response to its Mutual Legal Assistance Treaty ("MLAT") requests.  Ninety percent of the March documents, however, were obtained from domestic sources.

This Court has already warned the government—twice—about making available for disclosure "any information relevant to this case that comes into the possession, control, or custody of the Justice Department."  Dec. 23, 2005 Op. at 5 (citing United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998) (cautioning against government "gamesmanship in discovery matters")); see also Feb. 22, 2006 Memo. Op. and Order at 3 ("There simply is a need for the Justice Department to change the mindset of its trial prosecutors to assure that its approach to Brady is broad and open, 'consistent with the special role of the American prosecutor in the search for truth in criminal trials.'" (citing Strickler v. Greene, 527 U.S. 213, 301-02 (1999)).  Once again, rather than fulfill its discovery obligations promptly, the government appears to have waited as long as possible to produce documents it plans to introduce as part of its case-in-chief.

the indictment—unfairly prejudicing Mr. Safavian and confusing to the jury as to which statements are at issue.

### A. The Actual Cost of the Trip Is Not Probative of the Obstruction Charge.

The Indictment alleges the GSA-OIG closed his investigation in part because Mr. Safavian made the statement that he paid for the full cost of the trip. Indictment ¶ 26. Introducing evidence about the cost of the trip will shed no light on whether the statement was made—only Mr. Rowe, Mr. Safavian, and possibly the documents could do that. Instead, it will serve only to prove collateral, unalleged charges that Mr. Safavian made more than one false statement to the GSA-OIG.

### B. Evidence of Crimes Not Alleged in the Indictment Would Unfairly Prejudice Mr. Safavian.

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997) (internal citations omitted); see also Fed. R. Evid. 403 advisory comm. notes ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis."). "There is a well settled rule that it is ordinarily reversible error for the trial court to admit evidence of an offense other than the one on trial." Hansford v. United States, 303 F.2d 219, 225 (D.C. Cir. 1962) (excluding prejudicial police testimony about defendant's complicity in uncharged offense, where testimony was "not corroborated by the production of a contemporaneous report or otherwise substantially corroborated").

The government has already charged Mr. Safavian with three different false statements to government officials. Now, the government intends to introduce evidence of an alleged fourth false statement—that he lied to investigators about what proportion of the trip expenses his

$3,100 payment represented—even though it has not formally charged him with making a false statement in this situation. Moreover, the government claims this additional false statement was made to Inspector Gregory Rowe of the GSA-OIG, the same person to whom Mr. Safavian purportedly made the false statement alleged in Count Three of the Indictment. The likelihood is evidence of the cost of the trip would lure the jury to declare Mr. Safavian's guilt on Count Three on proof of an uncharged offense.

Furthermore, introduction of evidence about the cost of the trip suggests Mr. Safavian received an illegal gratuity or bribe from Mr. Abramoff, which is not charged in the Indictment. Mr. Abramoff recently pled guilty to bribing public officials, and specifically admitted that the trip to Scotland was one of the "things of value" he used in his scheme. Ex. 1, Abramoff Plea Agmt., Attachment A ¶ 32 (Jan. 3, 2006). Mr. Safavian, however, was not mentioned in that plea agreement, which specifically stated that the Scotland trip was a gift to a "Member of the United States Congress . . . and members of [his] staff . . ." Id. Accordingly, the introduction of this highly inflammatory evidence will unfairly prejudice Mr. Safavian because it will influence a jury to reach a verdict on allegations that are not charged in the Indictment and are not properly a part of this case.

### C. Evidence of Unalleged False Statements Would Confuse the Jury.

"[C]ourts often exclude evidence because it might raise a side issue that would distract the jury from the important issues." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 403.05[1] (Matthew Bender 2d ed. 2006); see e.g., United States v. Hill, 322 F.3d 301, 306 (4th Cir. 2003) (excluding documents that "would have necessitated an exhaustive case within a case that would have confused the jury as to the issues to be decided"); United States v. Gilbert, 229 F.3d 15, 24 (1st Cir. 2000) (excluding evidence of another offense where a mini-trial was likely to occur, since the "potential for confusion of the issues and for unfair

prejudice in such a scenario is manifest"); United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979) ("Had the judge in his discretion permitted excursions into extraneous and collateral matters unrelated to the particular . . . transactions, the trial would only have been delayed and the issues confused.").

A point of potential confusion is what the government must prove to convict Mr. Safavian. To show that Mr. Safavian's alleged statement about payment for the trip was false, as the government appears ready to do, would require proof that $3,100 was an inappropriate or disproportional amount for Mr. Safavian to pay. Proving this point is more complex than simply introducing evidence that the total cost of the trip equals $130,000 and dividing by the number of participants. The government must establish the market value of the flight, golf expenses, hotel, and anything else the $3,100 is alleged to cover. See 5 C.F.R. § 2635.205(a)(1) (employee accepting gift from a prohibited source may pay market value); Id. § 2635.203(b)(9) (gifts do not include "[a]nything for which market value is paid [for] by the [government] employee"); Id. § 2635.203(c) (where market value or retail cost is unavailable, an "estimate . . . by reference to the retail cost of similar items of like quality" is appropriate). The GSA provides specific regulations for valuing such gifts. See, e.g., 41 C.F.R. § 304-6.6 (valuation of flights on chartered jets), and the jury would need instruction on these regulations. Furthermore, Mr. Safavian would contest any valuation that exceeds $3,100 and may present documentary evidence and testimony from experts establishing the historical retail price of comparable flights and package trips. Mr. Safavian would also present documentary evidence and testimony from other passengers as to what they understood the trip to cost and what they paid Mr. Abramoff. See, e.g., Travel Disclosure Form of Rep. Robert Ney (Sept. 9, 2002), Ex. 8 to Def.'s Reply in Support of Mot. to Dismiss. In short, any attempt by the government to show this statement was

false would necessitate a prolonged trial on the valuation of the trip, an issue that is not properly a part of this case.

Furthermore, in light of Mr. Abramoff's recent plea agreement, introduction of testimony from Mr. Abramoff about the cost of the trip would suggest—without fulfilling the required elements—that Mr. Safavian had accepted an illegal gratuity or bribe from Mr. Abramoff in violation of 18 U.S.C. § 201 or accepted a gift from a prohibited source in violation of 5 U.S.C. § 7353. If the government had properly alleged Mr. Safavian had accepted a gratuity or bribe, it would have to prove that, among other things, Mr. Safavian accepted a thing of value with the requisite connection to an official act and with the requisite intent.[2]  By introducing evidence of the cost of the trip, the government appears interested in making a back-door gratuity or bribery charge, without alleging or proving such charges. Given the highly prejudicial nature of these assertions, Mr. Safavian would contest each aspect, and the jury would likely be confused as to what the real charge is.

---

[2] See, e.g., United States v. Sun-Diamond Growers, 526 U.S. 398, 406-07 (1999) (official's mere "ability to favor the donor in executing the functions of his office" is not sufficient for "official act" within the meaning of the statute) (internal quotation marks omitted); United States v. Valdes, 437 F.3d 1276, 1280 (D.C. Cir. 2006) (holding that Sun Diamond (1) "distinguished a 'decision or action on any question [etc.]' from mere office holding and its potential for later action;" and (2) "distinguished a 'decision or action on any question [etc.]' and the vast array of behavior that Congress could have covered with some all-encompassing phrase such as 'act or conduct related to the official's work or in any way using government resources'").

**CONCLUSION**

For the aforementioned reasons, Mr. Safavian respectfully requests this Court to exclude any testimonial or documentary evidence of the actual cost of the group trip to Scotland, as well as exclude any other arguments or evidence implicating gratuities, bribery, or gifts from prohibited sources.

Respectfully submitted,

By: /s/ Barbara Van Gelder
Barbara Van Gelder (D.C. Bar # 265603)
Roderick L. Thomas (D.C. Bar # 433433)
Albert C. Lambert (D.C. Bar # 489562)
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
TEL: 202.719.7032

Dated: April 14, 2006          *Attorneys for David H. Safavian*