UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No 05-370 (PLF) |
| | : | |
| v. | : | |
| | : | |
| DAVID HOSSEIN SAFAVIAN | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE (DOCKET 68) REGARDING AUTHENTICITY AND ADMISSIBILITY PURSUANT TO FED. R. EVID 902(11) AND 18 U.S.C. § 3505**

The United States of America, by and through its undersigned attorneys, hereby respectfully submits this response to the Motions in Limine filed by Defendant Safavian on April 14, 2006 (Docket 68). Defendant moves to bar admission of evidence pursuant to Fed. R. Evid. 902(11) certificates as untrustworthy and because they violate the Confrontation Clause, pursuant to Crawford v. United States, 541 U.S. 36 (2004). The Government contends (A) that the content of the business records certificates are sufficient for admissibility of the evidence as an exception to the hearsay rule pursuant to Fed. R. Evid. 803(6); (B) that business records and business records certificates do not violate the confrontation clause; and (C) Fed. R. Evid. 902(11) certificates are sufficient to authenticate the email data that the government seeks to be admitted pursuant to other exceptions to the hearsay rule.

**A. The content of the certifications is proper under Rules 902(11) and 18 U.S.C. § 3505**

The Government seeks to admit certain documents pursuant to Fed. R. Evid. 902(11) and 18 U.S.C. § 3505. The Defendant contends that the content and form of the business record certifications are not proper to meet the requirements of Fed. R. Evid. 902(11) and 18 U.S.C. §

3505. However, under the case law and the statutory provisions, the certifications provide sufficient information to allow the court to determine admissibility pursuant to Rule 803(6).[1]

### 1. Domestic Business Records

The Government seeks admission of domestic business records pursuant to Fed. R. 902(11). Rule 902(11) sets forth the information that the certification must contain to meet the minimum requirements of admissibility. Rule 902(11) provides:

> The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record–
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity; and
> (C) was made by the regularly conducted activity as a regular practice.
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

The certifications at issue track the statutory language and provide identifying detail regarding the specific documents, including bates stamps, that the custodian of record certifies are business records. Consequently, the content of the Rule 902(11) certifications is proper since the certifications contain sufficient information for the court to conclude that the source,

---

[1] Because Defendant has voiced opposition to the use of the 902(11) and 18 U.S.C. § 3505 certificates, the Government is attaching, for the Court's review, all certificates that it will seek to use as a basis for admissibility under the hearsay exception of Fed. R. Evid. 803(6). See Attachments A (902(11) certificates) and B (18 U.S.C. § 3505 certificates).

circumstances and method of preparation of the records are trustworthy.[2]

While the content of these certifications has been accepted in other courts throughout the United States, if the Court were to need additional information in order to determine the admissibility of the business records, the Government would so amend the 902(11) certifications to meet the Court's requirements.

      2. Foreign Business Records

Similarly, the business records from locations throughout the United Kingdom are admissible under the provisions of Title 18, United States, Code, Section 3505. 18 U.S.C. § 3505 provides, in relevant part, that:

> (1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that--
>     (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) such person with knowledge of those matters;
>     (B) such record was kept in the course of a regularly conducted business activity;
>     (C) the business activity made such a record as a regular practice; and
>     (D) if such record is not the original, such record is a duplicate of the original;

---

[2]Defendant notes that the certification from Mr. Nogle certifies emails that have not been provided to the defense. Because of the quantity of emails produced to the defendant, and the fact that the bates numbers are scattered over a wide range, Mr. Nogle certified all emails produced by Greenberg Traurig to the government by that date, which is inclusive of all of the GT emails that have been produced by the Government to the Defendant. All of the emails produced as of April 14, 1006 to the Defendant from the Greenberg Traurig servers are the subject of the 902(11) certification by Mr. Nogle. The Government will be providing an additional 902(11) letter certifying the April 19, 2006 production of emails to Defendant.

    Additionally, Defendant objects to the use of 902(11) certification regarding the GSA-OIG investigative file. While the GSA-OIG records are administrative records, and computer data even from criminal investigating agencies, has been found to be admissible business records, see, e.g., United States v. Meienberg, 263 F.3d 1177 (10th Cir. 1991) (approving admission of Colorado Bureau of Investigation computer data), the Government will not seek admissibility of these records pursuant to Fed. R. Evid. 902(11) certificates, but will instead rely on witness testimony for admission of the relevant records.

> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
>
> (2) A foreign certification under this section shall authenticate such record or duplicate.

18 U.S.C. § 3505(a).

A "foreign record of regularly conducted activity," within the meaning of the statute, is any memorandum or record "in any form" of acts and events maintained in a foreign country. 18 U.S.C. § 3505(c)(1). A "foreign certification" within the meaning of the statute is defined as "a written declaration made and signed in a foreign country by the custodian of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country." 18 U.S.C. § 3505(c)(2). Finally, "business" is defined in the statute as including "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." 18 U.S.C. § 3505(c)(3).

Records are considered authentic pursuant to § 3505 when they are accompanied by a statement in which "the record keepers have, under penalties in their own countries, asserted that the records are records kept in ordinary course of business." United States v. Miller, 830 F.2d 1073, 1077 (9th Cir. 1987) (foreign bank records admissible pursuant to § 3505 in trial for wire fraud). Foreign hotel records have similarly been found to be authentic. See United States v. Hing Shair Chan, 680 F. Supp. 521, 522 (E.D.N.Y. 1988) (finding hotel records to fall under Section 3505; summarizing legislative history surrounding Section 3505).

Furthermore, § 3505 does not require that anyone familiar with the records need testify as to the certified records authenticity. See, e.g., United States v. Sturman, 951 F.2d. 1466, 1489 (6th Cir. 1991) (no live testimony required to establish authenticity of foreign bank records); Miller, 830 F.2d at 1077. This is consistent with the Congress' intent in enacting § 3505, which

4

was to create "a simple, inexpensive substitute for the cumbersome and expensive procedures" formerly required for the admission of foreign records. H.R. rep. No. 907, 98th Cong., 2d Sess. 3, reprinted in 1984 U.S.C.A.A.N. at 3182, 3580.

The Section 3505 certificates in this case, signed and sworn, clearly satisfy the above criteria, inasmuch as they contain language required by Section 3505.

**B. Business Records are Non-Testimonial and Do Not Violate Crawford.**

Defendant objects to the use of business records and the Rule 902(11) certifications and contends that Fed. R. Evid. 902(11) is unconstitutional and that the use of these certifications violates the defendant's Sixth Amendment right to confrontation as clarified under Crawford v. Washington, 541 U.S. 36, 75 (2004). Crawford found that the Sixth Amendment confrontation clause prevents admission of testimonial evidence if the defendant does not have an opportunity for cross-examination of a live witness. In Crawford, the Supreme Court declined to provide a comprehensive definition of "testimonial," 541 U.S. at 68, but did conclude that business records themselves are non-testimonial hearsay. Crawford, 541 U.S. at 56.

Only one federal court has published an opinion regarding the applicability of Crawford to business records admitted pursuant to Fed. R. Evid. 902(11) certificates. See, e.g., United States v. Wittig, No. 03-40132JAR, 2005 WL 1227790, at *2. We believe Wittig to be wrongly decided. Notably, the Defendant provides no explanation of Wittig or Crawford. Defendant simply asserts the proposition that 902(11) certificates are unconstitutional.

Importantly, Crawford itself found that business records were one of the examples of non-testimonial hearsay that does not violate the confrontation clause. Crawford, 541 U.S. at 56. The business records exception to the hearsay rule is provided in Rule 803(6):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (6) Records of regularly conducted activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Numerous courts have examined the Crawford issue as it relates to sworn business records that are used in criminal prosecutions, and found that the business records are non-testimonial, and consequently admissible in light of Crawford.[3] Consequently, we believe that Wittig is wrongly decided, and that Crawford does not prevent the admission of business records pursuant to 902(11) certificates because business records are non-testimonial in nature.

---

[3] For example, in United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005), the Ninth Circuit ruled that an affidavit from an immigration officer certifying the absence of a record in the immigration agency's files was admissible as non-testimonial under Crawford. Similarly, in United States v. Rueda-Rivera, 396 F.3d 678 (5th Cir. 2005), the Fifth Circuit held that a certificate of non-existence of an immigration record was admissible as a non-testimonial business record, even though the certificate was sworn and created by a government agent for use at trial. In United States v. Cantellano, 430 F.3d 1142 (11th Cir. 2005), the Government sought to prove that the defendant had re-entered the country after being deported. An immigration enforcement agent submitted a "warrant of deportation" attesting that he saw the defendant leave the United States, and the court admitted the warrant without testimony from the agent.
Numerous state courts have considered the issue and found that Crawford does not prohibit admission of business records because they fall into a hearsay exception and consequently are non-testimonial in nature. See, e.g., Sproule v. State, --- So.2d ----, 2006, WL 782483 at *1, (Fla. App. 4 Dist. Mar 29, 2006) ("Because Crawford did not change the law pertinent to admission of nontestimonial hearsay that falls within a hearsay exception, we hold that the trial court did not err by allowing the admission of [defendant's] driving record into evidence."); Pierce v. State, --- S.E.2d ----, 2006 WL 573790, at *3 (Ga. App.,Mar. 10 2006) (intoxilyzer certificates for DUI prosecution non-testimonial business record and admissible under Crawford); see also Belvin v. State, 922 So.2d 1046, 1052 n. 2 (Fla. App. 4 Dist. 2006) (discussing Crawford's applicability to business records admitted in criminal prosecutions).

While the case law supports that business records are non-testimonial hearsay and thus admissible at trial, the Government is not seeking to admit the 902(11) certifications at trial. Rather, the Government is providing them pursuant to Rule 104(a) to allow the court to make the preliminary determination of admissibility. Consequently, even if the court were to determine that the Rule 902(11) certifications themselves are inadmissible hearsay at trial, the Court could simply consider them in the Rule 104(a) context to determine pre-trial admissibility.

The question whether a document qualifies as a record of regularly conducted activity for purposes of Rule 803(6) must be answered by the court under Rule 104(a). In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 287 (3rd Cir. 1983)  Rule 104(a) provides:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

In answering the question whether a document qualifies under Rule 803(6), the court is not bound by the Rules of Evidence, and is not confined to basing its decision on admissible evidence. In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d at 288. See also Bourjaily v. United States, 483 U.S. 171, 181 (1987) (holding in the context of a Rule 104 determination that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted"); United States v. Matlock, 415 U.S. 164, 172 - 173 (1974) (rejecting confrontation clause claims because the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence). Although these cases were decided prior to Crawford, the rationale of the cases supporting the pretrial determination of admissibility under Rule 104(a) is unaffected. A defendant's confrontation clause rights are not fully in force at pre-trial

determinations of the admissibility of evidence.  Consequently, the use of 902(11) certificates in the context of Rule 104(a) admissibility determinations does not affect the defendant's confrontation clause rights.

In addition, requiring live testimony every time a business record is offered makes little sense.  Chief Justice Rehnquist wrote in his concurring opinion in Crawford, "the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records...To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." 541 U.S. at 75.  Further, even if live witness testimony were required, there is no purpose in presenting that testimony to the jury.  The question whether a document qualifies under Rule 803(6) must be answered by the Court under Rule 104(a), not by the ultimate trier of fact. Consequently, defendant's argument that 902(11) certifications are unconstitutional and violate his confrontation clause rights should be rejected.

**C.  The Use of Fed. R. Evid. 902(11) Certificates to Authenticate Emails.**

The Defendant also appears to challenge the Government's use of 902(11) certifications with respect to the emails retained by the information technology sections of Greenberg Traurig ("GT") and GSA.  As explained in correspondence to the Defendant, the Government is seeking to use the 902(11) certificates from Greenberg Traurig and GSA to show that the data comprising the emails is authentic, not that it is automatically admissible.  The 902(11) certificates indicate that the email data was kept in the normal course of business of the Greenberg Traurig or GSA Information Technology department.  We are not seeking to use a 902(11) certificate to claim

that the words of the email itself are business records and are consequently admissible,[4] the use of the 902(11) certificate is simply to authenticate the data comprising the content of that email because the data was preserved in the normal course of business.[5]

A useful analogy is to that of a letter contained in an envelope. Courts have long held that a chain of custody technique can be used to authenticate a document. Even if a person did not read the letter within the envelope, testimony regarding the physical handling of the envelope can help establish a chain of custody for the enclosed letter. This can be illustrated by analyzing the transfer of a letter written by Person A that is addressed to Person D. Person A writes the letter, places it in an envelope, and then gives the envelope to Person B. Person B gives the envelope containing the letter to Person C. Person C then delivered the envelope containing the letter to Person D. Even though Person B and Person C never opened the envelope and did not read the content of the letter, their testimony is sufficient to establish that Person D received a letter authored by Person A.[6] Similarly, if Person B and Person C are employed by a delivery

---

[4] Even after an email is authenticated, a court must determine if an exception to the hearsay rule applies in order to determine admissibility. See, e.g., United States v. Ferber, 966 F. Supp. 90, 98-99 (D. Mass. 1997) (analyzing numerous exceptions to the hearsay rule and finding e-mail admissible as a present sense impression under Fed. R. Evid. 803(1))

[5] The advisory committee to Fed. R. Evid. 902 state that "The notice requirement in Rules 902(11) and (12) is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed.R.Evid. 902 advisory committee's note (2000). "In other words, the burden is put on the opponent of the evidence, given enough time to do so, to show that the foundation provided by the affiant or declarant is so weak as to fail to meet the minimal standards of authenticity established by Article 9 of the Federal Rules." United States v. DirectTV v. Murray, 307 F. Supp. 2d 764, 772 (D. S.C. 2004) (declaration of company's custodian of records regarding storage of messages combined with affidavit of individual who received the email messages satisfied the business records exception).

[6] Another useful comparison is that of complaint calls to a call center complaint line. A call center keeps track of all of the complaint calls that are received. The information that a call

service, such as Federal Express, the custodian of records for the delivery service can certify from the business records that the delivery was made from Person A to Person D.[7] The contents of the letter are then evaluated for admissibility pursuant to other criteria - such as hearsay objections.[8]

Similarly, an e-mail message can be authenticated by showing its electronic handling. The e-mail systems of Greenberg Traurig and GSA transmitted the message and can trace the routing back to the source computer through the identifying email addresses. The fact that data was sent from one email address, for example Jack Abramoff's Greenberg Traurig email account, to another address, for example David Safavian's GSA email account, is a business record of the GT Information Technology department. In the regular course of business, GT archived the emails and preserved the data that showed when data was sent from one specific address to

---

was made from a specific number at a specific time to the call center is kept in the normal course of business to determine who is making the complaint and when. These telephone call logs would be considered standard business records admissible pursuant to 803(6) exception to the hearsay rule. However, the company may also record the contents of the call - i.e. the complaint. The recording of the content of the call that includes the words used in the caller's complaint would be considered hearsay and not admissible for the truth of the matter unless it fit under a separate hearsay exception.

[7]Additionally, the transmission of a message could be considered non-hearsay because it is non-verbal conduct not intended as an assertion. See, e.g., Fla. Conference Ass'n of Seventh-Day Adventists v. Kyriakides, 151 F. Supp. 2d 1223, 1225 and n. 3 (C.D. Cal. 2001) (admitting reports authored by defendant and noting that transmission of report via the internet was non-verbal conduct and thus not hearsay under Fed. R. Evid. 801).

[8]See, e.g., United States v. Baker, 693 F.2d 183, 187 (D.C. Cir. 1982) (in determining admissibility of business records, the court must evaluate for double hearsay and "if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.")

another specific address.[9]  Consequently, the 902(11) certificate is certifying that the underlying data is admissible.  That means that the particular data is an authentic email sent from one email address to another at a particular time of day.[10]  Defendant obviously can still challenge the admissibility of the content of the email on hearsay or other grounds.[11]  See, e.g., United States v. Jackson, 208 F.3d 633, 637 (7th Cir. 2000) (finding that data regularly preserved by internet

---

[9] See, e.g., United States v. Mitchell, 49 F.3d 769, 778 (D.C. Cir. 1995) (approving admission of wire transfer records to intended recipients when company had business practice to verify that intended recipient was actual recipient).

[10] While the case law is not extensive in terms of e-mail use in this context, courts have had decades to examine an e-mail's closest comparison, the postal letter.  See United States v. Matthews, 11 F. Supp. 2d 656, 659 (D. Md. 1998) (analyzing e-mail and attachment as it would a mailed letter).  A paper document found to be authentic can be admitted not to show the truth of its contents, but for a non-hearsay purpose.  Courts have found that the addresses of letters can be offered for a non-hearsay purpose.  See, e.g., United States v. Singer, 687 F.2d 1135, 1147 (8th Cir. 1982) (letter could not be offered to show truth of written contents, but the letter's envelope could be shown to prove that the addressee lived at the address); United States v. Arrington, 618 F.2d 1119, 1126 (5th Cir. 1980) (utility bills found in search of house admissible to show defendant resided in house).  See also United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. Unit B 1981) (upholding admissibility of letter addressed to four defendants for the limited purpose of linking defendants with each other and a boat).

[11] We address those hearsay challenges in a separate filing. We note, however, that numerous courts have found it proper to admit emails as a party admissions or under some other exception to the hearsay rule.  See, e.g., United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000) (authentic emails would have been party admissions); Sea Land Serv., Inc. v. Lozen Int'l, 285 F.3d 808, 820 (9th Cir. 2002) (finding district court improperly excluded email message that was admission and adoptive admission); Riisna v. ABC, Inc., 219 F. Supp. 2d 568, 572 (S.D.N.Y. 2002) (e-mail was party admission as evidence of retaliatory scheme).  See also Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1095 (D. Or. 2000) (postings on defendant's website admissible as party admission); Mota v. Univ. of Tex. Houston Sci. Ctr., 261 F.3d 512, 527 (5th Cir. 2001) (e-mail sent by university professor admissible for a number of reasons, including 803(3) statement of declarant's then existing state of mind); United States v. Ferber, 966 F. Supp. 90, 98-99 (D. Mass. 1997) (analyzing numerous exceptions to the hearsay rule and finding e-mail admissible as a present sense impression under Fed. R. Evid. 803(1)); Fla. Conference Ass'n of Seventh-Day Adventists v. Kyriakides, 151 F. Supp. 2d 1223, 1225 and n. 3 (C.D. Cal. 2001) (admitting reports authored by defendant that were transmitted over the internet).

service providers was inadmissible because it failed to fit into a recognized hearsay exception); New York v. Microsoft Corp., 2002 WL 649951, at * 2 n. 4 (D. D.C. Apr. 12, 2002) (finding that if emails were considered a business record, statements within emails could be treated as non-hearsay statements by a party opponent pursuant to Rule 801(d)).

1.  Basic Law of Authentication

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  See, e.g., United States v. Turpin, 65 F.3d 1207, 1213 (4th Cir. 1995).  Rule 901(b) provides a non-exhaustive list of "examples of appropriate methods of authentication."  United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994).  These examples include (1) "[t]estimony of a witness with knowledge" that "a matter is what it is claimed to be," Rule 901(b)(1); (2) "[c]omparison by the trier of fact... with specimens which have been authenticated," Rule 901(b)(3); and (3) "appearance" or "other [d]istinctive characteristics" "taken in conjunction with circumstances," Rule 901(b)(4).  See also United States v. Dean, 989 F.2d 1205, 1210 n.7 (D.C. Cir. 1993) ("[t]he rule contains an illustrative, but not exhaustive, list of suggested methods of identification").

"[T]he burden of proof for authentication is slight."  United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994).  "[T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility[;] [r]ather there need be only a prima facie showing... of authenticity, not a full argument on admissibility."  United States v. McGlory, 968 F.2d 309, 328-29 (3d Cir. 1992).  Moreover, the "government need only make a prima facie showing of authenticity."  United States v. Black, 767 F.2d 1334, 1342 (9th Cir.

1985).  See also United States v. Coohey, 11 F.3d 97, 99 (8th Cir. 1993)("To meet [the] standard [[under Rule 901(a)], the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be."); In re Grey, 902 F.2d 1479, 1482 (10th Cir. 1990) ("A proponent of the evidence will sufficiently identify or authenticate a document by presenting evidence that the proferred document is what its proponent claims it is.").  United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) ("the standard for authentication, and hence for admissibility, is one of reasonable likelihood").  Indeed, it can be error to exclude documents with an unsuspicious history of custody.  See, e.g., Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1375-76 (3d Cir. 1991).

Any document that is admitted into evidence must be authenticated to show "that a matter is what it is claimed to be." Fed. R. Evid. 901(b).  While most computer information is not self-authenticating and requires some testimony regarding its authenticity, see, e.g., First Nat'l Bank of Jefferson Parish v. M/V Lightning Power, 851 F.2d 1543, 1548 (5th Cir. 1988) (holding that computer print-out of wage-related data was not self-authenticating), at least one district court has found that the email is self-authenticating.  See, e.g., Superhighway Consulting, Inc. v. Techwave, Inc., No. 98 CV 5502, 1999 WL 1044870, at *2 (N.D. Ill. Nov. 16, 1999) (denying plaintiff's motion in limine to bar party from offering "unauthenticated email evidence," and instead shifting the burden of proving the emails were not authentic to the opponent to admission).  Under Fed. R. Evid. 902(7), one category of self-authenticating documents is "inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control or origin."  Because an email address includes a company's trademark or trade name, the email address itself may authenticate the entire message. See, e.g.,

13

Superhighway Consulting, Inc., 1999 WL 1044870, at *2.

Alternatively, circumstantial evidence can be used to authenticate a document such as an e-mail. Rule 901(b)(4) allows the proponent of an item of evidence to authenticate that item based on its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances." Fed. R. Evid. 901(b)(4). There are numerous factors that can be considered by a court in determining the authenticity of a document. The Eleventh Circuit in United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000) considered numerous factors including writing style and the e-mails' origin in upholding the findings that e-mails were authenticated.[12] See also Perfect 10, Inc. v. Cybernet Ventures, 2143 F. Supp. 2d 1146, 1153-56 (C.D. Cal. 2002) (printouts of website with dates and web address sufficient to show authenticity when accompanied by declaration that they were "true and correct copies of pages printed from the internet); United States v. Scott-Emuakpor, No. 1:99CR138, 2000 WL 288442, *13 (W.D. Mich. Jan. 25, 2000) (authentication can be found with testimony of witness who was present and observed the procedure by which the e-mails and documents were retrieved from defendant's computer hard drive); United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000) ("The government made a prima facie showing of authenticity because it presented evidence sufficient to allow a reasonable juror to find that the chat room log printouts were authenticated.").

In this instance, the Court should consider the records of the transfer of data from one e-mail address to another, combined with the identifying monikers of the e-mail addresses, the

---

[12] Importantly, the Court in Siddiqui noted that the defendant's hearsay objections were actually authentication objections and therefore were not proper objections.

pattern of correspondence and the topics discussed in order to make a pretrial determination of the authenticity of the emails.

2. Admissibility of Data of Emails as Business Records:

To qualify under the business records exception to the hearsay rule: (a) the foundation must be established by one who demonstrates sufficient knowledge of the record-keeping system, (b), the records must be kept in the course of a regularly conducted business activity, and (c) the source of the information and the method of preparation must be trustworthy.

**(a) Knowledge of the Record Keeping System**

Courts have found testimony from individuals who have knowledge of the computer system or were simply present when information was downloaded from the computer to be sufficient foundation for the record under 803(6). See, e.g., United States v. Linn, 880 F.2d 209, 216 (9th Cir. 1989) (abrogated on other grounds by Florida v. White, 526 U.S. 559 (U.S. 1999) (finding that testimony of hotel's director of communications who was on duty when a computer record was printed provided a sufficient foundation for the record). Similarly, the certifying individual need not know how the computer program works, nor must the witness be the one who personally prepared the records. See, e.g., United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988); Hardison v. Balboa Insurance Co., 4 Fed. Appx. 663, 670 (10th Cir. 2001) (finding vice president of operations competent to testify about the computer system because she understood how the data was entered and who retrieved it from the system); Sea Land Service, Inc. v. Lozen Int'l, 285 F.3d 808, 820 (9th Cir. 2002) (finding manager of documentation was a qualified witness under 803(6) because she had knowledge to testify that computer records contained the actual information captured from the company's bills of lading).

In this case, the 902(11) certifications from the GT and GSA email systems are signed by the managers of the respective entire IT systems. Each has knowledge of the operations of the respective systems and has certified that they are the records custodian for the data.[13]

**(b) Kept in the Course of Business**

The second component of admissibility under 803(6) requires that the records be kept in the regular course of business.[14] The purpose of this requirement is to ensure the reliability of the evidence, via a duty to make and regularly maintain such records. See, e.g., United States v. Ferber, 966 F. Supp. 90, 98 (D. Mass. 1997). The business records do not need to be used in any particular way or for any particular purpose. See, e.g., United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (rejecting defendant's argument that computer printouts were not made in the ordinary course of business because they were not relied on for inventory purposes and stating that Rule 803(6) does not require that a business use the document in such a specific way). Consequently, the maintenance of the emails in the GT and GSA email system falls squarely within the requirement that the information be kept in the course of business.

Business records that are extracted from electronic files and printed for litigation purposes are admissible as long as the original data compilation was created or maintained according to a business practice. See, e.g., United States v. Briscoe, 896 F.2d 1476, 1494 n. 13 (7th Cir. 1990) (computer printouts of telephone call data admissible because the data was

---

[13] As discussed supra, if the Court wishes additional factual details with respect to any of the 902(11) certifications, the Government will revise the certifications to meet the Court's requirements.

[14] A witness may testify or certify that the records were "kept in the course of a regularly conducted business activity,"] and that "it was the regular practice of that business activity to make the . . . record, or data compilation." Fed. R. Evid. 803(6).

captured contemporaneously with the placing of each telephone call); United States v. Fujii, 301 F.3d 535, 539 (7th Cir. 2002) (printout of airline's reservation and check-out data was admissible under hearsay exception because data was kept as part of airline's regular business activity); United States v. Hernandez, 913 F.2d 1506, 1512 (10th Cir. 1990) (immigration service printouts of underlying data reflecting defendant's amnesty status admissible because original data compilation was made pursuant to business duty); United States v. Russo, 480 F.2d 1228, 1240 (6th Cir. 1973) ("computer printout is just a presentation in structured and comprehensible form of a mass of individual items, it is immaterial that the printout was not prepared until [the beginning of litigation].").

**(c) Trustworthiness**

Before a court will admit a business record, the proponent must demonstrate that the underlying source of the information and the method or circumstances of the preparation are trustworthy. Importantly, "the existence of an air-tight security system is not a prerequisite to the admissibility of computer printouts." United States v. Glasser, 773 F.2d 1553 (11th Cir. 1985). The Advisory Committee Notes to 803(6) that "Absence of routineness raises lack of motivation to be accurate." In this case, as attested to in the 902(11) certifications, it was standard practice for GSA and GT to maintain these emails pursuant to specific archiving procedures. Thus, even if it was not standard practice to necessarily write the emails, the data underlying the emails was routinely kept. There is no hint of motivation that indicates that the preservation of the underlying email data was inaccurate. See, e.g., New York v. Microsoft Corp., 2002 WL 649951, at * 2 (D.D.C. Apr. 12, 2002) (finding that lack of routine composition indicated untrustworthiness).

Indeed, concerns about the accuracy of the proferred evidence must go to the weight that should be accorded the evidence rather than its admissibility. See, e.g., United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000); United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question as to the accuracy of the printouts... would have affected only the weight of the printouts, not their admissibility."); see also Microware Systems Corp. v. Apple Computer, Inc., 126 F. Supp. 2d 1207, 1211 n. 2 ("technical deficiencies" of internet evidence must go to the weight rather than their admissibility).

Consequently, the 902(11) certificates from the GT and GSA information technology sections should be admitted to show the <u>authenticity</u> rather than the <u>admissibility</u> of the emails. Because the email data was preserved in the regular course of business and otherwise meets the criteria of 803(6), the data should be admitted as authentic emails between the listed addresses. The content of the emails should then be reviewed for admissibility pursuant to other hearsay objections.[15]

---

[15] If the Court does not believe that a determination can be made regarding the authenticity of the emails based upon the 902(11) certificates, the Government respectfully requests a pretrial hearing where the issues can be litigated outside of the presence of the jury.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied, and the Government's 902(11) and 18 U.S.C. § 3505 certificates should be accepted as the basis for the admission pursuant to Fed. R. Evid. 803(6) of the proffered records, and the authenticity of the proffered emails.

                              Respectfully submitted,

| | |
|---|---|
| /s/ Nathaniel B. Edmonds | /s/ Peter R. Zeidenberg |
| NATHANIEL B. EDMONDS | PETER R. ZEIDENBERG |
| Trial Attorney, Fraud Section | Trial Attorney, Public Integrity Section |
| Criminal Division | Criminal Division |
| United States Department of Justice | United States Department of Justice |

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2006, a copy of the foregoing was served on the following counsel by electronic service to:

>Barbara Van Gelder, Esq.
>Wiley Rein & Fielding
>1776 K Street NW
>Washington, DC 20006
>Tel: 202-719-7032
>Facsimile: 202-719-7049

/s/ Nathaniel B. Edmonds
NATHANIEL B. EDMONDS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice