## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Cr. No 05-370 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **DAVID HOSSEIN SAFAVIAN** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE TO EXCLUDE HEARSAY IN THE JULY 26, 2002 GSA ETHICS RESPONSE

The United States of America, by and through its undersigned attorneys, hereby respectfully submits this Response to Defendant's Motion In Limine to Exclude Hearsay in the July 26, 2002 Ethics Response and Documents Containing Portions Thereof:

In his motion, defendant requests this Court to exclude from trial the admission of the GSA ethics opinion that was retained by its author, Eugenia Ellison, as an official GSA record, or the e-mail containing that same ethics opinion that was sent to defendant by GSA general counsel Raymond McKenna, and then forwarded by defendant to Jack Abramoff.[1]

Defendant's motion should be denied. Not only is the motion premised on incorrect factual assumptions, it ignores the relevant rules of evidence. The ethics opinion is admissible as an adoptive admission and as a business record.

---

[1] Although not mentioned or discussed in his motion, after defendant was contacted by United States Senate staffers seeking information about the Scotland trip, defendant obtained from Ms. Ellison a copy of the ethics opinion (DOJ-DS 005799) and sent a copy of it to the Senate (DOJ-DS 0014925). See Attachment "A." We are assuming for purposes of this motion that defendant is also asking the Court to preclude admission of this particular iteration of the ethics opinion for the same reason as the others he states herein.

##      Background

On the morning of July 25, 2002, defendant sent the following e-mail (Govt. Ex. "B") to

the GSA general counsel, Raymond McKenna[2]:

> Subject: Ethics Guidence [sic]
>
> I am in need of an ethics opinion.  I (along with wto [sic] members of
> Congress and a few Congressional staff) have been invited by a friend and former
> colleague on a trip to Scotland to play golf for four days.  I will be paying for all
> of my hotels, meals and greens fees.  The issue is airfare.
>
> The host of the trip is chartering a private jet to take the eight of us from
> BWI to Scottland [sic] and back.  He is paying the cost for the aircraft regardless
> of whether I go or not.  In fact none of the other guest will be paying a
> proportional share of the aircraft costs.  I need to know how to treat this activity.
>
> One other point of relevance: the host is a lawyer and lobbyist, but one that
> has no business before GSA (he does all of his work on Capitol Hill).

Mr. McKenna forwarded defendant's e-mail to Eugenia Ellison, the GSA's Special

Counsel for Ethics and Civil Rights.  Ms. Ellison was in charge of the ethics program for GSA

and was responsible for ethics training for all "covered"[3] employees.  After receiving defendant's

written inquiry, it was clear to her that there was inadequate information in it to provide the

requested guidance.  Either Ms. Ellison or Mr. McKenna[4] went back to defendant and learned the

following information that had not previously been included in defendant's original e-mail: 1)

that defendant's friend was named "Jack Abramhoff" [sic]; 2) that Abramoff was employed by

---

[2]As general counsel of GSA, Mr. McKenna was also the chief ethics official for the agency.

[3]The term "covered employees" means those involved in contracting and procurement and all members of the Senior Executive Service.  Defendant was considered a "covered employee."

[4]Neither Ms. Ellison nor Mr. McKenna can presently recall, four years removed, which one of them obtained the additional information from defendant.

the law firm Greenberg Traurig; and 3) that neither Mr. Abramoff nor his firm did business with

or was seeking to do business with GSA.

Ms. Ellison then drafted a page-long ethics opinion (Ex. "A") which stated, in pertinent

part:

> This is in response to your inquiry on whether you can accept a gift of free air
> transportation from a friend to attend an [sic] golf trip.  You stated that a friend
> and former colleague, Jack Abramhoff [sic], invited you, along with several
> members of Congress and a few Congressional staff, to Scotland to play golf for
> four days.  You stated that you will be paying for all of your hotel expenses,
> meals, and greens fees.  You noted, however, that your friend would be providing
> the air transportation at no cost to you and the other guests attending the event.
> You stated that your friend, who is a lawyer and lobbyist with Greenberg Traurig,
> is chartering a private jet to take you and the other participants from BWI to
> Scotland and back.  ***You stated that neither Mr. Abramhoff [sic] nor his firm
> does business with or is seeking to do business with GSA.***  Based upon the
> information you have provided, you may accept the gift of free transportation
> from your friend.

(Emphasis supplied).

The style and format of the ethics opinion was the standard one used by Ms. Ellison.  It

was phrased in this fashion to help eliminate the possibility of any ambiguity or mistake as to the

factual premises on which the ethics opinion was based.

Ms. Ellison printed out a copy of her opinion and, per standard practice, placed it in a

GSA file where it was retained.  Ms. Ellison then forwarded a copy of the ethics opinion via e-

mail to Mr. McKenna, who attached a complete copy of that opinion to an email which he then e-

mailed to Mr. Safavian at 5:06 p.m. on July 26, a little more than 24 hours after defendant

requested the opinion.  Exhibit "C."

Defendant never attempted to correct any of the factual assertions contained within the

3

opinion.[5]  Rather, three hours after receiving the requested ethics opinion, defendant forwarded

the e-mail containing the ethics opinion on to Abramoff with the message, "Jack – fyi.  It looks

like Scotland is a go."

On February 23, 2005, defendant was contacted by the United States Senate Committee

on Indian Affairs (the "Committee") and asked to provide "all records reflecting, referring or

relating to the 2002 Scotland golf trip."  Defendant contacted Ms. Ellison and requested a copy of

the ethics opinion which she had previously provided to him prior to the trip.  From her files, Ms.

Ellison retrieved both a copy of the ethics opinion and a copy of defendant's original e-mail

which sought the ethics opinion, and forwarded both to defendant.

On March1, 2005, defendant spoke with a Committee investigator by telephone.  In that

conversation, defendant stated that he had "fully vetted" the Scotland trip with GSA's ethics

counsel prior to the trip, and gave the investigator the names of Mr. McKenna and Ms. Ellison as

contacts at GSA who issued the ethics opinion to him.  On March 17, 2005, defendant mailed the

Committee a letter explaining his position, and included, among other attachments, a copy of

both the ethics opinion and defendant's e-mail seeking the ethics opinion to the Committee.

Govt. Exh. "D" (DOJ DS- 14922 – 14928).

The government has alleged in its Indictment that by representing to the Committee that

he had revealed all relevant information to his ethics officer prior to the Scotland trip, and by

then sending the resulting ethics opinion to the Committee, defendant obstructed justice.

Indictment, Count Four.  It is this ethics opinion that defendant sent to the Committee and that

---

[5]In seeking an ethics opinion, Defendant had a duty to provide full and accurate information
to the ethics officer.  5 C.F.R. § 2635.107(b).

the government made the subject of one of its obstruction of justice allegations that defendant

seeks to preclude from evidence on the grounds that it is hearsay.

### The Ethics Opinion Is Admissible as an Adoptive Admission by Defendant

At no time after he received a copy of the ethics opinion did defendant ever contact either

Mr. McKenna or its author, Ms. Ellison, and indicate that there were any factual errors contained

within it. Rather, a few hours after receiving a copy of the ethics opinion via e-mail, defendant

forwarded a copy of it to Mr. Abramoff with the message, "Jack – fyi. It looks like Scotland is a

go."

That was not the last time Mr. Safavian sent the e-mail to others. On March 17, 2005, in

response to a letter from the United States Senate inquiring about the Scotland trip, Mr. Safavian

wrote:

> [p]rior to departure [on the trip] I consulted the GSA Office of General Counsel to
> obtain guidance on the propriety of this trip. Counsel determined that I could
> accept the value of the trip *gratis*; it did not meet the definition of a 'gift from
> a prohibited source' under the applicable regulations, nor was it considered a gift
> given because of my official position. Nevertheless, in the exercise of discretion,
> I gave Mr. Abramoff a check for the value of the trip prior to departure ....
>
> Per your request, I have conducted a search of all possibly responsive records, as
> defined in your correspondence of February 23, 2005. Attached, please find the
> following:
>
> A copy of an email I sent on July 25, 2002 to Mr. Ray McKenna, then-GSA
> General Counsel, asking for an ethics opinion as to the propriety of the invitation;
>
> A response from Ms. Eugenia Ellison, Associate General Counsel at GSA,
> indicating that I could attend the trip *gratis*;...

Govt. Ex. "D."

Enclosed in the letter was the ethics opinion, (Ex. "A"), that defendant now claims the

5

Court should exclude from evidence.

Fed.R.Evid. 801(d)(2)(B) provides that "[a] statement is not hearsay if the statement is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth." "It is not necessary for one to use any specific language to adopt another's statement. Rather, a statement may be adopted as long as the statement was made in the defendant's presence, the defendant understood the statement, and the defendant has the opportunity to deny the statement but did not do so." United States v. Ward, 377 F.3d 671, 675 (7th Cir. 2004). Although a defendant's "must have 'understood and unambiguously assented to [] [the] statement[]' . . . [defendant's] understanding and assent may be established through conduct as well as through words." United States v. Beckham, 968 F.2d 47, 52 (D.C. Cir. 1992).

In Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997), the Court held that the trial court erred in excluding from evidence a grievance report issued against Tufts University. The held that the report should have been admissible pursuant to Rule 801(d)(2)(B), because the adoptive party (the University) "accepted and acted upon the evidence." Id. The Court noted that the Federal Rules of Evidence Advisory Committee Notes provided that "Adoption or acquiescence may be manifested in any appropriate manner." Id. The Court noted that the report in question made three specific recommendations, and that the University implemented all three of these recommendations. Id. By implementing these recommendations, the University manifested its belief in the report's truth. Id. See also Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264 (10th Cir. 1998) (interview notes attached to two-page report conducted by Personnel Department into allegations of racial harassment admissible as adoptive admission where City Manager's actions subsequent to receiving report indicated his belief in the

report's truth and accuracy; fact that City Manager "need not have believed every statement in report" before acting on its conclusion, "that fact goes to the weight of the evidence rather than its admissibility.").

It would be difficult to imagine circumstances in which an individual more clearly and unequivocally manifested an adoption or belief in the truth of a document than has the defendant in regards to the ethics opinion. When defendant first received the ethics opinion from Mr. McKenna, he failed to point out a single mistake or factual error. His silence alone could be deemed to be an adoptive admission. See United States v. Ward, 377 F.3d at 675. But defendant's conduct eliminates any ambiguity as to whether or not he adopted the opinion for purposes of Rule 801(d)(2)(B).[6] Defendant did not merely "sit" on the ethics opinion. First, he immediately forwarded it on to Abramoff. This was significant, because it constituted a clear effort by defendant to clue Abramoff in on the details of defendant's cover story. There is no other reason why defendant would have forwarded to Abramoff the contents of the ethics opinion, which recounted in detail defendant's claim that Abramoff lacked any relationship with GSA. Had defendant merely wanted to advise Abramoff that defendant was going on the trip, he could have done that with a simple phone call or e-mail.[7]

---

[6] The fact that the ethics opinion was not, at least on its face, contrary to defendant's interests is not relevant to the issue of its admissibility. "Where the party unambiguously manifests adoption of another person's statement, the content of the statement need not be against his interest." United States v. Shulman, 624 F.2d 384, 390 (2d Cir. 1980). "There is no express requirement in the Federal Rules of Evidence that a party can adopt only those statements which either incriminate him or are otherwise against his interest." Id.

[7] The significance of this e-mail becomes more evident when considering the fact that when he was questioned by GSA-OIG about the Scotland trip, defendant "volunteered" Abramoff's name and phone number and suggested that the investigator contact Abramoff directly. Obviously, defendant could make this suggestion with the confidence of knowing that Abramoff knew exactly

Then, after being contacted by a Senate Committee and advised that his trip with Abramoff was being scrutinized as part of an investigation into allegations of misconduct, including influence peddling, defendant obtained a copy of the ethics opinion and sent it on as evidence of his "clean hands."

It bears emphasis that it is the very same ethics opinion that defendant used in an attempt to deceive the Committee about the nature of Abramoff's relationship with GSA – and which the government has made the centerpiece of its second obstruction of justice Count – that defendant now asks this Court to preclude from evidence. In other words, the document that defendant mailed to the Committee as evidence that he committed no ethical breaches is now, apparently, too unreliable to be admitted in evidence against him at trial as evidence of his obstructing the investigation into his conduct.

By receiving the e-mailed ethics opinion in silence and not correcting any of its factual assertions, and by then forwarding it on to Abramoff, defendant clearly manifested an adoption in its truth. The same is true for the ethics opinion which defendant obtained from Ms. Ellison and then sent on to the Committee accompanied by a letter of explanation that explicitly referenced the enclosed opinion. Simply put, if forwarding to a Senate Committee a document that purports to explain one's actions is not a clear and unambiguous manifestation of one's adoption or belief in that document's truth, it is difficult to imagine under what circumstances this doctrine could conceivably apply.

Accordingly, both the e-mail from Mr. McKenna and the ethics opinion of Ms. Ellison should be admitted as adoptive admissions of the defendant.

what defendant had previously revealed to his ethics officer.

**The Ethics Opinion Is a Business Record**[8]

Although neither Ms. Ellison nor Mr. McKenna currently recall the details of the

conversation they had with Mr. Safavian prior to the writing of this ethics opinion, the opinion –

including its recitation of Mr. Safavian's representations to the ethics adviser – is also admissible

as evidence against Mr. Safavian as a business record.

Fed.R.Evid. 803(6) states:

> A memorandum, report, record, or data compilation, in any form, of acts, events,
> conditions, opinion, or diagnoses, made at or near the time by, or from
> information transmitted by, a person with knowledge, if kept in the course of a
> regularly conducted business activity, and if it was the regular practice of that
> business activity to make the memorandum report, record, or data compilation, all
> as shown by the testimony of the custodian or other qualified witness, or by
> certification, unless the source of information or the method or circumstances of
> preparation indicate lack of trustworthiness. The term "business" as used in this
> paragraph includes business, institution, association, profession, occupation, and
> calling of every kind, whether or not conducted for profit.

The proffered ethics opinion clearly meets the requirements of Rule 803(6). It is an

opinion, made less than one day after communicating with Mr. Safavian about the facts of his

situation. It was Ms. Ellison's job to provide such opinions as part of her duties as the GSA

ethics adviser. It was also part of Ms. Ellison's job to memorialize such opinions and to keep a

record of it for future reference. This is exactly what she did in this case and explains why she

was able, when defendant contacted her more than two and one-half years after she wrote the

---

[8]As a preliminary matter, defendant is simply wrong when he states that "[t]he GSA did not preserve the original" ethics opinion (Def. Mot. Exclude Ethics Opinion, p. 1), that the ethics opinion "was not maintained in any official GSA file" (Id.) and that "GSA itself destroyed the [ethics opinion] pursuant to its business practice of destroying transient material" (Id., p. 8). The ethics opinion drafted by Eugenia Ellison was preserved and has been maintained in the official GSA files since its drafting. See 902(11) certificate signed by Laura Leussig, Deputy General Counsel of GSA, attached hereto at Govt. Ex. "E."

opinion, she was able to immediately locate both her opinion and defendant's e-mail which requested it. Thus, the ethics opinion meets all of the requirements to be admissible as a business record. See United States v. Cicero, 22 F.3d 1156, 1163 (D.C. Cir. 1994) (pretrial services reports admissible as business records to show the phone numbers given by alleged accomplices of defendant); United States v. Jacoby, 955 F.2d 1527, 1536 (11th Cir. 1992) (attorney's memo to file about what a client had told him admissible as business record where 1) attorney typed memorandum at or near the time of the conversation with client; 2) "it was [attorney's] regular practice to dictate memoranda to his files whenever something about a transaction needed to be explained or noted"; and 3) it was the law firm's "practice to maintain these memoranda in the files as part of the regular course of business.").

Defendant relies upon United States v. Warren, 42 F.3d 647, 657-57 (D.C. Cir. 1995) and Ricciardi v. Children's Hosp. Med. Ctr., 811 F.2d 18, 23 (1st Cir. 1987) for authority for the proposition that in order for a document to qualify as a business record, the person who made the record must have personal knowledge of the of the information contained therein. Neither case provides such support. In Warren, the Court held that police reports are admissible by defendants pursuant to Rule 803(6) "if [the information contained therein] reflect[s] the maker's personal knowledge, or if [the information was] 'reported to the maker, directly or through others, *by one who is himself acting in the regular course of business, and who has personal knowledge*.'" Warren, 42 F.3d at 657 (emphasis supplied, quotations omitted). In Ricciardi, the Court held that "a record is not admissible under the federal rule if 'the source of information or the method or circumstances of preparation indicate lack of trustworthiness.' Fed.R.Evid. 803(6). An unknown source is hardly trustworthy." Ricciardi, 811 F.2d at 23.

10

These cases provide defendant no support, as it cannot be said that the source of the information for Ms. Ellison's ethics opinion was someone not "acting in the regular course of business [or without] personal knowledge" or that the source of the information was "unknown" or "untrustworthy." There were only three individuals directly involved in the issuance of this ethics report: defendant, Ms. Ellison and Mr. McKenna. Neither Ms. Ellison nor Mr. McKenna had ever heard of Jack Abramoff or Greenberg Traurig prior to July 25, 2002, so this information would obviously have had to come from the defendant. Regardless of whether this information was conveyed from defendant directly to Ms. Ellison or it came via Mr. McKenna, the process was pursuant to the regular course of business, that business being the issuance of an ethics opinion.

Moreover, Ms. Ellison could not have drafted her ethics opinion without knowing whether or not Abramoff or his firm was "seeking to do business" with GSA.[9] Clearly, either Ms. Ellison or Mr. McKenna went back to defendant to obtain this critical information. It simply cannot be said that this opinion – which is accurate on all other points – is somehow unreliable because defendant's lawyer now claims defendant said something different. In short, there is nothing in the ethics opinion produced or the circumstances surrounding its production that suggest "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Rule 803(6). Indeed, the opposite is true. Every factual assertion made in opinion is corroborated by other evidence in the case, with the only exception being the phrase,

---

[9]Ms. Ellison need to know whether Abramoff was a prohibited source, i.e., whether he or his firm was doing or seeking to do business with GSA.

11

"seeking to do business."[10]

The fact that the government is unable to state whether it was Ms. Ellison or Mr. McKenna who spoke with defendant about this question does not bar the ethics opinion's admissibility as a business record.  See United States v. Basey, 613 F.2d 198 (9th Cir.) cert. denied, 446 U.S. 919 (1980) (No error in admission of college records to establish address allegedly provided by defendant despite fact that custodian herself did not record the information or know who did; it was "sufficient custodian testified that the records were made and kept in the regular course of college business."); United States v. Ray, 920 F.2d 562, 565 (9th Cir. 1990) (welfare records admissible at trial as business records despite fact the government not able to establish when and by whom the documents were prepared); United States v. Lieberman, 637 F.2d 95 (2d Cir. 1980) (while Rule 803(6) generally requires the record to "have been made by some with firsthand knowledge of the facts recorded, or have been made on the basis of information supplied by a person having firsthand knowledge ... [t]he principal foundation of the trustworthiness of business records is the requirement that the information recorded be based upon firsthand observations of someone whose job it is to obtain the information....[D]irect proof of actual knowledge of the person making the record or providing the information is not required, and the requisite knowledge may be inferred from the fact that it was someone's business to obtain such information.")  In this case, it was both Mr. McKenna's and Ms. Ellison's job to obtain the necessary information and to provide an accurate and complete ethics opinion.

---

[10]While defendant's counsel steadfastly maintains defendant never stated this, Ms. Ellison is clear that she would have had to have had an answer to this question before she could have drafted the opinion.

12

**CONCLUSION**

For the foregoing reasons, defendant's Motion to Exclude Hearsay in the July 26, 2002

Ethics Response should be denied, and Ms. Ellison's ethics opinion as well as the e-mail from

Mr. McKenna (Ex. "C") that defendant forwarded on to Abramoff should be admitted into

evidence in their entirety.


Respectfully submitted,


/s/ Nathaniel B. Edmonds          /s/ Peter R. Zeidenberg
NATHANIEL B. EDMONDS          PETER R. ZEIDENBERG
Trial Attorney, Fraud Section          Trial Attorney, Public Integrity Section
Criminal Division          Criminal Division
United States Department of Justice          United States Department of Justice

13

CERTIFICATE OF SERVICE


I hereby certify that on this 25th day of April, 2006, a copy of the foregoing was served

on the following counsel by electronic service to:


Barbara Van Gelder, Esq.
Wiley Rein & Fielding
1776 K Street NW
Washington, DC 20006
Tel: 202-719-7032
Facsimile: 202-719-7049


/s/ Nathaniel B. Edmonds
NATHANIEL B. EDMONDS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice