UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                            )
UNITED STATES OF AMERICA,          )
                                                            )
        v.                                                )        Criminal No. 05-0370 (PLF)
                                                            )
DAVID HOSSEIN SAFAVIAN,           )
                                                            )
        Defendant.                                 )
———————————————————— )

OPINION AND ORDER

This matter is before the Court on defendant's motion to dismiss all five counts of

the indictment filed against him.  The Court heard oral argument on the motion on March 24,

2006.  The government opposes the motion to dismiss, maintaining that the indictment is

sufficient as a matter of law because it is specific enough to protect the defendant against future

jeopardy and places him on fair notice of the charges against him.  The government argues that

all of the defendant's arguments go primarily to the sufficiency of the evidence, a matter which

the Court cannot properly consider at this stage in the proceedings.  The Court agrees and

therefore denies the defendant's motion to dismiss for the reasons given below.

I.  BACKGROUND

Defendant David Safavian has been indicted on three counts of making false

statements, pursuant to 18 U.S.C. § 1001, and two counts of obstructing justice pursuant to 18

U.S.C. § 1505, and aiding and abetting in the obstruction of justice pursuant to 18 U.S.C. § 2.

Each of the false statement counts is brought under subsection (a)(1) of 18 U.S.C. § 1001, which

encompasses "any matter within the jurisdiction of the executive, legislative, or judicial branch

of the Government of the United States, [wherein the defendant] knowingly and willfully — (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact." The facts alleged in each count of the indictment relate to the defendant's involvement with "Lobbyist A," since identified as Jack Abramoff, and a golfing trip to Scotland.

The indictment alleges that from May 16, 2002 until January 2004, defendant David Safavian was the Chief of Staff for the Administrator of the General Services Administration ("GSA"). On August 3, 2002, the defendant, lobbyist Jack Abramoff, and seven other individuals flew to Scotland to play golf. Mr. Safavian, Mr. Abramoff, and others continued on to London, England, eventually returning to the United States on August 11, 2002. Prior to going on the golfing trip, Mr. Safavian sought and received an ethics opinion from a GSA ethics officer regarding whether he could participate in the trip. Both the GSA Office of the Inspector General ("GSA-OIG") and the Senate Committee on Indian Affairs subsequently conducted investigations into the Scotland trip. The GSA-OIG's investigation was opened in March 2003 after the receipt of an anonymous tip. The Senate Committee investigation began in March 2004 after several Native American tribes made allegations of misconduct against Mr. Abramoff. In the course of each of these investigations, Mr. Safavian was questioned about his involvement in the trip. He responded to each of the inquiries both orally and with documents.

Count One of the indictment alleges that the defendant obstructed the GSA-OIG investigation; Count Two alleges that he made a false statement in connection with seeking the GSA ethics opinion prior to the trip; Count Three alleges that he made a false statement in the course of the GSA-OIG investigation; Count Four alleges that he obstructed the Senate Committee investigation; and Count Five alleges that he made a false statement in the course of the Senate Committee Investigation.

2

## II.  ANALYSIS

An indictment need only contain a "plain, concise and definite statement of the

essential facts constituting the offense charged."  FED. R.CRIM.P. 7(c). It is sufficiently specific

where it (1) contains the elements of the offense charged and fairly informs the defendant of

those charges so that he may defend against them, and (2) enables him "to plead acquittal or

conviction in bar of future prosecutions for the same offense," Hamling v. United States, 418

U.S. 87, 117-18 (1974), that is, "to protect against future jeopardy for the same offense." United

States v. Haldeman, 559 F.2d 31, 123 (D.C. Cir. 1976), cert. denied, 454 U.S. 1149 (1977). "An

indictment returned by a legally constituted and unbiased grand jury,  . . . if valid on its face, is

enough to call for trial of the charge on the merits."  Costello v. United States, 350 U.S. 359, 363

(1956);  see United States v. Conlon, 628 F.2d 150, 155-56 (D.C. Cir.), cert. denied, 454 U.S.

1149 (1982).  The government therefore "is usually entitled to present its evidence at trial and

have its sufficiency tested by a motion for acquittal under Rule 29." United States v. Yakou, 428

F.3d 241, 247 (D.C. Cir. 2005).  Only in "unusual circumstances" is pretrial dismissal of the

indictment possible on sufficiency-of-the-evidence grounds, and that is "where there are material

facts that are undisputed and only an issue of law is presented." Id. (discussing case law in sister

circuits, some of which have upheld the pretrial dismissal of an indictment based on sufficiency

of the evidence "where the government has made a full proffer of evidence or where there is a

stipulated record").

Mr. Safavian's motion, while purporting to address matters of law only, in fact

argues for dismissal almost entirely on sufficiency-of-the-evidence grounds.  Such a

determination is improper in this case because there has been no full proffer of the evidence by

the government, there is no stipulated record, and numerous material facts remain in dispute. Indeed, the defendant states explicitly that his motion relies on taking "the government's allegations, *documents and witness statements* as true," Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss the Indictment ("Mot. to Dism.") at 4 (emphasis added), and he relies heavily on documents that have been produced in discovery, including e-mails, interview notes, and witness statements taken by the FBI (known as "302's").  The Court cannot properly consider such matters in evaluating a motion to dismiss the indictment.

Even were the Court able or willing to consider matters outside the four corners of the indictment, the defendant's arguments throughout his motion are almost wholly predicated on the assumption that the documents in his possession are the totality of the evidence and represent what the government actually will present at trial.  Frequently his assertions regarding the government's "evidence" are interpretations of the documents produced in discovery and assumptions about what the government's theory of the case will be.  The defendant ignores the fact that the witness testimony cannot possibly be encompassed by the brief notes of interviews and summaries made by other individuals of witness interviews (although when those summaries relate to the defendant's statements, the defendant has been at great pains to point out that it is mere hearsay), or that additional documents may be produced pursuant to the Jencks Act.

Mr. Safavian's motion is replete with statements about how the government cannot "demonstrate," "show," or "establish" various of the elements of the alleged crimes.  See, e.g., Mot. to Dism. at 4.  It is not, however, the government's burden to demonstrate, show, or establish anything at this point;  that is what trials are for.  Many of the defendant's arguments in this motion no doubt will be re-raised in a Rule 29 motion at the close of the government's case, and may be well appropriate at that stage.  Many other of the defendant's arguments concerning

4

the weight, probative value, and sufficiency of the evidence are best left for a jury to decide.  At

this stage of the proceedings, the Court is not concerned with the sufficiency of the evidence, but

only with the sufficiency of the indictment.  The motion to dismiss the indictment must be

denied with respect to each count.

### A.   Count Two (False Statement - GSA Ethics Opinion)[1]

Defendant moves to dismiss Count Two arguing that: (1) the defendant did not

have fair notice of the potential consequences of his conduct; (2) the government cannot

demonstrate the falsity of defendant's statement; (3) the indictment does not allege the requisite

affirmative act of concealment, only a failure to disclose; and (4) the government cannot

demonstrate the materiality of the statements made.

### 1.   No Fair Notice

Mr. Safavian maintains that he did not have fair notice of the possibility that his

request for ethics advice could be the basis for a criminal charge, citing in part to the fact that the

statement he made in requesting the advice was not a response to an inquiry, review, or

investigation, or even a request for a formal advisory opinion.  Mot. to Dism. at 16.  He first

argues that the federal regulation governing requests for ethics advice does not create

consequences for a person who seeks advice without disclosing the full facts other than the

potential that he may not be able to rely upon the advice to escape prosecution for the underlying

issue. See 28 C.F.R. §2635.107.  Defendant also argues, as a policy matter, that to allow

statements one makes in requesting an ethics opinion to be the basis for criminal sanctions would

_____

[1]  Taking each count in turn, the Court addresses Count Two of the indictment first, because the
facts alleged in this count are the earliest chronologically and because the bulk of the parties'
arguments center on this count.

create a dilemma for federal employees who, he suggests, now will need legal advice in order to ask for ethics advice.  Mot. to Dism. at 16 n. 11.

      As to the defendant's first argument, the fact that the regulation he cites itself does not warn of potential criminal liability is of no significance.  Otherwise every regulation creating a legitimate government function or employee obligation would need to reference 18 U.S.C. § 1001 in order to provide a basis for prosecution under that statute.  Notably, the regulation in question does contain the requirement that an agency ethics officer must "report any information he receives relating to a violation of the criminal code," as well as stating that no privilege exists between employees requesting ethics advice and those giving it.  28 C.F.R. § 2635.107. Since the regulation itself contemplates the potential for criminal prosecution arising out of information provided to the ethics officer, the defendant's argument that he was not on notice that his communications with the officer could result in prosecution under this particular statute, as opposed to any other, must  fail.

      Defendant's second argument for dismissing this count as a matter of law is that his prosecution constitutes an "unprecedented" application of the law, pointing to the fact that he can find no prior cases where a person has been prosecuted under 18 U.S.C. § 1001 for statements made in connection with seeking an ethics opinion.  Mot. to Dism. at 1. However wise or unwise it may be to prosecute a federal employee for allegedly making false statements made in connection with seeking an ethics opinion, 18 U.S.C. § 1001 itself does not contemplate any exceptions of this sort nor suggest that such a policy rationale provides a basis for barring this prosecution.  18 U.S.C. § 1001.  The matter of whether such an exception to the statute should exist is one for Congress, not for this Court.

2.   Falsity by Trick, Scheme or Device

The defendant maintains that Count Two of the indictment must be dismissed for three reasons: (1) the government "cannot negate interpretations that would make [defendant's] statements accurate;" (2) the statements are fundamentally ambiguous such that they should not go to a jury; and (3) an ambiguous regulatory framework underlies the claim. Mot. to Dism. at 18.  All three of these arguments are focused entirely on a single statement Mr. Safavian made in his July 25, 2002 e-mail to GSA General Counsel Ray McKenna requesting the ethics opinion: that Mr. Abramoff  "has no business with the GSA, (he does all of his work on Capitol Hill)." Id.  Mr. Safavian asserts that this is "[t]he only statement to a government official at issue for Count Two."  Id.

Mr. Safavian's arguments ignore the fact that the allegation in Count Two of the indictment that he committed "falsifi[cation], conceal[ment], or cover[ing] up by any trick, scheme or device a material fact" is not based on any one statement or exchange.  18 U.S.C. § 1001.  See Indictment ¶ 29.  In fact, Count Two alleges a variety of conduct between May 2002 and August 2002, including not only Mr. Safavian's statement to Mr. McKenna regarding the nature of Mr. Abramoff's business dealings, but also that he "concealed his assistance to [Jack Abramoff] in GSA-related activities" and "concealed [Jack Abramoff]'s business relationships with GSA." Id.  With the number of facts and incidents that took place over the time period alleged in the indictment, it is impossible to reduce the question of falsity to a single statement with a single answer, and the indictment does not do so.  Thus, even if the Court were inclined to accept all of the arguments that the defendant makes with regard to this particular

statement, the Court would not dismiss Count Two of the indictment for failure to allege the falsity necessary to prove the charge.[2]

Finally, the defendant has prematurely raised an argument that should be presented to the factfinder, the jury. Falsity is an essential element of a § 1001 prosecution, but the literal truth can be a defense to such a charge. United States v. Milton, 8 F.3d 39, 45 (D.C. Cir. 1993). It is established, however, that what constitutes the truth is a matter for the jury. Id. ("Since the dictionaries establish that 'claim' could have several definitions, how might its meaning here be discovered? Only by considering the term in context, taking into account the setting in which it appeared and the purpose for which it is used. This was a matter for the jury."). The defendant's extensive discussion of what proper definition should be applied to the terms "business" or "doing business before GSA" regarding the particular statement on which he focuses merely demonstrates how intricate the question of truth is and, therefore, the need for it to be placed before the jury.

3.   Concealment

Mr. Safavian argues that the indictment has not properly alleged concealment because it does not allege an affirmative act to conceal a material fact, that is Mr. Abramoff's

---

[2]     The Court notes that although it may not look outside the four corners of the indictment for purposes of deciding a motion to dismiss, if it did so as Mr. Safavian wishes, it would also necessarily take into account the abundance of e-mails between Mr. Safavian and Mr. Abramoff provided by the government in the briefing of this motion. See Government's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Indictment ("Opp.") Ex. 1, 2, 3, 4, 5, 8, 9, 12, 13, 15, 16, 17, 20, 21, 22, 23, 25, 26, 27, 31, 32. Those e-mails, at the very least, suggest that the defendant was communicating with Mr. Abramoff concerning numerous work-related matters involving the GSA, and that, regardless of the definition of "business" before GSA, the defendant would have reason to know that Mr. Abramoff's "work" was not all "on Capitol Hill." As the Court has stated, however, it is neither appropriate nor necessary for it to examine these e-mails or documents at this time. That examination is best left for the jury at trial.

business dealings with the GSA.  Mot. to Dism. at 30-31.  Focusing again on the single July 25,

2002 statement to Mr. McKenna, the defendant makes extensive arguments regarding the

meaning of that statement.  Assuming that there were no affirmative acts alleged, the defendant

also goes on to argue that there was no affirmative duty to disclose such that the failure to

disclose could be considered an act of concealment under 18 U.S.C. § 1001.  The government

responds, first, that the indictment does allege affirmative acts, and second, that even if specific

facts supporting affirmative acts had not been alleged, the indictment still would be sufficient

because it has tracked the statutory language.  Opp. at 28 n. 14 (citing United States v. London,

550 F.2d 206, 212 (5th Cir. 1977) (holding that even if "no conduct alleged by the government

[in the indictment] rises to the level of a trick, scheme, or device, but rather evinces mere

nondisclosure . . . the [defendant's] conduct may have constituted concealment by trick, scheme,

or device, and [] the government should be allowed to substantiate this at trial.")).

        For reasons much the same as those discussed in the previous section, the Court

cannot agree that the defendant can interpret Count Two of the indictment as pertaining only to

the single July 25, 2002 statement, much less rely for dismissal of the count on defendant's own

interpretation of that statement's meaning.  Count Two states that the false statement occurred

"in connection with seeking and obtaining a GSA ethics opinion," and places the time frame

from May 2002 to August 2002, dates both before and after the actual request for advice was

made.  Indictment ¶ 29.  The government, both in the indictment and in its opposition, identifies

additional acts of concealment or trickery other than the July 25, 2002 e-mail to Mr. McKenna,

such as Mr. Safavian's use of his home rather than work e-mail to communicate with Mr.

Safavian.  Indictment ¶ 13; Opp. at 30; see also Indictment ¶¶ 11, 14.  Taking the indictment on

its face – and not holding it up against evidence that has not yet been admitted (and much of

which consists of hearsay and requires interpretation) –  the Court concludes that the indictment

sufficiently alleges affirmative acts.

4.     Materiality

Finally, defendant argues with respect to Count Two that his misrepresentation or

concealment, if any, were not shown by the indictment to have had a "natural tendency to

influence, or be capable of influencing, the decision of the decision making body to which it was

addressed."  Mot. to Dism. at 36 (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)).

He supports this position by claiming, first, that his request for an ethics opinion did not affect

the handling of property by GSA, one of its principal functions, and, second, that his statements

could not be material because he did not accept the gift offered (the trip to Scotland), which he

paid for himself.  Mot. to Dism. at 36-37.  Once again, the bases for these arguments are

documents and evidence outside of the indictment which the defendant asks the Court to accept

at face value (with his particular interpretation of them) without waiting to hear the testimony of

the witnesses at trial and consider the evidence presented.  Furthermore, the issue of whether or

not the decision was material is one for the jury. United States v. Gaudin, 515 U.S. at 512

(materiality is mixed question of law and fact that must be resolved by jury); United States v.

Cisneros, 169 F.3d 763, 767 (D.C. Cir. 1999) ("it is up to the jury to decide whether the

materiality element has been proven."). While the defendant may choose to present some of this

material as evidence at trial, the Court will not dismiss the indictment with respect to Count Two

based on the defendant's interpretation and selection of certain documents produced by the

government in discovery.

### B.   Count One (Obstruction - GSA-OIG investigation)

The defendant argues that the indictment does not "demonstrate" obstruction of the GSA-OIG investigation. Mot. to Dism. at 38.  Relying on the GSA-OIG report on the investigation and the rough notes of the interview with Mr. Safavian, he argues that he did not have the capacity to influence or obstruct the pending proceedings because he did not take a gift from Mr. Abramoff.  Rather, as noted above, he maintains that he reimbursed Mr. Abramoff the cost of the trip, and the indictment does not demonstrate how his representation that he had reimbursed the cost of the trip was obstructive.  As the government points out, however, the role of the indictment is not to "demonstrate" anything, but rather to place the defendant on notice of what it intends to demonstrate at trial.  Opp. at 35.  Count One of the indictment adequately does so and cannot be dismissed at this stage.

### C.   Count Three (False Statement - GSA-OIG investigation)

The defendant moves for dismissal of Count Three, which alleges that he made a false statement to the GSA-OIG Regional Inspector General.  He makes many of the same arguments here as he made regarding Count Two – namely, that the indictment does not "establish" falsity, materiality, or that the defendant acted knowingly or willfully. Mot. to Dism. at 42-45.  Once again, the defendant relies on materials outside the four corners of the indictment – GSA-OIG interview notes and the GSA-OIG report of the investigation – to support his argument.  For the same reasons as previously given, the Court declines to dismiss the indictment on sufficiency-of-the-evidence grounds predicated upon evidence that has not yet been admitted in evidence or tested in the crucible of trial. The indictment on its face sufficiently alleges falsity, materiality, and willfulness.

11

### D.   Count Four (Obstruction - Senate Committee Investigation)

Mr. Safavian argues that Count Four, charging obstruction of the Senate Committee investigation, should be dismissed, first, because the Senate Committee on Indian Affairs did not have jurisdiction to investigate his statements to the GSA, and, second, because the statements he did make were neither false nor corruptly designed to obstruct.  Mot. to Dism. at 45-54.  The second argument, much like those discussed above, relies on documents and evidence that are not proper for consideration by the Court on this motion to dismiss. As for the first, the Court finds that the indictment sufficiently alleges that the Senate's investigation into Mr. Safavian's actions was within its scope of authority.

18 U.S.C. §1505 defines obstruction, in part, as the defendant's acts to "influence, obstruct, or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by a Committee of either House of Congress," in this case the inquiry being a congressional investigation into "allegations of misconduct by Jack Abramoff and others that have been made by several Native American tribes."  Indictment ¶ 33.  A congressional committee's legitimate exercise of its investigative authority must be an area within its purview,  United States v. Mitchell, 877 F.2d 294, 300 (4th Cir. 1989); see also United States v.Cisneros, 26 F.Supp. 2d 24, 39 (D.D.C. 1998), and the questions raised by the committee must be within their jurisdiction.  United States v. Poindexter, 725 F.Supp. 13, 22 (D.D.C. 1989).

The defendant does not challenge the authority of the Senate Committee on Indian Affairs to investigate the alleged misconduct by Mr. Abramoff and others, merely its investigation of Mr. Safavian's obtaining the GSA ethics opinion.  Mot. to Dism. at 47.

12

Specifically, Mr. Safavian argues that the inquiry to him that resulted in his making oral representations to the Senate investigator and producing documents, including the GSA ethics opinion and other records, was outside the Committee's purview.  Mot. to Dism. at 50-52.  Mr. Safavian's argument relies in part on documents that cannot be considered on this motion to dismiss.  And, as the government points out, a factual inquiry into what the Senate Committee or its staff believed it was investigating is unnecessary at this stage of litigation.  Opp. at 44.  Presumably, Committee staffers will explain during their testimony at trial.  For these reasons, the Court will again deny his motion to dismiss on these grounds.

The Court notes, however, that even the information presented by Mr. Safavian himself does not convincingly demonstrate that the Senate Committee's actions in investigating him were outside its legitimate purview.  The basis of the Committee's inquiry to the defendant was apparently its concern that the Scotland trip had been paid for by tribal funds.  Indictment ¶¶ 33-34; Mot. to Dism. at 53.  Mr. Safavian's analysis of the Committee's scope of inquiry – and his conclusion that because it was investigating "fraudulent actions against Indian Tribes," it had no authority to request information related to the financial history of a golfing trip that was alleged to have been paid for by misused tribal funds – is unnecessarily restrictive and constrained.  Compare Mot. to Dism. at 47 with United States v. Poindexter, 725 F.Supp. at 22 (question of what constituted Congressional committee's due and proper scope of inquiry cannot be answered by "a myopic focus on formality, . . . [but rather] by a careful examination of all the surrounding circumstances.").  The fact that Mr. Safavian volunteered information to the Committee regarding his GSA ethics opinion and eventually provided it as documentation to support his position that he had paid for his portion of the trip himself, and acted ethically in

doing so, does not seem to the Court to be outside the purview of the Committee's interest in the financial dealings that went into the trip to Scotland.

Finally, the defendant argues that his representations had no effect on the Senate Committee's investigation and therefore cannot be shown to have obstructed it. Mot. to Dism. at 54. Once again, defendant relies on the statements in FBI 302's concerning representations assertedly made by the Committee's Chief Counsel and Deputy Counsel that the investigation was not affected by Mr. Safavian's representations. There will be plenty of time to explore this issue on direct and cross-examination when these witnesses testify at trial. The Court will not look beyond the face of the indictment to evaluate the evidence at this stage.

### E. *Count Five (False Statement - Senate Committee Investigation)*

Mr. Safavian moves to dismiss Count Five, which alleges that he made false statements in the course of the Senate Committee's investigation, arguing that the indictment does not demonstrate concealment or a concurrent duty to disclose, falsity, or materiality. Mot. to Dism. at 54-57. Mr. Safavian also reiterates his position that the Senate Committee was acting outside its scope and not exercising "a due and proper exercise of the power of inquiry." Id. at 58-60. The defendant relies on the same set of documents and evidence that he does in each of the counts discussed above to support this argument. Once again, the Court cannot and will not dismiss this count, or any count of the indictment, on sufficiency-of-the-evidence grounds.

### F. *Counts One and Four (Obstruction) with Respect to 18 U.S.C. § 2 (Aiding and Abetting)*

The defendant also moves to dismiss Counts One and Four of the indictment with respect to the charges brought pursuant to 18 U.S.C. §2, that is, that the defendant aided and

14

abetted another in the obstruction of justice.  Mr. Safavian argues that the indictment has not

provided sufficient facts to apprise him of the charge or to inform him of whom he is supposed

to have aided and abetted. Mot. to Dism. at 60-61.  The government responds that the indictment

is sufficient on its face to provide the defendant with notice of the conduct alleged.  Opp. at 48-

49.  Given the particularized facts alleged in the indictment as a whole and in these counts in

particular regarding the interactions between Mr. Safavian and Mr. Abramoff with respect to the

Scotland trip, the Court agrees with the government that the indictment sufficiently places Mr.

Safavian on notice of the charges against him.  Cf. United States v. North, 910 F.2d 843, 913

(D.C. Cir. 1990).

Accordingly, it is hereby

ORDERED that defendant's motion to dismiss the indictment [32] is DENIED.

SO ORDERED.


_____
PAUL L. FRIEDMAN
United States District Judge

DATE:

15