UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 05-0370 (PLF) |
| | ) | |
| DAVID HOSSEIN SAFAVIAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

OPINION AND ORDER

This matter is before the Court on:  (1) defendant's motion in limine to deny the

government's Rule 902(11) certifications; (2) the government's motion in limine for pretrial

determination of admissibility of certain evidence and the supplement to that motion; and

(3) defendant's motion in limine to exclude hearsay and irrelevant evidence.  These motions all

make arguments regarding the admissibility of approximately 260 e-mails that the government

seeks to admit in its case against the defendant.

On May 19, 2006, this Court entered an Amended Minute Order stating which of

the e-mails would be:  (1) provisionally admitted in part or in whole for the truth of the matters

asserted therein, either as (a) admissions of the defendant under Rule 801(d)(2)(A) of the Federal

Rules of Evidence and/or (b) adoptive admissions of the defendant under Rule 801(d)(2)(B);

(2) provisionally admitted in part or in whole but not for the truth of the matters asserted therein;

(3) provisionally excluded because the Court rejects the government's theory of admission under

the co-conspirator hearsay exception set forth in Rule 801(d)(2)(E) (unless certain witnesses with

personal knowledge of those e-mails testify); and (4) provisionally excluded for other reasons. This Opinion and Order supplement and explain that Amended Minute Order.

### A.   Authentication of E-mails

Authentication is an aspect of relevancy.   Advisory Committee Note, FED.R.EVID. 901(a) (citations omitted); 31 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7102 at 13 (2000).   "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."   FED. R. EVID. 901(a). See 5 SALTZBURG, MARTIN & CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 901.02[1] at 901-5 (8th ed. 2002).   The threshold for the Court's determination of authenticity is not high. See, e.g., United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994) ("the burden of proof for authentication is slight");   United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) ("the standard for authentication, and hence for admissibility, is one of reasonable likelihood"); United States v. Coohey, 11 F.3d 97, 99 (8th Cir. 1993) ("the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be").   The question for the Court under Rule 901 is whether the proponent of the evidence has "offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is." 5 FEDERAL RULES OF EVIDENCE MANUAL § 901.02[1] at 901-5 - 901-6.   The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so.   See 31 FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7102 at 16.

1.   Rule 902(11)

Rule 902 of the Federal Rules of Evidence lists those documents that are self-authenticating – that is, those that do not require extrinsic evidence of authenticity as a condition precedent to admissibility.  Rule 902(11) is intended to set forth "a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness."  Advisory Committee Note, FED. R. EVID. 902.  Similarly, the Advisory Committee Notes to Rule 803 state that Rule 902(11) "provides that the foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."  Advisory Committee Note, FED. R. EVID. 803.  These comments to each Rule make clear that they were intended to go "hand in hand."  Rambus, Inc. v. Infineon Technologies AG, 348 F.Supp.2d 698, 701 (E.D. Va. 2004) ("Rule 902(11) is . . . the functional equivalent of testimony offered to authenticate a business record tendered under Rule 803(6)").

Pursuant to Rule 902(11), the government submitted a certification from Jay Nogle, the official custodian of records for Greenberg Traurig, LLP, the law firm that once employed Jack Abramoff.  Mr. Nogle stated that in his capacity as official custodian he could certify that 467,747 e-mails had been produced by Greenberg Traurig to the United States and that those e-mails comport with the requirements of Rule 902(11), in part because the e-mails "would be admissible under Fed. R. Evid. 803(6) if accompanied by a written declaration of [their] custodian or other qualified person."  The government does not, however, seek to admit these e-mails pursuant to the business records exception to the hearsay rule in Rule 803(6), but offers other hearsay exceptions and non-hearsay arguments (discussed later in this Opinion) as

bases for admission.  The defendant objects to the authentication of the Greenberg Traurig e-mails pursuant to Mr. Nogle's Rule 902(11) certification.[1]  Because Rule 902(11) was intended as a means of authenticating *only* that evidence which is being offered under the business records exception to the hearsay rule, the Court will not accept the proffered Rule 902(11) certification of Mr. Nogle with reference to the Greenberg Traurig e-mail exhibits.

### 2.   Rule 901

Because it is not appropriate for these e-mails to be admitted as self-authenticating under Rule 902 of the Federal Rules of Evidence, the Court turns to the authentication requirements set forth in Rule 901.  The question under Rule 901 is whether there is sufficient evidence "to support a finding that the matter in question is what its proponent claims," FED. R. EVID. 901(a) – in this case, e-mails between Mr. Safavian, Mr. Abramoff, and other individuals. As noted, the Court need not find that the e-mails are necessarily what the proponent claims, only that there is evidence sufficient for the jury to make such a finding.  See 5 FEDERAL RULES OF EVIDENCE MANUAL § 901.02[1] at 901-5 - 901-6 (8th ed. 2002); id. at 901-14 ("Evidence is sufficient for authentication purposes if the foundation for particular evidence warrants the trier of fact in finding that it is what the proponent claims.").  Rule 901(b) sets forth illustrations of how evidence may be authenticated or identified; it emphasizes, however, that these are "illustration(s) only" and are not intended to be the only methods by which the Court may determine that the e-mails are what the government says they are.  See United States v. Dean,

---

[1]       The government has submitted 902(11) certifications for other documents, but the defendant at a hearing before the Court on the motions conceded that the other ones were appropriate, leaving its only remaining objection to Mr. Nogle's certification of the Greenberg Traurig e-mails.

989 F.2d 1205, 1210 n.7 (D.C. Cir. 1993) ("The rule contains an illustrative, but not exhaustive, list of suggested methods of identification.").[2]  For the reasons that follow, the Court finds that there is ample evidence for the jury to find that these exhibits are, in fact, e-mail exchanges between Mr. Safavian, Mr. Abramoff, and other individuals.

One method of authentication identified under Rule 901 is to examine the evidence's "distinctive characteristics and the like," including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." FED. R. EVID. 901(b)(4).  Most of the proffered exhibits can be authenticated in this manner.  The e-mails in question have many distinctive characteristics, including the actual e-mail addresses containing the "@" symbol, widely known to be part of an e-mail address, and certainly a distinctive mark that identifies the document in question as an e-mail.  See United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000).  In addition, most of the e-mail addresses themselves contain the name of the person connected to the address, such as "abramoffj@gtlaw.com," "David.Safavian@mail.house.gov," or "david.safavian@gsa.gov." See, e.g., Exhibits 101, 105, 106.  Frequently these e-mails contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, in the "To:" and "From:" headings, and by signature of the sender.  The contents of the e-mails also authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various identifiable matters, such as Mr. Safavian's work at the General

---

[2]      The first method identified by the Rule is testimony of a witness with knowledge that the matter is what it is claimed to be.  FED. R. EVID. 901(b)(1).  Apparently, however, the government has decided not to call the one witness who could authenticate almost every one of the proffered e-mails, Jack Abramoff.

Services Administration ("GSA"), Mr. Abramoff's work as a lobbyist, Mr. Abramoff's restaurant, Signatures, and various other personal and professional matters.[3]

Those e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3), which states that such evidence may be authenticated by comparison by the trier of fact (the jury) with "specimens which have been [otherwise] authenticated" – in this case, those e-mails that already have been independently authenticated under Rule 901(b)(4). For instance, certain e-mails contain the address "MerrittDC@aol.com" with no further indication of what person uses that e-mail address either through the contents or in the e-mail heading itself. See, e.g., Exhibit 134. This e-mail address on its own does not clearly demonstrate who was the sender or receiver using that address. When these e-mails are examined alongside Exhibit 100 (which the Court finds is authenticated under Rule 901(b)(4) by its distinctive characteristics), however, it becomes clear that MerrittDC@aol.com was an address used by the defendant. Exhibit 100 is also an e-mail sent from that address, but the signature within the e-mail gives the defendant's name and the name of his business, Janus-Merritt Strategies, L.L.C., located in Washington, D.C. (as well as other information, such as the business' address, telephone and fax numbers), thereby connecting the defendant to that e-mail address and clarifying the meaning of both "Merritt" and "DC" in it. The comparison of those e-mails containing MerrittDC@aol.com with Exhibit 100 thereby can provide the jury with a sufficient basis to find that these two exhibits are what they purport to be – that is, e-mails to or from Mr. Safavian. The Court will not perform this exercise with respect to each exhibit. Suffice it to say that the Court has examined

---

[3]      Presumably, a person with personal knowledge will testify that Mr. Safavian worked at GSA, and that Mr. Abramoff worked as a lobbyist and owned a restaurant named Signatures.

each of these e-mails and found that all those that the Court is admitting in whole or in part meet the requirements for authentication under Rule 901.

   The defendant argues that the trustworthiness of these e-mails cannot be demonstrated, particularly those e-mails that are embedded within e-mails as having been forwarded to or by others or as the previous e-mail to which a reply was sent.  The Court rejects this as an argument against authentication of the e-mails.  The defendant's argument is more appropriately directed to the weight the jury should give the evidence, not to its authenticity.  While the defendant is correct that earlier e-mails that are included in a chain – either as ones that have been forwarded or to which another has replied – may be altered, this trait is not specific to e-mail evidence.  It can be true of any piece of documentary evidence, such as a letter, a contract or an invoice.  Indeed, fraud trials frequently center on altered paper documentation, which, through the use of techniques such as photocopies, white-out, or wholesale forgery, easily can be altered.  The *possibility* of alteration does not and cannot be the basis for excluding e-mails as unidentified or unauthenticated as a matter of course, any more than it can be the rationale for excluding paper documents (and copies of those documents).   We live in an age of technology and computer use where e-mail communication now is a normal and frequent fact for the majority of this nation's population, and is of particular importance in the professional world.  The defendant is free to raise this issue with the jury and put on evidence that e-mails are capable of being altered before they are passed on.  Absent specific evidence showing alteration, however, the Court will not exclude any embedded e-mails because of the mere possibility that it can be done.

The defendant does raise some noteworthy points regarding the limits of what the government can show regarding these e-mails and what they purport to be.  The Court notes that it is possible to authenticate these e-mails through examination of the contents, distinctive characteristics, and appearance, and others by comparison to authenticated e-mails, and the jury is free to make its own examinations and conclusions.  But the Court has been aided in reaching its conclusions by the proffers of government lawyers. The government will not, of course, be permitted to make such proffers to the jury nor may government witnesses testify to facts beyond their personal knowledge concerning these e-mails.  For instance, the F.B.I. agent through whom the government plans to offer these e-mails cannot testify from personal knowledge as to whether MerrittDC@aol.com is, in fact, Mr. Safavian's e-mail address.  He may testify only that Exhibit 100 contains that e-mail address in the From: section of the heading, and that the Exhibit has a signature section that contains Mr. Safavian's name.  Similarly, an F.B.I. agent will not be permitted to testify to the meaning of Greenberg Traurig internal e-mail codes (such as the "DIR-DC-Gov" designation next to Jack Abramoff's name, which the government proffered at the May 16, 2006 hearing means that Mr. Abramoff was the Director of the Governmental Affairs Division of Greenberg Traurig's D.C. office).  See, e.g., Exhibits 144, 145, 146.

Some of the e-mail addresses do not appear in full in any part of an exhibit. Rather the "To:" and "From:" parts of the heading contain full names with no e-mail address containing the @ symbol.  Jay Nogle, the official custodian of records for Greenberg Traurig, explained in his Rule 902(11) certification that the "To:" and "From:" sections of these e-mails denoted that a Greenberg Traurig employee had sent or received the e-mail.  See, e.g., Exhibits 142, 143, 144.  Certainly, if Mr. Nogle, or another Greenberg Traurig employee with knowledge

of these codes, is called to testify, he or she may testify to their meaning.  An F.B.I. agent may not.

In certain e-mails, Mr. Safavian appears to have replied to Mr. Abramoff's e-mails in an atypical manner.  Whereas most e-mail chains appear in reverse chronological order, the most recent of the e-mails appearing first, Mr. Safavian's responses to Mr. Abramoff's e-mails sometimes come after the e-mail from Mr. Abramoff.  See, e.g., Exhibits 100, 124, 134. Further complicating the matter, this reversal of the order is not designated by the "To:" and "From:" section that normally denotes the start of a separate e-mail.  The result is that the text of separate e-mails appears next to one another without a clear division between the end of one and the start of the next. Having examined these e-mails in comparison to one another, the Court has determined that it is apparent that some parts of the text are questions that lead to responses, and therefore the contents and substance serve to identify the exhibit as an exchange of e-mails.  A jury, using its own knowledge of how e-mail exchanges work, and considering any testimony that may be offered by those with personal knowledge of these e-mails, may determine which persons, identified in the e-mail through their addresses and names, wrote which portions.  No F.B.I. agent, however, may testify to these conclusions nor state which sections of these e-mails have been written by whom.  It is beyond his or her personal knowledge and would be wholly speculative.

The jury may draw whatever reasonable conclusions and inferences it chooses to from these e-mails and determine how to consider them, but the Court will not permit any testimony beyond the bare fact of what words appear on a particular e-mail by a case agent or summary witness who neither composed nor received these e-mails.  Should the government

choose to call Mr. Abramoff or any other of the authors of these e-mails (other than, of course, the defendant, whom the government is not permitted to call as a witness), that witness may testify as to his or her personal knowledge of any particular e-mails he or she sent or received, and to any personal knowledge of e-mail addresses of persons with whom he or she has exchanged e-mails, even if not the specific ones in evidence.

### B.   Admissibility of E-mails

Having addressed the issue of authenticity, the Court must now consider whether, in the absence of Jack Abramoff or someone else with personal knowledge as a trial witness, the proffered e-mails are inadmissible hearsay or may be admitted under one or more exceptions to the hearsay rule.  The government contends that each of the e-mails is admissible pursuant to one or more of the following theories:  (1) the e-mails constitute admissions by a party opponent (that is, defendant David Safavian) under Rule 801(d)(2)(A) of the Federal Rules of Evidence; (2) the statements in the e-mails are adoptive admissions by the defendant under Rule 801(d)(2)(B) of the Federal Rules of Evidence; (3) the statements constitute non-verbal conduct by the defendant, Jack Abramoff or another person, or show lobbying "work" or "business" by Mr. Abramoff or his colleagues, and are not offered (and will not be admitted) for the truth of the matters asserted therein; (4) the e-mails provide necessary context for certain statements made by the defendant and are not offered for the truth of the matters asserted; (5) the statements are admissible non-hearsay statements offered to show the defendant's state of mind (including intent, plan, motive or design) under Rule 803(3) of the Federal Rules of Evidence;  and/or (6) the statements are statements of Mr. Safavian's co-conspirators (either Mr. Abramoff or another person) made in

furtherance of a conspiracy and thus are admissible under Rule 801(d)(2)(E) of the Federal Rules

of Evidence.  At the Court's request, the government helpfully provided a chart listing each e-

mail by exhibit number and indicating which theory or theories the government offers for the

admission of each exhibit.  The defendant submitted an opposition to this chart and the

government submitted a reply.

        Rather than discuss each exhibit individually, the Court will discuss in this

Opinion some of the reasons for provisionally admitting, partially admitting, or excluding certain

categories of e-mails.  The Court has examined each e-mail against the relevant provisions of

Rules 801, 802 and 803 of the Federal Rules of Evidence and has indicated on the attached chart

(which is incorporated by reference into this Opinion) which exhibits are provisionally admitted

in whole or in part, and which are provisionally excluded, and on which theories.[4]  Because of

the number of e-mail exhibits and their complexity – many of these e-mails contain various

replies and forwards for which different arguments for admission apply – the Court did not and

will not parse each one in this Opinion or the attached chart.  Because many of these exhibits

contain e-mail chains with numerous messages embedded and not single e-mails, appropriate

redactions or limiting instructions may be necessary where certain parts of an e-mail chain are

inadmissible or are admissible only for a limited purpose.

---

[4]      The Court's May 19, 2006 Amended Minute Order stated which exhibits were
provisionally admitted and which were excluded and whether they were admitted for the truth of
the matters asserted or not, but did not specify under which theory or theories a particular exhibit
was admitted or excluded.

### 1. Admissions of Party-Opponent

The Court has read each of the e-mails with care and where it had questions about how to read them, the context in which they should be considered or who the senders or recipients were, it obtained clarification from counsel for the government during the hearing on May 16, 2006.[5]   The statements attributed directly to Mr. Safavian come in as admissions by a party opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence.  The context and content of certain e-mails demonstrate clearly that Mr. Safavian "manifested an adoption or belief" in the truth of the statements of other people as he forwarded their e-mails.  FED. R. EVID. 801(d)(2)(B).  They therefore are admissible as adoptive admissions under Rule 801(d)(2)(B). See Sea-Land Service, Inc. v. Lozen Intern., LLC, 285 F.3d 808, 821 (9th Cir. 2002); United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir. 1992).  Other e-mails forwarded by Mr. Safavian do not clearly demonstrate his adoption of the contents, and therefore are not admitted under Rule 801(d)(2)(B).

### 2. Other Non-Hearsay

Looking at the content and context of other e-mails and what events preceded or immediately followed them, the Court finds that a number of the e-mails are admissible under Rule 803(3) to show Mr. Safavian's state of mind at the time he received them or at some later time.  Other e-mails provide context for the defendant's statements and are not introduced for

---

[5]      The Court cautions that if such context or clarification is required for the jury to understand some of these e-mails the government must be prepared to prove it through live testimony of persons with personal knowledge, not through the testimony of the F.B.I. agent through whom the government has stated it plans to introduce these e-mails through the kinds of proffers of counsel accepted by the Court under Rule 104(a) for purposes of determining admissibility.

their truth.  Still others are non-hearsay because the truth of the e-mails' contents – discussions of

Jack Abramoff's dealings as a lobbyist – are unimportant.  It is the fact of these discussions

rather than the contents (or the truth or accuracy thereof), that is being offered by the government

on the theory that the e-mails themselves actually are Mr. Abramoff's lobbying "work" and

"business."[6]  The defendant objects to the admission of e-mails under these theories, arguing that

the truth and credibility of the contents of the e-mails necessarily are at issue if the government is

introducing them to show that "work" or "business" was being conducted.

Under the circumstances of this case, the government is correct that certain e-

mails themselves can constitute the "work" that Mr. Abramoff did, without regard to the truth of

their contents.  Lobbying is conducted through words.  Lobbyists seek to influence persons in

government to act favorably toward their clients.  Whether the lobbyist is seeking favors for his

client through oral or written communication, it is necessarily communication that constitutes the

work – unlike, say, carpentry work which could involve the physical swinging of a hammer, or

drug dealing work which involves the physical exchange of drugs for money.  In this case, the

lobbying "work" or business that Mr. Abramoff engaged in included sending e-mails to Mr.

Safavian seeking assistance and favors.  In many of the e-mails, Mr. Abramoff asks questions

without asserting the truth of any matters.  See United States v. Oguns, 921 F.2d 442, 448-49 (2d

Cir. 1990) (citing Inc. Pub. Corp. v. Manhattan Magazine, Inc., 616 F. Supp. 370, 388 (S.D.N.Y.

---

[6]	In addition to the argument that the e-mails are non-hearsay because they are themselves
the lobbying "work," the government has called this rationale for admission non-verbal conduct.
The Court rejects the non-verbal conduct argument, as these e-mails are almost by definition
verbal matters.  An example of non-verbal conduct would be where a person nods in response to
a question, thereby demonstrating without words an answer to the question in the affirmative.
See 1972 Advisory Committee Note, FED. R. EVID. 801(a).  As will be discussed, the rejection of
this argument does not result in the exclusion of these e-mails.

1985) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay

statement.")).  Cf. United States v. Long, 905 F.2d 1572, 1579-80 (D.C. Cir. 1990) (unknown

caller's statements to police officer who answered phone in defendant's home asking if defendant

"had any stuff" and requesting "a fifty" was not hearsay because caller did not intend to assert

that defendant was a drug dealer).  Other e-mails contain imperative statements instructing Mr.

Safavian on how to provide assistance and similarly are offered not for the truth of the matters

therein (and also constitute Mr. Abramoff's further efforts to receive help from Mr. Safavian in

his work).  An example of an exhibit that contains both a request and an imperative from Mr.

Abramoff is an October 1, 2002 e-mail in which Mr. Abramoff wrote to Mr. Safavian, "Let's do

a meal so we can start getting some of these business ideas for GSA moving."  Exhibit 238.

Still other e-mails contain information along with explicit or implicit requests for

assistance.  Those requests (with the factual context provided in some) constitute the non-hearsay

"work."  An example of an e-mail containing both the non-hearsay "work" being conducted by

Jack Abramoff requesting assistance from Mr. Safavian and a non-hearsay statement for context

can be can be found in Exhibit 109.  On May 24, 2002, Mr. Abramoff sent an e-mail to Mr.

Safavian stating in part:

> I have a gsa question.  There is a facility which is under control of
> the GSA in silver Spring Maryland, which was the former Naval
> Surface Weapons center (off New Hampshire Avenue).  They are
> now going to put the FDA there. it is a huge property.  I was
> wondering if it is possible get some of that property for a school.
> Do you know if that is doable and how?  Thanks.

Exhibit 109.  Later, on July 28, 2002, Mr. Abramoff forwarded to Mr. Safavian a draft letter that

would eventually be directed to Joseph Moravec, the Commissioner of Public Buildings at GSA,

and copied to Mr. Safavian (in his capacity as Chief of Staff to the GSA Administrator), GSA

Administrator Stephen Perry, and Regional Administrator Donald Williams.  See Exhibit 172.

Concerning the school he hoped to place on the GSA property in Silver Spring, Mr. Abramoff

stated (among other things) in the draft letter that the request for assistance in placing the school

was particularly urgent because of "a recent set back to the school in the form of an unfortunate

zoning ruling by the authorities in Montgomery County."  Exhibit 172.  In forwarding the draft

letter to Mr. Safavian, Mr. Abramoff included the message, "How about this?", thereby soliciting

the defendant's opinion about the draft.  The truth of the assertions in the e-mail and the draft

letter about the school are not at issue under the government's theory of this case.  Whether Mr.

Abramoff correctly represented certain facts about the business he was conducting or whether he

was able to successfully obtain for his clients what they wanted is irrelevant to the fact that he

was requesting assistance from Mr. Safavian in reaching these goals.[7]

Finally, the government has offered a number of e-mails as non-hearsay on the

theory that they go to the defendant's intent, motive, or state of mind, help to explain his future

conduct, and serve to refute any possibility of mistake or misunderstanding.  The Court agrees

that many of the e-mails are admissible because they might help to explain Mr. Safavian's motive

and intent at the time he undertook certain actions or, arguably, when he made his representations

during the investigations by the GSA's Office of Inspector General and the Senate Committee on

---

[7]     Because the defendant has indicated that he intends to challenge these definitions of "doing business" or "seeking to do business" before GSA and whether Mr. Abramoff was actually doing business under these definitions, the facts of the dealings between Mr. Abramoff and Mr. Safavian may themselves become relevant.  The Court will take this opportunity to remind both the government and defendant that the truth or falsity of such facts cannot be demonstrated through those e-mails which are being admitted only as non-hearsay.

Indian Affairs.  Again, the contents of those e-mails and the truth of their contents – such as the actual availability of certain GSA properties for lease or for sale – cannot be proven through these e-mails, nor may the government rely on them for that purpose.  The jury will be instructed that those e-mails which contain these representations, like the ones described above, may be considered only insofar as they may have had some impact on Mr. Safavian's state of mind or provided him with a motive to make false statements or obstruct justice.

### 3.   Co-conspirator Hearsay Exception E-mails

There are a number of e-mails which the Court is admitting on one of the foregoing theories that the government also offers as statements of co-conspirators (that is, statements of Mr. Abramoff or a person other than Mr. Safavian or Mr. Abramoff) assertedly made in the furtherance of a conspiracy to commit honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.  Thus, these e-mails would be admitted regardless of how the Court rules with respect to Rule 801(d)(2)(E), although some would not be admitted for their truth unless the Court also admitted them under Rule 801(d)(2)(E).  There are thirteen e-mails, however, that are admissible only if the Court accepts the co-conspirator hearsay exception theory.  They are:  Exhibits 127, 139, 140, 141, 174, 175, 179, 187, 189, 196, 197, 198, and 271.[8] The Court has determined not to admit these thirteen e-mails.

---

[8]      Major portions of Exhibits 196 through 198 are identical to Exhibits 176 through178. The same is true of Exhibits 271 and 270. That is because Exhibits 196-198 and 270 are e-mail exchanges between Mr. Safavian and Mr. Abramoff, which Mr. Abramoff then forwarded to third parties with commentary in Exhibits 1996-198 and 271, respectively.  Therefore, the only purpose in seeking to admit these exhibits are for the portions of the e-mails that are communications between Mr. Abramoff and another person who is not the defendant, pursuant to the co-conspirator hearsay exception.

a.  Rule 801(d)(2)(E)

Where the government offers the statements of a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence, the Court must find by a preponderance of the evidence that:  (1) a conspiracy existed, (2) that it involved the declarant and the defendant (among others), (3) that the statement was made during the course of the conspiracy, and (4) that the statement was made in furtherance of the conspiracy.  See Bourjaily v. United States, 483 U.S. 171, 175 (1987); see also United States v. Ellis, 156 F.3d 493, 496 (3d Cir. 1998).  In determining by a preponderance of the evidence whether a conspiracy existed and whether both the defendant and the declarant participated in it, the Court may consider both the hearsay statements sought to be admitted and other evidence probative of those matters, so long as it does not rely exclusively on the co-conspirator statements.  See Bourjaily v. United States, 483 U.S. at 180-81; see also United States v. Beckham, 968 F.2d at 51.  The Court may make this determination either before trial after an evidentiary hearing, or may let the trial proceed at the government's risk that it will not be able to carry its burden, thereby requiring the grant of a mistrial or the striking of already admitted evidence, if it fails to do so.  See United States v. Slade, 627 F.2d 293, 306-07 (D.C. Cir. 1980) (citing United States v. James, 590 F.2d 575, 580-81 (5th Cir.), cert. denied, 442 U.S. 917 (1979)).

This case is complicated by the fact that the government seeks to introduce co-conspirator statements not with respect to the specific crimes for which Mr. Safavian has been indicted – false statements and obstruction – but rather with respect to the uncharged crime of honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.  This raises two questions.  The first is whether it is appropriate to consider statements made by others in an

17

uncharged conspiracy for a crime other than those with which the defendant is charged in the

indictment.  As Judge Becker said for the Third Circuit in United States v. Ellis, 156 F.3d at 497,

co-conspirator statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not

formally charged with any conspiracy in the indictment and even if the conspiracy that forms the

basis for admitting the co-conspirator statements is not the same conspiracy or the same crime for

which the defendant has been indicted.  See also United States v. Russo, 302 F.3d 37, 45 (2d Cir.

2002).  Statements from an uncharged conspiracy may be excluded because they are remote or

unrelated to the charges in the indictment, or if their admission would confuse or mislead the

jury, but they may properly be admitted in the Court's discretion if the conspiracy during which

the statements were made was "factually intertwined" with the offenses being tried.  United

States v. Ellis, 156 F.3d at 497; see also FED. R. EVID. 403 ("Although relevant, evidence may be

excluded if its probative value is substantially outweighed by the danger of . . . confusion of the

issues, or misleading the jury. . .").

b.  Honest Services Wire Fraud

The second question presented by this case is whether the government can prove a

conspiracy to commit honest services wire fraud.  To prove this offense, the government must

show that: (1)  the defendant and others knowingly agreed to participate in a scheme to defraud

by means of false pretenses and made representations or promises relating to a material fact;

(2) that the parties did so willfully and with the intent to defraud; and (3) that some member of

the conspiracy transmitted or caused to be transmitted by wire some communication (in this case,

the proffered e-mails) for the purpose of executing the conspiracy to scheme to defraud. See 18

U.S.C. § 1343.  A "scheme or artifice to defraud" includes "a scheme or artifice to defraud

another of the intangible right of honest services." 18 U.S.C. § 1346.  As applied to a public official, the two most common theories of honest services fraud typically are (1) that the official accepted a bribe or (2) that he or she failed to disclose a conflict of interest that resulted in personal gain.  United States v. Woodward, 149 F.3d 46, 54, 57 (1st Cir. 1998) (citing United States v. Sawyer, 85 F.3d 713, 724, 729 (1st Cir. 1996)); see also United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997).

The government proffered that it will demonstrate honest services fraud by a preponderance of the evidence under both of these theories.  Specifically, it orally proffered to the Court at the May 16, 2006 hearing the evidence that it would introduce evidence to show that Mr. Safavian helped Mr. Abramoff learn how to control two GSA properties by providing internal confidential intelligence and strategic advice and by working behind the scenes as an inside source – including by setting up meetings at GSA at Mr. Abramoff's request and providing inside information – and that he did so without the knowledge of others at GSA and in exchange for the golfing trip to Scotland and other favors.  The government argues that a conspiracy to commit honest services wire fraud is demonstrated under each of the possible theories through, first, the exchange of favors for official action and assistance between Mr. Abramoff and Mr. Safavian, and, second, Mr. Safavian's failure to disclose his conflict of interest that was antithetical to the interests of the government and resulted in personal gain.  According to the government, the honest services wire fraud under each of these theories by Mr. Safavian was conducted in concert with Mr. Abramoff and others.  Finally, the government maintains that statements made by Mr. Abramoff and others in the thirteen exhibits listed above – and in certain

additional e-mails already admitted on other grounds – were statements made in furtherance of this joint enterprise, agreement or conspiracy.

After considering the government's proffer, the defendant's opposition, and the relevant law, the Court rejects this argument as a basis for admitting the thirteen e-mails which are not otherwise admissible. The steps necessary to reach the conclusion that Mr. Safavian committed honest services fraud, that certain other individuals were part of an Abramoff/Safavian conspiracy to do so, and that these e-mails contain statements made by others in furtherance of that conspiracy require the Court to make numerous findings – essentially conducting a mini-trial within the trial to determine that the honest services fraud is factually intertwined with the charged offense, that honest services fraud has been proven under one of the two theories, that a number of uncharged individuals participated in a conspiracy with Mr. Safavian to commit honest services fraud, and that the specific statements contained within the proffered e-mails were made in furtherance of that conspiracy.[9] The Court exercises its discretion in declining to undertake this lengthy journey to reach a conclusion that it is not confident will be shown by the government's evidence for the sake of thirteen e-mails that contain either redundant information or information that could be testified to by Mr. Abramoff, should the government choose to call him. Certainly, each of these exhibits, having been sent to or received by Mr. Abramoff, would be admissible if he were called as a sponsoring witness.[10]

---

[9]     The Court notes that when this issue arose, the government indicated at a hearing before the Court its preference to provide an oral proffer of what it intended to prove at trial rather than conduct a separate, pretrial James hearing on conspiracy to commit honest services fraud. United States v. James, 590 F.2d at 580-81.

[10]     The Court will permit the government to supplement its witness list if it needs to do so in view of the decisions announced in this Opinion.

4.  Other Excluded Exhibits

Exhibit 216 is provisionally excluded as irrelevant.  When asked what the context and importance of the e-mail was during the May 16, 2006 hearing, the government proffered only that it demonstrated another business contact between Mr. Safavian and Mr. Abramoff. Unlike many of the other e-mails which discuss business matters, this one is not self-explanatory on its face, nor did the government proffer that any witness could provide information that would provide context or assist in understanding this e-mail.  Therefore, the exhibit is excluded unless the government proffers that a witness with personal knowledge can testify as to how airplane leasing was related to any business or work done by either Jack Abramoff or David Safavian and how it is relevant to this case.

Exhibit 344 is provisionally excluded, as the Court does not accept that an e-mail from Renee Courtland to other individuals, and on which Mr. Safavian was copied, inviting those individuals to a party at Signatures restaurant is non-hearsay, since it is only relevant if the contents are true – that Mr. Safavian had invited the individuals to a party at Signatures Restaurant (and presumably Ms. Courtland was acting on his behalf).  Nor does the fact that Mr. Safavian was copied on such an e-mail tend to demonstrate his state of mind, motive, intent, or absence of mistake; nor does it explain his future conduct.  Only if Ms. Courtland were to testify that she had been authorized to send this e-mail on Mr. Safavian's behalf might it be admissible as a non-hearsay admission by a party opponent pursuant to Rule 801(d)(2)(C).

Accordingly, and incorporating both the attached chart and the Court's Amended Minute Order of May 19, 2006, it is hereby

ORDERED that defendant's motion in limine to deny the government's Rule 902(11) certifications [68] is GRANTED with respect to Jay Nogle's certification, and DENIED with respect to all other Rule 902(11) certifications submitted by the government; it is

FURTHER ORDERED that the government's motion in limine for pretrial determination of admissibility of certain evidence [66] and the supplement to that motion [81] are GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that defendant's motion in limine to exclude evidence that is hearsay and irrelevant [70] is GRANTED in part and DENIED in part.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  May 23, 2006

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---|---|---|---|---|---|
| 100 | X | | | X | X |
| 101 | X | | | | |
| 102 | | | | | X |
| 103 | X | | | | X |
| 104 | Exhibit withdrawn | | | | |
| 105 | X | | | X | X |
| 106 | X | | | X | X |
| 107 | X | | | X | X |
| 108 | X | | | X | X |
| 109 | | | X | | |
| 110 | X | | | X | |
| 111 | X | | | X | X |
| 112 | X | X | X | X | X |
| 113 | | | X | | X |
| 114 | | | | | X |
| 115 | X | | | X | X |
| 116 | X | | X | X | X |
| 117 | X | | | X | X |
| 118 | | | X | | X |
| 119 | | | X | | |
| 120 | X | | X | X | X |
| 121 | X | | X | X | X |
| 122 | | | X | | X |
| 123 | X | | X | X | X |
| 124 | X | | X | X | |
| 125 | | | X | | X |
| 126 | X | | X | | |
| 127 | Excluded | | | | |
| 128 | | | X | | |
| 129 | | | | | X |
| 130 | X | | X | | X |
| 131 | X | | X | X | X |
| 132 | | | X | | |
| 133 | | | X | | |
| 134 | X | | X | | X |
| 135 | | | X | | X |
| 136 | | | X | | X |
| 137 | X | | X | X | X |
| 138 | | | X | | X |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---|---|---|---|---|---|
| 139 | | | Excluded | | |
| 140 | | | Excluded | | |
| 141 | | | Excluded | | |
| 142 | | | X | | |
| 143 | | | X | | |
| 144 | | | X | | X |
| 145 | X | | | | X |
| 146 | X | | X | | X |
| 147 | X | | X | X | X |
| 148 | X | X | X | | |
| 149 | | | X | | X |
| 150 | | | X | | X |
| 151 | X | | X | | |
| 152 | X | X | X | X | |
| 153 | | | | | X |
| 154 | X | | | | X |
| 155 | X | | X | | |
| 156 | | | X | | X |
| 157 | | | X | | X |
| 158 | | | X | | X |
| 159 | X | X | X | | X |
| 160 | X | | | | |
| 161 | X | X | X | | X |
| 162 | | | X | | X |
| 163 | | | X | | X |
| 164 | | | X | | X |
| 165 | | | X | | X |
| 166 | X | | X | | X |
| 167 | X | | | X | |
| 168 | | | X | | |
| 169 | | | X | | |
| 170 | | | X | | |
| 171 | X | | | | |
| 172 | | | X | | X |
| 173 | | | X | | X |
| 174 | | | Excluded | | |
| 175 | | | Excluded | | |
| 176 | X | | X | X | X |
| 177 | X | | X | X | X |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---------|---------|---------|---------|---------|---------|
| 178 | X | | X | X | X |
| 179 | Excluded | | | | |
| 180 | Exhibit withdrawn | | | | |
| 181 | Exhibit withdrawn | | | | |
| 182 | Exhibit withdrawn | | | | |
| 183 | | | X | | X |
| 184 | X | | X | | |
| 185 | | | X | | X |
| 186 | | | X | | |
| 187 | Excluded | | | | |
| 188 | | | X | | X |
| 189 | Excluded | | | | |
| 190 | X | | X | X | X |
| 191 | X | | X | | |
| 192 | | | X | | |
| 193 | Exhibit withdrawn | | | | |
| 194 | | | X | | X |
| 195 | | | X | | |
| 196 | Excluded | | | | |
| 197 | Excluded | | | | |
| 198 | Excluded | | | | |
| 199 | | | | | X |
| 200 | X | | X | | |
| 201 | X | | X | X | |
| 202 | X | | X | | |
| 203 | X | | X | X | |
| 204 | X | | X | X | |
| 205 | | | X | | |
| 206 | X | | X | | X |
| 207 | Exhibit withdrawn | | | | |
| 208 | Exhibit withdrawn | | | | |
| 209 | | | X | | |
| 210 | | | X | | |
| 211 | X | | X | X | X |
| 212 | X | | X | X | X |
| 213 | | | X | | |
| 214 | X | | X | | |
| 215 | | | X | | |
| 216 | Excluded | | | | |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---|---|---|---|---|---|
| 217 | | | X | | |
| 218 | X | | X | X | |
| 219 | | | X | | |
| 220 | X | | X | | |
| 221 | | | X | X | X |
| 222 | | | X | | X |
| 223 | X | | X | X | X |
| 224 | | | X | X | X |
| 225 | | | X | | X |
| 226 | X | | X | | X |
| 227 | X | | X | X | X |
| 228 | | | X | | |
| 229 | X | | X | | |
| 230 | | | X | | |
| 231 | X | | X | X | |
| 232 | X | | X | | |
| 233 | X | | X | X | |
| 234 | X | | X | X | |
| 235 | X | | X | X | |
| 236 | X | X | X | X | |
| 237 | | | X | | |
| 238 | | | X | | X |
| 239 | X | X | X | | |
| 240 | X | X | X | | X |
| 241 | | | X | | |
| 242 | X | | X | | |
| 243 | X | | X | X | X |
| 244 | | | X | | |
| 245 | | | X | | X |
| 246 | | | X | | X |
| 247 | | | X | | X |
| 248 | | | X | | X |
| 249 | | | X | | X |
| 250 | | | X | | |
| 251 | | | X | | |
| 252 | | | X | | |
| 253 | | | X | X | X |
| 254 | X | | | X | |
| 255 | | | X | | X |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---|---|---|---|---|---|
| 256 | | | X | | X |
| 257 | | | X | | |
| 258 | X | | X | X | |
| 259 | | | X | | |
| 260 | Exhibit withdrawn | | | | |
| 261 | X | | X | X | |
| 262 | | | X | | |
| 263 | X | | X | X | |
| 264 | X | | X | X | |
| 265 | | | X | | |
| 266 | | | X | | |
| 267 | X | X | X | X | X |
| 268 | | | X | | X |
| 269 | | | X | | X |
| 270 | X | | X | X | X |
| 271 | Excluded | | | | |
| 272 | Exhibit withdrawn | | | | |
| 273 | | | X | | |
| 274 | | | X | | |
| 275 | X | | X | | |
| 276 | | | X | | |
| 277 | X | | X | X | |
| 278 | | | X | | |
| 279 | | | X | | |
| 280 | | | X | | X |
| 281 | | | X | | X |
| 282 | X | | X | | |
| 283 | | | X | | |
| 284 | X | | X | | |
| 285 | X | | X | X | |
| 286 | | | X | | |
| 287 | | | X | | X |
| 288 | | | X | | X |
| 289 | | | X | | X |
| 290 | X | | X | X | X |
| 291 | X | | X | X | X |
| 292 | | | X | | |
| 293 | X | | X | X | |
| 294 | | | X | | X |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---|---|---|---|---|---|
| 295 | X | | X | | |
| 296 | | | X | | |
| 297 | X | | X | X | X |
| 298 | | | X | | X |
| 299 | | | X | | |
| 300 | | | X | | |
| 301 | X | | X | | |
| 302 | | | X | | |
| 303 | X | | X | | |
| 304 | X | | X | | X |
| 305 | | | X | | |
| 306 | | | X | | |
| 307 | X | | X | | |
| 308 | | | X | | |
| 309 | | | X | | |
| 310 | | | X | | |
| 311 | Exhibit withdrawn | | | | |
| 312 | X | | X | X | |
| 313 | X | | X | X | |
| 314 | X | X | X | X | X |
| 315 | X | | X | X | |
| 316 | X | | X | X | |
| 317 | X | | X | X | |
| 318 | X | | X | X | |
| 319 | | | X | | X |
| 320 | X | | X | X | X |
| 321 | | | X | | X |
| 322 | X | | X | | |
| 323 | X | | X | | |
| 324 | X | | X | | X |
| 325 | X | | X | X | X |
| 326 | X | | X | X | |
| 327 | X | | X | | |
| 328 | | | X | | |
| 329 | X | | X | | X |
| 330 | X | | X | | X |
| 331 | | | X | | X |
| 332 | X | X | X | | |
| 333 | | | X | | |

| Exhibit | Admission 801(d)(2) | Adoptive Admission 801(d)(2)(A) | Show lobbying "work"; non-hearsay | Provide context | State of Mind, Motive, Intent, Absence of Mistake |
|---------|---------|---------|---------|---------|---------|
| 334 | X | | | X | X |
| 335 | X | | X | | X |
| 336 | X | | X | | |
| 337 | | | X | | |
| 338 | X | X | X | | |
| 339 | | | X | | X |
| 340 | | | X | | |
| 341 | X | | | X | |
| 342 | X | | X | X | |
| 343 | X | | X | X | |
| 344 | Excluded | | | | |
| 345 | | | X | | X |
| 346 | X | | | | |
| 347 | X | | X | | |
| 348 | X | | | | |
| 349 | | | X | | |
| 350 | X | | | | |
| 351 | X | | | | |
| 352 | X | | | | |
| 353 | X | | | | |
| 354 | X | | | | |
| 355 | | | X | | X |
| 356 | X | | | | |
| 357 | X | | X | | |
| 358 | X | | | | |
| 359 | | | X | | |
| 360 | | | X | | |