UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Cr. No 05-370 (PLF) |
| | : | |
| v. | : | |
| | : | |
| **DAVID HOSSEIN SAFAVIAN** | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
ORAL MOTION TO DISMISS JUROR FOR CAUSE

The United States of America, by and through its undersigned attorneys, hereby respectfully submits this Memorandum in Support of its Oral Motion to Dismiss Juror for Cause. When confronted with a juror who should be excused for good cause, the best course is to allow the defendant to choose between available options including (1) proceed with an 11-person jury pursuant to Rule 23(b) or (2) substitute the alternate pursuant to Rule 24(c). See, e.g., United States v. Cencer, 90 F.3d 1103, 1106-09 (6th Cir. 1996) (discussing cases in numerous circuits discussing defendant's choice between alternatives for excused juror).[1] Thus, in the event that the Court elects to grant the Government's motion to dismiss the juror for good cause, the

---

[1] Rule 23(b)(3) states that, "After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror."

Rule 24(c)(3) states that
> The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.

1

defense should be given the choice of proceeding with 11 jurors or substituting in the alternate juror.[2]

        A.       <u>The "Just Cause" Standard of Federal Rule of Criminal Procedure 23(b).</u>

The Government submits that Juror No. 3 should be excused for just cause. Fed. R. Crim. P. 23(b) provides: "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." The "just cause" standard of Rule 23(b) is not defined in either the rule itself or the advisory committee's note,[3] and consequently, "courts have given that term meaning on a case by case basis." <u>United States v. Araujo</u>, 62 F.3d 930, 934 (7th Cir. 1995). Generally, "just cause" is read broadly, as "embrac[ing] all kinds of problems--temporary as well as those of long duration--that may befall a juror during jury deliberations. . . . All that is needed to satisfy a prudent exercise of discretion is to be certain the trial court had sufficient information to make an informed decision." <u>United States v. Reese</u>, 33 F.3d 166, 173 (2nd Cir. 1994), <u>cert.</u>

---

[2] A defendant can only complain of a substitute of a juror under Rule 24(c) if it works to his prejudice. <u>See, e.g.</u>, <u>United States v. Donato</u>, 99 F.3d 426, 429-30 (D.C. Cir. 1996). A court should enforce procedural safeguards to ensure no prejudice to the defendant with the substitution of an alternate juror pursuant to Rule 24(c). <u>See, e.g.</u>, <u>United States v. Huntress</u>, 956 F.2d 1309, 1314 (5th Cir. 1992) (finding sufficient that the court inquired that alternate juror had neither been exposed to publicity about the trial nor discussed it, and court confiscated materials the other jurors had used during deliberations, received assurances from the other jurors individually that they could put aside their earlier deliberations, and instructed the jurors to begin anew with the alternate juror).

[3] The advisory committee note explains, however, that courts are permitted to excuse a juror for "just cause" so that they will have an available course of action other than a mistrial when a juror is seriously incapacitated or otherwise found to be unable to continue service during deliberations. Fed. R. Crim. P. 23(b) advisory committee's note. According to the Committee, "[t]he problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense, and court resources." <u>Id.</u>

denied, 513 U.S. 1092 (1995); see also Araujo, 62 F.3d at 936 (recognizing in Rule 23(b) context the "flexibility needed to handle the multitude of unforseen circumstances that may confront a district court during deliberations"). Whether "just cause" exists to excuse a juror is a matter committed to the discretion of the district court. United States v. Baker, 262 F.3d 124, 129 (2nd Cir. 2001) (noting that the "just cause" standard "'encompass[es] a variety of . . . problems that may arise during jury deliberations'"); see also United States v. Brown, 823 F.2d 591, 597 (D.C. Cir. 1987)("[c]ourts may use Rule 23(b) in many circumstances to discharge a juror").

Rule 23(b) dismissals for "just cause" have been upheld where the juror has refused to follow the law or participate in deliberations. See, e.g., United States v. Abbell, 271 F.3d 1286, 2001 (11th Cir. 2001) (juror made comments that she did not have to follow the law and that the court's instructions were only advisory, and refused to participate in deliberations); Baker, 262 F.3d at 130 (juror improperly made up her mind before the beginning of deliberations and refused to engage in deliberations); United States v. Geffard, 87 F.3d 448, 451 (11th Cir.)(juror claimed to be unable to follow instructions on law because of her religious beliefs), cert. denied, 519 U.S. 985 (1996).

> B.  The Record Fully Supports a Finding that Juror No. 3 Has Failed to Follow the Court's Admonitions

There is ample evidence on the record that Juror No. 3 has failed to follow the Court's admonitions on several occasions. First and foremost, Juror No. 3 ignored the Court's repeated admonition that jurors not discuss the case or the testimony with anyone during the trial. Juror No. 3 has admitted she violated this order by speaking about the Scotland golf trip with her father.

Second, Juror No. 3 appears either to have at least attempted to violate the Court's admonition not to speak about the case with her fellow jurors, prior to the onset of deliberations. According to the foreperson, it was only because of the actions of fellow jurors that Juror No. 3's attempt to discuss the case was halted.

Finally, although the record is somewhat ambiguous on this point, it appears that Juror No. 3 may have violated the Court' admonition not to make her mind about the case prior to jury deliberations.

Aggravating these transgressions is the fact that Juror No. 3 appears to have been less than fully candid with the Court when, early on in the case, she denied having been repeatedly late to court, notwithstanding the observations of her fellow jurors and Court personnel. This lack of candor is particularly troubling when the Court is relying, in large part, on Juror No. 3's representations as to the nature and extent of her conversation with her father, or possibly others at her place of employment.[4]

A finding that Juror No. 3's answers were deceptive could, on its own, constitute "just cause" to remove Juror No. 3 where the court's conclusion is supported by the record. See, e.g., United States v. Webster, 162 F.3d 308, 348 (5th Cir. 1998) (upholding district court's decision to dismiss a juror who had been qualified after it was revealed that juror had not answered the voir-dire questionnaire truthfully; noting that a district court "has discretion to excuse an untruthful juror" and a reviewing court "will not disturb the court's findings on this issue except

---

[4] In addition, Juror No. 3 may not have been fully candid with the Court when asked about her discussions with other jurors about the information she got from her father about the Scotland trip. Juror No. 3 stated that she did not provide any information that she got from her father to other jurors. Another juror stated that Juror No. 3 had said that her father told her that St. Andrews was the "Holy Grail" of golf.

for want of factual support"), cert. denied, 528 U.S. 829 (1999); United States v. Breen, 243 F.3d 591, 597-98 (2nd Cir.) (upholding mid-trial dismissal of juror without defense counsel's consent where juror admitted during questioning by court, in the presence of counsel, that he had lied during voir-dire); cert. denied, 122 S. Ct. 214 (2001); United States v. Fryar, 867 F.2d 850, 853-54 (5th Cir. 1989) (upholding excusal of juror mid-trial based upon district court's conclusion that the juror's lies rendered him unfit to serve given factual support for court's finding that the juror lied about whether he had received a visitor while the jury was sequestered); United States v. Berrios-Rodriguez, 768 F. Supp. 941, 942-43 (D. P.R. 1991) (court denied motion for mistrial based upon its excusal of a juror who lied during voir-dire about among other things, his drug usage, and held that juror's untruthfulness "compelled" the court to discharge him and substitute an alternate juror).

  The law is clear that a juror may not be discharged where there is "any possibility" that the discharge rests on "the juror's view of the sufficiency of the government's evidence," because a discharge of this kind would run afoul of the constitutional right to a unanimous verdict. See Brown, 823 F.2d at 596; United States v. Symington, 195 F.3d 1080, 1087-88 (9th Cir. 1999) ("if the record evidence discloses any reasonable possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror").[5] However, there can be no possible suggestion in this case that the proposed excusal of Juror No.

---

  [5] See also United States v. Hernandez, 862 F.2d 17, 22-23 (2nd Cir. 1988)(finding dismissal of juror improper because, among other factors, it was unclear whether removal was because of mental incompetence rather than to avoid a hung jury), cert. denied, 489 U.S. 1032 (1989); United States v. Thomas, 116 F.3d 606, 622 (2nd Cir. 1997)(adopting standard similar to Brown for Rule 23(b) dismissals and finding excusal of juror improper where record evidence raised possibility that juror was simply unpersuaded by the government's case against the defendants).

3 is some sort of pretext to remove an obstacle to reaching a unanimous verdict. This jury has been deliberating for approximately two hours and, according to juror testimony, has not yet had any substantive discussions. There has not been any indication that there have been any problems with the deliberative process whatsoever, much less that the jury was leaning in one direction or the other. Cf. Symington, 195 F.3d at 1084 (jurors made comment to court that excused juror was "an obstacle to reaching a verdict" and frustration "may have derived more from their disagreement with [the juror] on the merits of the case"); United States v. Thomas, 116 F.3d 606, 611 (2nd Cir. 1997) (jurors sent note that due to excused juror's "'predisposed disposition'" jury was unable to reach a verdict); Brown, 823 F.2d at 596 (excused juror's comments suggested a "substantial possibility" that he was asking to be discharged because he believed the evidence offered at trial was inadequate to support a conviction); United States v. Hernandez, 862 F.2d 17, 21-23 (2nd Cir. 1988)(notes from jury and juror comments indicated that excused juror was the sole vote for acquittal and would not "change his mind," and court waited for jury to reach deadlock before it excused juror), cert. denied, 489 U.S. 1032 (1989).[6]

---

[6] In United States v. Ginyard, 444 F.3d 648 (D.C. Cir. 2006), the D.C. Circuit vacated a conviction and remanded the case upon finding that the district court abused its discretion in dismissing a juror for good cause. Ginyard is inapposite here because 1) the juror was excused after many days of deliberation; 2) no alternate juror replaced the excused juror; 3) the record did not support the factual finding by the district court that the juror would lose his job opportunity if he was still deliberating by a certain date, and consequently there was no "good cause."
 In addition, Ginyard, found that even though the jurors were "deadlocked" and the dismissed juror was a "holdout," United States v. Brown, 823 F.3d 591 (D.C. Cir. 1987) was not directly applicable because there was no evidence that dismissal was sought because of his doubts about the sufficiency of the government's case. Ginyard, 444 F.3d at 652.
 Moreover, in an email submitted to the Court, the defendant appeared to rely on United States v. Brown, 823 F.2d 591 (D.C. Cir. 1987). That reliance is misplaced. Although the Brown Court stated in its holding "that if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request, the Court in fact found a "substantial possibility" that a juror

CONCLUSION

For the foregoing reasons, the government respectfully submits that there exists good cause to dismiss Juror No. 3, and requests that the Court make a finding of the reasons for good cause, pursuant to United States v. Donato, 99 F.3d 426, 429-30 (D.C. Cir. 1996). The government respectfully requests that Juror No. 10 replace Juror No. 3 pursuant to Rule 24(c) or that the jury deliberate with only 11 members pursuant to Rule 23(b).

Respectfully submitted,

   /s/ Nathaniel Edmonds                              /s/ Peter Zeidenberg
NATHANIEL B. EDMONDS              PETER R. ZEIDENBERG
Trial Attorney, Fraud Section               Trial Attorney, Public Integrity Section
Criminal Division                                      Criminal Division
United States Department of Justice       United States Department of Justice
Bond Building                                           Bond Building
1400 N.Y. Avenue, N.W.                    1400 N.Y. Avenue, N.W.
Washington, D.C. 20005                    Washington, D.C. 20005
(202)307-0629                                         (202)514-2042

---

was dismissed because he believed the evidence was insufficient to support conviction. 823 F.2d at 596. The Eleventh Circuit subsequently concluded that, as used in Brown, the terms "any possibility" and "substantial possibility" "are interchangeable, both meaning a tangible possibility, not just a speculative hope." Abbell, 271 F.3d at 1302 & n.14. The Ninth Circuit, in adopting the analysis of Brown, formulated the test as whether there is any "reasonable possibility" that the impetus for dismissal stems from the juror's views about the merits of the case. United States v. Symington, 195 F.3d 1080, 1087 (9th Cir. 1999). The Symington Court explained that the "reasonable possibility" formulation was necessary because "[i]t may be that '[a]nything is possible in the world of quantum mechanics.'" Id. (citation omitted).

     In any event, the government would submit that on the record in this case, there is simply no evidence whatsoever that Juror No. 3's dismissal is based in any part on her view of the evidence.

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2006, a copy of the foregoing was served on the following counsel by electronic service to:

>Barbara Van Gelder, Esq.
>Albert Lambert, Esq.
>Wiley Rein & Fielding
>1776 K Street NW
>Washington, DC 20006
>Tel: 202-719-7032
>Facsimile: 202-719-7049

>/s/   Nathaniel Edmonds
>NATHANIEL B. EDMONDS
>Trial Attorney
>Fraud Section, Criminal Division
>United States Department of Justice