UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES of AMERICA,** <br><br> v. <br><br> **DAVID HOSSEIN SAFAVIAN,** <br><br> **Defendant** | Criminal No. 05-370 (PLF) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT MOTION TO DISMISS
JUROR FOR CAUSE**

David Safavian, by and through undersigned counsel, opposes the Government's motion to dismiss Juror # 3 for the following reasons.

**I.     THE ACTIONS OF JUROR 3 FALL WELL SHORT OF THE STANDARD FOR REMOVING A JUROR.**

Federal Rule of Criminal Procedure 23(b)(3) allows a court to excuse a juror "if the court finds good cause" to do so. This Circuit requires that the trial judge first make a finding that it is "necessary" to excuse the juror for good cause. United States v. Patterson, 26 F.3d 1127, 1129 (D.C. Cir. 1994). Such inquiries cannot rest on "unexamined uncertainties" about the juror's ability or availability to deliberate. United States v. Ginyard, 444 F.3d 648, 654 (D.C. Cir. 2006). Not surprisingly, the procedure remains an "unusual step." Fed. R. Crim. P. 23 advisory committee's notes to 1983 Amendments.

In this case, "good cause" to replace or remove does not exist because 1) no evidence suggests Juror 3 is unable, unavailable, or unwilling to deliberate with her fellow jurors; and 2) any suggestion that Juror 3 has been compromised by outside information is not concrete or certain enough to necessitate removal.

"Good cause" most frequently occurs where a juror is unavailable or unable to deliberate due to physical or mental incapacitation or illness. See United States v. Thomas, 116 F.3d 606, 613 (2d Cir. 1997) (citing examples such as a juror leaving for a business trip, becoming ill, getting into a car accident, or observing a religious holiday).[1]  Occasionally, judges remove jurors who can no longer render an impartial verdict, but these cases involve more extreme situations than this case. For example, judges have removed jurors that felt threatened by one of the parties. See, e.g., United States v. Edwards, 342 F.3d 168, 175-76, 183 (2d Cir. 2003) (in drug trafficking case, removing juror who was "visibly trembling and frightened" after the defendant's brother appeared at her son's day care center during trial). Courts have also removed jurors that revealed a relationship with one of the parties or experienced a life-changing event that affects their impartiality. See Thomas, 116 F.3d at 613; United States v. Egbuniwe, 969 F.2d 757, 762-763 (removing juror who could no longer be impartial after learning that his girlfriend had been arrested and mistreated by police).

None of these circumstances is present in this case. Juror 3 is available, able, and willing to deliberate. Furthermore, in all of the government's cases, removal occurred only after the juror openly refused to participate in deliberations, which has not occurred here.[2]  In this case, the government admits that just the opposite is occurring—Juror 3 is allegedly *too eager* to

---

[1]   Indeed, the option to proceed with eleven jurors was not, as the government suggests, designed to be a remedy for all problems, but rather a situation in which "one of the jurors is seriously incapacitated or otherwise found to be unable to continue service upon the jury." Fed. R. Crim. P. 23 advisory committee's notes to 1983 amendment; United States v. Ginyard, 444 F.3d 648, 653 n. 2 (D.C. Cir. 2006).

[2]   For example, in United States v. Abbell, 271 F.3d 1286, 1303-04 (11th Cir. 2001), when information came to light that a juror did not intend to follow the court's instructions, the trial judge's first remedy was to warn the entire jury. Removal was warranted only when the juror continued to refuse to engage in deliberations, consider evidence, or apply the law. Id.; see also United States v. Baker, 262 F.3d 124, 129 (2d Cir. 2001) (dismissing juror who admitted to judge that she refused to deliberate with other jurors thirty minutes after deliberations began); United States v. Geffard, 87 F.3d 448, 452 (11th Cir. 1996) (removing juror who had "religious beliefs at odds with the factual situation and the law applicable to this case" and who "stated she had little regard for the other jurors, the judicial system, or a society which she saw as seeking out its victims.").

participate in jury deliberations.[3]  The government cites no case that holds that the circumstances of this case—a juror who briefly mentions a topic of the case to an uninterested outside party—should be removed or replaced.

Even where good cause for removal is a possibility, the D.C. Circuit refuses to remove a juror if the record does not reflect the precise circumstances or effect of the incident.  See Ginyard, 444 F.3d at 654 (rejecting removal of juror that might lose a job opportunity, because the judge's removal rested on "unexamined uncertainties"); Patterson, 26 F.3d at 1128-29 (holding insufficient finding of good cause even though elderly juror needed to see a doctor during deliberations, because judge had not determined the precise circumstances regarding the duration of the delay); see also United States v. Araujo, 62 F.3d 930, 937 (7th Cir. 1995) (rejecting removal where the circumstances justifying removal were not concrete); .

Here, insufficient evidence exists to remove Juror 3.  Testimony on the outside conversation in question has not established concretely that Juror 3 gleaned any outside information from the conversation.  See infra at 6-8.  Furthermore, the government's suggestions that Juror 3 has already made up her mind and prematurely engaged in deliberations are based on pure speculation.[4]

---

[3]     Jurors have a duty to deliberate and must consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a verdict. Lowenfeld v. Phelps, 484 U.S. 231, 235 (1988); Allen v. United States, 164 U.S. 492 (1896). Indeed, "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." Allen, 164 U.S. at 501.

Thus, it is typically where a juror *fails* to engage in the deliberative process that these motions are brought, not when, as here, the juror is in fact cooperating and discussing the case with other members.  And even then, when a juror's ability to deliberate is questioned and there is any ambiguity about why the juror will not participate in deliberations, 'the court must not dismiss the juror.' Brown, 823 F.2d at 596. Rather, in those circumstances, "the trial judge has only two options: send the juror back to continue deliberating or declare a mistrial." Symington, 195 F.3d at 1087

[4]     Similarly, the government's accusations of "deception" by Juror 3 fall short of the case law justifying removal of a witness.  Three of the government's cases involved lies in response to *voir dire* questions, for which the jurors either admitted to lying or were confronted with direct evidence of the lie.  See United States v. Breen, 243 F.3d 591, 597-98 (2d Cir. 2001); United States v. Webster, 162 F.3d 308, 348 (5th Cir. 1998); United States v.

## II. EVEN IF THE GOVERNMENT COULD ESTABLISH GOOD CAUSE THERE IS A POSSIBILITY THAT THE REQUEST STEMS FROM THE VIEW OF THE CASE

The law of this circuit is that "if the record evidence discloses *any possibility* that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court *must deny* the request." United States v. Brown, 823 F.2d 591, 596 (D.C. Cir. 1987) (overturning multiple count RICO conviction) (emphasis added); United States v. Thomas, 116 F.3d 606, 622 (2d Cir. 1997) ("adopt[ing] the *Brown* rule as an appropriate limitation on a juror's dismissal *in any case* where the juror allegedly refuses to follow the law - whether the juror himself requests to be discharged from duty or, as in the instant case, fellow jurors raise allegations of this form of misconduct") (emphasis in original).[5]  As the Second Circuit has stated, the D.C. Circuit's standard protects against a case where:

---

Berrios-Rodriguez, 768 F. Supp. 941, 942-43 (D. P.R. 1991).  In the fourth case, the juror lied about receiving a visitor during sequestration.  United States v. Fryar, 867 F.2d 850, 853-54 (5th Cir. 1989).  Here, no evidence exists that Juror 3 misled the Court or parties in jury selection or lied about receiving visitors.  The government claims that "ample evidence" exists of Juror 3's deception, Gov't Mot. at 3, but then repeatedly qualifies its argument, stating: "Juror 3 *appears* to have *at least attempted* to violate the Court's admonition," Gov't Mot. at 4 (emphasis added), Juror 3 "*appears* to have been less than fully candid," id. (emphasis added), and "Juror 3 *may not* have been fully candid," id. n.4. (emphasis added).  Moreover, contrary to the government's assertion, Juror 3 did not tell this Court that "she did not provide any information that she got from her father to other jurors."  Gov't Mot. at 4 n.4.  Juror 3 told this Court that she did have a conversation with her father and she did discuss this conversation with other members of the jury.  June 13, 2006 A.M. Tr. at 7:9-13.

[5]      The government, recognizing the implications of Brown, states in a footnote that the defense's reference to the circuit rule is "misplaced" and tries to suggest that the standard in that case is more restrictive.  See Gov't Mot. at 6-7 n.6.  The language from that case is clear.  The Second Circuit confirmed this view when it stated that the evidentiary standard it took from Brown was that "'if the record evidence discloses *any possibility* that' a complaint about a juror's conduct 'stems from the juror's view of the sufficiency of the government's evidence, the court *must deny* the request.'"  United States v. Thomas, 116 F.3d 606, 622 (2d Cir. 1997) (emphasis added).  In any event, given the concerns raised by Juror 12 as to whether Juror 3 had "already made a comment about Mr. Safavian's guilt or not guiltiness."  June 13, 2006 A.M. Tr. at 18:2-3, and the Government's change of heart as to whether the Court should consider removing this juror after hearing this representation, see id. at 12:17-18 (stating prior to statement by juror 12 that it was not troubled by juror 3's representations), the level of possibility that the request for discharge is motivated to at least some degree by a concern about the juror's view as to the sufficiency of the evidence would also satisfy the standards of other circuits.  See United States v. Symington, 195 F.3d 1080, 1087 (9th Cir. 1999) (reversing conviction where "there was a reasonable possibility that [the] juror's views on the merits of the case provided the impetus for her removal").

> [F]or example, a strong majority of the jury favors conviction, but a small set of jurors-perhaps just one-disagrees. The group of jurors favoring conviction may well come to view the "holdout" or "holdouts" not only as unreasonable, but as unwilling to follow the court's instructions on the law. The evidentiary standard that we endorse today-that "if the record evidence discloses any possibility that" a complaint about a juror's conduct "stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request"-serves to protect these holdouts from fellow jurors who have come to the conclusion that the holdouts are acting lawlessly.

Thomas, 116 F.3d at 622. Any "lower evidentiary standard could lead to the removal of jurors on the basis of their view of the sufficiency of the prosecution's evidence." Id.

Notably, this Court, and courts applying this Circuit's standard, have denied such requests when made by the juror himself or the jury as a body. In this instance, it is the *government* that is asking for the relief of removing a juror after deliberation has begun based on Juror 12's decision to raise the issue, and there is certainly at least a possibility that the decision stems from a perception as to Juror 3's "view of the sufficiency of the government's evidence." Brown, 823 F.2d at 596.

This issue concerning Juror 3 originally arose when the foreperson stated in a letter that "juror number three has admitted to having conversations with her father regarding golf trip expenses during the trial. She wanted to confirm costs, comparisons/discrepancies. Does this conversation compromise our deliberations?" June 13, 2006 A.M. Tr. at 2-3. In response to questioning from the parties and the Court, Juror 3 stated that approximately one week ago she commented to her father while he was watching Tiger Woods play golf on television that she could not "believe what it cost to play golf." Id. at 8:17. Her father responded "oh, yeah, yeah, [m]ove." Id. at 8:25-9:1. Juror 3 stated that she never talked with her father (or received any additional information) again about the cost of golf, nor did she speak with her father about any aspect of this trial at any point. Id. at 9-10. When asked by the government whether her father

conveyed any information to her that she didn't know before, juror 3 responded "No, because what I learned about the Scotland trip I learned here in the trial. And what I knew about golf here in the United States I learned about his playing golf every day and my helping him find tee times [in February]." Id. at 9:16-19. At this point, the government was not particularly troubled by juror 3's statements.

Juror 12 then informed the Court and the parties that deliberations, or specifically "conversations amongst several of [the jurors] about [their] impressions" had begun. Id. at 13:14. Juror 12 continued "one of the jurors [not Juror 3] mentioned that the golf trip and the *cost discrepancies* and information with the hotel rooms were in keeping with her father's experience as a golfer." Id. at 13:15-16 (emphasis added). And then Juror 12, continuing to summarize the conversation that she thought she overheard, said that Juror 3 represented in response she had "talked to [her] father about the Scotland trip . . . [and they] were talking about, this is the cost for this golf course, and this is the cost for this golf course, and she went on from there." Id. at 13:21-24. Juror 12 also stated upon questioning that she overheard Juror 3 make "a comment about Mr. Safavian's guilt or not guiltiness." Id. at 19:1-3.

Juror 11's recollection of her conversation with Juror 3 was different from Juror 12. Juror 11 claimed that Juror 3 spoke first and that she (Juror 11) "preempted" Juror 3's statements by saying that her father (Juror 11) was an "average golfer, and I know from my dad being a golfer and playing, and golfing certificates every year, and just knowing about St. Andrews in general because of my father." Id. at 21:14-19. Juror 11 said that Juror 3 "didn't say specifically what her father said," just that she had "talked to him about it, and that she was surprised at how expensive that St. Andrews could be compared to the stuff that she had done with her golf, but she never said whether her father gave her a specific number about it, yeah."

Id. at 23:15-20.  After a break, the government changed its initial position and requested Juror 3 be removed and subsequently asked for the opportunity to file a pleading in support of its request.

As this Court has noted, "the reasons underlying a request for a dismissal will often be unclear."  Brown, 823 F.2d at 596.  Thus, even where the juror himself requests a discharge and tells the Court that he has difficulties with a case because of what a law says, the Court must deny the request.  Id.

In doing so, the court has explained the dilemma.  It cannot grant the relief of dismissing a juror after deliberations have begun without engaging in a sufficient inquiry into the reasons for the request, see United States v. Ginyard, 444 F.3d 648, 653-54 (D.C. Cir. 2006) (vacating conviction where the court did not sufficiently inquire into the precise nature of the unavialability of a juror), but yet a court "may not delve deeply into a juror's motivations because it may not intrude on the secrecy of the jury's deliberations."  Brown, 823 F.3d at 596; see also Thomas, 116 F.3d at 622 ("[o]ne unavoidable consequence of imposing a lower evidentiary standard would thus be to open up the possibility that judges, in response to demands of counsel or otherwise, would wind up taking sides in disputes between jurors on allegations of juror nullification-in effect, to permit judicial interference with, if not usurpation of, the fact-finding role of the jury").[6]  Where there is any ambiguity however as to whether the reason is the Juror's views, the result must be a denial of the request.  Id.

In this instance, the government has been able to assess the juror's deliberations as to a substantive matter in this case and is now privy to the comment by juror 12 that juror 3 has made

---

[6]  As the ninth circuit explained, a trial judge's examination of juror deliberations also risks exposing those deliberations to public scrutiny.  Symington, 195 F.3d at 1086.  "Such exposure, in turn, would jeopardize the integrity of the deliberative process."  Id. (citing Thomas, 116 F.3d at 618-19).

comments as to the ultimate disposition of this case. Only after hearing such information did the government find the issue troubling enough to warrant a motion to discharge. Hence, there is a possibility, indeed a reasonable possibility, that the government's request to discharge stems from a perception as to juror 3's view of the sufficiency of the government's evidence. Thus, the court *must deny* the request. Brown, 823 at 596; Thomas, 116 F.3d at 622; United States v. Symington, 195 F.3d 1080, 1087-88 (reversing and vacating conviction and sentence where there was a reasonable possibility that the request to discharge stemmed from the juror's view as to the merits of the case); United States v. Hernandez, 862 F.2d 17, 23 (2d Cir. 1988) (reversing conviction because it was not clear whether the removal of a juror was because of mental incompetence or the juror's view on the merits of the case).

## CONCLUSION

    For the aforementioned reasons, the Defendant requests that the Court deny the Government's Motion to Dismiss Juror for Cause.

.

- 9 -

        Respectfully submitted,

By:  <u>/s/ Barbara Van Gelder</u>
      Barbara Van Gelder (D.C. Bar # 265603)
      Roderick L. Thomas (D.C. Bar # 433433)
      Albert C. Lambert (D.C. Bar # 489562)
      WILEY REIN & FIELDING LLP
      1776 K Street NW
      Washington, DC 20006
      TEL: 202.719.7032

*Attorneys for David H. Safavian*

Dated: June 13, 2006