# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Cr. No 05-370 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **DAVID HOSSEIN SAFAVIAN** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its Opposition to Defendant's Motion for Acquittal. Many of the arguments advanced by Defendant have previously been briefed, argued and decided. Defendant fails to cite the appropriate standard of review, relies on selected and incomplete facts, and misstates relevant law in asking this court to ignore the jury's verdict. Defendant's arguments are without merit, and this Court should respect the jury's finding that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. §§ 1001(a)(1) and 1505.

## STANDARD OF REVIEW[1]

A motion for acquittal filed after the jury has returned a guilty verdict asks the Court to set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29. In reviewing a motion for judgment of acquittal, the Court views all evidence in the light most favorable to the Government, giving it the benefit of all reasonable inferences. See United States v. Kayode, 254 F.3d 204, 212-13 (D.C. Cir. 2001); see also United States v. Fennell, 53 F.3d 1296, 1298 (D.C. Cir. 1995) (citing cases for the deferential review of overturning jury verdicts); United States v.

---

[1]Defendant provides an incomplete and biased recitation of facts, Def. Mem. 3-10, but fails to identify the proper standard of review in its 53 page memorandum.

Long, 905 F.2d 1572, 1576 (D.C. Cir. 1990) (noting that "a jury is entitled draw a vast range of reasonable inferences from evidence").  Accordingly, motions for judgment of acquittal are granted on the basis of insufficient evidence only if the court concludes, as a matter of law, that no reasonable juror could have convicted on the evidence presented.  See United States v. Weisz, 718 F.2d 413, 438 (D.C. Cir. 1983) ("[A] judgment of acquittal is appropriate only when there is no evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt.") (citing United States v. Reese, 561 F.2d 894, 898 (D.C. Cir. 1977)).

## ARGUMENT

### I.  Defendant's Fifth Amendment Due Process Concerns Were Not Violated

Defendant argues that the convictions should be thrown out because he was not provided adequate notice of the right not to speak when responding to government inquiries, and, consequently, his due process rights were violated.  The Court has previously ruled on these issues in its written opinion, see United States v. Safavian, 429 F. Supp. 2d 156, 159-60 (D.D.C. 2006).  Defendant is mistaken on the legal basis of his claim, and his argument should be rejected.

Defendant advances a novel legal claim that before an individual can be charged with a violation of 18 U.S.C. § 1001, he must be warned of the consequences of not telling the complete truth.  Def. Mem.  11- 14.  The judicial imposition of such a requirement was previously considered and rejected by the Supreme Court in Brogan v. United States, 522 U.S. 398 (1998), in which it analyzed whether a simple "exculpatory no" is sufficient for a criminal conviction in the 18 U.S.C. § 1001 context if the defendant was not given any warning of the criminal consequences of the false statement.

In Brogan, federal investigators asked the defendant, and he gave false answers without being given any warning of the potential legal consequences. Id. at 409 (Ginsburg concurring). While the concurring opinion specifically raises the concern of prosecutorial abuse if an individual is not provided the warning of the possible consequences of a false statement, id. at 408-412, the Supreme Court found that the proper remedy was not for the courts to create a judicial requirement, but instead for the legislature to remedy the situation. Id. at 405. The concurring opinion specifically notes that Congress has repeatedly rejected proposed legislation that would have mandated a warning before an oral statement could by charged as a violation of 18 U.S.C. § 1001. Id. at 417-18. Based on this clear Supreme Court precedent, this court should reject Defendant's invitation to intrude on an area that the Supreme Court has deemed within the legislative sphere.[2]

Defendant also raises for the first time an argument related to the lack of any administrative warnings that he claims were required pursuant to Garrity v. New Jersey, 385 U.S. 493 (1967). The proper remedy for any violation of Garrity would not be a post-trial motion for acquittal, but a motion to suppress the statements prior to trial as required by Fed. R. Crim. P. 12(b)(3). See, e.g., United States v. Friedrick, 842 F. 2d 382, 392 (D.C. Cir. 1988). Rule 12(e) provides that, in the absence of "good cause," a defendant "waives" the objection or defense if not timely raised. The D.C. Circuit has held that "while a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections." United States v. Mitchell, 951 F.2d 1291, 1296 (D.C. Cir.

---

[2]Based on Brogan, we would contend that Defendant's reliance on United States v. Ehrlichman, 379 F. Supp. 291 (D.D.C. 1974) is misplaced, and that to the extent that Ehrlichman holds otherwise, it has been overruled.

1991).  The Court should reject the Defendant's new argument as waived pursuant to Rule 12.

If the Court were to disregard Defendant's failure to previously raise the issue, Defendant's argument must still be rejected because it, reveals a fundamental misunderstanding of <u>Garrity</u> and ignores relevant and controlling D.C. Circuit authority.

Defendant argues that his statement could not serve as the basis of prosecution because he was not given administrative warnings when he communicated with GSA and GSA-OIG employees.  <u>Garrity</u> and its progeny have found that a defendant's due process rights may be violated when a government employee is instructed to answer questions or face termination of employment.  Indeed, the D.C. Circuit has found that in order for the government employee's statement to be involuntary and suppressed, the employee must in fact have believed that the statement was compelled under threat of loss of job, and that belief must be objectively reasonable.  <u>United States v. Friedrick</u>, 842 F. 2d 382, 395 (D.C. Cir. 1988) ("Under the <u>Garrity</u>-<u>Lefkowitz</u>-<u>Murphy</u> line of authority, Friedrick must have in fact believed his January statements to be compelled on threat of loss of job and this belief must have been objectively reasonable."); <u>see</u> <u>also</u> <u>Nat'l Federation of Fed. Employees v. Greenberg</u>, 983 F.2d 286, 292 (D.C. Cir. 1993) (government employee whose failure to answer "could result" in denial of continued employment was not sufficient because there was no legitimate belief that employee was compelled to answer questions); <u>United States v. Najarian</u>, 915 F. Supp. 1460, 1479 (D. Mn. 1996) (noting that the court was "not aware" of any case where <u>Garrity</u> immunity is found solely because a public employee is asked to provide an interview, and to evoke <u>Garrity</u> protection, "something more is required than an employer's persistent request that questioning ensue.").

Based on this established legal standard, Defendant's argument that his due process rights

were violated is without merit.  In seven pages of argument on the due process issue, Defendant

does not even suggest that his statements were compelled or that he was faced with termination

of employment.  Nor could he legitimately make that claim.  With respect to Count 2, the

statement was not compelled because Defendant voluntarily sent the email requesting the ethics

opinion.  In Counts 1 and 3, he voluntarily agreed to an interview with GSA-OIG without any

threat of termination or discipline.  In Count 5, Defendant responded to a letter and volunteered

additional information during a telephone call.  There is not a shred of evidence that Defendant

felt compelled to answer questions or would be terminated if he refused. Consequently,

Defendant's argument that he was not afforded Fifth Amendment due process concerns is totally

without merit and should be summarily rejected.[3]

### II.  The Concealment Verdicts Are Valid Because Jury Found Duty to Disclose

Defendant again argues that there was no duty to disclose the allegedly concealed

information.  This topic has been briefed and argued previously.  See Dockets 32 and 45.  At

trial, Defendant presented evidence and argued to the jury that there was no duty to disclose.

Nevertheless, the jury unanimously found that the Defendant did have a duty to disclose.  After

failing to convince one trier of fact, the Defendant appears to hope that not only can he can

convince the Court that there is insufficient evidence of a duty to disclose, but to change the

Court's previous decision that it was for the jury to determine if Defendant had a duty to disclose.

---

[3]Defendant also asserts that a court has never sustained a § 1001 or § 1505 conviction under similar factual circumstances. D. Mem. 17.  This argument has previously been made, and rejected. United States v. Safavian, 429 F. Supp. 2d 156, 160 (D.D.C. 2006).  Defendant's reliance on the uniqueness of the factual situation fails because "due process does not require that the government cite a 'litigated fact pattern directly on point' as a prerequisite to the institution of criminal proceedings." United States v. Poindexter, 725 F. Supp. 13, 28 (D.D.C. 1989).

Because there is a sufficient basis for the Court or jury to determine a duty to disclose, the Court should reject Defendant's argument.

Defendant now argues that the question of whether there is a duty to disclose is not a jury question, but must be determined by the Court. Defendant's argument is the reverse of the position he took previously when he specifically requested that the "duty to disclose" be considered an element for the jury to determine. See Docket 98, pp. 5, 23. In its proposed jury instructions, the Government did not initially request that a legal duty to disclose be included. Docket 98 pp. 27, 29, 33. Because of the unsettled nature of the law,[4] the Government later withdrew its objection and accepted the Defendant's request that the element of a legal duty to disclose be proven beyond a reasonable doubt to the jury. See Sullivan v. Louisiana, 508 U.S. 275, 277-278 (1993) (holding that criminal convictions must rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.) Consequently, the Court acceded to Defendant's requests and determined

---

[4] As noted in United States v. Blackley, 167 F.3d 543, 550-51 (D.C Cir. 1999), the D.C. Circuit has not yet ruled on whether the duty to disclose is a question for the jury or the judge. In light of recent Supreme Court precedent, United States v. Gaudin, 515 U.S. 506 (1995) whether a duty to disclose exists appears to be a mixed question of fact and law that should be determined by the jury. Regardless, the standard of review is the same.

The Supreme Court has found that the jury should determine mixed questions of law and fact. See, e.g., United States v. Gaudin, 515 U.S. 506, 512-14 (1995) (finding that materiality in § 1001 prosecutions should be determined by jury, but also noting the historic role of juries in applying law to facts in making determination of guilt or innocence). In a decision prior to Gaudin, United States. v. Zalman, 870 F.2d 1047 (6th Cir. 1989) found that the question of a duty to disclose was expressly not a question of fact for the jury but instead a question for the court to determine. Zalman, however, compared the court's determination of the duty to disclose to that of the "analogous" question of materiality in the § 1001 context. Id. at 1055. Gaudin, however, appears to have called into question Zalman because Gaudin found that materiality was specifically a mixed question of law and fact should be determined by the jury. Like "materiality" in Gaudin, the question of a duty to disclose appears to be a mixed question of law and fact that should be determined by the jury.

that whether Defendant had a legal duty to disclose was an element of 18 U.S.C. § 1001(a)(1)

that should be determined by the jury, and instructed the jury accordingly.  See Jury Instructions

at 73-74 (Count Two), 77 (Count Three), and 85-86 (Count Five).   Because the Defendant

requested these instructions, any error is invited error, and, consequently, his argument should be

rejected.  See, e.g., United States v. Wiggins, 530 F.2d 1018, 1020 (D.C. Cir. 1976) (rejecting

claim of error because defendant "cannot now complain that the court gave an instruction which

he requested.").

     Defendant was found guilty of three counts of violating 18 U.S.C. § 1001.  As the court

determined, whether there was duty to disclose was a question for the jury, and in reviewing the

jury's determination, a court must determine if any reasonable juror could have reached the

conclusion that there was a duty to disclose based upon the evidence presented at trial.  See, e.g.

United States v. Long, 905 F.2d 1572 (D.C. Cir. 1990) (noting that "a jury is entitled draw a vast

range of reasonable inferences from evidence").  Based on the record at trial, a reasonable juror

could have found that Defendant had a duty to disclose all relevant facts to the GSA ethics

officers, GSA-OIG and the Senate.

     The principle basis of the duty was that established by G. Exh. 46, the 14 Principles of

Ethical Conduct, which Ellison testified about.  G. Exh. 46.  A jury could have relied on these

principles, both issued as an Executive Order of January 20, 2001, and codified in the Code of

Federal Regulations, to find heightened duties of a public servant and for the basis of a duty to

disclose.  The Defendant received training regarding these duties.  G. Exh. 45-46; Tr. 5/31/06 at

18:9-17.

     The duty to be "reliable, trustworthy, of good conduct and character" is reflected in the

7

Code of Federal Regulations laying out the duties of a public service. 5 C.F.R. 2635.101.

(requiring, among other duties "honest efforts in the performance of their duties." See, e.g., G.

Exh. 46 (5 C.F.R. § 2635.101 stating in relevant part: "(1) Public service is a public trust,

requiring employees to place loyalty to the Constitution, the laws and ethical principles above

private gain.*** (5) Employees shall put forth honest effort in the performance of their duties.

*** (7) Employees shall not use public office for private gain. *** (11) Employees shall disclose

waste, fraud, abuse and corruption to appropriate authorities.").[5]  All of these are facts and

regulations that the jury could have reasonably relied upon upon to determine that Defendant, a

public servant, had a duty to disclose.

In addition, the jury could have reasonably relied upon the basic legal principle that once

one begins speaking, one must disclose all relevant facts.  United States v. Cisneros, 26 F. Supp.

2d 24 (D.D.C. 1998), found that once an individual begins speaking, he gains additional

obligations to disclose additional information.  Cisneros provided some information to the FBI,

but omitted material facts.  Cisneros, Id. at 42.  Cisneros held that once an individual begins

speaking on a topic, that individual gains additional responsibilities:

> [W]hile there is an option of silence, once a defendant volunteers information, he has an
> obligation to refrain from telling half-truths or from excluding information necessary to
> make the statements accurate. Since Cisneros responded to the questions, he had a duty to

---

[5]  Moreover, Defendant received ethics training regarding the Basis Obligation of Public Service, codified in 5 C.F.R. § 2635.101(a) which requires that:

> Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws and ethical principles above private gain.  To ensure that each citizen can have complete confidence in the integrity of the Federal Government, each employee shall respect and adhere to the principles of ethical conduct as set forth in this section, as well as implementing standards contained in this part and in supplemental agency regulations.

G. Exh. 46 (DOJ-DS 13502).

include all information necessary to make his statements truthful.

Id. at 42.  While the Court in the instant case did not provide a jury instruction based on Cisneros, the principle of Cisneros has been found in other cases.  See, e.g., United States v. Moore, 446 F.3d 671, 680 (7th Cir. 2006) (upholding jury instruction in § 1001(a)(1) case that "When a person provides material information, that person has an obligation to refrain from telling half-truths or from excluding information necessary to make that person's statement accurate.").

The principles of Cisneros and Moore have been codified in a provision in the Code of Federal Regulations that specifically identifies the duty of disclosure for a public servant when seeking an ethics opinion.  Once an individual has sought an opinion, he must make full disclosure of all relevant circumstances.  See G. Exh. 33; 5 C.F.R. § 2635.107(b)) which states in relevant part:

> Employees who have questions about the application of this part or any supplemental agency regulations to particular situations should seek advice from an agency ethics official.  Disciplinary action for violating this part or any supplemental agency regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of an agency ethics official, provided that the employee, **in seeking such advice, has made full disclosure of all relevant circumstances**. … Disclosures made by an employee to an agency ethics official are not protected by an attorney-client privilege. An agency ethics official is required by 28 U.S.C. 535 to report any information he receives relating to a violation of the criminal code.

(emphasis added).

Consequently, a jury could have reasonably drawn upon this basic principle codified in federal regulations to reach the same conclusion that the Cisneros and Moore courts have found - once the Defendant began speaking about the Scotland trip and Abramoff's relationship with GSA, he had a duty to disclose all relevant facts in order to allow the relevant official to take

appropriate action.  In each situation, Defendant started by volunteering information.  Once he began speaking, he acquired additional duties of disclosure to provide full information about the topics he was addressing, and not simply to allow half-truths to mislead the listeners.

The cases upon which Defendant relies do not support the propositions that he asserts. For example, Defendant relies extensively on  United States v. Crop Growers Corp, 954 F. Supp. 335 (D.D.C. 1997), for his argument that a generic duty of disclosure cannot stem from regulations.[6]  Crop Growers, however, was decided upon much narrower grounds than Defendant claims.  The decision in Crop Growers did not rest upon a general lack of a duty to disclose, but instead was decided because the regulations did not create a "duty to disclose the **conduct alleged.**"  Crop Growers, 954 F. Supp. at 348. (emphasis supplied).  Specifically, the court analyzed whether the defendant, a filer of securities, had a duty to disclose uncharged criminal conduct.  Id. at 347.  While a filer of securities has a general duty to supply information that would make the filings "not misleading," id., the court focused its analysis on additional

---

[6]  Defendant inaccurately characterizes the holding of numerous cases he cites by claiming that they stand for the proposition that regulations cannot create a generic duty to disclose, when they were decided upon narrower grounds.  For example, Defendant cites United States v. Curran, 20 F.3d 560 (3d Cir. 1994) for the proposition that the court must determine as a matter of law the specific legal duty to disclose.  Def. Mem. 18.  Curran, however, stands for a much narrower proposition.  In Curran, the court instructed the jury in a manner that relieved the government of proving the intent element, where defendant willfully caused the false statements to be filed by another, who did have the duty to disclose.  Curran, 20 F.3d at 570.  Similarly, United States v. Gimbel, 830 F.2d 621, 624 n.2 (7th Cir. 1987) held that the regulations merely required the reporting of a single physical transfer of currency over $10,000 and specifically did not require "aggregation" as the government argued.  Gimbel, 830 F.2d at 625-26.  Finally, United States v. Dollar, 25 F. Supp. 2d 1320 (N.D. Ala. 1998), was similarly decided on narrow grounds that the regulation cited had very specific disclosure requirements that were not at issue in that case.  Id. at 1326 (finding that the regulation relied upon by the Government did not require disclosure of "straw purchasers" of firearms, but merely that the seller record the sale and acquire completed forms).

regulations cited by the defendant that overrode the general duty of disclosure because the additional regulations provided that uncharged criminal conduct need NOT be disclosed in the securities filings.  Id. (citing 17 C.F.R. § 229.103).  Defendant's reliance upon United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987), is similarly misplaced because Murphy rested its decision on the fact that two sets of directions existed that could be "conflicting." Id. at 1431.  In the instant case, Defendant has not cited any alternate regulations like the defendants in Crop Growers or Murphy that would control and override the heightened duties of a public servant as identified in 5 C.F.R. § 2635.  Defendant provides no legal authority indicating that it was permissible for him to fail to disclose Defendant's conduct in concealing his assistance to Abramoff on GSA related activities.

Additionally, the authorities on which Defendant relies involve private individuals not public servants.  See Def. Mem. at 18-23 citing  United States v. Gimbel, 830 F.2d 621 (7th Cir. 1987) (defendant was a private lawyer representing narcotics traffickers); United States v. Curran, 20 F.3d 560 (3d Cir. 1994) (defendant was lawyer and executive of private company); United States v. Crop Growers Corp., 954 F. Supp. 335 (D.D.C. 1997) (defendants were a private holding company and two of its executives); United States v. Dollar, 25 F. Supp. 2d 1320, 1326 (N.D. Ala. 1998) (defendant was private firearms dealer); United States v. Calhoon, 97 F.3d 518, 526 (11th Cir. 1996) (defendant was hospital owner's employee filing Medicare reimbursement forms); United States v. Dale, 140 F.3d 1054, 1056 (D.C. Cir. 1998) (defendants were a corporation and its officers); United States v. Matthews, 787 F.2d 49 (2d Cir. 1986) (defendant was corporate employee); United States v. Bucey, 876 F.2d 1297, 1307-08 (7th Cir. 1989) (private citizen in money laundering scheme).  As discussed supra and as set forth in 5 C.F.R. §

2635, a public servant has greater responsibilities with respect to the public trust than does a private individual.[7]

Defendant also argues that "concealment charges have only been brought, let alone sustained, in the context of government forms and filings...." Def. Mem. 22.[8] As noted in Government's prior pleadings, Docket 52, courts have affirmed convictions of § 1001(a)(1) for oral representations. For example, in United States v. Stephenson, 895 F.2d 867 (2d Cir. 1990), the Second Circuit reviewed a false statements conviction based upon the defendant's oral statement that a third party had "offered him a bribe" and found that the defendant's oral statement "falsified, concealed or covered up the fact of the solicitation of his bribe." Id. at 874. This Court should not be persuaded to ignore a jury's verdict by Defendant's incomplete recitation of the relevant law.

### III.  The § 1001 Convictions Are Valid Because Defendant Concealed Information

Defendant argues that a defendant cannot "as a matter of law, be found guilty of making a

---

[7]Another factor for the Court to consider regarding the legal nature of the duty to disclose are the requirements of a high-level public official as discussed in United States v. Cisneros, 26 F. Supp. 2d 24 (D.D.C. 1998), which is a significant case discussing the § 1001(a)(1) false statements prong. Cisneros found that Executive Order 10450 created a legal duty for a federal job applicant to be truthful to questions posed by the FBI in conducting a background examination. Id. at 42. Executive Order 10450 states that "all persons privileged to be employed in the departments and agencies of the Government, shall be reliable, trustworthy, of good conduct and character." 18 FR 2489 (1953 WL 5976). Consequently, according to Cisneros, a high-level employee like Defendant who has undergone a background check has greater disclosure responsibilities in administrative inquiries than would a private individual.

[8]  After discussing the contours of "concealment cases," Defendant then inexplicably goes on to cite 18 U.S.C. § 1001(a)(2) cases for arguments on "fundamental ambiguity" of questions. Def. Mem. 22 (citing United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003); United States v. Manapat, 928 F2d 1097, 1099-1102 (11th Cir. 1991); United States v. Lattimore, 127 F. Supp. 405, 409-10 (D.D.C. 1955)).

false statement where the representation at issue is supported as a reasonable interpretation."

Def. Mem. 25-26. Defendant's arguments are illogical when considering that Defendant was

convicted not of falsity, but under the concealment aspect of § 1001(a)(1). Defendant's theories

are undermined by his reliance on cases in which a defendant is charged with falsity rather than

with concealment.

Fundamentally, the defense of "literal truth" is inapplicable to prosecutions under the

concealment prong of § 1001(a)(1). While "literal truth" is a defense to § 1001(a)(2) convictions

charging false and fraudulent statements, a defendant can be convicted under § 1001(a)(1) for

telling something that is literally true, but is nevertheless misleading. As previously cited in a

prior pleading, Docket 52, in United States v. Stephenson, 895 F.2d 867 (2d Cir. 1990), the

Second Circuit reviewed a false statements conviction based upon the defendant's statement that

a third party had "offered him a bribe." The court affirmed the conviction because while the

statement could be construed as "literally true," "it was meant to conceal his own initiation of the

bribery scheme." Id. at 873. As a result, the Stephenson court held: "Even if Stephenson's

statement were construed to be "literally true," however, the jury still could have found that he

misrepresented and concealed what had occurred." Id. Consequently, the court found that he was

"actively seeking to mislead," and that a jury could find that the defendant's statement "falsified,

concealed or covered up the fact of the solicitation of his bribe." Id. at 874. Similarly, in the

instant case, the question of the "literal truth" regarding the definition of "business" was an

argument for the jury regarding Defendant's mental intent to violate § 1001, not a legal defense.[9]

---

[9]Defendant's factual arguments are without merit, and have previously been rejected by
the jury. Defendant selectively picks snippets of the evidence admitted at trial and interprets
them not in the light most favorable to the Government as required, but in the light most

See United States v. Calhoon, 97 F.3d 518 (11th Cir.1996) (use of term "outreach" in reimbursement form was sufficient for conviction because it concealed the potentially illegitimate advertising expense).

No legal authority requires that the government has an obligation to negate any reasonable interpretation when a defendant is charged under the concealment prong of § 1001(a)(1). Defendant cites United States v. Dale, 782 F. Supp. 615 (D.D.C. 1991), and other cases for the proposition that it is the government's burden to negate any reasonable interpretation that would make the defendant's statement factually correct. What Defendant failed to note is that in the sections that the Defendant relies upon, the Dale court is referencing Count 10 in which Dale was not charged under the concealment prong of § 1001(a)(1). Id. at 625 ("Count Ten charges ADM, Ashton and Dale with falsely answering 'no' to the question 'Does your organization have interlocking directors with foreign interests?' in a document entitled 'Certificate Pertaining to Foreign Interests.'"). Consequently, Dale's analysis of Count 10 regarding the truth or falsity of the "no" answer in a pure "falsity" § 1001 prosecution is inapposite to the jury's finding that Defendant "concealed" of his assistance to Abramoff in GSA-related activities.[10]

---

favorable to the Defendant. Defendant never addresses the issue of Defendant's use of "work," and even relies on exhibits that were never admitted at trial. See, e.g., Def. Mem. 27 citing "Letter to a Federal Employee from Marilyn L. Glynn."

[10]The other cases Defendant cites in Def. Mem. 25-29 have similar defects because they do not relate to the concealment aspect of § 1001(a)(1) but instead address the defense of "literal truth" only in the context of a charge of falsity in violation of § 1001. See, e.g., United Sates v. Race, 632 F.2d 1114, 1120 (4th Cir. 1980) (related to the false nature of billing submission, not concealment); United States v. Gatewood, 173 F3d 983, 988 (6th Cir. 1999) (examining falsity of statement regarding payments of subcontractors, when partial payments were made, not concealment); United States v. Moses, 94 F.3d 182, 188 (5th Cir. 1996) (examining falsity of

In the instant case, the jury was instructed on the defense of "literal truth," Jury

Instructions at 115-16,  "good faith," id. at 117-21, and Defendant's "Theory of the Case," id at

110-114.  In his closing argument, Defense counsel argued that Defendant lacked the intent to

violate 18 U.S.C. § 1001 because the term "business" was ambiguous, and that Defendant relied

upon the examples in the GSA ethics manual in his statements to GSA, GSA-OIG and the

Senate.  After arguments and instructions, the jury nevertheless determined that Defendant in fact

falsified and concealed material information and convicted him on Counts 2, 3 and 5.  Because

these verdicts were supported by the evidence at trial, they should not be disturbed.

### IV.  Counts Two and Three are not Multiplicitous

Defendant argues that Counts Two and Three must be reversed because the violations are

based on the same representation and are multiplicitous.  Def. Mem. 30.  Defendant's arguments

are completely without merit and should be summarily rejected.

Defendant's own citations to authority undercut his argument – charges are only

multiplicitous "where identical false statements, in either oral or written form, are made in

---

statement that defendant was married when he was separated from his wife, not concealment);
United States v. Rowe, 144 F.3d 15, 21-23 (1st Cir. 1998) (examining falsity of answers, not
concealment, in a bankruptcy proceeding); United States v. Gahagan, 881 F2d 1380, 1382-83 (6th
Cir. 1989) (discussing the false and fraudulent nature of defendant's answers, not concealment);
United States v. Johnson, 937 F.2d 392, 3989-99 (8th Cir. 1991) (reviewing conviction of "false,
fictitious and fraudulent statements" not concealment conviction); United States v. Vesaas, 586
F.2d 101 (8th Cir. 1978) (examining false statement conviction not concealment); United States v.
Anderson, 579 F.2d 455, 459-60 (8th Cir. 1978) (discussing falsity of reimbursement requests, not
concealment); United States v. Diogo, 320 F.2d 898, 902 (2d Cir. 1963) (reviewing falsity of
statements and noting distinction between false statements and concealment).
    Defendant's reliance on United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994)
is also misplaced.  The court does not make clear whether the conviction was under the
concealment or falsity prong of § 1001(a)(1), but the court's remand was based on inadequate
jury instructions with respect to "good faith."  Because Defendant does not make a similar claim
in this case, any reliance on Migliaccio is misplaced.

response to identical questions." Def. Mem. 30 (citing United States v. Cisneros, 26 F. Supp. 2d at 44.)[11]  A cursory review of the evidence at trial, however, indicates that Defendant did not make identical statements to GSA ethics officers Ellison and McKenna (Count 2) and to GSA-OIG Special Agent Rowe (Count 3), and consequently his argument is without factual basis.

With respect to Count 2, Defendant made a written statement to GSA ethics officer Ellison and McKenna, which stated:

> I am in need of an ethics opinion.  I (along with wto [sic] members of Congress and a few Congressional staff) have been invited by a friend and former colleague on a trip to Scotland to play golf for four days.  I will be paying for all my hotels, meals, and greens fees.  The issue is airfare.
>
> The host of the trip is chartering a private jet to take the eight of us from BWI to Scottland [sic] and back.  He is paying the cost for the aircraft regardless of whether I go or not.  In fact, none of the other guest [sic] will be paying a proportional share of the aircraft costs. I need to know how to treat this activity.

---

[11]Similarly, Defendant cites United States v. Graham, 60 F.3d 463, 467 (8th Cir. 1995) which found counts multiplicitous when "nearly identical statements" were made to "three different individuals."  Def. Mem. 30.  Defendant, however, omits the relevant facts and the basis of the ruling.  The Graham court found that "those individuals conducting the inquiries were acting in the same role with the same objective: to ascertain all assets that should have been included in the bankruptcy estate. Graham misled the creditors at the first creditors' meeting. His repetition of the same statement at the second and third creditors' meetings added nothing further to harm the bankruptcy action; the harm was done from the outset."  Graham, 60 F.3d  at 467. All of Graham's statements were identical and made to the same individuals; the only variation was that the statements were repeated at different times.  In contrast, Defendant made different statements to GSA ethics officers and GSA-OIG at different times.

A more applicable legal standard is that articulated in United States v. Salas-Camacho, 859 F.2d 788, 791 (9th Cir. 1988), which discusses the Ninth Circuit's two-part test for determining whether multiple counts for false statements are permissible.  The first inquiry is whether a declarant was asked the same question and gave the same answer.  The second element is whether later false statements further impaired the operations of the government.  In the instant case, Defendant was not asked the same questions, and the later false statements impaired additional operations of the government because it ended the GSA-OIG investigation into the Scotland golf trip.

> One other point of relevance: the host is a lawyer and lobbyist, but one that has no business before GSA (he does all of his work on Capitol Hill).

G. Exh. 160. According to the Defendant, he made no oral statements to either Ellison or McKenna prior to receiving the answer to his request, but simply emailed his request. Tr. 6/5/06 at 19:14 -25:16.

In contrast, Defendant made only oral representations and no written statement to Special Agent Rowe. According to Special Agent Rowe, the Defendant told him about the cost and length of the trip to Scotland, and that Abramoff did not have any business with GSA. Tr. 5/31/06 PM at 46:18-47:19. While the general topic of the two representations was the same, i.e., the trip and Abramoff's relationship with GSA, the questions asked, the precise answers given and the purpose of the inquiry were different.

In the instant case, the ethics officer of the GSA General Counsel's office and GSA-OIG had vastly different interests and were not acting in the same role. GSA ethics officers were trying to determine how to treat the gift of free airfare from Abramoff. G. Exh. 167 ("This is in response to your inquiry on whether you can accept a gift of free air transportation from a friend to attend an [sic] golf trip."). GSA-OIG's objective was to determine the validity of an anonymous complaint that ethical rules were violated or laws broken when Defendant went "on an international golfing trip provided by lobbyists." G. Exh. 52. GSA-OIG's responsibilities included the enforcement of "fraud, waste and abuse" within GSA. Tr. 5/31/06 at 44:8-13. Because different statements were made to different entities with different objectives, Defendant's argument that Counts Two and Three are multiplicitous should be rejected.

## V.  Counts Two, Three and Five Are Based on Sufficient Evidence

As discussed supra, motions for judgment of acquittal are granted on the basis of insufficient evidence only if the court concludes, as a matter of law, that no reasonable juror could have convicted on the evidence presented.  In arguing for acquittal based upon insufficient evidence, Defendant restates previous arguments and ignores the evidence introduced at trial. Consequently, Defendant's motion should be rejected.

A.      Count Two

*1. Specific Intent*

Defendant's argument that there is insufficient evidence to support the jury's finding that his statement in Count 2 was intentionally false, Def. Mem. 32, fails because he does not discuss the correct statutory provision and analyzes the facts under the incorrect definition of mental intent.

Defendant seemingly ignores the jury's finding that Defendant was convicted based on his **concealment** of a material fact under 18 U.S.C, § 1001(a)(1), not the falsity aspect of § 1001. For example, Defendant cites United States v. Worthington, 822 F.2d 315 (2d Cir. 1987) for the definition of "false statement," but ignores the fact that Worthington was a falsity § 1001 case.

Defendant further errs by providing an incorrect definition of "willfulness" –  the mental intent required for a 18 U.S.C. § 1001 conviction.  As discussed on page 93 of the Jury Instructions, a defendant acts willfully "when that person acts deliberately, voluntarily and intentionally," not the more stringent "specific intent to fail to do something the law requires"[12]

---

[12]The definition of "willfully" provided by Defendant at Def. Mem. 32 was previously proposed by the Defendant, see Docket 98 p. 39, and rejected by the Court.  Jury Instructions at 93.

as cited in Def. Mem. 32.

In order to overturn the jury verdict, the Court must determine that no reasonable juror could have concluded that Defendant acted willfully, that is acting "deliberately, voluntarily and intentionally," Jury Instructions at 93.  For example, the jury could have relied on the emailed statement received by Mr. McKenna and Ms. Ellison, G. Exh. 160, as well as the emails sent before July 25, 2002 between Defendant and Abramoff, G. Exh. 101 to 159, to establish that Defendant knew that the content of his ethics request, G. Exh. 160, was false, incomplete and that he was concealing relevant information from the GSA ethics officers.  Consequently, a jury could have reasonably concluded that Defendant had the specific intent to make a false statement to the GSA ethics officers in Count Two.[13]

2.  *Materiality*

Defendant argues that his statement to the GSA ethics officer was immaterial because it was incapable of affecting a GSA agency decision.  Def. Mem. 33.  Defendant, however, narrowly defines the jurisdiction of a GSA decision as only "disbursement of government controlled property."  Def. Mem. 33.  A jury could have reasonably relied upon the actual trial testimony of Ms. Ellison who testified that the official responsibilities of the GSA Ethics office included the determination of the propriety of accepting gifts.  Tr. 5/31/06 AM at 24:9-18.  Based

_____

[13]Defendant's assertion that providing "assistance" is not prohibited in any regulation, Def. Mem. 33, is false.  The Principles of Ethical Conduct prohibit specifically the type of assistance Defendant provided to Abramoff: 5 C.F.R. § 2635.101(b)((3) Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.*** (7) Employees shall not use public office for private gain. (8) Employees shall act impartially and not give preferential treatment to any private organization or individual.).  A jury could have reasonably relied upon these provisions in determining that Defendant knowingly and willfully concealed information in violation of 18 U.S.C. § 1001(a)(1).

upon the definition of a trial witness, the jury could have reasonably found that Defendant's concealment of facts was material because they impacted the determination of the propriety of the acceptance of the gift of free airfare.

Additionally, Defendant argues that the jury could not have concluded that Defendant's statement was material because "Mr. Safavian would have been able to accept any [sic] the Scotland trip as a gift under the friends and family exception." Def. Mem. 34. Such an assertion ignores Ms. Ellison's testimony that before determining whether this exception could apply, she would have had to look at a number of factors, including the "history of the relationship" and whether Abramoff actually did "use his own money." Tr. 5/31/06 PM 9:4 -11:17. Ms. Ellison also concluded that if a gift was not paid by the friend but by the clients, then it would not fall under the personal relationship exception. Id. at 11:10-18. Based on that testimony, a jury could have reasonably found that Defendant's statements and concealments were material.

B.     Count Three

*1. Specific Intent*

Sufficient evidence exists to establish that Defendant had the specific intent to conceal material information with respect to Count Three. Defendant argues that there is no evidence to show that Defendant had the specific intent for a violation of 18 U.S.C. § 1001. Def. Mem. 34-35. Defendant premises his argument on the claim that Special Agent Rowe had no further questions to Defendant's answer to "does he [Abramoff] have any business with GSA," and consequently, Defendant could not have had the intent to conceal. Id. Such an argument is misplaced because, as discussed supra, the jury could have relied upon the emails between Defendant and Abramoff to evaluate Defendant's choice of the word "business" in speaking with

Agent Rowe.  A reasonable juror could have determined that Defendant described Abramoff's

"business" with GSA in such a way as to intentionally conceal what Abramoff was doing with

GSA and the assistance Defendant was giving Abramoff that the emails revealed.

Defendant also neglects to note that Special Agent Rowe spoke with Defendant about the

costs of the Scotland trip, whether the trip was "provided by lobbyists," G. Exh. 52; Tr. 5/31/06

PM 46:10-51:7.  Based on the emails, G. Exh. 101 to 327, the jury had a reasonable basis to

determine that based upon that line of inquiry, Defendant acted willfully in concealing his

assistance to Abramoff in GSA-related activities.[14]

*2. Materiality*

Defendant argues that the concealment of Defendant's "assistance to Abramoff in GSA-

related activities" could not have been material to the GSA-OIG investigation.  Def. Mem. 35-36.

Defendant cites to the closing of the GSA-OIG investigation after Defendant's interview as

evidence of the immateriality of Defendant's statements.  The opposite is true.  Defendant's

concealment of his assistance to Abramoff was one of the deciding factors for the closure of the

investigation – Defendant neglects to mention Special Agent Rowe's testimony that he would

have wanted to know of Defendant's activities and emails related to Abramoff during his GSA-

OIG investigation into the Scotland trip.  Tr. 5/31/06 PM at 51:8-52:22.  Defendant also ignores

Special Agent Rowe's testimony that he would "have expanded" his investigation had he known

---

[14]Defendant's additional arguments that Special Agent Rowe failed to ask additional
questions, that the questions were ambiguous, or that Defendant's statements were literally true,
have been addressed supra.  Defendant also incorrectly relies on an exhibit that was never
admitted at trial.  Def. Mem. 35 citing Def. Exh. 127 (GSA-OIG Report of Interview of
Defendant).

of Defendant's assistance to Abramoff. Tr. 5/31/06 PM at 52:3.[15]  Consequently, a reasonable

jury could have found that Defendant's statements and concealments were material to the

investigation.

C.      Sufficient Evidence Exists to Sustain Count Five

        *1. Jurisdiction*

        Defendant argues that the Senate Committee on Indian Affairs (SCIA) lacked jurisdiction

"to investigate whether it was proper for Mr. Safavian to attend the Scotland trip under the GSA

standards of ethical conduct."  Def. Mem. 37.  This argument has previously been briefed, and

discussed by the Court in a written opinion.  Docket 83, pp. 13-14.

        SCIA's jurisdiction includes "all matters pertaining to problems and opportunities of

Indians."  Def. Exh. 224.  As briefed previously in Government pleadings, Docket 52, and as

substantiated by Bryan Parker's testimony at trial, Tr. 6/1/06 AM at 7:14-26:1, in course of

investigating the "problems and opportunities of Indians, SCIA determined that Indian tribal

funds solicited by Abramoff were used to pay for the trip to Scotland in 2002 that Defendant

attended.  Id.  SCIA was gathering information on the flow of funds, the activities on the trip, and

who paid for the activities on the trip.  Id.  During the investigation, they came across evidence of

an entity, CAF, which was controlled by Abramoff.  Id.  Tribal money went into CAF and,

among other things, funded the 2002 Scotland trip.  Id.  Based upon the list of attendees of the

trip, SCIA began looking into whether there was any improper influence peddling among the

---

[15]Defendant's arguments regarding the definitions of prohibited source and the personal
relationship exception are without merit based upon Ms. Ellison's testimony that Abramoff
would be a prohibited source and that she would have had to conduct further investigation to
determine if any gift from Abramoff would fall into the personal relationship exception.  Tr.
5/31/06 PM 9:4 -11:20.

public officials on the trip resulting from tribal funds.  Id.  In particular, Defendant's assistance to Abramoff on the White Oak project and the Old Post Office project, were directly connected to Abramoff's work on behalf of Indians.  Id. at 25:5-26:1.  Consequently, a jury could have reasonably concluded that Defendant's participation in the Scotland trip and his assistance to Abramoff's in GSA related activities was within the jurisdiction of SCIA.[16]

### 2.  Specific Intent

The jury in Count 5 convicted Defendant for falsely stating that "Abramoff did not have any business with GSA at the time that Mr. Safavian was invited on the trip to Scotland...."  Docket 119, p. 4.  Based on a review of the emails, G. Exhs. 101 to 360, compared with Defendant's adoptive admission of the GSA ethics opinion which stated "Neither Mr. Abramhoff nor his firm does business with or is seeking to do business with GSA," G. Exh. 82, a jury could have reasonably concluded that Defendant knowingly and willfully made a false statement in violation of § 1001.

### 3.  Materiality

Defendant argues that his statement could not be material because "SCIA was not investigating the propriety of Mr. Safavian's attendance on the Scotland trip by the time the SCIA had received the cover letter at issue in Count 5."  Def. Mem. 39.  Defendant further argues that because SCIA took no follow-up steps, Defendant's communications must be immaterial. His arguments are irrelevant.  A reasonable juror could have concluded otherwise – Defendant's

---

[16]Defendant's argument that SCIA lacked jurisdiction because SCIA could not inquire into GSA ethics behavior was made to the jury and reasonably rejected based on Mr. Parker's testimony, Tr. 6/1/06 AM at 7:14-26:1, and the statement of SCIA's broad jurisdiction, Def. Exh. 224.

statements were material to SCIA's investigation because Mr. Parker testified that SCIA was specifically investigating the money flow into CAF as well as influence peddling at GSA at the time of the request to Defendant.  Tr. 6/1/06 AM at 7:14-26:1.[17]

Additionally, a statement need not have impacted an investigation in order for it to be material.  Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects.  United States v. Hansen, 772 F.2d 940, 949 (D.C. Cir. 1985).  "Materiality is not concerned with whether the alleged omission would have affected the ultimate agency determination."  United States v. Dale, 782 F. Supp. 615, 625-26 (D.D.C. 1991).  Consequently, Defendant's argument that the statement had "no impact" should be rejected.  The jury could have reasonably relied upon Mr. Parker's testimony regarding the subject matter of the investigation to determine that Defendant's statement that Abramoff had no business at GSA was material to the SCIA investigation.

## VI.  The Obstruction of Justice Conviction in Count One Is Valid

A.     No Due Process Violations

Defendant argues that the obstruction conviction in Count One should be dismissed as a matter of law because of due process violations.  As discussed supra, Defendant's argument fails because his due process rights were not violated, and he has no right to be specifically informed of criminal liability or to receive a Garrity/Kalklines warning.  Consequently, Defendant's arguments should be rejected summarily.

---

[17]Defendant cites SCIA's final report on the Tribal Lobbying Investigation.  Def. Mem. 39-40.  Although nothing in the SCIA report undermines the factual and legal basis for the materiality of Defendant's statement, such reliance is inappropriate because the report was not admitted at trial and was not even in existence at the time the jury found Defendant guilty beyond a reasonable doubt.

B.      18 U.S.C. § 1505 Is Not Unconstitutionally Vague

Defendant argues for the first time that 18 U.S.C. § 1505[18] is unconstitutionally vague. Def. Mem. 40-46.  In essence, Defendant is arguing that a conviction of § 1505 cannot be upheld if the criminal act was a misleading statement made by the defendant to a law enforcement officer.  Defendant claims that "misleading" cannot be understood by a person of ordinary intelligence, and that § 1505 is so vague that law enforcement officers are not given adequate guidance thus encouraging arbitrary and discriminatory enforcement.   For the reasons discussed infra, Defendant's arguments are without merit.

As Defendant notes, Def. Mem. 41-42 (citing Hill v. Colorado, 530 U.S. 703 (2000)), "a statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill, 530 U.S. at 732( citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)).

   1. *People of Ordinary Intelligence Can Understand Prohibitions of § 1505*

Defendant's reliance on Hill illustrates the weaknesses of his arguments that a person of ordinary intelligence could not understand what conduct is prohibited by § 1505.  Hill analyzed whether a criminal statute was unconstitutionally vague when it prohibited, in legislation targeted at abortion opponents, the act of being within eight feet of another person near a health care

_____

[18]18 U.S.C. § 1505 provides, in relevant part:
Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress–

facility.  The Supreme Court's language in rejecting the vagueness challenge in Hill is

particularly apt in the instant case:

> In this case, the first concern is ameliorated by the fact that § 18-9-122(3) contains a scienter requirement. The statute only applies to a person who "knowingly" approaches within eight feet of another, without that person's consent, for the purpose of engaging in oral protest, education, or counseling. The likelihood that anyone would not understand any of those common words seems quite remote.
>
> Petitioners proffer hypertechnical theories as to what the statute covers, such as whether an outstretched arm constitutes "approaching." And while "[t]here is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question," because we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language," For these reasons, we rejected similar vagueness challenges to the injunctions at issue in Schenck, and Madsen. We thus conclude that "it is clear what the ordinance as a whole prohibits." More importantly, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid "in the vast majority of its intended applications."

Hill, 530 U.S. at 732-33 (citations omitted).

Applying the analysis the Supreme Court found in Hill, Defendant's argument fails

because the only reasoning that he proffers are "hypertechnical theories as to what the statute

covers."  Id.  First, any argument that Defendant may have regarding any vagueness and

applicability to the Defendant's conduct was addressed and rejected by the 1996 Amendments to

18 U.S.C. § 1515(b),[19] as discussed in United States v. Kanchanalak, 37 F. Supp. 2d 1 (D.D.C.

1999).  Kanchanalak discusses the legislative response to the Court dismissing a § 1505

conviction in United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991).  Congress specifically

acted "in response," Kanchanalak, 373 F. Supp 2d at 3, to Poindexter in order to more clearly

---

[19]18 U.S.C. 1515(b):
As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

define that the conduct at issue in <u>Poindexter</u> – making a misleading statement that was specifically proscribed by § 1505. Because the 1996 Amendments were targeted in response to the reversal of Poindexter's conviction for "false and misleading statements," <u>Kanchanalak</u>, 373 F. Supp 2d at 3, Defendant's arguments of vagueness based on the "transitive/intransitive" nature, Def. Mem. 42, are without merit. <u>Kanchanalak</u> specifically notes that based on the 1996 amendments, "Persons charged under Section 1505 now have notice that Congress intended the word "corruptly" in Section 1505 to be used in both the transitive and the intransitive sense, that is, both a defendant who corrupts herself and a defendant who corrupts another can be prosecuted under Section 1505." <u>Kanchanalak</u> 373 F. Supp 2d at 3. Consequently, Defendant's arguments should be rejected.

While "misleading" has not been specifically defined, the term "misleading" is a term of common parlance that can be readily understood by a person of ordinary intelligence.[20] Indeed, the Supreme Court in <u>Hill</u> addressed this very type of argument when it stated

> And while "[t]here is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question," because we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language," for these reasons, we rejected similar vagueness challenges to the injunctions at issue.

530 U.S. at 733 (citations omitted). Defendant cannot reasonably claim that he did not understand that he was prohibited from deceiving the GSA-OIG investigator or leaving him with a misunderstanding of the actual facts.[21]

---

[20]<u>See</u>, <u>e.g.</u>, <u>The American Heritage Dictionary of the English Language</u>, Fourth Edition. "Misleading: To lead into error of thought or action, especially by intentionally deceiving."

[21]At Def. Mem. 43-44, Defendant appears to argue that the § 1505 is unconstitutionally vague because it "purports to parallel § 1001 but suggests criminality for conduct that is not prohibited by § 1001." Oddly, he fails to cite any caselaw, statute or legislative history for that

Moreover, 18 U.S.C. § 1505 has a scienter requirement that provides a verifiable standard of criminality, as expressly favored in Hill, 530 U.S. at 733. Unlike the cases cited by Defendant where a statute was held unconstitutionally vague, see, e.g. Chicago v. Morales, 527 U.S. 41, 56-57 (1999), obstruction of a proceeding requires a very high level of intent: "corruptly." The Court defined corruptly as acting with a "wrongful, immoral, depraved or evil purpose, motive or intent." Jury Instructions at 99. The combination of the scienter requirement with the definition of "corruptly" in § 1515(b) adequately informs a person of ordinary intelligence what conduct would be illegal under § 1505.[22]

### 2. § 1505 Provides Adequate Guidance to Law Enforcement

Defendant also argues that § 1505 fails to provide adequate guidance to law enforcement officers and allowed for arbitrary and discriminatory enforcement. Def. Mem. 44-46.[23] A

---

provision. Indeed, § 1505 specifically does NOT parallel § 1001 because it requires a much higher level of scienter, prohibits different conduct and has different jurisdiction (for example, § 1505 covers only agency and congressional investigations, and does not prohibit making misleading statements to the FBI, which is covered under other obstruction statutes). Defendant's reliance on § 1001 cases in analyzing § 1505 is meritless.

[22]Defendant cites Tuscon Woman's Clinic v. Eden, 379 F.3d 531, 555 (9th Cir. 2004) and Free Speech Coal. v. Reno, 198 F.3d 1083, 1095 (9th Cir. 1999) for the propositions that statutes are unconstitutionally vague if they are based on subjective viewpoints. The conduct prohibited by those statutes are markedly different than the basic obstruction of § 1505. Eden was decided in the context of a regulation imposing behavioral requirements on doctors within the abortion area, which has a heightened context of review. Eden, 379 F.3d at 555. Similarly, Free Speech Coal. was challenging child pornography provisions, which implicates the heightened review of First Amendment concerns. Defendant cannot make a similar claim for heightened review in this case.

[23]Defendant relies on cases that have no scienter requirement, City of Chicago v. Morales, 527 U.S. 41, 55 (1999) (no mens rea requirement in anti-loitering ordinance), or were decided within the heightened review of restrictions of speech protected by the First Amendment. See, e.g., United States v. Williams, 444 F.3d 1286, 1306 (11th Cir. 2006) (statute prohibiting simulated child pornography); City of Houston v. Hill, 482 U.S. 451 (1987) (statute prohibiting

vagueness claim not involving infringement of a First Amendment freedom must be considered as the statute is applied to the facts of the particular case. United States v. Powell, 423 U.S. 87, 92 (1975). In the instant case, the conduct falls squarely within the definition of prohibited conduct under 18 U.S.C. 1515(b), false and misleading statements. Defendant's arguments to the contrary notwithstanding, Defendant's claim that Rowe "should have known" that Defendant had a stay in London does not mean that the statute prohibiting false and misleading statements is unconstitutionally vague. See, e.g., Chapman v. United States, 500 U.S. 453, 467-68 (1991) (noting that dispute of whether weight of "mixture" included blotter paper and LSD did not make statute unconstitutionally vague). Moreover, Defendant's argument that any law enforcement officer could base an arrest or prosecution on "his own subjective belief as to whether a suspect intended to mislead the investigator with his answers" neglects the scienter requirement of § 1505 that requires that a defendant act "corruptly," that is with a "wrongful, immoral, depraved or evil purpose, motive or intent." Jury Instructions at 99. Finally, "as always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible." Grayned v. City of Rockford, 408 U.S. 104, 114 (1972).[24]

---

speech interfering with duties of law enforcement).

[24]The Supreme Court pointed out in Bordenkircher v. Hayes, 434 U.S. 357 (1978):
In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
434 U.S. at 364. (citations omitted).

C.     Sufficient Evidence Exists for a Conviction on Count One

Defendant claims that insufficient evidence exists to sustain the obstruction conviction of Count One because there is "only one false statement in the charging language of Count One." Def. Mem. 46.  Defendant, fails to recognize that "falsity" is not essential to an obstruction charge.  As Defendant notes, Def. Mem. 46-47, however, two statements are referenced in the Indictment with respect to Count One: (1)  Abramoff had no business with GSA, and (2) Defendant paid $3100, which was the total costs of the trip, including airfare, hotels and golf greens fees.  Based on the evidence presented at trial, the jury had a reasonable basis to determine that Defendant's statements to Special Agent Rowe were false or misleading.  A juror could reasonably have found that Defendant's statement that Abramoff had no business with GSA was misleading based upon the emails between Defendant and Abramoff, G. Exh. 101 to 327.  A juror could also reasonably have found that Defendant's statement that $3100 was the total costs of the trip was misleading based upon the testimony of Neil Volz and G. Exh. 1,6,7,11,15 and 91.

Importantly, Defendant fails to note that obstruction under § 1505 can be proven under either "false" or "misleading" statements.  18 U.S.C. § 1505.  Thus, even if the jury found that Defendant did not make a false statement,[25] Defendant could still be found guilty of obstruction under the "misleading" aspect of § 1505.  The jury could have reasonably found that when Defendant stated that Abramoff had no "business" with GSA, Defendant was not speaking

---

[25]Defendant incorrectly claims that he was "acquitted" of Count 3(C) of making a false statement regarding Abramoff have no business with GSA  The guilty verdict on Count 3 means that the jury unanimously found that Defendant was guilty beyond a reasonable doubt of Count 3(A).  "Acquittal" means that the jury unanimously found that the government did not prove its case beyond a reasonable doubt.  The blank on 3(C) indicates only that the juror did not unanimously conclude that the Defendant was guilty of 3(C) beyond a reasonable doubt, i.e. they "hung" on that particular aspect, not that he was "acquitted."

falsely, but was attempting to mislead Special Agent Rowe regarding what Abramoff was doing

with GSA and attempting to conceal his own assistance to Abramoff in GSA-related activities.

Similarly, a jury could have found that Defendant's statement regarding the costs of the trip were

incomplete and thus misleading under § 1505.

Defendant also argues that the conviction should be thrown out because "no reasonable

juror could have concluded that Mr. Safavian did not make the false statement in Count Three,

but that he obstructed justice with that statement in Count One. As discussed supra, the verdicts

are not inconsistent. However, even if the verdicts were inconsistent, this fact, in and of itself,

offers Defendant no remedy as illustrated by controlling case law. See, e.g., United States v.

Dykes, 406 F.3d 717, 722-23 (D.C. Cir. 2005) ("a criminal defendant convicted by a jury on one

count cannot attack that conviction because it was inconsistent with the jury's verdict of acquittal

on another count.") (citing United States v. Powell, 469 U.S. 57, 58 (1984)).

Defendant further argues that the conviction should be overturned because the verdict

form failed to specify which statement was the basis for obstruction. Def. Mem. 47.

Defendant's argument is meritless because the Court accepted Defendant's proposed verdict

form with respect to Counts 1 and 4. Consequently, any alleged problem with the verdict form is

"invited error." See, e.g., United States v. Wiggins, 530 F.2d 1018, 1020 (D.C. Cir. 1976).[26]

---

[26]Additionally, Defendant neglects established law that the jury need not agree
unanimously as to which theory of the offense supported the verdict. See, e.g., United States v.
Stewart, 433 F.3d 273, 319 (2d Cir. 2006) ("The District Court did not err by failing to instruct
the jurors that they must agree unanimously as to which theory of the offense-false statement or
concealment-supported the verdict.") citing Schad v. Arizona, 501 U.S. 624, 631 (1991) (where a
single count alleges that the defendant committed a charged offense by one or more specified
means, "[w]e have never suggested that ⋯ the jurors should be required to agree upon a single
means of commission, any more than the indictments were required to specify one alone")
(plurality opinion)).

D.     Obstruction Charge Is Not Fundamentally Ambiguous

Defendant argues that Count One should be rejected because Defendant's responses were fundamentally ambiguous. Def. Mem. 47.  Defendant, however, provides no relevant caselaw for the proposition that a defense of "fundamental ambiguity" applies to 18 U.S.C. § 1505 convictions, but cites only falsity cases under 18 U.S.C. § 1001 in support of his argument.  Def. Mem. 47-49.  Defendant ignores the fact that a defendant can be convicted of either "false" or "misleading" statements in violation of 18 U.S.C. § 1505.  Defendant fails to cite, and the Government could not find, a single case supporting the proposition that "fundamental ambiguity" is a defense to a charge of obstruction under 18 U.S.C. § 1505.[27]  Because § 1505 criminalizes misleading statements if made "corruptly," a statement which is "fundamentally ambiguous" but still misleading can be the basis for a conviction of obstruction.  Based on the evidence presented at trial, including G. Exh. 101-327 and Agent Rowe's testimony, Tr. 5/31/06 at 46, a jury could reasonably have concluded that Defendant's statements regarding the costs of the trip and Abramoff's business with GSA were misleading.[28]

E.     Sufficient Evidence Exists of Defendant Acting "Corruptly"

Defendant argues that no reasonable juror could have found that Defendant possessed

---

[27]As discussed supra, the defense of "fundamental ambiguity" is a defense to a false statement in violation of 18 U.S.C. § 1001(a)(2), not concealing material information in violation of 18 U.S.C. § 1001(a)(1).

[28]Defendant asserts that the conviction should be overturned because the Government failed to "negate the reasonableness of Mr. Safavian's statement that he relied on Mr. Abramoff's calculation of the cost of the trip and had been told that $3100 covered his lodging, airfare, and greens fees."  Def. Mem. 49.  Defendant seemingly forgets the testimony of Neil Volz, the photographs of the trip, and the charges in G. Exh. 1, 6,7,11 and 15 that indicated that the costs were far in excess of Defendant's claims.

corrupt intent to obstruct the GSA-OIG investigation.  Def. Mem. 50.  Defendant cites a selected

portion of the facts presented at trial, and then leaps to the illogical conclusion that "the fact that

the Government failed to prove that Mr. Safavian had knowledge of the actual cost of the trip

negates any possibility that his representations to Agent Rowe could have been made with the

requisite 'wrongful, immoral, depraved or evil purposes, motive or intent' to obstruct the

investigation."  Def. Mem. 50-51.  Defendant's arguments are without merit.

A jury could have properly found that Defendant corruptly made the statement that

Abramoff had no business with GSA, and that Defendant's statement obstructed the GSA-OIG

investigation.  The GSA-OIG has authority to investigate  "fraud, waste and abuse" within GSA.

Tr. 5/31/06 at 44:8-13. A review of the emails, G. Exhs. 101-360, paint a picture of the unethical

actions that Defendant took to assist his lobbyist friend in violation of the principles of ethical

conduct embodies in the 5 C.F.R. § 2635.  GSA-OIG had the responsibility of preventing and

policing fraud and corruption at GSA.  Tr. 5/31/06 at 44:8-13.  Consequently, the jury could have

reasonably concluded that Defendant made the statement regarding Abramoff's relationship with

GSA with the intent to mislead GSA-OIG and prevent Agent Rowe from discovering

Defendant's unethical conduct.

Moreover, the evidence at trial showed that the costs far exceeded the $3100 Defendant

claimed to GSA-OIG Special Agent Rowe as the total costs of the trip.  The evidence adduced at

trial, taken in the light most favorable to the Government and upon which a reasonable juror

could have relied, indicated that the total costs of the Scotland trip to the Defendant was over

$17,000.  G. Exh. 1,6,7,11, 15 and 91.  Consequently, the jury could have considered

Defendant's statement that $3100 was his share of the total costs of the trip was false and

misleading, and the jury have could concluded that his statements were made "corruptly," with a "wrongful, immoral, depraved or evil purpose, motive or intent." Jury Instructions at 99.[29]

F.    Defendant's Statement Influenced GSA-OIG Investigation

Defendant argues that his statements did not have a "natural and probable effect" of interfering with the due administration of justice, and consequently, his conviction should be vacated. Def. Mem. 51-53. The jury, however, was informed of the nexus requirement of 18 U.S.C. § 1505, and was instructed accordingly: "In order to have acted 'corruptly,' Mr. Safavian must have known that his intentional acts would have the natural and probable effect of interfering with a matter material to, not ancillary, to [sic] the proceeding." Jury Instructions at 99-100. Defendant's arguments are meritless.

Based on the facts presented at trial, Defendant's actions led directly to the closure of the GSA-OIG investigation. Defendant informed Special Agent Rowe that Abramoff had no business with GSA and that $3100 covered the total costs of his share of the Scotland trip. Tr. 5/31/06 PM at 46:10 - 51:1 Based on those representations, Special Agent Rowe believed Defendant and closed his investigation into the Scotland trip and whether it was provided by lobbyists. Tr. 5/31/06 PM at 52:2-6. From that testimony, a jury could reasonably have concluded that Defendant's statements had the "natural and probably effect of itnerfering with a matter material to, not ancillary to, the proceeding." Jury Instructions at 99-100.

_____

[29]Defendant's claim that the Government "failed to prove that Mr. Safavian had knowledge of the actual costs of the trip negates any possibility that his representation to Agent Rowe could have been made with the requisite" intent, is completely without basis in law or fact. The Government need not prove "actual" knowledge of the costs because a jury could have reasonably relied on the facts discussed supra to find that Defendant knew that the costs of the trip far exceeded the $3100 Defendant claimed.

Defendant argues that because Special Agent Rowe believed Defendant and asked no follow-up questions, Defendant's statements were not capable of affecting GSA-OIG's actions. Def. Mem. 52-53. As discussed repeatedly, the opposite is true. Defendant made representations to Agent Rowe, and as a result of those concealments and falsehoods, Agent Rowe ended his investigation based entirely on those false and misleading statements. Tr. 5/31/06 PM at 51:2-6. The nexus requirement is easily met because Defendant's actions led directly to the closure of the GSA-OIG investigation into the propriety of Defendant's attendance on the trip funded by Abramoff.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Acquittal should be denied, and the Court should affirm the jury's convictions of violations of 18 U.S.C. § 1001 and 1505.


Respectfully submitted,


/s/ Nathaniel B. Edmonds
NATHANIEL B. EDMONDS
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
Phone: 202-307-0629

/s/ Peter R. Zeidenberg
PETER R. ZEIDENBERG
Trial Attorney, Public Integrity Section
Criminal Division
United States Department of Justice
Phone: 202-514-2042

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2006, a copy of the foregoing was served on the following counsel by electronic service:

Barbara Van Gelder, Esq.
Roderick Thomas, Esq.
Albert Lambert, Esq.
Wiley Rein & Fielding
1776 K Street NW
Washington, DC 20006
Tel: 202-719-7032
Facsimile: 202-719-7049

/s/ Nathaniel B. Edmonds
NATHANIEL B. EDMONDS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice