UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
        v.                                  )        Criminal No. 05-0370 (PLF)
                                            )
DAVID HOSSEIN SAFAVIAN,                      )
                                            )
        Defendant.                          )
_____)

OPINION AND ORDER

        This matter is before the Court on defendant David Safavian's motion for

judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and his

motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  The

Court heard oral argument on these motions on August 24, 2006.  Upon consideration of the

motions, oppositions, replies, and arguments of the parties, the Court concludes that both

motions must be denied.

I.  BACKGROUND

        From May 16, 2002 until January 2004, David Safavian was the Chief of Staff for

the Administrator of the General Services Administration ("GSA").  On August 3, 2002, the

defendant, lobbyist Jack Abramoff, and seven other individuals, including a member of the

United States House of Representatives, members of the Representative's staff, and other

lobbyists employed at the same law firm as Jack Abramoff, flew by private jet to Scotland to

play golf at St. Andrew's golf course.  Mr. Safavian, Mr. Abramoff, and the others continued on

to London, England.  Mr. Safavian and Mr. Abramoff eventually returned to the United States by private jet on August 11, 2002.

Prior to going on the golfing trip, in July 2002, Mr. Safavian sought and received an ethics opinion from a GSA ethics officer regarding whether he could participate in the trip. Both the GSA Office of the Inspector General ("GSA-OIG") and the Senate Committee on Indian Affairs subsequently conducted investigations into the Scotland trip.  The GSA-OIG's investigation was opened in March 2003 after the receipt of an anonymous tip.  On February 22, 2004, the Washington Post published the first of a series of articles about Mr. Abramoff's dealings with several Indian tribes, triggering the Senate Committee's investigation.  In the course of each of these investigations, Mr. Safavian was questioned about his involvement in the trip.  He responded to each of the inquiries both orally and by providing documents.  Mr. Safavian also wrote a letter accompanying the documents he provided to the Senate.

A grand jury thereafter returned a five count indictment against Mr. Safavian, charging him with three counts of making false statements or acts of concealment under 18 U.S.C. § 1001(a)(1) and two counts of obstruction under 18 U.S.C. § 1505.  Specifically, Count One of the indictment alleged that the defendant obstructed the GSA-OIG investigation, in violation of 18 U.S.C. § 1505; Count Two alleged that he made a false statement and committed acts of concealment in connection with seeking the GSA ethics opinion prior to the trip, in violation of 18 U.S.C. § 1001(a)(1); Count Three alleged that he made a false statement and committed acts of concealment in the course of the GSA-OIG investigation, in violation of 18 U.S.C. § 1001(a)(1); Count Four alleged that he obstructed the Senate Committee investigation, in violation of 18 U.S.C. § 1505; and Count Five alleged that he made a false statement,

committed acts of concealment, and provided false documentation in the course of the Senate Committee investigation, in violation of 18 U.S.C. § 1001(a)(1).

Mr. Safavian's trial before this Court began on May 22, 2006. On June 20, 2006, the jury returned a verdict finding him guilty on Count One, which alleged that he had obstructed "the official investigation being conducted by the GSA-OIG into [Mr.] Safavian's participation in an 'international golfing trip provided by lobbyists.'" Amended Indictment ¶ 27; see also Verdict Form at 1. The jury acquitted Mr. Safavian on Count Four, which alleged that he had obstructed "the inquiry by Senator John McCain as Chairman of the Senate Committee on Indian Affairs, into allegations of misconduct by lobbyists for Native American tribes." Amended Indictment ¶ 38; see also Verdict Form at 3. Mr. Safavian was found guilty on all three counts of false statements under 18 U.S.C. § 1001(a)(1). See Verdict Form at 2-4.

Because each of the false statement/concealment counts under 18 U.S.C. § 1001(a)(1) alleged multiple false statements or acts of concealment, the Court used a special verdict form over the objection of the defendant. With respect to Count Two, the jury found that Mr. Safavian had both "concealed his assistance to Mr. Abramoff in GSA-related activities" and that he had "falsely stated to the GSA ethics officer that Mr. Abramoff did all his work on Capitol Hill, when in truth and fact, Mr. Safavian well knew, prior to the August 2002 Scotland trip that Mr. Abramoff was seeking to lease or purchase GSA-controlled property." Verdict Form at 2; see also Amended Indictment ¶ 29. With respect to Count Three, the jury found that Mr. Safavian had "concealed his assistance to Mr. Abramoff in GSA-related activities." Verdict Form at 3; see also Amended Indictment ¶ 31. With respect to Count Five, the jury found that Mr. Safavian had "falsely stated in a letter to the Committee that Mr. Abramoff did not have any business with GSA at the time Mr. Safavian was invited on the trip to Scotland, when in truth

3

and fact, Mr. Safavian well knew, prior to the August 2002 Scotland trip that Mr. Abramoff was

seeking to lease or purchase GSA-controlled property." Verdict Form at 4; see also Amended

Indictment ¶ 40.

## II.  MOTION FOR JUDGMENT OF ACQUITTAL

The defendant moved for judgment of acquittal on all counts pursuant to Rule 29

of the Federal Rules of Criminal Procedure at the close of the government's case.  At that time,

the Court reserved ruling on the motion.  At the close of the defendant's case, the Court ruled in

part on the defendant's Rule 29 motion, finding that there was not sufficient evidence to support

the allegation in Count Two of the indictment that the defendant had falsely stated to the GSA

that Jack Abramoff "did not have any business with and was not seeking to do business with

GSA."  That portion of Count Two was stricken from the indictment after the close of the

defendant's case and prior to jury instructions and closing arguments.  The jury was given an

amended indictment to reflect that change.  Defendant now renews his Rule 29 motion with

respect to the four counts on which the jury found him guilty.

In ruling on a motion for judgment of acquittal, the Court must "consider[] the

evidence in the light most favorable to the government and determin[e] whether, so read, it is

sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond

a reasonable doubt." United States v. Kayode, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting

United States v. Harrington, 108 F.3d 1460, 1464 (D.C. Cir. 1997)).  In so doing, the Court must

"accord[] the government the benefit of all legitimate inferences." United States v. Weisz, 718

F.2d 413, 437 (D.C. Cir. 1983) (citations omitted).  The question is whether the evidence is

sufficient for a rational juror to have found the defendant guilty.  See United States v. Kayode,

4

254 F.3d at 212-13;  United States v. Harrington, 108 F.3d at 1464.  Put another way, the Court

may only grant a motion for judgment of acquittal where "a reasonable juror *must necessarily*

have had a reasonable doubt as to the defendants' guilt."  United States v. Weisz, 718 F.2d at 437

(emphasis in original) (citations omitted).

### A.  Fifth Amendment Due Process

Defendant argues that the Court must set aside the jury's verdict on all four

counts because he did not receive adequate notice of his right not to speak and the potential

criminal implications of making false statements if he did choose to speak, thereby violating his

Fifth Amendment due process rights.  See Defendant David H. Safavian's Motion for a

Judgment of Acquittal ("Def. MJA") at 11-17.  The government responds that this argument

should have been made before trial in a motion to suppress the defendant's statements pursuant

to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, and it therefore is waived under

Rule 12(e).  See Government's Opposition to Defendant's Motion for Acquittal ("Gov't Opp. to

MJA") at 3-4.  The government further argues that even if the Court were to consider this new

argument, it fails on the merits.  See id. at 4-5.  The Court agrees with the government.

The proper remedy for a due process violation under the Fifth Amendment would

have been for the defendant to move to suppress his various statements to the government

officials with whom he spoke.  Mr. Safavian was well aware of what statements he was alleged

to have made to GSA ethics officers, a GSA-OIG agent, and a Senate Committee investigator, as

they were charged in the indictment itself.  He did not at any time prior to trial move to suppress

these statements on the ground that his constitutional rights had been violated.  During the direct

examination of the defendant at trial, defense counsel attempted to explore the issue of whether

Agent Rowe gave any warnings to Mr. Safavian prior to interviewing him.  6/2/06 (p.m.) Tr.
29:12-14.  The government objected and counsel argued the issue at a bench conference.  Id.
29:15-31:11.  During that bench conference, defense counsel did not indicate that she was
seeking to suppress particular statements at that point in the trial, but rather wished to explore the
issue of warnings before the jury. The Court sustained the government's objection, as this issue
was a legal matter clearly outside the purview of the jury as factfinder and could only have been
prejudicial to the government.  The defendant has not ever moved to suppress the statements he
made to the GSA ethics officers, to the GSA-OIG agent, or to the Senate Committee
investigator.  He therefore waived any ability to raise this argument post-trial under Rule 29.

Even if Mr. Safavian had raised this argument prior to trial, he would not have
succeeded in view of the Supreme Court's decision in United States v. Brogan, 522 U.S. 398
(1998).  In that case, the Court upheld the conviction under 18 U.S.C. § 1001 of an individual
who was questioned by Internal Revenue Service and Department of Labor agents, and was
informed only after he had given false statements to them that those false statements could
constitute a crime.  United States v. Brogan, 522 U.S. at 399-400.  The Court held that although
the false statements that the individual was convicted of making consisted of merely denying
that he had committed certain illegal acts, such a denial nevertheless could result in criminal
liability under the statute.  In concluding that the plain language of 18 U.S.C. § 1001 admits of
no exception for an "exculpatory no," the majority opinion stated that while the dissenters
appeared to object to the harshness of the result, they could have equally sought to mitigate the
asserted harshness of the statute as applied under the rationale that "§ 1001 has no application
unless the defendant has been warned of the consequences of lying, or indeed unless the
defendant has been put under oath."  Id. at 407.  Clearly, the majority considered and dismissed

such an argument in upholding the conviction of the defendant in that case, who received no

warning prior to making his false statement.  Justice Ginsburg, in a concurring opinion, further

noted the breadth of the statute (albeit somewhat disapprovingly):

> Because the questioning occurs in a noncustodial setting, the
> suspect is not informed of the right to remain silent. Unlike
> proceedings in which a false statement can be prosecuted as
> perjury, there may be no oath, no pause to concentrate the
> speaker's mind on the importance of his or her answers.

Id. at 411.  Justice Ginsburg, nevertheless, concurred in the outcome, which upheld the

defendant's conviction.  Clearly, no prior warning is required under 18 U.S.C. § 1001.

Defendant also argues that his statements could not be the predicate for a

prosecution because he should have received an administrative warning under Garrity v. New

Jersey, 385 U.S. 493 (1967), because he was threatened with the prospect of discipline.  See Def.

MJA at 14.  But there is absolutely no evidence that such a threat existed.  To invoke the

protection of Garrity, this Circuit has held that the defendant "must have in fact believed his . . .

statements to be compelled on threat of loss of job and this belief must have been objectively

reasonable."  United States v. Friedrick, 842 F.2d 382, 395 (D.C. Cir. 1988).  That is simply not

the case here.

Mr. Safavian initiated contact with the GSA ethics officers.  He himself testified

that he voluntarily went to the GSA-OIG agent's office after receiving a phone call, describing

the meeting as "not tense" and "informal."  6/2/06 (p.m.) Tr. 27:23-28:6, 28:13. As for his

communications with Deputy Chief Investigative Counsel for the Senate Committee on Indian

Affairs Bryan Parker, Mr. Safavian and Mr. Parker both testified that after responding to the

Senate request for documents, Mr. Safavian was the one to initiate a phone call to Mr. Parker

following up on his response, and eventually sending to the Committee a letter and

documentation.  Mr. Safavian may have cooperated with the GSA-OIG and Senate Committee investigations out of a well-founded belief that for him to do otherwise might be a poor reflection on him as a public official.  Nevertheless, his own testimony shows that he was not coerced or threatened and that there was not any immediate or direct threat of harm to his job when he chose to speak with either GSA-OIG Agent Gregory Rowe or Senate Investigator Bryan Parker.  The fact that certain government investigators give warnings as a matter of policy in no way affects the analysis of whether such a warning is constitutionally *required*.  The Court finds that under the circumstances presented here it was not.

### B.  Legal Duty to Disclose

Defendant argues that the conviction on Count Three, which was predicated on the jury's finding that Mr. Safavian had committed an act of concealment, and the jury's verdict with respect to the concealment portion of Count Two must be set aside because he had no legal duty to disclose the information concealed.  See Def. MJA at 18-25.  He argues first, that the Court should have determined as a matter of law whether he was under a duty to disclose the facts in question, and, second, that no such duty existed.  See id.  The Court already has concluded that the issue of a legal duty to disclose was a matter for the jury, and therefore included the legal duty as an element of 18 U.S.C. § 1001(a)(1) in the jury instructions.  See Jury Instructions for Count Two, Count Three, Count Five.[1]  The Court sees no reason to revisit the question now.  The Court further finds that there was more than sufficient evidence for the jury

---

[1]     The Court notes that the written Jury Instructions that were provided both to the jury during its deliberations and to counsel has inconsistent page numbering.  In this Opinion, as in the parties' briefs, page numbers are sometimes referenced where they are helpful in finding the instruction.

to find that such a duty existed. Finally, even had it decided this question itself as a matter of law, the Court would have reached the same conclusion as the jury apparently did: that under the circumstances presented in all three of the counts brought under 18 U.S.C. § 1001(a)(1), Mr. Safavian was under a legal duty to disclose material facts to the GSA ethics officers, to the GSA-OIG agent, and to the Senate Committee investigator.

The evidence presented at trial supported the jury's finding that such a duty existed. In <u>United States v. Cisneros</u>, 26 F.Supp.2d 24 (D.D.C. 1998), the court found that Mr. Cisneros, at the time under consideration for a position in the cabinet of the President of the United States, was under a legal duty to disclose based on an Executive Order requiring that applicants for government employment "possess such traits as reliability, trustworthiness, and loyalty." <u>Id</u>. at 42. In this case, the government presented to the jury evidence that Mr. Safavian owed a duty as a public servant based on the fourteen principles from the "Standards of Ethical Conduct" that were issued in a January 20, 2001 Executive Order, and were later codified in the Code of Federal Regulations as the "General Principles" that make up the "Basic obligation of public service." 5 C.F.R. § 2635.101(b); Gov't Trial Exhibit 46, January 20, 2001 Executive Order. Mr. Safavian was trained on these principles of public service when he became the GSA Chief of Staff. 5/31/06 (p.m.) Tr. 18:9-17. Among this list of obligations of a public servant that the jury could have found formed the basis for Mr. Safavian's legal duty to disclose were the following principles:

> (4) An employee shall not, except as permitted by applicable law or regulation, solicit or accept any gift or other item of monetary value from any person or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties . . .

(7)  Employees shall not use public office for private gain.

(8)  Employees shall act impartially and not give preferential treatment to any private organization or individual . . .

(11)  Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities . . .

(14)  Employees shall endeavor to avoid any actions creating the appearance that they are violating applicable law or the ethical standards in applicable regulations.

Gov't Trial Exhibit 46, January 20, 2001 Executive Order;  see also 5 C.F.R. § 2635.101(b)(4), (7), (8), (11), (14) (identical to Executive Order except with respect to (4), which states that "An employee shall not, except as permitted by subpart B of this part . . . ").

With respect to Count Two, which related to Mr. Safavian's request for an ethics opinion, the jury could have reasonably found an additional duty under the federal regulation dealing with the seeking of ethics advice.  That regulation states, in relevant part:

> Employees who have questions about the application of this part or any supplemental agency regulations to particular situations should seek advice from an agency ethics official.  Disciplinary action for violating this part or any supplemental agency regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of an agency ethics official, provided that the employee, in seeking such advice, has made full disclosure of all relevant circumstances . . . Disclosures made by an employee to an agency ethics official are not protected by an attorney-client privilege.  An agency ethics official is required by 28 U.S.C. 535 to report any information he receives relating to a violation of the criminal code.

5 C.F.R. § 2635.202.  This language makes clear that full disclosure is a requirement underlying any reliable ethics advice.  The jury could reasonably have found that this requirement also fulfilled the legal duty to disclose element in Count Two.  The Court will not upset the jury's verdict with respect to any counts on the basis of this argument.

### C.  Literal Truth Defense

Defendant claims that his convictions under 18 U.S.C. § 1001(a)(1) must be set aside because the government has not borne its "burden to negate any reasonable interpretations that would make a defendant's statement factually correct."  Def. MJA at 26 (quoting inter alia United States v. Dale, 782 F.Supp. 615, 627 (D.D.C. 1991)).  The government responds that the literal truth defense is only proper under the "false statement" prong of 18 U.S.C. § 1001 and not under the "concealment prong" under which Mr. Safavian was indicted and convicted.  See Gov't Opp. to MJA at 13.  The Court rejects the defendant's argument as a basis for judgment of acquittal.

While 18 U.S.C. § 1001 is frequently referred to as the "false statements" statute, it actually contains three different prongs under which the government bring charges.  18 U.S.C. § 1001(a)(2), or the "false statement prong" of the false statements statute, creates criminal liability for one who "makes any materially false, fictitious, or fraudulent statement or representation."  18 U.S.C. § 1001(a)(3) relates to the use of false writings or documents.  The defendant was indicted and convicted under 18 U.S.C. § 1001(a)(1), or the "concealment prong" of the false statements statute, which creates criminal liability for one who "falsifies, conceals, or covers up by any trick, scheme, or device a material fact."  Within each count of the indictment, however, the grand jury alleged both acts of concealment and false statements under this concealment prong.  Regardless of the government's argument that the literal truth defense is not appropriate to charges brought under the concealment prong, the Court permitted the jury to be instructed that the literal truth constituted a defense to the false statements alleged under the concealment prong, but not to the acts of concealment themselves.  The jury nevertheless

found Mr. Safavian guilty under 18 U.S.C. § 1001(a)(1) on Counts Two and Five for making false statements.

The Court agrees with the government that the literal truth defense is inherently illogical with respect to the acts of concealment defendant was convicted of committing under Counts Two and Three. The Court therefore will consider the defendant's argument with respect only to the false statements that Mr. Safavian was convicted of making under Counts Two and Five. Mr. Safavian argues that these statements were literally true -- that is, that Mr. Abramoff in fact "did all his work on Capitol Hill" and that Mr. Abramoff in fact "did not have any business with GSA at the time [Mr.] Safavian was invited on the trip to Scotland." Amended Indictment ¶¶ 31, 40; see Def. MJA at 26. The problem with Mr. Safavian's arguments for why these statements are the "literal truth" is that they rely on a recitation of the evidence in a light that is clearly most favorable to him. See Def. MJA at 27-29. Under Rule 29, the Court must view the evidence in the light most favorable to the government.

Mr. Safavian asserts, as he did before trial in his motion to dismiss, that the term "doing business" should be understood to mean only what is stated in the federal regulations or GSA ethics manual as they relate to GSA contracting practices, and not as the term is understood by the average person. Id. at 27. The Court rejected this view at trial and rejects it now. The meaning of the words he used such as "business" or "work" -- as in "all Mr. Abramoff's work was on Capitol Hill" -- were susceptible to multiple reasonable definitions, and therefore could only be understood by "considering the term[s] in context, taking into account the setting in which [they] appeared and the purpose for which [they were] used." United States v. Milton, 8 F.3d 39, 45 (D.C. Cir. 1993). Mr. Safavian's understanding of these terms was presented to the jury in the form of both the expert witness Anthony Anikeeff, who testified as to GSA

contracting procedures, and Mr. Safavian's own testimony as to his understanding of these terms when he used them.  The jury was free to consider, and reject this evidence, which it apparently did.  The Court does not find that Mr. Safavian has met the burden of showing that no reasonable juror could have found that he did not speak the literal truth when making the false statements for which he was convicted.

### D.  Multiplicity (Counts Two and Three)

Defendant argues that the statements forming the basis of his conviction under Counts Two and Three are multiplicitous because they consist of the same representation.  Def. Mot. Judg. Acquit. at 30-31.  "An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions."  United States v. Harris, 959 F.2d 246, 250 (D.C. Cir. 1992).  Such a claim is considered to be based on a defect in the indictment, and therefore properly is made under Rule 12(b)(3) of the Federal Rules of Criminal Procedure in advance of trial.  If not raised, it is waived.  See FED. R. CRIM. P. 12(e) ("A party waives any 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.");  see also United States v. Weathers, 186 F.3d 948, 952-53 (D.C. Cir. 1999).  The defendant did not raise the argument of multiplicity in his motion to dismiss or at any stage prior to trial.  Because the defendant was ably represented and made many motions prior to trial, the Court can see no good cause to grant relief from his waiver, and therefore will not consider this argument.

Even if the Court were to consider this argument on its merits, it would fail.  The concealments and false statement alleged in Counts Two and Three are certainly not identical or

13

part of the same offense.  First, the acts alleged in Counts Two and Three are factually distinct.

They occurred in different years, before different government employees, and were not made in

the same manner.  In the case of Count Two, the concealments and false statement alleged were

primarily based on a single e-mail communication between Mr. Safavian and the ethics officers.

The concealments and false statement alleged in Count Three were primarily based on Mr.

Safavian's oral communications with GSA-OIG Agent Rowe, both over the phone and in an

interview in Agent Rowe's office, and in the form of the $3100 cancelled check to Jack

Abramoff and copy of his attendance record that Mr. Safavian provided to Agent Rowe.  5/31/06

(p.m.) Tr. 45:20-50:23.  The allegations in each count clearly did not involve the "same factual

proof," as the defendant asserts.  Def. MJA at 14.

   Second, the case that the defendant primarily relies on -- United States v. Graham,

60 F.3d 463 (8th Cir. 1995) -- is inapposite.  The defendant in that case repeated the same false

statement to three persons who were all acting in the same role (as creditors), in the same

proceeding (bankruptcy), with the same objective (to ascertain the defendant's assets), and the

defendant was lying about the same asset in all three proceedings in an effort to conceal it.  See

id. at 467.  The Eighth Circuit in that case articulated a "unitary harm" rule "whereby repetition

of a false statement which does not 'constitute an additional impairment of . . . governmental

functions' . . . should not be charged separately in an indictment."  Id. (quoting United States v.

Salas-Camacho, 859 F.2d 788, 791 (9th Cir. 1988)).  In this case, not only are the concealments

and false statements not identical, they clearly constitute different impairments of different

government functions.  The acts alleged in Count Two were related to a GSA ethics opinion

from GSA ethics officers, issued in August 2002 prior to the Scotland golfing trip.  That

government function is wholly separate from the acts alleged in Count Three, which impaired

14

the function of the GSA-OIG's 2003 investigation of Mr. Safavian's involvement in the Scotland golfing trip.

### E. Sufficiency of the Evidence to Support False Statement Convictions

Mr. Safavian challenges the sufficiency of the evidence to support the jury's verdict on Counts Two, Three, and Five for violation of 18 U.S.C. § 1001(a)(1). He argues that under each count, the evidence presented at trial did not support a finding either as to his specific intent or the materiality of his false statements or acts of concealment. With respect to Count Five, he also challenges the jurisdiction of the Senate Committee on Indian Affairs. The Court rejects each of his arguments and finds that there was ample evidence to find guilt on each of these counts.

First as to the issue of specific intent, the jury was adequately and properly instructed and had sufficient evidence to find that Mr. Safavian had the requisite intent to commit each of the false statement offenses of which he was convicted. As for materiality, it is a mixed question of law and fact that properly is resolved by the jury. United States v. Gaudin, 515 U.S. 506, 512 (1995). Furthermore, under 18 U.S.C. § 1001(a)(1), the government need not show that the information actually influenced the decisionmaker, nor that there was actual reliance on that information. See id. at 509 (defining materiality under 18 U.S.C. § 1001 as "a natural tendency to influence or [] capable of influencing, the decision of the decisionmaking body to which it was addressed") (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)); see also United States v. Cisneros, 26 F.Supp.2d 24, 40 (D.D.C. 1998). Rather, it must "'make a reasonable showing of its potential effects.'" United States v. Cisneros, 26 F.Supp.2d at 40. (quoting United States v. Diggs, 613 F.2d 988, 999 (D.C. Cir. 1979)). The jury was properly

instructed that "a statement is material if it had the effect of influencing the action of an agency or committee, or was capable of, or had the potential to do so.  It is not necessary that the statement actually have had that influence or be relied on by the agency or committee, so long as it had the potential or capability to do so."  Jury Instructions at 93.  There was ample evidentiary support for the jury's findings with respect to materiality on each of these false statement/concealment counts.

Finally, the defendant argues that the Senate Committee on Indian Affairs did not have jurisdiction to investigate whether Mr. Safavian's participation in the Scotland trip violated the GSA Standards of Ethical Conduct.  Def. MJA at 36-38.  The Court rejects this argument as a narrow, formalistic, and illogical construction of what the Senate Committee was actually investigating at the time of its inquiries to Mr. Safavian.

18 U.S.C. § 1001(c)(2) states in relevant part that:

> With respect to any matter within the jurisdiction of the legislative branch, [§1001(a)] shall apply only to . . . any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

The Senate Committee on Indian Affairs' jurisdiction and authority includes "[a]ll proposed legislation, messages, petitions, memorials, *and other matters relating to Indian affairs*" as well as "the duty . . . to conduct a study of any and all matters pertaining to problems and opportunities of Indians, *including but not limited to*, Indian land management and trust responsibilities, Indian education, health, special services, and loan programs, and Indian claims against the United States."  S. Res. 4, Sec. 105, 95th Cong., 1st Sess. (1977), as amended by S. Res. 127, 98th Cong., 2d Sess. (1984); see also Def. Trial Exh. 224.

16

The facts brought out at trial demonstrated the following:  In response to an article published in the Washington Post on February 22, 2004 concerning Mr. Abramoff and his dealings with Indian tribes, the Chairman of the Senate Committee on Indian Affairs, Senator John McCain, launched a wide-ranging probe into Jack Abramoff and his involvement with Indian tribes.  6/1/06 (a.m.) Tr. 7:20-8:2.  In the course of that investigation, the Committee discovered that the 2002 Scotland golf trip was paid for in part using money from Indian tribes.  Id. 16:6-11.  Consequently, the Committee began to gather "information [regarding the Scotland trip] in furtherance of the investigation," which included "[a]ny information [the Committee] could [gather] about the Scotland golf trip, trying to understand its purpose, the nature, what the recipients understood the purpose to be, who they understood to be financing it."  Id. 19:2-19:8.  As part of the investigation into the source of funding for that trip, Committee investigator Bryan Parker sent Mr. Safavian a letter requesting "[a]ll records reflecting, referring or relating to the 2002 Scotland golf trip that [he] attended with Mr. Jack Abramoff and others."  Id. 18:24-19:1, see also id. 17:2-3.

Mr. Safavian subsequently initiated a telephone conversation with Mr. Parker regarding the Committee's letter, and volunteered in that conversation that he had received an ethics opinion from GSA clearing him to take the trip.  6/1/06 (a.m.) Tr. 21:5-22:5.  He described that ethics opinion as containing information both about his relationship with Mr. Abramoff and what part of the costs of the trip he had paid -- that is, that he had paid for all costs except for those associated with flying on the private jet.  Id.  At Mr. Parker's request, Mr. Safavian provided a copy of that opinion to the Committee.  Id. 22:12-18, 30:23-31:5.  At no point was it suggested in the trial testimony that Mr. Parker was interested in the GSA ethics opinion for the sake of discovering whether Mr. Safavian had abided by certain ethical

standards.  Rather, his request in his capacity as an investigator for the Committee clearly related to its probe into the financial sources for the trip, which legitimately included the question of how each individual had paid.

In a previous Opinion addressing in part the issue of jurisdiction of the Senate Committee on Indian Affairs under the Section 1505 obstruction charged in Count Four, this Court stated that:

> The fact that Mr. Safavian volunteered information to the Committee regarding his ethics opinion and eventually provided it as documentation to support his position that he had paid for his portion of the trip himself, and had acted ethically in doing so, does not seem to the Court to be outside the purview of the Committee's interest in the financial dealings that went into the trip to Scotland.

United States v. Safavian, 428 F.Supp.2d 156, 163-64 (D.D.C. 2006).  The same is true in the context of whether the Committee had jurisdiction under 18 U.S.C. § 1001.  Mr. Safavian's representations concerning the Scotland trip and the documentation he provided were clearly of legitimate interest to both the Committee's probe of the trip's financing and any possible corruption associated with that financing.  A reasonable juror could easily have found that Mr. Parker's request for the ethics opinion fell within the scope of the Committee's authority.

## F.  Sufficiency of the Evidence to Support the Obstruction Conviction

### 1.  Due Process

For the same reasons as discussed supra at 5-8, the Court finds that Mr. Safavian has waived any Fifth Amendment due process arguments by not raising them prior to trial and, furthermore, that had he raised them at the appropriate time he would not have succeeded on those arguments.

2.  Constitutionality of 18 U.S.C. § 1505

Defendant argues that 18 U.S.C. § 1505 is unconstitutionally vague as applied to the conduct alleged in the indictment.  See Def. MJA at 40-46.  Specifically, he argues that the term "corruptly" must be read in the transitive sense to mean that the defendant must be alleged to have corrupted another individual and caused that person to act improperly, not merely acted in an obstructive manner himself.  See id.  He also argues that the false and misleading statements that underlie Count One are insufficient to support a conviction of obstruction.  Id. The Court notes, once again, that this argument should have been raised prior to trial, as it goes to the sufficiency of the indictment, which is properly the subject of a motion under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure.  Nevertheless, had Mr. Safavian raised it, the Court would have rejected the argument for the reasons articulated in more detail in this Court's opinion in United States v. Kanchanalak, 37 F.Supp.2d 1 (D.D.C. 1999).

First, Mr. Safavian's arguments regarding the alleged unconstitutionality of this application of 18 U.S.C. § 1505 rely almost wholly on the D.C. Circuit's rationale in United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), cert. denied, 506 U.S. 1021 (1992). But Congress subsequently enacted a statute, in response to the Poindexter decision, defining "corruptly" under 18 U.S.C. § 1505 as "acting with an improper purpose, *personally or by influencing another, including making a false or misleading statement,* or withholding, concealing, altering, or destroying a document or other information."  18 U.S.C. § 1515(b) (emphasis added).  18 U.S.C. § 1515 clearly criminalizes obstruction by false or misleading statement by an individual in the transitive and the intransitive, that is the term "corruptly" can be read to mean either that a defendant corrupted another individual or that he acted alone.  The Court further rejects Mr. Safavian's arguments that 18 U.S.C. § 1505, as applied in this case, is

unconstitutionally vague in any respect such that it does not "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or that "it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000) (citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)); see also Def. MJA at 41-42 (citing Hill v. Colorado, 530 U.S. at 732).

### 3. Inconsistency of Jury's Verdict

The defendant claims that the jury's verdict is inconsistent because the language of the GSA-OIG obstruction charge in Count One states that "[d]uring these interviews [with Agent Rowe], defendant Safavian falsely stated in substance and in part that [Jack Abramoff] had no business with GSA," whereas under the false statement to GSA-OIG charge in Count Three, the jury failed to find in its specific verdict that Mr. Safavian had "falsely stated to the GSA-OIG Regional Inspector General for Investigations that [Jack Abramoff] did not have any business with GSA." Indictment ¶¶ 25, 31; see also Verdict Form at 3; Def. MJA at 46-47.

The defendant ignores the fact that each of these counts was brought under a different statute and has different elements. The fact that the jury did not find him guilty of all of the possible alternative bases of 18 U.S.C. § 1001(a)(1), including his statement to Agent Rowe, does not mean that it could not find that the elements of the obstruction charge in Count One had been met and included the act of concealment for which it found him guilty under Count Three, as well as other obstructive acts that were alleged in Count One. Agent Rowe's testimony and the thrust of the government's case with respect to the obstruction charge in Count One under 18 U.S.C. § 1505 was that Mr. Safavian had committed multiple acts -- such as his

representation that he "had fully paid for his cost of the trip" -- not all of which were charged in Count Three that resulted in the obstruction.  See Amended Indictment ¶ 26.

Even were these verdicts as inconsistent as the defendant argues, the Court would not grant defendant's motion for judgment of acquittal.  The Court "do[es] not know what went through the jurors' minds."  United States v. Dykes, 406 F.3d 717, 722 (D.C. Cir. 2005).  Nor can the Court overturn a conviction on one count simply "'because it was inconsistent with the jury's verdict of acquittal on another count.'"  Id. (quoting United States v. Powell, 469 U.S. 57, 58 (1984).  As Oliver Wendell Holmes, quoting Learned Hand, stated for the Supreme Court:

> The most that can be said in such [a] case[] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions but that does not show that they were not convinced of the defendant's guilt.  We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

Dunn v. United States, 284 U.S. 390, 393 (1932) (quoting Steckler v. United States, 7 F.2d 59, 60 (2d Cir. 1925) (quoted in United States v. Dykes, 406 F.3d at 722).

### 4.  Fundamental Ambiguity

The defendant argues that the Court should grant his motion for judgment of acquittal with respect to Count One because it was predicated on "fundamentally ambiguous circumstances," and that his statements to the GSA-OIG were likewise "fundamentally ambiguous."  Def. MJA at 47.  The Court must reject this argument as well as the defendant's misapplication of the case law with respect to "fundamental ambiguity."

A defendant cannot as a matter of law be convicted of a false statement on the basis of an answer to a question if the question is "excessively vague" or "fundamentally ambiguous."  United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003); United States v.

21

Lighte, 782 F.2d 367, 375 (2d Cir. 1986). No case supports the proposition that such a defense

applies to an obstruction charge. Furthermore, fundamental ambiguity is found only in the

question asked to a defendant, not in a defendant's answers to that question (which arguably

might be the subject of a literal truth defense under 18 U.S.C. § 1001). A *question* is

"fundamentally ambiguous" when it "is not a phrase with a meaning about which men of

ordinary intellect could agree, nor one which could be used with mutual understanding by a

questioner and answerer unless it were defined at the time it were sought and offered as

testimony." United States v. Lattimore, 127 F. Supp. 405, 410 (D.D.C. 1955), aff'd 232 F.2d

334 (D.C. Cir. 1955); see also United States v. Lighte, 782 F.2d at 375. The Third Circuit has

put it this way: "[A] question is 'not amenable to jury interpretation . . . when it is entirely

unreasonable to expect that the defendant understood the question posed to him[.]'" United

States v. Serafini, 167 F.3d 812, 820 (3d Cir. 1999) (quoting United States v. Ryan, 828 F.2d

1010, 1015 (3d Cir. 1987)). Mr. Safavian does not argue that any particular questions posed to

him by Agent Rowe met this requirement (even were this defense to apply to an obstruction

charge), but rather seems to argue that their entire interaction was ambiguous. Neither the law

nor the record supports such an argument.

### 5. Sufficiency of Evidence that Defendant Acted "Corruptly"

The Court rejects the defendant's argument that there was insufficient evidence

on which a reasonable juror could have found that Mr. Safavian acted with "corrupt" intent,

which is that "having a wrongful, immoral, depraved or evil purposes, motive or intent." Jury

Instructions at 68. Considering the evidence in the light most favorable to the government, a

reasonable juror could have found that Mr. Safavian's actions with respect to the GSA-OIG

investigation were motivated by his intent to cover up his association with Mr. Abramoff while he was the Chief of Staff of GSA and to cover up the fact that he paid for less than the full cost of his portion of the trip to Scotland. By whatever definition one uses -- "wrongful, immoral, depraved or evil" -- the jury could reasonably have found that the evidence supported such a purpose, motive or intent.

      6. Natural and Probable Effect of Interference with Due Administration of Justice

      The Court also rejects the defendant's argument that there was insufficient evidence on which a reasonable juror could have found that Mr. Safavian's had the "natural and probable effect" of interfering with the due administration of justice. <u>See</u> Def. MJA at 52. The Court will not recite the evidence presented, but refers to the record.

### III.   MOTION FOR A NEW TRIAL

      Mr. Safavian moves for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure which provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). "Any error of sufficient magnitude to require reversal on appeal" is an adequate ground for granting a new trial. 3 WRIGHT, KING & KLEIN, FEDERAL PRACTICE AND PROCEDURE § 556 (3d ed. 2004). Grounds for granting such a motion can include a wide variety of errors, including misconduct prejudicially affecting a juror, <u>see, e.g.</u>, <u>Smith v. Phillips</u>, 455 U.S. 209 (1982), <u>Remmer v. United States</u>, 347 U.S. 227 (1954), or where the Court finds that the weight of the evidence is such that the verdict constitutes a miscarriage of justice. <u>See</u> 3 WRIGHT, KING & KLEIN, FEDERAL PRACTICE AND PROCEDURE § 553 (3d ed. 2004); <u>see</u> <u>also</u> <u>Tibbs v. Florida</u>, 457 U.S. 31, 38 (1982). These are but two examples of the grounds that can form the basis for granting such a

motion. A new trial should be granted only if the defendant has shown that "the error was substantial, not harmless, and that the error affected the defendant's substantial rights." United States v. Walker, 899 F.Supp. 12, 15 (D.D.C. 1995), aff'd 99 F.3d 439 (D.C. Cir. 1996) (quoting United States v. Johnson, 769 F.Supp. 389, 395-96 (D.D.C. 1991)). Whether to grant a motion for a new trial is "a decision committed to the Court's sound discretion." United States v. Neill, 964 F.Supp. 438, 441 (D.D.C. 1997). The Court after careful consideration of the defendant's arguments can find no such errors in this trial and, therefore, must deny the defendant's motion.

### A.    E-mails

The defendant argues that the admission of "Jack Abramoff" e-mails at trial constituted inadmissible hearsay. See Defendant's Motion for New Trial ("Def. MNT") at 1-8.[2] The Court addressed defendant's arguments in its May 23, 2006 Opinion and finds no basis for reconsideration of that Opinion, much less prejudice to the defendant warranting a new trial. See United States v. Safavian, 435 F. Supp.2d 36 (D.D.C. 2006). Furthermore, the Court notes that Mr. Safavian took the stand at trial and testified about many of the e-mails in question, including the numerous e-mails between himself and Jack Abramoff. In doing so, Mr. Safavian frequently testified what meaning he gave to the e-mails he both sent and received, what effect they had on his actions, and what import they had to him.

---

[2]    The defendant does not specify whether his objection is only to those e-mails written by Jack Abramoff, or if it encompasses those both written by him and those received by him.

## B. Ethics Opinion

The Court addressed defendant's arguments with respect to admission of the ethics opinion in its May 23, 2006 Opinion and finds no basis for reconsideration of that opinion, much less prejudice to the defendant warranting a new trial. See United States v. Safavian, 435 F. Supp.2d 36 (D.D.C. 2006). The ethics opinion was properly limited in its entirety with respect to Counts Four and Five relating to the Senate Committee on Indian Affairs, and was subject to numerous limiting instructions in the course of the trial and in a limiting instruction given in both the oral and written version of the final jury instructions.

## C. Sufficiency of Limiting Instructions

The defendant argues that the limiting instructions given at trial were inadequate and resulted in prejudice. See Def. MNT at 11-12. The record reflects that the Court gave numerous limiting instructions -- both before the jury was shown the e-mails and the ethics opinion, during the reading of these e-mails, at various times when they were discussed during testimony, and in the final jury instructions, both written and oral. See, e.g., 5/24/06 (p.m.) Tr. 8:4-10:11; 5/26/06 (p.m.) Tr. 23:5-25:6; 6/12/06 (p.m.) Tr. 58:6-59:9; Jury Instructions at 45-52. The limiting instructions were more than sufficient and were given at any time that counsel requested, and at other times when the Court deemed it necessary. The Court is confident that the instructions were more than adequate to inform the jury of what they could or could not consider and for what purposes.

### D.   Admission of Exhibit 175

The defendant argues that the admission of Government Exhibit 175 so prejudiced him that he now should receive a new trial.  Exhibit 175 is an attachment to Government's Exhibit 174, a July 28, 2002 e-mail Jack Abramoff sent to his assistant Holly Bowers.  Mr. Abramoff identified the attachment as the draft of a letter to be sent to GSA officials, and requested that Ms. Bowers make several changes to the draft, courier it to the recipient and those copied as recipients, and then e-mail Mr. Safavian to notify him that it was being sent.  See Government Exhibit 174.  Exhibit 174 was excluded by the Court prior to trial in its May 23, 2006 Opinion on the parties' motions in limine and was never presented to the jury or admitted in evidence.  See United States v. Safavian, 435 F. Supp.2d 36 (D.D.C. 2006).  Exhibit 175 was likewise excluded in the Court's pre-trial ruling.  See id.  At trial, however, the government sought to introduce Exhibit 175 as a copy of the final letter that was eventually sent by Mr. Abramoff and received by officials at GSA.  5/24/06 (p.m.) Tr. 73:21-74:10.  The Court, after the government established that the witness, Anthony Costa, recognized and identified Exhibit 174 as a copy of a letter he had received, admitted Exhibit 174 in evidence.  Id. 74:11-14.

The government is correct that the defendant essentially abandoned his objection to the admission of this exhibit.  5/24/06 (p.m.) Tr. 70:17-23.  At a bench conference, defense counsel objected  that Mr. Costa was testifying that the exhibit was the actual letter he had seen, as opposed to a copy of that letter.  Id. 71:12-16. The Court agreed that this matter should be clarified for the jury.  Id. 73:2-3.  At the conclusion of the bench conference, defense counsel stated that so long as it was established that the exhibit was a copy, she would cross-examine the

witness on the substance of matter.  Id. 73:13-16.  Defendant did not, at that time, raise a hearsay objection to Exhibit 175 at trial.

### E.   Limitation on Testimony Regarding Warnings

The defendant argues that he was prejudiced by the Court's refusal to allow him to testify on direct examination about whether GSA-OIG Agent Gregory Rowe gave him any warnings prior to his interview.  See Def. MNT at 13-14.  The defendant admits that this information is relevant only to his Fifth Amendment due process arguments.  For the same reasons discussed, supra at 5-8, the Court concludes that the defendant has waived this Fifth Amendment due process argument.  Furthermore, the defendant's testimony on this matter could only have been relevant at a pretrial hearing on a motion to suppress his statements to Agent Rowe.  It was not information that was relevant to the jury, and, in fact, could only have been prejudicial to the government by suggesting that Agent Rowe in some way violated the defendant's constitutional rights when he did not.  The line of questioning was properly excluded and in no way prejudiced the defendant's right to a fair trial.

### F.   Speculative Testimony

Defendant argues that he was prejudiced by the introduction of speculative testimony at trial by Eugenia Ellison, Raymond McKenna, Agent Gregory Rowe, and Bryan Parker.  See Def. MNT at 15-17.  The government responds that the statements were not speculative insofar as they related to the effect that Mr. Safavian's statements had on them. Gov't Opp. to MNT at 19.

Defendant has waived most of his arguments regarding speculative testimony. Mr. Safavian's counsel lodged no objection based on speculation with respect to Mr. McKenna's

discussion of what information his office had when it issued the ethics opinion and what information would have been relevant to the office in doing so.  5/31/06 (p.m.) Tr. 32:16-35:5. In fact, Mr. Safavian's counsel lodged two objections to Mr. McKenna's testimony on other bases, but permitted without objection a series of questions and answers in which Mr. McKenna described "relevant factors" to the ethics opinion analysis and whether additional information from Mr. Safavian would have affected that analysis.  Id.  Counsel also did not object to Agent Rowe's statements about the effect that the information Mr. Safavian omitted during their interview had on his investigation. Id. 50:24-52:22.

Similarly, Mr. Safavian's counsel did not object to Senate Investigator Bryan Parker's discussion of the "impact" Mr. Safavian's representations had on his investigation. 6/1/06 (a.m.) 34:20-35:10.  The defendant has, therefore, waived any objection to that part of Mr. Parker's testimony.  Defense counsel did object when Mr. Parker was asked whether he would have interviewed Mr. Safavian again if Mr. Safavian had not been arrested.  Id. 38:20-39:3.  The Court permitted Mr. Parker to answer, and he stated that he would have interviewed Mr. Safavian had he not been arrested or indicted.  Id. 38:13-39:3.  This testimony as to what Mr. Parker would have done to continue his investigation had Mr. Safavian not been arrested did not then, and does not now, seem to the Court to be speculative.  Mr. Parker testified that he intended to pursue certain investigative avenues, including interviewing Mr. Safavian, and that he simply had not had the opportunity to do so prior to Mr. Safavian's arrest.  Even if Mr. Parker's testimony that he would have interviewed Mr. Safavian had he not been arrested were speculative, that testimony certainly is not so prejudicial or of such import that its admission warrants a new trial.

28

As for the testimony of Ms. Ellison regarding the impact that Mr. Safavian's representations and omissions had on her ethics opinion, it simply was not speculation. Ms. Ellison was asked a series of questions in which the government told her a piece of information, and asked if it would have been relevant to her July 26, 2002 ethics opinion. Ms. Ellison answered questions about the ethics opinion that she had written and did so in her capacity as an ethics officer. It was not speculation for her to testify as to what information was relevant to her opinion, what information was not relevant, and whether that information would have an effect on an ethics opinion and on this one in particular. The government did not ask, nor did Ms. Ellison volunteer, exactly how the ethics opinion would have changed, which would, perhaps, have veered into speculation since Ms. Ellison could clearly not have placed herself in her own shoes in 2002. Nevertheless, she could and did testify as an experienced ethics officer as to what information she needed in order to write her opinion. The Court therefore properly permitted that line of questioning.

### G. Verdict Form

Defendant argues that he was prejudiced by the use of a verdict form that set forth the charging language of the false statement counts in the disjunctive, thereby impermissibly amending the indictment, which was charged in the conjunctive. See Def. MNT at 17-19. This argument is without merit.

"The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Griffin v. United States, 502 U.S. 46, 56-57 (1991) (quoting Turner v. United States, 396 U.S. 398, 420 (1970)); see also United States v. Johnson,

216 F.3d 1162, 1165 n.2 (D.C. Cir. 2000) ("an indictment charged in the conjunctive (e.g., one

charging that the defendant used a semiautomatic *and* a revolver), may be proven in the

disjunctive (i.e., by evidence that the defendant used one *or* the other)") (emphasis in original)

(citing United States v. Joseph, 169 F.3d 9, 13 (D.C. Cir. 1999)).  18 U.S.C. § 1001(a)(1) states

in relevant part that it is a crime for one to knowingly and willfully "falsif[y], conceal[], *or*

cover[] up by any trick, scheme, or device a material fact."  (emphasis added).  The statute

clearly provides for criminal liability if any one of the falsifications or concealments alleged in

Counts Two, Three, and Five were proven beyond a reasonable doubt.  The verdict form

therefore properly permitted the jury to find the defendant guilty on one or more bases under

each Count.

        The defendant further asserts that the verdict form was improper in that the false

statements and acts of concealment alleged in Counts Two and Three each should have been

qualified by the statement appearing at the end of those counts of the indictment that they were

done "when in truth and in fact, as the defendant well-knew, prior to the August 2002 Scotland

trip that Mr. Abramoff was seeking to lease or purchase GSA controlled property."  Def. MNT at

19. The defendant states that this "amendment" raises the issue of whether or not the jury could

properly have found that he had the requisite intent by not contrasting the allegedly false

statement or act of concealment with the "truth in fact."  See id.  The Court also rejects this

argument.

        The "in truth and in fact" language that Mr. Safavian suggests should have been

appended to the end of each individual allegation in the specific verdict form makes sense only

with respect to the false statements with which he was charged, but not with respect to the acts of

concealment alleged.  Concealment is not, by its nature, a statement that is necessarily false or

30

true.  Therefore, this argument cannot apply to Count Three, on which the jury found Mr.

Safavian guilty only on the basis of concealing from the GSA-OIG "his assistance to Mr.

Abramoff in GSA-related activities."  Verdict Form at 3; see also Amended Indictment ¶ 31.

Nor can it apply to Count Two.  One of the two bases on which the jury found him guilty on

Count Two was a concealment.  See Verdict Form at 2; see also Amended Indictment ¶ 29.  The

alternate basis on which the jury found Mr. Safavian guilty of Count Two actually included the

"in truth and in fact" language in the verdict form, that is, the jury placed a check on the form

indicating that they had found that Mr. Safavian had "falsely stated to the GSA ethics officer that

Mr. Abramoff did all his work on Capitol Hill, when in truth and in fact, Mr. Safavian well knew,

prior to the August 2002 Scotland trip that Mr. Abramoff was seeking to lease or purchase GSA-

controlled property."  Verdict Form at 2; see also Amended Indictment ¶ 29.  The Court can see

no basis for the defendant's arguments that the verdict form contained any errors, much less any

errors so serious as to warrant a new trial.

## H.  Removal of Juror Number 3

The defendant argues that the dismissal of Juror Number 3 was improper, and

that he is entitled to a new trial because she was dismissed.  Def. MNT at 19-21.   The Court

disagrees.  Juror Number 3 was dismissed for good cause.  The Court removed Juror Number 3

for doing independent research contrary to the Court's instruction, discussing the case with

others contrary to the Court's instruction, and generally demonstrating that she was unable to

follow the Court's instructions (as with her habitual lateness).  See 6/14/06 (a.m.) Tr. 1:6-28:24.

The Court's finding as to her lack of credibility was not itself the basis of its decision to dismiss

her, but rather partially formed the basis for its decision to credit the statements of other jurors

who informed the Court of some of Juror 3's admissions in the jury room that she had disobeyed the Court's instructions.

The Court did not then and does not now have any impression of what Juror Number 3's views of the case were, nor was she dismissed because of those views. She was not dismissed because she was perceived as a "holdout" or for any other reason related to the deliberations in this case, which had only begun less than two hours before the issues around her arose. The Court stated its reasons for removing Juror Number 3 on the record, and those reasons were and remain good cause for her dismissal.

## IV.  CONCLUSION

For all of the foregoing reasons, this Court concludes that there are no grounds for granting either defendant's motion for judgment of acquittal on any of the counts for which he was convicted, or his motion for a new trial. Accordingly, it is hereby

ORDERED that defendant's motion for judgment of acquittal [121] is DENIED; and it is

FURTHER ORDERED that defendant's motion for a new trial [122] is DENIED.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 12, 2006