# Exhibit 3

2005 WL 3598529 (C.A.D.C.)                                                                 Page 1
**(Cite as: 2005 WL 3598529)**

For Opinion See 454 F.3d 366Briefs and Other Related Documents

United States Court of Appeals,
District of Columbia Circuit.
UNITED STATES OF AMERICA, Appellee,
v.
Daniel DORCELY, Appellant.
No. 05-3130.
December 20, 2005.

On Appeal From The United States District Court For The District of Columbia
The Honorable Judge Reggie B. Walton

Brief of Defendant-Appellant Daniel Dorcely

Peter M. Brody[FN*], Melissa J. Stofko, Ropes & Gray LLP, 700 12th Street, N.W., Suite 900, Washington, D.C. 20005, (202) 508-4600, Counsel for Appellant Daniel Dorcely.

  FN* Appointed by the Court

**\*ii STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests that oral argument be granted under Fed. R. App. P. 34(a)(2) because argument may significantly assist the Court in determining Constitutional issues, in light of *United States v. Booker,* including the permissibility of relying on, for sentencing purposes, conduct of which a defendant has been acquitted by a jury, and the application of the appropriate standard of proof if a judge is permitted to override the jury's verdict at sentencing.

**\*iii TABLE OF CONTENTS**

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ... 1

STATUTES AND REGULATIONS ... 1

STATEMENT OF ISSUES ... 1

STATEMENT OF THE CASE ... 2

STATEMENT OF FACTS ... 3

SUMMARY OF ARGUMENT ... 10

ARGUMENT ... 11

I. The District Court Violated Mr. Dorcely's Fifth And Sixth Amendment Rights By Imposing A Sentence Based Substantially On Acquitted Conduct, Assessed Under A Preponderance-Of-The-Evidence Standard ... 12

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. The Fifth And Sixth Amendments Guarantee That All Facts Necessary To Support A Sentence Be Found By A Jury Beyond A Reasonable Doubt ... 12

B. A Court's Reliance, For Sentencing Purposes, On Evidence Of Acquitted Conduct Assessed Under A Preponderance Standard Violates The Fifth And Sixth Amendments ... 18

II. The Sentence Imposed On Mr. Dorcely Was Unreasonable Because It Was Based On Acquitted Conduct Considered Under A Preponderance Standard And Was Four Times The Length Of The Otherwise Applicable Sentence ... 23

III. The Restitution Order Contravened The Victim And Witness Protection Act Of 1982 Because It Was Based On A Loss Amount That Was Unrelated To The Offense Of Conviction ... 25

CONCLUSION ... 27

TABLE OF AUTHORITIES

CASES

[FN*]*Apprendi v. New Jersey,* 530 U.S. 466 (2000) ... 12, 13, 14, 16, 18, 19, 22, 25, 26

[FN*]*Blakely v. Washington,* 542 U.S. 296 (2004) ... 8, 12, 13, 16, 18, 19, 25, 26

*Chapman v. California,* 386 U.S. 18 (1967) ... 11

*Hughey v. United States,* 495 U.S. 411 (1990) ... 26

*Jones v. United States,* 526 U.S. 227 (1999) ... 15

*McMillan v. Pennsylvania,* 477 U.S. 79 (1986) ... 25

*United States v. Boney,* 977 F.2d 624 (D.C. Cir. 1992) ... 23

[FN*]*United States v. Baldwin,* 389 F. Supp. 2d 1, No. 02-0323 2005 U.S. Dist. LEXIS 21016 (D.D.C. 2005) ... 21, 22, 27

[FN*]*United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738 (2005) ... 1, 8, 13, 17, 18, 21, 23, 24, 25

[FN*]*United States v. Coleman,* 370 F. Supp. 2d 661 (S.D. Ohio 2005) ... 20, 21, 22

*United States v. Comer,* 93 F.3d 1271 (6th Cir. 1996) ... 26

*United States v. Coumaris,* 399 F.3d 343 (D.C. Cir. 2005) ... 11

[FN*]*United States v. Edwards,* 424 F.3d 1106 (D.C. Cir. 2005) ... 23

*United States v. Gone,* No. 05-30085, 2005 WL 2871944 (9th Cir. Nov. 1, 2005) ... 24

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019 (D. Neb. 2005) ... 21, 24, 25

*United States v. Lincoln*, 413 F.3d 716 (8th Cir. 2005) ... 25

*United States v. Paulus*, 419 F.3d 693 (7th Cir. 2005) ... 25

[FN*]*United States v. Pimental*, 367 F. Supp. 2d 143 (D. Mass. 2005) ... 19, 20, 21, 22

*United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005) ... 23

*United States v. Washington*, 404 F.3d 834 (4th Cir. 2005) ... 25

*United States v. Watts*, 519 U.S. 148 (1997) ... 23

GUIDELINES, RULES & STATUTES

18 U.S.C. § 2 ... 5

18 U.S.C. § 371 ... 4

18 U.S.C. § 1001 ... 1, 2, 4, 5, 6

18 U.S.C. § 1956 ... 4

18 U.S.C. § 1957 ... 4

18 U.S.C. § 1956(h) ... 5

18 U.S.C. § 3231 ... 1

28 U.S.C. § 1291 ... 1

Fed. R. App. P. 32(a)(7) ... 1

U.S.S.G § 2F1.1 ... 6

LAW REVIEWS AND JOURNALS

Margareth Etienne, *Parity, Disparity, and Adversality: First Principles of Sentencing*, 58 Stan. L. Rev. 309 (Oct. 2005) ... 21

Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681 (1992) ... 24

Jackie Gardina, *Compromising Liberty: A Structural Critique of the Sentencing Guidelines*, 38 U. Mich. J. L. Reform 345 (Winter 2005) ... 13

Barry J. Johnson, *If at First You Don't You Don't Succeed - Abolishing the Use of Acquitted Conduct in Guidelines, Sentencing*, 75 N.C.L. Rev. 153 (1996) ... 20

ADDITIONAL AUTHORITIES

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862) ... 15

1 J. Bishop, Criminal Procedure § 87 (2d ed. 1872) ... 16

4 W. Blackstone, Commentaries on the Laws of England 343 (1769) ... 12

Hon. Charles R. Breyer, U.S. District Judge (N.D. Cal.), Remarks in Robert Weisberg, *Excerpts from ""The Future of American Sentencing: A National Roundtable on Blakely,`'* 2 Ohio St. Crim L. 619 (Spring 2005) ... 20

2 M. Hale, Pleas of the Crown[FN*] 170 ... 15

2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873) ... 12

> FN* Authorities Primarily Relied Upon.

***1 STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

Daniel Dorcely (""Dorcely`') appeals from a final judgment of conviction and sentence entered by the United States District Court for the District of Columbia on June 14, 2004. The District Court's jurisdiction was invoked under 18 U.S.C. § 3231. Mr. Dorcely filed a timely notice of appeal of his sentence on July 21, 2005, entered on July 25, 2005,[FN1] and a timely notice of appeal of his final judgment on June 24, 2004, entered June 25, 2004, vesting this Court with jurisdiction of this appeal under 28 U.S.C. § 1291.

> FN1. Mr. Dorcely previously filed a notice of appeal of his sentence on June 4, 2004, entered on June 15, 2004, and an amended notice of appeal of his sentence on June 15, 2004, entered on June 16, 2004 regarding the mandatory application of the Sentencing Guidelines in light of *United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005)*. JA80; JA88. This Court vacated Mr. Dorcely's sentence and remanded for resentencing. Mr. Dorcely now appeals that resentencing.

**STATUTES AND REGULATIONS**

Pursuant to Fed. R. App. P. 28(f) and Circuit Rule 28(a)(5), the relevant portions of statutes and rules referenced in this brief are set forth in the attached Statutory Addendum.

**STATEMENT OF ISSUES**

**I. Did The District Court Violate Mr. Dorcely's Fifth And Sixth Amendment Rights By Imposing A Sentence Based Substantially On Acquitted Conduct, Assessed Under A Preponderance-Of-The-Evidence Standard?**
***2 II. Was The Sentence Imposed On Mr. Dorcely Unreasonable Because It Was Based On Acquitted Conduct Considered Under A Preponderance Standard And Was Four Times The Length Of The Otherwise Applicable Sentence?**
**III. Did The Restitution Order Contravene The Victim and Witness Protection Act Of 1982 Because It Was Based On A Loss Amount That Was Unrelated To The Offense Of Conviction?**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

STATEMENT OF THE CASE

The Appellant, Daniel Dorcely, was named in a superseding indictment, along with two co-defendants on August 21, 2003 for conspiring to defraud the U.S. Government and to commit money laundering in the United States District Court for the District of Columbia, Case No. 1:01-cr-00454-RBW-4. Mr. Dorcely was also indicted for making a false statement. Mr. Dorcely was tried by a jury before Judge Reggie B. Walton beginning on January 8, 2004. On January 30, 2004, the jury convicted Mr. Dorcely only of making the false statement in violation of 18 U.S.C. § 1001. JA78. Over Mr. Dorcely's objections, on June 14, 2004, the District Court sentenced Mr. Dorcely to 24 months incarceration and restitution in the amount of $63,315.51. JA87. Mr. Dorcely timely filed a notice of appeal of that sentence on June 4, 2004, entered on June 15, 2004, and an amended notice of appeal of his sentence on June 15, 2004, entered on June 16, 2004. JA80; JA88. This Court vacated and remanded his sentence on March 11, 2005, in light of *United States v. Booker.* On July 19, 2005, Mr. Dorcely was again sentenced to 24 months incarceration and restitution in the amount of $63,315.51. **\*3** JA24. Mr. Dorcely timely filed a notice of appeal of this sentence on July 21, 2005, entered on July 25, 2005. JA 117.

STATEMENT OF FACTS

Investigation and Trial

In April 2000, Daniel Dorcely, the owner of a small cellular-telephone company in financial straits, decided to enlist in the military, in part to assure a steady means of support for his wife and three children. Before beginning basic training at Fort Benning, Georgia, he entrusted his business affairs, including the management of his company's bank account, to his younger cousin, Stateson Frano is. JA142. Mr. Dorcely made his cousin a signatory on the company bank account under Frano is' assumed name, Tyrone Wallace.[FN2]

> FN2. Mr. Dorcely was born and raised in Haiti but immigrated to the United States and became a U.S. citizen. JA172. At that time, Mr. Frano is, also of Haitian descent, was not a U.S. citizen.

Unbeknownst to Mr. Dorcely, Frano is and two co-conspirators, John B. Holmes and an unknown employee of the United States Department of Education (""DOE''), were planning a scheme to defraud DOE of monies earmarked for grants to school districts. In furtherance of this conspiracy, the co-conspirators diverted approximately $925,000 in government funds to Mr. Dorcely's company bank account and began systematically looting the account for their own benefit. **\*4** JA131; JA169. They were caught after drawing the suspicion of a luxury car salesman, who contacted the FBI about the men. JA127.[FN3]

> FN3. Holmes later was found to have simultaneously masterminded a similar conspiracy using the business account of another individual. JA169.

After tracing the funds to Mr. Dorcely's account, FBI investigators interviewed Mr. Dorcely on April 18, 2000 at Fort Benning. JA156. In a misguided attempt to protect

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his cousin, Mr. Dorcely initially told the FBI that he did not know Tyrone Wallace, even though he knew it was his cousin's assumed name. *Id.* Subsequently, Mr. Dorcely corrected his statement and fully cooperated with investigators as they pursued Frano is and Holmes and recovered much of the stolen grant money. *Id.*[FN4] At all times, Mr. Dorcely has denied any involvement in, or awareness of, the conspiracy. It is undisputed that Mr. Dorcely received no part of the monies diverted by the conspirators or otherwise benefited from the scheme in any way. JA150.

> FN4. The government apparently never identified the DOE employee involved in the scheme.

Nevertheless, on September 5, 2002, Mr. Dorcely was indicted, along with Frano is and Holmes, on charges of conspiring to defraud the government in violation of 18 U.S.C. § 371 and to commit money laundering in violation of 18 U.S.C. §§ 1956 and 1957. Mr. Dorcely also was charged with making a false statement to a law enforcement officer, in violation of 18 U.S.C. § 1001, for **\*5** initially having denied knowing Tyrone Wallace.[FN5] All three men pleaded not guilty, although Frano is later changed his plea to guilty, after entering into an agreement with the government shortly before trial.[FN6]

> FN5. A superseding indictment was also filed on August 21, 2003 adding an additional charge of conspiracy to commit money laundering and aiding and abetting in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 2. JA165.

> FN6. *See United States v. Stateson Frano is,* Minute Entry Order, No. 01cr00454 (D.D.C. June 4, 2004) (JA16).

Daniel Dorcely and John Holmes were tried together in January 2004 before Judge Reggie B. Walton and a jury. The trial lasted ten days. The government introduced substantial evidence of the involvement of Frano is and Holmes in the scheme alleged in the indictment. As for Mr. Dorcely, the government's sole evidence of involvement in that scheme consisted of testimony by a bank employee that, when Mr. Dorcely made the arrangements to add Frano is/Wallace as a signatory on the account, Mr. Dorcely had informed the employee that some money would be coming into the account as a result of an anticipated phone contract with a school. JA128-30. With regard to the false statement charge, the evidence consisted of the testimony of the federal investigator to whom Mr. Dorcely had denied knowing Tyrone Wallace. JA131B-31C.

On January 30, 2004, the jury returned a verdict, finding Mr. Dorcely guilty on the false-statement charge, but acquitting him of all conspiracy charges. Pending sentencing, Mr. Dorcely remained on release. JA78.

**\*6** The June 4, 2004 Sentencing

On June 4, 2004, the District Court held a sentencing hearing. Pursuant to the then-binding Federal Sentencing Guidelines, the base sentencing range applicable to Mr. Dorcely's false-statement conviction was 0-6 months.[FN7] The government, however, contended that the District Court could find, by a preponderance of the evidence, that Mr. Dorcely was a party to the conspiracy, even though the jury had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

acquitted Mr. Dorcely on those charges. JA 135-36.

> FN7. The applicable base offense level for 18 U.S.C. § 1001 was 6, and given that this was a first-time offense, the applicable criminal history category was I. See U.S.S.G. § 2F1.1(a); JA171-72.

Accordingly, the government argued, the appropriate sentencing range was 24-30 months. JA 136-37; JA171; JA175.[FN8] The government also sought restitution from Mr. Dorcely in the amount of $63,315.51, representing funds transferred from DOE to Mr. Dorcely's company bank account and withdrawn and spent by Frano is and Holmes (although not Mr. Dorcely). JA144-45. It is undisputed that this loss occurred before Mr. Dorcely's initial interview by the FBI and that no further sums were transferred after that time, the account having been frozen by the bank. JA153.

> FN8. The government contended that the base offense level should be increased to 17 (an 11-level increase) because of a ""specific offense characteristic'' consisting of the loss caused by the conspiracy ($953,328.47), pursuant to U.S.S.G. § 2F1.1 (b)(I)(L).

Mr. Dorcely's trial counsel objected to the government's sentencing position:
*7 For the probation office to try to hold Mr. Dorcely accountable for the entire loss amount ... that's unconscionable .... All he did was make essentially a false statement.... Nullifying the jury verdict and putting Mr. Dorcely in essentially the same position he would have been in had he been convicted.... And that's terribly unfair, and it doesn't serve the ends of justice.

JA133-34.

The District Court rejected Mr. Dorcely's position and ruled that ""under the standard that I have to apply, that being preponderance, [] the evidence is sufficient or was sufficient to establish that Mr. Dorcely was involved in the scheme.'' JA 138-39 (Walton, J.). Accepting the government's recommendations, the District Court sentenced Mr. Dorcely to a term of imprisonment of 24 months and ordered him to pay restitution in the amount of $63,315.51. JA144-45.[FN9] Mr. Dorcely's incarceration began on September 6, 2005. JA120.

> FN9. Frano is was sentenced to 41 months of imprisonment and ordered to pay restitution in the amount of $63,315.51. Holmes received concurrent sentences of 60 months, 175 months, and 60 months incarceration for his involvement in the two simultaneous conspiracies and was ordered to pay restitution in the amount of $201,513.11, reflecting the losses resulting from the conspiracies.

Mr. Dorcely timely filed a notice of appeal of his sentence on June 4, 2004, and an appeal of his final judgment on June 24, 2004. He filed a motion to reconsider sentencing on June 25, 2004, again arguing that the District Court's reliance on facts that ""were neither admitted by petitioner nor found by a jury'' violated Mr. Dorcely's constitutional rights. See JA114.

*8 On August 2, 2004, the Supreme Court granted certiorari in *United States v. Book-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*er and United States v. FanFan,* 542 U.S. 956 (2004), on the question whether its decision in *Blakely v. Washington,* 542 U.S. 296 (2004), applied to the United States Sentencing Guidelines. On August 6, 2004, the District Court stayed execution of Mr. Dorcely's sentence pending a decision in *Booker* and *FanFan.* See JA90. On November 2, 2004, Mr. Dorcely filed an unopposed motion in this Court requesting that his appeal be held in abeyance pending resolution of *Booker* and *FanFan*, which relief this Court granted on November 10, 2004. *See* Unopposed Motion to Stay Briefing Pending Decisions in *U.S. v. Booker* and *U.S. v. FanFan* (D.C. Cir. Nov. 2, 2004); Order (D.C. Cir. Nov. 10, 2004).

On January 12, 2005, the Supreme Court issued its decision in *Booker* and *FanFan* ruling that *Blakely* applied to the Sentencing Guidelines. 543 U.S. 220, 125 S. Ct. 738. On February 16, 2005, Mr. Dorcely filed a motion in this Court to vacate the judgment and remand the case to the District Court for resentencing in light of the Supreme Court's decision. *See* Motion to Govern Future Proceedings (D.C. Cir. Feb. 16, 2005). On March 11, 2005, this Court granted the request to vacate Mr. Dorcely's judgment and remanded the case for resentencing. *See* Order (D.C. Cir. May 11, 2005).

***9** The July, 19, 2005 Resentencing

On July 19, 2005, the District Court, Judge Walton again presiding, held a resentencing hearing. Judge Walton indicated his belief that, despite the Supreme Court's decision in *Booker*, he was still permitted to consider facts allegedly implicating Mr. Dorcely in the conspiracy, and to do so under a preponderance standard. Again, Mr. Dorcely's counsel objected, arguing, ""what *Booker* is saying is that if the jury did not find these facts [underlying the acquitted charge], then those facts cannot be held against the defendant.'' JA149. He further argued:
The jury convicted [Mr.] Dorcely of lying to an F.B.I. agent, one single count. All the issues ... that the court is bringing out were issues that were part of the conspiracy. Mr. Dorcely wasn't convicted of that, despite the evidence that the Government put on. So in the context of it, I don't see how the Court can then assess Mr. Dorcely full responsibility for the total amount of loss when the jury did not assess him for any of the amount of loss.

JA149-50.

The District Court overruled the objection, stating: ""The law has always been that even if someone is found not guilty, that if, nonetheless, there was a quantum of evidence sufficient to show by a preponderance that they did the act, that the court could, nonetheless, consider that in deciding what the sentence within the range of appropriate sentence could be.'' JA151. Accordingly, the District Court specifically found, applying a preponderance standard, that Mr. **10** Dorcely participated in the fraud conspiracy, and the court expressly relied on that finding to resentence Mr. Dorcely to exactly the same sentence as before - a 24-month term of imprisonment and restitution in the amount of $63,315.51. JA159-61.

On July 21, 2005, Mr. Dorcely timely filed a notice of appeal. JA117.

SUMMARY OF ARGUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Sixth Amendment guarantees a criminal defendant's right to trial by jury, and the Fifth Amendment ensures against punishment for a crime unless that crime has been established beyond a reasonable doubt. These fundamental rights of an accused are violated, and the jury's role as trier of guilt or innocence is nullified, when, as in this case, a court disregards a verdict of acquittal and imposes a sentence substantially based on the *court's* determination, applying a preponderance-of-the-evidence standard, that the defendant committed the offense conduct of which the jury *acquitted* him (""acquitted conduct''). See infra Part I.

In addition to violating the Fifth and Sixth Amendments, a sentence based substantially on acquitted conduct fails *per se* to satisfy the requirement of reasonableness, applicable to all federal sentences under the remaining portions of the Sentencing Act. Moreover, even if such a sentence is not *per se* unreasonable, the sentence imposed in this case is unreasonable because it was at least four times **\*11** the duration of the sentence that would have been imposed absent consideration of acquitted conduct. See infra Part II.

Finally, under the Victim and Witness Protection Act of 1982, restitution may be imposed only for a loss associated with the offense of conviction. The District Court order that Mr. Dorcely pay restitution based solely on a loss allegedly resulting from the criminal conduct of which the jury acquitted him violates the Act, as well as the Fifth and Sixth Amendments and the requirement of reasonableness. See infra Part III.

ARGUMENT

Standard of Review

At sentencing, Mr. Dorcely ""made a sufficient objection in the district court'' to preserve all issues raised in this appeal. *United States v. Coumaris, 399 F.3d 343, 351 (D.C. Cir. 2005)*. Accordingly, this Court should review the lower court's sentence under the harmless-error standard of review, pursuant to which it is the government's burden to prove beyond a reasonable doubt that the errors complained of did not contribute to the sentence imposed. *Id.; see Chapman v. California, 386 U.S. 18 (1967)*.

**\*12** I. The District Court Violated Mr. Dorcely's Fifth And Sixth Amendment Rights By Imposing A Sentence Based Substantially On Acquitted Conduct, Assessed Under A Preponderance-Of-The-Evidence Standard

A. The Fifth And Sixth Amendments Guarantee That All Facts Necessary To Support A Sentence Be Found By A Jury Beyond A Reasonable Doubt

The Sixth Amendment of the Constitution provides: ""In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury.'' *Apprendi v. New Jersey, 530 U.S. 466, 476 (2000)*. The Sixth Amendment's guarantee of trial by jury in criminal cases rests on centuries of common law and exists "" "to guard against a spirit of oppression and tyranny on the part of rulers' ' and " "as the great bulwark of [our] civil and political liberties.' ' *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at 477 (2000) (quoting 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873)).

The Sixth Amendment's guarantee of trial by jury means that " "the truth of *every* accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours.' " *Id.* at 477 (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)); (emphasis added); *accord* Blakely, 542 U.S. at 301-02. Through this guarantee, the Framers intended to protect, not only the individual interests of the accused, but also the vital role as jurors that *all* citizens would play in the administration of justice. ""Just as suffrage **\*13** ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.'' *Id.* at 306 (2004); *see,* Jackie Gardina, *Compromising Liberty: A Structural Critique of the Sentencing Guidelines,* 38 U. Mich. J. L. Reform 345, 347 (Winter 2005) (contending that the federal sentencing guidelines-in mandatory or advisory form-violate separation of powers principles, and advocating for a ""guideline jury system''). The inclusion of the jury-trial guarantee in the Bill of Rights was borne of the Framers' " "unwilling[ness] to trust the *government* to mark out the role of the jury.'' Blakely, 542 U.S. at 308 (emphasis added).

The Fifth Amendment provides that ""no person shall be deprived of life, liberty, or property, without due process of law.'' Due process requires, in criminal cases, that guilt be established beyond a reasonable doubt before punishment may be imposed. Booker, 543 U.S. 220, 125 S. Ct. at 748 (""It has been settled throughout our history that the Constitution protects every criminal defendant "against conviction, except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' '') (citing In re Winship, 397 U.S. 358, 364 (1970)).

In its recent trio of decisions in *Apprendi, Blakely,* and *Booker,* the United States Supreme Court has recognized the application of the Fifth and Sixth Amendment guarantees to facts necessary to support a sentence. In each case, the **\*14** Court has overturned a sentence imposed substantially on the basis of facts found solely by the trial court, applying a preponderance-of-the-evidence standard, rather than by the jury, applying a beyond-a-reasonable-doubt standard.

In *Apprendi,* the Court considered the constitutionality of New Jersey's hate-crime statute, which allowed a sentencing judge to increase a defendant's sentence for certain crimes if the judge found by a preponderance of the evidence that the crime was committed with the purpose of intimidating a person or group on the basis of any of several specified characteristics, including race. 530 U.S. 466 (2000). In that case, the defendant fired several shots into the home of an African-American family whom he did not want living in the neighborhood because of their race.[FN10] Apprendi was charged with, and pleaded guilty to, multiple counts related to that shooting, but the indictment did not allege that he acted with a racially biased purpose, and Apprendi did not admit that fact in his plea agreement. *Id.* The trial court, however, found that the evidence presented by the government at the plea

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

hearing established by a preponderance that Apprendi had acted with a racial purpose, and on that basis increased Apprendi's sentence pursuant to the hate-crimes law. *Id.*

    FN10. Charles Apprendi later retracted this statement.

***15** The Supreme Court struck down the hate-crime statute and overturned the sentence based on it as violative of the Fifth and Sixth Amendments. The Court unequivocally stated:
"It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established beyond a reasonable doubt.'

*Id.* at 490 (quoting *Jones v. United States,* 526 U.S. 227, 252-53 (1999)). The Court based this holding on historic English practice long antedating the Constitution:
"Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision'.... If, then "upon an indictment under the statute, the prosecutor prove the felony to have been committed, but fail in proving it to have been committed under the circumstances specified in the statute, the defendant shall be convicted of the common law felony only.'

*Id.* at 480-81 (quoting 2 M. Hale, Pleas of the Crown *170; J. Archbold, Pleading and Evidence in Criminal Cases 44, 51, 188 n.8 (15th ed. 1862)). New Jersey's hate-crime law, the Court found, thus was an ""unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system.'' *Id.* at 497.

**16** Likewise, in *Blakely,* the Supreme Court invalidated a state sentencing statute that permitted a judge to impose a sentence above the statutory maximum if the judge found that the defendant acted with ""deliberate cruelty.'' 542 U.S. at 313. In that case, the defendant pled guilty to kidnapping his estranged wife. Based on the estranged wife's testimony regarding that kidnapping at the sentencing hearing, the judge found Blakely to have acted with deliberate cruelty and sentenced him to 37 months above the statutory maximum for his crime. *Id.*

The Supreme Court construed the statutory maximum sentence as ""the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'' *Id.* at 303. The Court held that Blakely's sentence violated his jury-trial right because the finding of deliberate cruelty had neither been admitted by the accused nor found by the jury. *Id.* As the Court stated: ""When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment' and the judge exceeds his proper authority.'' *Id.* at 304 (quoting 1 J. Bishop, Criminal Procedure § 87, at 55 (2d ed. 1872)).

Most recently, in *Booker,* the Supreme Court addressed the application of the rule in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Apprendi* and *Blakely* to the mandatory federal Sentencing Guidelines. In *Booker,* the defendant was indicted and convicted for trafficking in a certain quantity of illegal drugs. The statutory maximum sentence for drug trafficking in ***17** that quantity was life imprisonment, but the Guidelines range for that quantity was 210-262 months. At the sentencing hearing, however, the government proffered evidence that the quantity of drugs involved was actually substantially larger than the amount for which the defendant was charged and convicted. The trial court, finding that the presence of the larger quantity had been shown by a preponderance of the evidence, applied the Guidelines range for that larger quantity and increased the sentence to 360 months, or roughly ten years more than the sentence would have been for the lesser quantity.

Affirming the importance of the guarantee that " "the jury would still stand between the individual and the power of the government,' ' the Court broadly held that " "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.' ' *Booker, 543 U.S. 220, 125 S.Ct. at 756.* The Supreme Court held that, insofar as they were mandatory, the Guidelines were unconstitutional because they required, in Booker's case, among others, the imposition of a sentence based in part on facts not found by the jury beyond a reasonable doubt:
The Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to "the ***18** unanimous suffrage of twelve of his equals and neighbours' rather than a lone employee of the State.

*Id* at 752 (internal citation omitted).

In short, the Supreme Court has made it abundantly clear that the accused is entitled to have facts essential to a sentence determined by a jury applying a beyond-a-reasonable-doubt standard.

B. A Court's Reliance, For Sentencing Purposes, On Evidence Of Acquitted Conduct Assessed Under A Preponderance Standard Violates The Fifth And Sixth Amendments

A case, such as this, presents, if anything, an even more egregious violation of a defendant's Fifth and Sixth Amendment rights than did *Apprendi, Blakely,* or *Booker.* Here, the trial court increased the sentence, not because of conduct that the jury never considered, but because of *charged* conduct that the government attempted to *prove* at trial and for which the jury *acquitted* the defendant, thereby specifically rejecting the government's case. *See, e.g.,* JA148 (Walton, J.) (" "It's the loss [from the conspiracy] that bumps up the sentencing guidelines.' ').

In *Blakely,* the Supreme Court denounced precisely this sort of judicial bootstrapping, posing an analogous hypothetical case in which a court imposed a sentence for murder after the jury convicted the defendant only of illegally possessing the firearm used to commit the alleged murder. The Court considered such a sentence an " "absurd result.' ' *542 U.S. at 306.* The definition of a " "statutory maximum' ' adopted by the Supreme Court in *Blakely*-" "the maximum sentence a ***19** judge may impose

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

solely on the basis of *the facts reflected in the jury verdict* or admitted by the defendant''-reinforces this point. *Id* at 303 (emphasis added). When a jury convicts on one charge and acquits on another, the facts deemed to be established by the jury, as " "reflected'' in that verdict, manifestly are limited to the facts necessary to the conviction. The verdict cannot be construed to establish any other facts.[FN11]

> FN11. Similarly, in *Apprendi,* the Court drew a sharp distinction, for sentencing purposes, between a prior *conviction* and facts that were never found by a jury to constitute offense conduct:
> [T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.
> 530 U.S, at 496.

Several district courts also have suggested that a sentencing court's consideration of *acquitted* conduct (as contrasted with conduct that simply was never presented to the jury) poses a unique threat to the accused's rights. For example, in *United States v. Pimental,* 367 F.Supp. 2d 143 (D. Mass. 2005), the court refused to consider at sentencing evidence related to a conspiracy, when the defendant had only been convicted of two counts of mail fraud. The court observed:
Here, the facts the government sought to have me consider are not facts enhancing the crime of conviction, like the presence of a gun or the vulnerability of the victim. Rather, they are facts comprising different **\*20** crimes, each in a different count. And the jury acquitted of those counts.

*Id.* at 153. To consider those facts for sentencing purposes under a preponderance standard, the court suggested, would ""trivialize "legal guilt' or "legal innocence.' '' *Id.* at 152.

Likewise, in *United States v. Coleman,* the court expressed the view that " "considering acquitted conduct would disregard completely the jury's role in determining guilt and innocence.'' 370 F.Supp. 2d 661, 672 (S.D. Ohio 2005). Otherwise, ""[t]he government, "having failed to meet its burden of proof at trial, is permitted a second bite at the apple, a chance to make its case before an alternative decisionmaker, the sentencing judge.' '' *Id.* (quoting Barry J. Johnson, *If at First You Don't You Don't Succeed – Abolishing the Use of Acquitted Conduct in Guidelines Sentencing, 75 N.C.L. Rev. 153, 182–83 (1996)*); *see also* Hon. Charles R. Breyer, U.S. District Judge (N.D. Cal.), Remarks in Robert Weisberg, *Excerpts from ""The Future of American Sentencing: A National Roundtable on Blakely,*'' 2 Ohio St. Crim. L. 619, 655 (Spring 2005) (""I would like to get rid of the idea that you could possibly use acquitted conduct.'').

In these decisions, and in a decision by a district judge in this Circuit issued after the decision below, the courts have determined to impose a heightened standard of proof on acquitted conduct, while reserving on the issue of whether **\*21** such con-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

duct may be considered at all.[FN12] *United States v. Baldwin*, 389 F. Supp. 2d 1, No. 02-0323, 2005 U.S. Dist. LEXIS 21016, at *1-2 (D.D.C. 2005) (emphasis added) ("'The burden of proof to be applied on all issues at the sentencing ... under *United States v. Booker*, 125 S. Ct. 738 (2005), and the *Fifth and Sixth Amendments to the United States Constitution,* will be proof by a preponderance of the evidence, except with respect to (a) acquitted conduct (if it may be considered at all), where the standard would have to be proof beyond a reasonable doubt.''); *accord, Coleman,* 370 F. Supp. 2d at 668 (acquitted conduct is "'not appropriately considered in sentencing under a preponderance of the evidence standard, but rather under a reasonable doubt standard''); *Pimental,* 367 F. Supp. 2d at 154 ("'If the Guidelines continue to be important, if facts the Guidelines make significant **\*22** continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.'').

> FN12. More broadly, some courts and at least one individual Justice, as well as legal scholars, have advocated application of a reasonable-doubt standard to *any* facts on which the government seeks to rely to increase a defendant's sentence. *E.g., United States v. Huerta-Rodriguez,* 355 F. Supp. 2d 1019, 1028 (D. Neb. 2005) ("'In order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence.''); *Booker,* 543 U.S. 220, 125 S.Ct. at 798 n.6 (Thomas J. dissenting in part, concurring in part) ("'The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant.''); Margareth Etienne, *Parity, Disparity, and Adversality: First Principles of Sentencing,* 58 Stan. L. Rev. 309, 316 (Oct, 2005) (use of the preponderance standard at sentencing is "'dangerous and unnecessary'' and compromises the reliability of the result; relevant conduct "'should still be required to meet the reasonable doubt standard to ensure the reliability of the evidence''); Douglas A. Berman, *Sentencing Law and Policy, available at* http:// sentencing.typepad.com (Dec. 1, 2005 16:31 EST) ("'After *Booker,* beyond a reasonable doubt (and not preponderance of the evidence) should be the applicable standard of proof for disputed facts at federal sentencing.'').

It is Mr. Dorcely's position that consideration of acquitted conduct, for sentencing purposes, violates an accused's jury-trial rights, regardless of the standard of proof under which that conduct is considered.[FN13] Indeed, such consideration does not merely "'trivialize[] 'legal guilt' or 'legal innocence,' '' *Pimental,* 367 F. Supp. 2d at 152, but rather completely *nullifies* the jury's verdict, making a mockery of the principle that "'the truth of every accusation'' should be "'confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours.'' *Apprendi,* 530 U.S. at 477. But even if this Court determines that acquitted conduct may be considered at sentencing, it should hold, with Judge Friedman in *Baldwin* and the district courts in *Pimental* and *Coleman* (and *contra* Judge Walton in the decision on review) that such conduct must be established beyond a reasonable doubt. On that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

basis alone, the sentence imposed by the court ***23** below is unconstitutional because the evidence of acquitted conduct was evaluated under a mere preponderance-of-the-evidence standard.[FN14]

> FN13. Among other reasons, permitting consideration of acquitted conduct under a preponderance standard allows, or even invites, the trial court to disagree with the jury's verdict.

> FN14. The decisions in United States v. Watts, 519 U.S. 148 (1997), and United State. v. Boney, 977 F.2d 624 (D.C. Cir. 1992), are not to the contrary. Those cases merely hold that the Double Jeopardy Clause did not bar consideration of acquitted conduct for sentencing purposes under the Guidelines. In neither case was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the *Sixth Amendment.* See Booker, 543 U.S. 220, 125 S.Ct. at 754; United States v. Edwards, 424 F.3d 1106, 1109 (D.C. Cir. 2005) (per curiam). In this Court's recent decision in *Edwards,* this Court expressly acknowledged that the Supreme Court has not resolved the ""important question'' of whether the practice of considering acquitted conduct at sentencing ""violates the Sixth Amendment.'' Edwards, 424 F.3d at 1108-1109.
> Nor is it relevant that Mr. Dorcely's sentence remained within the statutory maximum for the offense of making a false statement to a law enforcement officer (five years' imprisonment), any more than it was relevant in *Booker* that the disputed sentence was within the statutory maximum (life imprisonment) for the offense of conviction. The question is whether the Constitution permitted the court below to impose a greater sentence *within* that maximum than it otherwise would have imposed absent consideration of acquitted conduct. As the *Booker* Court stressed, the principles that militate against such an outcome are ""not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance.'' 543 U.S. 220, 125 S. Ct. at 752.

## II. The Sentence Imposed On Mr. Dorcely Was Unreasonable Because It Was Based On Acquitted Conduct Considered Under A Preponderance Standard And Was Four Times The Length Of The Otherwise Applicable Sentence

In addition to the constitutional constraints on sentencing, the Supreme Court has made clear that every federal sentence must meet the requirement of ""reasonableness.'' Booker, 125 S. Ct. at 766. This requirement, which is also the applicable appellate review standard for sentencing, is implicit in the portions of the Sentencing Act that remain intact in the wake of *Booker* and is ""consistent with appellate sentencing practice during the last two decades.'' *Id.; see* United States v. Price, 409 F.3d 436 (D.C. Cir. 2005) (vacating the sentence and remanding for ***24** resentencing because the sentence was unreasonable); United States v. Gone, No. 05-30085, 2005 WL 2871944 (9th Cir. Nov. 1, 2005) (same). Thus, the upper limit of a lawful sentence is no longer the ""maximum term of imprisonment'' under a statute that sets out a generally broad range (that is, the ""statutory maximum''), but the highest point within that range that is ""reasonable.'' Booker, 543 U.S. 220, 125 S. Ct. 748-49; *accord,* Huerta-Rodriguez, 355 F. Supp. 2d at 1024-25 (""It cannot be seriously disputed, for example, that it would be unreasonable to impose the imposi-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion of the maximum sentence of twenty years on a first-time offender for distribution of a small amount of a controlled substance.'').

It is Mr. Dorcely's position that *any* substantial increase in a sentence based on acquitted conduct should be deemed unreasonable *per se,* regardless whether such an increase is determined to violate the accused's constitutional rights. See Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1714 (1992) (the notion that a sentence could be increased based on acquitted conduct would ''"astonish'' both ''"ordinary citizens'' and ''"most lawyers'').

But whether all sentences increased on the basis of acquitted conduct are unreasonable *per se,* the sentence imposed in this case plainly is. The trial court's reliance on acquitted conduct in this case did not merely incrementally add to the sentence. Rather, it resulted in at least a *fourfold* increase in the term of **\*25** imprisonment (24 months compared with a range of 0-6 months) and a substantial restitution award (over $63,000 instead of $0).[FN15] This marked disparity between the sentence that Mr. Dorcely received and the highest sentence he could have received had the trial court not relied on acquitted conduct is proportionally greater than the differences in *Apprendi* (12 years versus 10 years), *Blakely* (90 months versus 53 months), or *Booker* (360 months versus 262 months). When consideration of acquitted conduct results in a fourfold increase in the sentence and a substantial restitution order, that is a paradigmatic instance of a sentencing factor becoming ''"a tail which wags the dog of the substantive offense.'' *McMillan v. Pennsylvania,* 477 U.S. 79, 87 (1986). Such a sentence is manifestly unreasonable. What is reasonable is to sentence Mr. Dorcely for the crime for which he was actually convicted - making a false statement - which warrants a sentence of 0-6 months of imprisonment and no more.

> FN15. *Booker* rendered the Guidelines advisory, but it did not make them irrelevant. Sentencing courts are still ''"require[d]... to consider Guidelines ranges.'' 543 U.S. 220, 125 S. Ct. at 757. Sentences within the applicable advisory guidelines ranges are presumptively reasonable. See *United States v. Washington,* 404 F.3d 834, 850 (4th Cir. 2005); *United States v. Paulus,* 419 F.3d 693, 700 (7th Cir. 2005); *United States v. Lincoln,* 413 F.3d 716, 717-18 (8th Cir. 2005); *Huerta-Rodriguez,* 355 F. Supp. 2d at 1025.

III. The Restitution Order Contravened The Victim And Witness Protection Act Of 1982 Because It Was Based On A Loss Amount That Was Unrelated To The Offense Of Conviction

The principles underlying the restitution provisions of the Victim and Witness Protection Act of 1982 (''"Act'') are akin to the principles animating the **\*26** Supreme Court's decisions in *Apprendi, Blakely,* and *Booker*: restitution may be awarded ''"only for the loss caused by the specific conduct that is the base of the *offense of conviction*.'' *Hughey v. United States,* 495 U.S. 411, 420 (1990) (emphasis added) (reversing an order requiring the defendant to pay restitution for counts other than those of which he was convicted); *accord, e.g., United States v. Comer,* 93 F.3d 1271, 1279 (6th Cir. 1996) (vacating restitution order because it was ''"based on

losses occasioned by conduct that was not charged in the indictment and losses that resulted from a charge of which the defendant was acquitted''').

Restitution is barred in this case, not only by the Sixth Amendment, but also by the Act because the government did not introduce any evidence of financial loss resulting from the offense of conviction, namely, making a false statement to the F.B.I. To the contrary, the government conceded that *all* the losses that occurred in this case took place *before* Mr. Dorcely was first interviewed by investigators:
Court: There was activity that took place regarding those funds after the lie?
Government: Well, not the funds. The funds had been frozen.

JA153. The jury made no finding regarding the amount of any loss associated with Mr. Dorcely's conduct, nor was it asked to make such a finding, monetary loss not being an essential element of the offense of conviction. Finally, Mr. Dorcely ***27** denied having caused any loss or having received or benefited from any of the transferred funds.

In the *Baldwin* case, which involved analogous facts, Judge Friedman found that the defendant was liable only for the loss amounts related to crimes for which he was convicted. *Baldwin,* 389 F. Supp. 2d, 2005 U.S. Dist. LEXIS 21016, at *5. Thus, the court declined to consider the loss allegedly resulting from the defendant's involvement in 11 mail-fraud counts on which he was acquitted.

Contrary to *Baldwin,* the District Court in this case ordered restitution in the amount of $63,315.51 against Mr. Dorcely even though he was acquitted of the conspiracy charges uniquely associated with that loss amount (or any loss amount). JA160. The District Court thereby violated Mr. Dorcely's rights under the Sixth Amendment and the Act.

CONCLUSION

For the foregoing reasons, Mr. Dorcely respectfully requests that this Court vacate the sentence and order of restitution and remand for resentencing in accordance with the advisory guideline range for the offense of conviction.

Appendix not available.

UNITED STATES OF AMERICA, Appellee, v. Daniel DORCELY, Appellant.
2005 WL 3598529 (C.A.D.C.)

Briefs and Other Related Documents [(Back to top)](#)

- [2006 WL 337589](#) (Appellate Brief) Reply Brief of Defendant-Appellant Daniel Dorcely (Feb. 7, 2006) Original Image of this Document with Appendix (PDF)
- [2006 WL 240581](#) (Appellate Brief) Brief for Appellee (Jan. 24, 2006) Original Image of this Document with Appendix (PDF)
- [05-3130](#) (Docket) (Aug. 26, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.