HONORABLE PAUL L. FRIEDMAN, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
OCT 27 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: <u>05-CR-370</u> |
| vs. | : | SSN: |
| SAFAVIAN, David Hossein | : | Disclosure Date: <u>September 21, 2006</u> |

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____          _____
**Prosecuting Attorney**                                    Date

### For the Defendant

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
(X) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_[signed]_  10/5/2006                    _[signed]_  OCT. 5, 2006
**Defendant**         Date                **Defense Counsel**         Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>October 05, 2006</u>, to U.S. Probation Officer <u>Renee Moses-Gregory</u>, telephone number <u>(202) 565-1348</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

By:  Richard A. Houck, Jr., Chief
     United States Probation Officer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>v.<br><br>DAVID HOSSEIN SAFAVIAN,<br><br>Defendant | Criminal No. 05-370 (PLF) |

**DEFENDANT DAVID SAFAVIAN'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Defendant David H. Safavian, through undersigned counsel, hereby submits the following Objections to the Presentence Investigation Report (the "Report") pursuant to Local Rule 32. Through these objections, Mr. Safavian seeks to correct material inaccuracies in the Report that may affect the Court's calculation of a just and appropriate sentence.

**Defense Objection 1:**

PSR at 2: "Education: Doctoral Degree (JD)"

Response: While the report accurately represents that Mr. Safavian has a doctoral degree (JD), it fails to mention that he also earned a post-doctoral L.L.M. (Masters of Laws in Taxation).

**Defense Objection 2:**

PSR at 1:   "**Related Cases:**   Jack A. Abramoff   06-001-01"

Response:   Defense objects to the PSR's characterization of another case involving Jack Abramoff as being a "related" case. PSR at 1. The government never filed a "related case" form in conjunction with the Abramoff Information. In addition, the Abramoff case was not assigned to Judge Friedman, as it would have if it were truly a related case. Local Rule LCvR 40.5(b)(1) ("At the time of returning an indictment the United States Attorney *shall* indicate, on a form to be provided by the Clerk, the name, docket number and relationship of any related case pending in this court or in any other United States District Court. The form *shall* be mailed to all defense counsel along with

the notification of the arraignment. Any objection by the defendant to the related case designation shall be served on the U.S. Attorney and filed with the Clerk within 10 days after arraignment.") (emphasis added). Accordingly, there are no "related" cases.

**Defense Objection 3:**

PSR at 3, ¶ 4: "Related Case" refers to the Jack Abramoff case.

Response:    The Jack Abramoff case is not a related case. See supra Def. Objection 2.

**Defense Objection 4:**

PSR at 3, ¶ 6: "From on or about May 16, 2002, to in or about January 2004, the defendant, David Hossein Safavian, was the Chief of Staff for the Administrator of the GSA."

Response:    Mr. Safavian served as the acting deputy chief of staff from May 2002 through July 26, 2002. Mr. Safavian carried out his official duties of the GSA Chief of Staff from July 27, 2002 until he left the agency to work at the Office of Federal Procurement Policy ("OFPP") in the Office of Management and Budget ("OMB"), in January 2004. Beginning in January 2004, Mr. Safavian was the Counselor to the Deputy Director of OMB for Management. He served in that role until he was confirmed in November 2004 as the Administrator for Federal Procurement Policy at the Office of Management and Budget.

**Defense Objection 5:**

PSR at 3, ¶6:    There is no accounting for Mr. Safavian's employment between January and November 2004.

Response:    During this time period, Mr. Safavian was employed as a "counselor" at the OMB, but was not yet confirmed as Administrator of OFPP.

**Defense Objection 6:**

PSR at 3, ¶6: "Within days of becoming Chief of Staff, the defendant began communicating with an old friend and former colleague, Jack Abramoff, a well-known and very successful lobbyist in Washington, DC."

Response Part 1: The defendant did not "begin" communicating with Jack Abramoff, but rather "continued" communicating with Abramoff as a former colleague and friend. The only correspondence from the defendant that the government put forth as evidence at trial "within days" of arriving at the GSA was a May 16, 2002 e-mail rejecting Abramoff's offer to host a party at Abramoff's restaurant and inviting Abramoff to a gathering at an alternate venue. Gov't Ex. 108.

Response Part 2: In accordance with objection 4, because Mr. Safavian did not officially obtain the title of GSA Chief of Staff until July 27, 2002, these communications with Mr. Abramoff did not occur "[w]ithin days" of Mr. Safavian becoming Chief of Staff.

**Defense Objection 7:**

PSR at 3-4, ¶ 7: "During the summer of 2002, GSA considered ways to develop NSWC-White Oak and the OPO."

Response: The GSA had been considering development of the OPO since 1999. As for White Oak, GSA had no plans to develop the Maryland property.

**Defense Objection 8:**

PSR at 4, ¶ 9: "On or about June 14, 2002, Abramoff invited the defendant to join him and others for a week long golf trip to Scotland in early August, where they would play golf at St. Andrews and then spend several nights in London, England."

Response, Part 1: Based on the itinerary for the trip that the government introduced into evidence at trial, see Gov't Ex. 125 (July 6, 2002 e-mail), the attendees were scheduled to play golf and stay in Scotland for only four nights, and five days, rather than a week.

Response, Part 2: The original invitation and itinerary also made no mention of spending any time in London, England, much less "several nights." See id. Mr. Safavian did not learn of the possibility of adding London to the trip until July 18, 2002, more than one month later. Gov't Ex. 132 (July 18, 2002 e-mail); 06.05.06 a.m. Tr. at 32:6-8.

**Defense Objection 9:**

PSR at 4, ¶ 10: "The defendant did not reveal to the ethics advisor, or any other GSA employee that Abramoff had enlisted the defendant's assistance in attempting to obtain leases at White Oak and OPO."

Response: Neither at the time of the ethics request on July 25, 2002, nor at any other time, did Mr. Abramoff ask Mr. Safavian to obtain a lease for him for either White Oak or the Old Post Office. We suggest at least the following revision: "The defendant did not reveal to the ethics advisor, or any other GSA employee that Abramoff had enlisted the defendant's assistance in gathering information about White Oak and OPO."

**Defense Objection 10:**

PSR at 4, ¶ 10: "Additionally, the defendant provided suggestions of how to draft the letter to GSA regarding the NSWC-White Oak lease."

Response: The evidence introduced by the government merely included defendant's "comments" concerning the letter. Gov't. Ex. 171.

- 3 -

**Defense Objection 11:**

PSR at 4, ¶ 11: "The total cost of the trip, which was paid for by funds Abramoff obtained from his Indian tribe lobbying clients, was in excess of $130,000. The defendant gave Abramoff a check for $3,100, which evidently covered the defendant's share of expenses associated with the trip."

Response, Part 1:   The factual portion of the presentence report is set forth in chronological order. In this paragraph, it is reported that the trip attendees left the United States for Scotland on August 3, 2002, that some of the attendees returned home (on an unreported date), and that Mr. Abramoff and Mr. Safavian returned to the United States on August 11, 2002. After giving the total cost of the trip, the report states that Mr. Safavian then gave Mr. Abramoff a $3,100 check, creating the appearance that the check was written *after* the total cost of the trip would have been known. It is undisputed, however, that Mr. Safavian paid Mr. Abramoff the $3,100 check the day the entire group originally left for Scotland on August 3, 2002. 06.02.06 a.m., Tr. p.81:2-10.

Response, Part 2:   The statement that the $3,100 check "evidently covered the defendant's share o f expenses associated with the trip" introduces an inflammatory, subjective element to the facts. Accordingly, the term "evidently" should be removed.

**Defense Objection 12:**

PSR at 5, ¶ 12: "On March 27 and April 25, 2003, the GSA-OIG Regional Inspector General for Investigations interviewed the defendant about his golf trip with Abramoff."

Response:   Although Mr. Safavian did speak with GSA-OIG Regional Inspector General Gregory Rowe on both dates recited above, Mr. Safavian was only asked about the Scotland trip during the March 27, 2003 interview. No questions about the Scotland trip or Abramoff were ever raised during the April 25, 2003 meeting. 5.31.06 p.m. Tr. at pp. 48-50.

**Defense Objection 13:**

PSR at 5, ¶ 12:   "The defendant also stated he had paid Abramoff for the total cost of the trip."

Response:   According to Mr. Rowe's testimony at trial, the representation was that the $3,100 covered Mr. Safavian's share of the lodging, the airfare, and the golf green fees. 5.31.06 p.m. Tr. at p. 47:15-19.

**Defense Objection 14:**

PSR at 5, ¶¶ 14, 16: The paragraphs refer to the SCIA requesting "information."

- 4 -

Response:    The SCIA did not request "information," but rather "documents." Gov't Ex. 80.

**Defense Objection 15:**

PSR at 6, ¶ 17: "Role Assessment" refers to Jack Abramoff case.

Response:    The charges at issue in this case are obstruction of justice and false statements, and there is no evidence that Jack Abramoff was involved in those offenses. Mr. Safavian has not been charged with accepting gratuities, bribes, or honest services fraud. Indeed, the Court expressly rejected the government's pre-trial contention that there had been a conspiracy of honest services fraud under Federal Rule of Evidence 801(d)(2)(E). See May 23, 2006 Order (Dock. No. 99). Therefore, the defense disputes any suggestion that Mr. Abramoff's conduct towards other government officials is relevant to this matter. See also Def. Objections 2 & 3.

**Defense Objection 16:**

PSR at 6, ¶ 17:    "In the course of [Mr. Abramoff's] actions, he conspired with others to provide things of value to government officials and others, one of whom was David Safavian."

Response, Part 1:    Because it is undisputed that Mr. Safavian paid Mr. Abramoff $3,100 before departing for Scotland, a figure provided by Mr. Abramoff and relied upon by Mr. Safavian, the record does not clearly establish what, if any, value Mr. Safavian received.

Response, Part 2:    In addition, the above phrasing creates the impression that Mr. Safavian conspired with Mr. Abramoff to provide things of value to government officials and others. However, as the Court previously determined, there was no showing that Mr. Safavian and Mr. Abramoff were involved in a conspiracy. See Opinion & Order, Docket No. 99, at 18-20; see also Objection 15.

**Defense Objection 17:**

PSR at 6, ¶ 19: While noting that "the Court proceeded over the trial, heard trial testimony, and will therefore be in the best posture to apply the enhancement," the presentence report nevertheless includes the two-level enhancement for obstruction of justice.

Response:    An enhancement for obstruction of justice under § 3C1.1 is not warranted because the government's mere assertion that Mr. Safavian "repeatedly provided perjurious testimony" does not come close to amounting to "clear and convincing" evidence of perjury based on independent inquiry. The mere fact that Mr. Safavian was found guilty of the underlying charges does not translate into a perjury enhancement under this standard. See Def. Sentencing Mem. at 22-25 (discussing the inapplicability of

the obstruction of justice enhancement and citing cases). The presentence presumption should thus be that the enhancement will not apply.

**Defense Objection 18:**

PSR at 6, ¶ 20: The presentence report fails to apply the acceptance of responsibility reduction.

Response: The fact that Mr. Safavian exercised his constitutional right to trial does not preclude application of the acceptance of responsibility reduction. See Def. Sentencing Mem. at 32-34 (discussing Mr. Safavian's acceptance of responsibility and citing cases).

**Defense Objection 19:**

PSR at 6-7, ¶ 22: "Counts Two and Five charge a violation of 18 USC § 1001(a)(1). These offenses are grouped together pursuant to §3D1.2(d), because the offense level is determined largely on the basis of the total amount of harm or loss and the offense behavior was ongoing or continuous in nature."

Response: Counts Two and Five should be grouped with Counts One and Three pursuant to USSG § 3D1.2(b) because they involve the same victim, the United States or society, and constitute part of a common scheme or plan. See Def. Sentencing Mem. at 17-22 (discussing the application of the Sentencing Guideline grouping rules and citing cases).

In addition, because Counts Two, Five, *and Three* can be grouped together pursuant to § 3D1.2(d), and Counts One and Three can be grouped together pursuant to § 3D1.2(b), all four counts should be grouped in a single group through successive application of multiple subsections of § 3D1.2 (subsections (b) and (d)). See USSG § 3D1.2 cmt. n.6-7; Def. Sentencing Mem. at 17-22.

**Defense Objection 20:**

PSR at 7, ¶ 27: Report increases offense level by two under § 3C1.1 (obstruction of justice).

Response: See supra Def. Objection 17; Def. Sentencing Mem. at 22-25.

**Defense Objection 21:**

PSR at 7, ¶ 28: "Adjusted Offense Level (Subtotal):    14"

Response: The adjusted offense level should be 12, before downward departures and variances, see infra Def. Objection 39, because of the grouping considerations identified in Objection 19 and the fact that a § 3C1.1 enhancement is not warranted. See Def. Objections 17-20; Def. Sentencing Mem. at 17-25.

**Defense Objection 22:**

PSR at 7, ¶ 33: Report increases offense level by two under § 3C1.1 (obstruction of justice).

Response:   An upward adjustment as a § 3C1.1 enhancement is not warranted. See supra Def. Objections 17, 20; Def. Sentencing Mem. at 22-25.

**Defense Objection 23:**

PSR at 7, ¶ 34:   "Adjusted Offense Level (Subtotal): 8"

Response:   The adjusted offense level should be 6 because a § 3C1.1 enhancement is not warranted.

**Defense Objection 24:**

PSR at 7-8, ¶¶ 35-41:   "Multiple Count Adjustment"

Response:   A Multiple Count Adjustment is not warranted because all four counts should be included in a single group. See Def. Sentencing Mem. at 17-22.

**Defense Objection 25:**

PSR at 8, ¶ 44:   "Total Offense Level: 15"

Response:   The Total Offense Level should be a 12, before downward departures and variances, see infra Def. Objection 39, as there should not be a two-level enhancement under § 3C1.1, or an enhancement under § 3D1.4 for multiple counts. See Objections 17-24.

**Defense Objection 26:**

PSR at 9, ¶ 49: "The defendant's mother, age 51, resides at 7733 Grays Drive, Grosse Ile, Michigan. She has retired from her position in labor relations under the presidency of Gerald Ford."

Response:   Mr. Safavian's mother's age is 61, not 51. Also, she previously worked for Ford Motor Company, not President Gerald Ford.

**Defense Objection 27:**

PSR at 11, ¶ 60: "[Defendant] now consumes alcohol 'a couple of times weekly,' usually enjoying an alcoholic beverage with his dinner. He does not drink until intoxicated. He last consumed alcohol on July 25, 2006."

Response: Mr. Safavian currently consumes alcohol on a daily basis, typically with his dinner and occasionally otherwise.

**Defense Objection 28:**

PSR at 11, ¶ 64: "According to the defendant, in 2002, he attended and completed a twenty-hour course as a reserve officer from the Institute of Police Science."

Response:   In fact, Mr. Safavian attended two (not one) 20-hour courses at the Institute of Police Sciences in Washington, D.C.

**Defense Objection 29:**

PSR at 12, ¶ 68: "[H]e reported ownership of Cameron Capital Consulting, a limited liability company incorporated on June 27, 2006. His first and only client was his uncle, David Moxlow. The defendant was paid $5,000 for services and has retained this money in a business checking account opened to use solely for this business."

Response:   Mr. Safavian has received a few payments from Trenton Forging Company – not David Moxlow – for sporadic work. Also note that the $5,000 figure is a "gross" calculation and does not take into account income and self employment taxes, which total approximately 51%.

**Defense Objection 30:**

PSR at 12, ¶ 69: "[Mr. Safavian] was the Administrator of the Office of Federal Procurement Policy; however, when he began his employment with this agency he was hired as counsel . . . . He resigned from his position in light of the criminal conviction for the instant offenses."

Response:   Mr. Safavian was not hired at OMB as "counsel," but rather as "counselor." Also, Mr. Safavian resigned from his position at OMB in light of the prospects of charges being filed against him, not in light of any criminal convictions.

**Defense Objection 31:**

PSR at 13, ¶ 76: "According to the defendant, in 1999, David Safavian, limited liability corporation (LLC), was incorporated."

Response:   The limited liability company formed by Mr. Safavian is a *Professional* Limited Liability Company, or PLLC.

**Defense Objection 32:**

PSR at 14 ("Unencumbered Assets"), and PSR at 15, ¶ 81: The presentence report lists Mr. Safavian's share of the value of his 1998 Ford Explorer as $3,134.00.

Response:   The $3,134 reported value necessarily means that the fair market value of the vehicle is $6,268. According to Kelley's Blue Book (kbb.com), the trade-in value of the vehicle with 92,000 miles in fair condition is $3,715. Thus, Mr. Safavian's share of the value would be $1,857.50. According to Kelley's Blue Book, if the truck were in

perfect condition, which it is not (needs new tires), the fair market value would only be $4,950. Even under that scenario, Mr. Safavian's share would be worth only $2,475. In either case, the stated amount of $3,134 is overvalued.

**Defense Objection 33:**

PSR at 14 ("Equity in Other Assets"), and PSR at 15, ¶ 81: The presentence report lists Mr. Safavian's share of the equity in the residence purchased by he and his wife to be $203,075.

Response: The $203,075 figure is based on a fair market value of the home at $932,532. The county tax assessment of the house is $807,370. The tax assessment is dated July 2006 and the fair market value is calculated using transactions made in the early spring. Since then, housing prices have dropped – by as much as 10% according to some reports. See, e.g., James R. Hagerty and Anjali Athavaley, "*The Shifting Calculus of Buying a House*," The Wall Street Journal, Oct. 5, 2006 at D1. There are a number of homes for sale in Mr. Safavian's neighborhood that are not selling. Accordingly, the fair market value of the residence as presented in the report is overvalued.

**Defense Objection 34:**

PSR at 17, ¶ 89: "The defendant reported monthly income of $2,700, which is the net amount of money paid by his uncle for his consulting fee."

Response: The $2,700 figure represents the net amount of income received after taxes. This figure also assumes that Mr. Safavian will continue to obtain consulting work from his uncle's company, Trenton Forging. At the present time, there is no guarantee that Mr. Safavian will continue to receive this income or that more work is forthcoming.

**Defense Objection 35:**

PSR at 17, ¶ 93: The presentence report calculates the guideline range for imprisonment based on an offense level of 15, which yields a range of 18 to 24 months.

Response: The report should have calculated a guideline range based on an offense level of 6, and at most a 12, rather than 15. An offense level of 12, criminal history category of I, yields a guidelines range of 10 to 16 months. USSG § 5, Part A. This offense level also falls in Zone C, which allows for split sentences. See Def. Sentencing Mem. at 22-25.

**Defense Objection 36:**

PSR at 18, ¶100: The presentence report provides that the applicable guideline range is "Zone D."

Response: Based on an offense level of 12, the applicable guideline range is Zone C. USSG § 5, Part A.

**Defense Objection 37:**

PSR at 18, ¶ 105:   "The fine range for the instant offense is from $4,000 to $40,000."

Response:   Based on an offense level of 12, the fine range, according to the advisory Sentencing Guidelines, is $3,000 to $30,000. USSG § 5E1.2(c)(3).

**Defense Objection 38:**

PSR at 19, ¶ 106:   The presentence report lists certain factors to consider when setting the fine.

Response:   The report leaves out several of the important facts and factors the Court needs to consider when setting the fine, including "income, earning capacity, and financial resources" and the burden that a fine will impose upon "any person who is financially dependent on the defendant." § 3572(a)(1)-(2); see also Def. Sentencing Mem. at 34-35.

**Defense Objection 39:**

PSR at 19, ¶ 108:   The presentence report concludes there is no information suggesting a departure is warranted. Additionally, the report did not identify any factors that would warrant a variance under 18 U.S.C. § 3553(a).

Response:   The report leaves out several of the important facts and factors the Court needs to evaluate when considering a departure. See USSG § 5K2.0. For instance, this case warrants departure from the advisory Guidelines for the § 1505 charge in Count One because it falls outside the "heartland" of the ordinary obstruction charge, which typically involves culpable conduct that transcends making false statements and concealing material facts. See Def. Sentencing Mem. at 27-33. Mr. Safavian is further entitled to a two-point reduction in offense level pursuant to USSG § 3E1.1 for acceptance of responsibility. See id.; see also Objection 18. In addition, the report does not take into consideration any of the factors of variance, as required under § 3553(a). See Def. Sentencing Mem. at 8-28.

## CONCLUSION

For the aforementioned reasons, Mr. Safavian respectfully requests that the Presentence Investigation Report be modified to correct the identified material inaccuracies and that the resulting sentencing calculations be adjusted accordingly.

                          Respectfully submitted,

                          WILEY REIN & FIELDING LLP

                          By: _____

                          Barbara Van Gelder (D.C. Bar 265603)
                          Roderick L. Thomas (D.C. Bar 433433)
                          Albert Lambert (D.C. Bar 489562)
                          Wiley Rein & Fielding LLP
                          1776 K Street NW
                          Washington, DC 20006
                          TEL: 202.719.7032
                          FAX: 202.719.7049

Dated: October 5, 2006          *Attorneys for David H. Safavian*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2006, a true copy of the foregoing Objections to the Presentence Investigation Report of Defendant David H. Safavian was delivered to the following via courier and electronic mail:

Peter Zeidenberg
Nathaniel B. Edmonds
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005

_____
Albert C. Lambert