## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES of AMERICA,

v.

DAVID HOSSEIN SAFAVIAN,                              Criminal No. 05-370 (PLF)

**Defendant**

### DAVID H. SAFAVIAN'S MOTION FOR RELEASE PENDING APPEAL

David H. Safavian, by and through his attorneys, hereby respectfully moves this

Honorable Court for release pending appeal pursuant to 18 U.S.C. § 3143.

**I.     MR. SAFAVIAN SATISFIES THE REQUIREMENTS OF 18 U.S.C. § 3143**

Title 18 U.S.C. § 3143(b)(1) requires a sentencing court to:

order that a person who has been found guilty of an offense and sentenced to a
term of imprisonment, and who has filed an appeal . . . be detained, unless the
judicial officer finds—
    (A) by clear and convincing evidence that the person is not likely to flee or
pose a danger to the safety of any other person or the community if released under
section 3142(b) or (c) of this title; and
    (B) that the appeal is not for the purpose of delay and raises a substantial
question of law or fact likely to result in—
        (i) reversal,
        (ii) an order for a new trial,
        (iii) a sentence that does not include a term of imprisonment, or
        (iv) a reduced sentence to a term of imprisonment less than the
total of the time already served plus the expected duration of the appeal
process.

Section 3143(b) therefore establishes a two-step process for determining whether a court should

authorize release pending appeal.  First, this Court must find by clear and convincing evidence

that: (1) Mr. Safavian is not likely to flee; and (2) does not pose a danger to the safety of any

other person or the community.  As discussed below, there is sufficient evidence for the Court to

makes these findings. Mr. Safavian has not been committed to custody at any point during these proceedings. He has met every scheduled court appearance, and has not demonstrated any intention or likelihood of fleeing. That Mr. Safavian presents no danger to the public has already been recognized by this Court's prior release Orders and the government's stipulation. <u>See</u> Gov't Sent. Memo (Dock. No. 132) at 32.

As for the second step, this Court must find by a preponderance that Mr. Safavian's appeal: (1) is not for the purpose of delay; (2) raises a substantial question of law or fact; and (3) "if so, . . . resolution of that question in the defendant's favor [would] likely to lead to reversal," a new trial, or a reduced sentence. <u>United States v. Perholtz</u>, 836 F.2d 554, 555 (D.C. Cir. 1987) (*per curiam*).

Mr. Safavian's appeal is not for the purpose of delay and raises several "'close' question[s] or one[s] that very well could be decided the other way." <u>Id</u>. (defining the term "substantial"). Several issues to be raised in the appeal concerning, *inter alia*, admissibility; application of the respective statutes; and sentencing; have either been interpreted differently or have yet to be ruled upon in this Circuit. This Court itself has at times recognized the relative dearth of precedent and conflicting legal authorities. For example, concerning the admission of the email statements of Jack Abramoff, this Court remarked that:

> [The admissibility of the emails is] a really important piece of this case, and it's a great issue on appeal. And if the Court of Appeals disagrees with my view of hearsay and concludes that it would have changed the result, so be it. . . .
>
> [The arguments made by the defense] underscore[] what I've always believed, that some of the calls I made were *close calls*. . . . And different people might have approached it differently, but it may be that it's just time to ask the Court of Appeals to look at this question.

08/24/2006 a.m. Tr. at 24 (emphasis added). In addition, at sentencing this Court further noted that this case presents many "interesting" issues that the Court of Appeals will need to examine.

Not only do the issues raised present close questions, but if any are decided in Mr. Safavian's favor, the likely result will be either reversal, a new trial, or a reduction in the sentence. Perholtz, 836 F.2d at 555. Notably, the statute does not require this Court to certify that its decision was wrong or that it is more probable than not that its decision will be reversed on appeal. See id.. As one court within this Circuit recently explained:

> [T]he test for determining whether defendant has raised a "substantial question of law" under 18 U.S.C. § 3143(b) is *not* whether the Court believes defendant has shown a likelihood of success on the merits of the appeal; rather, it is only whether defendant presents "a 'close' question or one that very well could be decided the other way."

United States v. Quinn, 416 F.Supp.2d 133, 136 (D.D.C. 2006) (emphasis in original) (citing United States v. Rittweger, No. 02-CR-0122, 2005 WL 3200901, at *4 (S.D.N.Y. Nov. 30, 2005) ("By finding that there is a substantial issue for appeal for defendants ⋯, the Court does not find that the issue will ultimately succeed or that it has merit.").

Indeed, in formulating its opinion, the Court in Perholtz joined "[a]ll of the circuits that have construed the provision," and cited, among others, the Third Circuit in United States v. Miller, 753 F.2d 19, 23 (3d Cir. 1985), which had held that:

> [W]e are unwilling to attribute to Congress the cynicism that would underlie the provision were it to be read as requiring the district court to determine the likelihood of its own error. A district judge who, on reflection, concludes that s/he erred may rectify that error when ruling on post-trial motions. Judges do not knowingly leave substantial errors uncorrected, or deliberately misconstrue applicable precedent. Thus, it would have been capricious of Congress to have conditioned bail only on the willingness of a trial judge to certify his or her own error.
>
> For a similar reason, the phrase "likely to result in reversal or an order for a new trial" cannot reasonably be construed to require the district court to predict the probability of reversal. . . . A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. *A court may find that reversal or a new trial is "likely" only if it concludes that . . . a contrary appellate holding is likely to require reversal of the conviction or a new trial.*

Id. (emphasis added);[1] see also United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (holding that "likely to result" in § 3143 means "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial"); United States v. Steinhorn, 927 F.2d 195, 196 (4th Cir. 1991) (adopting Miller interpretation of "likely to result"); United States v. Valera-Elizondo, 761 F.2d 1020, 1025 (5th Cir. 1985) (adopting Miller interpretation).

Thus, the issues to addressed on appeal, set forth more fully below, establish that Mr. Safavian satisfies the provisions of § 3143(b) and can be released on his own recognizance pending appeal. See 18 U.S.C. §3143(b) (specifying that when a court finds the requirements of § 3143(b) met, the defendant may be released "in accordance with section 3142(b)").

A.    **Mr. Safavian is Not Likely to Flee**

Under the conditions imposed by the Court in its prior Orders, there is clear and convincing evidence that Mr. Safavian does not pose a flight risk. This Court has ordered Mr. Safavian's continued release on his own personal recognizance at all stages of the proceedings after his arrest. Mr. Safavian was released at his initial arraignment, on September 19, 2005, on personal recognizance and permitted to reside and travel within the D.C. metropolitan area. (Doc. 5). In addition, this Court granted Mr. Safavian's motion to travel to Michigan on January 20, 2006, which was unopposed by Pretrial Services and the U.S. Attorney's Office. (Doc. 27). After the jury announced its verdict and the Court its sentence, Mr. Safavian remained on release.

---

[1] The court in Miller was construing a version of § 3143 that only authorized a stay pending appeal if the substantial issue being appealed was "likely to result in reversal or an order for a new trial." See Miller, 753 F.2d at 21. Since the opinion in Miller was issued, the statute has been expanded to allow a stay if the appeal presents a substantial issue likely to result in reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

Furthermore, Mr. Safavian has diligently made every scheduled appearance in Court and has fully complied with this Court's release Orders.  See United States v. Hubbard, 1995 WL 13266, at *2 (D.D.C. January 05, 1995) ("Defendant has regularly made court appearances and it is not likely that he will flee.").

**B.    Mr. Safavian Poses No Danger**

Mr. Safavian has no prior criminal history, and the government itself has agreed that Mr. Safavian poses no danger to society.  See Gov't Sent. Memo. at 32 ("[T]he government does not believe defendant poses a risk to the public."); Hubbard, 1995 WL 13266, at *2 ("Although defendant pled guilty to a breach of the public trust, he does not pose a danger to the safety of others.").  Thus, there is also clear and convincing evidence that Mr. Safavian does not pose a danger to another person or to the community.

**C.    Mr. Safavian's Appeal Is Not For the Purpose of Delay and Raises a Substantial Question of Law**

Mr. Safavian's appeal raises several "close" questions of law, or "one[s] that very well could be decided the other way."  Perholtz, 836 F.2d at 555 (citations and internal quotation omitted); Quinn 416 F. Supp. 2d at 136 (authorizing release where "the Court cannot say that the question for appeal is insubstantial or not susceptible to a different answer").[2]

1.    Whether the Statements of Jack Abramoff and Others Contained in Emails Are Admissible is a Substantial Question of Law

At trial, the government admitted almost 300 emails containing out-of-court declarations by Jack Abramoff.  Over the defense's objection, this Court held that the email statements made by Jack Abramoff were admissible because: (1) they provide context to the statements made by

---

[2] Mr. Safavian does not, by this Motion, waive any other possible appellate issues that are not mentioned herein.

Mr. Safavian, (2) the emails themselves constitute "work," and (3) they fall under the state-of-mind exception to the hearsay rule in Rule 803(3).  See 5/23/2006 Order at 12-13 (Docket 99).

Mr. Safavian's appeal of the Court's pre-trial ruling and its subsequent denial of the Motion for a New Trial under Fed. R. Crim. P. 33 on this issue, see 9/12/06 Order (Doc. 130), presents at least a close question of law.  Defendant's argument is based upon the reasoning of United States v. Stover, 329 F.3d 859, 870 (D.C. Cir. 2003).  In Stover, the court held that "context" is not a legitimate exception to the hearsay rule.  Id. ("[T]hat a statement provides context to other evidence does not mean that the statement is not hearsay. All relevant evidence provides context to the events underlying the charged crime.").  The government attempted to admit tape recordings instructing an undercover police officer to refer to drugs as "clothes" in order to provide context for other tape recordings where he used the term "clothes."  The court rejected this theory because a statement cannot provide context unless it is "offered . . . for the truth of its content."  Id.

The only opinion cited by the government in support of this "context" theory at any point in this case was United States v. Lemonakis, 485 F.2d 941 (D.C. Cir. 1973), a thirty-year-old decision, which involved a single tape recording where the declarant of the statements at issue was dead.  Id. at 947.  The defendant's statements on the tape in that case were "meaningless without Scouloukas' remarks."  Id. at 949 n.9.  The exigent circumstances in Lemonakis were not present in this case due to the fact that, at the time of this trial, Jack Abramoff was a cooperating witness dealing with the government who they could have called to the stand in order to provide any context they needed to Mr. Safavian's statements in those emails. Consequently, the issue of whether the emails were properly admitted to provide "context" could

is, at least, a "close question" or one that could be decided differently, particularly where the authority for Mr. Safavian's appeal, <u>Stover</u>, is a much more recent case.

Second, it is also at least a close question as to whether any of the emails are admissible on the basis that they are not being offered for the truth of the matter because they constitute "work." The government's explanation as to why the emails are not being offered for the truth of the matter was:

> Whether Mr. Abramoff wanted the property for a school, a gambling casino or a shopping mall was not an issue at trial. . . . Similarly, it was irrelevant . . . whether Mr. Abramoff was *truly* interested in turning the Old Post Office into a five star hotel as he claimed, or he wanted to quickly sell it to other investors. The e-mails were admitted to show among other things, the fact of communication between defendant and Abramoff regarding White Oak and the Old Post Office.

Gov't Opp. to Def. Mot. for New Trial at 7 (emphasis in original). However, as in <u>Stover</u>, this explanation merely masks the true intent behind the admission of this evidence. Indeed, while the government may be correct that it is irrelevant whether Abramoff actually wanted the OPO for a five star hotel as opposed to any other reason, Abramoff's interest in OPO in of itself is certainly highly relevant and beyond the mere "fact of communication" between the two. This information, critical to the jury's resolution of this case, could *only* be obtained by relying on the veracity of Abramoff's claims in these emails.

For these very same reasons, it is also at least a close question whether any of the emails were admissible to show Mr. Safavian's state of mind. Assuming *arguendo* that there is a hearsay "exception" for the state of mind of anyone other than the declarant, Abramoff's "business" or "work" would only be relevant if the content of Abramoff's emails were true (i.e. Abramoff was indeed conducting "business" or "work" and not something else, an issue that cannot be resolved without examining the content). <u>See</u> <u>Stover</u>, 329 F.3d at 870 (out-of-court statements are inadmissible if jury must rely on content of communication).

Thus, this Court's decision to admit the out of court statements of Jack Abramoff is a close question that meets the first prong of the <u>Perholtz</u> test. Notably the Court in <u>Quinn</u> granted a stay where the defendant's position was merely "not without some support," and did not have Circuit authority to work with. 416 F. Supp. 2d at 136. In this instance, the defense has maintained that this Circuit's decision in <u>Stover</u> governs the issues, but at a minimum, the admission of the Abramoff e-mails presents a novel question for the Court of Appeals and therefore qualifies as a "substantial question of law."

If the Court of Appeals does in fact decide the question differently, it would "likely result" in a new trial under § 3143(b)(1)(B)(ii). The statute "precludes release pending appeal only where the alleged error might be deemed merely harmless or unprejudicial." <u>See</u> <u>Quinn</u>, 416 F. Supp. 2d at 136. In this instance, however, the admission of the emails would almost certainly be found harmful. The 300-odd emails constituted practically the entirety of the evidence against Mr. Safavian and took more than a full day of testimony to read into the record. They related to the key question(s) that the jury was asked to decide: whether Mr. Safavian had concealed "assistance" to Mr. Abramoff to government officials and "lied" about whether Abramoff "had business" or "work" with the agency.

That the emails cannot be dismissed as innocuous, or moot, is supported by the Court's own recognition that they were an "important piece" of the government's case against Mr. Safavian. <u>See</u> 08/24/2006 a.m. Tr. at 24. Consequently, the admission of the Abramoff emails against Mr. Safavian, was a close question that, if decided differently, is "more likely than not" to result in a new trial under § 3143(b)(1)(B).

2.    <u>Whether the False Statement Counts Must Be Reversed as a Matter of Law Is a Substantial Question of Law, Likely to Result in a Reduced Sentence</u>

Mr. Safavian's primary arguments in support of the Motion for Acquittal of the false statement charges (Counts Two, Three, and Five) will also be raised on appeal. First, to the extent that the government contended that the defendant concealed material assistance to Abramoff in GSA related activities, the government failed to prove that he had a specific, legal duty to disclose this information. Second, to the extent that the government argued that what Mr. Safavian did disclose concerning Abramoff's relationship with the GSA was false, the government failed to satisfy its burden of negating all reasonable constructions of the allegedly false statements that would make them factually correct. If the Appellate Court decides these questions in Mr. Safavian's favor, all three false statement charges would be reversed as a matter of law. <u>See</u> <u>e.g.</u>, <u>United States v. Crop Growers Corp.</u>, 954 F. Supp. 335, 345-46 (D.D.C. 1997) (reversing concealment charge as a matter of law where court found no duty to disclose the information concealed); <u>United States v. Dale</u>, 782 F. Supp. 615, 627 (D.D.C. 1991) (finding false statement charge must be reversed as a matter of law if supported by a reasonable construction).

The Appellate Court's reversal of these charges could also have dramatic impact on the duration of Mr. Safavian's sentence, an independent reason to grant a release under § 3143(b)(1)(B). Mr. Safavian is currently sentenced to 18 months in prison based on an offense level of 14. However, if the false statement charges in Counts Two and Five were reversed, then Mr. Safavian's offense level would be reduced to level 12 pursuant to section 3D1.4 of the Guidelines Manual. The guideline sentencing range for a level 12 is 10-16 months, which falls under Zone C under the advisory guidelines and allows for split sentencing. If Mr. Safavian had been sentenced based on an offense level of 12, his prison sentence could have been as short as 5

months, which would be substantially less than the expected duration of his appeal.  Thus, these

issues, if resolved in Mr. Safavian's favor, could also result in "a reduced sentence including a

term of imprisonment less than the expected duration of the appeal." § 3143(b)(1)(B)(iv).

     a.     The Absence of a Legal Duty to Disclose Should Result in
Reversal of Counts Two and Three

     (1)     Whether There Was a Specific Legal Duty to Disclose
The Information Is a Question of Due Process To Be
Decided by the Courts

In its opinion and order denying Mr. Safavian's Rule 29 motion for acquittal, this Court

determined that the "the issue of a legal duty to disclose was a matter for the jury" and thus was

properly included as an element of 18 U.S.C. § 1001 in the jury instructions.  Order and Opinion,

at 8.   The defendant cited a vast array of case law holding that a specific and unambiguous legal

duty to disclose must be found by the Court as a matter of law.   Def. Mot. for Judgment of

Acquittal at 18-25 (Docket 121) (citing cases); see United States v. Blackley, 167 F.3d 543, 550

(D.C. Cir. 1999) (noting legal authority for duty to disclose requirement but deciding that it did

not have to resolve the issue in that case).   Specifically, the district court in Crop Growers,

relying on a sampling of authority from multiple circuits, previously determined that the legal

duty to disclose requirement is a matter of due process, and thereby must be decided by a Court.

United States v. Crop Growers Corp., 954 F. Supp. 335, 345-46 (D.D.C. 1997) ("[W]hether

Defendants herein had a duty to disclose the five pieces of information that the [Independent

Counsel] alleges as the basis for liability, *the Court must first decide as a matter of law, whether

such duty existed*.") (emphasis added).[3]

_____

[3] Similarly, the court in United States v. Cisneros, 26 F. Supp. 2d 24 (D.D.C. 1998), determined the "duty
to disclose" issue as a matter of law.

In the absence of a clear directive from the Court of Appeals, and recognizing there is D.C. district court case law in direct conflict with this Court's decision, Mr. Safavian has, at the very least, raised "a 'close' question or one that very well could be decided either way." Quinn, 416 F. Supp. 2d at 136 ("In circumstances such as this—where a defendant challenges the Court's ruling on a novel question of law and provides a rationale for a contrary interpretation that is supported by arguably applicable legal authority—the Court cannot say that the question for appeal is insubstantial or not susceptible to a different answer.").

> (2)  Neither The Principles of Ethical Conduct Nor Cisneros Can Serve as the Basis for the Duty to Disclose As a Matter of Law

In its Rule 29 decision, this Court also determined that the jury possessed sufficient evidence to conclude that Mr. Safavian had an unambiguous legal duty to disclose his relationship with Mr. Abramoff. However, the "Standards of Ethical Conduct" relied on by the government, issued in a January 20, 2001 Executive Order and later codified in the Code of Federal Regulations, have been rejected in kind elsewhere as an ambiguous and insufficient basis for criminal liability under § 1001.

A number of courts, including cases from this Circuit, have concluded that ethical platitudes applicable to any and all statements to the government do not confer a specific, legal "duty to disclose" on the declarant. Rather, due process under § 1001(a)(1) is satisfied only where the defendant has been put on contemporaneous notice of the substantive information he needs to disclose to answer the question truthfully and accurately.[4] Crop Growers Corp., 954 F.

---

[4]  See, e.g., United States v. Whiteside, 285 F.3d 1345, 1351-52 (11th Cir. 2002) (reversing § 1001 conviction for submitting allegedly false Medicare/Medicaid cost reports where no regulation, administrative ruling, or judicial decision mandated the disclosure); United States v. Cochran, 109 F.3d 660, 665-66 (10th Cir. 1997) (reversing conviction where guaranteed investment contract submitted by defendant to a state agency did not set forth a duty to disclose); United States v. Curran, 20 F.3d 560, 566 (3d Cir. 1994); United States v. Manapat, 928 F.2d 1097, 1100-01 (11th Cir. 1991) (affirming dismissal of § 1001 convictions where Federal Aviation Administration medical form was ambiguous as a matter of

Supp. at 348 (holding general disclosure regulations and professional standards were "quite simply, too vague and amorphous" to impose a legal duty to disclose information). The Standards of Ethical Conduct are not "specific statutes and regulations governing each filing [that] unambiguously required disclosure" of the conduct that the jury found to be concealed, namely "assistance to Abramoff in GSA related activities." See id. at 345; United States v. Dale, 140 F.3d 1054, 1056 (D.C. Cir. 1998) (noting that "[i]n each case the filed form specifically requested the information withheld").[5] In any event, they were not provided to Mr. Safavian at the time he made the statements.

Neither this Circuit, nor any other for that matter, has determined that these principles are sufficient to establish a legal duty to disclose, particularly under circumstances such as these

---

law); Bucey, 876 F.2d at 1307-09 (reversing § 1001 convictions where the Department of the Treasury form submitted by the defendant to the Secretary did not contain a duty to disclose information about for whom the transaction was completed); United States v. Mastronardo, 849 F.2d 799, 804-05 (3d Cir. 1988) (reversing § 1001 convictions where Currency Reporting Act did not set forth an unambiguous duty to disclose structured transactions); Murphy, 809 F.2d at 1429-31; United States v. Larson, 796 F.2d 244, 247 (8th Cir. 1986); United States v. Anzalone, 766 F.2d 676, 681 (1st Cir. 1985) (reversing § 1001 conviction where "nothing on the face" of the relevant statutes or regulations created a legal duty to disclose); United States v. Varbel, 780 F.2d 758, 760-63 (9th Cir. 1986) (same); United States v. Irwin, 654 F.2d 671, 678-79 (10th Cir. 1981) (reversing § 1001 conviction where the Economic Development Administration grant application submitted by defendant to the government agency did not contain a legal duty to disclose the payments of certain bills to another entity); United States v. Dollar, 25 F. Supp. 2d at 1325-26 (dismissing § 1001 charges where defendant was under no legal duty to disclose knowledge or suspicion that actual purchasers of firearms were not the signatories on the forms prescribed by the Bureau of Alcohol, Tobacco and Firearms).

[5]     Moreover, while the Court bases a portion its decision on Cisneros, 26 F. Supp. 2d 24, the court there identified a duty to disclose under significantly different circumstances than those present here. Specifically, the Cisneros court found a duty to disclose as a result of the aggregation of the following: (1) the FBI repeatedly informing Cisneros he had to be "truthful and forthcoming during the background investigation," his right not to speak, and of the implications of making false statements if he did speak; (2) the existence of a Standard Form 86 ("SF-86"), which specifically referred to the prospects of a § 1001 charge and required the applicant to certify understanding that a "knowing and willful false statement on this form can be punished by fine or imprisonment or both"; and (3) Executive Order 10450, which requires individuals seeking government employment to possess such traits as reliability, trustworthiness, and loyalty. Id. at 42-43. The government in Crop Growers unsuccessfully argued that a regulation (similar in content to the principles here) alone was sufficient to create a duty. The court disagreed. 954 F. Supp. at 348. Whether the particular ethical principles in this case would alone provide such a legal duty is therefore "a 'close call,'" susceptible to a different answer.

where there was no government form or filing clearly describing what needed to be disclosed and the penalties for failing to do so.  As set forth in <u>Quinn</u>, the lack of binding, or even persuasive precedent, pertaining to the relationship between these specific ethical principles and a legal duty to disclose is sufficient to satisfy the standards set forth in § 3143(b).  Specifically, the court there explained that where the defendant "provides a rationale for a contrary interpretation that *is supported by arguably applicable legal authority*—the Court cannot say that the question is insubstantial or not susceptible to a different answer."  416 F. Supp. 2d at 136 (emphasis added).  This case falls squarely within these bounds insofar as there is a body of "arguably applicable" legal authority concluding that generic, non-specific statutes or regulations, similar to the principles in this case, fall short of the standards necessary to impose a legal duty to disclose.  The existence of this arguably applicable legal authority creates a proper basis upon which to conclude that a "substantial question of law" has been raised.

> b.  The Government's Failure to Negate Reasonable Constructions of Mr. Safavian's Statements Should Result in Reversal of Counts Two and Five.

The jury found Mr. Safavian guilty of making false statements in Counts Two and Five. It is well-settled, however, that a defendant cannot "*as a matter of law*, be found guilty of making a false statement" where the representation at issue is supported as a reasonable interpretation.  <u>United States v. Dale</u>, 782 F. Supp. 615, 627 (D.D.C. 1991).  Moreover, even at the Rule 29 stage, it is always *the government's burden* to negate any reasonable interpretation that would make the defendant's statement factually correct.  <u>Id.</u>  This Court recognized that the terms "business" and "work" "were susceptible to multiple reasonable definitions."  9/12/2006 Order (Doc. 130) at 12.  Accordingly, Mr. Safavian's argument is that the government failed to present sufficient evidence to negate the reasonable construction of those terms to mean an existing GSA Contractor, as they are defined by the Office of Government Ethics, the GSA

Ethics Manual, and GSA ethics officer Eugenia Ellison.  The very fact that different, objectively reasonable interpretations exist for these terms has been held, on numerous occasions, to be sufficient to reverse a § 1001 conviction.[6]  Consequently, whether the terms at issue here are susceptible to multiple interpretations, and whether the government has negated all reasonable constructions of those terms are "close questions" that present "substantial questions of law."

Moreover, in its order denying Mr. Safavian's Rule 29 motion, the Court accepted the government's novel bifurcation of § 1001 and determined that Mr. Safavian's reasonable construction argument was limited to the false statements for which he was convicted under § 1001 (Counts Two and Five), and could not be considered for the *acts of concealment* (Counts Two and Three).  Order at 11-12.  However, neither the defense, nor the government for that matter,  can identify any Circuit case law in support of this limitation on the application of this defense, allowing the government to use the concealment language of § 1001(a)(1) as both a sword and a shield.[7]  Accordingly, the issue of whether a reasonable construction defense may be applied to a charge of concealment also presents a novel, close question of law.

---

[6] See Dale, 782 F. Supp. at 627; Whiteside, 285 F.3d at 1353 ("[C]ontradictory evidence lends credence to defendants' argument that their interpretation was not unreasonable"); United States v. Race, 632 F.2d 1114, 1120 (4th Cir. 1980) (holding that a § 1001 conviction cannot stand whenever a defendant's statement accords with a reasonable construction of the question presented)); United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994) (government has burden of "negat[ing] any reasonable interpretations that would make a defendant's statement factually correct"; United States v. Gatewood, 173 F.3d 983, 988 (6th Cir. 1999) (holding same and reversing conviction); United States v. Moses, 94 F.3d 182, 188 (5th Cir. 1996) (vacating § 1001 conviction where the alleged statement forming the basis of the violation, making false statements on an INS form, was "true on its face").

[7] The government's lone citation, United States v. Stephenson, 895 F.2d 867 (2d Cir. 1990), was factually inapposite and not on point.  The court there considered only whether the jury had properly determined that the statement was  "literally true" in the unambiguous context of the defendant's knowledge that he, not the corporate official had initiated bribery, id. at 873, and not whether the reasonable construction analysis could apply to a concealment charge.

3.     Whether 18 U.S.C. § 1505 is Unconstitutional is a Substantial Question of Law

Mr. Safavian's constitutional challenge to § 1505 is based on two independent theories, each of which raises a substantial question of law.  First, the reasoning in United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), is still the D.C. Circuit's last word on § 1505 due to the fact that it has yet to address the transitive/intransitive issue since Congress enacted § 1515(b) in 1996.  Consequently, at a minimum, the absence of controlling precedent on point addressing whether § 1515(b) has cured the defect in § 1505, recognized by Poindexter, makes this issue a substantial question of law.  See Quinn, 416 F. Supp. 2d at 136 (recognizing the absence of controlling authority made the issue a substantial question of law).

Second, the enactment of § 1515(b) has created novel issues that have not been squarely addressed by this (or any other) circuit, independent of the issues recognized in Poindexter. Section 1515(b) makes it a crime to provide true but "misleading" information to the federal government.  However, legal authority from several circuits makes it clear that a statute is unconstitutionally vague when it criminalizes conduct subject to the subjective interpretations of law enforcement and prosecutors.  See Tucson Woman's Clinic v. Eden, 379 F.3d 531, 555 (9th Cir. 2004) (finding state regulations regarding abortion clinics were unconstitutionally vague because they subjected physicians to criminal sanctions "based not on their own objective behavior, but on the subjective viewpoints of others") (internal quotations and citation omitted); Free Speech Coal. v. Reno, 198 F.3d 1083, 1095 (9th Cir. 1999) (finding CPPA unconstitutionally vague because it imposed criminal penalties based on criteria that was "highly subjective" with no "explicit standard as to what the phrases mean[,] . . . whose perspective defines the appearance of a minor, or whose impression that a minor is involved leads to criminal prosecution"); United States v. Williams, 444 F.3d 1286, 1306 (11th Cir. 2006) (striking the

application of a criminal statute restricting speech where the terms "in a manner that reflects the belief, or that is intended to cause another to believe" left no objective measure to which behavior can be conformed and led to a wholly subjective determination by law enforcement personnel of what the terms meant).  Thus, because this issue presents a question that has never been addressed by any controlling or persuasive authority, it certainly presents a "close question" susceptible to a different answer, particularly where there is ample support from other circuits providing "arguably applicable legal authority."  Quinn, 416 F. Supp. 2d at 136.

These issues present questions that, if resolved in Mr. Safavian's favor, would likely result in a reduced sentence less than the duration of the appeal. § 3143(b)(1)(B).  If the Court of Appeals holds that § 1505 was unconstitutional on its face or as applied, his offense level would be reduced to at least level 9, regardless of whether the remaining § 1001 charges remain intact.[8] At that level, the maximum sentenced authorized by the guidelines would be 10 months.  Since offense level 9 falls under Zone B, the advisory guidelines would authorize a non-prison sentence with as low as 4 months home detention.  USSG §§ 5B1.1(a)(2), 5C1.1(c)(3), (e). Accordingly, were Mr. Safavian to win on this issue, it is certainly likely that he could receive a sentence shorter than the expected duration of his appeal.

4.    Whether the § 1505 Conviction is Based on Fundamentally Ambiguous Circumstances or Statements Made by Mr. Safavian With Reasonable Constructions that the Government Failed to Negate Is a Substantial Question of Law

Mr. Safavian will also appeal the issue of whether the defenses established to a § 1001 charge also apply to a charge brought under § 1505 that is based on "false and misleading" statements.  This Court rejected this argument, noting that "[n]o case supports the proposition

---

[8] This level would be based on three § 1001 counts in three separate groups as calculated under section 3D1.4.

that such a defense applies to an obstruction charge." 09/12/2006 Order at 22. However, it is Mr. Safavian's position that the absence of case law on point is due to the holding in <u>Poindexter</u>, which at a minimum prohibited a § 1505 charge based on "false or misleading" statements. <u>Poindexter</u>'s abrogation has yet to be recognized by the D.C. Circuit. In addition, and perhaps as a derivative of this reality, prosecutions for obstruction of justice based solely on false statements fall outside the heartland of § 1505 cases. Hence, this Court's recognition of the absence of controlling legal authority actually supports a finding that the issue presents a "substantial question of law." <u>Quinn</u>, 416 F. Supp. 2d at 136.

Mr. Safavian will also argue that these defenses apply to § 1001 because they negate essential elements of that charge, such as criminal intent and actual falsity, which would be necessary to obtain a conviction under § 1505 based on false or misleading statements. Additionally, as these defenses would require reversal of the § 1505 charge in Count One, this issue satisfies the second "likely to result" prong of § 3143(b)(1)(B) for the same reasons identified <u>supra</u> Part I.C.3.

The specific defenses that are applicable to this case are that of (1) fundamental ambiguity, and (2) reasonable construction.[9] With respect to fundamental ambiguity, there is legal authority for the proposition that a statement cannot be considered legally false if it arises out of fundamentally ambiguous circumstances.[10] Here, the doctrine of fundamental ambiguity

---

[9] To the extent that the Count One conviction could have been based on the Count Three concealment conviction, the government's failure to meet its legal burden of demonstrating to the Court a "duty to disclose" would also warrant reversal. <u>See</u> <u>supra</u> Part I.C.1.

[10] <u>See</u> <u>United States v. Culliton</u>, 328 F.3d 1074, 1078 (9th Cir. 2003) (finding that excessive vagueness or fundamental ambiguity in questions may not, as a matter of law, form the basis of a prosecution for perjury or false statement; no ambiguity found on facts of case); <u>United States v. Lattimore</u>, 127 F. Supp. 405, 409-10 (D.D.C. 1955) (dismissing perjury indictment, as a matter of law, because the questioning was ambiguous and terms were vague), <u>aff'd</u>, 232 F.2d 334 (D.C. Cir. 1955); <u>United States v. Clifford</u>, 426 F. Supp. 696, 705 (E.D.N.Y. 1976) (holding that in a prosecution for knowingly and willfully making

is applicable to the circumstances of this case in two important respects.  First, the question asked by Agent Rowe, whether "Jack Abramoff had business with GSA," is fundamentally ambiguous as to the relevant time frame.  The question is not clear as to whether it is referring only to the time of the ethics opinion, or any point in time up through the present.  This issue is of critical importance as many of the emails between Mr. Safavian and Abramoff are after the ethics opinion was requested.  Second, and assuming *arguendo* that the Count One verdict could have been properly predicated on this issue, the conversation between Agent Rowe and Mr. Safavian was fundamentally ambiguous with respect to what was meant by "the Scotland Trip." At trial, the government suggested, through Agent Rowe's testimony, that Mr. Safavian was attempting to mislead Rowe about the trip by not revealing that he also spent time in London. 05/31/2006 Tr. at 46:25-47:4.  However, on cross-examination, Agent Rowe admitted that Mr. Safavian indeed told him that he "left out of London."  05/31/2006 Tr. at 82:3-7.

Furthermore, Mr. Safavian also plans to argue on appeal that the government failed to negate all reasonable constructions of the alleged false statements, which formed the basis of the § 1505 charge of conviction.  See supra Part I.C.2.b.  The failed to negate reasonable constructions of Mr. Safavian's statement that Jack Abramoff had "no business" with GSA, given the jury's failure to convict him on that issue.  See Verdict Form, Count III(C).  It also failed to negate the reasonableness of Mr. Safavian's statement that he had relied on Mr. Abramoff's calculation of the cost of the trip and had been told that $3,100 covered his lodging, airfare, and greens fees (assuming that the issue was even relevant and proper to the verdict in Count One).  Thus, whether the defenses to § 1001 also apply to § 1505 and require reversal of Count One in this case is a novel, substantial question of law .

---

a false statement, in the absence of evidence indicating question asked or answer given, a finding that a false statement was made is unreasonable and cannot stand.").

5.    Whether All Four Offenses Should Be Grouped Into One Group Is a Substantial Question of Law

At sentencing, this Court determined that the four counts of conviction were to be grouped into three separate groups under USSG § 3D1.2. This grouping resulted in a two-level increase in offense level pursuant to section 3D1.4. This increase had significant impact on Mr. Safavian's sentence as it increased his offense level from 12 to 14. Mr. Safavian is currently sentenced to 18 months in prison based on an offense level of 14. However, if all four counts were grouped and Mr. Safavian were sentenced based on an offense level of 12, the guideline sentencing range would have been 10-16 months (and under Zone C, which allows for split sentencing). Therefore, if Mr. Safavian had been sentenced based on an offense level of 12, his prison sentence could have been as short as 5 months, which would be substantially less than the expected duration of his appeal. Thus, the grouping analysis qualifies under § 3143(b)(1)(B)(iv) as an issue which, if it were resolved in Mr. Safavian's favor, would likely result in "a reduced sentence including a term of imprisonment less than the expected duration of the appeal."

In addition, the grouping analysis raises a substantial question of law. The Court appeared to base its ruling on the purported different objectives and functions of the *government* officials (GSA General Counsel; Inspector General; and Senate Committee Counsel). However, the Guidelines and supporting commentary focus the grouping analysis solely upon the *defendant's* "objective" or "scheme or plan." U.S.S.G. § 3D1.2.

Furthermore, while the D.C. Circuit has not squarely addressed the issue of whether the same false statement made to different entities within the federal government is properly grouped under section 3D1.2, several cases do provide support for the proposition that they should. For example, in United States v. McCoy, 242 F.3d 399, 409 & n.18 (D.C. Cir. 2001), the court did in fact group false statement counts made to two different entities, Adams National Bank and the

Small Business Administration.  Also, in <u>United States v. Braxtonbrown-Smith</u>, 278 F.3d 1348, 1356 (D.C. Cir. 2002), the court appeared to uphold the grouping of money laundering and tax evasion charges on the basis that they both involved the victim of "society at large."  <u>See</u> <u>id</u>. Several cases from other circuits also provide authority for the proposition that the four counts in this case should be grouped.[11]

Additionally, there is support in the caselaw for the proposition that the offenses Mr. Safavian committed should be grouped because they affect the same, or at the very least, "closely related" "societal interest[s]."  <u>See</u> USSG § 3D1.2 cmt. n.2 ("For offenses in which there are no identifiable victims, . . . the "victim" for purposes of subsections (a) and (b) is the societal interest that his harmed.  In such cases, the counts are grouped together when the societal interests that are harmed are <em>closely related</em>.") (emphasis added); <u>United States v. Gastelum-Almeida</u>, 298 F.3d 1167, 1175 (9th Cir. 2002) (noting that the societal interest affected by false statements is "the provision of truthful information for law enforcement").

Based on the above, Mr. Safavian's grouping issues present, at a minimum, a novel question for this Circuit with support from "arguably applicable legal authority," and therefore qualify for a release pending appeal under § 3143.  <u>Quinn</u>, 416 F. Supp. 2d at 136.

---

[11] <u>See</u> <u>United States v. Frank</u>, 354 F.3d 910, 916-20, 924 (8th Cir. 2004) (grouping forty-seven counts into a single group, including two counts of obstruction of justice made to different federal entities, sixteen counts of false statements, money laundering, conspiracy, five counts of wire fraud, and twenty-two counts of mail fraud, where all charges involved the same victim of "society."); <u>United States v. Riviere</u>, 924 F.2d 1289, 1304-06 (3d Cir. 1991) (grouping firearms offenses together because each involved the same victim, society); <u>United States v. Berkowitz</u>, 712 F. Supp. 707, 710 (N.D. Ill. 1989) (grouping two obstruction of justice counts and one count of stealing property of the United States because all three counts involved the same victim of "society at large"), <u>rev'd on other grounds</u>, 927 F.2d 1376 (7th Cir. 1991).

**D.    Mr. Safavian's Appeal Is Likely To Result In Reversal, a New Trial, or a Reduced Sentence**

As explained above, the phrase "likely to result" does not mean that this Court must certify that its ruling is likely to be reversed on appeal.  See Quinn, 416 F. Supp. 2d at 136 (holding that the issue "is *not* whether the Court believes defendant has shown a likelihood of success on the merits of the appeal").  Rather, it means that the defendant's appeal must present a question to the appellate court where, "*if that question is resolved in appellant['s] favor*, then, of course, th[e] conviction[] must be reversed." Perholtz, 836 F.2d at 555 (emphasis added);

The issues raised in this motion fall well within the requirement of being likely to result in reversal, a new trial, or a reduced sentence if they are indeed decided in the defendant's favor.

**II.    CONCLUSION**

For the foregoing reasons, Defendant David H. Safavian respectfully requests this Court for an order staying the execution of his sentence pending his appeal to the Court of Appeals.

Respectfully submitted,

WILEY REIN & FIELDING LLP

By: /s/ Barbara Van Gelder

    Barbara Van Gelder (D.C. Bar # 265603)
    Roderick L. Thomas (D.C. Bar # 433433)
    Albert Lambert (D.C. Bar # 489562)
    Wiley Rein & Fielding LLP
    1776 K Street NW
    Washington, DC  20006
    TEL: 202.719.7032
    FAX: 202.719.7049

Dated: October 31, 2006        *Attorneys for David H. Safavian*