UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Cr. No 05-370 (PLF) |
| | : | |
| v. | : | |
| | : | |
| **DAVID HOSSEIN SAFAVIAN** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR BOND PENDING APPEAL**

  The United States of America, by and through its undersigned attorneys, hereby submits the following opposition to defendant's motion for bond pending appeal. Defendant has failed to discharge his burden of establishing that his appeal raises a substantial question of law or fact likely to result in either no sentence of imprisonment or a prison term that is less than the expected duration of his appellate process. See 18 U.S.C. § 3143(b)(1)(B)(iii) & (iv). Accordingly, his motion must be denied.

  The D.C. Circuit has long recognized that there is a statutory presumption that a person that has been lawfully convicted and sentenced to a term of imprisonment will be detained pending appeal. See United States v. Perholtz, 836 F.2d 554, 556 (D.C. Cir. 1987) (discussing 18 U.S.C. § 3143(b)(1) and acknowledging that "[t]he law has shifted from a presumption of release to a presumption of valid conviction" (citations omitted)); see also United States v. Quinn, 416 F. Supp. 2d 133, 134-135 (D.D.C. 2006) (Bates, J.) ("Whenever a person is found guilty of a federal offense and sentenced to a term of imprisonment, there is a presumption that the person should begin serving that sentence, notwithstanding the filing of an appeal of the

conviction or the sentence."). This presumption may be rebutted and the sentencing court may order release pending appeal only when:

> the defendant can establish by clear and convincing evidence that he is not likely to flee or pose a danger to the community, 18 U.S.C. § 3143(b)(1)(A), and also can show that (1) he is appealing for purposes other than delay, (2) the appeal 'raises a substantial question of law or fact,' and (3) a favorable appellate ruling on that substantial question would likely result in a reversal, an order for a new trial, a sentence that does not include incarceration, or a reduced sentence to a term of imprisonment less than the total of any time already served plus the expected duration of the appeal process.

Id. at 135. (emphasis in original).

Defendant fails to raise "'a substantial question of law that is likely to result in . . . a sentence that does not include incarceration, or a reduced sentence to a term of imprisonment less than the total of any time already served plus the expected duration of the appeal process.'" Quinn, 416 F. Supp. 2d at 135 (quoting from 18 U.S.C. § 3143(b)(1)(B)).[1] In determining whether a defendant's appeal "raises a substantial question of law or fact likely to result in reversal," a presiding court shall inquire as to (1) whether the appeal raises a substantial question; and (2) if so, whether the resolution of that question in the defendant's favor is likely to lead to a reversal. See Perholtz, 836 F.2d at 555.

To determine the substantiality of a question raised on appeal, the standard is whether the question is "'a 'close' question or one that very well could be decided the other way.'" Id. (citations omitted).[2] Defendant fails to meet that test here. Defendant's motion for bond pending

---

[1] The government does not contend that the defendant is likely to flee or that he poses a danger to the community.

[2] Defendant quotes United States v. Miller, 753 F.2d 19, 23 (3d Cir. 1985) extensively, but omits the most relevant portion of the ruling which actually defines the standard required for appeal of a "substantial question of law or fact." The Miller court explained:

appeal is based upon his contention that there are a multitude of "substantial question[s] of law" that this Court decided erroneously, and that, therefore, the Court should permit his release pending appeal. In his motion defendant, in what is undoubtedly a preview of his appeal, once again rehashes legal arguments that this Court has previously considered (on multiple occasions) and denied in ruling on defendant's Motion to Dismiss, Motion for New Trial and Motion for Judgement of Acquittal. Defendant raises no new claims that have not already been fully briefed, argued and denied – in most cases, more than once. None of the questions raised can be considered a "substantial question of law" as that term has been defined by the cases in this circuit.

**No Substantial Questions of Law Exist**

Defendant spends the bulk of his motion arguing once again that the Court erred in admitting into evidence the e-mails between Abramoff and defendant. Defendant's argument is meritless. In arguing that the Court erred in admitting the e-mails, defendant fails to distinguish between the various e-mails and the Court's respective reasons for admission. The e-mails sent by defendant to Abramoff, for example, cannot be considered hearsay. They are, rather, statements of defendant as defined by Fed. R. Evid. 801(d)(2)(A). See Opinion and Order,

---

> Our task is to give a reasonable construction to the statutory language in a manner that effectuates the congressional intent. Under the new act, after first making the findings as to flight, danger, and delay, a court must determine that the question raised on appeal is a "substantial" one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful.

Id. at 23. In this case, the legal questions are neither novel nor bereft of legal precedent. Rather, the legal basis regarding email admissibility, parameters of 18 U.S.C. § 1001 charges, constitutionality of 18 U.S.C. § 1505, and grouping under § 3D1.2 have been thoroughly briefed by the parties, and determined by the court on the basis of established legal precedent.

The last remaining "fairly doubtful" prong of Miller would appear to fall within the definitions of Perholtz and Quinn discussed infra.

5/23/06, p. 12. This Court previously determined that (by the government's count) 123 of the emails the government sought to introduce at trial constituted statements of a party opponent as defined by R. 801(d)(2). Id. at pp. 23-29. Defendant has failed to address how the admission of these 123 emails could be error of any kind.

Many other emails which were sent by Abramoff to defendant were mere questions from Abramoff. These emails, too, are not hearsay because "[a]n inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." United States v. Oguns, 921 F.2d 442, 448-49 (2d Cir. 1990) (citing Inc. Pub. Corp. v. Manhattan Magazine, Inc., 616 F. Supp. 370, 388 (S.D.N.Y. 1985); see Opinion and Order, pp. 13-14; United States v. (Keith) Long, 905 F.2d 1572, 1579 (D.C. Cir. 1990) (hearsay prohibition applies only to "assertions" and "nothing is an assertion unless *intended* to be one.") (citation omitted). It simply cannot be argued that Abramoff's various queries to defendant were *intended* as assertions at the time they were made.

Finally, the remaining emails were generally admitted to show context or state of mind. Defendant's assertions to the contrary notwithstanding, it is hardly a controversial proposition – much less a "close question" – that there is a "state-of-mind" exception to the hearsay rule. See United States v. Thompson, 279 F.3d 1043, 1047 (D.C. Cir. 2002), cert. denied, 537 U.S. 904 (2002) ("an out-of-court statement that is offered to show its effect on the *hearer's* state of mind is not hearsay under Rule 801(c).")

To this wealth of authority to which the government has previously cited[3] and upon which the Court could properly rely to admit the emails, the government also adds United States v. Dupre, 462 F.3d 131 (2d Cir. 2006), a case which was decided after the instant trial and which and is both on point and fully supports this Court's decision. In Dupre, the defendants were convicted of wire fraud and conspiracy to commit wire fraud for defrauding investors in a bogus investment scheme. Id. at 134-35. The defendants told would-be investors that they had assets frozen in the Philippines and that the investor would eventually be paid $500,000 for every $1,000 they invested. Id. At trial, the government introduced into evidence e-mail messages sent from a group of investors who suspected they were being defrauded to the defendants. Id. at 136-37. In these e-mail messages, the investors expressed their concerns that they were being defrauded and demanded to know additional information. Id. at 136-37. Defendants responded, by e-mail, to these inquiries. Id. at 137. On appeal, the defendants argued that the admission of the investor/victim e-mails should not have been admitted because they were hearsay. Id. The Court disagreed, using reasoning that applies with equal force to Mr. Safavian's argument:

> Although the authors of the [objected to] messages did not testify at trial, the messages were not hearsay because they were not offered in evidence to prove the truth of the matters asserted. The prosecution offered the [] messages to provide context for defendants' messages sent in response to them, messages whose admissibility is not contested. See Fed. R. Evid 801(d)(2). In addition, the messages served to rebut defendants' argument that they had no reason to know the Roberta Project was fraudulent. See Smith v. Duncan, 411 F.3d 340, 346 n. 4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without regard to its truth, may indicated circumstantially the state of mind ... of the declarant and is *not hearsay."*) The messages demonstrated that defendants had received communications detailing the project's likely bogus nature.

---

[3]In this filing the government hereby incorporates by reference all of its previously made legal arguments in its responses to defendant's Motion to Dismiss, Motion for New Trial, Motion for Acquittal, as will as the government's own Motion in Limine for Pre-trial Determination of Admissibility of Certain Evidence and its Reply in Support thereto.

Id. (Emphasis in original).  Similarly, in the instant case, the e-mails sent to defendant by Abramoff were relevant to show context for defendant's return messages to Abramoff, as well as establishing defendant's state-of- mind, which was directly relevant to the question at trial that defendant was aware of Abramoff's emails and activity with respect to GSA.

Finally, the Court gave numerous limiting and cautionary instructions to the jury as to why the e-mails were being admitted and how they could be properly considered.  These instructions were provided repeatedly, throughout the trial, and during final jury instructions.  There is no reason to believe that the jury was not able to follow these limiting instructions.  Moreover, and in any event, defendant elected to testify at trial and told the jury what he understood the e-mails from Abramoff to mean, and what he intended to convey by his answers.  Thus, because defendant elected to testify as to his understanding that Abramoff was interested in acquiring control over the White Oak and Old Post Office properties, as well as the fact that Abramoff wanted defendant's assistance in obtaining that control, any potential danger that defendant was prejudiced because the jury mis-used this evidence was negated.

It is abundantly clear that neither the decision to admit the e-mails into evidence, nor the other legal issues raised in Defendant's motion, are in any way comparable to the "close question" faced by the trial judge in United States v. Quinn, 416 F. Supp.2d 133 (D.D.C. 2006).  In Quinn, the government convicted the defendant of violating a provision of the laws restricting the export of certain goods to Iran and conspiracy to violate the export control laws.  Id. at 134.  The trial court, in instructing the jury, advised them that they did not have to find that defendant "knew he was engaged in export activities requiring a license from the Treasury Department's

Office of Foreign Assets Control [] and knew that his company did not have such a license." Id. at 136. The trial court had wrestled with this critical jury instruction "[b]ecause the parties and the Court were aware of no legal authority, binding or otherwise, that directly addressed this aspect of IEEPA's export-control regulations, and because the term 'willful' in a criminal statute is amenable to various meanings." Id. The trial court ultimately found the government's position persuasive, but noted that there was authority for the defendant's position as well. Id.

Quinn, in other words, is nothing like the case here: it simply cannot be said that the proposition that assertions not admitted for the truth of the matter are not hearsay is a "substantial question of law" akin to determining the scienter requirement for a statute that has never been interpreted by the Courts. The admissibility of the e-mails turns on nothing more than the black-letter definition of hearsay, as defined by the Federal Rules of Evidence, and an abundance of supporting case law. Thus, defendant's contention to the contrary must fail.[4]

---

[4] Defendant's other arguments fail as well. Even if defendant were to ultimately prevail in his arguments to overturn his false statements convictions – an outcome the government, for the reasons outlined in its previously filed pleadings, believes is exceedingly unlikely – this result would have a minimal effect on defendant's overall sentence for terms of 18 U.S.C. § 3143(b)(1)(B)(iv). The false statement convictions are not the base offense level, but instead only add two levels to the grouping analysis. Given the relative swiftness of the Court of Appeals in deciding appeals, and given that the entire record has already been transcribed, there is no reason to think that any reduced sentence as a result of defendant being re-sentenced at a level 12 (the offense level for the obstruction count) would be less than the "expected duration of the appeal process."

As to defendant's arguments related to the obstruction of justice conviction in Count 1, the defendant's argument that 18 U.S.C. § 1505 is unconstitutional fails to come close to a "substantial question of law." The constitutionality of 18 U.S.C. § 1505 has been reviewed by courts in this Circuit, including this Court in United States v. Kanhanalak, 37 F. Supp. 2d 1 (D.D.C. 1999).

Moreover, defendant's claim regarding the reliability of emails, the truth of the emails, the legal duty to disclose, the reasonable construction of defendant's statements and the circumstances surrounding his interactions with the Unite States Senate were arguments which he made forcefully – and unsuccessfully – to the jury. The fact that the jury disagreed with the defendant's view of this evidence hardly constitutes a "substantial question of law."

**Conclusion**

For the foregoing reasons, as well as the reasons previously argued in the government's previously filed motions and responses, defendant's Motion for Bond Pending Appeal should be denied.

                                                Respectfully submitted,

| | |
|---|---|
| /s/Nathaniel B. Edmonds | /s/ Peter R. Zeidenberg |
| NATHANIEL B. EDMONDS | PETER R. ZEIDENBERG |
| Trial Attorney, Fraud Section | Trial Attorney, Public Integrity Section |
| Criminal Division | Criminal Division |
| United States Department of Justice | United States Department of Justice |

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2006, a copy of the foregoing was served on the following counsel by electronic service to:

>Barbara Van Gelder, Esq.
>Wiley Rein & Fielding
>1776 K Street NW
>Washington, DC 20006
>Tel: 202-719-7032
>Facsimile: 202-719-7049

>/s/Nathaniel B. Edmonds
>NATHANIEL B. EDMONDS
>Trial Attorney
>Fraud Section, Criminal Division
>United States Department of Justice