UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
UNITED STATES OF AMERICA          )
                                                    )
            v.                                     )
                                                    )        Criminal No. 05-0370 (PLF)
DAVID HOSSEIN SAFAVIAN,        )
                                                    )
            Defendant.                        )
———————————————————————)

MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Defendant's motion to compel discovery

pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Mot.") and the government's opposition

thereto ("Opp.").  The Court heard oral argument on defendant's motion on December 1, 2008.

The impetus for defendant's renewed request for Brady material is the recent

publication of a book that apparently includes quotations of statements by former lobbyist Jack

Abramoff about the defendant.  The impetus for this motion is defendant's belief that the

government's response to its current request is both insufficient and evidence of the

government's failure to respond in good faith to Brady requests and this Court's Brady rulings

before the first trial.  See Mot., Ex. 1, Letter to Defense Counsel Richard A. Sauber from

Government Counsel Nathaniel B. Edmonds at 1 (Oct. 28, 2008) ("Gov. Summ.") ("This letter is

in response to your requests regarding allegedly exculpatory material in the Government's

possession.  Specifically, you have noted that a recent book, [The] Perfect Villain, by Gary S.

Chafetz, identifies statements by Jack Abramoff that you believe indicate that the Government

has in its possession material required to be produced" pursuant to Brady and its progeny.).

Upon careful consideration of the parties' papers, the relevant case law and the oral arguments of counsel, the Court concludes that some of the materials described in the government's summary of undisclosed documents in its possession should be disclosed to the defendant immediately because they constitute favorable or potentially favorable evidence.  See United States v. Safavian, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The only question before (and even during) trial is whether the evidence at issue may be 'favorable to the accused'; if so, it must be disclosed [under Brady and its progeny].");  see also id. (defining "evidence favorable to the accused" to mean "any information in the possession of the government . . . that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses").  The Court further concludes that it should conduct an *in camera* review of other materials described in the government's summary of undisclosed documents in its possession to ensure that they do not include additional Brady material. Accordingly, it is hereby ORDERED that:

1.  The Defendant's Motion to Compel Discovery [192] is GRANTED in part and DENIED in part, as explained below.

2.  On or before December 5, 2008, the government shall disclose to the defendant all of the FBI 302 reports (or portions of FBI 302 reports) of interviews with Jack Abramoff that relate to the following topics:

> a.  "Abramoff has also stated . . . that Safavian was on the trip because he was a friend and that there may have even been discussions with Safavian about going when Safavian was in [Congressman] Chris Cannon's [office]."  Gov. Summ. at 2-3.

2

b.  "Abramoff also stated . . . that he has no recollection of speaking to Safavian during the trip about White Oak."  Gov. Summ. at 3.

c.  "[On] another occasion, Abramoff stated . . . that he does not recall there being any discussion during the trip with Safavian about GSA business."  Gov. Summ. at 4.

d.  "Abramoff has stated . . . that he does not remember Safavian ever taking free food from Signatures while he worked at GSA and OMB.  He has stated . . . that he had a discussion with Safavian about meals and Safavian said that because he was an executive employee with the GSA, he couldn't take any gifts.  He has stated . . . that Safavian often went to Signatures to meet other people for drinks, but Safavian was not on the comp list.  He has stated . . . that he dined with Safavian between six and twelve times.  He has stated . . . that he paid for Safavian's dinner when Safavian worked [for] Congressman Cannon.  He has stated . . . that when Safavian went to work for the Administration at GSA and OMB, Safavian insisted that he pay for his own meals because he was not allowed to accept such favors."  Gov. Summ. at 5.

e.  "Abramoff has stated . . . that while he does not remember ever taking Safavian to his golf club while Safavian was employed with GSA, he does remember Safavian treating him at Safavian's golf club."  Gov. Summ. at 5.

f.  "Abramoff has stated . . . that he asked Safavian if he would like to go to a golf trip to Scotland.  He has stated . . . that Safavian was a golfer friend of his.  He has stated . . . that from the beginning Safavian noted that he was going to pay his own way.  He has stated . . . that he remembers Safavian insisting on writing a check. He has stated . . . that he thought that Safavian had paid for the first class equivalent of his airfare to Scotland.  He has stated . . . that he is not sure that he read the language in the email about the ethics opinion wherein Safavian says that he was not paying for his flight."  Gov. Summ. at 6.

g.  "Abramoff has also stated . . . that Safavian was determined to pay for the trip.  He has stated . . . that when they first discussed Safavian going, he told Safavian that he wanted Safavian to be his guest.  He has stated . . . that Safavian said that he (Safavian) would have to pay for it.  He has stated . . . that he does not

remember Safavian saying why, but having dined with Safavian he figured it out.  He has stated . . . that he does not remember Safavian not paying for his flight.  He has stated . . . that he thought that Safavian had paid the equivalent of a first class ticket on a commercial flight.  He has stated . . . that he does not remember having a discussion with Safavian about this."  Gov. Summ. at 7.

3.  In addition, on or before December 5, 2008, the government shall disclose to the defendant all of the rough notes (or portions thereof) of FBI agents, prosecutors or other government investigators underlying the FBI 302 reports (or portions of FBI 302 reports) identified in paragraph two, above.  See United States v. Andrews, 532 F.3d 900, 906 (D.C. Cir. 2008) (observing that rough notes underlying an interview report may be Brady material because they may allow defense counsel to discover or pursue "leads" not apparent from the report itself).

4.  Finally, on or before the close of business on December 8, 2008, the government shall deliver to the Court all other FBI 302 reports (or portions of FBI 302 reports) of interviews with Jack Abramoff that relate to David Safavian, the August 2002 golf trip to Scotland, the White Oak Property, or the Old Post Office – and the corresponding portions of the rough notes underlying those reports.  As noted above, the Court will review those materials *in camera* and decide whether they include Brady material.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 3, 2008